Skip to Main Content   Logout   My Account   Search Menu   New Civil Search   Refine Search   Back      Location : All Courts   Images

# REGISTER OF ACTIONS
## CASE NO. C-0340-15-A

| | |
|---|---|
| Jon Christian Amberson, P.C. VS. James McAllen, EL RUCIO LANDA AND § CATTLE COMPANY INC., SAN JUANITO LAND PARTNERSHIP, LTD., § MCALLEN TRUST PARTNERSHIP § <br> § <br> § | Case Type: **All Other Civil Cases (OCA)** <br> Date Filed: **01/23/2015** <br> Location: **92nd District Court** |

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| Defendant | **EL RUCIO LANDA AND CATTLE COMPANY INC.** | **DAVID M PRICHARD** <br> *Retained* <br> 210-477-7400(W) |
| Defendant | **MCALLEN TRUST PARTNERSHIP** | **DAVID M PRICHARD** <br> *Retained* <br> 210-477-7400(W) |
| Defendant | **McAllen, James** | **DAVID M PRICHARD** <br> *Retained* <br> 210-477-7400(W) |
| Defendant | **SAN JUANITO LAND PARTNERSHIP, LTD.** | **DAVID M PRICHARD** <br> *Retained* <br> 210-477-7400(W) |
| Plaintiff | **Jon Christian Amberson, P.C.** | **FRANCISCO J. RODRIGUEZ** <br> *Retained* <br> 956-687-4363(W) <br><br> **CHARLES C. MURRAY** <br> *Retained* <br> 956-682-5501(W) <br><br> Jason Davis <br> *Retained* <br> 210-853-5882(W) <br><br> **LARISSA JANEE HOOD** <br> *Retained* <br> 210-826-3339(W) |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 01/23/2015 | Original Petition (OCA) <br> *TO COMPEL ARBITRATION* |
| 02/06/2015 | Notice of Non-Suit, Filed |
| 08/08/2017 | Petition <br> *REINSTATED PETITION TO COMPEL ARBITRATION* |
| 08/09/2017 | Amended <br> *REINSTATED 1ST AMENDED PETITION TO COMPEL ARBITRATION* |
| 08/09/2017 | Proposed Order <br> *ON 1ST AMENDED PETITION FOR REFERRAL TO ARBITRATION* |
| 08/10/2017 | E-Filing Forwarded to Court Queue <br> *ON 1ST AMENDED PETITION FOR REFERRAL TO ARBITRATION* |
| 08/10/2017 | Order Returned by Court <br> *ON FIRST AMENDED PETITION FOR REFERRAL TO ARBITRATION* |
| 08/23/2017 | Request for Service |
| 08/24/2017 | Citation Issued |
| 08/24/2017 | Citation Issued |
| 08/24/2017 | Citation Issued |
| 08/24/2017 | Citation Issued |
| 08/29/2017 | Citation |

| | | | |
|---|---|---|---|
| | McAllen, James | Returned Unserved | 09/01/2017 |
| | | Returned | 09/01/2017 |
| | EL RUCIO LANDA AND CATTLE COMPANY INC. | Returned Unserved | 09/01/2017 |
| | | Returned | 09/01/2017 |

| | |
|---|---|
| SAN JUANITO LAND PARTNERSHIP, LTD. | Returned Unserved 09/01/2017 |
| | Returned 09/01/2017 |
| MCALLEN TRUST PARTNERSHIP | Returned Unserved 09/01/2017 |
| | Returned 09/01/2017 |

09/25/2017 **Answer**
10/23/2017 **Amended Answer**
10/30/2017 **Answer**
10/30/2017 **Motion for Partial Summary Judgment, Filed**
    *AS TO THE CANNON GROVE CLAIMS*
10/30/2017 **Proposed Order**
    *GRANTING PLANTIFF'S AND THIRD PARTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE CONNON GROVE CLAIMS*
10/30/2017 **Motion**
    *PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS*
10/30/2017 **Proposed Order**
    *GRANTING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS*
11/06/2017 **Notice**
    *OF ASSOCIATION OF COUNSEL*
11/06/2017 **Order Setting Hearing**
    *ON PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS T0 ARBITRATION AND RETAIN OTHERS*
11/06/2017 **E-Filing Forwarded to Court Queue**
    *ORDER SETTING HEARING ON PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS T0 ARBITRATION AND RETAIN OTHERS*
11/08/2017 **Order Setting Hearing, Signed**
    *ON PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS*
11/08/2017 **Notice Sent**
    *ORDER SETTING HEARING ON PLAINTIFF'S AND THIRD PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS*
11/16/2017 **Supplemental**
    *DECLARATION OF JON CHRISTIAN AMBERSON*
12/05/2017 **Vacation Letter Filed by Attorneys**
12/18/2017 **Amended Answer**
    *COUNTERCLAIMS. AND CLAIMS AGAINST THIRD-PARTIES (SECOND)*
12/18/2017 **Response**
    *TO PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS T0 ARBITRATION AND RETAIN OTHERS; AND (2) REQUEST TO REFER ALL CLAIMS IN THIS LAWSUIT TO ARBITRATION*
12/18/2017 **Proposed Order**
    *REFERRING CLAIMS TO ARBITRATION*
12/19/2017 **E-Filing Forwarded to Court Queue**
    *ORDER REFERRING CLAIMS TO ARBITRATION*
12/19/2017 **Proposed Order**
12/20/2017 **Amended**
    *FIRST AMENDED PETITION TO COMPEL ARBITRATION WITH ATTACHED EXHIBIT*
12/20/2017 **Brief**
12/20/2017 **Proposed Order**
    *GRANTING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS*
01/03/2018 **Notice of Appearance, Filed**
    *OF FRANCISCO J. RODRIGUEZ*
01/03/2018 **Proposed Order**
    *ON NOTICE OF APPEARANCE*
01/03/2018 **E-Filing Forwarded to Court Queue**
    *ORDER*
01/03/2018 **Order Signed**
01/03/2018 **Notice Sent**
    *ORDER SIGNED*
01/08/2018 **Answer**
    *Answer/Response*
01/08/2018 **Vacation Letter Filed by Attorneys**
01/08/2018 **Cover Letter**
01/08/2018 **Proposed Order**
    *OF TRANSFER TO 332ND JUDICIAL DISTRICT COURT*
01/08/2018 **E-Filing Forwarded to Court Queue**
    *ORDER OF TRANSFER TO 332ND JUDICIAL DISTRICT COURT*
01/08/2018 **Jury Demand**
    *Request for Jury Trial*
01/08/2018 **Order Returned by Court**
    *PROPOSED ORDER OF TRANSFER 332ND JUDICIAL DISTRICT COURT*
01/09/2018 CANCELED   **Hearing**  (9:00 AM) ()
    *Attorney Agreement*
    *on Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others*
      *12/21/2017 Reset by Court to 01/09/2018*
01/11/2018 **Letter Received**
01/11/2018 **Proposed Order**
    *REFERRING CLAIMS TO ARBITRATION*
01/11/2018 **Letter Received**
01/11/2018 **Order Setting Hearing**
    *ON PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS*
02/08/2018 **E-Filing Forwarded to Court Queue**
    *ORDER RESETTING HEARING ON PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS*
02/08/2018 **Order Setting Hearing, Signed**

|   |   |
|---|---|
|   | RESETTING HEARING ON PLAINTIFF'S AND THIRD PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS |
| 02/08/2018 | **Notice Sent** |
|   | ORDER RESETTING HEARING ON PLAINTIFF S AND THIRD-PARTY DEFENDANTS MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS |
| 02/26/2018 | **Order Re-Setting Hearing** |
| 02/27/2018 | **E-Filing Forwarded to Court Queue** |
|   | ORDER RESETTING HEARING |
| 02/27/2018 | **Order Setting Hearing, Signed** |
|   | AGREED |
| 02/27/2018 | **Notice Sent** |
|   | AGREED ORDER RESETTING HEARING |
| 04/10/2018 | **Hearing**  (9:00 AM) (Judicial Officer Singleterry, Luis M.) |
|   | on Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others |
|   | *03/01/2018 Reset by Court to 04/10/2018* |
|   | Result: Under Advisement |
| 04/10/2018 | **Case Called** |
|   | Attorneys Joe Chapa, David Montpas, David Prichard, Tony Canales, Chuck Murray, Steve Fleckman present for hearing. Plaintiff's and Third Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others taken UNDER ADVISEMENT. |
| 04/23/2018 | **E-Filing Forwarded to Court Queue** |
|   | ORDER REFERRING CLAIMS TO ARBITRATION |
| 04/23/2018 | **Order Signed** |
|   | REFERRING CLAIMS TO ARBITRATION |
| 04/30/2018 | **Motion for Reconsideration, Filed** |
|   | OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER |
| 04/30/2018 | **Proposed Order** |
|   | MODIFYING APRIL 23, 2018 ORDER |
| 04/30/2018 | **Proposed Order** |
|   | MODIFYING APRIL 23, 2018 ORDER |
| 05/01/2018 | **E-Filing Forwarded to Court Queue** |
|   | ORDER MODIFYING APRIL 23, 2018 ORDER |
| 05/01/2018 | **E-Filing Forwarded to Court Queue** |
|   | ORDER MODIFYING APRIL 23, 2018 ORDER |
| 05/01/2018 | **Request** |
|   | TO CLERK TO MAKE ENTRY OF ASSIGNMENT |
| 05/01/2018 | **Proposed Order** |
|   | ASSIGNMENT |
| 05/01/2018 | **Order Returned by Court** |
|   | ORDER MODIFYING APRIL 23, 2018 ORDER |
| 05/01/2018 | **Order Returned by Court** |
|   | ORDER MODIFYING APRIL 23, 2018 ORDER |
| 05/04/2018 | **Order Setting Hearing** |
|   | ON PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER |
| 05/04/2018 | **E-Filing Forwarded to Court Queue** |
|   | ORDER SETTING HEARING ON PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER |
| 05/08/2018 | **Order Setting Hearing, Signed** |
|   | ON PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OF APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER |
| 05/09/2018 | **Notice Sent** |
|   | ORDER SETTING HEARING ON PLAINTIFF AND THIRD-PARTY DEFENDANT'S MOTION FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE |
| 06/04/2018 | **Response** |
|   | TO PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION |
| 06/05/2018 | **Motion for Reconsideration**  (9:00 AM) (Judicial Officer Singleterry, Luis M.) |
|   | of the April 23, 2018 Order or, in the Alternative, for Clarification of that Order |
|   | Result: Under Advisement |
| 06/05/2018 | **Motion** |
|   | FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER |
| 06/05/2018 | **Case Called** |
|   | Attorneys Charles Murray, Tony Canales, David Montpaz, and Joe Chapa present for hearing. Motion for Reconsideration taken UNDER ADVISEMENT. |
| 06/11/2018 | **Reporter's Transcript** |
|   | OF PROCEEDINGS |
| 06/19/2018 | **Response** |
|   | TO PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION |
| 06/19/2018 | **Proposed Order** |
|   | DENYING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION |
| 06/21/2018 | **Vacation Letter Filed by Attorneys** |
| 06/25/2018 | **Reply** |
|   | TO THE MCALLEN PARTIES' SUPPLEMENTAL RESPONSE |
| 07/09/2018 | **Proposed Order** |
|   | MODIFYING APRIL 23, 2018 ORDER |
| 07/17/2018 | **E-Filing Forwarded to Court Queue** |
|   | ORDER MODIFYING APRIL 23, 2018 ORDER |
| 07/17/2018 | **Proposed Order** |
|   | DENYING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION 0R CLARIFICATION |
| 07/17/2018 | **Order Returned by Court** |
|   | ORDER MODIFYING APRIL 23, 2018 ORDER |
| 08/03/2018 | **Mediator's Report** |
| 08/30/2018 | **Proposed Order** |
|   | DENYING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION |

| | |
|---|---|
| 09/04/2018 | Vacation Letter Filed by Attorneys |
| 09/04/2018 | Proposed Order |
| | *MODIFYING APRIL 23, 2018 ORDER* |
| 09/05/2018 | E-Filing Forwarded to Court Queue |
| | *MODIFYING APRIL 23, 2018 ORDER* |
| 09/05/2018 | Order Returned by Court |
| | *ORDER MODIFYING APRIL 23,2018 ORDER* |
| 09/24/2018 | Proposed Order |
| | *MODIFYING APRIL 23, 2018 ORDER* |
| 09/24/2018 | E-Filing Forwarded to Court Queue |
| | *PROPOSED ORDER MODIFYING APRIL 23, 2018 ORDER* |
| 09/24/2018 | Order Returned by Court |
| | *ORDER MODIFYING APRIL 23.2018 ORDER* |
| 10/03/2018 | E-Filing Forwarded to Court Queue |
| | *ORDER DENYING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION* |
| 10/03/2018 | Order Denying, Signed |
| | *PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION* |
| 10/09/2018 | Other |
| | *THE AMBERSON PARTIES' RESERVATION OF RIGHTS OF APPEAL* |
| 10/18/2018 | Order, Signed |
| | *APPOINTING COLLINS AS ARBITRATOR PURSUANT TO A RULE 11 AGREEMENT* |
| 10/31/2018 | Vacation Letter Filed by Attorneys |
| 04/03/2019 | Vacation Letter Filed by Attorneys |
| 12/05/2019 | Vacation Letter Filed by Attorneys |
| 05/14/2020 | Motion |
| | *TO CONFIRM ARBITRATION AWARD* |
| 05/14/2020 | Notice of Hearing |
| | *TO CONFIRM ARBITRATION AWARD* |
| 05/15/2020 | E-Filing Forwarded to Court Queue |
| | *NOTICE OF HEARING TO CONFIRM ARBITRATION AWARD* |
| 05/20/2020 | Notice of Hearing |
| | *TO CONFIRM ARBITRATION AWARD SIGNED* |
| 05/21/2020 | Notice Sent |
| | *NOTICE OF HEARING* |
| 05/27/2020 | Notice of Appearance, Filed |
| 05/27/2020 | Order Setting Hearing |
| | *MOTION TO CONFIRM ARBITRATION AWARD* |
| 05/27/2020 | Motion |
| | *TO CONFIRM ARBITRATION AWARD AND MOTION TO VACATE OR MODIFY ARBITRATION AWARD* |
| 05/28/2020 | E-Filing Forwarded to Court Queue |
| | *NOTICE OF HEARING* |
| 05/28/2020 | Order Setting Hearing, Signed |
| | *MOTION TO VACATE OR MODIFY ARBITRATION AWARD* |
| 05/29/2020 | Notice Sent |
| | *NOTICE OF HEARING* |
| 05/29/2020 | Motion To Withdraw as Counsel of Record |
| | *FOR JON CHRISTIAN AMBERSON P.C. AND AMBERSON NATURAL RESOURCES LLC* |
| 05/29/2020 | Proposed Order |
| | *GRANTING FLECKMAN & McGLYNN, PLLC'S MOTION TO WITHDRAW* |
| 05/29/2020 | E-Filing Forwarded to Court Queue |
| | *PROPOSED ORDER* |
| 05/29/2020 | Order on Motion for Withdrawal of Counsel, Signed |
| 06/10/2020 | Motion |
| | *TO CONFIRM ARBITRATION AWARD* |
| 06/24/2020 | Motion |
| | *DAVIS, CEDILLO & MENDOZA, INC'S MOTION TO WITHDRAW* |
| 06/24/2020 | Proposed Order |
| | *ORDER GRANTING DAVIS, CEDILLO & MENDOZA, INC'S MOTION TO WITHDRAW* |
| 06/25/2020 | E-Filing Forwarded to Court Queue |
| | *ORDER GRANTING DAVIS, CEDILLO & MENDOZA, INC'S MOTION TO WITHDRAW* |
| 06/25/2020 | Order on Motion for Withdrawal of Counsel, Signed |
| 06/26/2020 | Notice Sent |
| | *ORDER GRANTING DAVIS, CEDILLO & MENDOZA, INC. S MOTION TO WITHDRAW* |
| 07/14/2020 | Proposed Order |
| | *AGREED ORDER REFERRING JEFFERSON BANK LOAN CLAIMS BACK TO ARBITRATION* |
| 07/14/2020 | E-Filing Forwarded to Court Queue |
| | *AGREED ORDER REFERRING JEFFERSON BANK LOAN CLAIMS BACK TO ARBITRATION* |
| 07/15/2020 | Agreed Order, Signed |
| | *REFERRING JEFFERSON BANK LOAN CLAIMS BACK TO ARBITRATION* |
| 07/15/2020 | Notice Sent |
| | *AGREED ORDER REFERRING JEFFERSON BANK LOAN CLAIMS BACK TO ARBITRATION* |
| 07/20/2020 | Answer |
| | *THE MCALLEN PARTIES' (1) RESPONSE TO THE AMBERSON PARTIES' MOTION TO VACATE OR MODIFY ARBITRATION AWARD, AND (2) REPLY IN SUPPORT OF THE MCALLEN PARTIES' MOTION TO CONFIRM ARBITRATION AWARD* |
| 07/20/2020 | Proposed Order |
| | *FINAL JUDGMENT* |
| 07/20/2020 | E-Filing Forwarded to Court Queue |
| | *FINAL JUDGMENT* |
| 07/20/2020 | Notice |
| | *SUGGESTION OF BANKRUPTCY* |
| 07/21/2020 | Motion  (11:00 AM) () |
| | *to Confirm Arbitration Award Motion to Vacate or Modify Arbitration Award* |
| | *06/25/2020 Reset by Court to 07/21/2020* |

**FINANCIAL INFORMATION**

**Defendant** McAllen, James
Total Financial Assessment    26.00
Total Payments and Credits    26.00
**Balance Due as of 07/20/2020**    **0.00**

| Date | Transaction | Receipt | Party | Amount |
|---|---|---|---|---|
| 09/25/2017 | Transaction Assessment | | | 2.00 |
| 09/25/2017 | EFile Payments from TexFile | Receipt # DC-2017-077123 | McAllen, James | (2.00) |
| 10/23/2017 | Transaction Assessment | | | 2.00 |
| 10/23/2017 | EFile Payments from TexFile | Receipt # DC-2017-085169 | McAllen, James | (2.00) |
| 12/18/2017 | Transaction Assessment | | | 2.00 |
| 12/18/2017 | EFile Payments from TexFile | Receipt # DC-2017-099939 | McAllen, James | (2.00) |
| 12/18/2017 | Transaction Assessment | | | 2.00 |
| 12/18/2017 | EFile Payments from TexFile | Receipt # DC-2017-099941 | McAllen, James | (2.00) |
| 12/19/2017 | Transaction Assessment | | | 2.00 |
| 12/19/2017 | EFile Payments from TexFile | Receipt # DC-2017-100077 | McAllen, James | (2.00) |
| 01/11/2018 | Transaction Assessment | | | 2.00 |
| 01/11/2018 | EFile Payments from TexFile | Receipt # DC-2018-002964 | McAllen, James | (2.00) |
| 01/11/2018 | Transaction Assessment | | | 2.00 |
| 01/11/2018 | EFile Payments from TexFile | Receipt # DC-2018-002968 | McAllen, James | (2.00) |
| 02/27/2018 | Transaction Assessment | | | 2.00 |
| 02/27/2018 | EFile Payments from TexFile | Receipt # DC-2018-015976 | McAllen, James | (2.00) |
| 05/02/2018 | Transaction Assessment | | | 2.00 |
| 05/02/2018 | EFile Payments from TexFile | Receipt # DC-2018-035386 | McAllen, James | (2.00) |
| 06/04/2018 | Transaction Assessment | | | 2.00 |
| 06/04/2018 | EFile Payments from TexFile | Receipt # DC-2018-044838 | McAllen, James | (2.00) |
| 06/21/2018 | Transaction Assessment | | | 2.00 |
| 06/21/2018 | EFile Payments from TexFile | Receipt # DC-2018-049609 | McAllen, James | (2.00) |
| 07/17/2018 | Transaction Assessment | | | 2.00 |
| 07/17/2018 | EFile Payments from TexFile | Receipt # DC-2018-056105 | McAllen, James | (2.00) |
| 08/30/2018 | Transaction Assessment | | | 2.00 |
| 08/30/2018 | EFile Payments from TexFile | Receipt # DC-2018-068958 | McAllen, James | (2.00) |

**Plaintiff** Jon Christian Amberson, P.C.
Total Financial Assessment    825.00
Total Payments and Credits    825.00
**Balance Due as of 07/20/2020**    **0.00**

| Date | Transaction | Receipt | Party | Amount |
|---|---|---|---|---|
| 01/26/2015 | Transaction Assessment | | | 264.00 |
| 01/26/2015 | EFile Payments from TexFile | Receipt # DC-2015-5814 | Jon Christian Amberson, P.C. | (264.00) |
| 02/09/2015 | Transaction Assessment | | | 2.00 |
| 02/09/2015 | EFile Payments from TexFile | Receipt # DC-2015-9600 | Jon Christian Amberson, P.C. | (2.00) |
| 08/08/2017 | Transaction Assessment | | | 13.00 |
| 08/08/2017 | EFile Payments from TexFile | Receipt # DC-2017-063271 | Jon Christian Amberson, P.C. | (13.00) |
| 08/10/2017 | Transaction Assessment | | | 119.00 |
| 08/10/2017 | EFile Payments from TexFile | Receipt # DC-2017-063940 | Jon Christian Amberson, P.C. | (119.00) |
| 08/23/2017 | Transaction Assessment | | | 334.00 |
| 08/23/2017 | EFile Payments from TexFile | Receipt # DC-2017-067873 | Jon Christian Amberson, P.C. | (334.00) |
| 10/31/2017 | Transaction Assessment | | | 2.00 |
| 10/31/2017 | EFile Payments from TexFile | Receipt # DC-2017-087319 | Jon Christian Amberson, P.C. | (2.00) |
| 10/31/2017 | Transaction Assessment | | | 2.00 |
| 10/31/2017 | EFile Payments from TexFile | Receipt # DC-2017-087383 | Jon Christian Amberson, P.C. | (2.00) |
| 11/06/2017 | Transaction Assessment | | | 2.00 |
| 11/06/2017 | EFile Payments from TexFile | Receipt # DC-2017-089111 | Jon Christian Amberson, P.C. | (2.00) |
| 11/06/2017 | Transaction Assessment | | | 2.00 |
| 11/06/2017 | EFile Payments from TexFile | Receipt # DC-2017-089213 | Jon Christian Amberson, P.C. | (2.00) |
| 11/16/2017 | Transaction Assessment | | | 2.00 |

| 11/16/2017 | EFile Payments from TexFile | Receipt # DC-2017-092124 | Jon Christian Amberson, P.C. | (2.00) |
| 12/20/2017 | Transaction Assessment | | | 2.00 |
| 12/20/2017 | EFile Payments from TexFile | Receipt # DC-2017-100503 | Jon Christian Amberson, P.C. | (2.00) |
| 12/20/2017 | Transaction Assessment | | | 2.00 |
| 12/20/2017 | EFile Payments from TexFile | Receipt # DC-2017-100513 | Jon Christian Amberson, P.C. | (2.00) |
| 12/20/2017 | Transaction Assessment | | | 2.00 |
| 12/20/2017 | EFile Payments from TexFile | Receipt # DC-2017-100569 | Jon Christian Amberson, P.C. | (2.00) |
| 01/03/2018 | Transaction Assessment | | | 2.00 |
| 01/03/2018 | EFile Payments from TexFile | Receipt # DC-2018-000612 | Jon Christian Amberson, P.C. | (2.00) |
| 01/08/2018 | Transaction Assessment | | | 2.00 |
| 01/08/2018 | EFile Payments from TexFile | Receipt # DC-2018-001663 | Jon Christian Amberson, P.C. | (2.00) |
| 01/08/2018 | Transaction Assessment | | | 2.00 |
| 01/08/2018 | EFile Payments from TexFile | Receipt # DC-2018-001734 | Jon Christian Amberson, P.C. | (2.00) |
| 01/08/2018 | Transaction Assessment | | | 2.00 |
| 01/08/2018 | EFile Payments from TexFile | Receipt # DC-2018-001756 | Jon Christian Amberson, P.C. | (2.00) |
| 01/08/2018 | Transaction Assessment | | | 42.00 |
| 01/08/2018 | EFile Payments from TexFile | Receipt # DC-2018-001812 | Jon Christian Amberson, P.C. | (42.00) |
| 01/12/2018 | Transaction Assessment | | | 2.00 |
| 01/12/2018 | EFile Payments from TexFile | Receipt # DC-2018-003316 | Jon Christian Amberson, P.C. | (2.00) |
| 05/01/2018 | Transaction Assessment | | | 2.00 |
| 05/01/2018 | EFile Payments from TexFile | Receipt # DC-2018-034968 | Jon Christian Amberson, P.C. | (2.00) |
| 05/04/2018 | Transaction Assessment | | | 2.00 |
| 05/04/2018 | EFile Payments from TexFile | Receipt # DC-2018-036238 | Jon Christian Amberson, P.C. | (2.00) |
| 06/05/2018 | Transaction Assessment | | | 2.00 |
| 06/05/2018 | EFile Payments from TexFile | Receipt # DC-2018-044993 | Jon Christian Amberson, P.C. | (2.00) |
| 07/09/2018 | Transaction Assessment | | | 2.00 |
| 07/09/2018 | EFile Payments from TexFile | Receipt # DC-2018-054110 | Jon Christian Amberson, P.C. | (2.00) |
| 08/03/2018 | Transaction Assessment | | | 2.00 |
| 08/03/2018 | EFile Payments from TexFile | Receipt # DC-2018-061172 | Jon Christian Amberson, P.C. | (2.00) |
| 09/04/2018 | Transaction Assessment | | | 2.00 |
| 09/04/2018 | EFile Payments from TexFile | Receipt # DC-2018-069612 | Jon Christian Amberson, P.C. | (2.00) |
| 09/05/2018 | Transaction Assessment | | | 2.00 |
| 09/05/2018 | EFile Payments from TexFile | Receipt # DC-2018-070002 | Jon Christian Amberson, P.C. | (2.00) |
| 09/24/2018 | Transaction Assessment | | | 2.00 |
| 09/24/2018 | EFile Payments from TexFile | Receipt # DC-2018-075319 | Jon Christian Amberson, P.C. | (2.00) |
| 10/18/2018 | Transaction Assessment | | | 5.00 |
| 10/18/2018 | Payment | Receipt # DC-2018-082482 | MR. CANALES | (5.00) |
| 10/31/2018 | Transaction Assessment | | | 2.00 |
| 10/31/2018 | EFile Payments from TexFile | Receipt # DC-2018-086113 | Jon Christian Amberson, P.C. | (2.00) |
| 04/03/2019 | Transaction Assessment | | | 2.00 |
| 04/03/2019 | EFile Payments from TexFile | Receipt # DC-2019-026603 | Jon Christian Amberson, P.C. | (2.00) |

| | **Third Party Defendant** Amberson, Jon Christian | | | |
| | Total Financial Assessment | | | 14.00 |
| | Total Payments and Credits | | | 14.00 |
| | **Balance Due as of 07/20/2020** | | | **0.00** |

| 10/30/2017 | Transaction Assessment | | | 2.00 |
| 10/30/2017 | EFile Payments from TexFile | Receipt # DC-2017-087104 | Amberson, Jon Christian | (2.00) |
| 12/05/2017 | Transaction Assessment | | | 2.00 |
| 12/05/2017 | EFile Payments from TexFile | Receipt # DC-2017-096513 | Amberson, Jon Christian | (2.00) |
| 06/11/2018 | Transaction Assessment | | | 2.00 |
| 06/11/2018 | EFile Payments from TexFile | Receipt # DC-2018-047143 | Amberson, Jon Christian | (2.00) |
| 06/12/2018 | Transaction Assessment | | | 2.00 |
| 06/12/2018 | EFile Payments from TexFile | Receipt # DC-2018-047188 | Amberson, Jon Christian | (2.00) |
| 06/22/2018 | Transaction Assessment | | | 2.00 |
| 06/22/2018 | EFile Payments from | Receipt # DC-2018-050061 | Amberson, Jon Christian | (2.00) |

| | TexFile | | | |
|---|---|---|---|---|
| 06/25/2018 | Transaction Assessment | | | 2.00 |
| 06/25/2018 | EFile Payments from TexFile | Receipt # DC-2018-050340 | Amberson, Jon Christian | (2.00) |
| 10/09/2018 | Transaction Assessment | | | 2.00 |
| 10/09/2018 | EFile Payments from TexFile | Receipt # DC-2018-079331 | Amberson, Jon Christian | (2.00) |

Electronically Filed
1/23/2015 4:39:59 PM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

Cause No. **C-0340-15-A**

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| Vs. | § | _____ JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## PETITION TO COMPEL ARBITRATION

TO THE HONORABLE JUDGE OF THE COURT:

NOW COMES JON CHRISTIAN AMBERSON, P.C., Plaintiff, and files this its Petition to Compel Arbitration against James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership (hereinafter referred to collectively as "McAllen"), Defendants, and for cause would respectfully show the Court the following:

### I.

1.      A dispute has arisen between the parties and Petitioner requests that this Court order the parties to arbitration pursuant to the Arbitration Clause of the Contract which was entered into between the parties. The Arbitration Clause states in pertinent part:

> "Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

Electronically Filed
1/23/2015 4:39:59 PM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

**C-0340-15-A**

     Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

## II.

## PRAYER

     WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to answer and appear and that, upon a hearing of the cause, the parties be compelled to participate in Arbitration and for such other and further general relief as allowed by law.

Respectfully submitted,

Jon Christian Amberson
Texas Bar No. 01141700
Larissa Janee Hood
Texas Bar No. 24041126
2135 E. Hildebrand Avenue
San Antonio, Texas  78209
(210) 826-3339 – Telephone
(210) 826-3340 - Facsimile

Electronically Filed
2/6/2015 5:09:52 PM
Hidalgo County District Clerks
Reviewed By: Nidia Pena

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| Vs. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFF'S NOTICE OF NON-SUIT WITHOUT PREJUDICE

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now, Jon Christian Amberson, P.C., Plaintiff in the above-styled and numbered cause, and hereby gives notice to this court and to all parties to this lawsuit that Plaintiff, Jon Christian Amberson, P.C. hereby nonsuits without prejudice this lawsuit against Defendants, James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership, effective immediately on the filing of this instrument.

Respectfully submitted,

Jon Christian Amberson
State Bar No. 01141700
chris@ambersonpc.com
Larissa Janee Hood
State Bar No. 24041126
larissa@ambersonpc.com
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas 78209
Telephone:    (210) 826-3339
Facsimile:    (210) 826-3340

By:   /s/ Chris Amberson
        Jon Christian Amberson

Electronically Filed
8/8/2017 2:53 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| Vs. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## REINSTATED PETITION TO COMPEL ARBITRATION

Plaintiff Jon Christian Amberson, P.C. files this reinstated petition to compel arbitration against Defendants James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership (collectively, "*McAllen*").

### I. REQUEST FOR ARBITRATION

1.      This action concerns a contingency fee dispute between the parties regarding Plaintiff's rights under a January 2005 contract for legal services rendered by Plaintiff on behalf of McAllen. The contract contains the following mandatory arbitration provision:

Any fee dispute arising under this agreement and/or the services rendered for you by the firm will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

2.      Consistent with this arbitration agreement, Plaintiff initially filed its petition to compel McAllen to arbitration on January 23, 2015, which was assigned to the 92nd Judicial District Court of Hidalgo County, Texas under Cause No. C-0340-15-A.

Electronically Filed
8/8/2017 2:53 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

3.      Shortly after filing its initial petition, Plaintiff and McAllen agreed to a moratorium, under which Plaintiff nonsuited its action to facilitate mediation, it being expressly agreed that Plaintiff could refile its petition to compel arbitration if the parties failed to resolve their contingency fee dispute.

4.      The mediation having failed to resolve the dispute, Plaintiff now refiles its petition against McAllen requesting that McAllen be ordered to arbitrate the fee dispute.

## II.  JURISDICTION AND VENUE

5.      This Court has jurisdiction to compel the parties to arbitration under TEX. CIV. PRAC. & REM. CODE § 171.082(a).

6.      Under the arbitration agreement, and also because one or more of the Defendants resides here, venue is proper in Hidalgo County, Texas under TEX. CIV. PRAC. & REM. CODE § 171.096.

7.      This petition is therefore reinstated as allowed by the parties' moratorium agreement, in the 92nd Judicial District Court of Hidalgo, County, Texas under Rule 1.1 of the Local Rules of the Hidalgo County District Courts.

## III.  PRAYER

WHEREFORE, Plaintiff respectfully prays that Defendants be cited to answer and appear, that Defendants be compelled to participate in arbitration, and that Plaintiff thereafter be granted such other and further relief as may be allowed at law or in equity.

Electronically Filed
8/8/2017 2:53 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Respectfully submitted,


By:     /s/ Jon Christian Amberson
Jon Christian Amberson
Texas Bar No. 01141700
Email: chris@ambersonpc.com
Larissa Janee Hood
Texas Bar No. 24041126
Email: larissa@ambersonpc.com
2135 E. Hildebrand Avenue
San Antonio, Texas  78209
(210) 826-3339 – Telephone
(210) 826-3340 - Facsimile

Electronically Filed
8/9/2017 12:14 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| Vs. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER ON 1ST AMENDED PETITION FOR REFERRAL TO ARBITRATION

The Court has considered the Plaintiff's 1st Amended Petition for Referral to Arbitration and the attached exhibits and is of the opinion that same should be granted.

THEREFORE, it is Ordered that this matter be referred to arbitration pursuant to Tex. Civ. Prac. Rem. Code, §171.001 and §171.081 of the Texas Arbitration Act and shall be arbitrated pursuant to the terms of the agreement between the parties.

IT IS FURTHER ORDERED that this matter shall be referred to the Senior Presiding Judge of Hidalgo County, Texas for selection of a Retired District Judge who has previously served on the Hidalgo County District Courts and is presently retired or in Senior Status.

SIGNED on this the _____ day of _____, 2017.

_____
PRESIDING JUDGE

Electronically Filed
8/9/2017 12:14 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| Vs. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## REINSTATED 1st AMENDED PETITION TO COMPEL ARBITRATION

Plaintiff Jon Christian Amberson, P.C. files this reinstated 1st amended petition to compel arbitration against Defendants James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership (collectively, "*McAllen*").

### I. REQUEST FOR ARBITRATION

1.      This action concerns a contingency fee dispute between the parties regarding Plaintiff's rights under a January 2005 contract for legal services rendered by Plaintiff on behalf of McAllen[1]. The contract contains the following mandatory arbitration provision:

Any fee dispute arising under this agreement and/or the services rendered for you by the firm will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

2.      Consistent with this arbitration agreement, Plaintiff initially filed its petition to compel McAllen to arbitration on January 23, 2015, which was assigned to the 92nd Judicial District Court of Hidalgo County, Texas under Cause No. C-0340-15-A.

---

[1] See Contracts of Employment, attached hereto as Exhibits "A" and "B".

Reinstated Petition to Compel Arbitration                                                                  1

Electronically Filed
8/9/2017 12:14 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

3.       Shortly after filing its initial petition, Plaintiff and McAllen agreed to a moratorium, under which Plaintiff nonsuited its action to facilitate mediation, it being expressly agreed that Plaintiff could refile its petition to compel arbitration if the parties failed to resolve their contingency fee dispute.

4.       The mediation having failed to resolve the dispute, Plaintiff now refiles its petition against McAllen requesting that McAllen be ordered to arbitrate the fee dispute.

## II. JURISDICTION AND VENUE

5.       This Court has jurisdiction to compel the parties to arbitration under TEX. CIV. PRAC. & REM. CODE § 171.082(a).

6.       Under the arbitration agreement, and also because one or more of the Defendants resides here, venue is proper in Hidalgo County, Texas under TEX. CIV. PRAC. & REM. CODE § 171.096.

7.       This petition is therefore reinstated as allowed by the parties' moratorium agreement, in the 92nd Judicial District Court of Hidalgo, County, Texas under Rule 1.1 of the Local Rules of the Hidalgo County District Courts.

## III. PRAYER

WHEREFORE, Plaintiff respectfully prays that Defendants be cited to answer and appear, that Defendants be compelled to participate in arbitration, and that Plaintiff thereafter be granted such other and further relief as may be allowed at law or in equity.

Electronically Filed
8/9/2017 12:14 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Respectfully submitted,

By:      /s/ Jon Christian Amberson
Jon Christian Amberson
Texas Bar No. 01141700
Email: chris@ambersonpc.com
Larissa Janee Hood
Texas Bar No. 24041126
Email: larissa@ambersonpc.com
2135 E. Hildebrand Avenue
San Antonio, Texas  78209
(210) 826-3339 – Telephone
(210) 826-3340 - Facsimile

# EXHIBIT "A"

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3339

TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
James Argyle McAllen, Jr.
P.O. Box 1139
Edinburg, Texas  78540-1139

RE:   Contract of Employment Regarding Representation of James Argyle McAllen, Individually and James Argyle McAllen, Jr., Individually against Forest Oil Corporation and any other Responsible Entities.

Gentlemen:

The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C., and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies relating to environmental contamination issues related arising from illegal dumping of hazardous materials and radioactive materials.

## DESCRIPTION OF SERVICES

1.   **CLIENTS AND CLIENT REPRESENTATIVES**:  The firm is being retained to represent the following:

      1.   James A. McAllen, Individually

      2.   James A. McAllen, Jr., Individually

**EXHIBIT "A"**

Page 2

**2.    PURPOSE OF REPRESENTATION:**  It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.    LEGAL REPRESENTATION:**  Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.  Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.    NO GUARANTEE OR INDUCEMENTS:**  It is understood that the firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.    TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed.  A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

1.    Proper and expected behavior of counsel are described in the Creed.

2.    Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.    I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.    I will not pursue tactics which are intended primarily for delay.

5.    I will not pursue any course of action which is without merit.

6.    I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

Page 3

> 7. You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

**6.    FEES:**  The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**7. DETERMINATION OF FEES:**  The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows:  You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm.  The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages.  Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of James Argyle McAllen and James Argyle McAllen, Jr., in the event of an adverse verdict.

Page 4

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8.    **COSTS AND EXPENSES:**  You will be charged for all costs and expenses of this representation.   To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives.  These costs and expenses include, but are not limited to, the following:

1)    Court costs;

2)    Citation and/or subpoena fees;

3)    Deposition fees, costs and expenses;

4)    Investigation fees, costs and expenses;

5)    Expert witness fees, costs and expenses;

6)    Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)    Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)    Long distance telephone charges, and conference calls expenses;

Page 5

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.   NOTICE TO CLIENTS:**   The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.  Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.  For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.   ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration.  The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable.  The arbitrator will be selected as follows:

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status.  The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

**11.   LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

**12.**   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**13.**   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

Page 6

**14.** If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen and James Argyle McAllen, Jr.

JAMES ARGYLE McALLEN,
INDIVIDUALLY

JAMES ARGYLE McALLEN, JR.
INDIVIDUALLY

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 -- Facsimile

# A MANDATE FOR PROFESSIONALISM

I am licensed to practice law by the People of Texas to preserve our legal system and to the Laws adopted by the Supreme Court of Texas. Since, therefore, I abide by the Texas Lawyer's Creed of Professional Conduct, but I know that professionalism requires more than merely avoiding the violation of laws and rules. I am committed to observe for no other reason than it is right.

## I. OUR LEGAL SYSTEM

is devoted to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism.

> 1. I am passionately proud of my profession. Therefore, "My word is my bond."

> 2. I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life.

> 3. I commit myself to an adequate and effective pro bono program.

> 4. I am obligated to educate my clients, the public, and other lawyers regarding the spirit and letter of this Creed.

> 5. I will always be conscious of my duty to the judicial system.

### LAWYER TO CLIENT

A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate legal means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest.

> 1. I will advise my client of the contents of this creed when undertaking representation.

> 2. I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible.

> 3. I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty to interfere with my duty to provide objective and independent advice.

6. I will [illegible] are [illegible] and are not a sign of weakness.

7. I will [illegible] harsh [illegible] and respectful to litigants.

[illegible] I will treat adverse parties and witnesses with [illegible] and consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct.

8. **I will advise my client that we will not pursue conduct which is intended** primarily to harass or drain the financial resources of the opposing party.

9. I will advise my client that we will not pursue tactics which are intended primarily for delay.

9. I will advise my client that we will not pursue any course of action which is without merit.

10. I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel.

11. I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

## III. LAWYER TO LAWYER

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct.

1. I will be courteous, civil, and prompt in oral and written communications.

2. I will not quarrel over matters of form or style, but I will concentrate on matters of substance.

3. I will [illegible] communication [illegible] actual contents of any made in documents identifying [illegible].

[illegible] I will [illegible] the parties conduct [illegible] such practices which are [illegible] provisions [illegible]

9. I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me.

10. I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel.

11. I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed.

12. I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the Court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court.

13. I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence.

17. I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where there meaning is reasonably clear.

18. I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable.

19. I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

## IV. LAWYER AND JUDGE

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession.

1. I will always recognize that the position of the judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.

2. I will conduct myself in Court, in a professional manner and demonstrate my respect for the Court and the law.

3. I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility.

4. I will be punctual.

5. I will not engage in any conduct which offends the dignity and decorum of proceedings.

6. I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.

7. I will respect the rulings of the Court.

8. I will ___ the power of my client and myself to influence or impede the ___ and unbiased dignity of the Court.

9. I will ___ cooperate ___ the ___ ___ ___ ___ ___ the Court ___ ___ and counsel ___ ___ ___ in the ___ ___ part.

# EXHIBIT "B"

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3836

TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

RE: Contract of Employment Regarding Representation of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust Partnership and John R. Willis Management Partnership Ltd., related to prosecution of Claims against Forest Oil Corporation, Conoco Inc., and Conoco/Philips Inc.

Dear Mr. & Mrs. McAllen:

The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C., and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies relating to environmental contamination issues related arising from illegal dumping of hazardous materials and radioactive materials.

## DESCRIPTION OF SERVICES

1. **CLIENTS AND CLIENT REPRESENTATIVES:** The firm is being retained to represent the following:

    1. El Rucio Land and Cattle Company, Inc. – Representative – James A. McAllen

    2. San Juanito Land Partnership Ltd. – Representative – James A. McAllen

    3. McAllen Trust Partnership – Representative – James A. McAllen

**EXHIBIT "B"**

Page 2

    4.    John R. Willis Management Partnership Ltd. – Representative – Frances W. McAllen

The representatives of the aforementioned entities are James A. McAllen and Frances W. McAllen.

**2.    PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.    LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.    NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.    TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

    1.    Proper and expected behavior of counsel are described in the Creed.

    2.    Civility and courtesy are expected from lawyers and are not a sign of weakness.

    3.    I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

    4.    I will not pursue tactics which are intended primarily for delay.

Page 3

5.    I will not pursue any course of action which is without merit.

6.    I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7.    You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.    FEES: The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

Page 4

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

**8. COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1) Court costs;

2) Citation and/or subpoena fees;

3) Deposition fees, costs and expenses;

Page 5

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.    NOTICE TO CLIENTS:**   The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.   ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Page 6

**11.  LAW APPLICABLE AND VENUE:** This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

12.  You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

13.  You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

14.  If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and representatives of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., and McAllen
Trust Partnerships

FRANCES McALLEN
On Behalf of John R. Willis Management,
Partnership, Ltd.

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

# JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3339

TELECOPIER (210) 826-3340

January 25, 2005

Mr. James A. McAllen
Mrs. Frances McAllen
McAllen Ranch
P.O. Box 1139
Edinburg, Texas 78540-1139

RE: Contract of Employment Regarding Representation of El
Rucio Land and Cattle Company, inc., San Juanito Land
Partnership Ltd., McAllen Trust Partnership and John R.
Willis Management Partnership Ltd., related to
prosecution of Claims against Forest Oil Corporation,
Conoco Inc., and Conoco/Philips Ind.

Dear Jimmy & Frances:

Enclosed herewith, please find the contract of employment
regarding the above referenced matter.

If the contract of employment meets with your approval, please
sign where indicated and return it to me at my office.

If you should have any questions regarding the aforementioned,
please do not hesitate to contact me at my office.

Very truly yours,

Jon Christian Amberson

JCA/bkg
enclosure

# JON CHRISTIAN AMBERSON, P.C.

*ATTORNEYS AT LAW*
*2135 HILDEBRAND AVE.*
*SAN ANTONIO, TEXAS 78209*
*TELEPHONE 210/826-3339*
*FACSIMILE 210/826-3340*

## FACSIMILE TRANSMISSION FORM

## ATTORNEY/CLIENT CONFIDENTIAL

DATE:   January 25, 2005 _        TIME: _____ .M.

SENDER:   ___ Jon Christian Amberson _____

PLEASE DELIVER TO:   James A. McAllen _____

(956) 686.9403 _____

NUMBER OF PAGES IN TRANSMISSION, INCLUDING COVER SHEET __8__

OPERATOR: Larissa ___

IF THERE IS A PROBLEM WITH TRANSMISSION,
PLEASE CONTACT OPERATOR AT 210/826-3339.

**MESSAGE:**

THIS INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS **ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION** INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT. **YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.** IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO THIS OFFICE AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE!

## THANK YOU

Electronically Filed
8/10/2017 2:41 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios     Ricardo Contreras     Adriana "Audry" Garcia     Sabrina S. Guerra     Oneida Lamas     Stephanie Palacios     Aida Villarreal
CHIEF DEPUTY        CHIEF OF ADMINISTRATION    ASSISTANT CHIEF DEPUTY    SENIOR ACCOUNTANT    DEPUTY DISTRICT CLERK SUPERVISOR    BUDGET AND PROCUREMENT    CHIEF OF APPEALS
                   AND PUBLIC INFORMATION                                                                                  OFFICER

Electronically Filed
8/9/2017 12:14 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| Vs. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER ON 1ST AMENDED PETITION FOR REFERRAL TO ARBITRATION

The Court has considered the Plaintiff's 1st Amended Petition for Referral to Arbitration and the attached exhibits and is of the opinion that same should be granted.

THEREFORE, it is Ordered that this matter be referred to arbitration pursuant to Tex. Civ. Prac. Rem. Code, §171.001 and §171.081 of the Texas Arbitration Act and shall be arbitrated pursuant to the terms of the agreement between the parties.

IT IS FURTHER ORDERED that this matter shall be referred to the Senior Presiding Judge of Hidalgo County, Texas for selection of a Retired District Judge who has previously served on the Hidalgo County District Courts and is presently retired or in Senior Status.

SIGNED on this the _____ day of _____, 2017.

_____
PRESIDING JUDGE

Electronically Filed
8/23/2017 11:47 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3339                    TELECOPIER (210) 826-3340

August 23, 2017

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
P.O. Box 87
Edinburg, Texas 78539

    RE:   Cause No. C-0340-15-A; *Jon Christian Amberson v. James Argyle McAllen, et. al.*

Dear Ms. Hinojosa:

    Please issue citation to the following parties for Service by Sheriff:

- James Argyle McAllen, **315 E. Monte Cristo Road, Edinburg, Texas 78541;**

- El Rucio Land and Cattle Company, Inc., **315 E. Monte Cristo Road, Edinburg, Texas 78541;**

- San Juanito Land Partnership, Ltd., **315 E. Monte Cristo Road, Edinburg, Texas 78541;**

- McAllen Trust Partnership, **315 E. Monte Cristo Road, Edinburg, Texas 78541.**

    Please serve the 3 entities and the individual with the Reinstated 1st Amended Petition to Compel Arbitration, with attached Exhibits and Proposed Order.

    Please contact me with any questions or concerns. Thank you.

Very truly yours,

Larissa Janee Hood

Electronically Filed
8/24/2017 3:25 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached you will find the service requested.

May this serve to inform you that service has been issued. Please proceed in attaching any file stamped documents that need to be served on your issued service.

Please note, the link you are about to open is a "live link" notification. Please ensure you are printing the service which includes our clerk's signature and the State Seal. If you are opening a document without the official certification (signature and seal), please close the window until the document is processed accordingly. This may take a few minutes.

* When serving protective orders, please DO NOT serve the TCIC form to respondent.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Laura Hinojosa
Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

| Nilda Palacios | Ricardo Contreras | Adriana "Audry" Garcia | Sabrina S. Guerra | Oneida Lamas | Stephanie Palacios | Aida Villarreal |
|---|---|---|---|---|---|---|
| CHIEF DEPUTY | CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION | ASSISTANT CHIEF DEPUTY | SENIOR ACCOUNTANT | DEPUTY DISTRICT CLERK SUPERVISOR | BUDGET AND PROCUREMENT OFFICER | CHIEF OF APPEALS |

**NOTICE: Pursuant to TRCP 126:  Statement of Inability to Afford Payment of Court Costs or an Appeal Bond filed =  NO**

**C-0340-15-A**
**92ND DISTRICT COURT, HIDALGO COUNTY, TEXAS**

**CITATION**
**THE STATE OF TEXAS**

**NOTICE TO DEFENDANT:**  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**EL RUCIO LANDA AND CATTLE COMPANY INC.**
**305 E MONTE CRISTO RD**
**EDINBURG TX  78541**

You are hereby commanded to appear by filing a written answer to the **REINSTATED 1ST AMENDED PETITION TO COMPEL ARBITRATION** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Luis M. Singleterry, 92nd District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 9TH day of AUGUST, 2017 and a copy of same accompanies this citation.  The file number and style of said suit being C-0340-15-A, **JON CHRISTIAN AMBERSON, P.C. VS. JAMES MCALLEN, EL RUCIO LANDA AND CATTLE COMPANY INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP**

Said Petition was filed in said court by Attorney LARISSA JANEE HOOD, 2135 E HILDEBRAND AVE  SAN ANTONIO TX  78209.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 24th day of August, 2017.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

_____
**JONATHAN CORONADO, DEPUTY CLERK**

**C-0340-15-A**
**OFFICER'S RETURN**

Came to hand on _____ of _____, 201____ at _____ o'clock ____.m. and executed in _____ County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the _____ (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
|      |      |      |       |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $_____
        miles ....................$_____

_____
**DEPUTY**
**COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF,**
**CONSTABLE OR CLERK OF THE COURT**
In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____ and the address is _____,and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____County, State of Texas, on the _____ day of _____, 201___.

_____
**Declarant"**

_____
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**


Electronically Filed
8/24/2017 3:25 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached you will find the service requested.

May this serve to inform you that service has been issued.  Please proceed in attaching any file stamped documents that need to be served on your issued service.

Please note, the link you are about to open is a "live link" notification.  Please ensure you are printing the service which includes our clerk's signature and the State Seal. If you are opening a document without the official certification (signature and seal), please close the window until the document is processed accordingly. This may take a few minutes.

\* When serving protective orders, please DO NOT serve the TCIC form to respondent.

We appreciate the opportunity to assist you.  Please contact our office if you have any questions or require additional information.

Sincerely,

Laura Hinojosa

Laura Hinojosa
Hidalgo County District Clerk

---

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

| Nilda Palacios | Ricardo Contreras | Adriana "Audry" Garcia | Sabrina S. Guerra | Oneida Lamas | Stephanie Palacios | Aida Villarreal |
| CHIEF DEPUTY | CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION | ASSISTANT CHIEF DEPUTY | SENIOR ACCOUNTANT | DEPUTY DISTRICT CLERK SUPERVISOR | BUDGET AND PROCUREMENT OFFICER | CHIEF OF APPEALS |

**NOTICE: Pursuant to TRCP 126:  Statement of Inability to Afford Payment of Court Costs or an Appeal Bond filed =  NO**

### C-0340-15-A
### 92ND DISTRICT COURT, HIDALGO COUNTY, TEXAS

### CITATION
### THE STATE OF TEXAS

**NOTICE TO DEFENDANT:**  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**James McAllen**
**315 E. MONTE CRISTO ROAD**
**EDINBURG, TX 78541**

You are hereby commanded to appear by filing a written answer to the **REINSTATED 1ST AMENDED PETITION TO COMPEL ARBITRATION** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Luis M. Singleterry, 92nd District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 9TH day of AUGUST, 2017 and a copy of same accompanies this citation.  The file number and style of said suit being C-0340-15-A, **JON CHRISTIAN AMBERSON, P.C. VS. JAMES MCALLEN, EL RUCIO LANDA AND CATTLE COMPANY INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP**

Said Petition was filed in said court by Attorney LARISSA JANEE HOOD, 2135 E HILDEBRAND AVE  SAN ANTONIO TX  78209.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 24th day of August, 2017.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

**JONATHAN CORONADO, DEPUTY CLERK**

**C-0340-15-A**
**OFFICER'S RETURN**

Came to hand on _____ of _____, 201____ at _____ o'clock ____.m. and executed in _____ County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the _____ (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
|      |      |      |       |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $_____
          miles ...................$_____

_____
**DEPUTY**
**COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF,**
**CONSTABLE OR CLERK OF THE COURT**
In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return.  If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury.  A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____ and the address is _____,and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____County, State of Texas, on the _____ day of _____, 201___.

_____
**Declarant"**

_____
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

Electronically Filed
8/24/2017 3:25 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached you will find the service requested.

May this serve to inform you that service has been issued.  Please proceed in attaching any file stamped documents that need to be served on your issued service.

Please note, the link you are about to open is a "live link" notification.  Please ensure you are printing the service which includes our clerk's signature and the State Seal. If you are opening a document without the official certification (signature and seal), please close the window until the document is processed accordingly. This may take a few minutes.

* When serving protective orders, please DO NOT serve the TCIC form to respondent.

We appreciate the opportunity to assist you.  Please contact our office if you have any questions or require additional information.

Sincerely,

Laura Hinojosa

Laura Hinojosa
Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

| Nilda Palacios | Ricardo Contreras | Adriana "Audry" Garcia | Sabrina S. Guerra | Oneida Lamas | Stephanie Palacios | Aida Villarreal |
| CHIEF DEPUTY | CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION | ASSISTANT CHIEF DEPUTY | SENIOR ACCOUNTANT | DEPUTY DISTRICT CLERK SUPERVISOR | BUDGET AND PROCUREMENT OFFICER | CHIEF OF APPEALS |

**NOTICE: Pursuant to TRCP 126:  Statement of Inability to Afford Payment
of Court Costs or an Appeal Bond filed =  NO**

**C-0340-15-A
92ND DISTRICT COURT, HIDALGO COUNTY, TEXAS**

**CITATION
THE STATE OF TEXAS**

**NOTICE TO DEFENDANT:**  You have been sued.  You may employ an attorney.  If you
or your attorney do not file a written answer with the clerk who issued this citation by 10:00
a.m. on the Monday next following the expiration of twenty (20) days after you were served
with this citation and petition, a default judgment may be taken against you.

**MCALLEN TRUST PARTNERSHIP
315 E MONTE CRISTO RD
EDINBURG TX  78541**

You are hereby commanded to appear by filing a written answer to the **REINSTATED 1ST
AMENDED PETITION TO COMPEL ARBITRATION** on or before 10:00 o'clock a.m.
on the Monday next after the expiration of twenty (20) days after the date of service hereof,
before the **Honorable Luis M. Singleterry, 92nd District Court** of Hidalgo County, Texas
at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 9TH day of AUGUST, 2017 and a copy of same
accompanies this citation.  The file number and style of said suit being C-0340-15-A, **JON
CHRISTIAN AMBERSON, P.C. VS. JAMES MCALLEN, EL RUCIO LANDA AND
CATTLE COMPANY INC., SAN JUANITO LAND PARTNERSHIP, LTD.,
MCALLEN TRUST PARTNERSHIP**

Said Petition was filed in said court by Attorney LARISSA JANEE HOOD, 2135 E
HILDEBRAND AVE  SAN ANTONIO TX  78209.

The nature of the demand is fully shown by a true and correct copy of the petition
accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of
law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas
on this the 24th day of August, 2017.

**LAURA HINOJOSA, DISTRICT CLERK
100 N. CLOSNER, EDINBURG, TEXAS
HIDALGO COUNTY, TEXAS**

_____
**JONATHAN CORONADO, DEPUTY CLERK**

**C-0340-15-A**
**OFFICER'S RETURN**

Came to hand on _____ of _____, 201____ at _____ o'clock ____.m. and executed in _____ County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the _____ (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|---|---|---|---|
|  |  |  |  |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $_____
        miles ...................$_____

_____
**DEPUTY**
       **COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF,**
              **CONSTABLE OR CLERK OF THE COURT**
In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____ and the address is _____,and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____County, State of Texas, on the _____ day of _____, 201___.

_____
**Declarant"**

_____
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

Electronically Filed
8/24/2017 3:25 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached you will find the service requested.

May this serve to inform you that service has been issued.  Please proceed in attaching any file stamped documents that need to be served on your issued service.

Please note, the link you are about to open is a "live link" notification.  Please ensure you are printing the service which includes our clerk's signature and the State Seal. If you are opening a document without the official certification (signature and seal), please close the window until the document is processed accordingly. This may take a few minutes.

\* When serving protective orders, please DO NOT serve the TCIC form to respondent.

We appreciate the opportunity to assist you.  Please contact our office if you have any questions or require additional information.

Sincerely,

Laura Hinojosa

Laura Hinojosa
Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios        Ricardo Contreras        Adriana "Audry" Garcia        Sabrina S. Guerra        Oneida Lamas        Stephanie Palacios    Aida Villarreal
CHIEF DEPUTY        CHIEF OF ADMINISTRATION        ASSISTANT CHIEF DEPUTY        SENIOR ACCOUNTANT        DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                  AND PUBLIC INFORMATION                                                                                                    OFFICER

**NOTICE: Pursuant to TRCP 126:  Statement of Inability to Afford Payment of Court Costs or an Appeal Bond filed =  NO**

**C-0340-15-A**
**92ND DISTRICT COURT, HIDALGO COUNTY, TEXAS**

**CITATION**
**THE STATE OF TEXAS**

**NOTICE TO DEFENDANT:**  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**SAN JUANITO LAND PARTNERSHIP, LTD.**
**315 E MONTE CRISTO RD**
**EDINBURG TX  78541**

You are hereby commanded to appear by filing a written answer to the **REINSTATED 1ST AMENDED PETITION TO COMPEL ARBITRATION** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Luis M. Singleterry, 92nd District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 9TH day of AUGUST, 2017 and a copy of same accompanies this citation.  The file number and style of said suit being C-0340-15-A, **JON CHRISTIAN AMBERSON, P.C. VS. JAMES MCALLEN, EL RUCIO LANDA AND CATTLE COMPANY INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP**

Said Petition was filed in said court by Attorney LARISSA JANEE HOOD, 2135 E HILDEBRAND AVE  SAN ANTONIO TX  78209.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 24th day of August, 2017.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

_____
**JONATHAN CORONADO, DEPUTY CLERK**

**C-0340-15-A**
**OFFICER'S RETURN**

Came to hand on _____ of _____, 201____ at _____ o'clock ____.m. and executed in _____ County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the _____ (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
|      |      |      |       |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $_____
          miles ...................$_____

_____
**DEPUTY**
**COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF,**
**CONSTABLE OR CLERK OF THE COURT**
In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____ and the address is _____,and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____County, State of Texas, on the _____ day of _____, 201___.

_____
**Declarant"**

_____
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| FRANCES MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY TEXAS |

## THE MCALLEN PARTIES' ORIGINAL ANSWER, COUNTERCLAIMS, AND CLAIMS AGAINST THIRD-PARTIES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants JAMES ARGYLE MCALLEN ("MCALLEN"), EL RUCIO

LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and

MCALLEN TRUST PARTNERSHIP (collectively the "MCALLEN PARTIES") and file their

Original Answer, Counterclaims and Claims against Third-Parties against Plaintiff JON

CHRISTIAN AMBERSON, P.C., Third-Party JON CHRISTIAN AMBERSON

("AMBERSON") (collectively "PLAINTIFFS") and Third-Party AMBERSON NATURAL

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

RESOURCES, LLC ("ANR").  In support of their Answer, Counterclaims, and Claims against Third-Parties the MCALLEN PARTIES show as follows.

## I.
## GENERAL DENIAL

The MCALLEN PARTIES generally deny each and every material allegation contained in JON CHRISTIAN AMBERSON, P.C.'s Petition and/or live pleadings, and demands strict proof thereof, and to the extent that such matters are questions of fact, says that JON CHRISTIAN AMBERSON, P.C. should prove such facts by a preponderance of the evidence, clear and convincing evidence, or such other evidence as the law may require.

## II.
## THE PARTIES, JURISDICTION, AND VENUE

**A.     The Parties**

Defendants, the MCALLEN PARTIES, are an individual and entities reside in or have their principal place of business in Hidalgo County.

Plaintiff JON CHRISTIAN AMBERSON, P.C. is a Texas corporation.   JON CHRISTIAN AMBERSON, P.C. has already appeared in this case.

Third-Party JON CHRISTIAN AMBERSON is an individual residing in Bexar County and who may be served with process at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209.

Third-Party AMBERSON NATURAL RESOURCES, LLC is a Texas limited liability company with its principal place of business in Bexar County.   AMBERSON NATURAL RESOURCES, LLC may be served through its registered agent, JON CHRISTIAN AMBERSON, at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209.

**B.     Jurisdiction and Venue**

153539                                          2

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

The Court has jurisdiction over all the parties because they are all either individuals who reside in the State of Texas or are business entities with their principal places of business in the State of Texas.   Venue is proper in Hidalgo County because Defendants JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP all reside or have their principal offices in Hidalgo County and because all or substantial part of the events giving rise to this action occurred in Hidalgo County.  TEX. CIV. PRAC. & REM. CODE § 15.002(a).

## III.
## BACKGROUND FACTS
## IN SUPPORT OF THE MCALLEN PARTIES'
## COUNTERCLAIMS AND CLAIMS AGAINST THIRD-PARTIES

For over 15 years PLAINTIFFS served as legal counsel for the MCALLEN PARTIES on several legal matters.  In addition, PLAINTIFFS and ANR have engaged in various business transactions with various MCALLEN PARTIES, including a real estate transaction known as "Cannon Grove".  PLAINTIFFS and ANR have breached various tort, contractual and legal duties owed to the MCALLEN PARTIES in the course of their relationship, resulting in damages to the MCALLEN PARTIES.  Pursuant to Rule 47, the MCALLEN PARTIES seek monetary relief of over $1,000,000.

## IV.
## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

### A.    Breach of Fiduciary Duty

As the long-time attorneys for the MCALLEN PARTIES PLAINTIFFS owed the MCALLEN PARTIES fiduciary duties.  PLAINTIFFS breached their fiduciary duties to the MCALLEN PARTIES.  As a result of PLAINTIFFS' breach of their fiduciary duties, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

limit. As additional damages, the Court should order PLAINTIFFS to forfeit and disgorge legal fees they collected from the MCALLEN PARTIES.

### C.      Misrepresentation

PLAINTIFFS made multiple false and intentional misrepresentations to the MCALLEN PARTIES. PLAINTIFFS made those representations to the MCALLEN PARTIES knowing that they were false and with the intent that the MCALLEN PARTIES would rely on those representations. The MCALLEN PARTIES relied on PLAINTIFFS' false representations. As a result of PLAINTIFFS' misrepresentations, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional limit.

### D.      Violation of the Texas Theft Liability Act

PLAINTIFFS are liable to the MCALLEN PARTIES under the Texas Theft Liability Act. TEX. CIV. PRAC. & REM. CODE § 134.001 *et seq.* The MCALLEN PARTIES had a possessory right to monies it paid PLAINTIFFS. PLAINTIFFS took these funds from the MCALLEN PARTIES in violation of Section 31.03 of the Texas Penal Code. PLAINTIFFS intentionally deprived the MCALLEN PARTIES of these funds resulting in damages to the MCALLEN PARTIES. The MCALLEN PARTIES are entitled to recover their actual damages as well as statutory damages and attorneys' fees. TEX. CIV. PRAC. & REM. CODE §§ 134.005(a)(1) and (b).

### E.      Money Had and Received/Unjust Enrichment

PLAINTIFFS fraudulently obtained monies from the MCALLEN PARTIES. PLAINTIFFS continue to hold these funds that, in equity and good conscience, belong to the MCALLEN PARTIES. To prevent the unjust enrichment of PLAINTIFFS, such monies had and received should, in equity, be returned to the MCALLEN PARTIES.

153539                                                          4

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

### F.    Conversion

The MCALLEN PARTIES owned personal property in the form of monies that they paid to PLAINTIFFS.  PLAINTIFFS accepted that money under false pretenses and wrongfully exercised dominion or control over that property. The MCALLEN PARTIES demanded return of the property, but PLAINTIFFS refused to return the funds.  Consequently, the MCALLEN PARTIES suffered damages as a result of PLAINTIFFS' conversion of the MCALLEN PARTIES' property.

### G.    Exemplary Damages

As a result of PLAINTIFFS' breach of fiduciary duty, fraud, unjust enrichment and conversion, and PLAINTIFFS' violation of the Texas Theft Liability Act, the MCALLEN PARTIES are entitled to recover exemplary damages from PLAINTIFFS in addition to the MCALLEN PARTIES' actual damages.    TEX. CIV. PRAC. & REM. CODE § 41.003. PLAINTIFFS' conduct was both fraudulent and malicious.  Moreover, because PLAINTIFFS' conduct involves misapplication of fiduciary property and theft – both first degree felonies – the statutory cap on exemplary damages is inapplicable. *Id.* at § 41.008(c)(10) and (13).

### H.    Defaulted Promissory Note

MCALLEN is a holder of a promissory note that AMBERSON signed.  AMBERSON defaulted on the note.  MCALLEN is entitled to recover the full face value of the note, as well as interest and attorneys' fees.

### I.    Unjust Enrichment – Cannon Grove

Unjust enrichment also occurs when one passively receives a benefit that would be unconscionable to retain.  With respect to Cannon Grove, AMBERSON and ANR passively received a benefit that, in equity and good conscience, belongs to MCALLEN.  To prevent unjust

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

enrichment, the Court should award to MCALLEN, AMBERSON's and ANR's interest in Cannon Grove.

### K.    Declaratory Judgment – Cannon Grove

In the alternative to his claim for unjust enrichment, and pursuant to Section 37.003 of the Texas Civil Practice & Remedies Code, MCALLEN requests a declaration that funds MCALLEN provided AMBERSON and ANR to purchase an interest in Cannon Grove was not a gift but, rather, was a loan for which AMBERSON and ANR are still liable.  Pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code, MCALLEN requests that he be awarded his costs and reasonable and necessary attorneys' fees incurred in this action.

### V.
### CONDITIONS PRECEDENT

All conditions precedent to the MCALLEN PARTIES' claims for relief have been performed or have occurred.

### VI.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants and Third-Party Plaintiffs JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP respectfully request that, upon the final disposition of this matter, the Court to enter a judgment that JON CHRISTIAN AMBERSON, P.C. take nothing on its claims against the MCALLEN PARTIES, and that the MCALLEN PARTIES recover the following damages on their counterclaims against PLAINTIFFS and ANR:

    a.    actual damages;

    b.    forfeiture of legal fees PLAINTIFFS received from the MCALLEN PARTIES;

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

c.      exemplary damages;

d.      reasonable and necessary attorneys' fees;

e.      pre-judgment interest;

f.      post-judgment interest;

g.      court costs;

h.      a declaration that the $4.5 million that MCALLEN provided
AMBERSON and ANR to purchase an interest in Cannon Grove
was not a gift but, rather, was a loan for which ANR is still liable;
and

i.      any other relief to which the MCALLEN PARTIES are entitled.

Date:  September 25, 2017.

Respectfully submitted,

/s/ David M. Prichard
David M. Prichard
State Bar No. 16317900
Direct Line:  (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

Electronically Filed
9/25/2017 1:55 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

**ATTORNEYS FOR DEFENDANTS,
JAMES ARGYLE MCALLEN, EL RUCIO
LAND AND CATTLE COMPANY, INC., SAN
JUANITO LAND PARTNERSHIP, LTD. and
MCALLEN TRUST PARTNERSHIP**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendants' Original Answer, Counterclaims, and Claims against Third-Parties was served on September 25, 2017 to the following:

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

/s/ David M. **Prichard**
David M. Prichard

153539                                    8

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| FRANCES MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY TEXAS |

## THE MCALLEN PARTIES' FIRST AMENDED ANSWER, COUNTERCLAIMS, AND CLAIMS AGAINST THIRD-PARTIES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants JAMES ARGYLE MCALLEN ("MCALLEN"), EL RUCIO

LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and

MCALLEN TRUST PARTNERSHIP (collectively the "MCALLEN PARTIES") and file their

First Amended Answer, Counterclaims and Claims against Third-Parties against Plaintiff JON

CHRISTIAN   AMBERSON,   P.C.,   Third-Party   JON   CHRISTIAN   AMBERSON

("AMBERSON") (collectively "PLAINTIFFS") and Third-Party AMBERSON NATURAL

153696                                    1

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

RESOURCES, LLC ("ANR").  In support of their Answer, Counterclaims, and Claims against Third-Parties the MCALLEN PARTIES show as follows.

## I.
## GENERAL DENIAL

The MCALLEN PARTIES generally deny each and every material allegation contained in JON CHRISTIAN AMBERSON, P.C.'s Petition and/or live pleadings, and demands strict proof thereof, and to the extent that such matters are questions of fact, says that JON CHRISTIAN AMBERSON, P.C. should prove such facts by a preponderance of the evidence, clear and convincing evidence, or such other evidence as the law may require.

## II.
## THE PARTIES, JURISDICTION, AND VENUE

### A.     The Parties

Defendants, the MCALLEN PARTIES, are an individual and entities reside in or have their principal place of business in Hidalgo County.

Plaintiff JON CHRISTIAN AMBERSON, P.C. is a Texas corporation.   JON CHRISTIAN AMBERSON, P.C. has already appeared in this case.

Third-Party JON CHRISTIAN AMBERSON is an individual residing in Bexar County and who may be served with process at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209.

Third-Party AMBERSON NATURAL RESOURCES, LLC is a Texas limited liability company with its principal place of business in Bexar County.  AMBERSON NATURAL RESOURCES, LLC may be served through its registered agent, JON CHRISTIAN AMBERSON, at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209.

153696                                    2

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

### B.   Jurisdiction and Venue

The Court has jurisdiction over all the parties because they are all either individuals who reside in the State of Texas or are business entities with their principal places of business in the State of Texas.  Venue is proper in Hidalgo County because Defendants JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP all reside or have their principal offices in Hidalgo County and because all or substantial part of the events giving rise to this action occurred in Hidalgo County.  TEX. CIV. PRAC. & REM. CODE § 15.002(a).

## III.
## BACKGROUND FACTS
## IN SUPPORT OF THE MCALLEN PARTIES'
## COUNTERCLAIMS AND CLAIMS AGAINST THIRD-PARTIES

For over 15 years PLAINTIFFS served as legal counsel for the MCALLEN PARTIES on several legal matters.  In addition, PLAINTIFFS and ANR have engaged in various business transactions with various MCALLEN PARTIES, including a real estate transaction known as "Cannon Grove".  JAMES A. MCALLEN also paid off a loan that PLAINTIFFS owed to a lender – at PLAINTIFFS' request and based on their representations that they would repay MCALLEN.  PLAINTIFFS and ANR have breached various tort, contractual and legal duties owed to the MCALLEN PARTIES in the course of their relationship, resulting in damages to the MCALLEN PARTIES.  Pursuant to Rule 47, the MCALLEN PARTIES seek monetary relief of over $1,000,000.

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## IV.
## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

### A.      Breach of Fiduciary Duty

As the long-time attorneys for the MCALLEN PARTIES PLAINTIFFS owed the MCALLEN PARTIES fiduciary duties.  PLAINTIFFS breached their fiduciary duties to the MCALLEN PARTIES.  As a result of PLAINTIFFS' breach of their fiduciary duties, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional limit.  As additional damages, the Court should order PLAINTIFFS to forfeit and disgorge legal fees they collected from the MCALLEN PARTIES.

### C.      Misrepresentation

PLAINTIFFS made multiple false and intentional misrepresentations to the MCALLEN PARTIES.  PLAINTIFFS made those representations to the MCALLEN PARTIES knowing that they were false and with the intent that the MCALLEN PARTIES would rely on those representations.  The MCALLEN PARTIES relied on PLAINTIFFS' false representations.  As a result of PLAINTIFFS' misrepresentations, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional limit.

### D.      Violation of the Texas Theft Liability Act

PLAINTIFFS are liable to the MCALLEN PARTIES under the Texas Theft Liability Act.  TEX. CIV. PRAC. & REM. CODE § 134.001 *et seq.*  The MCALLEN PARTIES had a possessory right to monies it paid PLAINTIFFS.  PLAINTIFFS took these funds from the MCALLEN PARTIES in violation of Section 31.03 of the Texas Penal Code.  PLAINTIFFS intentionally deprived the MCALLEN PARTIES of these funds resulting in damages to the MCALLEN PARTIES.  The MCALLEN PARTIES are entitled to recover their actual damages

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

as well as statutory damages and attorneys' fees.   TEX. CIV. PRAC. & REM. CODE §§ 134.005(a)(1) and (b).

### E.      Equitable Subrogation

JAMES A. MCALLEN asserts a claim of equitable subrogation against PLAINTIFFS in connection with MCALLEN's paying off a loan that PLAINTIFFS owed a lender.  PLAINTIFFS were primarily liable for the loan from the lender.  MCALLEN involuntarily paid that debt on behalf of PLAINTIFFS.   PLAINTIFFS have failed to reimburse MCALLEN for paying PLAINTIFFS' debt to the lender including the costs MCALLEN incurred paying off PLAINTIFFS' debt.

### F.      Money Had and Received/Unjust Enrichment

PLAINTIFFS fraudulently obtained monies from the MCALLEN PARTIES. PLAINTIFFS continue to hold these funds that, in equity and good conscience, belong to the MCALLEN PARTIES.  To prevent the unjust enrichment of PLAINTIFFS, such monies had and received should, in equity, be returned to the MCALLEN PARTIES.

### G.      Conversion

The MCALLEN PARTIES owned personal property in the form of monies that they paid to PLAINTIFFS.   PLAINTIFFS accepted that money under false pretenses and wrongfully exercised dominion or control over that property. The MCALLEN PARTIES demanded return of the property, but PLAINTIFFS refused to return the funds.  Consequently, the MCALLEN PARTIES suffered damages as a result of PLAINTIFFS' conversion of the MCALLEN PARTIES' property.

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

### H.   Exemplary Damages

As a result of PLAINTIFFS' breach of fiduciary duty, fraud, unjust enrichment and conversion, and PLAINTIFFS' violation of the Texas Theft Liability Act, the MCALLEN PARTIES are entitled to recover exemplary damages from PLAINTIFFS in addition to the MCALLEN PARTIES' actual damages.   TEX. CIV. PRAC. & REM. CODE § 41.003. PLAINTIFFS' conduct was both fraudulent and malicious.  Moreover, because PLAINTIFFS' conduct involves misapplication of fiduciary property and theft – both first degree felonies – the statutory cap on exemplary damages is inapplicable.  *Id.* at § 41.008(c)(10) and (13).

### I.   Defaulted Promissory Notes

MCALLEN is a holder of a promissory notes that AMBERSON signed.  AMBERSON defaulted on the note.  MCALLEN is entitled to recover the full face value of the note, as well as interest and attorneys' fees.

### J.   Unjust Enrichment – Cannon Grove

Unjust enrichment also occurs when one passively receives a benefit that would be unconscionable to retain.  With respect to Cannon Grove, AMBERSON and ANR passively received a benefit that, in equity and good conscience, belongs to MCALLEN.  To prevent unjust enrichment, the Court should award to MCALLEN, AMBERSON's and ANR's interest in Cannon Grove.

### K.   Declaratory Judgment – Cannon Grove

In the alternative to his claim for unjust enrichment, and pursuant to Section 37.003 of the Texas Civil Practice & Remedies Code, MCALLEN requests a declaration that funds MCALLEN provided AMBERSON and ANR to purchase an interest in Cannon Grove was not a gift but, rather, was a loan for which AMBERSON and ANR are still liable.  Pursuant to Section

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

37.009 of the Texas Civil Practice & Remedies Code, MCALLEN requests that he be awarded his costs and reasonable and necessary attorneys' fees incurred in this action.

**V.**
**CONDITIONS PRECEDENT**

All conditions precedent to the MCALLEN PARTIES' claims for relief have been performed or have occurred.

**VI.**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants and Third-Party Plaintiffs JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP respectfully request that, upon the final disposition of this matter, the Court to enter a judgment that JON CHRISTIAN AMBERSON, P.C. take nothing on its claims against the MCALLEN PARTIES, and that the MCALLEN PARTIES recover the following damages on their counterclaims against PLAINTIFFS and ANR:

a.    actual damages;

b.    forfeiture of legal fees PLAINTIFFS received from the MCALLEN PARTIES;

c.    exemplary damages;

d.    reasonable and necessary attorneys' fees;

e.    pre-judgment interest;

f.    post-judgment interest;

g.    court costs;

h.    a declaration that the $4.5 million that MCALLEN provided AMBERSON and ANR to purchase an interest in Cannon Grove

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

was not a gift but, rather, was a loan for which ANR is still liable;
and

i.   any other relief to which the MCALLEN PARTIES are entitled.

Date:  October 23, 2017.

Respectfully submitted,

/s/ David M. **Prichard**
David M. Prichard
State Bar No. 16317900
Direct Line:  (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR DEFENDANTS,
JAMES ARGYLE MCALLEN, EL RUCIO
LAND AND CATTLE COMPANY, INC., SAN
JUANITO LAND PARTNERSHIP, LTD. and
MCALLEN TRUST PARTNERSHIP**

Electronically Filed
10/23/2017 2:10 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendants' First Amended Answer, Counterclaims, and Claims against Third-Parties was served on October 23, 2017 to the following:

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

/s/ David M. Prichard
David M. Prichard

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

**PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AS TO THE "CANNON GROVE" CLAIMS**

Plaintiff/Counter-Defendant Jon Christian Amberson P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (collectively, the "**Amberson Parties**") move for "traditional" summary judgment under Rule 166a(c) on each claim asserted by Defendants to the extent that the Defendants' claim relates to the "Cannon Grove" real estate transaction.

## I.  Summary Judgment Grounds

Summary judgment should be granted as to the "Cannon Grove" claims because, as a matter of law, (i) they are barred by limitations, and (ii) they are barred by the statute of frauds. Defendants have no legal basis for any extension of limitations as to the Cannon Grove claims,

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

and the four year statute of limitations has run against each such claim.  In addition to the expiration of limitations, Defendants' claims related to the Cannon Grove transaction are barred by the statute of frauds.

## II. <u>Summary Judgment Evidence</u>

The summary judgment evidence consists of the declaration of Jon Christian Amberson submitted as **<u>Exhibit A</u>** to this motion, including the numbered exhibits attached to that declaration.  All references to numbered exhibits herein are to those attached to the Amberson declaration.

## III. <u>Summary Judgment Facts</u>

The summary judgment evidence establishes the following undisputed facts:

**A.    The Amberson Firm's Engagement by the McAllen Parties in the Forest Oil Litigation**

1.    Jon Christian Amberson ("***Amberson***") has been sued in his individual capacity as a Third-Party Defendant.  He is an attorney and the principal of Plaintiff Jon Christian Amberson P.C. (the "***Amberson Firm***").

2.    In late 2004, James McAllen ("***Mr. McAllen***") and the other Defendants (collectively, the "***McAllen Parties***") engaged the Amberson Firm to represent them on claims against Forest Oil Company for environmental contamination of the McAllen Ranch, and personal injury to Mr. McAllen (the "***Forest Oil Litigation***").

3.    Mr. McAllen and the other McAllen Parties executed engagement agreements with the Amberson Firm relating to the Forest Oil Litigation (collectively, the "***Engagement Agreement***"). **<u>Exhibit 1</u>**.  The Engagement Agreement provided for arbitration of any fee dispute in connection with that engagement.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

4.      For twelve years the Amberson Firm represented the McAllen Parties in the Forest Oil Litigation.  That arbitration resulted in an award in 2012 (the "*Award*") in favor of the McAllen Parties.  **Exhibit 2**.  Over contentious challenges by one of the most prominent litigation firms in the state, that Award was sustained in the district court, in the court of appeals, and subsequently on two separate occasions in the Texas Supreme Court.  The Award represented the culmination of the Amberson Firm's efforts (and other firms that it affiliated) to secure a judgment for the McAllen Parties against Forest Oil for more than $28 million (including accrued interest).  **Exhibit 3**.  Included in this Award and judgment, the McAllen Parties were granted more than $6.7 million in attorneys' fees.  The Texas Supreme Court upheld the Award in an opinion issued on April 28, 2017. *Forest Oil Corp. v. El Lucio Land & Cattle Co.*, 518 S.W.3d 422 (Tex. 2017), and subsequently issued its mandate enforcing judgment on the Award.  **Exhibit 4**.  The McAllen Parties have received satisfaction of all or substantially all of the monetary damages due under the Award. *See* **Exhibit 5**.

5.      As an essential part of the Forest Oil Litigation, the Amberson Firm sought and secured additional relief in the Award and judgment, requiring Forest Oil to remediate its extensive contamination of the McAllen Ranch, including scattered radioactive material and other toxic substances.  The value of this clean-up remedy, over time, is anticipated to substantially exceed the $28 million monetary recovery. Amberson Decl. ¶ 6.

6.      The Amberson Firm has brought this action to compel arbitration, in accordance with the Engagement Agreement, of its claim to legal fees due from the McAllen Parties based on the affirmed Award.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**B.      The Unrelated 2009 Cannon Grove Transaction**

7.      Prior to 2009 Mr. McAllen owned real property in Edinburg, Texas known as the "Cannon Grove" property (the "*CG Property*").  In 2008 he deeded the CG Property to his Texas limited liability company, which he subsequently re-named Cannon Grove Investments, LLC (the "*CGI LLC*").  True and correct copies of Mr. McAllen's 2008 deed and the Texas Secretary of State's record of the grantee's name change to Canon Grove Investments, LLC are respectively attached as **Exhibits 6** and **7**.

8.      In 2009 Amberson was still married to Mr. McAllen's daughter.  Their three children are Mr. McAllen's grandchildren.  Mr. McAllen wanted to undertake a tax free exchange transaction, and wanted Amberson to act as a counter-party in that transaction.

9.      Through his attorney, Ben McCaleb, Mr. McAllen proposed an arrangement by which he would loan $4.5 million to enable a company (to be owned by Amberson) to purchase a 90 percent interest in CGI LLC so that Mr. McAllen could defer his income taxes.  In addition to Mr. McAllen's tax accountant, Alan Lucke, at least three attorneys were advising and representing Mr. McAllen in this transaction: (i) Mr. McCaleb, (ii) Richard Leshin, a tax attorney in Corpus Christi, and (iii) a tax attorney with the Philadelphia firm of Drinker Biddle. *See* **Exhibit 8**. Neither Amberson nor his firm represented Mr. McAllen or GCI LLC in this transaction.

10.      Amberson took Mr. McAllen's proposal to his tax accountant for review and advice.  After that review, Amberson decided that he could not receive the funds as a "loan" with strings attached, and that it should be an arms-length arrangement.  On March 11, 2009 Amberson therefore wrote a letter to Mr. McAllen to explain that Amberson did not want his wife and him to be exposed to any risk of potential tax fraud issues, and to clarify what he could do (and would not do) in connection with the purchase of equity in CGI LLC. **Exhibit 9**.  Amberson's letter made it

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

clear to Mr. McAllen that, based on the tax advice Amberson had received, he would not agree to

Mr. McAllen's proposal to treat the $4.5 million transfer as a "loan," and that if Mr. McAllen

chose to involve Amberson in the transaction, his transfer of the $4.5 million would have to be an

outright gift; only then would Amberson feel comfortable using the funds to purchase the CGI

LLC interest.

11.     Seven days later, Mr. McAllen proceeded with the transaction, transferring $4.5

million to a new limited liability company, Amberson Natural Resources LLC ("**ANR LLC**").

**Exhibit 10**.  Consistent with Amberson's letter, ANR LLC then purchased a 90 percent interest in

CGI LLC from Mr. McAllen, using the gifted funds to fully pay the purchase price.

12.     Consistent with Amberson's March 2009 letter insisting that any transfer be a gift

and not a loan, Mr. McAllen did not send Amberson or ANR LLC any loan agreement or

promissory note to sign.  Neither did any of his three law firms. Neither Amberson (nor his law

firm) nor ANR LLC signed any instrument at any time reflecting any loan from Mr. McAllen

related to the Cannon Grove transaction.  Indeed, Mr. McAllen never made any demand as to any

alleged loan until after Amberson's 2013 divorce from his daughter was complete, in which

Amberson was awarded all rights in ANR LLC (the company that owns the CGI LLC interest)—

at least five years after the Cannon Grove transaction.

13.     Eight years after the Cannon Grove transaction, Amberson and his company, ANR

LLC, have now been joined as a third party defendants on the Cannon Grove claims.  However,

ANR LLC is not part of the Amberson Firm.  It is not engaged in the practice of law.  It never

represented the McAllen Parties at any time in the practice of law.  It has not appeared as counsel

before the bar of any court, nor could it.  It has not acted for the McAllen Parties in connection

with the Forest Oil Litigation.  It has never charged legal fees to the McAllen Parties, or to CGI

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

LLC. It has not entered into any arbitration agreement with the McAllen Parties or CGI LLC. It is not a party to any engagement agreement with the McAllen Parties or CGI LLC. It has not sought any benefits under the Engagement Agreement or any other arbitration agreement. It is not a plaintiff in this case, and has not asserted any claim against the McAllen Parties or CGI LLC of any nature, for legal fees or otherwise.

14. The Amberson Firm's petition solely seeks arbitration of its claim to recover fees for the legal work that it performed on behalf of the McAllen Parties in the Forest Oil Litigation. The law firm's petition does not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. The Forest Oil Litigation did not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. Moreover, the CG Property is unrelated to and geographically separate from the McAllen Ranch. The CG Property was not involved in the Forest Oil Litigation; it was not involved in the underlying arbitration with Forest Oil. The CG Property was never leased to Forest Oil Company.

15. ANR LLC is not a plaintiff in the Amberson Firm's petition. Amberson never represented Mr. McAllen with respect to the Cannon Grove transaction, nor did the Amberson Firm. As noted above, Mr. McAllen was separately represented and advised in the Cannon Grove transaction by three other law firms. Neither the CG Property nor the CGI LLC was the subject of any engagement agreement at any time with Amberson or with the Amberson Firm. Neither Amberson nor the Amberson Firm has charged legal fees to CGI LLC.

16. In response to the Amberson Firm's petition to compel arbitration for recovery of its legal fees in the Forest Oil Litigation, the McAllen Parties filed their Original Answer, Counterclaim, and Claims Against Third Parties on September 25, 2017. The McAllen Parties' counterclaim and third party claims involving the Cannon Grove transaction were not filed until more than eight years after the Cannon Grove transaction was concluded.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## IV. <u>Argument and Authorities</u>

17.     Defendants know that there was no promissory note executed in the Cannon Grove transaction.  They cannot say otherwise without committing perjury in this Court.[1]

18.     The only two claims asserted by the McAllen Parties that even purport to address the Cannon Grove transaction specifically are "Unjust Enrichment" and "Declaratory Judgment." The separate claim for "Breach of Fiduciary Duty" would not apply to the Cannon Grove transaction because Mr. McAllen was represented in that transaction by three law firms of his own choosing.  Neither Amberson nor his law firm represented Mr. McAllen or CGI LLC in the transaction.

19.     Likewise, the completely vague claim of "Misrepresentation" would not have any basis as to the Cannon Grove transaction in view of the fact that there was no concealment of any nature: Amberson informed Mr. McAllen that he would not participate in a loan transaction before Mr. McAllen proceeded.  Amberson did exactly what he told Mr. McAllen he was willing to do.

20.     The "Conversion" and "Theft" claims would not apply for at least two reasons.  As to the former, money is fungible and therefore is generally not subject to conversion, unless it is a specifically identifiable fund such as a trust. *See Edlund v. Bounds*, 842 S.W.2d 719, 727-28 (Tex. App.—Dallas 1992, writ denied) ("An action for the conversion of money will lie if the money can be identified as a specific chattel," and holding claim for conversion inappropriate "[w]hen an indebtedness can be discharged by payment of money generally"); *Bobby Smith Brokerage, Inc. v. Bones*, 741 S.W.2d 621, 623 (Tex. App.—Fort Worth 1987, no writ) (same).  Moreover, there is no theft where money is voluntarily transferred to an intended recipient. *Hughes v. Montee*, 05-

---

[1] The claim in the McAllen Parties' threadbare pleading referring to "Defaulted Promissory Notes" relates instead to certain notes that were executed with banks for bank loans having nothing to do with the Cannon Grove transaction.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

15-00129-CV, 2016 WL 3946887, at *4 (Tex. App.—Dallas July 18, 2016, pet. denied) ("A voluntary transfer cannot be theft under the [Texas Theft Liability Act]."); *Beardmore v. Jacobsen*, 131 F. Supp. 3d 656, 669 (S.D. Tex. 2015) ("pitch deck" voluntarily transferred by way of an email was not taken without consent so Texas Theft Liability Act did not apply). Indeed, with awareness that he was making a gift, Mr. McAllen received the money back in payment for his 90 percent interest in CGI LLC.

21.    However, regardless of the theory advanced, and irrespective of any other legal defense, as to the Cannon Grove transaction, each claim is barred in any event by the statute of limitations and the statute of frauds.

### A.    To the extent that any of the causes of action are based on the Cannon Grove Transaction, they are barred by limitations.

22.    The longest limitations period that could conceivably relate to any claim involving the Cannon Grove Transaction would be four years. *See* TEX. CIV. PRAC. & REM. CODE § 16.004 (four-year period for breach of fiduciary duty, fraud, and debt); § 16.003(a) (two-year period for taking or detaining the personal property of another); *Merry Homes, Inc. v. Dao*, 359 S.W.3d 881, 883-84 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (two-year period for unjust enrichment and money had and received); *N.W. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied) (limitations period for declaratory judgment determined by legal remedy underlying the claim).

23.    Claims for breach of fiduciary duty accrue, at the latest, when the claimant knew, or by exercising reasonable diligence should have known, the facts giving rise to the claim. *Ward v. Stanford*, 443 S.W.3d 334, 349 (Tex. App.—Dallas 2014, pet. denied). Based on Amberson's unequivocal March 11, 2009 letter, Mr. McAllen knew in 2009 that Amberson's position was that the $4.5 million transfer would have to be a gift and not a loan. And Mr. McAllen and his agents

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

at the law firms representing Mr. McAllen in the transaction certainly *had reason to know* in 2009 that Amberson executed no loan documents.

24.     Any cause of action for misrepresentation occurred when the alleged misrepresentation was made or, even if concealed, when it could have been discovered through reasonable diligence. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988).  Here, there was no concealment because Amberson expressly disclosed eight days in advance of the transaction, his position that if Mr. McAllen chose to proceed, the transfer would be considered a gift.

25.     The Amberson Parties deny that any theft occurred, and certainly Mr. McAllen (through his company CGI LLC) received the money back, but regardless, any cause of action under the Texas Theft Liability Act relating to the Cannon Grove transaction accrued in 2009 when the $4.5 million transfer was received. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) (holding that the statute of limitations begins to run when a claim accrues, and that a claim accrues when a wrongful act causes injury).

26.     Similarly, any cause of action for unjust enrichment or money had and received accrued if and when the money was retained. *See Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 337 (Tex. App.—Texarkana 1999, no pet.) ("A cause of action for money had and received accrues when money is paid."); *see also H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.) (cause of action for money had and received accrued when money was retained without consideration).  Here money was not retained, but even assuming it had been, the statute of limitations would have run long ago.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

27.     As to the declaratory judgment claims, these do not extend the statute of limitations; declaratory judgment claims expire coincident with limitations on the underlying legal claims. *See N.W. Austin Mun. Util. Dist. No. 1*, 274 S.W.3d at 836.

28.     In short, each cause of action that Defendants may seek to apply to the 2009 Cannon Grove transaction was barred by limitations long before they filed their recent counterclaim and third-party claims.

**B.     Section 16.069 does not save the Cannon Grove Transaction claims from limitations.**

29.     Section 16.069, TEX. CIV. PRAC. & REM. CODE only allows a defendant to revive an expired ***counterclaim*** or ***cross-claim*** against an existing litigant; and only if the claim is based on the "same transaction or occurrence" as the plaintiff's claim.  For multiple reasons, Section 16.069 is inapplicable here.

**1.     *Section 16.069 does not apply to Defendants' third-party claims*.**

30.     Section 16.069 applies only to counterclaims and cross-claims, both of which are ***responsive*** claims against existing parties.  There are no cross-claims here, as Amberson and ANR LLC were not parties to the petition filed by the Amberson Firm, and neither of them has asserted any claims against Defendants.  Defendants' causes of action against them are therefore strictly ***third-party claims***.  By its plain language, Section 16.069 does not apply to Defendants' third-party claims against newly joined parties, Amberson and ANR. *See J.M.K. 6, Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 199-202 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding a third-party claim is not a "cross claim" eligible for revival under Section 16.069).  On this basis alone, Section 16.069, by its express terms, does not save any cause of action against Amberson or ANR related to the 2009 Cannon Grove transaction.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

### 2. The counterclaims against the Amberson Firm based on the Cannon Grove transaction do not arise from the same transaction or occurrence as the firm's claim for unpaid legal fees.

31.     Nor do the Defendants have valid counterclaims against the Amberson Firm related to the Cannon Grove transaction.  The reason is evident: All of the counterclaims that have anything to do with the Cannon Grove transaction are necessarily based on Mr. McAllen's contention that he made a loan.  But the Amberson Firm is the Plaintiff; and any **counterclaim** by the Defendants has to be a claim **against the Plaintiff**.  Since no loan was ever made to the Amberson Firm that had anything to do with the CG Property or CGI LLC, there is no valid counterclaim for purposes of Section 16.069, or otherwise.[2]

32.     Moreover, Section 16.069 only applies if the counterclaim arises from the "same transaction or occurrence" as the plaintiff's claim.  TEX. CIV. PRAC. & REM. CODE § 16.069.  To decide whether claims involve the "same transaction or occurrence," Texas courts consider whether the essential facts relevant to the counterclaim are **significantly and logically related** to the facts relevant to the original claim. *Smith v. Ferguson*, 160 S.W.3d 115, 119-20 (Tex. App.—Dallas 2005, pet. denied); *Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App.—Texarkana, 2000, pet. denied).

33.     Here, the McAllen Parties' claims based on the Cannon Grove transaction have no logical connection to the Amberson Firm's claim for unpaid legal fees from the Forest Oil Litigation; they are unrelated.  CGI LLC was not a party to the Forest Oil Litigation, and the CG Property was not involved in that litigation.  The CG Property, located in downtown Edinburg, is totally unrelated to the contaminated McAllen Ranch, thirty or more miles away.  Moreover, the Amberson Firm's Engagement Agreement had nothing to do with the CG Property or CGI LLC.

---

[2] Defendants' claims against newly added third-parties are clearly not counterclaims.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

The Amberson Firm did not represent CGI LLC or Mr. McAllen in the Cannon Grove transaction and therefore did not undertake duties to him.  Mr. McAllen selected other counsel to represent him in the Cannon Grove transaction—Richard Leshin of Corpus Christi, Ben McCaleb of San Antonio and a Philadelphia law firm.

34.     The Amberson Firm's claim is based on the McAllen Parties' failure to pay legal fees they incurred in the Forest Oil Litigation.  The Defendants' counterclaim, on the other hand, is based on the separate Cannon Grove transaction.  The Amberson Firm's contingent fee claim, derived from the firm's services and success in the Forest Oil Litigation, involves no facts common to the Cannon Grove transaction. *See Wright v. Matthews*, 26 S.W.3d 575, 577 (Tex. App.—Beaumont 2000, pet. denied) (counterclaim for breach of contract was not sufficiently related to petition to quiet title); *In re City of Coppell*, 219 S.W.3d 552, 558-59 (Tex. App.—Dallas 2007, no pet.) (even if claims involved the same piece of property that was insufficient to make them logically related); *Freeman*, 11 S.W.3d at 483 (claim for fraud as to deed did not substantially relate to claim for fishing rights under deed); *Ferguson*, 160 S.W.3d at 120 (claim for breach of agreement incident to divorce was not significantly or logically related to claim relating to subsequent settlement agreement).

35.     Indeed, the Amberson Firm's arbitrable attorneys' fee claim here has a manifestly lesser relationship to the Cannon Grove transaction than claims routinely found to be logically **unrelated** by the courts in previous cases such as *Coppell*, *Freeman* and *Ferguson*.  For example, the claims here, unlike those in *Freeman*, do not even relate to a common agreement or instrument, and unlike *Coppell* do not even relate to the same properties.  Here, the attorneys' fee claims have no relation whatsoever to the Cannon Grove transaction, the CG Property, ANR LLC or CGI LLC. Because the McAllen Parties' claims based on the Cannon Grove transaction are not significantly

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

and logically related to the Plaintiff Amberson Firm's fee claim they are not a counterclaim arising from the "same transaction or occurrence."

**C.** **Any claim based on the alleged oral loan agreement in the Cannon Grove transaction would be barred by the statute of frauds.**

36.    To the extent the Defendants claim that any of them made a loan in connection with the Cannon Grove transaction, those claims would be barred as a matter of law in any event by the statute of frauds.

37.    The fact that no demand for payment was made upon expiration of the year after the alleged origination of the loan on March 18, 2009 (**Exhibit 10**) shows that Mr. McAllen had no expectation that the supposed loan would be repaid within that period.  Thus, even assuming *arguendo* (i) a loan was made, and (ii) that such loan was made to the Amberson Firm (it was not), any claim for its repayment would now be barred, because any loan agreement that is not to be performed within one year is subject to the statute of frauds. TEX. BUS. & COM. CODE 26.001(b)(6) (statute precludes claims based on an undocumented agreement that is not required to be performed within one year from the date the agreement was made).[3] *See Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984) ("The purpose of the Statute of Frauds is to remove uncertainty, prevent fraudulent claims, and reduce litigation.").

38.    In summation: (i) Limitations ran against all claims relating to the 2009 Cannon Grove transaction.  (ii) There is no *cross-claim* against either of the third party defendants recently joined and, therefore, the statute of limitations is not revived against third party defendants

---

[3] The statute of frauds is not displaced by claims of fraud.  Its very purpose is to prevent spurious and belated claims of fraud. *See Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) ("The Statute exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties.  But that purpose is frustrated and the Statute easily circumvented if a party can use a fraud claim essentially to enforce a contract the Statute makes unenforceable.  We therefore hold that the Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds.").

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Amberson and ANR, LLC. (iii) The Amberson Firm was not involved in the Cannon Grove transaction, and the counterclaim against it fails as a matter of law. (iv)  The Cannon Grove transaction has no logical relation to the claim asserted by the Amberson Firm for fees earned in the Forest Oil Litigation; therefore, limitations would not be revived against the Amberson Firm, even if it had received a Cannon Grove loan.  (v)  Defendants' claim based on an alleged oral loan agreement in the "Cannon Grove" transaction is barred by the statute of frauds.

## V. <u>Conclusion</u>

For the reasons discussed above, Plaintiff/Counter-Defendant and Third-Party Defendants are entitled to partial summary judgment as a matter of law, dismissing all claims asserted by the McAllen Parties that relate in any way to the 2009 Cannon Grove transaction.

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: <u>fleckman@fleckman.com</u>
Zach Wolfe
State Bar No. 24003193
Email: <u>zwolfe@fleckman.com</u>
Andrew J. McKeon
State Bar No. 24092810
Email: <u>amckeon@fleckman.com</u>

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: <u>/s/ Steven A. Fleckman</u>
     Steven A. Fleckman

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

### CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on October 30, 2017.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

/s/Steven A. Fleckman
Steven A. Fleckman

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>DECLARATION OF JON CHRISTIAN AMBERSON</u>

Jon Christian Amberson declares as follows:

1.      I am over the age of 18 years, competent to testify, and declare under penalty of perjury that, to my personal knowledge, the facts stated below are true and correct.

2.      I submit this declaration in support of the Amberson Parties' (i) Motion for Partial Summary Judgment as to the "Cannon Grove" Claims and (ii) Motion to Retain the Cannon Grove Claims for Disposition by the Court.

### A. <u>The Forest Oil Litigation, the Legal Fee Issue, and the Arbitration Agreement</u>

3.      I am an attorney and the principal of Plaintiff Jon Christian Amberson P.C. (the "***Amberson Firm***").   Starting in late 2004, James McAllen ("***Mr. McAllen***") and the other

Declaration of Jon Christian Amberson                    1



Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Defendants (collectively, the "*McAllen Parties*") engaged my law firm (the "*Amberson Firm*") to represent them in lawsuits against Forest Oil Company for environmental contamination of the McAllen Ranch and personal injury to Mr. McAllen (the "*Forest Oil Litigation*").

4.      Mr. McAllen and the other McAllen Parties executed engagement letters with the Amberson Firm relating to the Forest Oil Litigation (collectively, the "*Engagement Agreement*"). The Engagement Agreement provided for arbitration of any fee dispute. True and correct copies of my firm's engagement letters are attached hereto as **Exhibit 1**.

5.      For twelve years the Amberson Firm represented the McAllen Parties in the Forest Oil Litigation. Those twelve years of work culminated in an arbitration award in 2012 (the "*Award*") in favor of the McAllen Parties against Forest Oil for approximately $22,781,000 plus accrued interest of about $5,695,000, or a total of more than $28,476,000. A true and correct copy of the Award is attached hereto as **Exhibit 2**. Over contentious challenges by one of the most prominent litigation firms in the state (the Susman Godfrey firm) that Award was sustained in the district court, in the court of appeals, and subsequently on two separate occasions in the Texas Supreme Court. A true and correct copy of the district court's final judgment affirming the Award is attached hereto as **Exhibit 3**. Included in this Award and judgment, the McAllen Parties were granted more than $6,700,000 in attorneys' fees. The Texas Supreme Court upheld the Award in an opinion issued on April 28, 2017. *Forest Oil Corp. v. El Lucio Land & Cattle Co.*, 518 S.W.3d 422 (Tex. 2017), and subsequently issued its mandate enforcing judgment on the Award. A true and correct copy of the Texas Supreme Court's mandate is attached as **Exhibit 4. Exhibit 5** is a true and correct copy of a motion subsequently filed by Forest Oil in the district court indicating that the McAllen Parties have now received in cash (and/or partially in securities), the monetary damages awarded to them.

Declaration of Jon Christian Amberson                     2

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

6.      In addition to the monetary recovery, as part of the Award my firm (working in concert with our expert witnesses) helped secure additional relief against Forest Oil requiring it to remediate its extensive contamination of the McAllen Ranch, including scattered radioactive material and other toxic substances.  It is expected that the value of this clean-up remedy will, over time, substantially *exceed* the McAllen Parties' $28 million monetary recovery (although, assuming the contingency fee agreement is enforced, my firm is only seeking its 1/3 share of the monetary award).

7.      The Amberson Firm has therefore brought this action to compel the McAllen Parties to arbitrate my firm's claim for payment of the legal fees remaining due in accordance with the arbitration provision in the Engagement Agreement.  In the alternative, my firm has pleaded for a *quantum meruit* fee determination based on the value of the entire Award, inclusive of the environmental remediation relief.

### B.  The 2009 Cannon Grove Transaction

8.      Prior to 2009 Mr. McAllen owned real property in Edinburg, Texas known as the "Cannon Grove" property (the "*CG Property*").  In 2008 he deeded the CG Property to his Texas limited liability company, which he subsequently re-named Cannon Grove Investments, LLC (the "*CGI LLC*").  True and correct copies of Mr. McAllen's 2008 deed and the Texas Secretary of State's record of the grantee's name change to Canon Grove Investments, LLC are respectively attached as **Exhibits 6 and 7**.

9.      In 2009 I was still married to Mr. McAllen's daughter.  My three children are Mr. McAllen's grandchildren.  Ben McCaleb, a San Antonio attorney representing Mr. McAllen, related to me that Mr. McAllen wanted to undertake a tax free exchange transaction, and he wanted me to act as a counter-party in that transaction.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

10.     Through his attorney Mr. McCaleb, Mr. McAllen proposed an arrangement by which he would loan $4.5 million to enable a company (to be owned by me) to purchase a 90 percent interest in CGI LLC so that Mr. McAllen could defer his income taxes to the IRS. In addition to Mr. McAllen's tax accountant, Alan Lucke, at least two attorneys were advising and representing Mr. McAllen in this transaction: (i) Mr. McCaleb and (ii) Richard Leshin, a tax attorney in Corpus Christi. Documents I have subsequently received reflect that he was also advised by a tax attorney with the Philadelphia Drinker Biddle firm. *See* **Exhibit 8** attached. Neither I nor my firm represented Mr. McAllen or CGI LLC in this transaction.

11.     I took Mr. McAllen's proposal to my tax accountant for review and advice. After that review, I decided that I could not receive the funds as a "loan" with strings attached, and that it should be an arms-length arrangement. On March 11, 2009 I wrote a letter to Mr. McAllen to explain my concern that I did not want my wife and me to be exposed to any risk of potential tax fraud issues, and to clarify what I could do (and would not do) in connection with the purchase of equity in his company, CGI LLC. A true and correct copy of that letter is attached hereto as **Exhibit 9**. My letter made it clear to Mr. McAllen that, based on the tax advice I had received, I would not agree to his proposal to treat the $4.5 million transfer as a "loan," and that if he chose to involve me in the transaction, his transfer of the $4.5 million would have to be an outright gift; only then would I feel comfortable using the funds to purchase the CGI LLC interest.

12.     Seven days later, about March 18, 2009, Mr. McAllen proceeded with the transaction, transferring $4.5 million to a new limited liability company owned by me, Amberson Natural Resources LLC ("*ANR LLC*"). A copy of the wiring instructions is attached as **Exhibit 10**. Consistent with my letter, ANR LLC then purchased a 90 percent interest in CGI LLC from Mr. McAllen, using Mr. McAllen's gifted funds in the amount of $4.5 million. Thus, Mr.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

McAllen sold me 90 percent of CGI LLC, and as the purchase price I paid him $4.5 million at the time of the Cannon Grove transaction.

13.     Consistent with my letter insisting that any transfer be a gift and not a loan, Mr. McAllen did not send me (or any firm that I own) any loan agreement or promissory note to sign. Neither did any of his three law firms. Neither I (nor any firm that I own) signed any instrument at any time reflecting any loan from Mr. McAllen related to the Cannon Grove transaction. Indeed, Mr. McAllen never made any demand as to any alleged loan until after my 2013 divorce from his daughter was complete, in which I was awarded all rights in ANR LLC (the company that owns the CGI LLC interest)—at least five years after the Cannon Grove transaction.

14.     My company, ANR LLC, is not part of the Amberson Firm. It is not engaged in the practice of law. It never represented the McAllen Parties at any time in the practice of law. It has never appeared as counsel before the bar of any court, nor could it. It never acted for the McAllen Parties in connection with the Forest Oil Litigation. It never entered into any arbitration agreement with the McAllen Parties. It is not a party to any engagement agreement with the McAllen Parties. It has not sought any benefits under the Engagement Agreement or any other arbitration agreement. It has never charged legal fees to the McAllen Parties. It is not a plaintiff in this case, and has not asserted any claim against the McAllen Parties of any nature, for legal fees or otherwise.

15.     The Amberson Firm's petition in this action solely seeks arbitration of its claim to recover the fees it has earned for the legal work performed on behalf of the McAllen Parties in the Forest Oil Litigation. My law firm's petition does not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. The Forest Oil Litigation did not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. ANR LLC is not a plaintiff in my law firm's petition. I never

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

represented Mr. McAllen with respect to the Cannon Grove transaction, nor did my law firm.  As

noted above, Mr. McAllen was separately represented and advised in the Cannon Grove

transaction by three other law firms.  Neither the CG Property nor the CGI LLC was the subject

of any engagement agreement at any time with me or with the Amberson Firm.  Neither I nor the

Amberson Firm has ever charged legal fees to CGI LLC.

16.     Moreover, the CG Property is unrelated to and geographically separate from the

McAllen Ranch.  The CG Property was not involved in the Forest Oil Litigation; it was not

involved in the underlying arbitration with Forest Oil.  The CG Property was never leased to

Forest Oil Company.

17.     In response to my firm's petition to compel arbitration for recovery of its legal

fees in the Forest Oil Litigation, the McAllen Parties filed their Original Answer, Counterclaim,

and Claims Against Third Parties on September 25, 2017.  The McAllen Parties' counterclaim

and third party claims involving the Cannon Grove transaction were not filed until more than

eight years after the Cannon Grove transaction was concluded.

18.     I submit this Declaration in lieu of an affidavit as authorized by TEX. CIV. PRAC.

& REM. CODE § 132.001.  In accordance with the statute, I state that my date of birth is

12/24/1956, and my current address is 2135 East Hildebrand, San Antonio Tx. 78209

Executed in Bexar County, Texas on October 27, 2017.

_____
Jon Christian Amberson

Declaration of Jon Christian Amberson          6

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 1

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## JON CHRISTIAN AMBERSON, P.C.

### ATTORNEYS AT LAW

### 2135 EAST HILDEBRAND AVE.

### SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3339

TELECOPIER (210) 826-3340

December 10, 2004

Mr. James A. McAllen
Mrs. Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

RE:   **Forest Oil Corporation**

Dear Mr. & Mrs. McAllen:

The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C. and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil corporation relating to environmental contamination issues arising from the actions of Forest Oil Corporation and its employees as relayed to you by Mr. Bobby Pearson, a former employee of Forest Oil Corporation.

### DESCRIPTION OF SERVICES

1.   **CLIENTS AND CLIENT REPRESENTATIVES**:  The firm is being retained to represent the following:

(1)   James Argyle McAllen, Individually.

(2)   El Rucio Land and Cattle Company, Inc. - Representative - James A. McAllen.

(3)   San Juanito Land Partnership, Ltd. - Representative James A. McAllen.

-1-

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

(4)  McAllen Trust Partnership - Representative - James A. McAllen.

(5)  John R. Willis Management Partnership, Ltd., - Representative - James A. McAllen.

The representative of the aforementioned entities is James A. McAllen.

**2.  PURPOSE OF REPRESENTATION:**  It is understood that our firm is being retained by you to provide legal services in relation to the action against Forest Oil Corporation, and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated the June 22, 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-2016-95-G, state statutes, environmental laws and state regulations on your properties.

**3.  LEGAL REPRESENTATION:**  Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.  Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.  NO GUARANTEE OR INDUCEMENTS:**  It is understood that the law firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.  TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1.   Proper and expected behavior of counsel are described in the Creed.

2.   Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.   I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.   I will not pursue tactics which are intended primarily for delay.

5.   I will not pursue any course of action which is without merit.

6.   I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7.   You are advised that mediation, arbitration and other alternative methods of resolving and settling disputes are available to you to resolve disputes with opposing parties.

**6.   FEES:**  The nature, character and amount of fees charged by us are determined in accordance Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  Our fees, retainer and payment policies are based upon:

(1)   the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

(2)   the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

(3)   the fee customarily charged in this locality for similar legal services;

(4)   the amount involved and the results obtained;

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

(5)   the time limitations imposed by you or by the circumstances of our engagement;

(6)   the nature and length of our professional relationship with you;

(7)   the experience, reputations and ability of the lawyer or lawyers performing the services; and,

(8)   whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**7.   BILLINGS:** You understand that billings will be furnished to you periodically, based upon the frequency and amount of activity required to be expended necessarily and reasonably in your behalf.   You agree to promptly pay within fifteen (15) days of any statement rendered to you all sums due and owing.

**8.   FIXED HOURLY RATES:**   The following schedule of fixed hourly rates will apply to your case.

| LAWYER/ASSOCIATE/LEGAL ASSISTANT | RATE |
|---|---|
| A.   Lawyer, Jon Christian Amberson | $350.00 per hour |
| B.   Lawyer, Larissa J. Hood | $250.00 per hour |
| C.   Legal Assistant/Paralegal | $60.00  per hour |

Any services performed after January 1, 2005, will be charged at regular hourly rates then in effect.   It is understood that other personnel of the law firm may perform services in this matter, and the rates set forth above shall apply to all attorneys, associates or legal assistants of equivalent experience.   The total fees are sometimes raised from what the hourly rates would generate, based on the complexity and size of the transaction, as well as the attainment of superior results. We discuss all such increases with our clients, and are confident that you will find them appropriate should we conclude such an increase is fair.   You will be charged for travel time in connection with our representation and time spent in travel will be billed for attorney's time at one half the attorney's usual hourly fixed rate.   We will submit monthly fee statements to you

-4-

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

which will contain statement for fees plus cost and expenses incurred on behalf of the clients as hereinafter provided for. It is agreed that any fees and/or expenses due under this letter are due upon receipt for the statement for such fees and/or expenses. Fees will be subject to a final adjustment depending upon results obtained in light of efforts expended on your behalf.

**9. ATTORNEY IN CHARGE:** It is understood and agreed that Jon Christian Amberson is the attorney in charge of your representation. He is the only attorney in the law firm who will work on your case unless, in his sole discretion, he decides to consult with and seek the assistance of other members of the firm. It is further understood that he may need to seek the assistance of other lawyers outside the firm and in that event will endeavor to seek qualified attorneys who charge fees at rates that are reasonable under the circumstances in the event any defendant refuses to take responsibility for the actions outlined by Bobby Pearson, the whistleblower in this matter. We are hoping that the responsible party for these actions takes responsibility early on and identifies the areas of concern and remediates the problem areas on the ranch and compensates you for your out of pocket expenses in dealing with this most unfortunate matter. If not, then this will require my firm to hire outside counsel to prosecute this matter fully and completely.

**10. COURT AWARDED ATTORNEY'S FEES:** In the event that the court may, in its discretion, award a sum as attorney's fees, should the amount of attorney's fees awarded exceed the fees you have paid, we shall be entitled to an additional sum in the amount of the difference between the fees received from you and the fees awarded. The court's failure to award you attorney's fees shall not otherwise affect the fees to be paid our firm under this agreement.

**11. COSTS AND EXPENSES:** In addition to the professional fees charged by the law firm, you will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representative and obtain approval for major expenses in advance, which approval shall be given by the Representative. These costs and expenses include, but are not limited to the following:

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1)     Court costs;

2)     Citation and/or subpoena fees;

3)     Deposition fees, costs and expenses;

4)     Investigation fees, costs and expenses;

5)     Expert witness fees, costs and expenses;

6)     Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)     Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)     Long distance telephone charges, and conference calls expenses;

9)     Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)    Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firm advances such sums, then you agree to reimburse the firm for all sums so paid.

**12. DISCUSSION OF ESTIMATES OF FEES:** During the course of the attorney's discussion with you about handling this matter, the attorneys may have provided you with certain estimates of the magnitude of the fees and expenses that will be required at

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

certain stages of this litigation.  It is the law firm's policy to advise all its clients that such estimates are just that, and that the fees and expenses required are ultimately a function of many conditions over which the attorneys have little or no control, particularly the extent to which the opposition files pretrial motions and engages in its own discovery.  The reason why the attorneys submit bills to clients on a monthly basis shortly after the services are rendered is so the clients will have a ready means of monitoring and controlling the expenses they are incurring.  If the clients believe the expenses are mounting too rapidly, the clients agree to contact the attorneys immediately so they can assist in evaluating how expenses might be curtailed in the future.  When the attorneys do not hear from the clients, they may assume that the clients approve of the overall level of activity on their part in this case on the clients behalf.

**13.  OVERTIME FOR CLERICAL HELP:**  The clients understand that from time to time, the attorneys may be called upon to render legal services in the clients' behalf during evenings, weekends and on other holidays in order to meet time schedules or other emergency situations as they may arise.  In such an event, the clients agree to reimburse the firm for any additional expenses incurred by them by way of overtime or additional temporary help such as Manpower or other temporary services.

**14.  NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.  Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.  For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**15.  ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by our firm will be submitted to arbitration.  The decision of any such arbitration or arbitration panel shall be binding, conclusive and non appealable. The arbitrator will be selected as follows:

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

(1) Arbitration will be determined by a retired district judge who has previously served on any of the Bexar County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Bexar County, Texas.

**16. LAW APPLICABLE AND VENUE:** This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Bexar County, State of Texas.

**17.** You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**18.** You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

**19.** If the foregoing terms and conditions accurately summarize and confirm your understanding of our engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen, Individually, and representative of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

_____
JAMES A. McALLEN, Individually

_____
JAMES A. McALLEN
On Behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnerships and John R. Willis Management Partnership, Ltd.

-8-

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Ave.
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 - Facsimile

Electronically Filed
965-686-9403/2017 4:42 PM   p. 3
Hidalgo County District Clerks
Reviewed By: Monica Valdez

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

**Page 1**

TELEPHONE (210) 826-3539                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

RE:   Contract of Employment Regarding Representation of El Rucio Land and
Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
Partnership and John R. Willis Management Partnership Ltd., related to
prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
Conoco/Phillips Inc.

Dear Mr. & Mrs. McAllen:

The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

**DESCRIPTION OF SERVICES**

1.   **CLIENTS AND CLIENT REPRESENTATIVES**:  The firm is being retained
to represent the following:

1.   El Rucio Land and Cattle Company, Inc. – Representative –
James A. McAllen

2.   San Juanito Land Partnership Ltd. – Representative –
James A. McAllen

3.   McAllen Trust Partnership – Representative – James A.
McAllen

Electronically Filed
8/18/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

JON C. AMBERSON     Fax:2106263340     Jan 25 2005   16:09     965-886-9408     p. 4

Page 2

4.     John R. Willis Management Partnership Ltd. – Representative – Frances W. McAllen

The representatives of the aforementioned entities are James A. McAllen and Frances W. McAllen.

**2.     PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.     LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.     NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.     TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

1.     Proper and expected behavior of counsel are described in the Creed.

2.     Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.     I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.     I will not pursue tactics which are intended primarily for delay.

Electronically Filed
05/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Page 3

5.   I will not pursue any course of action which is without merit.

6.   I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7.   You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.   **FEES:** The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

Electronically Filed
965-686-9403/30/2017 4:42 PM   P. 6
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Page 4

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

**8. COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

Electronically Filed
7/19/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Page 5

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.    NOTICE TO CLIENTS:** The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.   ARBITRATION:** Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Electronically Filed
03/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Page 6

    **11.**   **LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

    **12.**   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

    **13.**   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

    **14.**   If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

    SIGNED and AGREED, in multiple counterparts, by the firm and representatives of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., and McAllen
Trust Partnerships

FRANCES McALLEN
On Behalf of John R. Willis Management,
Partnership, Ltd.

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 2

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

CAUSE NO. 2005-23091

EL RUCIO LAND AND CATTLE, §
COMPANY, INC., SAN JUANITO §
LAND PARTNERSHIP, LTD., §
MCALLEN TRUST PARTNERSHIP, §
and JAMES ARGYLE MCALLEN, §
§    ARBITRATION BEFORE
§    THE HONORABLE DARYL K.
§    BRISTOW, CLAYTON J. HOOVER,
Claimants, §    AND DONATO D. RAMOS
§
VS. §
§
FOREST OIL CORPORATION AND §
DANIEL B. WORDEN, §
§
Respondents. §

## FINAL JUDGMENT AND DECISION OF THE PANEL

After considering the testimony and evidence offered by the parties and admitted during the arbitration hearing, the Panel makes the following findings of fact and conclusions of law and enters judgment as herein provided. Any findings of fact that are more properly conclusions of law should be so construed. Conversely, any conclusions of law that are more properly findings of fact should be so construed.

## FINDINGS OF THE PANEL

1.     El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen (collectively the "Claimants") are the owners in fee of certain ranchlands in Hidalgo County, Texas, known as El Rucio, San Juanito, and Tres Corrales ranches, collectively known as the McAllen Ranch.

2804

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

2.     Respondent Forest Oil Corporation leases mineral rights on approximately 3,000 acres of the McAllen Ranch; the Forest leases cover approximately 1,500 acres out of the San Juanito Ranch.

3.     Forest Oil Corporation built and still operates a natural gas plant on approximately 5.75 acres of the McAllen Ranch.

4.     Respondent Daniel B. Worden has been, and continues to be, an employee of Forest Oil, who works at the McAllen Ranch. However, we make no findings of liability with respect to Mr. Worden and hereby exclude him from the remainder of this decision. It is therefore Ordered, Adjudged and Decreed that claimants take nothing from Defendant Daniel B. Worden.

## DECISIONS OF THE PANEL

5.     The Panel hereby Orders, Adjudges and Decrees that Claimants are the prevailing parties in this matter and that Claimants El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership are entitled to actual damages in the amount of $15,000,000 collectively. The Panel further hereby Orders, Adjudges and Decrees that Mr. James Argyle McAllen, individually, is entitled to actual damages of $500,000.

6.     The Panel hereby Orders, Adjudges and Decrees that Claimants have met their burden of proof as required by law for their claims of exemplary damages and hereby awards exemplary damages to Claimants in the total amount of $500,000.

7.     The Panel hereby Orders, Adjudges and Decrees that Claimants are entitled to declaratory relief as requested regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement and hereby Orders, Adjudges and Decrees that:

a.     Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

2805

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

      b.    Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

      c.    Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

      d.    Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

8.     It is further Ordered, Adjudged and Decreed that Forest Oil shall provide assurance to Claimants for its performance of the continuing obligations imposed on Forest under the Surface Agreement by posting and delivering a bond to Claimants in the amount of $10,000,000, which bond shall be posted and valid and subsisting during the period of time concurrent with the term of the Surface Agreement. Such bond shall be made payable to Claimants in the event of Forest Oil's failure or refusal to comply with this panel's judgment and/or Forest's continuing obligations under the Surface Agreement.

## AWARD OF ATTORNEYS' FEES

9.     The Panel makes the following findings as to attorneys' fees:

      a.    Although the Panel finds that Claimants are the prevailing parties in this arbitration proceeding, the Panel also finds that Forest Oil is entitled to a credit for attorneys' fees required to determine the applicability of the parties' contractual arbitration agreement in the amount of $352,000;

      b.    Through the date of the arbitration hearing, the Panel finds Claimants had incurred reasonable and necessary attorneys' fees and expenses amounting to $5,389,374; and

      c.    Claimants continued to incur reasonable and necessary attorneys' fees and expenses through the arbitration hearing and in the course of preparing post-hearing briefing and proposed findings of fact and conclusions of law at the request of the Panel, which fees and expenses shall be submitted by Claimants to the Panel for final confirmation.

2806

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

10.    The Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil their reasonable attorneys' fees and expenses in the amount of $5,017,374 ($5,369,374.00 less $352,000.00), plus any fees submitted and confirmed by the Panel pursuant hereto.

The Panel's decision and award, including all findings of fact and conclusions of law, are final and binding.

Panel Member Bristow does not join in this decision and dissents.

SIGNED on this 29th day of February, 2012.

BY THE MEMBERS OF THE PANEL:

_____   _____   (DISSENTING)
CLAYTON J. HOOVER, CHAIR    DONATO D. RAMOS    DARYL K. BRISTOW

2807

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**CAUSE NO. 2005-23091**

| | | |
|---|---|---|
| **EL RUCIO LAND AND CATTLE,** | § | |
| **COMPANY, INC., SAN JUANITO** | § | |
| **LAND PARTNERSHIP, LTD.,** | § | |
| **MCALLEN TRUST PARTNERSHIP,** | § | |
| **and JAMES ARGYLE MCALLEN,** | § | **ARBITRATION BEFORE** |
| | § | **THE HONORABLE DARYL K.** |
| **Claimants,** | § | **BRISTOW, CLAYTON J. HOOVER,** |
| | § | **AND DONATO D. RAMOS** |
| **VS.** | § | |
| | § | |
| | § | |
| **FOREST OIL CORPORATION AND** | § | |
| **DANIEL B. WORDEN,** | § | |
| | § | |
| **Respondents.** | § | |
| | § | |
| | § | |

## ATTORNEYS FEES AWARDED IN SECTIONS 9 AND 10 OF FINAL JUDGMENT AND DECISION OF THE PANEL

Pursuant to Sections 9 and 10 of the Final Judgment and Decision of the Panel dated February 29, 2012, and after considering the additional evidence requested by the Panel as to attorneys fees and expenses incurred by Claimants prior to and during the arbitration hearing and for post-hearing submissions, the Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil as attorneys' fees and expenses incurred prior to and during the arbitration hearing and for post-hearing submissions the amount of $1,764,428.

**Panel Member Bristow does not join in this decision and dissents.**

**SIGNED on this 9th day of September, 2012.**

**BY THE MEMBERS OF THE PANEL:**

| ___/s/ Clayton J. Hoover___ | ___/s/ Donato D. Ramos___ | ___(DISSENTING)___ |
|---|---|---|
| **CLAYTON J. HOOVER, CHAIR** | **DONATO D. RAMOS** | **DARYL K. BRISTOW** |

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 3

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Filed 12 October 3 P4:25
Chris Daniel - District Clerk
Harris County
ED101J017111638
By: deandra mosley

NO. 2005-23091

| | | |
|---|---|---|
| FOREST OIL CORPORATION AND DANIEL B. WORDEN, Plaintiffs, | § § § § | IN THE DISTRICT COURT OF |
| v. | § § | |
| EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., McALLEN TRUST PARTNERSHIP, Defendants and Counter-Plaintiffs, | § § § § § § | HARRIS   COUNTY,   TEXAS |
| and | § § | |
| JAMES ARGYLE McALLEN, Intervenor. | § § | 55TH   JUDICIAL   DISTRICT |

*P8
ARBIX
18|B*

## FINAL JUDGMENT

Plaintiffs are Forest Oil Corporation and Daniel B. Worden. Defendants and Counter-Plaintiffs are El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership. Intervenor is James Argyle McAllen.

This case was arbitrated. Defendants and Intervenor were the Claimants in the arbitration proceeding. A majority of the arbitration panel issued the Final Judgment and Decision of the Panel on February 29, 2012 ("the February 29 Arbitration Award"). The February 29 Arbitration Award awarded Defendants and Counter-Plaintiffs El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership, and Intervenor James Argyle McAllen (collectively "Claimants") relief in the form of damages, declaratory relief, and attorneys' fees against Forest Oil Corporation. The February 29 Arbitration Award also specifically indicated in paragraphs 9(c) and 10 of the Award that additional attorneys' fees would be added to the Award and directed Claimants to submit the additional fees to the panel for confirmation. On September 9, 2012, a majority of the arbitration panel issued its Attorneys

24115

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Fees Awarded in Sections 9 and 10 of Final Judgment and Decision of the Panel, and the Chairman of the Arbitration Panel sent an email to all parties clarifying that Award that same day (collectively "the September 9 Arbitration Award"). The September 9 Arbitration Award awarded Claimants the additional attorneys' fees that were expressly contemplated in the February 29 Arbitration Award.

Claimants filed a motion to confirm the February 29 Arbitration Award, and Forest Oil Corporation filed a motion to vacate it. The Court held an oral hearing on the motions and confirmed the February 29 Arbitration Award in all respects except where it vacated the bond requirement securing the performance of Forest Oil Corporation's obligations under the 1999 Surface Agreement.

The Court incorporates by reference, for all purposes, the February 29 Arbitration Award, the September 9 Arbitration Award, the Court's September 18, 2012 Order on Forest's Motion to Vacate the Arbitration Panel's Unreasoned 2-1 Award, and all of the Court's other prior rulings. The Court has determined that based on the February 29 Arbitration Award and the September 9 Arbitration Award Claimants are entitled to judgment against Forest Oil Corporation as follows:

1. Actual damages in the amount of $15,000,000 to El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership

2. Actual damages of $500,000 to James Argyle McAllen, individually

3. Exemplary damages to Claimants in the total amount of $500,000

4. Attorneys' fees and expenses in the amount of $5,017,374 to Claimants

5. Additional attorneys' fees and expenses in the amount of $1,764,428 to Claimants

6. Declaratory relief as requested regarding Claimants' rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement as follows:

-2-

24116

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

    a. Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

    b. Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

    c. Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

    d. Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

It is therefore,

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is vacated with respect to the requirement that Forest Oil Corporation post a bond. It is further

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is confirmed in all respects other than the requirement that Forest Oil Corporation post a bond. It is further

-3-

24117

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

ORDERED, ADJUDGED, and DECREED that the September 9 Arbitration Award is confirmed in all respects. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for actual damages in the amount of $15,000,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, individually, have and recover judgment for actual damages of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for exemplary damages in the total amount of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for attorneys' fees and expenses amounting to $6,781,802 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that Claimants are entitled to declaratory relief regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement, and it is ORDERED, ADJUDGED, and DECREED that:

    a.  Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

-4-

24118

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

b.  Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c.  Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d.  Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.  It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen take nothing on their claims against Daniel B. Worden.  It is further

ORDERED, ADJUDGED, and DECREED that this judgment shall bear post-judgment interested from the date it is signed until satisfaction or payment at the rate of 5% compounded annually.

The clerk is directed to issue all writs necessary for execution of this judgment.

All relief not expressly granted herein is denied.  This judgment finally disposes of all

24119

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

claims and all parties and is appealable.

Signed this ___9___ day of ___Oct___ 2012.

_____
JUDGE PRESIDING

24120

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 4

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# IN THE SUPREME COURT OF TEXAS

## NO. 14-0979

FOREST OIL CORPORATION, NOW KNOWN AS SABINE OIL & GAS CORPORATION, Petitioner

v.

EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP, AND JAMES ARGYLE MCALLEN, Respondents

## **MANDATE**

**To the Trial Court of Harris County, Greetings:**

Before our Supreme Court on April 28, 2017, the Cause, upon petition for review, to revise or reverse your Judgment.

No. **14-0979** in the Supreme Court of Texas

No. **01-13-00040-CV** in the **First** Court of Appeals

No. **2005-23091** in the **55th District Court** of **Harris** County, Texas, was determined; and therein our said Supreme Court entered its judgment or order in these words:

THE SUPREME COURT OF TEXAS, having heard this cause on petition for review from the Court of Appeals for the First District, and having considered the appellate record, briefs, and counsel's argument, concludes that the court of appeals' judgment should be affirmed.

IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:

1)    The court of appeals' judgment is affirmed;

2)    Respondents El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen shall recover, and petitioner Forest Oil Corporation, now known as Sabine Oil & Gas Corporation, shall pay, the costs incurred in this Court.

Copies of this judgment and the Court's opinion are certified to the Court of Appeals for the  First District and to the District Court of Harris County, Texas, for observance.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**Wherefore we command you** to observe the order of our said Supreme Court in this behalf, and in all things to have recognized, obeyed, and executed.

BY ORDER OF THE SUPREME COURT OF THE STATE OF TEXAS,

with the seal thereof annexed, at the City of Austin, this the 9th day of June, 2017.

Blake A. Hawthorne, Clerk

By Monica Zamarripa, Deputy Clerk

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 5

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

CAUSE NO. 2005-23091

| | | |
|---|---|---|
| Forest Oil Corporation | § | In the District Court |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Harris County, Texas |
| | § | |
| El Rucio Land and Cattle | § | |
| Company, Inc., San Juanito Land | § | |
| Partnership, Ltd., McAllen Trust | § | |
| Partnership, | § | |
| | § | |
| Defendants and Counter-Plaintiffs, | § | |
| | § | |
| and | § | |
| | § | |
| James Argyle McAllen, | § | |
| | § | |
| Intervenor. | § | 55th Judicial District Court |

## Plaintiff's Unopposed Motion to Release Supersedeas Bond

Plaintiff Forest Oil Corporation ("Forest") files this motion to release supersedeas bond. Defendants and Intervenor do not oppose this motion.

On January 14, 2013, the District Clerk approved the Supersedeas Bond ("Bond") filed by Forest, a true and correct copy of which is attached as Exhibit A. The Bond amount is $25 million. The surety's liability under the Bond is conditional: "The condition of this obligation is such that if the Principal shall diligently prosecute its appeal to a decision, and shall promptly perform and satisfy the judgment, then this obligation will be void; otherwise to remain in full force and effect."

The appeal of this case is now concluded. The issuer of the bond, Arch Insurance Company, has paid defendants and intervenor $25 million, the full amount of the bond. And by agreement with defendants and intervenor, the remainder of the judgment will be satisfied within the month by the distribution of stock and warrants in the reorganized successor to Forest.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Because the entire amount of the judgment made final on appeal will be satisfied, and because the supersedeas bond amount has been exhausted, the supersedeas bond should be released.

Forest requests that the Court order the District Clerk to immediately release and return the original supersedeas bond to its attorney, Johnny W. Carter, Susman Godfrey L.L.P., 1000 Louisiana St., Ste. 5100, Houston, TX 77002.

Respectfully submitted,

By: /s/ Johnny W. Carter
Geoffrey L. Harrison
gharrison@susmangodfrey.com
State Bar No. 00785947
Johnny W. Carter
jcarter@susmangodfrey.com
State Bar No. 00796312
Richard W. Hess
rhess@susmangodfrey.com
State Bar No. 24046070
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Telecopy: (713) 654-6666

*Attorneys for Forest Oil Corporation*

### Certificate of Conference

Johnny Carter, counsel for Forest Oil Corporation, conferred on September 21, 2017 with Warren Harris, counsel for Defendants and Intervenor, about the substance of this motion. Mr. Harris stated that his clients were unopposed to the motion.

/s/ Johnny W. Carter
Johnny W. Carter

2

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**Certificate of Service**

I certify that on September 22, 2017, a true and correct copy of this document properly was served on the following counsel of record in accordance with the TRCP via electronic efiling and email by agreement with the parties:

| | |
|---|---|
| Jon Christian Amberson<br>Larissa Janne Hood<br>JON CHRISTIAN AMBERSON, P.C.<br>2135 East Hildebrand Avenue<br>San Antonio, TX 78209<br>chris@ambersonpc.com<br>larissa@ambersonpc.com<br>*Counsel for Defendants and Intervenor* | Fernando Mancias<br>LAW OFFICES OF FERNANDO G. MANCIAS, PLLC<br>4428 S. McColl Road<br>Edinburg, TX 78539<br>Fernando@fernandomanciaslaw.com<br>*Counsel for Defendants and Intervenor* |
| John Carroll<br>ATTORNEY AT LAW<br>111 West Olmos Drive<br>San Antonio, TX 78212<br>jcarrollsatx@gmail.com<br>*Counsel for Defendants and Intervenor* | |
| Warren W. Harris<br>Bracewell LLP<br>711 Louisiana St., Ste. 2300<br>Houston, TX 77002-2770<br>warren.harris@bgllp.com<br>*Counsel for Defendants and Intervenor* | |

/s/ Johnny W. Carter
Johnny W. Carter

3

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 6

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## SPECIAL WARRANTY DEED

| | |
|---|---|
| **Effective Date:** | September 23, 2008 |
| **Grantor:** | James A. McAllen |
| **Grantor's Mailing Address:** | P.O. Box 1139<br>Edinburg, TX 78540 |
| **Grantee:** | ExStra-McAllen, LLC, a Texas Limited Liability Company<br>c/o Exchange Strategies Corporation |
| **Grantee's Mailing Address:** | 900 E. Hamilton Avenue, Suite 100<br>Campbell, CA 95008 |

**Consideration:**   TEN AND NO/100 DOLLARS and other good and valuable consideration.

**Property:**

The property located in Hidalgo County, Texas, described on the attached Exhibit A, which Exhibit A is incorporated by reference, together with all improvements and all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, appurtenances, water, riparian or lateral rights belonging or in anywise appertaining thereto; and all rights titles and interest of Grantor in and to any roads, ways, strips or gores of land adjacent to any of the real property.

**Reservations From and Exceptions to Conveyance and Warranty:**

All valid and effective easements, rights-of-way, reservations, leases, outstanding mineral and royalty interests and leases, use restrictions and protective covenants and encumbrances that affect the property; taxes and assessments for 2008 and all subsequent years, the payment of which Grantee assumes; rights of parties in possession; any discrepancies, conflicts or shortages in area or boundary lines or encroachments or protrusions or any overlapping of improvements; visible and apparent easements; and all laws, rules, ordinances and regulations of any governmental authority having jurisdiction.

Grantor, for the consideration, the receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold unto Grantee and Grantee's successors and assigns forever.   Grantor binds Grantor and Grantor's successors to warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns against every party whomsoever lawfully claiming or to claim the same or any part

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

thereof, by, through and under Grantor only and not otherwise, except as to the reservations from and exceptions to conveyance and warranty.

Grantee, by accepting delivery of this deed, confirms that the Property is sold, conveyed and delivered by Grantor to Grantee and accepted by Grantee, AS IS, WITH ALL FAULTS, and in its current condition and appearance,

GRANTOR:

James A. McAllen

ACKNOWLEDGMENTS

STATE OF TEXAS          §
COUNTY OF HIDALGO       §

This instrument was acknowledged before me on September 23, 2008 by James A. McAllen.

MELISSA N. MIKULIK
Notary Public, State of Texas
My Commission Expires
May 03, 2009

Notary Public, State of Texas

2

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## EXHIBIT A

TRACT I:

All of Lot Two (2) or Tract No. Two (2), PARTITION OF SHARES 1 AND 2 OF THE LINO HINOJOSA PARTITION OF SHARE SIX (6) AND PARTS OF SHARE TWELVE-A (12-A) AND SIXTEEN (16), SAN RAMON GRANT, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 15, Page 24, Map Records, Hidalgo County, Texas.

TRACT II:

The North 20.19 acres of Lot One (1) KELLY-PHARR SUBDIVISION, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 3, Page 133-134, Deed Records, Hidalgo County, Texas.

TRACT III:

Parcel A:

The South 20.24 acres of Lot Thirteen (13), Section Hundred Seventy (270), TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY OF LANDS, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, Page 168-171, Deed Records, Hidalgo County, Texas.

Parcel B:

A tract of land containing 17.61 acres, more or less, out of Lot Fourteen (14), Section Two Hundred Seventy (270), TEXASMEXICAN RAILWAY COMPANY'S SURVEY of lands in Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, pages 168-171, Deed Records, Hidalgo County, Texas, said 17.61 acre tract being more particularly described as follows:

BEGINNING at the point of intersection of the South right-of-way line of "I" Road and the West line of said Lot 14, said point being South 08 degrees 59 minutes West 13.71 feet from the Northwest corner of said Lot 14;

THENCE, with and along the South right-of-way line of "I " Road South 34 degrees 06 minutes 52 seconds East a distance of 349.69 feet;

THENCE, South 68 degrees 32 minutes East a distance of 89.55 feet to a point in the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way;

THENCE, continuing with the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way South 32 degrees 38 minutes East a distance of 991.87 feet to the point of intersection of the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the West right-of-way line of U. S. Highway 281 Bypass on a curve to the right through an arc of 03 degrees 45 minutes 10 seconds, said curve having a radius of 3,819.5 feet and a length of 250.17 feet, the chord of said curve bears South 13 degrees 22 minutes 34 seconds West a

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

distance of 250.10 feet to the point of intersection of the South line of said Lot 14, and the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the South line of said Lot 14, North 81 degrees 07 minutes 18 seconds West a distance of 580.18 feet to a point in the centerline of "I" Road;

THENCE, continuing with the South line of said Lot 14 North 81 degrees 42 minutes 18 seconds West a distance of 385.8 feet to the Southwest corner of said Lot 14;

THENCE, with and along the West line of said Lot 14 North 08 degrees 59 minutes East a distance of 1,271.29 feet to the CORNER OF BEGINNING, said tract containing 17.61 acres, more or less.

SAVE AND EXCEPT a 3.79 acre tract out of the Lot 14, Section 270, lying West of the West right-of-way line of "I" Road, TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY, Hidalgo County, Texas, described in Deed dated June 26, 2006, from James A. McAllen et ux to Lance Walker, recorded under Document No. 1633009, Official Records, Hidalgo County, Texas.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 7

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Mar 18 09 01:49p      stan freeman                               408-354-7119

## Form 424
### (Revised 01/06)

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
**Filing Fee: See Instructions**



**Certificate of Amendment**

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

**MAR 18 2009**

**Corporations Section**

---

## Entity Information

The name of the filing entity is:

ExStra-McAllen LLC

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                    ☐ Professional Corporation
☐ Nonprofit Corporation                     ☐ Professional Limited Liability Company
☐ Cooperative Association                   ☐ Professional Association
☑ Limited Liability Company                 ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: 801029324

The date of formation of the entity is:  9/16/08

---

## Amendments

### 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

Cannon Grove Investments LLC

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

Form 424                                    6

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Mar 18 09 01:49p       stan freeman                                408-354-7119

**Registered Agent**
(Complete either A or B, but not both. Also complete C.)

☐ A. The registered agent is an **organization** (cannot be entity named above) by the name of:

OR

☑ B. The registered agent is an individual resident of the state whose name is:

| Benjamin | | McCaleb | |
|----------|------|-----------|--------|
| First Name | M.I. | Last Name | Suffix |

C. The business address of the registered agent and the registered office address is:

| 2135 E. Hildebrand Ave. | San Antonio | | TX | 78209 |
|-------------------------|-------------|--|-------|---------|
| Street Address (No P.O. Box) | | City | State | Zip Code |

### 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

☐ **Add** each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:

☐ **Alter** each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

☐ **Delete** each of the provisions identified below from the certificate of formation.

## Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

Form 424                                    7

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Mar 18 09 01:50p      stan freeman                                      408-354-7119                      p.6

---

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

_____

---

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:    3/18/09

_____

MANAGING Member
_____
Signature and title of authorized person(s) (see instructions)

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 8

Electronically Filed
10/30/2017 8:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Gonzalez

④

## Ben McCaleb

| From: | Ben McCaleb |
|---|---|
| Sent: | Friday, August 22, 2008 4:12 PM |
| To: | 'al@alanlucke.com'; 'jlm@mcallenranch.com'; 'Richard Leshin' |
| Cc: | 'vicki@mcallenranch.com'; 'tim@alanlucke.com' |
| Subject: | RE: Purchase of Christian Ranch |
| Attachments: | diagram--split conveyance and Exchange first 1031.pdf; exstra_FIRST_pro_forma_sample.pdf; exstra_pro_forma_extension_sample.pdf |

Jim, Al and Richard—

The "Exchange First" 1031 exchange we have been discussing can be summarized as follows:

> The **Exchange First** form is frequently used when the Exchangor has arranged financing for the purchase of the New Property and the lender requires the Exchangor to be the borrower and hold title to the New Property directly. This form involves parking the Old Property with the EAT just prior to the acquisition of the New Property directly by the Exchangor. Typically, the EAT is formed and "borrows" the funds necessary to acquire the Old Property from the Exchangor. Title to the Old Property is transferred to the EAT as an interim buyer. The Exchangor then acquires the desired New Property and takes title to it directly. The exchange is then technically complete, the EAT having acquired the Old Property and the Exchangor having acquired the New Property, in that order. However, the Exchangor has 180 days to arrange for and complete the sale of the Old Property in order for the reverse exchange to be valid. Once a purchase and sale contract with the ultimate Buyer has been ratified, the contract is assigned to the EAT and the EAT "sells" the Old Property to the Buyer. In some cases, title is transferred to the Buyer and in other cases the LLC underlying the EAT is assigned to the Buyer. In either case, the funds from the purchase of the Old Property are immediately distributed to the Exchangor.

As we discussed, attached for your review are the following:

- My "rather involved" diagram *(I am not charging for the artistic content)*, setting forth how this "Exchange First" could be structured, assuming a split of the title into two surface owners and a mineral owner and THEN proceeding to do the exchange.
- The Intermediary's "pro forma" , describing this process in more detail (cost estimate $5000 to Intermediary)
- The Intermediary's "pro forma", describing this process in more detail if we are unable to sell the two tracts in 180 days and require an extension outside of the "IRS safe harbor rules" (cost estimate additional $10000 to Intermediary PLUS cost of financing temporary investor of about $250,000...we would need to discuss this).

FYI, the Intermediary's website is www.exstra1031.com and there is additional useful information there. In response to your questions regarding security with this Intermediary, I refer you to the section at that website, which indicates they do not hold cash (which is what got so many of the standard 1031 exchange companies in trouble). They have been referred to me by Jefferson Bank and JPMorgan, who both use their services. By copy of this email, I am asking my contact there, Stan Freeman, to give us whatever additional information he would normally provide in order to make you feel comfortable "parking" a $5,000,000 piece of raw land with an LLC controlled by his company.

I look forward to talking with you Tuesday. FYI, please keep in mind that our Option/Review Period ends August 30.

Please call if you have any questions.

8/22/2008

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

FW: Revised McAllen Proforma

## Ben McCaleb

| | |
|---|---|
| **From:** | Shechtman, David [David.Shechtman@dbr.com] |
| **Sent:** | Thursday, March 12, 2009 9:26 AM |
| **To:** | stan@exstra1031.com; Ben McCaleb |
| **Subject:** | FW: Revised McAllen Proforma |
| **Attachments:** | Revised McAllen Proforma.PDF |

Stan and Ben,

Attached is a mark-up of the Proforma with my comments.  In particular, I am thinking that it probably is not necessary to have a lease from the LLC to McAllen as this might also look "funky" in the context of the new structure.  Rather, the LLC would just continue as landlord under the existing ag leases.  Do those leases throw off enough income to pay debt service on the loans?   Also, given the new structure, I don't think it is necessary to have any "guaranteed payments" to the investor.

David

David Shechtman
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Street
Philadelphia PA 19103
Phone 215-988-1167
Fax:  215-988-2757
Email:  David.Shechtman@dbr.com

<<Revised McAllen Proforma.PDF>>

***********************************
Disclaimer Required by IRS Rules of Practice:
Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under Federal tax laws.
***********************************
This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message.
Thank you very much.
***********************************

3/13/2009

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

> > > >
> > > >
> > > >

## DrinkerBiddle

> > > >
> > > >
> > > >
> > > >
> > > >
> > > >
> > > >



### David Shechtman
Partner

**David Shechtman** is chair of the Tax Team in the firm's Corporate and Securities Practice Group. His practice includes a wide range of federal, state and local tax matters, including capital asset disposition planning; tax aspects of mergers, acquisition and recapitalizations; capital asset disposition planning; S corporations and partnerships; and administrative appeals of federal, state and local tax controversies. He has developed a national practice in the area of like-kind exchanges of real estate and other assets. In his capacity as counsel to taxpayers and various exchange intermediaries, David has structured and documented hundreds of like-kind exchange transactions for major oil and gas, telecommunications and railroad companies, as well as REITs and smaller real estate owners. He also represents various banks and financial institutions in their capacities as intermediaries, trustees and escrow agents for exchanges. His clients include Wachovia Bank, Union Pacific, Richland Properties and Alliance Exchange Corporation.

Representative Matters:



- Obtaining a private letter ruling for one of the first "repetitive exchange programs" used by an auto leasing company for every disposition of its off-lease vehicles. Annual exchange values currently exceed $1 billion.
- Assisting a home builder client in establishing a structure for equity-based employee compensation combined with tax efficient inter-company transfers of land or contract rights to obtain land
- For a major oil and gas company, structuring as a series of safe-harbor "reverse" exchanges, an ongoing "raze and rebuild" program for existing gas station properties, coupled with various gas station dispositions aggregating more than $200 million.

David frequently writes on tax topics and also lectures at American Bar Association meetings and various conferences on tax law. He is an active member of the Section of Taxation of the American Bar Association, serving on the Corporate Tax Committee and currently serving as chair of the Committee on Sales, Exchanges and Basis. David is a former officer and current council member of the Philadelphia Bar Association's Tax Section and has chaired several committees which comment on proposed federal and state regulations. He also is the author of the chapters on federal and Pennsylvania taxes in the West publication *Pennsylvania Forms and Commentary - Business Organizations*. He is a fellow of the American

### CONTACT INFO

Philadelphia
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-1167
(215) 988-2757 fax
david.Shechtman@dbr.com

### RELATED PRACTICES

Corporate & Securities
Tax

### EDUCATION

Cornell Law School, J.D. 1977
Swarthmore College, B.A. 1974 high honors

### BAR ADMISSIONS

Pennsylvania

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# DrinkerBiddle

**David Shechtman | Page 2**

College of Tax Counsel.  David is admitted to practice in Pennsylvania.

**Presentations and Publications.**  David frequently speaks on the subject of like-kind exchanges and other tax topics.  His recent presentations include *Like-Kind Exchanges:  Creative Planning Techniques*, Pennsylvania Bar Institute, March, 2007; *Current Developments Under §1031*, ABA Tax Section Meeting, January, 2007; *Like-Kind Exchanges Under §1031*, Center for Professional Seminars "Eleventh Annual National Conference on Like-Kind Exchanges Under §1031*," October 2006; *1031 Like-Kind Exchanges* sponsored by Wachovia Exchange Services, Inc, May 2006; *Tax Consequences of Litigation Settlements and Awards*, Pennsylvania Bar Institute, October 2005; *Like-Kind Exchanges of Intangibles*, ABA Tax Section Meeting, May 2005; *Reverse Like-Kind Exchanges and Other "Hot" Exchange Issues*, New York University "59th Institute on Federal Taxation," October 2000; and *Tax Issues Arising From Employment Discrimination Awards and Settlements*, 54th Annual Penn State Tax Conference, June 2000.  He recently authored *IRS Provides Exchange Deadline Relief for Disaster Victims and (Perhaps) a Remedy for Others*, Real Estate Taxation, Volume 32/Issue 4, Third Quarter 2005, Thompson Legal & Regulatory Group and co-authored *Reverse and Build-to-Suit Like Kind Exchanges*, Proceedings of the New York University 59th Institute on Federal Taxation 2001, published by Matthew Bender & Company, Fall 2001.

**In General.**  A 1974 graduate of Swarthmore College, David received his bachelor's degree, with high honors, in economics.  An active participant in undergraduate activities, he served as an editor of the campus newspaper and played on the varsity basketball team.  David earned his J.D. degree from Cornell University Law School in 1977.  While in law school, he was a moot court finalist and won the Evidence Prize for the best evidence exam.

## PUBLICATIONS

Pennsylvania Realty Transfer Tax Update, Tax Alert, January 2008.

Pennsylvania Department of Revenue Makes Major Changes to
Realty Transfer Tax Regulations, December 2007.

Tax Alert - Changes to Pennsylvania's Taxes, July 2006.

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 9

02/03/2015  15:59  2108263340          JON C AMBERSON          PAGE  04/04

Case 20-07004   Document 3-1   Filed in TXSB on 07/21/20   Page 142 of 1073

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# JON CHRISTIAN AMBERSON, P.C.
## ATTORNEYS AT LAW
2135 HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209
TELEPHONE 210/826-3339
FACSIMILE 210/826-3340

## FACSIMILE TRANSMISSION FORM

## ATTORNEY/CLIENT CONFIDENTIAL

DATE:   March 11, 2009                    TIME: _____ .M.

SENDER:   Jon Christian Amberson

PLEASE DELIVER TO:   Jimmy

(956) 380-0112

NUMBER OF PAGES IN TRANSMISSION, INCLUDING COVER SHEET   3

OPERATOR: Brenda

IF THERE IS A PROBLEM WITH TRANSMISSION,
PLEASE CONTACT OPERATOR AT 210/826-3339.

MESSAGE:

THIS INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR AGENT
RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT.  YOU ARE HEREBY NOTIFIED
THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY
NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO THIS OFFICE AT THE
ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

## THANK YOU

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# Jon Christian Amberson, P.C.

### Attorneys at Law

### 2135 East Hildebrand Ave.

### San Antonio, Texas 78209

TELEPHONE (210) 826-3909                    TELECOPIER (210) 826-3340

March 11, 2009

James A. McAllen
McAllen Ranch
P.O. Box 1139
Edinburg, Texas 78540-1139

RE:  1031 Exchange

Dear Jimmy,

I have consulted with Julie Norton regarding the proposed 1031 exchange you are working on with your attorneys Ben McCaleb and Richard Leshin and she has advised me to write you this letter in order to confirm exactly what we can and cannot do.

Ben McCaleb has asked on your behalf whether I would be in a position to accommodate the 1031 transaction structure recommended by your attorneys and CPA, Al Lucke. He informed me that Mary Margaret is not able to facilitate your needs in the transaction due to her disqualification as a related person under the Internal Revenue Code. Mr. McCaleb has asked if I was willing to accommodate you in this transaction due to the fact that I am not related for IRS purposes.

In order for me to accommodate this transaction, Mr. McCaleb has proposed that you loan me $4.5 million dollars and I then purchase 90% of an entity that owns property you own, which I will then own in return for the $4.5 million dollar investment I make. I informed Julie of this proposal by your attorneys and she informed me that we could not do this in the manner proposed by your attorneys and tax advisors. She went on to inform me that the purchase would be in direct violation of the meaning of the IRS Code, which requires it to be an arms length transaction unrelated to you. In other words, the $4.5 million dollars used to make the necessary purchase cannot be tied in any way to the 1031 transaction. Julie is concerned that I could not represent to the

02/09/2015 16:50 2108263340 JON C AMBERSON PAGE 03/04
Case 20-07004 Document 3-1 Filed in TXSB on 07/21/20 Page 144 of 1073
Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Mr. James A. McAllen
March 11, 2009
Page 2

IRS that the source of the $4.5 million dollars was not received from you to facilitate this 1031 related transaction when in truth and in fact, it is. Therefore, if you decide to go forward, then I must treat it as a gift, which I will invest by purchasing your entity. This way in the event of an audit, Mary Margaret and I don't get into trouble with the IRS on a misrepresentation and possible tax fraud issue.

We are happy to help in any way we can, but our CPA advises that this is the only way we can participate. Please have Al Lucke call Julie Norton to discuss her concerns and if you decide to proceed, we are happy to help.

Very Truly Yours,

Jon Christian Amberson

JCA/bkg

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# EXHIBIT 10

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## Ben McCaleb

| | |
|---|---|
| **From:** | Ben McCaleb <bmccaleb@cbmccaleb-law.com> |
| **Sent:** | Wednesday, March 18, 2009 5:12 PM |
| **To:** | 'chris@ambersonpc.com'; 'Vicki'; 'jim@mcallenranch.com' |
| **Cc:** | 'Lesslie L. Eanes'; 'Melissa N. Mikulik'; 'stan@exstra1031.com' |
| **Subject:** | FW: James A. McAllen --RELATED 1031 EXCHANGE |
| **Attachments:** | IOLTA - FNB Acct. Wiring Instructions.doc |

Chris and Jim—

The funds for the purchase of your respective entity's interests in **ExTra-McAllen LLC** should be wired as early as possible in the morning into the escrow account shown in the attached Wire Transfer Instructions. The amounts are as follows:

- **Amberson Natural Resources, LLC** ---$4,500,000
- **Ranch Specialties Company** ---$500,000

If you have any questions or problems with the wire, please contact the escrow facilitator, **Lesslie L. Eanes,** as follows:

**Lesslie L. Eanes**
*Attorney at Law*
315 E. McIntyre
Edinburg Texas 78541
Phone: 956-383-1656
Mobile: 956-369-0340
Fax: 956-380-0428
Email: LesslieE@landtitleusa.com



Please give me a call with any questions.

*C. Benjamin McCaleb*
*C. Benjamin McCaleb, P. C.*
*2135 E. Hildebrand Avenue*
*San Antonio, Texas 78209*
*tel: 210-736-2222*
*fax: 210-881-0200*
*bmccaleb@cbmccaleb-law.com*

Board Certified--Commercial Real Estate Law
Texas Board of Legal Specialization

---

**From:** Lesslie L. Eanes [mailto:LesslieE@landtitleusa.com]
**Sent:** Wednesday, March 18, 2009 9:21 AM
**To:** Ben McCaleb
**Cc:** Melissa N. Mikulik
**Subject:** RE: James A. McAllen --RELATED 1031 EXCHANGE

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Wiring instructions are attached.

Thanks!

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## WIRING INSTRUCTIONS

**First National Bank**

**ABA NO.**        `1415`

**CREDIT TO ACCOUNT NO**        4433

**IN THE NAME OF: Lesslie L. Eanes Attorney at Law**
**IOLTA FOUNDATION TRUST ACCOUNT**

**REFERENCE TO James A. McAllen**

**PLEASE FAX CONFIRMATION WHEN WIRE IS RECEIVED TO**
**956-384-0428**

315 E. McIntyre   •   Edinburg, Texas 78541   •   (956) 383-1656

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION
## TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS

Plaintiff/Counter-Defendant Jon Christian Amberson P.C. and Third-Party Defendants Jon
Christian Amberson (an individual) and Amberson Natural Resources LLC (collectively, the
"*Amberson Parties*") file this Motion to refer certain claims to arbitration and to retain others.

### I. Summary

Many of the claims asserted in this action are subject to an arbitration agreement and must
be referred to arbitration.  However, those claims that relate to the so-called "Cannon Grove"
transaction are not within the scope of the arbitration agreement and should be retained by this
Court for disposition (including pursuant to the Amberson Parties' pending Motion for Partial
Summary Judgment).

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## II. <u>Background Facts</u>

The attached Amberson Declaration (**<u>Exhibit A</u>**) establishes the following facts pertinent to arbitration:

1.  Jon Christian Amberson ("***Amberson***") has been sued as a Third-Party Defendant. He is an attorney and the principal of Plaintiff Jon Christian Amberson P.C. (the "***Amberson Firm***").

2.  Starting in late 2004, James McAllen ("***Mr. McAllen***") and the other Defendants (collectively, the "***McAllen Parties***") engaged the Amberson Firm to represent them on claims against Forest Oil Company for environmental contamination of the McAllen Ranch and personal injury to Mr. McAllen (the "***Forest Oil Litigation***").

3.  Mr. McAllen and the other McAllen Parties executed engagement agreements with the Amberson Firm relating to the Forest Oil Litigation (collectively, the "***Engagement Agreement***"). The Engagement Agreement provided for arbitration of any fee dispute relating to the Forest Oil Litigation.

4.  The Amberson Firm represented the McAllen Parties in the Forest Oil Litigation, successfully obtaining a $28 million arbitration award that was ultimately upheld by the Texas Supreme Court.

5.  The Amberson Firm has brought this action to secure a referral to arbitration (in accordance with the Engagement Agreement) of its claim to a contingency fee based on the affirmed Award.

6.  Third-Party Defendant Amberson Natural Resources, LLC ("***ANR LLC***") is a company owned by Amberson. It is not engaged in the practice of law. It has not represented the McAllen Parties at any time in the practice of law or in any other capacity. It has not appeared

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

before the bar of any court.  It has not acted for the McAllen Parties in connection with the underlying Forest Oil Litigation that resulted in the Award to the McAllen Parties.  It has never charged legal fees to the McAllen Parties.  It is not a party to any engagement agreement with the McAllen Parties.  It has not sought any benefits under the Amberson Firm's Engagement Agreement.  It has not brought this action against the McAllen Parties, nor has it asserted any claim against the McAllen Parties.  It has not entered into any arbitration agreement with the McAllen Parties.

7.     Mr. McAllen owned real estate in Edinburg, Texas known as the "Cannon Grove" property (the "*CG Property*").  This CG Property was deeded by Mr. McAllen to his Texas limited liability company called Cannon Grove Investments, LLC (the "*CGI LLC*").  The CG Property is unrelated to and geographically separate from the McAllen Ranch.  It was in no way involved in the Forest Oil Litigation.  Likewise, the CGI LLC entity was not involved in the Forest Oil Litigation.  It did not lease the CG Property to Forest Oil Company.  That property was not contaminated by Forest Oil Company.  Neither the CG Property nor CGI LLC was the subject of any engagement agreement at any time with Amberson or with the Amberson Firm.  The Amberson Firm has never represented, provided legal services or charged legal fees to CGI LLC.

8.     In 2009 Mr. McAllen wanted Amberson to act as a counter-party in a 1031 tax-free exchange transaction involving Mr. McAllen's CGI LLC entity and the CG Property.  This "Cannon Grove" transaction is described in the attached Amberson Declaration.  The Cannon Grove transaction was entirely unrelated to the Forest Oil Litigation.

9.     Mr. McAllen claims that in March 2009 he made an undocumented $4.5 million loan to Amberson's separate company Amberson Natural Resources, LLC in connection with the Cannon Grove transaction.  Amberson denies that.  There is no signed loan agreement or

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

promissory note.  Amberson avers that the transfer by Mr. McAllen was not a loan, and that he had refused to serve as a counter-party if the transaction involved a loan.  Amberson's contemporaneous letter to Mr. McAllen seven days before the transaction was consummated supports this. Amberson Decl. ¶¶ 11, 12 and Exhibit 9 to Decl.

10.     Furthermore, any claims relating to the Cannon Grove transaction are barred by the applicable statute of limitations and the statute of frauds (the Amberson Parties' motion for partial summary judgment is pending before this Court).

11.     In any event, the Cannon Grove transaction is unrelated to the legal fee issues arising from the Forest Oil Litigation and under the arbitration clause in the Engagement Agreement.  The claims relating to the Cannon Grove transaction are therefore not subject to arbitration and should be retained by the Court.

### III. <u>Argument and Authorities</u>

12.     If a party opposes arbitration of a claim, the court must determine whether there is a valid agreement to arbitrate and whether the claim is within the scope of the arbitration agreement. *See In re Houston Pipe Line Co.*, 311 S.W.3d 449, 451 (Tex. 2009); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 226 (Tex. 2003).

13.     Here, the ***Amberson Firm*** and each of the McAllen Parties are parties to the Engagement Agreement, which contains a valid arbitration clause.  The subject matter of the Engagement Agreement is the Forest Oil Litigation.  The arbitration clause in the Engagement Agreement applies to "[a]ny fee dispute arising under ***this*** agreement and/or the services rendered for you ***by the firm***."[1] (emphasis added).  Thus, any claims that arise from the Forest Oil Litigation

---

[1] This clause is the same in the two engagement agreements at issue.

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

are within the scope of the firm's Engagement Agreement and subject to arbitration; claims that arise from unrelated transactions are not.

14.     The claims at issue fall into five categories:

A.     **The Amberson Firm's claim to recover legal fees**.  The petition in this action seeks arbitration of the Amberson Firm's claim to recover fees for the legal work it did in the Forest Oil Litigation.  That claim is unquestionably a "fee dispute" arising under the Engagement Agreement and the services rendered by the Amberson Firm.  It should be referred to arbitration.

B.     **The Counterclaims related to the Forest Oil Litigation**.  Pending claims asserted by the McAllen Parties against the Amberson Firm that do *not* relate to the Cannon Grove transaction are also potentially relevant to the Amberson Firm's claim for fees (as a setoff), and therefore are also appropriate for the arbitrator to consider.

C.     **The Counterclaim related to the Cannon Grove Transaction**.    The counterclaims asserted by the McAllen Parties against the Amberson Firm concerning the Cannon Grove transaction are unrelated to the Forest Oil Litigation.  The dispute concerning the Cannon Grove transaction is not a "fee dispute" and does not arise from the Engagement Agreement or any services rendered by the Amberson Firm to the McAllen Parties.  The Amberson Firm did not render any legal services to the McAllen Parties in the Cannon Grove transaction; the McAllen Parties had three other law firms representing them in that transaction. *See* Amberson Decl. ¶¶ 8-16.

D.     **Third-Party Claims against Amberson individually as a member of the Amberson Firm regarding his duties during the Forest Oil Litigation**.   These claims are arbitrable.

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

E.    **<u>Third-Party Claims related to the Cannon Grove Transaction</u>**.  The Third-Party Claims that relate to the Cannon Grove Transaction (including any and all claims against ANR LLC, which had no role in the Forest Oil Litigation and is a stranger to the Engagement Agreement), are not arbitrable.  Those claims do not involve or relate to a "fee dispute" and do not arise from the services the Amberson Firm provided to the McAllen Parties under the Engagement Agreement in the Forest Oil Litigation.

15.    In short, applying the language of the arbitration clause to these five categories of claims, the Court should retain all claims to the extent they relate to either the Cannon Grove transaction or Amberson Natural Resources, LLC (the "***Non-Arbitrable Claims***"), and refer to arbitration all other pending claims.

## IV.  <u>Conclusion</u>

Based on the foregoing, the Amberson Parties move the Court to (i) retain the Non-Arbitrable Claims, (ii) refer Plaintiff's claim for legal fees to arbitration, and (iii) refer the Defendants' remaining claims (i.e., excluding the Non-Arbitrable Claims) to arbitration so that the arbitrator can determine the extent to which such remaining claims may offset the fees due Plaintiff.

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
       Steven A. Fleckman

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on October 30, 2017.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

*/s/Steven A. Fleckman*
Steven A. Fleckman

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>DECLARATION OF JON CHRISTIAN AMBERSON</u>

Jon Christian Amberson declares as follows:

1.     I am over the age of 18 years, competent to testify, and declare under penalty of perjury that, to my personal knowledge, the facts stated below are true and correct.

2.     I submit this declaration in support of the Amberson Parties' (i) Motion for Partial Summary Judgment as to the "Cannon Grove" Claims and (ii) Motion to Retain the Cannon Grove Claims for Disposition by the Court.

### A.   <u>The Forest Oil Litigation, the Legal Fee Issue, and the Arbitration Agreement</u>

3.     I am an attorney and the principal of Plaintiff Jon Christian Amberson P.C. (the "*Amberson Firm*").   Starting in late 2004, James McAllen ("*Mr. McAllen*") and the other


EXHIBIT A

Defendants (collectively, the "*McAllen Parties*") engaged my law firm (the "*Amberson Firm*") to represent them in lawsuits against Forest Oil Company for environmental contamination of the McAllen Ranch and personal injury to Mr. McAllen (the "*Forest Oil Litigation*").

4.      Mr. McAllen and the other McAllen Parties executed engagement letters with the Amberson Firm relating to the Forest Oil Litigation (collectively, the "*Engagement Agreement*"). The Engagement Agreement provided for arbitration of any fee dispute. True and correct copies of my firm's engagement letters are attached hereto as **Exhibit 1**.

5.      For twelve years the Amberson Firm represented the McAllen Parties in the Forest Oil Litigation. Those twelve years of work culminated in an arbitration award in 2012 (the "*Award*") in favor of the McAllen Parties against Forest Oil for approximately $22,781,000 plus accrued interest of about $5,695,000, or a total of more than $28,476,000. A true and correct copy of the Award is attached hereto as **Exhibit 2**. Over contentious challenges by one of the most prominent litigation firms in the state (the Susman Godfrey firm) that Award was sustained in the district court, in the court of appeals, and subsequently on two separate occasions in the Texas Supreme Court. A true and correct copy of the district court's final judgment affirming the Award is attached hereto as **Exhibit 3**. Included in this Award and judgment, the McAllen Parties were granted more than $6,700,000 in attorneys' fees. The Texas Supreme Court upheld the Award in an opinion issued on April 28, 2017. *Forest Oil Corp. v. El Lucio Land & Cattle Co.*, 518 S.W.3d 422 (Tex. 2017), and subsequently issued its mandate enforcing judgment on the Award. A true and correct copy of the Texas Supreme Court's mandate is attached as **Exhibit 4. Exhibit 5** is a true and correct copy of a motion subsequently filed by Forest Oil in the district court indicating that the McAllen Parties have now received in cash (and/or partially in securities), the monetary damages awarded to them.

6. In addition to the monetary recovery, as part of the Award my firm (working in concert with our expert witnesses) helped secure additional relief against Forest Oil requiring it to remediate its extensive contamination of the McAllen Ranch, including scattered radioactive material and other toxic substances. It is expected that the value of this clean-up remedy will, over time, substantially *exceed* the McAllen Parties' $28 million monetary recovery (although, assuming the contingency fee agreement is enforced, my firm is only seeking its 1/3 share of the monetary award).

7. The Amberson Firm has therefore brought this action to compel the McAllen Parties to arbitrate my firm's claim for payment of the legal fees remaining due in accordance with the arbitration provision in the Engagement Agreement. In the alternative, my firm has pleaded for a *quantum meruit* fee determination based on the value of the entire Award, inclusive of the environmental remediation relief.

### B. The 2009 Cannon Grove Transaction

8. Prior to 2009 Mr. McAllen owned real property in Edinburg, Texas known as the "Cannon Grove" property (the "*CG Property*"). In 2008 he deeded the CG Property to his Texas limited liability company, which he subsequently re-named Cannon Grove Investments, LLC (the "*CGI LLC*"). True and correct copies of Mr. McAllen's 2008 deed and the Texas Secretary of State's record of the grantee's name change to Canon Grove Investments, LLC are respectively attached as **Exhibits 6 and 7**.

9. In 2009 I was still married to Mr. McAllen's daughter. My three children are Mr. McAllen's grandchildren. Ben McCaleb, a San Antonio attorney representing Mr. McAllen, related to me that Mr. McAllen wanted to undertake a tax free exchange transaction, and he wanted me to act as a counter-party in that transaction.

10.     Through his attorney Mr. McCaleb, Mr. McAllen proposed an arrangement by which he would loan $4.5 million to enable a company (to be owned by me) to purchase a 90 percent interest in CGI LLC so that Mr. McAllen could defer his income taxes to the IRS.  In addition to Mr. McAllen's tax accountant, Alan Lucke, at least two attorneys were advising and representing Mr. McAllen in this transaction: (i) Mr. McCaleb and (ii) Richard Leshin, a tax attorney in Corpus Christi.  Documents I have subsequently received reflect that he was also advised by a tax attorney with the Philadelphia Drinker Biddle firm.  *See* **Exhibit 8** attached.  Neither I nor my firm represented Mr. McAllen or CGI LLC in this transaction.

11.     I took Mr. McAllen's proposal to my tax accountant for review and advice.  After that review, I decided that I could not receive the funds as a "loan" with strings attached, and that it should be an arms-length arrangement.  On March 11, 2009 I wrote a letter to Mr. McAllen to explain my concern that I did not want my wife and me to be exposed to any risk of potential tax fraud issues, and to clarify what I could do (and would not do) in connection with the purchase of equity in his company, CGI LLC.  A true and correct copy of that letter is attached hereto as **Exhibit 9**.  My letter made it clear to Mr. McAllen that, based on the tax advice I had received, I would not agree to his proposal to treat the $4.5 million transfer as a "loan," and that if he chose to involve me in the transaction, his transfer of the $4.5 million would have to be an outright gift; only then would I feel comfortable using the funds to purchase the CGI LLC interest.

12.     Seven days later, about March 18, 2009, Mr. McAllen proceeded with the transaction, transferring $4.5 million to a new limited liability company owned by me, Amberson Natural Resources LLC ("**ANR LLC**").  A copy of the wiring instructions is attached as **Exhibit 10**.  Consistent with my letter, ANR LLC then purchased a 90 percent interest in CGI LLC from Mr. McAllen, using Mr. McAllen's gifted funds in the amount of $4.5 million.  Thus, Mr.

McAllen sold me 90 percent of CGI LLC, and as the purchase price I paid him $4.5 million at the time of the Cannon Grove transaction.

13.     Consistent with my letter insisting that any transfer be a gift and not a loan, Mr. McAllen did not send me (or any firm that I own) any loan agreement or promissory note to sign. Neither did any of his three law firms. Neither I (nor any firm that I own) signed any instrument at any time reflecting any loan from Mr. McAllen related to the Cannon Grove transaction. Indeed, Mr. McAllen never made any demand as to any alleged loan until after my 2013 divorce from his daughter was complete, in which I was awarded all rights in ANR LLC (the company that owns the CGI LLC interest)—at least five years after the Cannon Grove transaction.

14.     My company, ANR LLC, is not part of the Amberson Firm. It is not engaged in the practice of law. It never represented the McAllen Parties at any time in the practice of law. It has never appeared as counsel before the bar of any court, nor could it. It never acted for the McAllen Parties in connection with the Forest Oil Litigation. It never entered into any arbitration agreement with the McAllen Parties. It is not a party to any engagement agreement with the McAllen Parties. It has not sought any benefits under the Engagement Agreement or any other arbitration agreement. It has never charged legal fees to the McAllen Parties. It is not a plaintiff in this case, and has not asserted any claim against the McAllen Parties of any nature, for legal fees or otherwise.

15.     The Amberson Firm's petition in this action solely seeks arbitration of its claim to recover the fees it has earned for the legal work performed on behalf of the McAllen Parties in the Forest Oil Litigation. My law firm's petition does not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. The Forest Oil Litigation did not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. ANR LLC is not a plaintiff in my law firm's petition. I never

Declaration of Jon Christian Amberson          5

represented Mr. McAllen with respect to the Cannon Grove transaction, nor did my law firm. As noted above, Mr. McAllen was separately represented and advised in the Cannon Grove transaction by three other law firms. Neither the CG Property nor the CGI LLC was the subject of any engagement agreement at any time with me or with the Amberson Firm. Neither I nor the Amberson Firm has ever charged legal fees to CGI LLC.

16.    Moreover, the CG Property is unrelated to and geographically separate from the McAllen Ranch. The CG Property was not involved in the Forest Oil Litigation; it was not involved in the underlying arbitration with Forest Oil. The CG Property was never leased to Forest Oil Company.

17.    In response to my firm's petition to compel arbitration for recovery of its legal fees in the Forest Oil Litigation, the McAllen Parties filed their Original Answer, Counterclaim, and Claims Against Third Parties on September 25, 2017. The McAllen Parties' counterclaim and third party claims involving the Cannon Grove transaction were not filed until more than eight years after the Cannon Grove transaction was concluded.

18.    I submit this Declaration in lieu of an affidavit as authorized by TEX. CIV. PRAC. & REM. CODE § 132.001. In accordance with the statute, I state that my date of birth is 12/24/1956, and my current address is 2135 East Hildebrand, San Antonio Tx. 78209

Executed in Bexar County, Texas on October 27, 2017.

_____
Jon Christian Amberson

# EXHIBIT 1

# JON CHRISTIAN AMBERSON, P.C.
### ATTORNEYS AT LAW
2135 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3339                                          TELECOPIER (210) 826-3340

December 10, 2004

Mr. James A. McAllen
Mrs. Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

     RE:   **Forest Oil Corporation**

Dear Mr. & Mrs. McAllen:

The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C. and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil corporation relating to environmental contamination issues arising from the actions of Forest Oil Corporation and its employees as relayed to you by Mr. Bobby Pearson, a former employee of Forest Oil Corporation.

<u>**DESCRIPTION OF SERVICES**</u>

1.   **CLIENTS AND CLIENT REPRESENTATIVES**:  The firm is being retained to represent the following:

    (1)   James Argyle McAllen, Individually.

    (2)   El Rucio Land and Cattle Company, Inc. - Representative - James A. McAllen.

    (3)   San Juanito Land Partnership, Ltd. - Representative James A. McAllen.

-1-

(4)   McAllen Trust Partnership - Representative - James A. McAllen.

(5)   John R. Willis Management Partnership, Ltd., - Representative - James A. McAllen.

The representative of the aforementioned entities is James A. McAllen.

**2.   PURPOSE OF REPRESENTATION**:   It is understood that our firm is being retained by you to provide legal services in relation to the action against Forest Oil Corporation, and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated the June 22, 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-2016-95-G, state statutes, environmental laws and state regulations on your properties.

**3.   LEGAL REPRESENTATION**:   Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.   Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.   NO GUARANTEE OR INDUCEMENTS:**   It is understood that the law firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.   It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.   TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

-2-

1. Proper and expected behavior of counsel are described in the Creed.

2. Civility and courtesy are expected from lawyers and are not a sign of weakness.

3. I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4. I will not pursue tactics which are intended primarily for delay.

5. I will not pursue any course of action which is without merit.

6. I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7. You are advised that mediation, arbitration and other alternative methods of resolving and settling disputes are available to you to resolve disputes with opposing parties.

**6. FEES:** The nature, character and amount of fees charged by us are determined in accordance Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

(1) the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

(3) the fee customarily charged in this locality for similar legal services;

(4) the amount involved and the results obtained;

    (5)   the time limitations imposed by you or by the circumstances of our engagement;

    (6)   the nature and length of our professional relationship with you;

    (7)   the experience, reputations and ability of the lawyer or lawyers performing the services; and,

    (8)   whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**7.   BILLINGS:** You understand that billings will be furnished to you periodically, based upon the frequency and amount of activity required to be expended necessarily and reasonably in your behalf.  You agree to promptly pay within fifteen (15) days of any statement rendered to you all sums due and owing.

**8.   FIXED HOURLY RATES:**  The following schedule of fixed hourly rates will apply to your case.

| LAWYER/ASSOCIATE/LEGAL ASSISTANT | RATE |
|---|---|
| A.   Lawyer, Jon Christian Amberson | $350.00 per hour |
| B.   Lawyer, Larissa J. Hood | $250.00 per hour |
| C.   Legal Assistant/Paralegal | $60.00  per hour |

Any services performed after January 1, 2005, will be charged at regular hourly rates then in effect.  It is understood that other personnel of the law firm may perform services in this matter, and the rates set forth above shall apply to all attorneys, associates or legal assistants of equivalent experience.  The total fees are sometimes raised from what the hourly rates would generate, based on the complexity and size of the transaction, as well as the attainment of superior results. We discuss all such increases with our clients, and are confident that you will find them appropriate should we conclude such an increase is fair.  You will be charged for travel time in connection with our representation and time spent in travel will be billed for attorney's time at one half the attorney's usual hourly fixed rate.  We will submit monthly fee statements to you

-4-

which will contain statement for fees plus cost and expenses incurred on behalf of the clients as hereinafter provided for. It is agreed that any fees and/or expenses due under this letter are due upon receipt for the statement for such fees and/or expenses. Fees will be subject to a final adjustment depending upon results obtained in light of efforts expended on your behalf.

9. **ATTORNEY IN CHARGE:** It is understood and agreed that Jon Christian Amberson is the attorney in charge of your representation. He is the only attorney in the law firm who will work on your case unless, in his sole discretion, he decides to consult with and seek the assistance of other members of the firm. It is further understood that he may need to seek the assistance of other lawyers outside the firm and in that event will endeavor to seek qualified attorneys who charge fees at rates that are reasonable under the circumstances in the event any defendant refuses to take responsibility for the actions outlined by Bobby Pearson, the whistleblower in this matter. We are hoping that the responsible party for these actions takes responsibility early on and identifies the areas of concern and remediates the problem areas on the ranch and compensates you for your out of pocket expenses in dealing with this most unfortunate matter. If not, then this will require my firm to hire outside counsel to prosecute this matter fully and completely.

10. **COURT AWARDED ATTORNEY'S FEES:** In the event that the court may, in its discretion, award a sum as attorney's fees, should the amount of attorney's fees awarded exceed the fees you have paid, we shall be entitled to an additional sum in the amount of the difference between the fees received from you and the fees awarded. The court's failure to award you attorney's fees shall not otherwise affect the fees to be paid our firm under this agreement.

11. **COSTS AND EXPENSES:** In addition to the professional fees charged by the law firm, you will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representative and obtain approval for major expenses in advance, which approval shall be given by the Representative. These costs and expenses include, but are not limited to the following:

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firm advances such sums, then you agree to reimburse the firm for all sums so paid.

**12. DISCUSSION OF ESTIMATES OF FEES:** During the course of the attorney's discussion with you about handling this matter, the attorneys may have provided you with certain estimates of the magnitude of the fees and expenses that will be required at

certain stages of this litigation.  It is the law firm's policy to advise all its clients that such estimates are just that, and that the fees and expenses required are ultimately a function of many conditions over which the attorneys have little or no control, particularly the extent to which the opposition files pretrial motions and engages in its own discovery.  The reason why the attorneys submit bills to clients on a monthly basis shortly after the services are rendered is so the clients will have a ready means of monitoring and controlling the expenses they are incurring.  If the clients believe the expenses are mounting too rapidly, the clients agree to contact the attorneys immediately so they can assist in evaluating how expenses might be curtailed in the future.  When the attorneys do not hear from the clients, they may assume that the clients approve of the overall level of activity on their part in this case on the clients behalf.

**13.  OVERTIME FOR CLERICAL HELP:**  The clients understand that from time to time, the attorneys may be called upon to render legal services in the clients' behalf during evenings, weekends and on other holidays in order to meet time schedules or other emergency situations as they may arise.  In such an event, the clients agree to reimburse the firm for any additional expenses incurred by them by way of overtime or additional temporary help such as Manpower or other temporary services.

**14.  NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.  Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.  For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**15.  ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by our firm will be submitted to arbitration.  The decision of any such arbitration or arbitration panel shall be binding, conclusive and non appealable. The arbitrator will be selected as follows:

-7-

(1)  Arbitration will be determined by a retired district judge who has previously served on any of the Bexar County District Courts and is presently retired or in senior status.  The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Bexar County, Texas.

16.  **LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Bexar County, State of Texas.

17.  You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

18.  You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

19.  If the foregoing terms and conditions accurately summarize and confirm your understanding of our engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen, Individually, and representative of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

_____
JAMES A. McALLEN, Individually


_____
JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., McAllen
Trust Partnerships and John R. Willis
Management Partnership, Ltd.

-8-

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Ave.
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 - Facsimile

965-686-9403                p.3

# JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

**Page 1**

TELEPHONE (210) 826-0336                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

> RE:  Contract of Employment Regarding Representation of El Rucio Land and
> Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
> Partnership and John R. Willis Management Partnership Ltd., related to
> prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
> Conoco/Phillips Inc.

Dear Mr. & Mrs. McAllen:

The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

## DESCRIPTION OF SERVICES

**1.    CLIENTS AND CLIENT REPRESENTATIVES:**  The firm is being retained
to represent the following:

> 1.  El Rucio Land and Cattle Company, Inc. – Representative –
> James A. McAllen
>
> 2.  San Juanito Land Partnership Ltd. – Representative –
> James A. McAllen
>
> 3.  McAllen Trust Partnership – Representative – James A.
> McAllen

Page 2

4.    John   R.   Willis   Management   Partnership   Ltd.   –
Representative – Frances W. McAllen

The representatives of the aforementioned entities are James A.
McAllen and Frances W. McAllen.

2.    **PURPOSE OF REPRESENTATION:**  It is understood that the firm is
being retained by you to provide legal services in relation to an action against Forest Oil
Corporation, Conoco Inc., and any of their successors or predecessors in interest
including affiliates and any other oil company that is found to have violated state
statutes and environmental laws and regulations on your properties.

3.    **LEGAL REPRESENTATION:**  Our legal representation is limited to this
matter and we have not been retained to represent you generally or in connection with
any other matter unless it has been confirmed by separate letter.  Generally, we are to
perform all services and take all such action in the described matters as may be
appropriate and necessary in our discretion and serve as your counsel in furtherance of
your interests.

4.    **NO GUARANTEE OR INDUCEMENTS:**  It is understood that the firm
cannot and does not guarantee the outcome or results of any litigation.  We cannot and
do not make any warranties, express or implied, with regard to our representation
except that our representation will be in compliance with the Code of Professional
Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is
further understood that the firm has made no representations, inducements or
warranties to you in order to induce you to employ our services.

5.    **TEXAS LAWYER'S CREED:**  I am required to advise you of the existence
of and our obligations under the Texas Lawyer's Creed.  A copy of the Creed is
enclosed along with this letter. Pursuant to the Creed, we advise you that:

1.    Proper and expected behavior of counsel are described in the
Creed.

2.    Civility and courtesy are expected from lawyers and are not a sign
of weakness.

3.    I will not pursue conduct which is intended primarily to harass or
drain the financial resources of the opposing party.

4.    I will not pursue tactics which are intended primarily for delay.

Page 3

5.    I will not pursue any course of action which is without merit.

6.    I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7.    You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.    **FEES:** The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**Page 4**

    **7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

    The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

    It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

    In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

    The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

    **8. COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

    1)    Court costs;

    2)    Citation and/or subpoena fees;

    3)    Deposition fees, costs and expenses;

Page 5

4)  Investigation fees, costs and expenses;

5)  Expert witness fees, costs and expenses;

6)  Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)  Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)  Long distance telephone charges, and conference calls expenses;

9)  Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

9.  **NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

10.  **ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)  Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Page 6

11. **LAW APPLICABLE AND VENUE:** This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

12. You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

13. You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

14. If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and representatives of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., and McAllen
Trust Partnerships

FRANCES McALLEN
On Behalf of John R. Willis Management,
Partnership, Ltd.

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 — Facsimile

# EXHIBIT 2

CAUSE NO. 2005-23091

| EL RUCIO LAND AND CATTLE, COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP, and JAMES ARGYLE MCALLEN, | § § § § § § § § | |
|---|---|---|
| | § | ARBITRATION BEFORE THE HONORABLE DARYL K. BRISTOW, CLAYTON J. HOOVER, AND DONATO D. RAMOS |
| Claimants, | § § | |
| VS. | § § | |
| | § | |
| FOREST OIL CORPORATION AND DANIEL B. WORDEN, | § § § § | |
| Respondents. | § | |

## FINAL JUDGMENT AND DECISION OF THE PANEL

After considering the testimony and evidence offered by the parties and admitted during the arbitration hearing, the Panel makes the following findings of fact and conclusions of law and enters judgment as herein provided. Any findings of fact that are more properly conclusions of law should be so construed. Conversely, any conclusions of law that are more properly findings of fact should be so construed.

### FINDINGS OF THE PANEL

1.     El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen (collectively the "Claimants") are the owners in fee of certain ranchlands in Hidalgo County, Texas, known as El Rucio, San Juanito, and Tres Corrales ranches, collectively known as the McAllen Ranch.

2804

2.      Respondent Forest Oil Corporation leases mineral rights on approximately 3,000 acres of the McAllen Ranch; the Forest leases cover approximately 1,500 acres out of the San Juanito Ranch.

3.      Forest Oil Corporation built and still operates a natural gas plant on approximately 5.75 acres of the McAllen Ranch.

4.      Respondent Daniel B. Worden has been, and continues to be, an employee of Forest Oil, who works at the McAllen Ranch. However, we make no findings of liability with respect to Mr. Worden and hereby exclude him from the remainder of this decision. It is therefore Ordered, Adjudged and Decreed that claimants take nothing from Defendant Daniel B. Worden.

## DECISIONS OF THE PANEL

5.      The Panel hereby Orders, Adjudges and Decrees that Claimants are the prevailing parties in this matter and that Claimants El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership are entitled to actual damages in the amount of $15,000,000 collectively. The Panel further hereby Orders, Adjudges and Decrees that Mr. James Argyle McAllen, individually, is entitled to actual damages of $500,000.

6.      The Panel hereby Orders, Adjudges and Decrees that Claimants have met their burden of proof as required by law for their claims of exemplary damages and hereby awards exemplary damages to Claimants in the total amount of $500,000.

7.      The Panel hereby Orders, Adjudges and Decrees that Claimants are entitled to declaratory relief as requested regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement and hereby Orders, Adjudges and Decrees that:

> a.      Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

Page 2

2805

b.  Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c.  Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d.  Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

8.  It is further Ordered, Adjudged and Decreed that Forest Oil shall provide assurance to Claimants for its performance of the continuing obligations imposed on Forest under the Surface Agreement by posting and delivering a bond to Claimants in the amount of $10,000,000, which bond shall be posted and valid and subsisting during the period of time concurrent with the term of the Surface Agreement. Such bond shall be made payable to Claimants in the event of Forest Oil's failure or refusal to comply with this panel's judgment and/or Forest's continuing obligations under the Surface Agreement.

### AWARD OF ATTORNEYS' FEES

9.  The Panel makes the following findings as to attorneys' fees:

a.  Although the Panel finds that Claimants are the prevailing parties in this arbitration proceeding, the Panel also finds that Forest Oil is entitled to a credit for attorneys' fees required to determine the applicability of the parties' contractual arbitration agreement in the amount of $352,000;

b.  Through the date of the arbitration hearing, the Panel finds Claimants had incurred reasonable and necessary attorneys' fees and expenses amounting to $5,389,374; and

c.  Claimants continued to incur reasonable and necessary attorneys' fees and expenses through the arbitration hearing and in the course of preparing post-hearing briefing and proposed findings of fact and conclusions of law at the request of the Panel, which fees and expenses shall be submitted by Claimants to the Panel for final confirmation.

2806

10.   The Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil their reasonable attorneys' fees and expenses in the amount of $5,017,374 ($5,369,374.00 less $352,000.00), plus any fees submitted and confirmed by the Panel pursuant hereto.

The Panel's decision and award, including all findings of fact and conclusions of law, are final and binding.

Panel Member Bristow does not join in this decision and dissents.

SIGNED on this 29th day of February, 2012.

BY THE MEMBERS OF THE PANEL:

CLAYTON J. HOOVER, CHAIR      DONATO D. RAMOS      (DISSENTING)
                                                    DARYL K. BRISTOW

Page 4

2807

CAUSE NO. 2005-23091

EL RUCIO LAND AND CATTLE,              §
COMPANY, INC., SAN JUANITO             §
LAND PARTNERSHIP, LTD.,                §
MCALLEN TRUST PARTNERSHIP,             §
and JAMES ARGYLE MCALLEN,              §      ARBITRATION BEFORE
                                       §      THE HONORABLE DARYL K.
          Claimants,                   §      BRISTOW, CLAYTON J. HOOVER,
                                       §      AND DONATO D. RAMOS
VS.                                    §
                                       §
                                       §
FOREST OIL CORPORATION AND             §
DANIEL B. WORDEN,                      §
                                       §
          Respondents.                 §
                                       §
                                       §

## ATTORNEYS FEES  AWARDED IN SECTIONS 9 AND 10 OF FINAL JUDGMENT AND DECISION OF THE PANEL

Pursuant to Sections 9 and 10 of the Final Judgment and Decision of the Panel dated February 29, 2012, and after considering the additional evidence requested by the Panel as to attorneys fees and expenses incurred by Claimants prior to and during the arbitration hearing and for post-hearing submissions, the Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil as attorneys' fees and expenses incurred prior to and during the arbitration hearing and for post-hearing submissions the amount of $1,764,428.

**Panel Member Bristow does not join in this decision and dissents.**

**SIGNED on this 9th day of September, 2012.**

**BY THE MEMBERS OF THE PANEL:**


   /s/ Clayton J. Hoover          /s/ Donato D. Ramos          _____(DISSENTING)_____
**CLAYTON J. HOOVER, CHAIR    DONATO D. RAMOS          DARYL K. BRISTOW**

# EXHIBIT 3

Filed 12 October 3 P4:25
Chris Daniel - District Clerk
Harris County
ED101J017111638
By: deandra mosley

NO. 2005-23091

| FOREST OIL CORPORATION AND | § | IN THE DISTRICT COURT OF |
| DANIEL B. WORDEN, | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO LAND | § | |
| PARTNERSHIP, LTD., McALLEN TRUST | § | HARRIS   COUNTY,   TEXAS |
| PARTNERSHIP, | § | |
| Defendants and Counter-Plaintiffs, | § | |
| | § | |
| and | § | |
| | § | |
| JAMES ARGYLE McALLEN, | § | |
| Intervenor. | § | 55TH   JUDICIAL   DISTRICT |

*P8*
*ARBIX*
*181B*

## FINAL JUDGMENT

Plaintiffs are Forest Oil Corporation and Daniel B. Worden. Defendants and Counter-Plaintiffs are El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership. Intervenor is James Argyle McAllen.

This case was arbitrated. Defendants and Intervenor were the Claimants in the arbitration proceeding. A majority of the arbitration panel issued the Final Judgment and Decision of the Panel on February 29, 2012 ("the February 29 Arbitration Award"). The February 29 Arbitration Award awarded Defendants and Counter-Plaintiffs El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership, and Intervenor James Argyle McAllen (collectively "Claimants") relief in the form of damages, declaratory relief, and attorneys' fees against Forest Oil Corporation. The February 29 Arbitration Award also specifically indicated in paragraphs 9(c) and 10 of the Award that additional attorneys' fees would be added to the Award and directed Claimants to submit the additional fees to the panel for confirmation. On September 9, 2012, a majority of the arbitration panel issued its Attorneys

24115

Fees Awarded in Sections 9 and 10 of Final Judgment and Decision of the Panel, and the Chairman of the Arbitration Panel sent an email to all parties clarifying that Award that same day (collectively "the September 9 Arbitration Award"). The September 9 Arbitration Award awarded Claimants the additional attorneys' fees that were expressly contemplated in the February 29 Arbitration Award.

Claimants filed a motion to confirm the February 29 Arbitration Award, and Forest Oil Corporation filed a motion to vacate it. The Court held an oral hearing on the motions and confirmed the February 29 Arbitration Award in all respects except where it vacated the bond requirement securing the performance of Forest Oil Corporation's obligations under the 1999 Surface Agreement.

The Court incorporates by reference, for all purposes, the February 29 Arbitration Award, the September 9 Arbitration Award, the Court's September 18, 2012 Order on Forest's Motion to Vacate the Arbitration Panel's Unreasoned 2-1 Award, and all of the Court's other prior rulings. The Court has determined that based on the February 29 Arbitration Award and the September 9 Arbitration Award Claimants are entitled to judgment against Forest Oil Corporation as follows:

1. Actual damages in the amount of $15,000,000 to El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership

2. Actual damages of $500,000 to James Argyle McAllen, individually

3. Exemplary damages to Claimants in the total amount of $500,000

4. Attorneys' fees and expenses in the amount of $5,017,374 to Claimants

5. Additional attorneys' fees and expenses in the amount of $1,764,428 to Claimants

6. Declaratory relief as requested regarding Claimants' rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement as follows:

24116

a.  Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

b.  Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c.  Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d.  Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

It is therefore,

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is vacated with respect to the requirement that Forest Oil Corporation post a bond.  It is further

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is confirmed in all respects other than the requirement that Forest Oil Corporation post a bond.  It is further

-3-

24117

ORDERED, ADJUDGED, and DECREED that the September 9 Arbitration Award is confirmed in all respects. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for actual damages in the amount of $15,000,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, individually, have and recover judgment for actual damages of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for exemplary damages in the total amount of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for attorneys' fees and expenses amounting to $6,781,802 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that Claimants are entitled to declaratory relief regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement, and it is ORDERED, ADJUDGED, and DECREED that:

    a.  Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

-4-

24118

b. Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c. Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d. Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen take nothing on their claims against Daniel B. Worden. It is further

ORDERED, ADJUDGED, and DECREED that this judgment shall bear post-judgment interested from the date it is signed until satisfaction or payment at the rate of 5% compounded annually.

The clerk is directed to issue all writs necessary for execution of this judgment.

All relief not expressly granted herein is denied. This judgment finally disposes of all

24119

$  $    $$  $                    $

"      !  $  $#  $

$

_____
JUDGE PRESIDING

# EXHIBIT 4

# IN THE SUPREME COURT OF TEXAS

## NO. 14-0979

### FOREST OIL CORPORATION, NOW KNOWN AS SABINE OIL & GAS CORPORATION, PETITIONER

### v.

### EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP, AND JAMES ARGYLE MCALLEN, RESPONDENTS

## **MANDATE**

**To the Trial Court of Harris County, Greetings:**

Before our Supreme Court on April 28, 2017, the Cause, upon petition for review, to revise or reverse your Judgment.

No. **14-0979** in the Supreme Court of Texas

No. **01-13-00040-CV** in the **First** Court of Appeals

No. **2005-23091** in the **55th District Court** of **Harris** County, Texas, was determined; and therein our said Supreme Court entered its judgment or order in these words:

THE SUPREME COURT OF TEXAS, having heard this cause on petition for review from the Court of Appeals for the First District, and having considered the appellate record, briefs, and counsel's argument, concludes that the court of appeals' judgment should be affirmed.

IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:

1)   The court of appeals' judgment is affirmed;

2)   Respondents El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen shall recover, and petitioner Forest Oil Corporation, now known as Sabine Oil & Gas Corporation, shall pay, the costs incurred in this Court.

Copies of this judgment and the Court's opinion are certified to the Court of Appeals for the  First District and to the District Court of Harris County, Texas, for observance.

FILE COPY

**Wherefore we command you** to observe the order of our said Supreme Court in this behalf, and in all things to have recognized, obeyed, and executed.

BY ORDER OF THE SUPREME COURT OF THE STATE OF TEXAS,

with the seal thereof annexed, at the City of Austin, this the 9th day of June, 2017.

Blake A. Hawthorne, Clerk

By Monica Zamarripa, Deputy Clerk

# EXHIBIT 5

# EXHIBIT 6

# SPECIAL WARRANTY DEED

Effective Date:                    September 23, 2008

Grantor:                           James A. McAllen

Grantor's Mailing Address:         P.O. Box 1139
                                   Edinburg, TX 78540

Grantee:                           ExStra-McAllen, LLC, a Texas Limited Liability Company
                                   c/o Exchange Strategies Corporation

Grantee's Mailing Address:         900 E. Hamilton Avenue, Suite 100
                                   Campbell, CA 95008


Consideration:   TEN AND NO/100 DOLLARS and other good and valuable consideration.

Property:

The property located in Hidalgo County, Texas, described on the attached Exhibit A, which Exhibit A is incorporated by reference, together with all improvements and all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, appurtenances, water, riparian or lateral rights belonging or in anywise appertaining thereto; and all rights titles and interest of Grantor in and to any roads, ways, strips or gores of land adjacent to any of the real property.


Reservations From and Exceptions to Conveyance and Warranty:

All valid and effective easements, rights-of-way, reservations, leases, outstanding mineral and royalty interests and leases, use restrictions and protective covenants and encumbrances that affect the property; taxes and assessments for 2008 and all subsequent years, the payment of which Grantee assumes; rights of parties in possession; any discrepancies, conflicts or shortages in area or boundary lines or encroachments or protrusions or any overlapping of improvements; visible and apparent easements; and all laws, rules, ordinances and regulations of any governmental authority having jurisdiction.

Grantor, for the consideration, the receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold unto Grantee and Grantee's successors and assigns forever. Grantor binds Grantor and Grantor's successors to warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns against every party whomsoever lawfully claiming or to claim the same or any part

thereof, by, through and under Grantor only and not otherwise, except as to the reservations from and exceptions to conveyance and warranty.

Grantee, by accepting delivery of this deed, confirms that the Property is sold, conveyed and delivered by Grantor to Grantee and accepted by Grantee, AS IS, WITH ALL FAULTS, and in its current condition and appearance,

GRANTOR:

_____

James A. McAllen

ACKNOWLEDGMENTS

STATE OF TEXAS       §
COUNTY OF HIDALGO    §

This instrument was acknowledged before me on September 23, 2008 by James A. McAllen.

_____
Notary Public, State of Texas

MELISSA N. MIKULIK
Notary Public, State of Texas
My Commission Expires
May 03, 2009

2

# EXHIBIT A

TRACT I:

All of Lot Two (2) or Tract No. Two (2), PARTITION OF SHARES 1 AND 2 OF THE LINO HINOJOSA PARTITION OF SHARE SIX (6) AND PARTS OF SHARE TWELVE-A (12-A) AND SIXTEEN (16), SAN RAMON GRANT, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 15, Page 24, Map Records, Hidalgo County, Texas.

TRACT II:

The North 20.19 acres of Lot One (1) KELLY-PHARR SUBDIVISION, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 3, Page 133-134, Deed Records, Hidalgo County, Texas.

TRACT III:

Parcel A:

The South 20.24 acres of Lot Thirteen (13), Section Hundred Seventy (270), TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY OF LANDS, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, Page 168-171, Deed Records, Hidalgo County, Texas.

Parcel B:

A tract of land containing 17.61 acres, more    less, out of Lot Fourteen (14), Section Two Hundred Seventy (270), TEXASMEXICAN RAILWAY COMPANY'S SURVEY of lands in Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, pages 168-171, Deed Records, Hidalgo County, Texas, said 17.61 acre tract being more particularly described as follows:

BEGINNING at the point of intersection of the South right-of-way line of "I" Road and the West line of said Lot 14, said point being South 08 degrees 59 minutes West 13.71 feet from the Northwest corner of said Lot 14;

THENCE, with and along the South right-of-way line of "I " Road South 34 degrees 06 minutes 52 seconds East a distance of 349.69 feet;

THENCE, South 68 degrees 32 minutes East a distance of 89.55 feet to a point in the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way;

THENCE, continuing with the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way South 32 degrees 38 minutes East a distance of 991.87 feet to the point of intersection of the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the West right-of-way line of U. S. Highway 281 Bypass on a curve to the right through an arc of 03 degrees 45 minutes 10 seconds, said curve having a radius of 3,819.5 feet and a length of 250.17 feet, the chord of said curve bears South 13 degrees 22 minutes 34 seconds West a

distance of 250.10 feet to the point of intersection of the South line of said Lot 14, and the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the South line of said Lot 14, North 81 degrees 07 minutes 18 seconds West a distance of 580.18 feet to a point in the centerline of "I" Road;

THENCE, continuing with the South line of said Lot 14 North 81 degrees 42 minutes 18 seconds West a distance of 385.8 feet to the Southwest corner of said Lot 14;

THENCE, with and along the West line of said Lot 14 North 08 degrees 59 minutes East a distance of 1,271.29 feet to the CORNER OF BEGINNING, said tract containing 17.61 acres, more or less.

SAVE AND EXCEPT a 3.79 acre tract out of the Lot 14, Section 270, lying West of the West right-of-way line of "I" Road, TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY, Hidalgo County, Texas, described in Deed dated June 26, 2006, from James A. McAllen et ux to Lance Walker, recorded under Document No. 1633009, Official Records, Hidalgo County, Texas.

# EXHIBIT 7

**Form 424**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
Filing Fee: See Instructions



**Certificate of Amendment**

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

MAR 18 2009

**Corporations Section**

---

## Entity Information

The name of the filing entity is:

ExStra-McAllen LLC

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                        ☐ Professional Corporation

☐ Nonprofit Corporation                         ☐ Professional Limited Liability Company

☐ Cooperative Association                       ☐ Professional Association

☑ Limited Liability Company                     ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: 801029324

The date of formation of the entity is:   9/16/08

---

## Amendments

### 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

Cannon Grove Investments LLC

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

## Registered Agent
### (Complete either A or B, but not both. Also complete C.)

☐ **A.** The registered agent is an organization (cannot be entity named above) by the name of:

**OR**

☑ **B.** The registered agent is an individual resident of the state whose name is:

| Benjamin | | McCaleb | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

**C.** The business address of the registered agent and the registered office address is:

| 2135 E. Hildenbrand Ave. | San Antonio | | TX | 78209 |
|---|---|---|---|---|
| *Street Address (No P.O. Box)* | | *City* | *State* | *Zip Code* |

## 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

☐ **Add** each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:

☐ **Alter** each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

☐ **Delete** each of the provisions identified below from the certificate of formation.

## Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

---

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

_____

---

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:   3/18/09_____

_____

_____
Signature and title of authorized person(s) (see instructions)

# EXHIBIT 8

**Ben McCaleb**

| | |
|---|---|
| **From:** | Ben McCaleb |
| **Sent:** | Friday, August 22, 2008 4:12 PM |
| **To:** | 'al@alanlucke.com'; 'jim@mcallenranch.com'; 'Richard Leshin' |
| **Cc:** | 'vicki@mcallenranch.com'; 'tim@alanlucke.com' |
| **Subject:** | RE: Purchase of Christian Ranch |
| **Attachments:** | diagram--split conveyance and Exchange first 1031.pdf; exstra_FIRST_pro_forma_sample.pdf; exstra_pro_forma_extension_sample.pdf |

Jim, Al and Richard—

The "Exchange First" 1031 exchange we have been discussing can be summarized as follows:

> The **Exchange First** form is frequently used when the Exchangor has arranged financing for the purchase of the New Property and the lender requires the Exchangor to be the borrower and hold title to the New Property directly. This form involves parking the Old Property with the EAT just prior to the acquisition of the New Property directly by the Exchangor. Typically, the EAT is formed and "borrows" the funds necessary to acquire the Old Property from the Exchangor. Title to the Old Property is transferred to the EAT as an interim buyer. The Exchangor then acquires the desired New Property and takes title to it directly. The exchange is then technically complete, the EAT having acquired the Old Property and the Exchangor having acquired the New Property, in that order. However, the Exchangor has 180 days to arrange for and complete the sale of the Old Property in order for the reverse exchange to be valid. Once a purchase and sale contract with the ultimate Buyer has been ratified, the contract is assigned to the EAT and the EAT "sells" the Old Property to the Buyer. In some cases, title is transferred to the Buyer and in other cases the LLC underlying the EAT is assigned to the Buyer. In either case, the funds from the purchase of the Old Property are immediately distributed to the Exchangor.

As we discussed, attached for your review are the following:

- My "rather involved" diagram (*I am not charging for the artistic content*), setting forth how this "Exchange First" could be structured, assuming a split of the title into two surface owners and a mineral owner and THEN proceeding to do the exchange.
- The Intermediary's "pro forma" , describing this process in more detail (cost estimate $5000 to Intermediary)
- The Intermediary's "pro forma", describing this process in more detail if we are unable to sell the two tracts in 180 days and require an extension outside of the "IRS safe harbor rules" (cost estimate additional $10000 to Intermediary PLUS cost of financing temporary investor of about $250,000...we would need to discuss this).

FYI, the Intermediary's website is www.exstra1031.com and there is additional useful information there. In response to your questions regarding security with this Intermediary, I refer you to the section at that website, which indicates they do not hold cash (which is what got so many of the standard 1031 exchange companies in trouble). They have been referred to me by Jefferson Bank and JPMorgan, who both use their services. By copy of this email, I am asking my contact there, Stan Freeman, to give us whatever additional information he would normally provide in order to make you feel comfortable "parking' a $5,000,000 piece of raw land with an LLC controlled by his company.

I look forward to talking with you Tuesday. FYI, please keep in mind that our Option/Review Period ends August 30.

Please call if you have any questions.

8/22/2008

**Ben McCaleb**

**To:**

**Drinker**
One Logan Square
18th   Cherry Street
Philadelphia                    4                    4
Phone 215-988-1167
Email: David.Shechtman@dbr.com

> > > >
> > > >
> > > >



# DrinkerBiddle

> > > >
> > > >
> > > >
> > > >
> > > >
> > > >
> > > >

**David Shechtman**
Partner

**David Shechtman** is chair of the Tax Team in the firm's Corporate and Securities Practice Group. His practice includes a wide range of federal, state and local tax matters, including capital asset disposition planning; tax aspects of mergers, acquisition and recapitalizations; capital asset disposition planning; S corporations and partnerships; and administrative appeals of federal, state and local tax controversies. He has developed a national practice in the area of like-kind exchanges of real estate and other assets. In his capacity as counsel to taxpayers and various exchange intermediaries, David has structured and documented hundreds of like-kind exchange transactions for major oil and gas, telecommunications and railroad companies, as well as REITs and smaller real estate owners. He also represents various banks and financial institutions in their capacities as intermediaries, trustees and escrow agents for exchanges. His clients include Wachovia Bank, Union Pacific, Richland Properties and Alliance Exchange Corporation.

Representative Matters:

- Obtaining a private letter ruling for one of the first "repetitive exchange programs" used by an auto leasing company for every disposition of its off-lease vehicles. Annual exchange values currently exceed $1 billion.
- Assisting a home builder client in establishing a structure for equity-based employee compensation combined with tax efficient inter-company transfers of land or contract rights to obtain land
- For a major oil and gas company, structuring as a series of safe-harbor "reverse" exchanges, an ongoing "raze and rebuild" program for existing gas station properties, coupled with various gas station dispositions aggregating more than $200 million.

David frequently writes on tax topics and also lectures at American Bar Association meetings and various conferences on tax law. He is an active member of the Section of Taxation of the American Bar Association, serving on the Corporate Tax Committee and currently serving as chair of the Committee on Sales, Exchanges and Basis. David is a former officer and current council member of the Philadelphia Bar Association's Tax Section and has chaired several committees which comment on proposed federal and state regulations. He also is the author of the chapters on federal and Pennsylvania taxes in the West publication *Pennsylvania Forms and Commentary - Business Organizations*. He is a fellow of the American



## CONTACT INFO

Philadelphia
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-1167
(215) 988-2757 fax
david.Shechtman@dbr.com

## RELATED PRACTICES

Corporate & Securities
Tax

## EDUCATION

Cornell Law School, J.D. 1977
Swarthmore College, B.A. 1974 high honors

## BAR ADMISSIONS

Pennsylvania

# DrinkerBiddle

**David Shechtman | Page 2**

College of Tax Counsel.  David is admitted to practice in Pennsylvania.

**Presentations and Publications.**  David frequently speaks on the subject of like-kind exchanges and other tax topics.  His recent presentations include *Like-Kind Exchanges:  Creative Planning Techniques*, Pennsylvania Bar Institute, March, 2007; *Current Developments Under §1031*, ABA Tax Section Meeting, January, 2007; *Like-Kind Exchanges Under §1031*, Center for Professional Seminars "Eleventh Annual National Conference on Like-Kind Exchanges Under §1031," October 2006; *1031 Like-Kind Exchanges* sponsored by Wachovia Exchange Services, Inc, May 2006; *Tax Consequences of Litigation Settlements and Awards*, Pennsylvania Bar Institute, October 2005; *Like-Kind Exchanges of Intangibles*, ABA Tax Section Meeting, May 2005; Reverse *Like-Kind Exchanges and Other "Hot" Exchange Issues*, New York University "59th Institute on Federal Taxation," October 2000; and *Tax Issues Arising From Employment Discrimination Awards and Settlements*, 54th Annual Penn State Tax Conference, June 2000.  He recently authored *IRS Provides Exchange Deadline Relief for Disaster Victims and (Perhaps) a Remedy for Others*, Real Estate Taxation, Volume 32/Issue 4, Third Quarter 2005, Thompson Legal & Regulatory Group and co-authored *Reverse and Build-to-Suit Like Kind Exchanges*, Proceedings of the New York University 59th Institute on Federal Taxation 2001, published by Matthew Bender & Company, Fall 2001.

**In General.**  A 1974 graduate of Swarthmore College, David received his bachelor's degree, with high honors, in economics.  An active participant in undergraduate activities, he served as an editor of the campus newspaper and played on the varsity basketball team.  David earned his J.D. degree from Cornell University Law School in 1977.  While in law school, he was a moot court finalist and won the Evidence Prize for the best evidence exam.

## PUBLICATIONS

Pennsylvania Realty Transfer Tax Update, Tax Alert, January 2008.

Pennsylvania Department of Revenue Makes Major Changes to Realty Transfer Tax Regulations, December 2007.

Tax Alert - Changes to Pennsylvania's Taxes, July 2006.

# EXHIBIT 9

JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
2135 HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209
TELEPHONE 210/826-3339
FACSIMILE 210/826-3340

## FACSIMILE TRANSMISSION FORM

## ATTORNEY/CLIENT CONFIDENTIAL

DATE:   March 11, 2009                          TIME: _____.M.

SENDER:   Jon Christian Amberson

PLEASE DELIVER TO:   Jimmy

                     (956) 380-0112


NUMBER OF PAGES IN TRANSMISSION, INCLUDING COVER SHEET   3

OPERATOR: Brenda

IF THERE IS A PROBLEM WITH TRANSMISSION,
PLEASE CONTACT OPERATOR AT 210/826-3339.

MESSAGE:

THIS INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR AGENT
RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT.  YOU ARE HEREBY NOTIFIED
THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY
NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO THIS OFFICE AT THE
ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

## THANK YOU

# JON CHRISTIAN AMBERSON, P.C.

### ATTORNEYS AT LAW
### 2135 EAST HILDEBRAND AVE.
### SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3909                          TELECOPIER (210) 826-3340

March 11, 2009

James A. McAllen
McAllen Ranch
P.O. Box 1139
Edinburg, Texas 78540-1139

        RE:  1031 Exchange

Dear Jimmy,

        I have consulted with Julie Norton regarding the proposed 1031
exchange you are working on with your attorneys Ben McCaleb and
Richard Leshin and she has advised me to write you this letter in
order to confirm exactly what we can and cannot do.

        Ben McCaleb has asked on your behalf whether I would be in a
position to accommodate the 1031 transaction structure recommended
by your attorneys and CPA, Al Lucke.  He informed me that Mary
Margaret is not able to facilitate your needs in the transaction
due to her disqualification as a related person under the Internal
Revenue Code.   Mr. McCaleb has asked if I was willing to
accommodate you in this transaction due to the fact that I am not
related for IRS purposes.

        In order for me to accommodate this transaction, Mr. McCaleb
has proposed that you loan me $4.5 million dollars and I then
purchase 90% of an entity that owns property you own, which I will
then own in return for the $4.5 million dollar investment I make.
I informed Julie of this proposal by your attorneys and she
informed me that we could not do this in the manner proposed by
your attorneys and tax advisors.  She went on to inform me that the
purchase would be in direct violation of the meaning of the IRS
Code, which requires it to be an arms length transaction unrelated
to you.  In other words, the $4.5 million dollars used to make the
necessary purchase cannot be tied in any way to the 1031
transaction.  Julie is concerned that I could not represent to the

Mr. James A. McAllen
March 11, 2009
Page 2

IRS that the source of the $4.5 million dollars was not received
from you to facilitate this 1031 related transaction when in truth
and in fact, it is.  Therefore, if you decide to go forward, then
I must treat it as a gift, which I will invest by purchasing your
entity.  This way in the event of an audit, Mary Margaret and I
don't get into trouble with the IRS on a misrepresentation and
possible tax fraud issue.

    We are happy to help in any way we can, but our CPA advises
that this is the only way we can participate.  Please have Al Lucke
call Julie Norton to discuss her concerns and if you decide to
proceed, we are happy to help.

                              Very Truly Yours,

                              Jon Christian Amberson

JCA/bkg

# EXHIBIT 10



**Ben McCaleb**

| | |
|---|---|
| **From:** | Ben McCaleb <bmccaleb@cbmccaleb-law.com> |
| **Sent:** | Wednesday, March 18, 2009 5:12 PM |
| **To:** | 'chris@ambersonpc.com'; 'Vicki'; 'jim@mcallenranch.com' |
| **Cc:** | 'Lesslie L. Eanes'; 'Melissa N. Mikulik'; 'stan@exstra1031.com' |
| **Subject:** | FW: James A. McAllen --RELATED 1031 EXCHANGE |
| **Attachments:** | IOLTA - FNB Acct. Wiring Instructions.doc |

Chris and Jim—

The funds for the purchase of your respective entity's interests in **ExTra-McAllen LLC** should be wired as early as possible in the morning into the escrow account shown in the attached Wire Transfer Instructions. The amounts are as follows:

- **Amberson Natural Resources, LLC** ---$4,500,000
- **Ranch Specialties Company** ---$500,000

If you have any questions or problems with the wire, please contact the escrow facilitator, **Lesslie L. Eanes,** as follows:

**Lesslie L. Eanes**
*Attorney at Law*
315 E. McIntyre
Edinburg Texas 78541
Phone: 956-383-1656
Mobile: 956-369-0340
Fax: 956-380-0428
Email: LesslieE@landtitleusa.com



Please give me a call with any questions.

*C. Benjamin McCaleb*
*C. Benjamin McCaleb, P. C.*
*2135 E. Hildebrand Avenue*
*San Antonio, Texas 78209*
*tel: 210-736-2222*
*fax: 210-881-0200*
*bmccaleb@cbmccaleb-law.com*

Board Certified--Commercial Real Estate Law
Texas Board of Legal Specialization

---

**From:** Lesslie L. Eanes [mailto:LesslieE@landtitleusa.com]
**Sent:** Wednesday, March 18, 2009 9:21 AM
**To:** Ben McCaleb
**Cc:** Melissa N. Mikulik
**Subject:** RE: James A. McAllen --RELATED 1031 EXCHANGE

Wiring instructions are attached.

Thanks!

## WIRING INSTRUCTIONS

**First National Bank**

**ABA NO.**          **1415**

**CREDIT TO ACCOUNT NO**          **4433**

**IN THE NAME OF: Lesslie L. Eanes Attorney at Law**
**IOLTA FOUNDATION TRUST ACCOUNT**

**REFERENCE TO James A. McAllen**

**PLEASE FAX CONFIRMATION WHEN WIRE IS RECEIVED TO**
**956-384-0428**

Electronically Filed
10/30/2017 12:16 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORIGINAL ANSWER OF JON CHRISTIAN AMBERSON, P.C.; JON CHRISTIAN AMBERSON; and AMBERSON NATURAL RESOURCES, LLC

Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (collectively, "*Amberson Parties*") file this Original Answer to the counterclaims and third-party claims asserted against them by the McAllen Parties, respectfully stating as follows:

1.      The Amberson Parties deny all allegations asserted against them and demand strict proof thereof in accordance with law.

Electronically Filed
10/30/2017 12:16 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

2.     Plaintiff/Counter-claimant Jon Christian Amberson, P.C. (the "*Amberson Law Firm*") asserts that all claims that relate directly to the fees sought by the Amberson Law Firm (including offsets due from the Amberson Law Firm) be referred to arbitration.

3.     The Amberson Parties respond that all claims that relate to the Cannon Grove transaction (the "*Cannon Grove Claims*") did **_not_** involve the Amberson Law Firm in any way, and these Cannon Grove Claims should be retained by this Court for further disposition, including pursuant to the Amberson Parties' Motion for Partial Summary Judgment concurrently filed.

4.     The Amberson Parties plead the following as affirmative defenses to the various claims:

   a.     Statute of limitations;

   b.     Statute of frauds;

   c.     Estoppel;

   d.     Ratification; and

   e.     Laches.

5.     To the extent that the McAllen Parties contend that any one or more of the Amberson Parties executed a loan instrument in connection with the Cannon Grove transaction, such allegation is patently false, and the Amberson Parties deny the execution of any such instrument in writing.

WHEREFORE, Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC pray that, upon final disposition of this action, including by arbitration of causes of action (excluding the Cannon Grove Claims), the Court enter a take-nothing judgment on each claim asserted by the McAllen Parties, and that

Electronically Filed
10/30/2017 12:16 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

the Amberson Parties recover their reasonable and necessary attorneys' fees (trial and appellate)

as allowed by law, court costs and expenses in defending against such claims, and pray for such

other relief to which the Amberson Parties are entitled.

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
    Steven A. Fleckman

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
10/30/2017 12:16 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## DECLARATION

Jon Christian Amberson, individually and on behalf of the other Amberson Parties, declares under penalty of perjury that the statements in paragraph 5 of the foregoing instrument are true to his personal knowledge; and submits this verification by declaration in lieu of an affidavit as authorized by TEX. CIV. PRAC. & REM. CODE § 132.001. In accordance with the statute, I state that my date of birth is December 24, 1956, and my current address is 2135 East Hildebrand, San Antonio, Texas 78209.

Executed in Bexar County, State of Texas, on the 30th day of October, 2017.

_____
Jon Christian Amberson

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on October 30, 2017.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

/s/ Steven A. Fleckman
Steven A. Fleckman

Amberson Parties' Original Answer

4

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS

The Court, having considered Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others, the Defendants' response, if any, and the arguments of the parties with respect thereto, finds that the motion should be granted. It is therefore

ORDERED that Plaintiff's claim to recover legal fees from Defendants is arbitrable, and is therefore referred to arbitration as between Plaintiff Jon Christian Amberson, P.C. (the "**Amberson Firm**") and Defendants. It is further

ORDERED that all pending counterclaims and third-party claims filed by the Defendants that relate to the so-called "Cannon Grove" transaction (including all third-party claims against

Electronically Filed
10/30/2017 4:52 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Amberson Natural Resources, LLC) are not arbitrable (the "***Non-Arbitrable Claims***") and are therefore retained by this Court for further disposition in this action.  It is further

ORDERED that Defendants' counterclaims against Plaintiff and their third-party claims against Third-Party Defendant Jon Christian Amberson ("***Amberson***") that relate to both (i) Amberson's individual role as an attorney with the Amberson Firm, and (ii) Amberson's duties to the Defendants during the litigation with Forest Oil Corporation (these include the Defendants' loan claims that are not related to Cannon Grove), are arbitrable, as having a sufficient nexus to the fee dispute, and are therefore referred to arbitration.

SIGNED this _____ day of _____, 2017.

_____

JUDGE PRESIDING

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

**ORDER GRANTING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE "CANNON GROVE" CLAIMS**

The Court, having considered: (i) Plaintiff's and Third-Party Defendants' Motion for Partial Summary Judgment as to the "Cannon Grove" Claims, (ii) the Declaration of Jon Christian Amberson and the exhibits attached thereto, (iii) Defendants' response to such motion, (iv) the pleadings, and (v) the arguments of counsel, finds that the motion should be granted.  It is therefore

ORDERED that Plaintiff's and Third-Party Defendants' Motion for Partial Summary Judgment as to the "Cannon Grove" Claims is GRANTED as follows: (i) Defendants' claims that relate in any way to the so-called "Cannon Grove" transaction are barred by the statute of

Electronically Filed
10/30/2017 4:42 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

limitations as a matter of law, (ii) Defendants' claim based on the alleged oral loan agreement in the so-called "Cannon Grove" transaction is barred by the statute of frauds as a matter of law, and (iii) all claims asserted by the Defendants that relate in any way to the so-called "Cannon Grove" transaction are hereby dismissed with prejudice.

SIGNED this _____ day of _____, 2017.

_____

JUDGE PRESIDING

Electronically Filed
11/6/2017 1:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C. | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | HIDALGO COUNTY, TEXAS |
| | § | |
| JAMES ARGYLE MCALLEN, ET AL | § | 92ND JUDICIAL DISTRICT |

## NOTICE OF ASSOCIATION OF COUNSEL

TO:     All parties, by and through their counsel of record:

Please be advised that the following counsel is associated in the representation

in this cause of Jon Christian Amberson, P.C.

Charles C. Murray
State Bar No. 14719700
ATLAS, HALL & RODRIGUEZ, LLP
818 Pecan (78501)
P.O. Box 3725
McAllen, Texas 78502
956/682-5501 (telephone)
956/686-6109 (fax)
ccmurray@atlashall.com

Steven Fleckman and Jon Amberson shall represent Jon Christian Amberson PC as well.

Respectfully submitted,

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone No. 956/682-5501
Telecopy No. 956/686-6109

By:   /s/ Charles C. Murray
         Charles C. Murray
         State Bar No. 14719700
         Email: ccmurray@atlashall.com

Attorneys for Jon Christian Amberson, P.C.

Electronically Filed
11/6/2017 1:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was sent by electronic service on November 6, 2017 to opposing counsel as follows:

Mr. David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

Mr. J.A. "Tony" Canales
CANALES AND SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Mr. Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Mr. Steven A. Fleckman
FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503

    /s/ Charles C. Murray
Charles C. Murray

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

**ORDER SETTING HEARING ON**
**PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'**
**MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS**

It is ORDERED that a hearing on Plaintiff's and Third-Party Defendants' Motion to Refer

Certain Claims to Arbitration and Retain Others will be held on _____

at _____ in the courtroom of the district court for the 92nd Judicial District of Hidalgo

County, Texas.

SIGNED this _____ day of _____, 2017.

_____
JUDGE PRESIDING

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.**

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC.,
SAN JUANITO LAND PARTNERSHIP, LTD. AND
MCALLEN TRUST PARTNERSHIP**

Electronically Filed
11/8/2017 9:37 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*
Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios        Ricardo Contreras        Adriana "Audry" Garcia    Sabrina S. Guerra       Oneida Lamas        Stephanie Palacios        Aida Villarreal
CHIEF DEPUTY          CHIEF OF ADMINISTRATION    ASSISTANT CHIEF DEPUTY     SENIOR ACCOUNTANT    DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT    CHIEF OF APPEALS
                     AND PUBLIC INFORMATION                                                                              OFFICER

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER SETTING HEARING ON
## PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'
## MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS

It is ORDERED that a hearing on Plaintiff's and Third-Party Defendants' Motion to Refer

Certain Claims to Arbitration and Retain Others will be held on ___December 21, 2017___

at _9:00 a.m._ in the courtroom of the district court for the 92nd Judicial District of Hidalgo

County, Texas.

SIGNED this 8th__ day of _November__, 2017.

_____
JUDGE PRESIDING

Order Setting Hearing on Motion to Retain and Refer Certain Claims                                    1

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.**

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC.,
SAN JUANITO LAND PARTNERSHIP, LTD. AND
MCALLEN TRUST PARTNERSHIP**

Electronically Filed
11/6/2017 4:48 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Order Setting Hearing

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios      Ricardo Contreras      Adriana "Audry" Garcia      Sabrina S. Guerra      Oneida Lamas      Stephanie Palacios   Aida Villarreal
CHIEF DEPUTY        CHIEF OF ADMINISTRATION    ASSISTANT CHIEF DEPUTY        SENIOR ACCOUNTANT     DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                    AND PUBLIC INFORMATION                                                                                              OFFICER

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER SETTING HEARING ON
## PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'
## MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS

It is ORDERED that a hearing on Plaintiff's and Third-Party Defendants' Motion to Refer

Certain Claims to Arbitration and Retain Others will be held on ___December 21, 2017___

at _9:00 a.m._ in the courtroom of the district court for the 92nd Judicial District of Hidalgo

County, Texas.

SIGNED this _8th_ day of _November_, 2017.

_____
JUDGE PRESIDING

Order Setting Hearing on Motion to Retain and Refer Certain Claims                                    1

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.**

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

Electronically Filed
11/6/2017 3:40 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC.,
SAN JUANITO LAND PARTNERSHIP, LTD. AND
MCALLEN TRUST PARTNERSHIP**

Electronically Filed
11/16/2017 12:26 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## SUPPLEMENTAL DECLARATION OF JON CHRISTIAN AMBERSON

Jon Christian Amberson declares as follows:

1.      I am over the age of 18 years, competent to testify, and declare under penalty of perjury that, to my personal knowledge, the facts stated below are true and correct.

2.      On October 27, 2017 I signed a declaration in support of the Amberson Parties' (i) Motion for Partial Summary Judgment as to the "Cannon Grove" Claims and (ii) Motion to Retain the Cannon Grove Claims for Disposition by the Court.  I submit this declaration as a supplement to my October 27, 2017 declaration in support of both motions.

3.      On January 25, 2005, the McAllen Parties executed two engagement letters with the Amberson Firm, both of which provided for arbitration of any fee dispute.  One of those letters

Electronically Filed
11/16/2017 12:26 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

was attached as Exhibit 1 to my October 27, 2017 declaration.  A true and correct copy of the other

January 25, 2005 engagement letter is attached hereto as **Exhibit 1a.**

4.      I submit this Supplemental Declaration in lieu of an affidavit as authorized by TEX.

CIV. PRAC. & REM. CODE § 132.001.  In accordance with the statute, I state that my date of birth

is December 24, 1956, and my current address is 2135 E Hildebrand Avenue, San Antonio, Texas

78209.

Executed in Bexar County, Texas on November 16, 2017.

Jon Christian Amberson

# Exhibit 1a

JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
9135 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-0339                                    TELECOPIER (210) 826-0340

January 25, 2005

James Argyle McAllen
James Argyle McAllen, Jr.
P.O. Box 1139
Edinburg, Texas 78540-1139

     RE:   Contract of Employment Regarding Representation of James Argyle
          McAllen, Individually and James Argyle McAllen, Jr., Individually against
          Forest Oil Corporation and any other Responsible Entities.

Gentlemen:

     The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

## DESCRIPTION OF SERVICES

     **1.**    **CLIENTS AND CLIENT REPRESENTATIVES:**  The firm is being retained
to represent the following:

          1.    James A. McAllen, Individually

          2.    James A. McAllen, Jr., Individually

Page 2

**2.     PURPOSE OF REPRESENTATION:**  It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.     LEGAL REPRESENTATION:**  Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.  Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.     NO GUARANTEE OR INDUCEMENTS:**  It is understood that the firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.     TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed.  A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

1.  Proper and expected behavior of counsel are described in the Creed.

2.  Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.  I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.  I will not pursue tactics which are intended primarily for delay.

5.  I will not pursue any course of action which is without merit.

6.  I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

Page 3

7.   You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.   FEES:   The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

7. DETERMINATION OF FEES:   The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm.   The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages.   Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of James Argyle McAllen and James Argyle McAllen, Jr., in the event of an adverse verdict.

Page 4

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest  at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8.    COSTS AND EXPENSES:  You will be charged for all costs and expenses of this representation.   To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives.  These costs and expenses include, but are not limited to, the following:

1)    Court costs;

2)    Citation and/or subpoena fees;

3)    Deposition fees, costs and expenses;

4)    Investigation fees, costs and expenses;

5)    Expert witness fees, costs and expenses;

6)    Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)    Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)    Long distance telephone charges, and conference calls expenses;

Page 5

9) Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10) Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.    NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.  Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.  For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.    ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration.  The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable.  The arbitrator will be selected as follows:

(1) Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status.  The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

**11.    LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

**12.**    You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**13.**    You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

Page 6

14.     If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen and James Argyle McAllen, Jr.

JAMES ARGYLE McALLEN,
INDIVIDUALLY

JAMES ARGYLE McALLEN, JR.
INDIVIDUALLY

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

Electronically Filed
12/5/2017 3:23 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# FLECKMAN & McGLYNN, PLLC

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

December 5, 2017

VIA ELECTRONIC FILING

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
Edinburg, Texas  78539

Re:     *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian
Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the
92nd Judicial District Court of Hidalgo County, Texas.

Dear Ms. Hinojosa:

I will be on vacation from December 24, 2017 through January 4, 2018.  I respectfully
request that no hearings be scheduled in or related to this action during the time I am on
vacation.

Thank you for your kind attention to this matter.

Very truly yours,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

SAF/trr

cc:     Mr. David M. Prichard
        Mr. J.A. "Tony" Canales
        Mr. Charles C. Murray

M:\3231\001\L_Clerk SAF vacation notice

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY TEXAS |

## THE MCALLEN PARTIES' SECOND AMENDED ANSWER, COUNTERCLAIMS, AND CLAIMS AGAINST THIRD-PARTIES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants JAMES ARGYLE MCALLEN ("MCALLEN"), EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP (collectively the "MCALLEN PARTIES") and file their Second Amended Answer, Counterclaims and Claims against Third-Parties against Plaintiff JON CHRISTIAN AMBERSON, P.C., Third-Party JON CHRISTIAN AMBERSON ("AMBERSON") (collectively "PLAINTIFFS") and Third-Party AMBERSON NATURAL RESOURCES, LLC ("ANR"). In support of their Answer, Counterclaims, and Claims against Third-Parties the MCALLEN PARTIES show as follows.

153860                                                          1

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

# I.
## GENERAL DENIAL

The MCALLEN PARTIES generally deny each and every material allegation contained in JON CHRISTIAN AMBERSON, P.C.'s Petition and/or live pleadings, and demands strict proof thereof, and to the extent that such matters are questions of fact, says that JON CHRISTIAN AMBERSON, P.C. should prove such facts by a preponderance of the evidence, clear and convincing evidence, or such other evidence as the law may require.

# II.
## THE PARTIES, JURISDICTION, AND VENUE

### A.    The Parties

Defendants, the MCALLEN PARTIES, are an individual and entities who reside in or have their principal place of business in Hidalgo County.

Plaintiff JON CHRISTIAN AMBERSON, P.C. is a Texas corporation.    JON CHRISTIAN AMBERSON, P.C. has already appeared in this case.

Third-Party JON CHRISTIAN AMBERSON is an individual residing in Bexar County and who may be served with process at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209. JON CHRISTIAN AMBERSON has already appeared in this case.

Third-Party AMBERSON NATURAL RESOURCES, LLC ("ANR") is a Texas limited liability company with its principal place of business in Bexar County.  ANR may be served through its registered agent, JON CHRISTIAN AMBERSON, at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209.  ANR has already appeared in this case.

### B.    Jurisdiction and Venue

The Court has jurisdiction over all the parties because they are all either individuals who reside in the State of Texas or are business entities with their principal places of business in the

153860

2

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

State of Texas.  Venue is proper in Hidalgo County because Defendants JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP all reside or have their principal offices in Hidalgo County and because all or substantial part of the events giving rise to this action occurred in Hidalgo County.  TEX. CIV. PRAC. & REM. CODE § 15.002(a).

**III.**
**BACKGROUND FACTS**
**IN SUPPORT OF THE MCALLEN PARTIES'**
**COUNTERCLAIMS AND CLAIMS AGAINST THIRD-PARTIES**

**A.      PLAINTIFFS' Representation of the MCALLEN PARTIES**

For over 15 years PLAINTIFFS served as legal counsel for the MCALLEN PARTIES on various legal matters.   In the course of those representations, PLAINTIFFS billed the MCALLEN PARTIES charges that PLAINTIFFS did not incur.   PLAINTIFFS wrongfully collected those charges from the MCALLEN PARTIES and kept the proceeds.   PLAINTIFFS also represented to the MCALLEN PARTIES that PLAINTIFFS took out a loan to fund their representation of the MCALLEN PARTIES.   However, PLAINTIFFS actually billed and collected from the MCALLEN PARTIES all of their time and expenses.   PLAINTIFFS' assertion, that the loan was to finance their representation of the MCALLEN PARTIES, was false.  PLAINTIFFS then billed the MCALLEN PARTIES for interest payments PLAINTIFFS made on the loan, and the MCALLEN PARTIES, relying on PLAINTIFFS' false statements, paid those charges.   Subsequently, JAMES A. MCALLEN paid off that loan at PLAINTIFFS' request, based on their representations that they would repay MCALLEN.

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

### B.     The Cannon Grove Transaction

PLAINTIFFS' long term representation of MCALLEN and AMBERSON's status as MCALLEN's son-in-law, put AMBERSON in a position to exploit that relationship beyond his role as litigation counsel.  This included a transaction known as "Cannon Grove".

MCALLEN owned real property, separate from the McAllen Ranch, that he wished to sell but defer taxes on the sale until a future date, as permitted under 28 U.S.C. § 1031 of the Internal Revenue Code.  This arrangement is often referred to as a "Reverse 1031 Exchange". To conduct the exchange, MCALLEN needed to exchange that property for other property. MCALLEN owned a separate collection of four parcels of land in Hidalgo County (the "Edinburg Property") along with other property (the "Hinojosa Property") that he used for the exchange.  To qualify as a Reverse 1031 exchange, MCALLEN also needed a non-family member (non-blood relative) to "own" an interest in the property.  MCALLEN turned to AMBERSON.   MCALLEN and AMBERSON agreed that MCALLEN would provide AMBERSON with all the funds needed to purchase an interest in the Edinburg Property and Hinojosa Property to facilitate the Reverse 1031 Exchange.

As part of the exchange, MCALLEN deeded the Edinburg Property and Hinojosa Property to ExStra-McAllen, LLC. ExStra-McAllen, LLC was wholly owned by ExStra LLC. On March 19, 2009, ExStra LLC sold ExStra-McAllen, LLC to two buyers:  Ranch Specialties Company ("RSC" – owned by MCALLEN) and ANR (owned by AMBERSON).   RSC purchased ten percent (10%) of ExStra-McAllen, LLC and ANR purchased the remaining ninety percent (90%).  The total purchase price was $5 million.  As part of the sale, ExStra LLC assigned ten percent (10%) of ExStra-McAllen, LLC to RSC and assigned the remaining ninety percent (90%) to ANR.   In addition, ExStra-McAllen, LLC changed its name to Cannon Grove

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Investments, LLC ("Cannon Grove").  RSC owns ten percent of Cannon Grove, and ANR owns the other ninety percent (90%).

For the purchase price, $4,500,000 was attributed to ANR and the remaining $500,000 was attributed to RSC.  However, because the purpose of the transaction was to execute a Reverse 1031 Exchange for the benefit of MCALLEN, he provided <u>all</u> of the purchase funds. Neither AMBERSON nor ANR used any of their own funds to purchase ANR's interest in ExStra-McAllen, LLC.  MCALLEN loaned AMBERSON the $4,500,000 that ANR used to purchase its interest.  AMBERSON now maintains that the money MCALLEN loaned ANR, to purchase its interest in Cannon Grove, was a "gift."  AMBERSON has refused to convey ANR's ninety percent (90%) interest in Cannon Grove to MCALLEN as the transaction was intended, despite several requests.  Further, AMBERSON has refused to repay MCALLEN the money loaned to AMBERSON to purchase ANR's interest in Cannon Grove.

AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR conspired together to falsely treat the MCALLEN loan as a gift and keep the 90% interest in Cannon Grove. AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR perpetrated this fraud because they knew that even if they were forced to repay the loan, they had the funds to repay the loan. The money that AMBERSON and JON CHRISTIAN AMBERSON, P.C. misappropriated from the MCALLEN PARTIES, in the course of representing them, was more than the amount MCALLEN loaned AMBERSON to purchase ANR's interest in Cannon Grove.  PLAINTIFFS' prior misappropriation of funds from the MCALLEN PARTIES facilitated AMBERSON's and ANR's effort to wrongfully treat the Cannon Grove loan as a gift.

PLAINTIFFS and ANR have breached various tort, contractual, and legal duties owed to the MCALLEN PARTIES in the course of their relationship, resulting in damages to the

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

MCALLEN PARTIES.  Pursuant to Rule 47, the MCALLEN PARTIES seek monetary relief of over $1,000,000.

## IV.
## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

The MCALLEN PARTIES incorporate by reference the factual allegation set forth in Section III.

### A.      Breach of Fiduciary Duty

As the long-time attorneys for the MCALLEN PARTIES, PLAINTIFFS owed the MCALLEN PARTIES fiduciary duties.  PLAINTIFFS breached their fiduciary duties to the MCALLEN PARTIES.   As a result of PLAINTIFFS' breach of their fiduciary duties, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional limit.  As additional damages, the Court should order PLAINTIFFS to forfeit and disgorge legal fees they collected from the MCALLEN PARTIES.

### C.      Misrepresentation

PLAINTIFFS made multiple false and intentional misrepresentations to the MCALLEN PARTIES.  PLAINTIFFS made those representations to the MCALLEN PARTIES knowing that they were false and with the intent that the MCALLEN PARTIES would rely on those representations.  The MCALLEN PARTIES relied on PLAINTIFFS' false representations.  As a result of PLAINTIFFS' misrepresentations, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional limit.

### D.      Violation of the Texas Theft Liability Act

PLAINTIFFS are liable to the MCALLEN PARTIES under the Texas Theft Liability Act.  TEX. CIV. PRAC. & REM. CODE § 134.001 et seq.  The MCALLEN PARTIES had a possessory right to monies it paid PLAINTIFFS.  PLAINTIFFS took these funds from the

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

MCALLEN PARTIES in violation of Section 31.03 of the Texas Penal Code. PLAINTIFFS intentionally deprived the MCALLEN PARTIES of these funds resulting in damages to the MCALLEN PARTIES. The MCALLEN PARTIES are entitled to recover their actual damages as well as statutory damages and attorneys' fees. TEX. CIV. PRAC. & REM. CODE §§ 134.005(a)(1) and (b).

### E. Equitable Subrogation

JAMES A. MCALLEN asserts a claim of equitable subrogation against PLAINTIFFS in connection with MCALLEN's paying off a loan that PLAINTIFFS owed a lender. PLAINTIFFS were primarily liable for the loan from the lender. MCALLEN involuntarily paid that debt on behalf of PLAINTIFFS. PLAINTIFFS have failed to reimburse MCALLEN for paying PLAINTIFFS' debt to the lender including the costs MCALLEN incurred paying off PLAINTIFFS' debt.

### F. Money Had and Received/Unjust Enrichment

PLAINTIFFS fraudulently obtained monies from the MCALLEN PARTIES. PLAINTIFFS continue to hold these funds that, in equity and good conscience, belong to the MCALLEN PARTIES. To prevent the unjust enrichment of PLAINTIFFS, such monies had and received should, in equity, be returned to the MCALLEN PARTIES.

### G. Conversion

The MCALLEN PARTIES owned personal property in the form of monies that they paid to PLAINTIFFS. PLAINTIFFS accepted that money under false pretenses and wrongfully exercised dominion or control over that property. The MCALLEN PARTIES demanded return of the property, but PLAINTIFFS refused to return the funds. Consequently, the MCALLEN

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

PARTIES suffered damages as a result of PLAINTIFFS' conversion of the MCALLEN PARTIES' property.

### H.     Exemplary Damages

As a result of PLAINTIFFS' breach of fiduciary duty, fraud, unjust enrichment and conversion, and PLAINTIFFS' violation of the Texas Theft Liability Act, the MCALLEN PARTIES are entitled to recover exemplary damages from PLAINTIFFS and ANR in addition to the MCALLEN PARTIES' actual damages.   TEX. CIV. PRAC. & REM. CODE § 41.003. PLAINTIFFS' and ANR's conduct was both fraudulent and malicious.   Moreover, because PLAINTIFFS' conduct involves misapplication of fiduciary property and theft – both first degree felonies – the statutory cap on exemplary damages is inapplicable.  *Id.* at § 41.008(c)(10) and (13).

### I.     Defaulted Promissory Notes

MCALLEN is a holder of promissory notes that AMBERSON signed.   AMBERSON defaulted on the notes.   MCALLEN is entitled to recover the full-face value of the notes, as well as interest and attorneys' fees.

### J.     Unjust Enrichment – Cannon Grove

Unjust enrichment also occurs when one passively receives a benefit that would be unconscionable to retain.   With respect to Cannon Grove, AMBERSON and ANR passively received a benefit that, in equity and good conscience, belongs to MCALLEN.   To prevent unjust enrichment, the Court should award to MCALLEN, AMBERSON's and ANR's interest in Cannon Grove.

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

**K.     Declaratory Judgment – Cannon Grove**

In the alternative to his claim for unjust enrichment, and pursuant to Section 37.003 of the Texas Civil Practice & Remedies Code, MCALLEN requests a declaration that funds MCALLEN provided AMBERSON and ANR to purchase an interest in Cannon Grove was not a gift but, rather, was a loan for which AMBERSON and ANR are still liable.  Pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code, MCALLEN requests that he be awarded his costs and reasonable and necessary attorneys' fees incurred in this action.

**L.     Conspiracy**

AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR were members of a combination of two or more persons; the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; the members of the combination had a meeting of the minds on the objective; the members committed unlawful, overt acts in furtherance of the objective and the MCALLEN PARTIES suffered injuries as a proximate result of those unlawful acts.  AMBERSON and JON CHRISTIAN AMBERSON, P.C. conspired to bill and collect from the MCALLEN PARTIES charges that AMBERSON and JON CHRISTIAN AMBERSON, P.C. did not actually incur.  AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR further conspired to utilize proceeds from these illegal activities to facilitate their efforts to falsely treat the money MCALLEN loaned AMBERSON, to purchase ANR's interest in Cannon Grove, as a gift rather than as a loan.

**V.**
**THE STATUTE OF LIMITATIONS, AS TO THE MCALLEN PARTIES'**
**CLAIMS, IS BOTH INAPPLICABLE AND TOLLED**

PLAINTIFFS and ANR cannot assert that any of the MCALLEN PARTIES' claims against them are barred by limitations.  The MCALLEN PARTIES' claims arise from the same

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

events that give rise to PLAINTIFFS' claims, and the MCALLEN PARTIES assert their claims within 30 days after the date on which their answer is required. TEX. CIV. PRAC. & REM. CODE § 16.069. In addition, the statute of limitations on the MCALLEN PARTIES' claims against PLAINTIFFS are tolled by virtue of the continuing tort doctrine, the discovery rule and/or fraudulent concealment, as well as the parties' written tolling agreement.

## VI.
## JON CHRISTIAN AMBERSON, P.C. AND ANR ARE THE ALTER EGOS OF AMBERSON

The MCALLEN PARTIES further allege that JON CHRISTIAN AMBERSON, P.C. and ANR are the alter egos of AMBERSON. There exists such unity between JON CHRISTIAN AMBERSON, P.C., ANR and AMBERSON that the separateness of individual corporations and AMBERSON has ceased. Holding only the individual corporations or AMBERSON responsible would result in injustice. AMBERSON used JON CHRISTIAN AMBERSON, P.C. and ANR for the purpose of and did perpetrate an actual fraud on the MCALLEN PARTIES primarily of the direct personal benefit of AMBERSON. The total dealings of the corporations and individuals, including the failure to follow corporate formalities, the failure to keep corporate and individual property separate, the amount of AMBERSON's financial interest, ownership and control over the corporations, and the use of the corporations for AMBERSON's personal purposes, demonstrate a unity of interests between AMBERSON and his corporations such that the corporations are the alter ego of AMBERSON. Accordingly, AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR are all responsible for the actions of each other.

## VII.
## CONDITIONS PRECEDENT

All conditions precedent to the MCALLEN PARTIES' claims for relief have been performed or have occurred.

153860

10

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP respectfully request that, upon the final disposition of this matter, the Court enter a judgment that JON CHRISTIAN AMBERSON, P.C. take nothing on its claims against the MCALLEN PARTIES, and that the MCALLEN PARTIES recover the following damages on their counterclaims against PLAINTIFFS and ANR:

    a.    actual damages;

    b.    forfeiture/disgorgement of legal fees PLAINTIFFS received from the MCALLEN PARTIES;

    c.    exemplary damages;

    d.    reasonable and necessary attorneys' fees;

    e.    pre-judgment interest;

    f.    post-judgment interest;

    g.    court costs;

    h.    a declaration that the $4.5 million that MCALLEN provided AMBERSON and ANR to purchase an interest in Cannon Grove was not a gift but, rather, was a loan for which ANR is still liable; and

    i.    any other relief to which the MCALLEN PARTIES are entitled.

Respectfully submitted,

/s/ David M. Prichard
David M. Prichard
State Bar No. 16317900
Direct Line:  (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

153860

11

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

***ATTORNEYS FOR JAMES ARGYLE
MCALLEN, EL RUCIO LAND AND CATTLE
COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST
PARTNERSHIP***

153860

Electronically Filed
12/18/2017 3:02 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of ***The McAllen Parties' Second Amended Answer, Counterclaims, and Claims against Third-Parties*** was served on December 18, 2017 to the following:

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez
818 Pecan Street
McAllen, TX 78501

/s/ David M. **Prichard**
David M. Prichard

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

### THE MCALLEN PARTIES'
### (1) RESPONSE TO PLAINTIFF'S AND
### THIRD-PARTY DEFENDANTS' MOTION TO
### REFER CERTAIN CLAIMS TO ARBITRATION
### AND RETAIN OTHERS; AND (2) REQUEST TO REFER
### ALL CLAIMS IN THIS LAWSUIT TO ARBITRATION

TO THE HONORABLE LUIS M. SINGLETERRY:

COME NOW JAMES ARGYLE MCALLEN ("MCALLEN"), EL RUCIO LAND AND

CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN

TRUST PARTNERSHIP (collectively the "MCALLEN PARTIES") and file this: (1) Response

to Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and

Retain Others and (2) Request to Refer All Claims in this Lawsuit to Arbitration. In support of

this response and request, the MCALLEN PARTIES show as follows:

153880                                1

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

# I.
# INTRODUCTION

Texas law strongly favors arbitration. Texas courts hold that any doubts over the scope of an arbitration provision must be resolved in favor of arbitration. Moreover, Texas law favors the joint resolution of multiple claims. When claims that are subject to an arbitration provision are factually intertwined with other ancillary claims, Texas courts consistently hold that both sets of claims must be arbitrated together.

The AMBERSON PARTIES[1] maintain that all the claims in this lawsuit are subject to the arbitration provision in AMBERSON's fee agreement, except for MCALLEN's claims regarding the "Cannon Grove" transaction. This transaction involved MCALLEN loaning AMBERSON $4.5 million so that his wholly owned company, ANR, could then purchase a 90% stake in a company that holds real estate assets. AMBERSON and ANR fraudulently treated this loan as a gift to further enrich themselves at MCALLEN's expense.

MCALLEN's Cannon Grove claims are subject to arbitration. The arbitration provision at issue in the fee agreement covers claims regarding "fee disputes" as well as "services rendered" by AMBERSON and his firm. MCALLEN alleges that AMBERSON and his firm billed the MCALLEN PARTIES charges for services rendered pursuant to the fee agreement. These included improper charges that AMBERSON and his firm never incurred yet for which they billed and collected from the MCALLEN PARTIES. The AMBERSON PARTIES fraudulent efforts to treat the Cannon Grove loan as a gift were part of a continuous pattern of tortious conduct that began with the fraudulent litigation charges and continued after the Cannon Grove transaction. AMBERSON and his firm's collection of those charges facilitated AMBERSON's and ANR's attempts to fraudulently treat the Cannon Grove loan as a gift.

---

[1] The "AMBERSON PARTIES" are Jon Christian Amberson ("AMBERSON"), JON CHRISTIAN AMBERSON, P.C., and Amberson Natural Resources LLC ("ANR").

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

The proceeds from the improper charges were instrumental to supporting the AMBERSON PARTIES' scheme to treat the Cannon Grove loan as a gift and, in effect, receive a $4.5 million investment for free.  Further, the fee dispute claims and the Cannon Grove claims are both parts of the McALLEN PARTIES' assertion of the "continuing tort doctrine" that they have alleged in response to the AMBERSON PARTIES' statute of limitations defense. MCALLEN's claims regarding Cannon Grove are factually intertwined with the MCALLEN PARTIES' claims against AMBERSON and his firm for services rendered pursuant to the fee agreement.   In addition, the MCALLEN PARTIES have alleged that JON CHRISTIAN AMBERSON, P.C. and ANR are the alter egos of AMBERSON.  Consequently, the Court must order all the parties' claims to arbitration, including MCALLEN's claims regarding the Cannon Grove transaction.

## II.
## THE COURT SHOULD REFER THE CANNON GROVE CLAIMS TO ARBITRATION BECAUSE THEY ARE FACTUALLY INTERTWINED WITH OTHER ARBITRABLE CLAIMS AND TEXAS LAW MANDATES ARBITRATION

**A.**      **The MCALLEN PARTIES' claims against the AMBERSON PARTIES.**

The MCALLEN PARTIES assert several claims against AMBERSON and JON CHRISTIAN AMBERSON, P.C. regarding their representation of the MCALLEN PARTIES. AMBERSON and JON CHRISTIAN AMBERSON, P.C. billed the MCALLEN PARTIES for charges that AMBERSON and JON CHRISTIAN AMBERSON, P.C. did not incur. PLAINTIFFS collected those charges from the MCALLEN PARTIES and kept the proceeds. *See* MCALLEN PARTIES' Second Amended Answer, Counterclaims and Claims against Third-Parties, Ex. 1.  The MCALLEN PARTIES alleged that AMBERSON and JON CHRISTIAN AMBERSON, P.C. breached their fiduciary duties to the MCALLEN PARTIES and made false

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

representations, among other claims. *Id.* at 6. In addition, MCALLEN has also asserted claims

against the AMBERSON PARTIES concerning the "Cannon Grove" transaction. *Id.* at 6-9.

The AMBERSON PARTIES maintain that all of the MCALLEN PARTIES' claims are

subject to arbitration, except MCALLEN's claims regarding Cannon Grove. *See* AMBERSON

PARTIES' Motion to Refer Certain Claims to Arbitration, Ex. A, at 1. The AMBERSON

PARTIES argue that MCALLEN's claims regarding Cannon Grove do not involve either a "fee

dispute" or rendering legal services and, thus, do not fall within the scope of the arbitration

provision. The provision states:

> Any fee dispute arising under this agreement and/or the services rendered
> for you by the firms will be submitted to arbitration. The decision of any
> such arbitration or arbitration panel shall be binding, conclusive and non-
> appealable.

*See* AMBERSON PARTIES' Motion, Ex. A-1, Para. 10 (the "Arbitration Provision"). While the

Arbitration Provision expressly identifies matters that are included within its scope, the provision

does not explicitly exclude or limit other claims from its scope. *Id.*

The only dispute between the parties, as to arbitrability, is whether MCALLEN's claims

regarding Cannon Grove are subject to arbitration. The parties agree that all of the other claims

in this lawsuit are subject to arbitration. MCALLEN's claims concerning the Cannon Grove

transaction are factually intertwined with the parties' other claims and, therefore, they must all be

arbitrated.

**B.**    **Texas arbitration law strongly favors the joint resolution of claims and**
**requires arbitration of an ancillary claim when an arbitration clause is**
**susceptible to an interpretation that covers that claim.**

Under the Texas Arbitration Act, "a party seeking to compel arbitration must (1) establish

the existence of a valid, enforceable arbitration agreement, and (2) show that the claims asserted

fall within the scope of that agreement. *Bennett v. Leas*, 13-06-469-CV, 2008 WL 2525403, at

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

*2 (Tex. App.—Corpus Christi June 26, 2008, pet. abated); *Sam Houston Elec. Coop., Inc. v. Berry*, 09-16-00346-CV, 2017 WL 4319849, at *2 (Tex. App.—Beaumont Sept. 28, 2017, no pet.) (same); *McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (same). The written agreement sets forth the Arbitration Provision. The issue is whether MCALLEN's claims regarding Cannon Grove fall within the scope of the Arbitration Provision. In considering the scope of arbitration provisions, Texas courts have repeatedly held that such provisions are construed broadly in favor of arbitration.

### 1. Any doubts concerning the scope of arbitration are resolved in favor of arbitration.

"Texas and federal law recognize a strong presumption 'in favor of arbitration such that myriad doubts — as to waiver, scope, and other issues not relating to enforceability — <u>must be resolved in favor of arbitration</u>.'" *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 521 (Tex. 2015); *see In re D. Wilson Const. Co.*, 196 S.W.3d 774, 782 (Tex. 2006) (same); *Eddleman v. Ocker*, 13-15-00217-CV, 2016 WL 1732428, at *6 (Tex. App.—Corpus Christi Apr. 28, 2016, no pet.) (stating "any doubts concerning the scope of what is arbitrable must be resolved in favor of arbitration"); *IOC Co., LLC v. City of Edinburg*, 13-16-00117-CV, 2017 WL 3084293, at *5 (Tex. App.—Corpus Christi July 20, 2017, pet. filed) (same); *Boston Fin. Institutional Tax Credits XII v. Paseo Plaza Apartments, L.P.*, 13-14-00295-CV, 2015 WL 392787, at *4 (Tex. App.—Corpus Christi Jan. 29, 2015, no pet.) (same); *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 23 (Tex. App.—Corpus Christi 2010, no pet.) (same). "The strong policy favoring arbitration reflected in these presumptions applies to questions of arbitrability under the Texas General Arbitration Act as well as under the Federal Arbitration Act." *Lette v. Brooke Corp.*, 13-02-00527-CV, 2004 WL 1797578, at *5 (Tex. App.—Corpus

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Christi Aug. 12, 2004, pet. denied); *Peterson Const., Inc. v. Sungate Dev., L.L.C.*, 13-03-00525-CV, 2003 WL 22480613, at *2 (Tex. App.—Corpus Christi Oct. 30, 2003, pet. denied) (same).

Once an arbitration agreement is established, "a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *In re D. Wilson Const. Co.*, 196 S.W.3d at 783 (emphasis in original); *see Boston Fin. Institutional Tax Credits XII*, 2015 WL 392787, at *4 (same); *Perlstein v. D. Steller 3, Ltd.*, 109 S.W.3d 36, 39–40 (Tex. App.—Corpus Christi 2003, pet. denied); *Peterson Const., Inc. v. Sungate Dev., L.L.C.*, 13-03-00525-CV, 2003 WL 22480613, at *2 (Tex. App.—Corpus Christi Oct. 30, 2003, pet. denied) (same).

### 2.   Ancillary claims that are factually intertwined with arbitrable claims must be referred to arbitration.

Consistent with the strong policy in favor or arbitration, "[i]n determining whether ancillary causes of action are subject to arbitration with other arbitrable causes of action, the court must submit the ancillary causes to arbitration if they are factually intertwined with the arbitrable cause because, 'Texas law also favors the joint resolution of multiple claims to prevent multiple determinations of the same matter.'" *TCP Holdings, L.L.C. v. Kirk*, No. 05-99-10945-CV, 2000 WL 1240202, at *4 (Tex. App.—Dallas Aug. 31, 2000, orig. proceeding) (quoting *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992)); *see Branch Law Firm L.L.P. v. Osborn*, 14-14-00892-CV, 2016 WL 444867, at *13 (Tex. App.—Houston [14th Dist.] Feb. 4, 2016, pet. denied) (same); *Texas Petrochemicals LP v. ISP Water Mgmt. Serv. LLC*, 301 S.W.3d 879, 885 (Tex. App.—Beaumont 2009, no pet.) (same); *In re Prudential Sec., Inc.*, 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (same); *Associated Glass, Ltd. v. Eye Ten Oaks Investments, Ltd.*, 147 S.W.3d 507, 514 (Tex. App.—San Antonio 2004, no pet.) (same); *MG Nat. Gas Corp. v. Dow Hydrocarbons & Res., Inc.*, 01-96-00064-CV, 1997 WL

153880

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

709456, at *5 (Tex. App.—Houston [1st Dist.] Nov. 6, 1997, pet. denied) (same); *Howell Crude Oil Co. v. Tana Oil & Gas Corp.*, 860 S.W.2d 634, 639 (Tex. App.—Corpus Christi 1993, no writ) (same).

When claims that are explicitly subject to arbitration are "factually intertwined" with ancillary claims, then both sets of claims must be referred to arbitration. *Tipps*, 842 S.W.2d at 271; *Stewart A. Feldman & Associates, L.L.P. v. Indus. Photographic Supply, Inc.*, No. 14-01-00249-CV, 2002 WL 31042586, at *9 (Tex. App.—Houston [14th Dist.] Sept. 12, 2002, no pet.); *TCP Holdings, L.L.C.*, 2000 WL 1240202, at *4 (Tex. App.—Dallas Aug. 31, 2000, orig. proceeding); *Poole v. USA Cas. Ins. Co.*, No. 14-99-00740, 2000 WL 1721150, at *3 (Tex. App—Houston [14th Dist.] Oct. 12, 2000, orig. proceeding); *Howell Crude Oil Co. v. Tana Oil & Gas Corp.*, 860 S.W.2d 634, 639 (Tex. App.—Corpus Christi 1993, no pet.). Put differently, "if the facts alleged in a claim 'touch matters' that are covered by, have a "significant relationship' to, are 'inextricably enmeshed' with or are 'factually intertwined' with the contract that contains the arbitration agreement, the clams are arbitrable." *Texas Petrochemicals LP*, 301 S.W.3d at 885.

In practice, arbitrable claims and ancillary claims are inextricably intertwined when fact issues for the claims overlap and create the possibility of a judge/jury issuing findings that contradict those of the arbitrator. A few examples are instructive.

In *TCP Holdings*, three individuals formed a company that employed them. *TCP Holdings*, 2000 WL 1240202, at *1. Two of the founders sought to terminate the employment of the third founder (Kirk), following allegations that he sexually harassed another employee (Stafford). Following an investigation, the other founders suspended Kirk's pay and locked him out of the office. *Id.* The company's regulations included an arbitration provision requiring that

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

disputes concerning termination of a member had to be arbitrated. *Id.* at *3. Kirk initially sued the company for unpaid salary. He then amended his claim, added the other founders as defendants, and sued them for slander and intentional infliction of emotional distress. *Id.* at *2. The defendants moved to have all of Kirk's claims referred to arbitration, but Kirk argued that his tort claims were not subject to arbitration because they were separate from any matter covered by the company's regulations that are subject to arbitration. *Id.* at *5. The trial court agreed with Kirk and refused to refer his tort claims to arbitration. *Id.* at *2. The court of appeals held the trial court abused its discretion by failing to order Kirk's tort claims to arbitration because they were factually intertwined with his wrongful termination claim. The court found that the ancillary claims were dependent on the same facts as the arbitrable claims.

> In the arbitration proceeding, Kirk filed a specification of his counterclaims. In this document, Kirk alleges in his wrongful termination claim that the Stafford incident was false and was used by Neely and Thomas to manufacture cause for his termination and to avoid paying him the compensation TCP Holdings owed him. Kirk's slander cause of action, as alleged in his first amended petition filed in the district court, asserts that Thomas and Neely slandered him through their "intentional publication of Kirk's alleged sexual assault on Stafford" and that their actions were "part of a scheme to inequitably force Kirk out of TCP." This cause of action involves the same facts at issue in Kirk's wrongful termination claim, which he sought to have resolved through arbitration. Kirk's intentional infliction of emotional distress cause of action alleges that "Thomas and Neely intentionally engaged in an elaborate subterfuge to embarrass and humiliate Kirk, intending to force him to resign from TCP and to forfeit his financial and proprietary interest in TCP." . . . The truth or falsity of the Stafford incident is critical to Kirk's wrongful termination claim, for which he sought arbitration, as well as to his slander and intentional infliction of emotional distress causes of action, for which he opposes arbitration. Examining the factual basis of each of these claims, we conclude that Kirk's slander and intentional infliction of emotional distress causes of action are factually intertwined with his wrongful termination claim.

*Id.* at *5 (emphasis added).

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

In *Poole*, the plaintiff sued her insurer over an uninsured motorist claim. *Poole*, 2000 WL 1721150, at *1. The plaintiff brought contractual claims under the policy as well as extra-contractual claims. *Id.* The insurer wanted the contractual claims arbitrated but not the extra-contractual claims. *Id.* The trial court referred all the claims to arbitration, and the insurer sought mandamus review challenging the referral of the extra-contractual claims to arbitration. *Id.* The court of appeals held that the contractual and extra-contractual claims were intertwined and were all subject to arbitration because the proof for both sets of claims overlapped. Further, the court noted that the arbitration agreement did not limit arbitration only to the contractual claims.

> In addition, because the proof of Poole's extra-contractual unfair settlement claims will largely overlap with the proof needed to establish her contractual claims for policy benefits, the policy favoring joint resolution of multiple claims over multiple determinations of the same matter dictates that Poole's contractual and extra-contractual claims be resolved in the same proceeding **in the absence of an agreement to limit the arbitration to only the contractual** claims.

*Id.* at *3 (emphasis added).

In *Vireo, P.L.L.C. v. Cates*, 953 S.W.2d 489, 480 (Tex. App.—Austin 1997, pet. denied), the owners of a medical center sued the management company and its officers for tortious interference with contract and business relationships as well as breach of fiduciary duty. *Id.* The management company sued for termination of the management agreement. *Id.* The management agreement included an arbitration provision that all disputes under the agreement were subject to arbitration. *Id.* A dispute arose as to whether the plaintiffs' tort claims were subject to arbitration along with the defendant's claims under the agreement. The trial court ruled against the plaintiffs, and the court of appeals affirmed. The appellate court noted the distinct risk of a court and an arbitrator issuing contradictory findings on fact issues common to both the claims that were explicitly within the scope of the arbitration provision as well as the ancillary claims.

153880                                                   9

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

We believe plaintiffs' causes of action either concern (relate to) a dispute under the Management Agreements or those causes of action are "factually intertwined" with those agreements sufficiently to invoke the judicial policy favoring a joint resolution of claims and the avoidance of multiple determinations of the same matters. Suppose, for example, that an arbitrator construes the noncompetition provision as defendants contend it should be construed, resulting in a determination that the provision did not prohibit CD's drug-testing services; and a district court construes the provision to the contrary. **Or suppose the arbitrator determines plaintiffs first breached the Management Agreements by terminating them without the requisite notice, thereby entitling defendants to damages and cancelling the noncompetition provision, among other contract obligations; but the district court finds to the contrary. The possibility of contradictory determinations in the two forums is obvious. The relation of plaintiffs' causes of action to the Management Agreements is obvious.** We hold accordingly and affirm the trial-court order.

*Id.* at 494 (citations omitted) (emphasis added).

Like *TCP Holdings*, *Poole* and *Viero*, MCALLEN's claims regarding Cannon Grove are similarly intertwined with the claims regarding services and fees, charged by AMBERSON and his firm, that are independently subject to arbitration.

> **3.     Arbitration is necessary when signatories and non-signatories are alleged to be alter-egos and the claims are inherently inseparable.**

Intertwined claims that rely on the same set of facts are also critical to deciding whether to compel to arbitration of claims involving parties that were not signatories to an arbitration agreement. Under Texas law, there are six ways to bind non-signatories to an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *Ameriprise Fin. Services, Inc. v. Farias*, 13-13-00279-CV, 2013 WL 6175330, at *3 (Tex. App.—Corpus Christi Nov. 21, 2013, pet. denied). When a non-signatory party is alleged to be the alter ego of a party that signed the arbitration agreement, and the claims against the signatory parties and non-signatory parties are "based on the same operative facts and are inherently inseparable", then courts will refer the claims against the non-

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

signatory parties to arbitration along with the claims against the signatory parties. *In re Education Management Corp., Inc.*, 14 S.W.3d 418, 424-25 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *see Coody Custom Homes, LLC v. Howe*, 10-06-00098-CV, 2007 WL 1374136, at \*3 (Tex. App.—Waco May 9, 2007, no pet.) (same).  The MCALLEN PARTIES have alleged that JON CHRISTIAN AMBERSON, P.C. and ANR are the alter egos of AMBERSON.  *See* MCALLEN PARTIES' Second Amended Answer, Counterclaims and Claims against Third-Parties against Plaintiff JON CHRISTIAN AMBERSON, P.C., Third-Party JON CHRISTIAN AMBERSON, Ex. 1 at 11.

### C.  MCALLEN's claims concerning Cannon Grove are inextricably intertwined with the rest of the parties' claims that are indisputably subject to arbitration.

#### 1.  The fee dispute claims are substantively intertwined with the Cannon Grove claims.

The MCALLEN PARTIES contest the AMBERSON PARTIES' assertion that the money MCALLEN provided AMBERSON, to have ANR purchase its interest in Cannon Grove, was a gift.  The AMBERSON PARTIES' fraudulent efforts to treat the loan as a gift was one of numerous tortious acts intended to steal from MCALLEN and the MCALLEN PARTIES. Because the AMBERSON PARTIES had successfully defrauded the MCALLEN PARTIES of millions of dollars through false charges, it emboldened the AMBERSON PARTIES to engage in further fraud with respect to Cannon Grove.  The AMBERSON PARTIES knew that even if they were unsuccessful with their Cannon Grove plan, and were forced to repay the loan, they had more than enough in fraudulent charges they stole from the MCALLEN PARTIES to repay the loan.  More specifically, the MCALLEN PARTIES alleged that:

> AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR conspired together to falsely treat the MCALLEN loan as a gift and keep the 90% interest in Cannon Grove.  AMBERSON, JON CHRISTIAN

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

AMBERSON, P.C., and ANR perpetrated this fraud because they knew that even if they were forced to repay the loan, they had the funds to repay the loan.   The money that AMBERSON and JON CHRISTIAN AMBERSON, P.C. misappropriated from the MCALLEN PARTIES, in the course of representing them, was more than the amount MCALLEN loaned AMBERSON to purchase ANR's interest in Cannon Grove. PLAINTIFFS' prior misappropriation of funds from MCALLEN PARTIES facilitated AMBERSON's and ANR's effort to wrongfully treat the Cannon Grove loan as a gift.

***

AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR were members of a combination of two or more persons; the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; the members of the combination had a meeting of the minds on the objective; the members committed unlawful, overt acts in furtherance of the objective and the MCALLEN PARTIES suffered injuries as a proximate result of those unlawful acts.   AMBERSON and JON CHRISTIAN AMBERSON, P.C. conspired to bill and collect from the MCALLEN PARTIES charges that AMBERSON and JON CHRISTIAN AMBERSON, P.C. did not actually incur.   AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR further conspired to utilize proceeds from these illegal activities to facilitate their efforts to falsely treat the money MCALLEN loaned AMBERSON, to purchase ANR's interest in Cannon Grove, as a gift rather than as a loan.

*See* MCALLEN PARTIES' Second Amended Answer, Counterclaims and Claims against Third-Parties against Plaintiff JON CHRISTIAN AMBERSON, P.C., Third-Party JON CHRISTIAN AMBERSON, Ex. 1 at 5, 9.   The AMBERSON PARTIES' assertion, that the Cannon Grove claims are wholly unrelated to the fee dispute claims, is false.

> **2.      The fee dispute claims and the Cannon Grove claims are all part of continuing tortious activity that tolls limitations and is a question of fact common to both sets of claims.**

In addition, the MCALLEN PARTIES pleaded the continuing tort doctrine in response to the AMBERSON PARTIES' statute of limitations defense. *Id.* at 9-10.   Under the continuing tort doctrine, a cause of action is not complete and does not accrue until the tortious acts have ceased thus delaying the running of the statute of limitations.   *BNSF Ry. Co. v. Acosta*, 449

S.W.3d 885, 894 (Tex. App.—El Paso 2014, no pet.); *Plough v. Reynolds*, 13-03-741-CV, 2006 WL 328120, at *3 (Tex. App.—Corpus Christi Feb. 9, 2006, no pet.). A continuing tort involves a repeated injury caused by repetitive wrongful acts, not a continuing injury arising from one wrongful act. *Krohn v. Marcus Cable Assocs.*, 201 S.W.3d 876, 880 (Tex. App.—Waco 2006, pet. denied); *Plough*, 2006 WL 328120, at *3.

The AMBERSON PARTIES' tortious conduct began with multiple instances of fraud and breach of fiduciary duty in which AMBERSON and his firm billed and collected on fictitious charges – all claims that are indisputably subject to arbitration. The AMBERSON PARTIES continued their fraud with their efforts to treat the Cannon Grove loan as a gift. The AMBERSON PARTIES' tortious activities continued after Cannon Grove as they defrauded MCALLEN into paying off a loan, owed by AMBERSON and his firm, that they falsely represented was needed to fund their representation of the MCALLEN PARTIES in certain litigation matters. The Cannon Grove claims are part of a continuum of tortious conduct that preceded the Cannon Grove transaction and that continued long afterwards. In assessing whether the continuing tort doctrine defeats the AMBERSON PARTIES statute of limitation defense, the fact finder (be it arbitrator or jury) will necessarily have to consider claims that are subject to arbitration (including false charges billed by AMBERSON and his firm and the fraudulent loan), along with the Cannon Grove claims.

### 3. There is a real risk of contradictory findings if the Cannon Grove claims are not referred to arbitration with the fee dispute claims.

Whether AMBERSON and his firm billed and collected improper charges from the MCALLEN PARTIES is a fact common to: (1) JON CHRISTIAN AMBERSON, P.C.'s claims for fees, (2) the MCALLEN PARTIES' claims regarding fees, and (3) MCALLEN's claims against the AMBERSON PARTIES regarding the Cannon Grove transaction. If MCALLEN's

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cannon Grove claims are tried separately from the claims going to arbitration, then there is the real possibility that two different fact-finders will reach conflicting decisions about whether AMBERSON and his firm improperly billed and collected charges from the MCALLEN Parties and then used those funds to facilitate the $4.5 million that AMBERSON claims was a "gift" from MCALLEN.

Moreover, even if the Cannon Grove claims are not referred to arbitration, the judge/jury will still have to consider whether AMBERSON and his firm collected fraudulent charges while representing the MCALLEN PARTIES to determine if these charges, the Cannon Grove claims, and the claims regarding the litigation loan, were part of a continuing tort that tolled limitations. This creates the possibility that there will be contradictory findings on common questions of fact. This possibility alone triggers the Texas policy "favoring resolution of multiple claims to prevent multiple determinations of the same matter." *TCP Holdings*, 2000 WL 1240202, at *1; *Poole*, 2000 WL 1721150, at *1; *Vireo*, 953 S.W.2d at 494. Additionally, because these common questions of fact apply to signatory and non-signatory parties that the MCALLEN PARTIES have alleged to the alter ego of each other, the claims against the non-signatory parties (AMBERSON, individually, and ANR) are also subject to arbitration. *In re Education Management Corp., Inc.*, 14 S.W.3d at 424-25; *see Coody Custom Homes, LLC*, 2007 WL 1374136, at *3. In short, because the Cannon Grove claim share common facts with the fee dispute claims, all of the claims are subject to arbitration.

This Court must resolve any doubts regarding the scope of the Arbitration Provision in favor of arbitration. *J. T. Leach Builders, LLC*, 458 S.W.3d at 521; *Eddleman*, 2016 WL 1732428, at *6. Given the obvious overlap between the fee dispute claims and the Cannon Grove Claims, it cannot be said "with positive assurance" that the Arbitration Provision is

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

unsusceptible to an interpretation that covers MCALLEN's Cannon Grove claims. *In re D. Wilson Const. Co.,* 196 S.W.3d at 783. Moreover, the Court should also refer the Cannon Grove claims to arbitration because while Arbitration Provision provides that fee disputes are subject to arbitration, the provision does not expressly exclude other claims. *Poole,* 2000 WL 1721150, at *3. Accordingly, the Court should refer all of the parties' claims to arbitration.

## III.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the MCALLEN PARTIES respectfully request that the Court: (1) deny the AMBERSON PARTIES' request to refer the Cannon Grove claims to arbitration, and (2) order that all the claims in his lawsuit be arbitrated.

Respectfully submitted,

/s/ David M. **Prichard**
David M. Prichard
State Bar No. 16317900
Direct Line:  (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

Electronically Filed
12/18/2017 3:06 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

**ATTORNEYS FOR JAMES ARGYLE
MCALLEN, EL RUCIO LAND AND CATTLE
COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST
PARTNERSHIP**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served on December 18, 2017 to the following:

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

/s/ David M. Prichard
David M. Prichard

153880

16

# EXHIBIT 1

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY TEXAS |

## THE MCALLEN PARTIES' SECOND AMENDED ANSWER, COUNTERCLAIMS, AND CLAIMS AGAINST THIRD-PARTIES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants JAMES ARGYLE MCALLEN ("MCALLEN"), EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP (collectively the "MCALLEN PARTIES") and file their Second Amended Answer, Counterclaims and Claims against Third-Parties against Plaintiff JON CHRISTIAN AMBERSON, P.C., Third-Party JON CHRISTIAN AMBERSON ("AMBERSON") (collectively "PLAINTIFFS") and Third-Party AMBERSON NATURAL RESOURCES, LLC ("ANR"). In support of their Answer, Counterclaims, and Claims against Third-Parties the MCALLEN PARTIES show as follows.

153860                                              1

## I.
## GENERAL DENIAL

The MCALLEN PARTIES generally deny each and every material allegation contained in JON CHRISTIAN AMBERSON, P.C.'s Petition and/or live pleadings, and demands strict proof thereof, and to the extent that such matters are questions of fact, says that JON CHRISTIAN AMBERSON, P.C. should prove such facts by a preponderance of the evidence, clear and convincing evidence, or such other evidence as the law may require.

## II.
## THE PARTIES, JURISDICTION, AND VENUE

### A.      The Parties

Defendants, the MCALLEN PARTIES, are an individual and entities who reside in or have their principal place of business in Hidalgo County.

Plaintiff JON CHRISTIAN AMBERSON, P.C. is a Texas corporation.    JON CHRISTIAN AMBERSON, P.C. has already appeared in this case.

Third-Party JON CHRISTIAN AMBERSON is an individual residing in Bexar County and who may be served with process at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209. JON CHRISTIAN AMBERSON has already appeared in this case.

Third-Party AMBERSON NATURAL RESOURCES, LLC ("ANR") is a Texas limited liability company with its principal place of business in Bexar County.  ANR may be served through its registered agent, JON CHRISTIAN AMBERSON, at 2135 E. Hildebrand Avenue, San Antonio, Texas 78209.  ANR has already appeared in this case.

### B.      Jurisdiction and Venue

The Court has jurisdiction over all the parties because they are all either individuals who reside in the State of Texas or are business entities with their principal places of business in the

153860                                                         2

State of Texas.  Venue is proper in Hidalgo County because Defendants JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP all reside or have their principal offices in Hidalgo County and because all or substantial part of the events giving rise to this action occurred in Hidalgo County.  TEX. CIV. PRAC. & REM. CODE § 15.002(a).

### III.
### BACKGROUND FACTS
### IN SUPPORT OF THE MCALLEN PARTIES'
### COUNTERCLAIMS AND CLAIMS AGAINST THIRD-PARTIES

### A.    PLAINTIFFS' Representation of the MCALLEN PARTIES

For over 15 years PLAINTIFFS served as legal counsel for the MCALLEN PARTIES on various legal matters.   In the course of those representations, PLAINTIFFS billed the MCALLEN PARTIES charges that PLAINTIFFS did not incur.   PLAINTIFFS wrongfully collected those charges from the MCALLEN PARTIES and kept the proceeds.   PLAINTIFFS also represented to the MCALLEN PARTIES that PLAINTIFFS took out a loan to fund their representation of the MCALLEN PARTIES.   However, PLAINTIFFS actually billed and collected from the MCALLEN PARTIES all of their time and expenses.   PLAINTIFFS' assertion, that the loan was to finance their representation of the MCALLEN PARTIES, was false.  PLAINTIFFS then billed the MCALLEN PARTIES for interest payments PLAINTIFFS made on the loan, and the MCALLEN PARTIES, relying on PLAINTIFFS' false statements, paid those charges.  Subsequently, JAMES A. MCALLEN paid off that loan at PLAINTIFFS' request, based on their representations that they would repay MCALLEN.

153860                                          3

## B.    The Cannon Grove Transaction

PLAINTIFFS' long term representation of MCALLEN and AMBERSON's status as MCALLEN's son-in-law, put AMBERSON in a position to exploit that relationship beyond his role as litigation counsel.  This included a transaction known as "Cannon Grove".

MCALLEN owned real property, separate from the McAllen Ranch, that he wished to sell but defer taxes on the sale until a future date, as permitted under 28 U.S.C. § 1031 of the Internal Revenue Code.  This arrangement is often referred to as a "Reverse 1031 Exchange". To conduct the exchange, MCALLEN needed to exchange that property for other property. MCALLEN owned a separate collection of four parcels of land in Hidalgo County (the "Edinburg Property") along with other property (the "Hinojosa Property") that he used for the exchange.  To qualify as a Reverse 1031 exchange, MCALLEN also needed a non-family member (non-blood relative) to "own" an interest in the property.  MCALLEN turned to AMBERSON.    MCALLEN and AMBERSON agreed that MCALLEN would provide AMBERSON with all the funds needed to purchase an interest in the Edinburg Property and Hinojosa Property to facilitate the Reverse 1031 Exchange.

As part of the exchange, MCALLEN deeded the Edinburg Property and Hinojosa Property to ExStra-McAllen, LLC.  ExStra-McAllen, LLC was wholly owned by ExStra LLC. On March 19, 2009, ExStra LLC sold ExStra-McAllen, LLC to two buyers:  Ranch Specialties Company ("RSC" – owned by MCALLEN) and ANR (owned by AMBERSON).    RSC purchased ten percent (10%) of ExStra-McAllen, LLC and ANR purchased the remaining ninety percent (90%).  The total purchase price was $5 million.  As part of the sale, ExStra LLC assigned ten percent (10%) of ExStra-McAllen, LLC to RSC and assigned the remaining ninety percent (90%) to ANR.   In addition, ExStra-McAllen, LLC changed its name to Cannon Grove

153860                                                    4

Investments, LLC ("Cannon Grove"). RSC owns ten percent of Cannon Grove, and ANR owns the other ninety percent (90%).

For the purchase price, $4,500,000 was attributed to ANR and the remaining $500,000 was attributed to RSC. However, because the purpose of the transaction was to execute a Reverse 1031 Exchange for the benefit of MCALLEN, he provided all of the purchase funds. Neither AMBERSON nor ANR used any of their own funds to purchase ANR's interest in ExStra-McAllen, LLC. MCALLEN loaned AMBERSON the $4,500,000 that ANR used to purchase its interest. AMBERSON now maintains that the money MCALLEN loaned ANR, to purchase its interest in Cannon Grove, was a "gift." AMBERSON has refused to convey ANR's ninety percent (90%) interest in Cannon Grove to MCALLEN as the transaction was intended, despite several requests. Further, AMBERSON has refused to repay MCALLEN the money loaned to AMBERSON to purchase ANR's interest in Cannon Grove.

AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR conspired together to falsely treat the MCALLEN loan as a gift and keep the 90% interest in Cannon Grove. AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR perpetrated this fraud because they knew that even if they were forced to repay the loan, they had the funds to repay the loan. The money that AMBERSON and JON CHRISTIAN AMBERSON, P.C. misappropriated from the MCALLEN PARTIES, in the course of representing them, was more than the amount MCALLEN loaned AMBERSON to purchase ANR's interest in Cannon Grove. PLAINTIFFS' prior misappropriation of funds from the MCALLEN PARTIES facilitated AMBERSON's and ANR's effort to wrongfully treat the Cannon Grove loan as a gift.

PLAINTIFFS and ANR have breached various tort, contractual, and legal duties owed to the MCALLEN PARTIES in the course of their relationship, resulting in damages to the

MCALLEN PARTIES.  Pursuant to Rule 47, the MCALLEN PARTIES seek monetary relief of over $1,000,000.

## IV.
## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

The MCALLEN PARTIES incorporate by reference the factual allegation set forth in Section III.

### A.      Breach of Fiduciary Duty

As the long-time attorneys for the MCALLEN PARTIES, PLAINTIFFS owed the MCALLEN PARTIES fiduciary duties.  PLAINTIFFS breached their fiduciary duties to the MCALLEN PARTIES.  As a result of PLAINTIFFS' breach of their fiduciary duties, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional limit.  As additional damages, the Court should order PLAINTIFFS to forfeit and disgorge legal fees they collected from the MCALLEN PARTIES.

### C.      Misrepresentation

PLAINTIFFS made multiple false and intentional misrepresentations to the MCALLEN PARTIES.  PLAINTIFFS made those representations to the MCALLEN PARTIES knowing that they were false and with the intent that the MCALLEN PARTIES would rely on those representations.  The MCALLEN PARTIES relied on PLAINTIFFS' false representations.  As a result of PLAINTIFFS' misrepresentations, the MCALLEN PARTIES suffered actual damages in excess of the Court's minimum jurisdictional limit.

### D.      Violation of the Texas Theft Liability Act

PLAINTIFFS are liable to the MCALLEN PARTIES under the Texas Theft Liability Act.  TEX. CIV. PRAC. & REM. CODE § 134.001 *et seq*.  The MCALLEN PARTIES had a possessory right to monies it paid PLAINTIFFS.  PLAINTIFFS took these funds from the

MCALLEN PARTIES in violation of Section 31.03 of the Texas Penal Code. PLAINTIFFS intentionally deprived the MCALLEN PARTIES of these funds resulting in damages to the MCALLEN PARTIES. The MCALLEN PARTIES are entitled to recover their actual damages as well as statutory damages and attorneys' fees. TEX. CIV. PRAC. & REM. CODE §§ 134.005(a)(1) and (b).

### E.      Equitable Subrogation

JAMES A. MCALLEN asserts a claim of equitable subrogation against PLAINTIFFS in connection with MCALLEN's paying off a loan that PLAINTIFFS owed a lender. PLAINTIFFS were primarily liable for the loan from the lender. MCALLEN involuntarily paid that debt on behalf of PLAINTIFFS. PLAINTIFFS have failed to reimburse MCALLEN for paying PLAINTIFFS' debt to the lender including the costs MCALLEN incurred paying off PLAINTIFFS' debt.

### F.      Money Had and Received/Unjust Enrichment

PLAINTIFFS fraudulently obtained monies from the MCALLEN PARTIES. PLAINTIFFS continue to hold these funds that, in equity and good conscience, belong to the MCALLEN PARTIES. To prevent the unjust enrichment of PLAINTIFFS, such monies had and received should, in equity, be returned to the MCALLEN PARTIES.

### G.      Conversion

The MCALLEN PARTIES owned personal property in the form of monies that they paid to PLAINTIFFS. PLAINTIFFS accepted that money under false pretenses and wrongfully exercised dominion or control over that property. The MCALLEN PARTIES demanded return of the property, but PLAINTIFFS refused to return the funds. Consequently, the MCALLEN

PARTIES suffered damages as a result of PLAINTIFFS' conversion of the MCALLEN PARTIES' property.

### H.    Exemplary Damages

As a result of PLAINTIFFS' breach of fiduciary duty, fraud, unjust enrichment and conversion, and PLAINTIFFS' violation of the Texas Theft Liability Act, the MCALLEN PARTIES are entitled to recover exemplary damages from PLAINTIFFS and ANR in addition to the MCALLEN PARTIES' actual damages. TEX. CIV. PRAC. & REM. CODE § 41.003. PLAINTIFFS' and ANR's conduct was both fraudulent and malicious. Moreover, because PLAINTIFFS' conduct involves misapplication of fiduciary property and theft – both first degree felonies – the statutory cap on exemplary damages is inapplicable. *Id.* at § 41.008(c)(10) and (13).

### I.    Defaulted Promissory Notes

MCALLEN is a holder of promissory notes that AMBERSON signed. AMBERSON defaulted on the notes. MCALLEN is entitled to recover the full-face value of the notes, as well as interest and attorneys' fees.

### J.    Unjust Enrichment – Cannon Grove

Unjust enrichment also occurs when one passively receives a benefit that would be unconscionable to retain. With respect to Cannon Grove, AMBERSON and ANR passively received a benefit that, in equity and good conscience, belongs to MCALLEN. To prevent unjust enrichment, the Court should award to MCALLEN, AMBERSON's and ANR's interest in Cannon Grove.

### K.     Declaratory Judgment – Cannon Grove

In the alternative to his claim for unjust enrichment, and pursuant to Section 37.003 of the Texas Civil Practice & Remedies Code, MCALLEN requests a declaration that funds MCALLEN provided AMBERSON and ANR to purchase an interest in Cannon Grove was not a gift but, rather, was a loan for which AMBERSON and ANR are still liable.  Pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code, MCALLEN requests that he be awarded his costs and reasonable and necessary attorneys' fees incurred in this action.

### L.     Conspiracy

AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR were members of a combination of two or more persons; the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; the members of the combination had a meeting of the minds on the objective; the members committed unlawful, overt acts in furtherance of the objective and the MCALLEN PARTIES suffered injuries as a proximate result of those unlawful acts.  AMBERSON and JON CHRISTIAN AMBERSON, P.C. conspired to bill and collect from the MCALLEN PARTIES charges that AMBERSON and JON CHRISTIAN AMBERSON, P.C. did not actually incur.  AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR further conspired to utilize proceeds from these illegal activities to facilitate their efforts to falsely treat the money MCALLEN loaned AMBERSON, to purchase ANR's interest in Cannon Grove, as a gift rather than as a loan.

### V.
### THE STATUTE OF LIMITATIONS, AS TO THE MCALLEN PARTIES' CLAIMS, IS BOTH INAPPLICABLE AND TOLLED

PLAINTIFFS and ANR cannot assert that any of the MCALLEN PARTIES' claims against them are barred by limitations.  The MCALLEN PARTIES' claims arise from the same

153860                                                   9

events that give rise to PLAINTIFFS' claims, and the MCALLEN PARTIES assert their claims within 30 days after the date on which their answer is required. TEX. CIV. PRAC. & REM. CODE § 16.069. In addition, the statute of limitations on the MCALLEN PARTIES' claims against PLAINTIFFS are tolled by virtue of the continuing tort doctrine, the discovery rule and/or fraudulent concealment, as well as the parties' written tolling agreement.

## VI.
## JON CHRISTIAN AMBERSON, P.C. AND ANR ARE THE ALTER EGOS OF AMBERSON

The MCALLEN PARTIES further allege that JON CHRISTIAN AMBERSON, P.C. and ANR are the alter egos of AMBERSON. There exists such unity between JON CHRISTIAN AMBERSON, P.C., ANR and AMBERSON that the separateness of individual corporations and AMBERSON has ceased. Holding only the individual corporations or AMBERSON responsible would result in injustice. AMBERSON used JON CHRISTIAN AMBERSON, P.C. and ANR for the purpose of and did perpetrate an actual fraud on the MCALLEN PARTIES primarily for the direct personal benefit of AMBERSON. The total dealings of the corporations and individuals, including the failure to follow corporate formalities, the failure to keep corporate and individual property separate, the amount of AMBERSON's financial interest, ownership and control over the corporations, and the use of the corporations for AMBERSON's personal purposes, demonstrate a unity of interests between AMBERSON and his corporations such that the corporations are the alter ego of AMBERSON. Accordingly, AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR are all responsible for the actions of each other.

## VII.
## CONDITIONS PRECEDENT

All conditions precedent to the MCALLEN PARTIES' claims for relief have been performed or have occurred.

153860                                   10

# VIII.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP respectfully request that, upon the final disposition of this matter, the Court enter a judgment that JON CHRISTIAN AMBERSON, P.C. take nothing on its claims against the MCALLEN PARTIES, and that the MCALLEN PARTIES recover the following damages on their counterclaims against PLAINTIFFS and ANR:

a.   actual damages;

b.   forfeiture/disgorgement of legal fees PLAINTIFFS received from the MCALLEN PARTIES;

c.   exemplary damages;

d.   reasonable and necessary attorneys' fees;

e.   pre-judgment interest;

f.   post-judgment interest;

g.   court costs;

h.   a declaration that the $4.5 million that MCALLEN provided AMBERSON and ANR to purchase an interest in Cannon Grove was not a gift but, rather, was a loan for which ANR is still liable; and

i.   any other relief to which the MCALLEN PARTIES are entitled.

Respectfully submitted,

/s/ David M. **Prichard**
David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

***ATTORNEYS FOR JAMES ARGYLE
MCALLEN, EL RUCIO LAND AND CATTLE
COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST
PARTNERSHIP***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of ***The McAllen Parties' Second Amended Answer, Counterclaims, and Claims against Third-Parties*** was served on December 18, 2017 to the following:

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez
818 Pecan Street
McAllen, TX 78501


/s/ David M. Prichard
David M. Prichard

Electronically Filed
12/18/2017 4:41 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER REFERRING CLAIMS TO ARBITRATION</u>

On this day the Court considered JON CHRISTIAN AMBERSON's, JON CHRISTIAN

AMBERSON, P.C.'s, and AMBERSON NATURAL RESOURCES LLC's (collectively the

"AMBERSON PARTIES") Motion to Refer Certain Claims to Arbitration and Retain Others and

JAMES ARGYLE MCALLEN's, EL RUCIO LAND AND CATTLE COMPANY, INC.'s, SAN

JUANITO LAND PARTNERSHIP, LTD.'s and MCALLEN TRUST PARTNERSHIP's

(collectively the "MCALLEN PARTIES") Response and Request to Refer All Claims in this

Lawsuit to Arbitration.  After considering the parties' motions, responses and the argument of

counsel, the Court rules as follows:

153880

Electronically Filed
12/18/2017 4:41 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

IT IS ORDERED that the AMBERSON PARTIES' motion to refer certain claims to arbitration is GRANTED, but that its motion to retain other claims is DENIED.

IT IS FURTHER ORDERED that the MCALLEN PARTIES' Motion to Refer All Claims in this Lawsuit to Arbitration is GRANTED.

IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the parties' arbitration agreement.

SIGNED this _____ day of December 2017.


_____
JUDGE LUIS M. SINGLETERRY


David Prichard (dprichard@prichardyoungllp.com)
Jon Christian Amberson (chris@ambersonpc.com)
Steven Fleckman (fleckman@fleckman.com)
Charles Murray (ccmurray@atlashall.com)

153880

Electronically Filed
12/19/2017 12:16 PM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios      Ricardo Contreras      Adriana "Audry" Garcia      Sabrina S. Guerra      Oneida Lamas      Stephanie Palacios      Aida Villarreal
CHIEF DEPUTY      CHIEF OF ADMINISTRATION      ASSISTANT CHIEF DEPUTY      SENIOR ACCOUNTANT      DEPUTY DISTRICT CLERK SUPERVISOR      BUDGET AND PROCUREMENT      CHIEF OF APPEALS
                  AND PUBLIC INFORMATION                                                                                OFFICER

Electronically Filed
12/18/2017 4:41 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER REFERRING CLAIMS TO ARBITRATION</u>

On this day the Court considered JON CHRISTIAN AMBERSON's, JON CHRISTIAN

AMBERSON, P.C.'s, and AMBERSON NATURAL RESOURCES LLC's (collectively the

"AMBERSON PARTIES") Motion to Refer Certain Claims to Arbitration and Retain Others and

JAMES ARGYLE MCALLEN's, EL RUCIO LAND AND CATTLE COMPANY, INC.'s, SAN

JUANITO LAND PARTNERSHIP, LTD.'s and MCALLEN TRUST PARTNERSHIP's

(collectively the "MCALLEN PARTIES") Response and Request to Refer All Claims in this

Lawsuit to Arbitration. After considering the parties' motions, responses and the argument of

counsel, the Court rules as follows:

153880

Electronically Filed
12/18/2017 4:41 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

IT IS ORDERED that the AMBERSON PARTIES' motion to refer certain claims to arbitration is GRANTED, but that its motion to retain other claims is DENIED.

IT IS FURTHER ORDERED that the MCALLEN PARTIES' Motion to Refer All Claims in this Lawsuit to Arbitration is GRANTED.

IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the parties' arbitration agreement.

SIGNED this _____ day of December 2017.


_____
JUDGE LUIS M. SINGLETERRY


David Prichard (dprichard@prichardyoungllp.com)
Jon Christian Amberson (chris@ambersonpc.com)
Steven Fleckman (fleckman@fleckman.com)
Charles Murray (ccmurray@atlashall.com)

153880

Electronically Filed
12/20/2017 10:46 AM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## FIRST AMENDED PETITION TO COMPEL ARBITRATION

Plaintiff Jon Christian Amberson, P.C. files this First Amended Petition to Compel Arbitration against Defendants James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership (collectively, "*McAllen*").

### I. Jurisdiction and Venue

1.     This Court has jurisdiction to compel the parties to arbitration as to the arbitrable claims under TEX. CIV. PRAC. & REM. CODE § 171.082(a).  Each Defendant has made an appearance for all purposes in this action.

Electronically Filed
12/20/2017 10:46 AM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

2.      Venue is proper in Hidalgo County, Texas under TEX. CIV. PRAC. & REM. CODE §

171.096 because (i) the arbitration agreement provides that venue shall be in Hidalgo County,

and (ii) one or more of the Defendants resides in Hidalgo County.

## II. Request for Arbitration

3.      This action concerns a contingency fee dispute between the parties regarding

Plaintiff's rights under an engagement agreement (comprised of two executed engagement

letters, both dated January 25, 2005) (together, the "***Engagement Agreement***") for legal services

rendered by Plaintiff on behalf of McAllen arising out of a litigation/arbitration with Forest Oil

over contamination of the McAllen Ranch (the "***Forest Oil Litigation***").  A true and correct copy

of the Engagement Agreement is attached as **Exhibit A**.

4.      The Engagement Agreement relates specifically and solely to legal services to be

provided by the Jon Christian Amberson, P.C. law firm (the "***Amberson Firm***") in the Forest Oil

Litigation.  Paragraph 10 of the Engagement Agreement contains the following mandatory

arbitration provision:

> Any fee dispute arising under this agreement and/or the services rendered for you
> by the firm will be submitted to arbitration.  The decision of any such arbitration
> or arbitration panel shall be binding, conclusive and non-appealable.  The
> arbitrator will be selected as follows:
>
> Arbitration will be determined by a retired district judge who has previously
> served on any of the Hidalgo County District Courts and is presently retired or in
> senior status.  The selection of such judge to be the arbitrator will be determined
> by the Senior Presiding Judge of Hidalgo County, Texas.

The "fee" referred to is specifically determined under paragraph 7 as "thirty-three and one-third

percent (33 1/3 %) of such clients [sic] share of the gross recovery of 'damages'."  Damages is

broadly defined to include damages, cash, attorneys' fees, pre-judgment interest, post-judgment

interest, and other sums recovered on behalf of McAllen.

Electronically Filed
12/20/2017 10:46 AM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

5.    The arbitration panel's final judgment (the "***Arbitration Award***") awarded to McAllen, $15,500,000 in cash damages and $500,000 in cash exemplary damages.  In addition, the award requires Forest Oil to perform and pay for remedial work to remove all hazardous materials from the McAllen Ranch, which is a substantial part of the "damages" that McAllen recovered from Forest Oil.  The value of Forest Oil's ongoing financial obligation to restore the McAllen Ranch to its condition before contamination is reasonably estimated to be $15,000,000.

6.    In addition, on behalf of McAllen, the Amberson Firm recovered attorneys' fees from Forest Oil of approximately $6,781,802.

7.    McAllen has refused to pay the contingency fee promised Plaintiff under the Engagement Agreement.  That contingency fee is conservatively calculated as one-third of (i) $37,781,802 plus (ii) $6,294,191 in accrued post-judgment interest (computed solely on the $22,781,802 immediate cash component of the award).  Thus, the contingency fee due Plaintiff is $14,690,528.50.

8.    Plaintiff therefore files this request to submit the parties' attorneys' fee dispute to arbitration in accordance with the procedure set forth in the Engagement Agreement.

### III.  Plaintiff's Claims Against McAllen

9.    Subject to Plaintiff's Motion to Refer Certain Claims to Arbitration and Retain Others, Plaintiff pleads these additional claims against McAllen:

#### A.  *First Cause of Action: Breach of Contract*

10.    Plaintiff repeats the foregoing allegations.

11.    McAllen is in breach of its contract with Plaintiff to pay the contingency fee due Plaintiff under the Engagement Agreement.  As a result, Plaintiff has sustained damage.  All conditions precedent to recovery under the contract have occurred, been satisfied, or been

Electronically Filed
12/20/2017 10:46 AM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

waived.  Plaintiff therefore seeks recovery of its damages.  This claim is based in whole or in part on the Engagement Agreement.

### B. *Second Cause of Action: Quantum Meruit/Unjust Enrichment*

12.     Plaintiff repeats the foregoing allegations.

13.     In the alternative, Plaintiff pleads for quantum meruit and unjust enrichment. Plaintiff represented McAllen in the underlying litigation against Forest Oil for twelve years, devoted almost all of its time and resources to that effort, which culminated in the 2012 Arbitration Award in favor of McAllen for more than $37 million.  McAllen accepted Plaintiff's legal services with full knowledge that Plaintiff expected compensation for those services. Plaintiff is therefore entitled to the reasonable value of its legal services that it provided to McAllen.

### C. *Third Cause of Action: Constructive Trust*

14.     Plaintiff repeats the foregoing allegations.

15.     To avoid unjust enrichment Plaintiff seeks a declaration of a constructive trust as to $14,690,528.50 of the cash McAllen has received under the Arbitration Award.

### D. *Claim for Attorneys' Fees*

16.     Plaintiff has found it necessary to engage counsel to enforce its breach of contract claim, and has made demand for compliance with the terms of the Engagement Agreement more than thirty days prior to trial.  Plaintiff therefore seeks recovery of its reasonable attorneys' fees, trial and appellate, pursuant to Chapter 38, TEX. CIV. PRAC. & REM. CODE.

## IV.  Prayer

WHEREFORE, Plaintiff respectfully prays that Defendants be compelled to participate in arbitration as to the Amberson Firm's claims arising under the Engagement Agreement, and that

Electronically Filed
12/20/2017 10:46 AM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

Plaintiff be awarded judgment in the arbitration (and judgment by confirmation in court) against

Defendants for actual damages, attorneys' fees, pre-judgment and post-judgment interest, court

costs; and such further relief at law and in equity to which Plaintiff may be entitled.

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By:    */s/ Steven A. Fleckman*
        Steven A. Fleckman

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 Pecan (78501)
P.O. Box 3725
McAllen, Texas 78502
956/682-5501 (telephone)
956/686-6109 (fax)

**Attorneys for Plaintiff and Counter-
Defendants**

Electronically Filed
12/20/2017 10:46 AM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on December 20, 2017.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

*/s/ Steven A. Fleckman*
Steven A. Fleckman

# Exhibit A

## JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
2135 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3339

TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
James Argyle McAllen, Jr.
P.O. Box 1139
Edinburg, Texas  78540-1139

     RE:    Contract of Employment Regarding Representation of James Argyle
          McAllen, Individually and James Argyle McAllen, Jr., Individually against
          Forest Oil Corporation and any other Responsible Entities.

Gentlemen:

     The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C., and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies relating to environmental contamination issues related arising from illegal dumping of hazardous materials and radioactive materials.

### DESCRIPTION OF SERVICES

     **1.**    **CLIENTS AND CLIENT REPRESENTATIVES:**  The firm is being retained to represent the following:

          1.    James A. McAllen, Individually

          2.    James A. McAllen, Jr., Individually

Page 2

**2.     PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.     LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.     NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.     TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

1.     Proper and expected behavior of counsel are described in the Creed.

2.     Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.     I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.     I will not pursue tactics which are intended primarily for delay.

5.     I will not pursue any course of action which is without merit.

6.     I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

Page 3

7.   You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.   **FEES**:  The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

7. **DETERMINATION OF FEES:**  The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows:  You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm.  The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages.  Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of James Argyle McAllen and James Argyle McAllen, Jr., in the event of an adverse verdict.

Page 4

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8.    **COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1)    Court costs;

2)    Citation and/or subpoena fees;

3)    Deposition fees, costs and expenses;

4)    Investigation fees, costs and expenses;

5)    Expert witness fees, costs and expenses;

6)    Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)    Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)    Long distance telephone charges, and conference calls expenses;

Page 5

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)   Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.**   **NOTICE TO CLIENTS:**   The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.**   **ARBITRATION:**   Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

**11.**   **LAW APPLICABLE AND VENUE:**   This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

**12.**   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**13.**   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

Page 6

14.    If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen and James Argyle McAllen, Jr.

_____
JAMES ARGYLE McALLEN,
INDIVIDUALLY

_____
JAMES ARGYLE McALLEN, JR.
INDIVIDUALLY

_____
Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
8135 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3838                                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

     RE:  Contract of Employment Regarding Representation of El Rucio Land and
          Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
          Partnership and John R. Willis Management Partnership Ltd., related to
          prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
          Conoco/Philips Inc.

Dear Mr. & Mrs. McAllen:

     The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

### DESCRIPTION OF SERVICES

    **1.**   **CLIENTS AND CLIENT REPRESENTATIVES:** The firm is being retained
to represent the following:

          1.   El Rucio Land and Cattle Company, Inc. – Representative –
              James A. McAllen

          2.   San Juanito Land Partnership Ltd. – Representative –
              James A. McAllen

          3.   McAllen Trust Partnership – Representative – James A.
              McAllen

JUN C. AMBERSON        Fax:2108263340        Jan 25 2005  16:09        P.04
965-886-9403

Page 2

    4.    John R. Willis Management Partnership Ltd. –
Representative – Frances W. McAllen

The representatives of the aforementioned entities are James A. McAllen and Frances W. McAllen.

**2. PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3. LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4. NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5. TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

    1.    Proper and expected behavior of counsel are described in the Creed.

    2.    Civility and courtesy are expected from lawyers and are not a sign of weakness.

    3.    I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

    4.    I will not pursue tactics which are intended primarily for delay.

Page 3

5. I will not pursue any course of action which is without merit.

6. I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7. You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6. **FEES:** The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

Page 4

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

**8.    COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation.   To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives.   These costs and expenses include, but are not limited to, the following:

1)    Court costs;

2)    Citation and/or subpoena fees;

3)    Deposition fees, costs and expenses;

Page 5

4) Investigation fees, costs and expenses;

5) Expert witness fees, costs and expenses;

6) Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7) Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8) Long distance telephone charges, and conference calls expenses;

9) Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10) Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

9. **NOTICE TO CLIENTS:** The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

10. **ARBITRATION:** Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1) Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Page 6

        11.    **LAW APPLICABLE AND VENUE:**  This Agreement and its performance
is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo
County, State of Texas.

        12.    You agree to make your Representatives available at all reasonable times
and places to assist our attorneys in their efforts and to appear at all depositions and
hearings required in the reasonable prosecution and defense of any cause of action in
your behalf.

        13.    You agree that the attorneys may withdraw upon your failure to perform
your duties or obligations contained in this agreement.

        14.    If the foregoing terms and conditions accurately summarize and confirm
your understanding of this engagement, please indicate your approval and acceptance
by dating and signing this agreement.

        SIGNED and AGREED, in multiple counterparts, by the firm and representatives
of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen
Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN                          FRANCES McALLEN
On Behalf of El Rucio Land and            On Behalf of John R. Willis Management,
Cattle Company, Inc., San Juanito         Partnership, Ltd.
Land Partnership, Ltd., and McAllen
Trust Partnerships


Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

Electronically Filed
12/20/2017 11:16 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| v. | § | |
| JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., AND MCALLEN TRUST PARTNERSHIP, | § | 92nd JUDICIAL DISTRICT |
| Defendants/Counterclaimants/ Third-Party Plaintiffs | § | |
| v. | § | |
| JON CHRISTIAN AMBERSON and AMBERSON NATURAL RESOURCES LLC, | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## BENCH BRIEF AS TO
## CLAIMS SUBJECT TO ARBITRATION

Plaintiff Jon Christian Amberson P.C. (the "***Amberson Firm***"), and Third-Party Defendants Jon Christian Amberson ("***Amberson***") and Amberson Natural Resources LLC ("***ANR LLC***") (collectively, the "***Amberson Parties***") submit this Bench Brief in support of their position that the McAllen Parties' "Cannon Grove" claims should not and cannot be referred to arbitration. The Amberson Parties incorporate by reference the Declaration of Jon Christian Amberson attached as **Exhibit A**, and the Supplemental Declaration of Jon Christian Amberson attached as **Exhibit B.**

Electronically Filed
12/20/2017 11:16 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## A.   ANR LLC Has No Agreement to Arbitrate with Any of the McAllen Parties.

1.      Arbitration in Texas is consensual.  A party seeking to compel arbitration must prove a valid agreement to arbitrate, and a refusal to comply with that agreement. TEX. CIV. PRAC. & REM. CODE § 171.021(a); *see also In re Merrill Lynch*, 235 S.W.3d 185, 192 (Tex. 2007) (arbitration "is a matter of consent, not coercion").  Absent such an agreement, "a party cannot be forced to forfeit the constitutional protections of the judicial system and submit its dispute to arbitration." *Jenkens & Gilchrist v. Riggs*, 87 S.W.3d 198, 201 (Tex. App.—Dallas 2002, no pet.); *see also Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 834 (Tex. App.— Houston [1st Dist.] 2002, no pet.) (granting mandamus relief when trial court ordered parties to arbitration who had not mutually consented to arbitrate under the TAA).  The question here is whether any Amberson Party has agreed to arbitrate claims related to the 2009 Cannon Grove transaction.

2.      The Engagement Agreement containing the arbitration provision is with the Amberson Firm.  The Cannon Grove transaction was instead with ANR LLC, which does not provide legal services, and has never agreed to arbitrate any dispute with any of the McAllen Parties, much less a fee dispute.  ANR LLC was not even formed until four years after the Engagement Agreement.  ANR LLC did not sign the Engagement Agreement.

3.      "Whether an arbitration agreement binds a *non-signatory* like ANR LLC is a gateway matter to be determined by the court, rather than the arbitrator." *Glassell Producing Co., Inc. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.).  Texas courts have held a non-signatory bound by an arbitration agreement only in the most limited circumstances. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).  None of those limited circumstances apply here.

Electronically Filed
12/20/2017 11:16 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

4.      A non-signatory can be required to arbitrate when it accepts benefits under an agreement that contains an arbitration clause. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134-35 (Tex. 2005).  ANR LLC has never sought or received benefits under the 2005 Engagement Agreement, it has never charged legal fees, and it has filed no claim under that agreement. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741 (despite prime contractor's agreement to arbitrate, subcontractor was held not required to arbitrate when its claim to payment stemmed from a separate contract containing no arbitration clause).  Accordingly, ANR LLC has not consented to, and is not a party to any agreement providing for, arbitration.

**B.      Claims Involving the "Cannon Grove" Transaction Fall Outside the Scope of the Arbitration Clause in the Engagement Agreement.**

5.      Moreover, a party seeking to compel arbitration has the burden to establish that the dispute falls ***within the scope*** of a valid arbitration commitment. *In re Houston Progressive Radiology Associates, PLLC*, 474 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2015, no pet.).  Because it involves contract interpretation, the scope of an arbitration clause is also a question of law for the court. *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  ***None*** of the Amberson Parties should be required to arbitrate the 2009 Cannon Grove transaction because that transaction does not fall within the scope of the 2005 engagement agreement and does not involve any fee dispute.

6.      Arbitration clauses run the gamut from "broad" to "narrow."  On the narrowest end of the spectrum, arbitration clauses that provide for arbitration of "all disputes arising out of the contract" (but omit phrases like "related to" or "in connection with" the contract) are held to be very limited in scope. *See Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898-99 (Tex. App.—Austin 2006, orig. proceeding); *see also Baudoin v. MidLouisiana Anesthesia Consultants, Inc.*, 306 F. App'x 188, 192 (5th Cir. 2009) (characterizing clause

providing for arbitration "arising out of" the agreement as a narrow clause); *Ikon Office Solutions v. Eifert*, 2 S.W.3d 688, 694 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (narrowly construing clause that applied to any "dispute arising out of the [agreement].").

7.    Paragraph 10 of the 2005 Engagement Agreement (p. 5) requires arbitration only in the narrowest of circumstances:

> "Any *fee dispute arising under this agreement and/or the services* rendered for you *by the firms* [sic] will be submitted to arbitration." (emphasis added).

The "services" referred to are specifically defined in paragraph 2, as follows:

> "...*legal services* in relation to *an action against Forest Oil Corporation, Conoco Inc.*, and any of their successors or predecessors in interest including affiliates and any other oil company that is *found to have violated state statutes and environmental laws and regulations on your properties*." (emphasis added).

Likewise, the "fee" referred to in the 2005 Engagement Agreement is specifically defined under paragraph 7 as "thirty-three and one-third percent (33 1/3 %) of such clients [sic] share of the gross recovery of 'damages'" obtained in *the Forest Oil litigation*.

8.    Because the 2005 Engagement Agreement's arbitration clause is narrow, it is strictly construed; therefore, the "Cannon Grove" claims "should not be referred to arbitration. . . unless the court determines that the dispute falls within the clause." *Baudoin*, 306 F. App'x at 192 (quoting *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993). [T]he strong policy in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the unambiguous meaning of the arbitration clause." *Osornia*, 367 S.W.3d at 712.

9.    Courts focus on the factual allegations (not the rhetoric of the claims asserted) to determine whether a dispute falls within the scope of the arbitration clause. *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011). The McAllen Parties' own factual admissions in its live pleading

Electronically Filed
12/20/2017 11:16 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

reveal that the "Cannon Grove" dispute involves ANR LLC's 2009 acquisition of an interest in a real estate company, Cannon Grove, LLC, which has nothing to do with either the Forest Oil litigation that was the subject of the 2005 Engagement Agreement, or the Amberson Firm's rendition of legal services in that litigation:

- "AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR conspired together to falsely treat the MCALLEN *loan as a gift* and keep the 90% interest in Cannon Grove." ¶ III(B) (emphasis added).

- "AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR perpetrated this fraud because they knew that even if they were forced to *repay the loan*, they had the funds to repay the loan." ¶ III(B) (emphasis added).

- "MCALLEN requests a declaration that funds MCALLEN provided AMBERSON and ANR *to purchase an interest in Cannon Grove was not a gift but, rather, was a loan* for which AMBERSON and ANR are still liable." ¶ IV (K) (emphasis added).

10.    Moreover, any contention that either Amberson or the Amberson Firm owed the McAllen Parties a fiduciary duty in the "Cannon Grove" transaction is contrary to Texas law. A law firm's fiduciary duties to a client extend only to matters within the scope of representation. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150 (Tex. 2004) (law firm's duty to firm client of adverse city-council vote was beyond scope of attorney's representation); *see also* Restatement (Third) of the Law Governing Lawyers § 16 cmt. c; § 50 cmt. d (lawyer's duties are limited to matters covered by the representation). The 2005 Engagement Agreement expressly defines the scope of the Amberson Firm's engagement as involving the legal services provided in the Forest Oil litigation. Moreover, James McAllen was represented by three separate law firms in the Cannon Grove transaction. None of them included the Amberson Firm or Amberson. Neither Amberson nor the Amberson Firm owed or assumed fiduciary duties to the McAllen Parties in the 2009 "Cannon Grove" transaction.

Electronically Filed
12/20/2017 11:16 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

11.    In sum, (i) ANR LLC never agreed to arbitrate any dispute with the McAllen Parties, and the limited exceptions to the rule that there must be a valid agreement to arbitrate do not apply to ANR LLC.  (ii) The 2005 Engagement Agreement contains a narrow arbitration clause that only embraces disputes concerning the legal fees and services rendered by the Amberson Firm in the Forest Oil litigation.  The 2009 "Cannon Grove" transaction had nothing to do with the 2005 engagement, or the services performed in the Forest Oil Litigation. *See Perlstein v. D. Steller 3, Ltd.*, 109 S.W.3d 36 (Tex. App.—Corpus Christi 2003, pet. denied) (denying arbitration as to fraudulent inducement claim because it was outside the scope of arbitration agreement); *Loy v. Harter*, 128 S.W.3d 397, 405 (Tex. App.—Texarkana 2004, pet. denied) (denying arbitration as to tort claim for breach of fiduciary duty because it was not covered by arbitration provision in employment agreement).

12.    Accordingly, the McAllen Parties have not met their burden to prove that they are legally entitled to arbitration of any claims related to Cannon Grove, and the Court should retain those claims for subsequent judicial disposition.

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
     Steven A. Fleckman

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on December 20, 2017.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

*/s/ Steven A. Fleckman*
Steven A. Fleckman

# Exhibit A

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF JON CHRISTIAN AMBERSON

Jon Christian Amberson declares as follows:

1.     I am over the age of 18 years, competent to testify, and declare under penalty of perjury that, to my personal knowledge, the facts stated below are true and correct.

2.     I submit this declaration in support of the Amberson Parties' (i) Motion for Partial Summary Judgment as to the "Cannon Grove" Claims and (ii) Motion to Retain the Cannon Grove Claims for Disposition by the Court.

### A. The Forest Oil Litigation, the Legal Fee Issue, and the Arbitration Agreement

3.     I am an attorney and the principal of Plaintiff Jon Christian Amberson P.C. (the "*Amberson Firm*"). Starting in late 2004, James McAllen ("*Mr. McAllen*") and the other

Defendants (collectively, the "*McAllen Parties*") engaged my law firm (the "*Amberson Firm*") to represent them in lawsuits against Forest Oil Company for environmental contamination of the McAllen Ranch and personal injury to Mr. McAllen (the "*Forest Oil Litigation*").

4.      Mr. McAllen and the other McAllen Parties executed engagement letters with the Amberson Firm relating to the Forest Oil Litigation (collectively, the "*Engagement Agreement*"). The Engagement Agreement provided for arbitration of any fee dispute. True and correct copies of my firm's engagement letters are attached hereto as **Exhibit 1**.

5.      For twelve years the Amberson Firm represented the McAllen Parties in the Forest Oil Litigation. Those twelve years of work culminated in an arbitration award in 2012 (the "*Award*") in favor of the McAllen Parties against Forest Oil for approximately $22,781,000 plus accrued interest of about $5,695,000, or a total of more than $28,476,000. A true and correct copy of the Award is attached hereto as **Exhibit 2**. Over contentious challenges by one of the most prominent litigation firms in the state (the Susman Godfrey firm) that Award was sustained in the district court, in the court of appeals, and subsequently on two separate occasions in the Texas Supreme Court. A true and correct copy of the district court's final judgment affirming the Award is attached hereto as **Exhibit 3**. Included in this Award and judgment, the McAllen Parties were granted more than $6,700,000 in attorneys' fees. The Texas Supreme Court upheld the Award in an opinion issued on April 28, 2017. *Forest Oil Corp. v. El Lucio Land & Cattle Co.*, 518 S.W.3d 422 (Tex. 2017), and subsequently issued its mandate enforcing judgment on the Award. A true and correct copy of the Texas Supreme Court's mandate is attached as **Exhibit 4**. **Exhibit 5** is a true and correct copy of a motion subsequently filed by Forest Oil in the district court indicating that the McAllen Parties have now received in cash (and/or partially in securities), the monetary damages awarded to them.

6.      In addition to the monetary recovery, as part of the Award my firm (working in concert with our expert witnesses) helped secure additional relief against Forest Oil requiring it to remediate its extensive contamination of the McAllen Ranch, including scattered radioactive material and other toxic substances. It is expected that the value of this clean-up remedy will, over time, substantially *exceed* the McAllen Parties' $28 million monetary recovery (although, assuming the contingency fee agreement is enforced, my firm is only seeking its 1/3 share of the monetary award).

7.      The Amberson Firm has therefore brought this action to compel the McAllen Parties to arbitrate my firm's claim for payment of the legal fees remaining due in accordance with the arbitration provision in the Engagement Agreement. In the alternative, my firm has pleaded for a *quantum meruit* fee determination based on the value of the entire Award, inclusive of the environmental remediation relief.

**B. The 2009 Cannon Grove Transaction**

8.      Prior to 2009 Mr. McAllen owned real property in Edinburg, Texas known as the "Cannon Grove" property (the "*CG Property*"). In 2008 he deeded the CG Property to his Texas limited liability company, which he subsequently re-named Cannon Grove Investments, LLC (the "*CGI LLC*"). True and correct copies of Mr. McAllen's 2008 deed and the Texas Secretary of State's record of the grantee's name change to Canon Grove Investments, LLC are respectively attached as **Exhibits 6 and 7**.

9.      In 2009 I was still married to Mr. McAllen's daughter. My three children are Mr. McAllen's grandchildren. Ben McCaleb, a San Antonio attorney representing Mr. McAllen, related to me that Mr. McAllen wanted to undertake a tax free exchange transaction, and he wanted me to act as a counter-party in that transaction.

10.     Through his attorney Mr. McCaleb, Mr. McAllen proposed an arrangement by which he would loan $4.5 million to enable a company (to be owned by me) to purchase a 90 percent interest in CGI LLC so that Mr. McAllen could defer his income taxes to the IRS.  In addition to Mr. McAllen's tax accountant, Alan Lucke, at least two attorneys were advising and representing Mr. McAllen in this transaction: (i) Mr. McCaleb and (ii) Richard Leshin, a tax attorney in Corpus Christi.  Documents I have subsequently received reflect that he was also advised by a tax attorney with the Philadelphia Drinker Biddle firm. *See* **Exhibit 8** attached. Neither I nor my firm represented Mr. McAllen or CGI LLC in this transaction.

11.     I took Mr. McAllen's proposal to my tax accountant for review and advice.  After that review, I decided that I could not receive the funds as a "loan" with strings attached, and that it should be an arms-length arrangement.  On March 11, 2009 I wrote a letter to Mr. McAllen to explain my concern that I did not want my wife and me to be exposed to any risk of potential tax fraud issues, and to clarify what I could do (and would not do) in connection with the purchase of equity in his company, CGI LLC.  A true and correct copy of that letter is attached hereto as **Exhibit 9**.  My letter made it clear to Mr. McAllen that, based on the tax advice I had received, I would not agree to his proposal to treat the $4.5 million transfer as a "loan," and that if he chose to involve me in the transaction, his transfer of the $4.5 million would have to be an outright gift; only then would I feel comfortable using the funds to purchase the CGI LLC interest.

12.     Seven days later, about March 18, 2009, Mr. McAllen proceeded with the transaction, transferring $4.5 million to a new limited liability company owned by me, Amberson Natural Resources LLC ("*ANR LLC*"). A copy of the wiring instructions is attached as **Exhibit 10**. Consistent with my letter, ANR LLC then purchased a 90 percent interest in CGI LLC from Mr. McAllen, using Mr. McAllen's gifted funds in the amount of $4.5 million.  Thus, Mr.

McAllen sold me 90 percent of CGI LLC, and as the purchase price I paid him $4.5 million at the time of the Cannon Grove transaction.

13.     Consistent with my letter insisting that any transfer be a gift and not a loan, Mr. McAllen did not send me (or any firm that I own) any loan agreement or promissory note to sign. Neither did any of his three law firms. Neither I (nor any firm that I own) signed any instrument at any time reflecting any loan from Mr. McAllen related to the Cannon Grove transaction. Indeed, Mr. McAllen never made any demand as to any alleged loan until after my 2013 divorce from his daughter was complete, in which I was awarded all rights in ANR LLC (the company that owns the CGI LLC interest)—at least five years after the Cannon Grove transaction.

14.     My company, ANR LLC, is not part of the Amberson Firm. It is not engaged in the practice of law. It never represented the McAllen Parties at any time in the practice of law. It has never appeared as counsel before the bar of any court, nor could it. It never acted for the McAllen Parties in connection with the Forest Oil Litigation. It never entered into any arbitration agreement with the McAllen Parties. It is not a party to any engagement agreement with the McAllen Parties. It has not sought any benefits under the Engagement Agreement or any other arbitration agreement. It has never charged legal fees to the McAllen Parties. It is not a plaintiff in this case, and has not asserted any claim against the McAllen Parties of any nature, for legal fees or otherwise.

15.     The Amberson Firm's petition in this action solely seeks arbitration of its claim to recover the fees it has earned for the legal work performed on behalf of the McAllen Parties in the Forest Oil Litigation. My law firm's petition does not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. The Forest Oil Litigation did not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. ANR LLC is not a plaintiff in my law firm's petition. I never

represented Mr. McAllen with respect to the Cannon Grove transaction, nor did my law firm. As noted above, Mr. McAllen was separately represented and advised in the Cannon Grove transaction by three other law firms. Neither the CG Property nor the CGI LLC was the subject of any engagement agreement at any time with me or with the Amberson Firm. Neither I nor the Amberson Firm has ever charged legal fees to CGI LLC.

16. Moreover, the CG Property is unrelated to and geographically separate from the McAllen Ranch. The CG Property was not involved in the Forest Oil Litigation; it was not involved in the underlying arbitration with Forest Oil. The CG Property was never leased to Forest Oil Company.

17. In response to my firm's petition to compel arbitration for recovery of its legal fees in the Forest Oil Litigation, the McAllen Parties filed their Original Answer, Counterclaim, and Claims Against Third Parties on September 25, 2017. The McAllen Parties' counterclaim and third party claims involving the Cannon Grove transaction were not filed until more than eight years after the Cannon Grove transaction was concluded.

18. I submit this Declaration in lieu of an affidavit as authorized by TEX. CIV. PRAC. & REM. CODE § 132.001. In accordance with the statute, I state that my date of birth is 12/24/1956 and my current address is 2135 East Hildebrand, San Antonio, Tx. 78209 Executed in Bexar County, Texas on October 27, 2017.

Jon Christian Amberson

# EXHIBIT 1

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3339

TELECOPIER (210) 826-3340

December 10, 2004

Mr. James A. McAllen
Mrs. Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

  RE: <u>Forest Oil Corporation</u>

Dear Mr. & Mrs. McAllen:

  The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C. and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil corporation relating to environmental contamination issues arising from the actions of Forest Oil Corporation and its employees as relayed to you by Mr. Bobby Pearson, a former employee of Forest Oil Corporation.

<u>DESCRIPTION OF SERVICES</u>

  **1.** **CLIENTS AND CLIENT REPRESENTATIVES**: The firm is being retained to represent the following:

   (1) James Argyle McAllen, Individually.

   (2) El Rucio Land and Cattle Company, Inc. - Representative - James A. McAllen.

   (3) San Juanito Land Partnership, Ltd. - Representative James A. McAllen.

-1-

(4)   McAllen Trust Partnership - Representative - James A. McAllen.

(5)   John R. Willis Management Partnership, Ltd., - Representative - James A. McAllen.

The representative of the aforementioned entities is James A. McAllen.

**2.   PURPOSE OF REPRESENTATION:** It is understood that our firm is being retained by you to provide legal services in relation to the action against Forest Oil Corporation, and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated the June 22, 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-2016-95-G, state statutes, environmental laws and state regulations on your properties.

**3.   LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.   NO GUARANTEE OR INDUCEMENTS:** It is understood that the law firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.   TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

-2-

1.  Proper and expected behavior of counsel are described in the Creed.

2.  Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.  I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.  I will not pursue tactics which are intended primarily for delay.

5.  I will not pursue any course of action which is without merit.

6.  I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7.  You are advised that mediation, arbitration and other alternative methods of resolving and settling disputes are available to you to resolve disputes with opposing parties.

6.  **FEES:** The nature, character and amount of fees charged by us are determined in accordance Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

(1)  the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

(2)  the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

(3)  the fee customarily charged in this locality for similar legal services;

(4)  the amount involved and the results obtained;

(5)   the time limitations imposed by you or by the circumstances of our engagement;

(6)   the nature and length of our professional relationship with you;

(7)   the experience, reputations and ability of the lawyer or lawyers performing the services; and,

(8)   whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

7.   **BILLINGS:** You understand that billings will be furnished to you periodically, based upon the frequency and amount of activity required to be expended necessarily and reasonably in your behalf. You agree to promptly pay within fifteen (15) days of any statement rendered to you all sums due and owing.

8.   **FIXED HOURLY RATES:** The following schedule of fixed hourly rates will apply to your case.

| LAWYER/ASSOCIATE/LEGAL ASSISTANT | RATE |
|---|---|
| A.   Lawyer, Jon Christian Amberson | $350.00 per hour |
| B.   Lawyer, Larissa J. Hood | $250.00 per hour |
| C.   Legal Assistant/Paralegal | $60.00 per hour |

Any services performed after January 1, 2005, will be charged at regular hourly rates then in effect. It is understood that other personnel of the law firm may perform services in this matter, and the rates set forth above shall apply to all attorneys, associates or legal assistants of equivalent experience. The total fees are sometimes raised from what the hourly rates would generate, based on the complexity and size of the transaction, as well as the attainment of superior results. We discuss all such increases with our clients, and are confident that you will find them appropriate should we conclude such an increase is fair. You will be charged for travel time in connection with our representation and time spent in travel will be billed for attorney's time at one half the attorney's usual hourly fixed rate. We will submit monthly fee statements to you

which will contain statement for fees plus cost and expenses incurred on behalf of the clients as hereinafter provided for. It is agreed that any fees and/or expenses due under this letter are due upon receipt for the statement for such fees and/or expenses. Fees will be subject to a final adjustment depending upon results obtained in light of efforts expended on your behalf.

9.   **ATTORNEY IN CHARGE:** It is understood and agreed that Jon Christian Amberson is the attorney in charge of your representation. He is the only attorney in the law firm who will work on your case unless, in his sole discretion, he decides to consult with and seek the assistance of other members of the firm. It is further understood that he may need to seek the assistance of other lawyers outside the firm and in that event will endeavor to seek qualified attorneys who charge fees at rates that are reasonable under the circumstances in the event any defendant refuses to take responsibility for the actions outlined by Bobby Pearson, the whistleblower in this matter. We are hoping that the responsible party for these actions takes responsibility early on and identifies the areas of concern and remediates the problem areas on the ranch and compensates you for your out of pocket expenses in dealing with this most unfortunate matter. If not, then this will require my firm to hire outside counsel to prosecute this matter fully and completely.

10.   **COURT AWARDED ATTORNEY'S FEES:** In the event that the court may, in its discretion, award a sum as attorney's fees, should the amount of attorney's fees awarded exceed the fees you have paid, we shall be entitled to an additional sum in the amount of the difference between the fees received from you and the fees awarded. The court's failure to award you attorney's fees shall not otherwise affect the fees to be paid our firm under this agreement.

11.   **COSTS AND EXPENSES:** In addition to the professional fees charged by the law firm, you will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representative and obtain approval for major expenses in advance, which approval shall be given by the Representative. These costs and expenses include, but are not limited to the following:

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firm advances such sums, then you agree to reimburse the firm for all sums so paid.

**12. DISCUSSION OF ESTIMATES OF FEES:** During the course of the attorney's discussion with you about handling this matter, the attorneys may have provided you with certain estimates of the magnitude of the fees and expenses that will be required at

-6-

certain stages of this litigation. It is the law firm's policy to advise all its clients that such estimates are just that, and that the fees and expenses required are ultimately a function of many conditions over which the attorneys have little or no control, particularly the extent to which the opposition files pretrial motions and engages in its own discovery. The reason why the attorneys submit bills to clients on a monthly basis shortly after the services are rendered is so the clients will have a ready means of monitoring and controlling the expenses they are incurring. If the clients believe the expenses are mounting too rapidly, the clients agree to contact the attorneys immediately so they can assist in evaluating how expenses might be curtailed in the future. When the attorneys do not hear from the clients, they may assume that the clients approve of the overall level of activity on their part in this case on the clients behalf.

**13. OVERTIME FOR CLERICAL HELP:** The clients understand that from time to time, the attorneys may be called upon to render legal services in the clients' behalf during evenings, weekends and on other holidays in order to meet time schedules or other emergency situations as they may arise. In such an event, the clients agree to reimburse the firm for any additional expenses incurred by them by way of overtime or additional temporary help such as Manpower or other temporary services.

**14. NOTICE TO CLIENTS:** The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**15. ARBITRATION:** Any fee dispute arising under this agreement and/or the services rendered for you by our firm will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non appealable. The arbitrator will be selected as follows:

(1) Arbitration will be determined by a retired district judge who has previously served on any of the Bexar County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Bexar County, Texas.

16. **LAW APPLICABLE AND VENUE:** This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Bexar County, State of Texas.

17. You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

18. You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

19. If the foregoing terms and conditions accurately summarize and confirm your understanding of our engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED, and AGREED, in multiple counterparts, by the firm and James Argyle McAllen, Individually, and representative of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

_____
JAMES A. McALLEN, Individually

_____
JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., McAllen
Trust Partnerships and John R. Willis
Management Partnership, Ltd.

-8-

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Ave.
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 - Facsimile

JON C. ANDERSON          FAX:2100205540          965-686-9403          p.3

## JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

8105 EAST HILDEBRAND AVE,

SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3838                                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

RE:   Contract of Employment Regarding Representation of El Rucio Land and
      Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
      Partnership and John R. Willis Management Partnership Ltd., related to
      prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
      Conoco/Phillips Inc.

Dear Mr. & Mrs. McAllen:

    The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

### DESCRIPTION OF SERVICES

    1.    **CLIENTS AND CLIENT REPRESENTATIVES:**  The firm is being retained
to represent the following:

        1.    El Rucio Land and Cattle Company, Inc. – Representative –
              James A. McAllen

        2.    San Juanito Land Partnership Ltd. – Representative –
              James A. McAllen

        3.    McAllen Trust Partnership – Representative – James A.
              McAllen

Page 2

4.     John R. Willis Management Partnership Ltd. –
Representative – Frances W. McAllen

The representatives of the aforementioned entities are James A.
McAllen and Frances W. McAllen.

**2.    PURPOSE OF REPRESENTATION:** It is understood that the firm is
being retained by you to provide legal services in relation to an action against Forest Oil
Corporation, Conoco Inc., and any of their successors or predecessors in interest
including affiliates and any other oil company that is found to have violated state
statutes and environmental laws and regulations on your properties.

**3.    LEGAL REPRESENTATION:** Our legal representation is limited to this
matter and we have not been retained to represent you generally or in connection with
any other matter unless it has been confirmed by separate letter.  Generally, we are to
perform all services and take all such action in the described matters as may be
appropriate and necessary in our discretion and serve as your counsel in furtherance of
your interests.

**4.    NO GUARANTEE OR INDUCEMENTS:**  It is understood that the firm
cannot and does not guarantee the outcome or results of any litigation.  We cannot and
do not make any warranties, express or implied, with regard to our representation
except that our representation will be in compliance with the Code of Professional
Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is
further understood that the firm has made no representations, inducements or
warranties to you in order to induce you to employ our services.

**5.    TEXAS LAWYER'S CREED:** I am required to advise you of the existence
of and our obligations under the Texas Lawyer's Creed.  A copy of the Creed is
enclosed along with this letter.  Pursuant to the Creed, we advise you that:

1.     Proper and expected behavior of counsel are described in the
Creed.

2.     Civility and courtesy are expected from lawyers and are not a sign
of weakness.

3.     I will not pursue conduct which is intended primarily to harass or
drain the financial resources of the opposing party.

4.     I will not pursue tactics which are intended primarily for delay.

Page 3

5. I will not pursue any course of action which is without merit.

6. I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7. You are advised that mediation, arbitration and other alternative methods of resolving and settling disputes are available to you to resolve disputes with opposing parties.

6. FEES: The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

JUN 6. ANDERSON       FAX:21002D0J4U       965-686-9403       Jen 29 2003 10.03       P.6
P.6

Page 4

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

**8. COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

Page 5

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.     NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.    ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Page 6

11.   **LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

12.   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

13.   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

14.   If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and representatives of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., and McAllen
Trust Partnerships

FRANCES McALLEN
On Behalf of John R. Willis Management,
Partnership, Ltd.

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

# EXHIBIT 2

CAUSE NO. 2005-23091

EL RUCIO LAND AND CATTLE,           §
COMPANY, INC., SAN JUANITO          §
LAND PARTNERSHIP, LTD.,             §
MCALLEN TRUST PARTNERSHIP,          §
and JAMES ARGYLE MCALLEN,           §        ARBITRATION BEFORE
                                    §        THE HONORABLE DARYL K.
                                    §        BRISTOW, CLAYTON J. HOOVER,
          Claimants,                §        AND DONATO D. RAMOS
                                    §
VS.                                 §
                                    §
                                    §
FOREST OIL CORPORATION AND          §
DANIEL B. WORDEN,                   §
                                    §
          Respondents.              §

## FINAL JUDGMENT AND DECISION OF THE PANEL

After considering the testimony and evidence offered by the parties and admitted during the arbitration hearing, the Panel makes the following findings of fact and conclusions of law and enters judgment as herein provided.   Any findings of fact that are more properly conclusions of law should be so construed.   Conversely, any conclusions of law that are more properly findings of fact should be so construed.

## FINDINGS OF THE PANEL

1.   El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen (collectively the "Claimants") are the owners in fee of certain ranchlands in Hidalgo County, Texas, known as El Rucio, San Juanito, and Tres Corrales ranches, collectively known as the McAllen Ranch.

Page 1

2804

2.      Respondent Forest Oil Corporation leases mineral rights on approximately 3,000 acres of the McAllen Ranch; the Forest leases cover approximately 1,500 acres out of the San Juanito Ranch.

3.      Forest Oil Corporation built and still operates a natural gas plant on approximately 5.75 acres of the McAllen Ranch.

4.      Respondent Daniel B. Worden has been, and continues to be, an employee of Forest Oil, who works at the McAllen Ranch.  However, we make no findings of liability with respect to Mr. Worden and hereby exclude him from the remainder of this decision.  It is therefore Ordered, Adjudged and Decreed that claimants take nothing from Defendant Daniel B. Worden.

## DECISIONS OF THE PANEL

5.      The Panel hereby Orders, Adjudges and Decrees that Claimants are the prevailing parties in this matter and that Claimants El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership are entitled to actual damages in the amount of $15,000,000 collectively. The Panel further hereby Orders, Adjudges and Decrees that Mr. James Argyle McAllen, Individually, is entitled to actual damages of $500,000.

6.      The Panel hereby Orders, Adjudges and Decrees that Claimants have met their burden of proof as required by law for their claims of exemplary damages and hereby awards exemplary damages to Claimants in the total amount of $500,000.

7.      The Panel hereby Orders, Adjudges and Decrees that Claimants are entitled to declaratory relief as requested regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement and hereby Orders, Adjudges and Decrees that:

> a.      Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

2805

b.  Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c.  Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d.  Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

8.  It is further Ordered, Adjudged and Decreed that Forest Oil shall provide assurance to Claimants for its performance of the continuing obligations imposed on Forest under the Surface Agreement by posting and delivering a bond to Claimants in the amount of $10,000,000, which bond shall be posted and valid and subsisting during the period of time concurrent with the term of the Surface Agreement.  Such bond shall be made payable to Claimants in the event of Forest Oil's failure or refusal to comply with this panel's judgment and/or Forest's continuing obligations under the Surface Agreement.

## AWARD OF ATTORNEYS' FEES

9.  The Panel makes the following findings as to attorneys' fees:

a.  Although the Panel finds that Claimants are the prevailing parties in this arbitration proceeding, the Panel also finds that Forest Oil is entitled to a credit for attorneys' fees required to determine the applicability of the parties' contractual arbitration agreement in the amount of $352,000;

b.  Through the date of the arbitration hearing, the Panel finds Claimants had incurred reasonable and necessary attorneys' fees and expenses amounting to $5,389,374; and

c.  Claimants continued to incur reasonable and necessary attorneys' fees and expenses through the arbitration hearing and in the course of preparing post-hearing briefing and proposed findings of fact and conclusions of law at the request of the Panel, which fees and expenses shall be submitted by Claimants to the Panel for final confirmation.

10.    The Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil their reasonable attorneys' fees and expenses in the amount of $5,017,374 ($5,369,374.00 less $352,000.00), plus any fees submitted and confirmed by the Panel pursuant hereto.

The Panel's decision and award, including all findings of fact and conclusions of law, are final and binding.

Panel Member Bristow does not join in this decision and dissents.

SIGNED on this 29th day of February, 2012.

BY THE MEMBERS OF THE PANEL:

_____    _____    _____
CLAYTON J. HOOVER, CHAIR      DONATO D. RAMOS          (DISSENTING)
                                                       DARYL K. BRISTOW

Page 4

2807

CAUSE NO. 2005-23091

EL RUCIO LAND AND CATTLE, §
COMPANY, INC., SAN JUANITO §
LAND PARTNERSHIP, LTD., §
MCALLEN TRUST PARTNERSHIP, §
and JAMES ARGYLE MCALLEN, §                ARBITRATION BEFORE
§                                          THE HONORABLE DARYL K.
        Claimants, §                       BRISTOW, CLAYTON J. HOOVER,
§                                          AND DONATO D. RAMOS
§
VS. §
§
§
FOREST OIL CORPORATION AND §
DANIEL B. WORDEN, §
§
        Respondents. §
§
§

### ATTORNEYS FEES  AWARDED IN SECTIONS 9 AND 10 OF FINAL JUDGMENT AND DECISION OF THE PANEL

Pursuant to Sections 9 and 10 of the Final Judgment and Decision of the Panel dated February 29, 2012, and after considering the additional evidence requested by the Panel as to attorneys fees and expenses incurred by Claimants prior to and during the arbitration hearing and for post-hearing submissions, the Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil as attorneys' fees and expenses incurred prior to and during the arbitration hearing and for post-hearing submissions the amount of $1,764,428.

**Panel Member Bristow does not join in this decision and dissents.**

**SIGNED on this 9th day of September, 2012.**

BY THE MEMBERS OF THE PANEL:

_____/s/ Clayton J. Hoover_____      _/s/ Donato D. Ramos_      _____(DISSENTING)_____
**CLAYTON J. HOOVER, CHAIR**      **DONATO D. RAMOS**      **DARYL K. BRISTOW**

# EXHIBIT 3

Filed 12 October 3 P4:25
Chris Daniel - District Clerk
Harris County
ED101J017111638
By: deandra mosley

NO. 2005-23091

| | | |
|---|---|---|
| FOREST OIL CORPORATION AND DANIEL B. WORDEN,<br>Plaintiffs, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| V. | §<br>§ | |
| EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., McALLEN TRUST PARTNERSHIP,<br>Defendants and Counter-Plaintiffs, | §<br>§<br>§<br>§<br>§ | HARRIS   COUNTY,   TEXAS |
| and | §<br>§ | |
| JAMES ARGYLE McALLEN,<br>Intervenor. | §<br>§ | 55TH   JUDICIAL   DISTRICT |

*P8*

*ARBIX*

*181B*

## FINAL JUDGMENT

Plaintiffs are Forest Oil Corporation and Daniel B. Worden.  Defendants and Counter-Plaintiffs are El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership.  Intervenor is James Argyle McAllen.

This case was arbitrated.  Defendants and Intervenor were the Claimants in the arbitration proceeding.  A majority of the arbitration panel issued the Final Judgment and Decision of the Panel on February 29, 2012 ("the February 29 Arbitration Award").  The February 29 Arbitration Award awarded Defendants and Counter-Plaintiffs El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership, and Intervenor James Argyle McAllen (collectively "Claimants") relief in the form of damages, declaratory relief, and attorneys' fees against Forest Oil Corporation.  The February 29 Arbitration Award also specifically indicated in paragraphs 9(c) and 10 of the Award that additional attorneys' fees would be added to the Award and directed Claimants to submit the additional fees to the panel for confirmation.  On September 9, 2012, a majority of the arbitration panel issued its Attorneys

24115

Fees Awarded in Sections 9 and 10 of Final Judgment and Decision of the Panel, and the Chairman of the Arbitration Panel sent an email to all parties clarifying that Award that same day (collectively "the September 9 Arbitration Award"). The September 9 Arbitration Award awarded Claimants the additional attorneys' fees that were expressly contemplated in the February 29 Arbitration Award.

Claimants filed a motion to confirm the February 29 Arbitration Award, and Forest Oil Corporation filed a motion to vacate it. The Court held an oral hearing on the motions and confirmed the February 29 Arbitration Award in all respects except where it vacated the bond requirement securing the performance of Forest Oil Corporation's obligations under the 1999 Surface Agreement.

The Court incorporates by reference, for all purposes, the February 29 Arbitration Award, the September 9 Arbitration Award, the Court's September 18, 2012 Order on Forest's Motion to Vacate the Arbitration Panel's Unreasoned 2-1 Award, and all of the Court's other prior rulings. The Court has determined that based on the February 29 Arbitration Award and the September 9 Arbitration Award Claimants are entitled to judgment against Forest Oil Corporation as follows:

1. Actual damages in the amount of $15,000,000 to El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership

2. Actual damages of $500,000 to James Argyle McAllen, individually

3. Exemplary damages to Claimants in the total amount of $500,000

4. Attorneys' fees and expenses in the amount of $5,017,374 to Claimants

5. Additional attorneys' fees and expenses in the amount of $1,764,428 to Claimants

6. Declaratory relief as requested regarding Claimants' rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement as follows:

24116

a.  Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

b.  Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c.  Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d.  Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

It is therefore,

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is vacated with respect to the requirement that Forest Oil Corporation post a bond.  It is further

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is confirmed in all respects other than the requirement that Forest Oil Corporation post a bond.  It is further

24117

ORDERED, ADJUDGED, and DECREED that the September 9 Arbitration Award is confirmed in all respects. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for actual damages in the amount of $15,000,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, individually, have and recover judgment for actual damages of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for exemplary damages in the total amount of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for attorneys' fees and expenses amounting to $6,781,802 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that Claimants are entitled to declaratory relief regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement, and it is ORDERED, ADJUDGED, and DECREED that:

      a. Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

24118

b. Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c. Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d. Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen take nothing on their claims against Daniel B. Worden. It is further

ORDERED, ADJUDGED, and DECREED that this judgment shall bear post-judgment interested from the date it is signed until satisfaction or payment at the rate of 5% compounded annually.

The clerk is directed to issue all writs necessary for execution of this judgment.

All relief not expressly granted herein is denied. This judgment finally disposes of all

24119

claims and all parties and is appealable.

Signed this ___9___ day of ___Oct___ 2012.

_____
JUDGE PRESIDING

24120

EXHIBIT 4

FILE COPY

# IN THE SUPREME COURT OF TEXAS

## NO. 14-0979

FOREST OIL CORPORATION, NOW KNOWN AS SABINE OIL & GAS CORPORATION, Petitioner

v.

EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP, AND JAMES ARGYLE MCALLEN, Respondents

## **MANDATE**

**To the Trial Court of Harris County, Greetings:**

Before our Supreme Court on April 28, 2017, the Cause, upon petition for review, to revise or reverse your Judgment.

No. **14-0979** in the Supreme Court of Texas

No. **01-13-00040-CV** in the **First** Court of Appeals

No. **2005-23091** in the **55th District Court** of **Harris** County, Texas, was determined; and therein our said Supreme Court entered its judgment or order in these words:

THE SUPREME COURT OF TEXAS, having heard this cause on petition for review from the Court of Appeals for the First District, and having considered the appellate record, briefs, and counsel's argument, concludes that the court of appeals' judgment should be affirmed.

IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:

1)    The court of appeals' judgment is affirmed;

2)    Respondents El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen shall recover, and petitioner Forest Oil Corporation, now known as Sabine Oil & Gas Corporation, shall pay, the costs incurred in this Court.

Copies of this judgment and the Court's opinion are certified to the Court of Appeals for the  First District and to the District Court of Harris County, Texas, for observance.

FILE COPY

**Wherefore we command you** to observe the order of our said Supreme Court in this behalf, and in all things to have recognized, obeyed, and executed.

BY ORDER OF THE SUPREME COURT OF THE STATE OF TEXAS,

with the seal thereof annexed, at the City of Austin, this the 9th day of June, 2017.

Blake A. Hawthorne, Clerk

By Monica Zamarripa, Deputy Clerk

# EXHIBIT 5

CAUSE NO. 2005-23091

| | | |
|---|---|---|
| Forest Oil Corporation | § | In the District Court |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Harris County, Texas |
| | § | |
| El Rucio Land and Cattle | § | |
| Company, Inc., San Juanito Land | § | |
| Partnership, Ltd., McAllen Trust | § | |
| Partnership, | § | |
| | § | |
| Defendants and Counter-Plaintiffs, | § | |
| | § | |
| and | § | |
| | § | |
| James Argyle McAllen, | § | |
| | § | |
| Intervenor. | § | 55th Judicial District Court |

### Plaintiff's Unopposed Motion to Release Supersedeas Bond

Plaintiff Forest Oil Corporation ("Forest") files this motion to release supersedeas bond. Defendants and Intervenor do not oppose this motion.

On January 14, 2013, the District Clerk approved the Supersedeas Bond ("Bond") filed by Forest, a true and correct copy of which is attached as Exhibit A. The Bond amount is $25 million. The surety's liability under the Bond is conditional: "The condition of this obligation is such that if the Principal shall diligently prosecute its appeal to a decision, and shall promptly perform and satisfy the judgment, then this obligation will be void; otherwise to remain in full force and effect."

The appeal of this case is now concluded. The issuer of the bond, Arch Insurance Company, has paid defendants and intervenor $25 million, the full amount of the bond. And by agreement with defendants and intervenor, the remainder of the judgment will be satisfied within the month by the distribution of stock and warrants in the reorganized successor to Forest.

Because the entire amount of the judgment made final on appeal will be satisfied, and because the supersedeas bond amount has been exhausted, the supersedeas bond should be released.

Forest requests that the Court order the District Clerk to immediately release and return the original supersedeas bond to its attorney, Johnny W. Carter, Susman Godfrey L.L.P., 1000 Louisiana St., Ste. 5100, Houston, TX 77002.

Respectfully submitted,

By: /s/ Johnny W. Carter
Geoffrey L. Harrison
gharrison@susmangodfrey.com
State Bar No. 00785947
Johnny W. Carter
jcarter@susmangodfrey.com
State Bar No. 00796312
Richard W. Hess
rhess@susmangodfrey.com
State Bar No. 24046070
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Telecopy: (713) 654-6666

*Attorneys for Forest Oil Corporation*

### Certificate of Conference

Johnny Carter, counsel for Forest Oil Corporation, conferred on September 21, 2017 with Warren Harris, counsel for Defendants and Intervenor, about the substance of this motion. Mr. Harris stated that his clients were unopposed to the motion.

/s/ Johnny W. Carter
Johnny W. Carter

2

## Certificate of Service

I certify that on September 22, 2017, a true and correct copy of this document properly was served on the following counsel of record in accordance with the TRCP via electronic efiling and email by agreement with the parties:

| | |
|---|---|
| Jon Christian Amberson<br>Larissa Janne Hood<br>JON CHRISTIAN AMBERSON, P.C.<br>2135 East Hildebrand Avenue<br>San Antonio, TX 78209<br>chris@ambersonpc.com<br>larissa@ambersonpc.com<br>*Counsel for Defendants and Intervenor* | Fernando Mancias<br>LAW OFFICES OF FERNANDO G. MANCIAS, PLLC<br>4428 S. McColl Road<br>Edinburg, TX 78539<br>Fernando@fernandomanciaslaw.com<br>*Counsel for Defendants and Intervenor* |
| John Carroll<br>ATTORNEY AT LAW<br>111 West Olmos Drive<br>San Antonio, TX 78212<br>jcarrollsatx@gmail.com<br>*Counsel for Defendants and Intervenor* | |
| Warren W. Harris<br>Bracewell LLP<br>711 Louisiana St., Ste. 2300<br>Houston, TX 77002-2770<br>warren.harris@bgllp.com<br>*Counsel for Defendants and Intervenor* | |

/s/ Johnny W. Carter
Johnny W. Carter

# EXHIBIT 6

## Special Warranty Deed

**Effective Date:**              September 23, 2008

**Grantor:**                     James A. McAllen

**Grantor's Mailing Address:**   P.O. Box 1139
                                 Edinburg, TX 78540

**Grantee:**                     ExStra-McAllen, LLC, a Texas Limited Liability Company
                                 c/o Exchange Strategies Corporation

**Grantee's Mailing Address:**   900 E. Hamilton Avenue, Suite 100
                                 Campbell, CA 95008


**Consideration:**  TEN AND NO/100 DOLLARS and other good and valuable consideration.

**Property:**

The property located in Hidalgo County, Texas, described on the attached Exhibit A, which Exhibit A is incorporated by reference, together with all improvements and all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, appurtenances, water, riparian or lateral rights belonging or in anywise appertaining thereto; and all rights titles and interest of Grantor in and to any roads, ways, strips or gores of land adjacent to any of the real property.


**Reservations From and Exceptions to Conveyance and Warranty:**

All valid and effective easements, rights-of-way, reservations, leases, outstanding mineral and royalty interests and leases, use restrictions and protective covenants and encumbrances that affect the property; taxes and assessments for 2008 and all subsequent years, the payment of which Grantee assumes; rights of parties in possession; any discrepancies, conflicts or shortages in area or boundary lines or encroachments or protrusions or any overlapping of improvements; visible and apparent easements; and all laws, rules, ordinances and regulations of any governmental authority having jurisdiction.

Grantor, for the consideration, the receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold unto Grantee and Grantee's successors and assigns forever. Grantor binds Grantor and Grantor's successors to warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns against every party whomsoever lawfully claiming or to claim the same or any part

1

thereof, by, through and under Grantor only and not otherwise, except as to the reservations from and exceptions to conveyance and warranty.

Grantee, by accepting delivery of this deed, confirms that the Property is sold, conveyed and delivered by Grantor to Grantee and accepted by Grantee, AS IS, WITH ALL FAULTS, and in its current condition and appearance.

GRANTOR:

James A. McAllen

ACKNOWLEDGMENTS

STATE OF TEXAS          §
COUNTY OF HIDALGO       §

This instrument was acknowledged before me on September 23, 2008 by James A. McAllen.

Notary Public, State of Texas

MELISSA N. MIKULIK
Notary Public, State of Texas
My Commission Expires
May 03, 2009

2

# EXHIBIT A

**TRACT I:**

All of Lot Two (2) or Tract No. Two (2), PARTITION OF SHARES 1 AND 2 OF THE LINO HINOJOSA PARTITION OF SHARE SIX (6) AND PARTS OF SHARE TWELVE-A (12-A) AND SIXTEEN (16), SAN RAMON GRANT, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 15, Page 24, Map Records, Hidalgo County, Texas.

**TRACT II:**

The North 20.19 acres of Lot One (1) KELLY-PHARR SUBDIVISION, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 3, Page 133-134, Deed Records, Hidalgo County, Texas.

**TRACT III:**

**Parcel A:**

The South 20.24 acres of Lot Thirteen (13), Section Hundred Seventy (270), TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY OF LANDS, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, Page 168-171, Deed Records, Hidalgo County, Texas.

**Parcel B:**

A tract of land containing 17.61 acres, more or less, out of Lot Fourteen (14), Section Two Hundred Seventy (270), TEXASMEXICAN RAILWAY COMPANY'S SURVEY of lands in Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, pages 168-171, Deed Records, Hidalgo County, Texas, said 17.61 acre tract being more particularly described as follows:

BEGINNING at the point of intersection of the South right-of-way line of "I" Road and the West line of said Lot 14, said point being South 08 degrees 59 minutes West 13.71 feet from the Northwest corner of said Lot 14;

THENCE, with and along the South right-of-way line of "I " Road South 34 degrees 06 minutes 52 seconds East a distance of 349.69 feet;

THENCE, South 68 degrees 32 minutes East a distance of 89.55 feet to a point in the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way;

THENCE, continuing with the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way South 32 degrees 38 minutes East a distance of 991.87 feet to the point of intersection of the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the West right-of-way line of U. S. Highway 281 Bypass on a curve to the right through an arc of 03 degrees 45 minutes 10 seconds, said curve having a radius of 3,819.5 feet and a length of 250.17 feet, the chord of said curve bears South 13 degrees 22 minutes 34 seconds West a

distance of 250.10 feet to the point of intersection of the South line of said Lot 14, and the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the South line of said Lot 14, North 81 degrees 07 minutes 18 seconds West a distance of 580.18 feet to a point in the centerline of "I" Road;

THENCE, continuing with the South line of said Lot 14 North 81 degrees 42 minutes 18 seconds West a distance of 385.8 feet to the Southwest corner of said Lot 14;

THENCE, with and along the West line of said Lot 14 North 08 degrees 59 minutes East a distance of 1,271.29 feet to the CORNER OF BEGINNING, said tract containing 17.61 acres, more or less.

SAVE AND EXCEPT a 3.79 acre tract out of the Lot 14, Section 270, lying West of the West right-of-way line of "I" Road, TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY, Hidalgo County, Texas, described in Deed dated June 28, 2006, from James A. McAllen et ux to Lance Walker, recorded under Document No. 1633009, Official Records, Hidalgo County, Texas.

# EXHIBIT 7

**Form 424**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
**Filing Fee: See Instructions**



**Certificate of Amendment**

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

MAR 18 2009

**Corporations Section**

---

## Entity Information

The name of the filing entity is:

ExStra-McAllen LLC

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                    ☐ Professional Corporation

☐ Nonprofit Corporation                     ☐ Professional Limited Liability Company

☐ Cooperative Association                   ☐ Professional Association

☑ Limited Liability Company                 ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: 801029324

The date of formation of the entity is:   9/16/08

---

## Amendments

### 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

Cannon Grove Investments LLC

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

Form 424                                    6

**Registered Agent**
(Complete either A or B, but not both. Also complete C.)

☐ **A. The registered agent is an organization** (cannot be entity named above) **by the name of:**

___

**OR**

☑ **B. The registered agent is an individual resident of the state whose name is:**

| Benjamin | | McCaleb | |
|---|---|---|---|
| First Name | M.I. | Last Name | Suffix |

**C. The business address of the registered agent and the registered office address is:**

| 2135 E. Hilderbrand Ave. | San Antonio | | TX | 78209 |
|---|---|---|---|---|
| Street Address (No P.O. Box) | | City | State | Zip Code |

### 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

☐ **Add each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:**

☐ **Alter each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:**

☐ **Delete each of the provisions identified below from the certificate of formation.**

### Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

Mar 18 09 01:50p      stan freeman                          408-354-7119            p.4

---

### Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

_____

_____

---

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:    3/18/09 _____

_____

MANAGING Member

_____
Signature and title of authorized person(s) (see instructions)

Form 424                                    8

# EXHIBIT 8

## Ben McCaleb

| | |
|---|---|
| **From:** | Ben McCaleb |
| **Sent:** | Friday, August 22, 2008 4:12 PM |
| **To:** | 'al@alanlucke.com'; 'jim@mcallenranch.com'; 'Richard Leshin' |
| **Cc:** | 'vicki@mcallenranch.com'; 'tim@alanlucke.com' |
| **Subject:** | RE: Purchase of Christian Ranch |
| **Attachments:** | diagram--split conveyance and Exchange first 1031.pdf; exstra_FIRST_pro_forma_sample.pdf; exstra_pro_forma_extension_sample.pdf |

Jim, Al and Richard—

The "Exchange First" 1031 exchange we have been discussing can be summarized as follows:

> The **Exchange First** form is frequently used when the Exchangor has arranged financing for the purchase of the New Property and the lender requires the Exchangor to be the borrower and hold title to the New Property directly. This form involves parking the Old Property with the EAT just prior to the acquisition of the New Property directly by the Exchangor. Typically, the EAT is formed and "borrows" the funds necessary to acquire the Old Property from the Exchangor. Title to the Old Property is transferred to the EAT as an interim buyer. The Exchangor then acquires the desired New Property and takes title to it directly. The exchange is then technically complete, the EAT having acquired the Old Property and the Exchangor having acquired the New Property, in that order. However, the Exchangor has 180 days to arrange for and complete the sale of the Old Property in order for the reverse exchange to be valid. Once a purchase and sale contract with the ultimate Buyer has been ratified, the contract is assigned to the EAT and the EAT "sells" the Old Property to the Buyer. In some cases, title is transferred to the Buyer and in other cases the LLC underlying the EAT is assigned to the Buyer. In either case, the funds from the purchase of the Old Property are immediately distributed to the Exchangor.

As we discussed, attached for your review are the following:

- My "rather involved" diagram *(I am not charging for the artistic content)*, setting forth how this "Exchange First" could be structured, assuming a split of the title into two surface owners and a mineral owner and THEN proceeding to do the exchange.
- The Intermediary's "pro forma", describing this process in more detail (cost estimate $5000 to Intermediary)
- The Intermediary's "pro forma", describing this process in more detail if we are unable to sell the two tracts in 180 days and require an extension outside of the "IRS safe harbor rules" (cost estimate additional $10000 to Intermediary PLUS cost of financing temporary investor of about $250,000...we would need to discuss this).

FYI, the Intermediary's website is www.exstra1031.com and there is additional useful information there. In response to your questions regarding security with this Intermediary, I refer you to the section at that website, which indicates they do not hold cash (which is what got so many of the standard 1031 exchange companies in trouble). They have been referred to me by Jefferson Bank and JPMorgan, who both use their services. By copy of this email, I am asking my contact there, Stan Freeman, to give us whatever additional information he would normally provide in order to make you feel comfortable "parking' a $5,000,000 piece of raw land with an LLC controlled by his company.

I look forward to talking with you Tuesday. FYI, please keep in mind that our Option/Review Period ends August 30.

Please call if you have any questions.

8/22/2008

FW: Revised McAllen Proforma                                                    Page 1 of 1

## Ben McCaleb

| | |
|---|---|
| **From:** | Shechtman, David [David.Shechtman@dbr.com] |
| **Sent:** | Thursday, March 12, 2009 9:26 AM |
| **To:** | stan@exstra1031.com; Ben McCaleb |
| **Subject:** | FW: Revised McAllen Proforma |
| **Attachments:** | Revised McAllen Proforma.PDF |

Stan and Ben,

Attached is a mark-up of the Proforma with my comments. In particular, I am thinking that it probably is not necessary to have a lease from the LLC to McAllen as this might also look "funky" in the context of the new structure. Rather, the LLC would just continue as landlord under the existing ag leases. Do those leases throw off enough income to pay debt service on the loans? Also, given the new structure, I don't think it is necessary to have any "guaranteed payments" to the investor.

David

David Shechtman
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Street
Philadelphia PA 19103
Phone 215-988-1167
Fax: 215-988-2757
Email: David.Shechtman@dbr.com

<<Revised McAllen Proforma.PDF>>

***********************************
Disclaimer Required by IRS Rules of Practice:
Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under Federal tax laws.
***********************************
This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message.
Thank you very much.
***********************************

> > > >
> > > >
> > > >

# DrinkerBiddle



**David Shechtman**
Partner

**David Shechtman** is chair of the Tax Team in the firm's Corporate and Securities Practice Group. His practice includes a wide range of federal, state and local tax matters, including capital asset disposition planning; tax aspects of mergers, acquisition and recapitalizations; capital asset disposition planning; S corporations and partnerships; and administrative appeals of federal, state and local tax controversies. He has developed a national practice in the area of like-kind exchanges of real estate and other assets. In his capacity as counsel to taxpayers and various exchange intermediaries, David has structured and documented hundreds of like-kind exchange transactions for major oil and gas, telecommunications and railroad companies, as well as REITs and smaller real estate owners. He also represents various banks and financial institutions in their capacities as intermediaries, trustees and escrow agents for exchanges. His clients include Wachovia Bank, Union Pacific, Richland Properties and Alliance Exchange Corporation.

Representative Matters:

- Obtaining a private letter ruling for one of the first "repetitive exchange programs" used by an auto leasing company for every disposition of its off-lease vehicles. Annual exchange values currently exceed $1 billion.
- Assisting a home builder client in establishing a structure for equity-based employee compensation combined with tax efficient inter-company transfers of land or contract rights to obtain land
- For a major oil and gas company, structuring as a series of safe-harbor "reverse" exchanges, an ongoing "raze and rebuild" program for existing gas station properties, coupled with various gas station dispositions aggregating more than $200 million.

David frequently writes on tax topics and also lectures at American Bar Association meetings and various conferences on tax law. He is an active member of the Section of Taxation of the American Bar Association, serving on the Corporate Tax Committee and currently serving as chair of the Committee on Sales, Exchanges and Basis. David is a former officer and current council member of the Philadelphia Bar Association's Tax Section and has chaired several committees which comment on proposed federal and state regulations. He also is the author of the chapters on federal and Pennsylvania taxes in the West publication *Pennsylvania Forms and Commentary - Business Organizations*. He is a fellow of the American

## CONTACT INFO

Philadelphia
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-1167
(215) 988-2757 fax
David.Shechtman@dbr.com

## RELATED PRACTICES

Corporate & Securities
Tax

## EDUCATION

Cornell Law School, J.D. 1977
Swarthmore College, B.A. 1974 high honors

## BAR ADMISSIONS

Pennsylvania

# DrinkerBiddle

**David Shechtman | Page 2**

College of Tax Counsel.  David is admitted to practice in
Pennsylvania.

**Presentations and Publications.**  David frequently speaks on the
subject of like-kind exchanges and other tax topics.  His recent
presentations include *Like-Kind Exchanges:  Creative Planning
Techniques*, Pennsylvania Bar Institute, March, 2007; *Current
Developments Under §1031*, ABA Tax Section Meeting, January,
2007; *Like-Kind Exchanges Under §1031*, Center for Professional
Seminars "Eleventh Annual National Conference on Like-Kind
Exchanges Under §1031," October 2006; *1031 Like-Kind Exchanges*
sponsored by Wachovia Exchange Services, Inc, May 2006; *Tax
Consequences of Litigation Settlements and Awards*, Pennsylvania Bar
Institute, October 2005; *Like-Kind Exchanges of Intangibles*, ABA Tax
Section Meeting, May 2005; Reverse *Like-Kind Exchanges and Other
"Hot" Exchange Issues*, New York University "59th Institute on
Federal Taxation," October 2000; and *Tax Issues Arising From
Employment Discrimination Awards and Settlements*, 54th Annual
Penn State Tax Conference, June 2000.  He recently authored *IRS
Provides Exchange Deadline Relief for Disaster Victims and (Perhaps) a
Remedy for Others*, Real Estate Taxation, Volume 32/Issue 4, Third
Quarter 2005, Thompson Legal & Regulatory Group and co-
authored *Reverse and Build-to-Suit Like Kind Exchanges*, Proceedings
of the New York University 59th Institute on Federal Taxation 2001,
published by Matthew Bender & Company, Fall 2001.

**In General.**  A 1974 graduate of Swarthmore College, David
received his bachelor's degree, with high honors, in economics.  An
active participant in undergraduate activities, he served as an
editor of the campus newspaper and played on the varsity
basketball team.  David earned his J.D. degree from Cornell
University Law School in 1977.  While in law school, he was a moot
court finalist and won the Evidence Prize for the best evidence
exam.

## PUBLICATIONS

Pennsylvania Realty Transfer Tax Update, Tax Alert, January 2008.

Pennsylvania Department of Revenue Makes Major Changes to
    Realty Transfer Tax Regulations, December 2007.

Tax Alert - Changes to Pennsylvania's Taxes, July 2006.

# EXHIBIT 9

JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
2135 HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209
TELEPHONE 210/826-3339
FACSIMILE 210/826-3340

## FACSIMILE TRANSMISSION FORM

# ATTORNEY/CLIENT CONFIDENTIAL

DATE:  March 11, 2009                    TIME: _____.M.

SENDER:    Jon Christian Amberson

PLEASE DELIVER TO:  Jimmy

                    (956) 380-0112


NUMBER OF PAGES IN TRANSMISSION, INCLUDING COVER SHEET ___3___

OPERATOR: Brenda

IF THERE IS A PROBLEM WITH TRANSMISSION,
PLEASE CONTACT OPERATOR AT 210.826-3339.

MESSAGE:



THIS INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR AGENT
RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT.  YOU ARE HEREBY NOTIFIED
THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY
NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO THIS OFFICE AT THE
ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

**THANK YOU**

# JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3009                                    TELECOPIER (210) 826-3040

March 11, 2009

James A. McAllen
McAllen Ranch
P.O. Box 1139
Edinburg, Texas 78540-1139

RE:  1031 Exchange

Dear Jimmy,

I have consulted with Julie Norton regarding the proposed 1031 exchange you are working on with your attorneys Ben McCaleb and Richard Leshin and she has advised me to write you this letter in order to confirm exactly what we can and cannot do.

Ben McCaleb has asked on your behalf whether I would be in a position to accommodate the 1031 transaction structure recommended by your attorneys and CPA, Al Lucke.  He informed me that Mary Margaret is not able to facilitate your needs in the transaction due to her disqualification as a related person under the Internal Revenue Code.   Mr. McCaleb has asked if I was willing to accommodate you in this transaction due to the fact that I am not related for IRS purposes.

In order for me to accommodate this transaction, Mr. McCaleb has proposed that you loan me $4.5 million dollars and I then purchase 90% of an entity that owns property you own, which I will then own in return for the $4.5 million dollar investment I make. I informed Julie of this proposal by your attorneys and she informed me that we could not do this in the manner proposed by your attorneys and tax advisors.  She went on to inform me that the purchase would be in direct violation of the meaning of the IRS Code, which requires it to be an arms length transaction unrelated to you.  In other words, the $4.5 million dollars used to make the necessary purchase cannot be tied in any way to the 1031 transaction.  Julie is concerned that I could not represent to the

Mr. James A. McAllen
March 11, 2009
Page 2

IRS that the source of the $4.5 million dollars was not received
from you to facilitate this 1031 related transaction when in truth
and in fact, it is. Therefore, if you decide to go forward, then
I must treat it as a gift, which I will invest by purchasing your
entity. This way in the event of an audit, Mary Margaret and I
don't get into trouble with the IRS on a misrepresentation and
possible tax fraud issue.

We are happy to help in any way we can, but our CPA advises
that this is the only way we can participate. Please have Al Lucke
call Julie Norton to discuss her concerns and if you decide to
proceed, we are happy to help.

Very Truly Yours,

Jon Christian Amberson

JCA/bkg

# EXHIBIT 10



**Ben McCaleb**

| | |
|---|---|
| **From:** | Ben McCaleb <bmccaleb@cbmccaleb-law.com> |
| **Sent:** | Wednesday, March 18, 2009 5:12 PM |
| **To:** | 'chris@ambersonpc.com'; 'Vicki'; 'jim@mcallenranch.com' |
| **Cc:** | 'Lesslie L. Eanes'; 'Melissa N. Mikulik'; 'stan@extra1031.com' |
| **Subject:** | FW: James A. McAllen --RELATED 1031 EXCHANGE |
| **Attachments:** | IOLTA - FNB Acct. Wiring Instructions.doc |

Chris and Jim—

The funds for the purchase of your respective entity's interests in **ExTra-McAllen LLC** should be wired as early as possible in the morning into the escrow account shown in the attached Wire Transfer Instructions. The amounts are as follows:

- **Amberson Natural Resources, LLC** ---$4,500,000
- **Ranch Specialties Company** ---$500,000

If you have any questions or problems with the wire, please contact the escrow facilitator, **Lesslie L. Eanes**, as follows:

**Lesslie L. Eanes**
*Attorney at Law*
315 E. McIntyre
Edinburg Texas 78541
Phone: 956-383-1656
Mobile: 956-369-0340
Fax: 956-380-0428
Email: LesslieE@landtitleusa.com



Please give me a call with any questions.

*C. Benjamin McCaleb*
*C. Benjamin McCaleb, P. C.*
*2135 E. Hildebrand Avenue*
*San Antonio, Texas 78209*
*tel: 210-736-2222*
*fax: 210-881-0200*
*bmccaleb@cbmccaleb-law.com*

Board Certified--Commercial Real Estate Law
Texas Board of Legal Specialization

---

**From:** Lesslie L. Eanes [mailto:LesslieE@landtitleusa.com]
**Sent:** Wednesday, March 18, 2009 9:21 AM
**To:** Ben McCaleb
**Cc:** Melissa N. Mikulik
**Subject:** RE: James A. McAllen --RELATED 1031 EXCHANGE

1

Wiring instructions are attached.

Thanks!

| WIRING INSTRUCTIONS |
|---|
| |
| |
| **First National Bank** |
| **ABA NO.**     1415 |
| |
| |
| **CREDIT TO ACCOUNT NO**     4433 |
| |
| **IN THE NAME OF: Lesslie L. Eanes Attorney at Law** |
| **IOLTA FOUNDATION TRUST ACCOUNT** |
| |
| **REFERENCE TO James A. McAllen** |
| |
| |
| **PLEASE FAX CONFIRMATION WHEN WIRE IS RECEIVED TO** |
| **956-384-0428** |

315 E. McIntyre  •  Edinburg, Texas 78541  •  (956) 383-1656

# Exhibit B

Electronically Filed
11/16/2017 12:26 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## SUPPLEMENTAL DECLARATION OF JON CHRISTIAN AMBERSON

Jon Christian Amberson declares as follows:

1.      I am over the age of 18 years, competent to testify, and declare under penalty of perjury that, to my personal knowledge, the facts stated below are true and correct.

2.      On October 27, 2017 I signed a declaration in support of the Amberson Parties' (i) Motion for Partial Summary Judgment as to the "Cannon Grove" Claims and (ii) Motion to Retain the Cannon Grove Claims for Disposition by the Court. I submit this declaration as a supplement to my October 27, 2017 declaration in support of both motions.

3.      On January 25, 2005, the McAllen Parties executed two engagement letters with the Amberson Firm, both of which provided for arbitration of any fee dispute. One of those letters

Supplemental Declaration of Jon Christian Amberson                                                                    1

Electronically Filed
11/16/2017 12:26 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

was attached as Exhibit 1 to my October 27, 2017 declaration.  A true and correct copy of the other

January 25, 2005 engagement letter is attached hereto as **Exhibit 1a.**

4.      I submit this Supplemental Declaration in lieu of an affidavit as authorized by TEX.

CIV. PRAC. & REM. CODE § 132.001.  In accordance with the statute, I state that my date of birth

is December 24, 1956, and my current address is 2135 E Hildebrand Avenue, San Antonio, Texas

78209.

Executed in Bexar County, Texas on November 16, 2017.

Jon Christian Amberson

# Exhibit 1a

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

8105 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (910) 826-0039                                    TELECOPIER (910) 826-0040

January 25, 2005

James Argyle McAllen
James Argyle McAllen, Jr.
P.O. Box 1139
Edinburg, Texas  78540-1139

      RE:  Contract of Employment Regarding Representation of James Argyle
             McAllen, Individually and James Argyle McAllen, Jr., Individually against
             Forest Oil Corporation and any other Responsible Entities.

Gentlemen:

      The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

<u>DESCRIPTION OF SERVICES</u>

    1.   **CLIENTS AND CLIENT REPRESENTATIVES:**  The firm is being retained
to represent the following:

         1.    James A. McAllen, Individually

         2.    James A. McAllen, Jr., Individually

Page 2

**2.     PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.     LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.     NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.     TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

1.     Proper and expected behavior of counsel are described in the Creed.

2.     Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.     I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.     I will not pursue tactics which are intended primarily for delay.

5.     I will not pursue any course of action which is without merit.

6.     I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

Page 3

7.      You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.      **FEES:** The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of James Argyle McAllen and James Argyle McAllen, Jr., in the event of an adverse verdict.

Page 4

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8.     COSTS AND EXPENSES: You will be charged for all costs and expenses of this representation.   To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives.  These costs and expenses include, but are not limited to, the following:

1)     Court costs;

2)     Citation and/or subpoena fees;

3)     Deposition fees, costs and expenses;

4)     Investigation fees, costs and expenses;

5)     Expert witness fees, costs and expenses;

6)     Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)     Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)     Long distance telephone charges, and conference calls expenses;

Page 5

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

9.   **NOTICE TO CLIENTS:**   The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

10.   **ARBITRATION:**   Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

11.   **LAW APPLICABLE AND VENUE:**   This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

12.   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

13.   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

Page 6

14.   If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen and James Argyle McAllen, Jr.

JAMES ARGYLE McALLEN,
INDIVIDUALLY

JAMES ARGYLE McALLEN, JR.
INDIVIDUALLY

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 — Facsimile

Electronically Filed
12/20/2017 12:30 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

**ORDER GRANTING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'
MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS**

The Court, having considered Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others, the Defendants' response, and the arguments of the parties with respect thereto, finds that the motion should be granted.  It is therefore

ORDERED that Plaintiff's claim to recover legal fees from Defendants is arbitrable, and is therefore referred to arbitration as between Plaintiff Jon Christian Amberson, P.C. (the "*Amberson Firm*") and Defendants.  It is further

ORDERED that all pending counterclaims and third-party claims filed by the Defendants that relate to the so-called "Cannon Grove" transaction (including all third-party claims against

Electronically Filed
12/20/2017 12:30 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Amberson Natural Resources, LLC) are not arbitrable (the "***Non-Arbitrable Claims***") and are therefore retained by this Court for further disposition in this action.  It is further

ORDERED that Defendants' counterclaims against Plaintiff and their third-party claims against Third-Party Defendant Jon Christian Amberson ("***Amberson***") that relate to <u>both</u> (i) Amberson's individual role as an attorney with the Amberson Firm, and (ii) Amberson's duties to the Defendants during the litigation with Forest Oil Corporation (these include the Defendants' loan claims that are not related to Cannon Grove), are arbitrable, as having a sufficient nexus to the fee dispute, and are therefore referred to arbitration.  It is further

ORDERED that Defendants' Request to Refer all Claims in this Lawsuit to Arbitration is denied.

SIGNED this _____ day of _____, 2017.

_____

JUDGE PRESIDING

Electronically Filed
12/20/2017 12:30 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.**

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

Electronically Filed
12/20/2017 12:30 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., Plaintiff/Counter-Defendant, | § § § | IN THE DISTRICT COURT |
| VS. | § § | |
| JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., AND MCALLEN TRUST PARTNERSHIP, Defendants/Counterclaimants/ Third-Party Plaintiffs | § § § § § § § § | HIDALGO COUNTY, TEXAS |
| VS. | § § | |
| JON CHRISTIAN AMBERSON and AMBERSON NATURAL RESOURCES, LLC, Third-Party Defendants. | § § § § § | 92ND JUDICIAL DISTRICT |

## NOTICE OF APPEARANCE OF FRANCISCO J. RODRIGUEZ

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES FRANCISCO J. RODRIGUEZ, Attorney at Law, and makes this appearance for JON CHRISTIAN AMBERSON, P.C., Plaintiff/Counter-Defendant/Third-Party Defendant herein, and would show the following:

I.

JON CHRISTIAN AMBERSON, P.C., Plaintiff/Counter-Defendant, retained the services of FRANCISCO J. RODRIGUEZ of The Law Office of Francisco J. Rodriguez, 1111 W. Nolana, Suite A, McAllen, Texas 78504.

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

II.

FRANCISCO J. RODRIGUEZ requests that he be entered as additional counsel in this cause.  All parties' attorneys are requested to serve copies of all pleadings, motions, correspondence and notices, etc., on the undersigned.

WHEREFORE, PREMISES CONSIDERED, the undersigned enters his appearance for JON CHRISTIAN AMBERSON, P.C., Plaintiff/Counte-Defendant/Third-Party Defendant, and moves that the undersigned be served with copies of all future pleadings, motions, correspondence and notices, etc.

Respectfully submitted,

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas  78504
Telephone No.: (956) 687-4363
Telecopier No.: (956) 687-6415

BY: _____
FRANCISCO J. RODRIGUEZ
State Bar No:  17145800
frankr@mcallenlawfirm.com
DANIELLE C. RODRIGUEZ
State Bar No. 24075952
JARED A. CLARK
State Bar No. 24101626

ATTORNEYS FOR DEFENDANT
JON CHRISTIAN AMBERSON, P.C.

Electronically Filed
1/3/2018 11:34 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2017, a true and correct copy of the foregoing document was delivered to the counsel of record, to wit:

VIA E-FILE SERVICE

Jon Christian Amberson
Law Office of Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

VIA E-FILE SERVICE

Charles C. Murray
Atlas, Hall & Rodriguez
818 W. Pecan Blvd.
McAllen, Texas 78502

VIA E-FILE SERVICE

J.A. "Toney" Canales
Canales & Simonson
2601 Morgan Avenue
Corpus Christ, Texas 78405

VIA E-FILE SERVICE

Steven A. Fleckman
Fleckman & McGlynn
515 Congress Ave., Ste. 1800
Austin, Texas 78701-3503

VIA E-FILE SERVICE

David M. Prichard
Prichard Young
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

FRANCISCO J. RODRIGUEZ

Electronically Filed
1/3/2018 2:43 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios   Ricardo Contreras   Adriana "Audry" Garcia   Sabrina S. Guerra   Oneida Lamas   Stephanie Palacios   Aida Villarreal
CHIEF DEPUTY   CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION   ASSISTANT CHIEF DEPUTY   SENIOR ACCOUNTANT   DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT OFFICER   CHIEF OF APPEALS

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | HIDALGO COUNTY, TEXAS |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| VS. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES, | § | |
| LLC, | § | |
| Third-Party Defendants. | § | 92ND JUDICIAL DISTRICT |

## ORDER

On this the ___3rd___ day of _____January_____, 2018__, came on to be considered by the court the above and foregoing Notice of Appearance of FRANCISCO J. RODRIGUEZ, and the Court being of the opinion that said request in said Notice should be honored,

IT IS THEREFORE ORDERED by the Court that FRANCISCO J. RODRIGUEZ, be entered as counsel for Plaintiff/Counter-Defendant/Third-Party Defendant, JON CHRISTIAN AMBERSON, P.C, and that copies of all future pleadings, motions, correspondence and notices, etc. from the parties' attorneys and the Court shall be served on him.

SIGNED AND ENTERED this the ___3rd___ day of ___January___, 2018__ .

_____
JUDGE PRESIDING

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

COPIES TO:

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

<u>CAUSE NO. C-0340-15-A</u>

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
|     Plaintiff/Counter-Defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | HIDALGO COUNTY, TEXAS |
|     Defendants/Counterclaimants/ | § | |
|     Third-Party Plaintiffs | § | |
| | § | |
| VS. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES, | § | |
| LLC, | § | |
|     Third-Party Defendants. | § | 92ND JUDICIAL DISTRICT |

## <u>ORDER</u>

On this the _____ day of _____, 201__, came on to be considered by the court the above and foregoing Notice of Appearance of FRANCISCO J. RODRIGUEZ, and the Court being of the opinion that said request in said Notice should be honored,

IT IS THEREFORE ORDERED by the Court that FRANCISCO J. RODRIGUEZ, be entered as counsel for Plaintiff/Counter-Defendant/Third-Party Defendant, JON CHRISTIAN AMBERSON, P.C, and that copies of all future pleadings, motions, correspondence and notices, etc. from the parties' attorneys and the Court shall be served on him.

SIGNED AND ENTERED this the _____ day of _____, 201__.


_____
JUDGE PRESIDING

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

COPIES TO:

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
1/3/2018 11:53 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez





# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios     Ricardo Contreras     Adriana "Audry" Garcia     Sabrina S. Guerra     Oneida Lamas     Stephanie Palacios     Aida Villarreal
CHIEF DEPUTY          CHIEF OF ADMINISTRATION          ASSISTANT CHIEF DEPUTY          SENIOR ACCOUNTANT          DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                     AND PUBLIC INFORMATION                                                                                                              OFFICER

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
|     Plaintiff/Counter-Defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | HIDALGO COUNTY, TEXAS |
|     Defendants/Counterclaimants/ | § | |
|     Third-Party Plaintiffs | § | |
| | § | |
| VS. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES, | § | |
| LLC, | § | |
|     Third-Party Defendants. | § | 92ND JUDICIAL DISTRICT |

## ORDER

On this the ___3rd___ day of _____January_____, 201_8_, came on to be considered by the court the above and foregoing Notice of Appearance of FRANCISCO J. RODRIGUEZ, and the Court being of the opinion that said request in said Notice should be honored,

IT IS THEREFORE ORDERED by the Court that FRANCISCO J. RODRIGUEZ, be entered as counsel for Plaintiff/Counter-Defendant/Third-Party Defendant, JON CHRISTIAN AMBERSON, P.C, and that copies of all future pleadings, motions, correspondence and notices, etc. from the parties' attorneys and the Court shall be served on him.

SIGNED AND ENTERED this the ___3rd___ day of ___January___, 201_8_ .

_____
JUDGE PRESIDING

Electronically Filed
1/3/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

COPIES TO:

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
1/8/2018 1:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>THE AMBERSON PARTIES' JURY DEMAND</u>

Plaintiff Jon Christian Amberson P.C., and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (collectively, the "***Amberson Parties***") file this demand for a trial by jury and tender the jury fee herewith.

Electronically Filed
1/8/2018 1:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
      Steven A. Fleckman

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 Pecan (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone: (956) 682-5501
Facsimile: (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
1/8/2018 1:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on January 8, 2018.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

*/s/ Steven A. Fleckman*
Steven A. Fleckman

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## THE AMBERSON PARTIES' REPLY TO THE MCALLEN
## PARTIES' REQUEST TO REFER *ALL* CLAIMS TO ARBTIRATION

Plaintiff Jon Christian Amberson P.C. (the "*Amberson Firm*"), and Third-Party

Defendants Jon Christian Amberson ("*Amberson*") and Amberson Natural Resources LLC ("*ANR*

*LLC*") (collectively, the "*Amberson Parties*") file this Reply to the McAllen Parties' Request to

Refer *All* Claims in this Lawsuit to Arbitration.

The Amberson Parties incorporate by reference, the Declaration of Jon Christian Amberson

attached as **Exhibit A**, the Supplemental Declaration of Jon Christian Amberson attached as

**Exhibit B**, and the Second Supplemental Declaration of Jon Christian Amberson attached as

**Exhibit C**.

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## I. <u>Introduction</u>

The McAllen Parties are trying to argue a different case than the one pending before this Court. Relying on unsupported allegations, inflammatory rhetoric, and citations to inapposite case law, the McAllen Parties argue that the Cannon Grove claims should be submitted to arbitration because they are "factually intertwined" with those involving the Amberson Firm's legal fee dispute.  Their argument is incorrect for the reasons discussed below; it wholly ignores the dispositive judicial standard here:

The Cannon Grove claims are not subject to arbitration because (i) the transaction was never subject to any arbitration agreement, and (ii) the claims can readily be "maintained without reference" to the entirely unrelated 2005 Engagement Agreement.  The McAllen Parties' request to refer the Cannon Grove claims should therefore be denied, and the Court should retain those claims for judicial disposition.

## II. <u>Argument</u>

**A.    The McAllen Parties' Cannon Grove claims are completely independent of the Engagement Agreement and therefore cannot be submitted to arbitration.**

Even setting aside other points discussed in the Amberson Parties' previously filed Bench Brief, claims that can be *maintained independently of an arbitration contract* cannot be compelled to arbitration.  The controlling law is clear: Where, as here, "the facts alleged stand alone, completely independent of the contract, and the claim could be maintained without reference to the [arbitration] contract, the claim is not subject to arbitration." *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.).  The courts focus on the facts (not "artful pleading" of a party's claims) to decide whether a claim is sufficiently related to an agreement to be arbitrable. *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011).  "[T]he strong policy in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

by the parties or to allow modification of the unambiguous meaning of the arbitration clause."

*Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In *Fridl v. Cook*, 908 S.W.2d 507 (Tex. App.—El Paso 1995, writ dism'd w.o.j.), the plaintiff asserted claims for fraud and tortious interference with a contract (which contained an arbitration clause).  The defendants argued that these claims were arbitrable because they "related to" the contract. *Id.* at 510.  The court rejected this argument:

> We do not see that this is a claim "arising out of or relating to" the contract. [The defendants] may have honored their contractual obligations in every respect, and yet be liable for fraudulently inducing [the plaintiff] to obtain business outside the contract so as to avoid full payment of commissions. . . . Here, the fraud claim may be pursued even if no breach of the … contract occurred.

*Id.* at 513.

More recently, in *Endura Advisory Group, Ltd. v. Altomare*, 04-14-00889-CV, 2015 WL 1639632 (Tex. App.—San Antonio Apr. 8, 2015, no pet.), a broker signed a severance agreement before leaving a firm, and then sued a member of that firm for failing to pay a commission under a separate agreement. *Id.* at *1.  The firm intervened and sought to compel arbitration under an arbitration clause in the severance agreement.  The court refused to send the matter to arbitration:

> … [The broker's] claims against [firm member] are based on an alleged agreement the two made separate and apart from [the firm], and that agreement between [broker and firm member] does not relate to [broker's] relationship or tenure with the [firm] or his resignation or separation therefrom.

*Id.* at *3.

Here, the rationale for declining the referral to arbitration is much stronger: The McAllen Parties' Cannon Grove claims are not merely independent of the Engagement Agreement, they have nothing to do with that agreement.  The sole purpose of the Engagement Agreement was the Amberson Firm's undertaking to litigate claims against Forest Oil for environmentally polluting

Amberson Parties' Reply

3

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

the McAllen Ranch.  The arbitration clause provides for arbitration of fee disputes arising under the Engagement Agreement, which in turn is expressly limited to the firm's legal representation and services provided *in the Forest Oil Litigation*. **Exhibit A**, sub-exhibit 1 (Engagement Letter) at ¶¶ 2, 3, 10.[1]

Here are the undisputed facts: The Cannon Grove transaction did not arise until four years after the Engagement Agreement was executed. **Exhibit A** at ¶ 12.  The Cannon Grove transaction did not involve the McAllen Ranch, or its contamination by Forest Oil. *Id.* at ¶ 15.  While the McAllen Parties were parties to the *Engagement Agreement*, only James McAllen ("***McAllen***") was involved in the Cannon Grove transaction.  And the Amberson Firm did not represent McAllen in that transaction; he instead engaged three other law firms to represent him in the Cannon Grove transaction. *Id.*  The Cannon Grove transaction involved the purchase of an interest in a separate real estate investment entity; there was no litigation against Forest Oil or anyone else. *Id.* at ¶ 16. The transaction related to McAllen's desire to avoid federal income taxes on a real estate deal using a reverse 1031 exchange. *Id.* at ¶ 10.  He sought to involve Chris Amberson in a contrived "loan" to achieve this tax objective.  After Amberson consulted a tax accountant and concluded that his participation in a "loan" would not comply with tax laws, he informed McAllen in writing on March 11, 2009 that he would not accept a loan. *Id.* at ¶ 11.  In his March 11, 2009 letter, Amberson stated explicitly that if McAllen *chose* to proceed he would have to treat any monetary transfer to Amberson's company, ANR LLC, as a gift. *Id.*  After that letter was sent to McAllen, McAllen chose to proceed. *Id.* at ¶ 12.  McAllen quite clearly understood he had made a gift to

---

[1] McAllen does not deny that he was represented by three separate law firms in the Cannon Grove transaction, none of which included the Amberson Firm.  Amberson and his firm owed no fiduciary duty to McAllen in connection with the Cannon Grove transaction.  The Texas Supreme Court has made clear that a law firm's fiduciary duties extend only to matters within the scope of representation. *See Joe v. Two Thirty Nine Joint* Venture, 145 S.W.3d 150 (Tex. 2004).

Amberson Parties' Reply                                                                                                  4

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Amberson because neither he nor any of his attorneys drafted, requested or sought to require any "promissory note" from Amberson or ANR LLC at the time of the transaction.  No attempt to recharacterize the transaction as a loan occurred until more than 5 years later—after Amberson divorced McAllen's daughter. *Id*. at ¶ 13.

The McAllen Parties' Cannon Grove claims allege an undocumented loan eight years ago that has nothing to do with the 2005 Engagement Agreement to sue Forest Oil.  Their factual assertions constitute judicial admissions that the Cannon Grove dispute involves "***real property, separate from the McAllen Ranch***," that Mr. McAllen wished to sell in a "***Reverse 1031 Exchange***" in 2009. *See* McAllen Parties' Second Amended Counterclaim, Section III(B).  These claims are distinct from, unrelated to, and do not depend upon the Engagement Agreement.  They do not relate to any aspect of the Forest Oil litigation, the contamination of the McAllen Ranch, or the Amberson Firm's services in that litigation.  The Cannon Grove claims do not allege a breach of the Engagement Agreement.  Because these claims can be maintained without reference to the substance of the Engagement Agreement, they are not within the scope of the 2005 arbitration clause.

In their application for arbitration, the McAllen Parties discuss three cases in support of their argument that the claims are "factually intertwined."  Their analysis is wrong:

(i) In *TCP Holdings, L.L.C. v. Kirk*, 05-99-01945-CV, 2000 WL 1240202 (Tex. App.—Dallas Aug. 31, 2000, no pet.), the arbitration provision covered "***any*** dispute or controversy between or among the Company or any Member."  Here, in contrast, the arbitration clause is narrow; it relates to any fee dispute related to the "legal services in relation to an action against Forest Oil Corporation…."  McAllen did not retain the Amberson Firm to provide legal services to him in the Cannon Grove transaction, electing instead to use the services of three other law

Amberson Parties' Reply

5

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

firms. A court cannot rewrite an arbitration provision to expand its scope. *Osornia*, 367 S.W.3d at 711.

(ii) In *Poole v. USAA Cas. Ins. Co.*, 14-99-00740-CV, 2000 WL 1721150 (Tex. App.—Houston [14th Dist.] Oct. 12, 2000, pet. denied), the parties' agreement to arbitrate specifically referenced the claims that the court referred to arbitration. In contrast, the Engagement Agreement, signed in 2005, makes no reference to the 2009 Cannon Grove transaction.

(iii) Likewise, in *Vireo, P.L.L.C. v. Cates*, 953 S.W.2d 489 (Tex. App.—Austin 1997, pet. denied), the parties' non-compete agreement required arbitration and the claims related ***exclusively*** to the non-compete obligation. *Id.* at 494.

These authorities do not support the proposition that the 2009 Cannon Grove claims fall within the scope of the 2005 Engagement Agreement; and the McAllen Parties cannot point to any other arbitration agreement.

**B.      The McAllen Parties' alter ego allegations do not support arbitration here.**

For several reasons, the McAllen Parties cannot force arbitration of the Cannon Grove claims by their baseless assertion that the Amberson Firm and ANR LLC are alter egos of Chris Amberson. First, as discussed above, the alter ego allegation in no way surmounts the hurdles discussed above: It does not negate the fact that the Engagement Agreement involved only the McAllen Ranch and the Forest Oil litigation, which bears no relation to the Cannon Grove transaction. Second, the Cannon Grove claims rest on fraud, misrepresentation and other tort theories having nothing to do with fees earned in the Forest Oil litigation.[2]

---

[2] In any event, it is ludicrous to say that a man who deliberately ignores a letter explicitly telling him *in advance* that his transfer of money must be treated as a gift and not as a loan, can wait eight years and then claim he was misled. The principle is firmly embedded in our jurisprudence that a man is expected to read and understand documents in a transaction. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425-26 (Tex. 2015). With three law firms representing him in that transaction, McAllen has no excuse for

Electronically Filed
7/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Beyond that, however, the McAllen Parties have offered no proof whatsoever to support their alter ego allegation. Absent proof, the Amberson Firm and ANR LLC are *presumed* by law to be separate from Chris Amberson. *See, e.g., Washington DC Party Shuttle, LLC v. IGguide Tours*, 406 S.W.3d 723, 738-39 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (Texas law presumes corporate separateness). More specifically, a party to an arbitration agreement cannot compel a non-signatory to arbitrate merely by *alleging* that the non-signatory is an alter ego of a signatory; *proof* of alter ego status is required. *Glassell Prod. Co. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 84-85 (Tex. App.—Texarkana 2014, no pet.); *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 195 S.W.3d 807, 817 (Tex. App.—Dallas 2006, orig. proceeding).

The two cases cited by the McAllen Parties certainly do not support the proposition that it is sufficient merely to allege alter ego status, without offering probative evidence. In both cases the parties who opposed arbitration were compelled to arbitrate because *they themselves had maintained* that the proponents of arbitration were alter egos and therefore bound by the very agreement that contained the arbitration provision. *In re Education Management Corp.*, 14 S.W.3d 418, 424-25 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *Coody Custom Homes, LLC v. Howe*, No. 10-06-00098-CV, 2007 WL 1374136, at *2-3 (Tex. App.—Waco May 9, 2007, no pet.) (mem. op.). Here, the Amberson Parties unequivocally deny that they are alter egos (*see* **Exhibit C** at ¶¶ 4-12), the McAllen Parties have established no basis for a contrary finding, and none of the Amberson Parties are seeking to enforce any Cannon Grove contract in any event.

Both *Education Management* and *Coody* are also distinguishable because they are based on a simple estoppel principle: a claimant cannot "on the one hand, seek to hold the non-signatory

---

not reading and understanding Amberson's March 11 letter. Moreover, McAllen is charged with knowledge that no promissory note was prepared, presented, demanded, or executed in the transaction, which is fully consistent with the March 11 letter. In short, there is no evidence any misrepresentation was made.

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

liable [as an alter ego] pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Coody* at *3 (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)). That estoppel principle is not operative here where the McAllen Parties are instead trying to coerce the Amberson Parties to arbitrate claims related to a transaction that involved ***no*** arbitration clause whatsoever, based solely on a naked and unsubstantiated alter ego allegation that is belied by unrefuted evidence. *See* **Exhibit C** at ¶¶ 4, 6-12.

### III.  Conclusion

For the foregoing reasons, the McAllen Parties cannot meet their burden to prove that they are entitled to arbitration of the Cannon Grove claims. Those claims can and should be litigated in this Court because they stand or fall independent of the Engagement Agreement.

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
    Steven A. Fleckman

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 Pecan (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone: (956) 682-5501
Facsimile: (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Amberson Parties' Reply                                          9

Electronically Filed
1/8/2018 9:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on January 8, 2018.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

*/s/ Steven A. Fleckman*
Steven A. Fleckman

# Exhibit A

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF JON CHRISTIAN AMBERSON

Jon Christian Amberson declares as follows:

1.      I am over the age of 18 years, competent to testify, and declare under penalty of perjury that, to my personal knowledge, the facts stated below are true and correct.

2.      I submit this declaration in support of the Amberson Parties' (i) Motion for Partial Summary Judgment as to the "Cannon Grove" Claims and (ii) Motion to Retain the Cannon Grove Claims for Disposition by the Court.

### A.   The Forest Oil Litigation, the Legal Fee Issue, and the Arbitration Agreement

3.      I am an attorney and the principal of Plaintiff Jon Christian Amberson P.C. (the "*Amberson Firm*"). Starting in late 2004, James McAllen ("*Mr. McAllen*") and the other

Defendants (collectively, the "*McAllen Parties*") engaged my law firm (the "*Amberson Firm*") to represent them in lawsuits against Forest Oil Company for environmental contamination of the McAllen Ranch and personal injury to Mr. McAllen (the "*Forest Oil Litigation*").

4.      Mr. McAllen and the other McAllen Parties executed engagement letters with the Amberson Firm relating to the Forest Oil Litigation (collectively, the "*Engagement Agreement*"). The Engagement Agreement provided for arbitration of any fee dispute. True and correct copies of my firm's engagement letters are attached hereto as **Exhibit 1**.

5.      For twelve years the Amberson Firm represented the McAllen Parties in the Forest Oil Litigation. Those twelve years of work culminated in an arbitration award in 2012 (the "*Award*") in favor of the McAllen Parties against Forest Oil for approximately $22,781,000 plus accrued interest of about $5,695,000, or a total of more than $28,476,000. A true and correct copy of the Award is attached hereto as **Exhibit 2**. Over contentious challenges by one of the most prominent litigation firms in the state (the Susman Godfrey firm) that Award was sustained in the district court, in the court of appeals, and subsequently on two separate occasions in the Texas Supreme Court. A true and correct copy of the district court's final judgment affirming the Award is attached hereto as **Exhibit 3**. Included in this Award and judgment, the McAllen Parties were granted more than $6,700,000 in attorneys' fees. The Texas Supreme Court upheld the Award in an opinion issued on April 28, 2017. *Forest Oil Corp. v. El Lucio Land & Cattle Co.*, 518 S.W.3d 422 (Tex. 2017), and subsequently issued its mandate enforcing judgment on the Award. A true and correct copy of the Texas Supreme Court's mandate is attached as **Exhibit 4**. **Exhibit 5** is a true and correct copy of a motion subsequently filed by Forest Oil in the district court indicating that the McAllen Parties have now received in cash (and/or partially in securities), the monetary damages awarded to them.

6.     In addition to the monetary recovery, as part of the Award my firm (working in concert with our expert witnesses) helped secure additional relief against Forest Oil requiring it to remediate its extensive contamination of the McAllen Ranch, including scattered radioactive material and other toxic substances. It is expected that the value of this clean-up remedy will, over time, substantially *exceed* the McAllen Parties' $28 million monetary recovery (although, assuming the contingency fee agreement is enforced, my firm is only seeking its 1/3 share of the monetary award).

7.     The Amberson Firm has therefore brought this action to compel the McAllen Parties to arbitrate my firm's claim for payment of the legal fees remaining due in accordance with the arbitration provision in the Engagement Agreement. In the alternative, my firm has pleaded for a *quantum meruit* fee determination based on the value of the entire Award, inclusive of the environmental remediation relief.

### B. The 2009 Cannon Grove Transaction

8.     Prior to 2009 Mr. McAllen owned real property in Edinburg, Texas known as the "Cannon Grove" property (the "*CG Property*"). In 2008 he deeded the CG Property to his Texas limited liability company, which he subsequently re-named Cannon Grove Investments, LLC (the "*CGI LLC*"). True and correct copies of Mr. McAllen's 2008 deed and the Texas Secretary of State's record of the grantee's name change to Canon Grove Investments, LLC are respectively attached as **Exhibits 6 and 7**.

9.     In 2009 I was still married to Mr. McAllen's daughter. My three children are Mr. McAllen's grandchildren. Ben McCaleb, a San Antonio attorney representing Mr. McAllen, related to me that Mr. McAllen wanted to undertake a tax free exchange transaction, and he wanted me to act as a counter-party in that transaction.

10.     Through his attorney Mr. McCaleb, Mr. McAllen proposed an arrangement by which he would loan $4.5 million to enable a company (to be owned by me) to purchase a 90 percent interest in CGI LLC so that Mr. McAllen could defer his income taxes to the IRS.  In addition to Mr. McAllen's tax accountant, Alan Lucke, at least two attorneys were advising and representing Mr. McAllen in this transaction: (i) Mr. McCaleb and (ii) Richard Leshin, a tax attorney in Corpus Christi.  Documents I have subsequently received reflect that he was also advised by a tax attorney with the Philadelphia Drinker Biddle firm. *See* **Exhibit 8** attached. Neither I nor my firm represented Mr. McAllen or CGI LLC in this transaction.

11.     I took Mr. McAllen's proposal to my tax accountant for review and advice.  After that review, I decided that I could not receive the funds as a "loan" with strings attached, and that it should be an arms-length arrangement.  On March 11, 2009 I wrote a letter to Mr. McAllen to explain my concern that I did not want my wife and me to be exposed to any risk of potential tax fraud issues, and to clarify what I could do (and would not do) in connection with the purchase of equity in his company, CGI LLC.  A true and correct copy of that letter is attached hereto as **Exhibit 9**.  My letter made it clear to Mr. McAllen that, based on the tax advice I had received, I would not agree to his proposal to treat the $4.5 million transfer as a "loan," and that if he chose to involve me in the transaction, his transfer of the $4.5 million would have to be an outright gift; only then would I feel comfortable using the funds to purchase the CGI LLC interest.

12.     Seven days later, about March 18, 2009, Mr. McAllen proceeded with the transaction, transferring $4.5 million to a new limited liability company owned by me, Amberson Natural Resources LLC ("*ANR LLC*"). A copy of the wiring instructions is attached as **Exhibit 10**.  Consistent with my letter, ANR LLC then purchased a 90 percent interest in CGI LLC from Mr. McAllen, using Mr. McAllen's gifted funds in the amount of $4.5 million.  Thus, Mr.

McAllen sold me 90 percent of CGI LLC, and as the purchase price I paid him $4.5 million at the time of the Cannon Grove transaction.

13.     Consistent with my letter insisting that any transfer be a gift and not a loan, Mr. McAllen did not send me (or any firm that I own) any loan agreement or promissory note to sign. Neither did any of his three law firms. Neither I (nor any firm that I own) signed any instrument at any time reflecting any loan from Mr. McAllen related to the Cannon Grove transaction. Indeed, Mr. McAllen never made any demand as to any alleged loan until after my 2013 divorce from his daughter was complete, in which I was awarded all rights in ANR LLC (the company that owns the CGI LLC interest)—at least five years after the Cannon Grove transaction.

14.     My company, ANR LLC, is not part of the Amberson Firm. It is not engaged in the practice of law. It never represented the McAllen Parties at any time in the practice of law. It has never appeared as counsel before the bar of any court, nor could it. It never acted for the McAllen Parties in connection with the Forest Oil Litigation. It never entered into any arbitration agreement with the McAllen Parties. It is not a party to any engagement agreement with the McAllen Parties. It has not sought any benefits under the Engagement Agreement or any other arbitration agreement. It has never charged legal fees to the McAllen Parties. It is not a plaintiff in this case, and has not asserted any claim against the McAllen Parties of any nature, for legal fees or otherwise.

15.     The Amberson Firm's petition in this action solely seeks arbitration of its claim to recover the fees it has earned for the legal work performed on behalf of the McAllen Parties in the Forest Oil Litigation. My law firm's petition does not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. The Forest Oil Litigation did not involve CGI LLC, ANR LLC, or the Cannon Grove transaction. ANR LLC is not a plaintiff in my law firm's petition. I never

represented Mr. McAllen with respect to the Cannon Grove transaction, nor did my law firm. As noted above, Mr. McAllen was separately represented and advised in the Cannon Grove transaction by three other law firms. Neither the CG Property nor the CGI LLC was the subject of any engagement agreement at any time with me or with the Amberson Firm. Neither I nor the Amberson Firm has ever charged legal fees to CGI LLC.

16.     Moreover, the CG Property is unrelated to and geographically separate from the McAllen Ranch. The CG Property was not involved in the Forest Oil Litigation; it was not involved in the underlying arbitration with Forest Oil. The CG Property was never leased to Forest Oil Company.

17.     In response to my firm's petition to compel arbitration for recovery of its legal fees in the Forest Oil Litigation, the McAllen Parties filed their Original Answer, Counterclaim, and Claims Against Third Parties on September 25, 2017. The McAllen Parties' counterclaim and third party claims involving the Cannon Grove transaction were not filed until more than eight years after the Cannon Grove transaction was concluded.

18.     I submit this Declaration in lieu of an affidavit as authorized by TEX. CIV. PRAC. & REM. CODE § 132.001. In accordance with the statute, I state that my date of birth is 12/24/1956, and my current address is 2135 East Hildebrand, San Antonio Tx. 78209 Executed in Bexar County, Texas on October 27, 2017.

Jon Christian Amberson

# EXHIBIT 1

## JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3939                    TELECOPIER (210) 826-3940

December 10, 2004

Mr. James A. McAllen
Mrs. Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

　　　RE: <u>Forest Oil Corporation</u>

Dear Mr. & Mrs. McAllen:

　　The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C. and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil corporation relating to environmental contamination issues arising from the actions of Forest Oil Corporation and its employees as relayed to you by Mr. Bobby Pearson, a former employee of Forest Oil Corporation.

### DESCRIPTION OF SERVICES

　　**1.   CLIENTS AND CLIENT REPRESENTATIVES:** The firm is being retained to represent the following:

　　　　(1)   James Argyle McAllen, Individually.

　　　　(2)   El Rucio Land and Cattle Company, Inc. - Representative - James A. McAllen.

　　　　(3)   San Juanito Land Partnership, Ltd. - Representative James A. McAllen.

-1-

    (4)   McAllen Trust Partnership - Representative - James A. McAllen.

    (5)   John R. Willis Management Partnership, Ltd., - Representative - James A. McAllen.

The representative of the aforementioned entities is James A. McAllen.

**2.   PURPOSE OF REPRESENTATION:**   It is understood that our firm is being retained by you to provide legal services in relation to the action against Forest Oil Corporation, and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated the June 22, 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-2016-95-G, state statutes, environmental laws and state regulations on your properties.

**3.   LEGAL REPRESENTATION:**   Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.  Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.   NO GUARANTEE OR INDUCEMENTS:**   It is understood that the law firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.   TEXAS LAWYER'S CREED:**   I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

1. Proper and expected behavior of counsel are described in the Creed.

2. Civility and courtesy are expected from lawyers and are not a sign of weakness.

3. I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4. I will not pursue tactics which are intended primarily for delay.

5. I will not pursue any course of action which is without merit.

6. I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7. You are advised that mediation, arbitration and other alternative methods of resolving and settling disputes are available to you to resolve disputes with opposing parties.

6. **FEES:** The nature, character and amount of fees charged by us are determined in accordance Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

(1) the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

(3) the fee customarily charged in this locality for similar legal services;

(4) the amount involved and the results obtained;

-3-

(5) the time limitations imposed by you or by the circumstances of our engagement;

(6) the nature and length of our professional relationship with you;

(7) the experience, reputations and ability of the lawyer or lawyers performing the services; and,

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

7.   **BILLINGS:** You understand that billings will be furnished to you periodically, based upon the frequency and amount of activity required to be expended necessarily and reasonably in your behalf.  You agree to promptly pay within fifteen (15) days of any statement rendered to you all sums due and owing.

8.   **FIXED HOURLY RATES:**  The following schedule of fixed hourly rates will apply to your case.

| LAWYER/ASSOCIATE/LEGAL ASSISTANT | RATE |
|---|---|
| A.   Lawyer, Jon Christian Amberson | $350.00 per hour |
| B.   Lawyer, Larissa J. Hood | $250.00 per hour |
| C.   Legal Assistant/Paralegal | $60.00  per hour |

Any services performed after January 1, 2005, will be charged at regular hourly rates then in effect.  It is understood that other personnel of the law firm may perform services in this matter, and the rates set forth above shall apply to all attorneys, associates or legal assistants of equivalent experience.  The total fees are sometimes raised from what the hourly rates would generate, based on the complexity and size of the transaction, as well as the attainment of superior results. We discuss all such increases with our clients, and are confident that you will find them appropriate should we conclude such an increase is fair.  You will be charged for travel time in connection with our representation and time spent in travel will be billed for attorney's time at one half the attorney's usual hourly fixed rate.  We will submit monthly fee statements to you

which will contain statement for fees plus cost and expenses incurred on behalf of the clients as hereinafter provided for. It is agreed that any fees and/or expenses due under this letter are due upon receipt for the statement for such fees and/or expenses. Fees will be subject to a final adjustment depending upon results obtained in light of efforts expended on your behalf.

9.   **ATTORNEY IN CHARGE:** It is understood and agreed that Jon Christian Amberson is the attorney in charge of your representation. He is the only attorney in the law firm who will work on your case unless, in his sole discretion, he decides to consult with and seek the assistance of other members of the firm. It is further understood that he may need to seek the assistance of other lawyers outside the firm and in that event will endeavor to seek qualified attorneys who charge fees at rates that are reasonable under the circumstances in the event any defendant refuses to take responsibility for the actions outlined by Bobby Pearson, the whistleblower in this matter. We are hoping that the responsible party for these actions takes responsibility early on and identifies the areas of concern and remediates the problem areas on the ranch and compensates you for your out of pocket expenses in dealing with this most unfortunate matter. If not, then this will require my firm to hire outside counsel to prosecute this matter fully and completely.

10.   **COURT AWARDED ATTORNEY'S FEES:** In the event that the court may, in its discretion, award a sum as attorney's fees, should the amount of attorney's fees awarded exceed the fees you have paid, we shall be entitled to an additional sum in the amount of the difference between the fees received from you and the fees awarded. The court's failure to award you attorney's fees shall not otherwise affect the fees to be paid our firm under this agreement.

11.   **COSTS AND EXPENSES:** In addition to the professional fees charged by the law firm, you will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representative and obtain approval for major expenses in advance, which approval shall be given by the Representative. These costs and expenses include, but are not limited to the following:

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firm advances such sums, then you agree to reimburse the firm for all sums so paid.

12.  DISCUSSION OF ESTIMATES OF FEES: During the course of the attorney's discussion with you about handling this matter, the attorneys may have provided you with certain estimates of the magnitude of the fees and expenses that will be required at

-6-

certain stages of this litigation. It is the law firm's policy to advise all its clients that such estimates are just that, and that the fees and expenses required are ultimately a function of many conditions over which the attorneys have little or no control, particularly the extent to which the opposition files pretrial motions and engages in its own discovery. The reason why the attorneys submit bills to clients on a monthly basis shortly after the services are rendered is so the clients will have a ready means of monitoring and controlling the expenses they are incurring. If the clients believe the expenses are mounting too rapidly, the clients agree to contact the attorneys immediately so they can assist in evaluating how expenses might be curtailed in the future. When the attorneys do not hear from the clients, they may assume that the clients approve of the overall level of activity on their part in this case on the clients behalf.

**13. OVERTIME FOR CLERICAL HELP:** The clients understand that from time to time, the attorneys may be called upon to render legal services in the clients' behalf during evenings, weekends and on other holidays in order to meet time schedules or other emergency situations as they may arise. In such an event, the clients agree to reimburse the firm for any additional expenses incurred by them by way of overtime or additional temporary help such as Manpower or other temporary services.

**14. NOTICE TO CLIENTS:** The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**15. ARBITRATION:** Any fee dispute arising under this agreement and/or the services rendered for you by our firm will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non appealable. The arbitrator will be selected as follows:

(1) Arbitration will be determined by a retired district judge who has previously served on any of the Bexar County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Bexar County, Texas.

16. **LAW APPLICABLE AND VENUE:** This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Bexar County, State of Texas.

17. You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

18. You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

19. If the foregoing terms and conditions accurately summarize and confirm your understanding of our engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen, Individually, and representative of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

_____
JAMES A. McALLEN, Individually

_____
JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., McAllen
Trust Partnerships and John R. Willis
Management Partnership, Ltd.

-8-

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Ave.
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 - Facsimile

JON L. ANDERSON        JAMES W. HUNTER        965-686-9403        p.3
FAX: 2100283340        Jan 25 2005  10:03

## JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
8135 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 686-9936                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

RE:     Contract of Employment Regarding Representation of El Rucio Land and
        Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
        Partnership and John R. Willis Management Partnership Ltd., related to
        prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
        Conoco/Phillips Inc.

Dear Mr. & Mrs. McAllen:

        The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

### DESCRIPTION OF SERVICES

        1.      CLIENTS AND CLIENT REPRESENTATIVES:  The firm is being retained
to represent the following:

                1.      El Rucio Land and Cattle Company, Inc. – Representative –
                        James A. McAllen

                2.      San Juanito Land Partnership Ltd. – Representative –
                        James A. McAllen

                3.      McAllen Trust Partnership – Representative – James A.
                        McAllen

Page 2

    4.    John R. Willis Management Partnership Ltd. – Representative – Frances W. McAllen

    The representatives of the aforementioned entities are James A. McAllen and Frances W. McAllen.

    **2.**    **PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

    **3.**    **LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

    **4.**    **NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

    **5.**    **TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

    1.    Proper and expected behavior of counsel are described in the Creed.

    2.    Civility and courtesy are expected from lawyers and are not a sign of weakness.

    3.    I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

    4.    I will not pursue tactics which are intended primarily for delay.

Page 3

    5.    I will not pursue any course of action which is without merit.

    6.    I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

    7.    You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

    6.    FEES:  The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  Our fees, retainer and payment policies are based upon:

    1.  the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

    2.  the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

    3.  the fee customarily charged in this locality for similar legal services;

    4.  the amount involved and the results obtained;

    5.  the time limitations imposed by you or by the circumstances of our engagement;

    6.  the nature and length of our professional relationship with you;

    7.  the experience, reputation and ability of the lawyer or lawyers performing the services; and

    8.  whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

JUN 0.  ANDERSON          James M. McAllen     Fax:2106265340          965-686-9403     Jan 29 2003  16.03     P.00          P.6

Page 4

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm.  The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages.  Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest  at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

**8.     COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation.   To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives.  These costs and expenses include, but are not limited to, the following:

1)     Court costs;

2)     Citation and/or subpoena fees;

3)     Deposition fees, costs and expenses;

JUN C. ANDERSON        James H. Martin        565-686-9403        p.7
                        Fax:2106263340        Jan 25 2005  15:10   P.07

Page 5

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.    NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.   ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)  Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Page 6

**11.    LAW APPLICABLE AND VENUE:** This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

**12.**    You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**13.**    You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

**14.**    If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and representatives of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., and McAllen
Trust Partnerships

FRANCES McALLEN
On Behalf of John R. Willis Management,
Partnership, Ltd.

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

# EXHIBIT 2

CAUSE NO. 2005-23091

EL RUCIO LAND AND CATTLE,  §
COMPANY, INC., SAN JUANITO  §
LAND PARTNERSHIP, LTD.,  §
MCALLEN TRUST PARTNERSHIP,  §
and JAMES ARGYLE MCALLEN,  §
 §    **ARBITRATION BEFORE**
 §    **THE HONORABLE DARYL K.**
 §    **BRISTOW, CLAYTON J. HOOVER,**
      Claimants,  §    **AND DONATO D. RAMOS**
 §
VS.  §
 §
 §
FOREST OIL CORPORATION AND  §
DANIEL B. WORDEN,  §
 §
      Respondents.  §

## FINAL JUDGMENT AND DECISION OF THE PANEL

After considering the testimony and evidence offered by the parties and admitted during the arbitration hearing, the Panel makes the following findings of fact and conclusions of law and enters judgment as herein provided. Any findings of fact that are more properly conclusions of law should be so construed. Conversely, any conclusions of law that are more properly findings of fact should be so construed.

### FINDINGS OF THE PANEL

1.     El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen (collectively the "Claimants") are the owners in fee of certain ranchlands in Hidalgo County, Texas, known as El Rucio, San Juanito, and Tres Corrales ranches, collectively known as the McAllen Ranch.

2804

2.      Respondent Forest Oil Corporation leases mineral rights on approximately 3,000 acres of the McAllen Ranch; the Forest leases cover approximately 1,500 acres out of the San Juanito Ranch.

3.      Forest Oil Corporation built and still operates a natural gas plant on approximately 5.75 acres of the McAllen Ranch.

4.      Respondent Daniel B. Worden has been, and continues to be, an employee of Forest Oil, who works at the McAllen Ranch. However, we make no findings of liability with respect to Mr. Worden and hereby exclude him from the remainder of this decision. It is therefore Ordered, Adjudged and Decreed that claimants take nothing from Defendant Daniel B. Worden.

## DECISIONS OF THE PANEL

5.      The Panel hereby Orders, Adjudges and Decrees that Claimants are the prevailing parties in this matter and that Claimants El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership are entitled to actual damages in the amount of $15,000,000 collectively. The Panel further hereby Orders, Adjudges and Decrees that Mr. James Argyle McAllen, individually, is entitled to actual damages of $500,000.

6.      The Panel hereby Orders, Adjudges and Decrees that Claimants have met their burden of proof as required by law for their claims of exemplary damages and hereby awards exemplary damages to Claimants in the total amount of $500,000.

7.      The Panel hereby Orders, Adjudges and Decrees that Claimants are entitled to declaratory relief as requested regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement and hereby Orders, Adjudges and Decrees that:

         a.      Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

Page 2

2805

    b.    Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

    c.    Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

    d.    Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

8.    It is further Ordered, Adjudged and Decreed that Forest Oil shall provide assurance to Claimants for its performance of the continuing obligations imposed on Forest under the Surface Agreement by posting and delivering a bond to Claimants in the amount of $10,000,000, which bond shall be posted and valid and subsisting during the period of time concurrent with the term of the Surface Agreement.  Such bond shall be made payable to Claimants in the event of Forest Oil's failure or refusal to comply with this panel's judgment and/or Forest's continuing obligations under the Surface Agreement.

<u>AWARD OF ATTORNEYS' FEES</u>

9.    The Panel makes the following findings as to attorneys' fees:

    a.    Although the Panel finds that Claimants are the prevailing parties in this arbitration proceeding, the Panel also finds that Forest Oil is entitled to a credit for attorneys' fees required to determine the applicability of the parties' contractual arbitration agreement in the amount of $352,000;

    b.    Through the date of the arbitration hearing, the Panel finds Claimants had incurred reasonable and necessary attorneys' fees and expenses amounting to $5,369,374; and

    c.    Claimants continued to incur reasonable and necessary attorneys' fees and expenses through the arbitration hearing and in the course of preparing post-hearing briefing and proposed findings of fact and conclusions of law at the request of the Panel, which fees and expenses shall be submitted by Claimants to the Panel for final confirmation.

2806

10.    The Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil their reasonable attorneys' fees and expenses in the amount of $5,017,374 ($5,369,374.00 less $352,000.00), plus any fees submitted and confirmed by the Panel pursuant hereto.

The Panel's decision and award, including all findings of fact and conclusions of law, are final and binding.

Panel Member Bristow does not join in this decision and dissents.

SIGNED on this 29th day of February, 2012.

BY THE MEMBERS OF THE PANEL:

_____     _____     (DISSENTING)
CLAYTON J. HOOVER, CHAIR      DONATO D. RAMOS                DARYL K. BRISTOW

2807

CAUSE NO. 2005-23091

| | |
|---|---|
| EL RUCIO LAND AND CATTLE, COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP, and JAMES ARGYLE MCALLEN,<br><br>          Claimants,<br><br>VS.<br><br>FOREST OIL CORPORATION AND DANIEL B. WORDEN,<br><br>          Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§     ARBITRATION BEFORE<br>§     THE HONORABLE DARYL K.<br>§     BRISTOW, CLAYTON J. HOOVER,<br>§     AND DONATO D. RAMOS |

## ATTORNEYS FEES  AWARDED IN SECTIONS 9 AND 10 OF FINAL JUDGMENT AND DECISION OF THE PANEL

Pursuant to Sections 9 and 10 of the Final Judgment and Decision of the Panel dated February 29, 2012, and after considering the additional evidence requested by the Panel as to attorneys fees and expenses incurred by Claimants prior to and during the arbitration hearing and for post-hearing submissions, the Panel hereby Orders, Adjudges and Decrees that Claimants, as prevailing parties, shall recover from Forest Oil as attorneys' fees and expenses incurred prior to and during the arbitration hearing and for post-hearing submissions the amount of $1,764,428.

**Panel Member Bristow does not join in this decision and dissents.**

**SIGNED on this 9th day of September, 2012.**

**BY THE MEMBERS OF THE PANEL:**

| | | |
|---|---|---|
| /s/ Clayton J. Hoover | /s/ Donato D. Ramos | (DISSENTING) |
| **CLAYTON J. HOOVER, CHAIR** | **DONATO D. RAMOS** | **DARYL K. BRISTOW** |

# EXHIBIT 3

Filed 12 October 3 P4:25
Chris Daniel - District Clerk
Harris County
ED101J017111638
By: deandra mosley

NO. 2005-23091

| | | |
|---|---|---|
| FOREST OIL CORPORATION AND DANIEL B. WORDEN,<br>    Plaintiffs, | § § § § | IN THE DISTRICT COURT OF |
| V. | § § § | |
| EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., McALLEN TRUST PARTNERSHIP,<br>    Defendants and Counter-Plaintiffs, | § § § § § § | HARRIS   COUNTY,   TEXAS |
| and | § § | |
| JAMES ARGYLE McALLEN,<br>    Intervenor. | § § | 55TH  JUDICIAL  DISTRICT |

*P8*

*ARBIX*

*18|B*

## FINAL JUDGMENT

Plaintiffs are Forest Oil Corporation and Daniel B. Worden.  Defendants and Counter-Plaintiffs are El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership.  Intervenor is James Argyle McAllen.

This case was arbitrated.  Defendants and Intervenor were the Claimants in the arbitration proceeding.  A majority of the arbitration panel issued the Final Judgment and Decision of the Panel on February 29, 2012 ("the February 29 Arbitration Award").  The February 29 Arbitration Award awarded Defendants and Counter-Plaintiffs El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership, and Intervenor James Argyle McAllen (collectively "Claimants") relief in the form of damages, declaratory relief, and attorneys' fees against Forest Oil Corporation.  The February 29 Arbitration Award also specifically indicated in paragraphs 9(c) and 10 of the Award that additional attorneys' fees would be added to the Award and directed Claimants to submit the additional fees to the panel for confirmation.  On September 9, 2012, a majority of the arbitration panel issued its Attorneys

24115

Fees Awarded in Sections 9 and 10 of Final Judgment and Decision of the Panel, and the Chairman of the Arbitration Panel sent an email to all parties clarifying that Award that same day (collectively "the September 9 Arbitration Award"). The September 9 Arbitration Award awarded Claimants the additional attorneys' fees that were expressly contemplated in the February 29 Arbitration Award.

Claimants filed a motion to confirm the February 29 Arbitration Award, and Forest Oil Corporation filed a motion to vacate it. The Court held an oral hearing on the motions and confirmed the February 29 Arbitration Award in all respects except where it vacated the bond requirement securing the performance of Forest Oil Corporation's obligations under the 1999 Surface Agreement.

The Court incorporates by reference, for all purposes, the February 29 Arbitration Award, the September 9 Arbitration Award, the Court's September 18, 2012 Order on Forest's Motion to Vacate the Arbitration Panel's Unreasoned 2-1 Award, and all of the Court's other prior rulings. The Court has determined that based on the February 29 Arbitration Award and the September 9 Arbitration Award Claimants are entitled to judgment against Forest Oil Corporation as follows:

1. Actual damages in the amount of $15,000,000 to El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership

2. Actual damages of $500,000 to James Argyle McAllen, individually

3. Exemplary damages to Claimants in the total amount of $500,000

4. Attorneys' fees and expenses in the amount of $5,017,374 to Claimants

5. Additional attorneys' fees and expenses in the amount of $1,764,428 to Claimants

6. Declaratory relief as requested regarding Claimants' rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement as follows:

24116

a.  Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

b.  Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c.  Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d.  Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

It is therefore,

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is vacated with respect to the requirement that Forest Oil Corporation post a bond.  It is further

ORDERED, ADJUDGED, and DECREED that the February 29 Arbitration Award is confirmed in all respects other than the requirement that Forest Oil Corporation post a bond.  It is further

24117

ORDERED, ADJUDGED, and DECREED that the September 9 Arbitration Award is confirmed in all respects. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for actual damages in the amount of $15,000,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, individually, have and recover judgment for actual damages of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for exemplary damages in the total amount of $500,000 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen have and recover judgment for attorneys' fees and expenses amounting to $6,781,802 against Forest Oil Corporation. It is further

ORDERED, ADJUDGED, and DECREED that Claimants are entitled to declaratory relief regarding their rights and Forest Oil's obligations to Claimants under the 1999 Surface Agreement, and it is ORDERED, ADJUDGED, and DECREED that:

    a. Forest Oil has a continuing obligation and duty under the Surface Agreement to locate, remediate and dispose of all hazardous and non-hazardous materials from the McAllen Ranch related to Forest Oil's operations;

24118

b. Forest Oil is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of Forest Oil's operations on the lease;

c. Forest Oil is solely responsible for reimbursing Claimants for any future costs and expenses incurred by Claimants in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the McAllen Ranch resulting from Forest Oil's operations; and

d. Forest Oil is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement. It is further

ORDERED, ADJUDGED, and DECREED that El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen take nothing on their claims against Daniel B. Worden. It is further

ORDERED, ADJUDGED, and DECREED that this judgment shall bear post-judgment interested from the date it is signed until satisfaction or payment at the rate of 5% compounded annually.

The clerk is directed to issue all writs necessary for execution of this judgment.

All relief not expressly granted herein is denied. This judgment finally disposes of all

24119

claims and all parties and is appealable.

Signed this ___9___ day of ___Oct___ 2012.

_____
JUDGE PRESIDING

24120

# EXHIBIT 4

FILE COPY

# IN THE SUPREME COURT OF TEXAS

### NO. 14-0979

FOREST OIL CORPORATION, NOW KNOWN AS SABINE OIL & GAS CORPORATION, PETITIONER

V.

EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., MCALLEN TRUST PARTNERSHIP, AND JAMES ARGYLE MCALLEN, RESPONDENTS

## **MANDATE**

**To the Trial Court of Harris County, Greetings:**

Before our Supreme Court on April 28, 2017, the Cause, upon petition for review, to revise or reverse your Judgment.

No. **14-0979** in the Supreme Court of Texas

No. **01-13-00040-CV** in the **First** Court of Appeals

No. **2005-23091** in the **55th District Court** of Harris County, Texas, was determined; and therein our said Supreme Court entered its judgment or order in these words:

THE SUPREME COURT OF TEXAS, having heard this cause on petition for review from the Court of Appeals for the First District, and having considered the appellate record, briefs, and counsel's argument, concludes that the court of appeals' judgment should be affirmed.

IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:

1)      The court of appeals' judgment is affirmed;

2)      Respondents El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership, and James Argyle McAllen shall recover, and petitioner Forest Oil Corporation, now known as Sabine Oil & Gas Corporation, shall pay, the costs incurred in this Court.

Copies of this judgment and the Court's opinion are certified to the Court of Appeals for the First District and to the District Court of Harris County, Texas, for observance.

FILE COPY

**Wherefore we command you** to observe the order of our said Supreme Court in this behalf, and in all things to have recognized, obeyed, and executed.

BY ORDER OF THE SUPREME COURT OF THE STATE OF TEXAS,

with the seal thereof annexed, at the City of Austin, this the 9th day of June, 2017.

Blake A. Hawthorne, Clerk

By Monica Zamarripa, Deputy Clerk

# EXHIBIT 5

CAUSE NO. 2005-23091

| | | |
|---|---|---|
| Forest Oil Corporation | § | In the District Court |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Harris County, Texas |
| | § | |
| El Rucio Land and Cattle | § | |
| Company, Inc., San Juanito Land | § | |
| Partnership, Ltd., McAllen Trust | § | |
| Partnership, | § | |
| | § | |
| Defendants and Counter-Plaintiffs, | § | |
| | § | |
| and | § | |
| | § | |
| James Argyle McAllen, | § | |
| | § | |
| Intervenor. | § | 55th Judicial District Court |

### Plaintiff's Unopposed Motion to Release Supersedeas Bond

Plaintiff Forest Oil Corporation ("Forest") files this motion to release supersedeas bond. Defendants and Intervenor do not oppose this motion.

On January 14, 2013, the District Clerk approved the Supersedeas Bond ("Bond") filed by Forest, a true and correct copy of which is attached as Exhibit A. The Bond amount is $25 million. The surety's liability under the Bond is conditional: "The condition of this obligation is such that if the Principal shall diligently prosecute its appeal to a decision, and shall promptly perform and satisfy the judgment, then this obligation will be void; otherwise to remain in full force and effect."

The appeal of this case is now concluded. The issuer of the bond, Arch Insurance Company, has paid defendants and intervenor $25 million, the full amount of the bond. And by agreement with defendants and intervenor, the remainder of the judgment will be satisfied within the month by the distribution of stock and warrants in the reorganized successor to Forest.

Because the entire amount of the judgment made final on appeal will be satisfied, and because the supersedeas bond amount has been exhausted, the supersedeas bond should be released.

Forest requests that the Court order the District Clerk to immediately release and return the original supersedeas bond to its attorney, Johnny W. Carter, Susman Godfrey L.L.P., 1000 Louisiana St., Ste. 5100, Houston, TX 77002.

Respectfully submitted,

By: /s/ Johnny W. Carter
Geoffrey L. Harrison
gharrison@susmangodfrey.com
State Bar No. 00785947
Johnny W. Carter
jcarter@susmangodfrey.com
State Bar No. 00796312
Richard W. Hess
rhess@susmangodfrey.com
State Bar No. 24046070
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Telecopy: (713) 654-6666

*Attorneys for Forest Oil Corporation*

## Certificate of Conference

Johnny Carter, counsel for Forest Oil Corporation, conferred on September 21, 2017 with Warren Harris, counsel for Defendants and Intervenor, about the substance of this motion. Mr. Harris stated that his clients were unopposed to the motion.

/s/ Johnny W. Carter
Johnny W. Carter

2

## Certificate of Service

I certify that on September 22, 2017, a true and correct copy of this document properly was served on the following counsel of record in accordance with the TRCP via electronic efiling and email by agreement with the parties:

| | |
|---|---|
| Jon Christian Amberson<br>Larissa Janne Hood<br>JON CHRISTIAN AMBERSON, P.C.<br>2135 East Hildebrand Avenue<br>San Antonio, TX 78209<br>chris@ambersonpc.com<br>larissa@ambersonpc.com<br>*Counsel for Defendants and Intervenor* | Fernando Mancias<br>LAW OFFICES OF FERNANDO G. MANCIAS, PLLC<br>4428 S. McColl Road<br>Edinburg, TX 78539<br>Fernando@fernandomanciaslaw.com<br>*Counsel for Defendants and Intervenor* |
| John Carroll<br>ATTORNEY AT LAW<br>111 West Olmos Drive<br>San Antonio, TX 78212<br>jcarrollsatx@gmail.com<br>*Counsel for Defendants and Intervenor* | |
| Warren W. Harris<br>Bracewell LLP<br>711 Louisiana St., Ste. 2300<br>Houston, TX 77002-2770<br>warren.harris@bgllp.com<br>*Counsel for Defendants and Intervenor* | |

/s/ Johnny W. Carter
Johnny W. Carter

# EXHIBIT 6

## Special Warranty Deed

| | |
|---|---|
| **Effective Date:** | September 23, 2008 |
| **Grantor:** | James A. McAllen |
| **Grantor's Mailing Address:** | P.O. Box 1139<br>Edinburg, TX 78540 |
| **Grantee:** | ExStra-McAllen, LLC, a Texas Limited Liability Company<br>c/o Exchange Strategies Corporation |
| **Grantee's Mailing Address:** | 900 E. Hamilton Avenue, Suite 100<br>Campbell, CA 95008 |

**Consideration:**   TEN AND NO/100 DOLLARS and other good and valuable consideration.

**Property:**

The property located in Hidalgo County, Texas, described on the attached Exhibit A, which Exhibit A is incorporated by reference, together with all improvements and all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, appurtenances, water, riparian or lateral rights belonging or in anywise appertaining thereto; and all rights titles and interest of Grantor in and to any roads, ways, strips or gores of land adjacent to any of the real property.

**Reservations From and Exceptions to Conveyance and Warranty:**

All valid and effective easements, rights-of-way, reservations, leases, outstanding mineral and royalty interests and leases, use restrictions and protective covenants and encumbrances that affect the property; taxes and assessments for 2008 and all subsequent years, the payment of which Grantee assumes; rights of parties in possession; any discrepancies, conflicts or shortages in area or boundary lines or encroachments or protrusions or any overlapping of improvements; visible and apparent easements; and all laws, rules, ordinances and regulations of any governmental authority having jurisdiction.

Grantor, for the consideration, the receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold unto Grantee and Grantee's successors and assigns forever. Grantor binds Grantor and Grantor's successors to warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns against every party whomsoever lawfully claiming or to claim the same or any part

thereof, by, through and under Grantor only and not otherwise, except as to the reservations from and exceptions to conveyance and warranty.

Grantee, by accepting delivery of this deed, confirms that the Property is sold, conveyed and delivered by Grantor to Grantee and accepted by Grantee, AS IS, WITH ALL FAULTS, and in its current condition and appearance,

GRANTOR:

James A. McAllen

ACKNOWLEDGMENTS

STATE OF TEXAS       §
COUNTY OF HIDALGO    §

This instrument was acknowledged before me on September 23, 2008 by James A. McAllen.

Notary Public, State of Texas

MELISSA N. MIKULIK
Notary Public, State of Texas
My Commission Expires
May 03, 2009

2

# EXHIBIT A

TRACT I:

All of Lot Two (2) or Tract No. Two (2), PARTITION OF SHARES 1 AND 2 OF THE LINO HINOJOSA PARTITION OF SHARE SIX (6) AND PARTS OF SHARE TWELVE-A (12-A) AND SIXTEEN (16), SAN RAMON GRANT, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 15, Page 24, Map Records, Hidalgo County, Texas.

TRACT II:

The North 20.19 acres of Lot One (1) KELLY-PHARR SUBDIVISION, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 3, Page 133-134, Deed Records, Hidalgo County, Texas.

TRACT III:

Parcel A:

The South 20.24 acres of Lot Thirteen (13), Section Hundred Seventy (270), TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY OF LANDS, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, Page 168-171, Deed Records, Hidalgo County, Texas.

Parcel B:

A tract of land containing 17.61 acres, more or less, out of Lot Fourteen (14), Section Two Hundred Seventy (270), TEXASMEXICAN RAILWAY COMPANY'S SURVEY of lands in Hidalgo County, Texas, as per map or plat thereof recorded in Volume 24, pages 168-171, Deed Records, Hidalgo County, Texas, said 17.61 acre tract being more particularly described as follows:

BEGINNING at the point of intersection of the South right-of-way line of "I" Road and the West line of said Lot 14, said point being South 08 degrees 59 minutes West 13.71 feet from the Northwest corner of said Lot 14;

THENCE, with and along the South right-of-way line of "I " Road South 34 degrees 06 minutes 52 seconds East a distance of 349.69 feet;

THENCE, South 68 degrees 32 minutes East a distance of 89.55 feet to a point in the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way;

THENCE, continuing with the centerline of the 100 foot abandoned Missouri-Pacific Railroad right-of-way South 32 degrees 38 minutes East a distance of 991.87 feet to the point of intersection of the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the West right-of-way line of U. S. Highway 281 Bypass on a curve to the right through an arc of 03 degrees 45 minutes 10 seconds, said curve having a radius of 3,819.5 feet and a length of 250.17 feet, the chord of said curve bears South 13 degrees 22 minutes 34 seconds West a

3

distance of 250.10 feet to the point of intersection of the South line of said Lot 14, and the West right-of-way line of U. S. Highway 281 Bypass;

THENCE, continuing with the South line of said Lot 14, North 81 degrees 07 minutes 18 seconds West a distance of 580.18 feet to a point in the centerline of "I" Road;

THENCE, continuing with the South line of said Lot 14 North 81 degrees 42 minutes 18 seconds West a distance of 385.8 feet to the Southwest corner of said Lot 14;

THENCE, with and along the West line of said Lot 14 North 08 degrees 59 minutes East a distance of 1,271.29 feet to the CORNER OF BEGINNING, said tract containing 17.61 acres, more or less.

SAVE AND EXCEPT a 3.79 acre tract out of the Lot 14, Section 270, lying West of the West right-of-way line of "I" Road, TEXAS-MEXICAN RAILWAY COMPANY'S SURVEY, Hidalgo County, Texas, described in Deed dated June 26, 2006, from James A. McAllen et ux to Lance Walker, recorded under Document No. 1633009, Official Records, Hidalgo County, Texas.

# EXHIBIT 7

**Form 424**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
Filing Fee: See Instructions



**Certificate of Amendment**

This space reserved for office use.

**F I L E D**
in the Office of the
Secretary of State of Texas

**MAR 18 2009**

**Corporations Section**

---

## Entity Information

The name of the filing entity is:

ExStra-McAllen LLC

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                    ☐ Professional Corporation
☐ Nonprofit Corporation                     ☐ Professional Limited Liability Company
☐ Cooperative Association                    ☐ Professional Association
☑ Limited Liability Company                  ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: 801029324

The date of formation of the entity is:  9/16/08

## Amendments

### 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)
The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

Cannon Grove Investments LLC

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

Form 424                                     6

### Registered Agent
(Complete either A or B, but not both. Also complete C.)

☐ **A. The registered agent is an organization** (cannot be entity named above) **by the name of:**

_____

**OR**

☑ **B. The registered agent is an individual resident of the state whose name is:**

| Benjamin | | McCaleb | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

**C. The business address of the registered agent and the registered office address is:**

| 2135 E. Hilderbrand Ave. | San Antonio | | TX | 78209 |
|---|---|---|---|---|
| *Street Address (No P.O. Box)* | | *City* | *State* | *Zip Code* |

### 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

☐ **Add each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:**

☐ **Alter each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:**

☐ **Delete each of the provisions identified below from the certificate of formation.**

### Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

| Effectiveness of Filing (Select either A, B, or C.) |
| --- |

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

_____

| Execution |
| --- |

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:   3/18/09_____

*[signature]*

Managing Member
Signature and title of authorized person(s) (see instructions)

# EXHIBIT 8

## Ben McCaleb

| | |
|---|---|
| **From:** | Ben McCaleb |
| **Sent:** | Friday, August 22, 2008 4:12 PM |
| **To:** | 'al@alanlucke.com'; 'jim@mcallenranch.com'; 'Richard Leshin' |
| **Cc:** | 'vicki@mcallenranch.com'; 'tim@alanlucke.com' |
| **Subject:** | RE: Purchase of Christian Ranch |
| **Attachments:** | diagram--split conveyance and Exchange first 1031.pdf; exstra_FIRST_pro_forma_sample.pdf; exstra_pro_forma_extension_sample.pdf |

Jim, Al and Richard—

The "Exchange First" 1031 exchange we have been discussing can be summarized as follows:

> The **Exchange First** form is frequently used when the Exchangor has arranged financing for the purchase of the New Property and the lender requires the Exchangor to be the borrower and hold title to the New Property directly. This form involves parking the Old Property with the EAT just prior to the acquisition of the New Property directly by the Exchangor. Typically, the EAT is formed and "borrows" the funds necessary to acquire the Old Property from the Exchangor. Title to the Old Property is transferred to the EAT as an interim buyer. The Exchangor then acquires the desired New Property and takes title to it directly. The exchange is then technically complete, the EAT having acquired the Old Property and the Exchangor having acquired the New Property, in that order. However, the Exchangor has 180 days to arrange for and complete the sale of the Old Property in order for the reverse exchange to be valid. Once a purchase and sale contract with the ultimate Buyer has been ratified, the contract is assigned to the EAT and the EAT "sells" the Old Property to the Buyer. In some cases, title is transferred to the Buyer and in other cases the LLC underlying the EAT is assigned to the Buyer. In either case, the funds from the purchase of the Old Property are immediately distributed to the Exchangor.

As we discussed, attached for your review are the following:

- My "rather involved" diagram *(I am not charging for the artistic content)*, setting forth how this "Exchange First" could be structured, assuming a split of the title into two surface owners and a mineral owner and THEN proceeding to do the exchange.
- The Intermediary's "pro forma" , describing this process in more detail (cost estimate $5000 to Intermediary)
- The Intermediary's "pro forma", describing this process in more detail if we are unable to sell the two tracts in 180 days and require an extension outside of the "IRS safe harbor rules" (cost estimate additional $10000 to Intermediary PLUS cost of financing temporary Investor of about $250,000…we would need to discuss this).

FYI, the intermediary's website is www.exstra1031.com and there is additional useful information there. In response to your questions regarding security with this intermediary, I refer you to the section at that website, which indicates they do not hold cash (which is what got so many of the standard 1031 exchange companies in trouble). They have been referred to me by Jefferson Bank and JPMorgan, who both use their services. By copy of this email, I am asking my contact there, Stan Freeman, to give us whatever additional information he would normally provide in order to make you feel comfortable "parking' a $5,000,000 piece of raw land with an LLC controlled by his company.

I look forward to talking with you Tuesday. FYI, please keep in mind that our Option/Review Period ends August 30.

Please call if you have any questions.

8/22/2008

FW: Revised McAllen Proform                                                Page 1 of 1

## Ben McCaleb

| | |
|---|---|
| **From:** | Shechtman, David [David.Shechtman@dbr.com] |
| **Sent:** | Thursday, March 12, 2009 9:26 AM |
| **To:** | stan@exstra1031.com; Ben McCaleb |
| **Subject:** | FW: Revised McAllen Proforma |
| **Attachments:** | Revised McAllen Proforma.PDF |

Stan and Ben,

Attached is a mark-up of the Proforma with my comments. In particular, I am thinking that it probably
is not necessary to have a lease from the LLC to McAllen as this might also look "funky" in the context
of the new structure. Rather, the LLC would just continue as landlord under the existing ag leases. Do
those leases throw off enough income to pay debt service on the loans? Also, given the new structure, I
don't think it is necessary to have any "guaranteed payments" to the investor.

David

David Shechtman
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Street
Philadelphia PA 19103
Phone 215-988-1167
Fax: 215-988-2757
Email: David.Shechtman@dbr.com


<<Revised McAllen Proforma.PDF>>

*********************************
Disclaimer Required by IRS Rules of Practice:
Any discussion of tax matters contained herein is not intended or written to be
used, and cannot be used, for the purpose of avoiding any penalties that may be
imposed under Federal tax laws.
*********************************
This message contains information which may be confidential and privileged.
Unless you are the intended addressee (or authorized to receive for the intended
addressee), you may not use, copy or disclose to anyone the message or any
information contained in the message. If you have received the message in error,
please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and
delete the message.
Thank you very much.
*********************************



# DrinkerBiddle

## David Shechtman
Partner



David Shechtman is chair of the Tax Team in the firm's Corporate and Securities Practice Group. His practice includes a wide range of federal, state and local tax matters, including capital asset disposition planning; tax aspects of mergers, acquisition and recapitalizations; capital asset disposition planning; S corporations and partnerships; and administrative appeals of federal, state and local tax controversies. He has developed a national practice in the area of like-kind exchanges of real estate and other assets. In his capacity as counsel to taxpayers and various exchange intermediaries, David has structured and documented hundreds of like-kind exchange transactions for major oil and gas, telecommunications and railroad companies, as well as REITs and smaller real estate owners. He also represents various banks and financial institutions in their capacities as intermediaries, trustees and escrow agents for exchanges. His clients include Wachovia Bank, Union Pacific, Richland Properties and Alliance Exchange Corporation.

Representative Matters:

- Obtaining a private letter ruling for one of the first "repetitive exchange programs" used by an auto leasing company for every disposition of its off-lease vehicles. Annual exchange values currently exceed $1 billion.
- Assisting a home builder client in establishing a structure for equity-based employee compensation combined with tax efficient inter-company transfers of land or contract rights to obtain land
- For a major oil and gas company, structuring as a series of safe-harbor "reverse" exchanges, an ongoing "raze and rebuild" program for existing gas station properties, coupled with various gas station dispositions aggregating more than $200 million.

David frequently writes on tax topics and also lectures at American Bar Association meetings and various conferences on tax law. He is an active member of the Section of Taxation of the American Bar Association, serving on the Corporate Tax Committee and currently serving as chair of the Committee on Sales, Exchanges and Basis. David is a former officer and current council member of the Philadelphia Bar Association's Tax Section and has chaired several committees which comment on proposed federal and state regulations. He also is the author of the chapters on federal and Pennsylvania taxes in the West publication *Pennsylvania Forms and Commentary - Business Organizations* He is a fellow of the American

## CONTACT INFO

Philadelphia
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-1167
(215) 988-2757 fax
David.Shechtman@dbr.com

## RELATED PRACTICES

Corporate & Securities
Tax

## EDUCATION

Cornell Law School, J.D. 1977
Swarthmore College, B.A. 1974 high honors

## BAR ADMISSIONS

Pennsylvania

# DrinkerBiddle

**David Shechtman | Page 2**

College of Tax Counsel.  David is admitted to practice in Pennsylvania.

**Presentations and Publications.**  David frequently speaks on the subject of like-kind exchanges and other tax topics.  His recent presentations include *Like-Kind Exchanges:  Creative Planning Techniques*, Pennsylvania Bar Institute, March, 2007; *Current Developments Under §1031*, ABA Tax Section Meeting, January, 2007; *Like-Kind Exchanges Under §1031*, Center for Professional Seminars "Eleventh Annual National Conference on Like-Kind Exchanges Under §1031," October 2006; *1031 Like-Kind Exchanges* sponsored by Wachovia Exchange Services, Inc, May 2006; *Tax Consequences of Litigation Settlements and Awards*, Pennsylvania Bar Institute, October 2005; *Like-Kind Exchanges of Intangibles*, ABA Tax Section Meeting, May 2005; Reverse *Like-Kind Exchanges and Other "Hot" Exchange Issues*, New York University "59th Institute on Federal Taxation," October 2000; and *Tax Issues Arising From Employment Discrimination Awards and Settlements*, 54th Annual Penn State Tax Conference, June 2000.  He recently authored *IRS Provides Exchange Deadline Relief for Disaster Victims and (Perhaps) a Remedy for Others*, Real Estate Taxation, Volume 32/Issue 4, Third Quarter 2005, Thompson Legal & Regulatory Group and co-authored *Reverse and Build-to-Suit Like Kind Exchanges*, Proceedings of the New York University 59th Institute on Federal Taxation 2001, published by Matthew Bender & Company, Fall 2001.

**In General.**  A 1974 graduate of Swarthmore College, David received his bachelor's degree, with high honors, in economics.  An active participant in undergraduate activities, he served as an editor of the campus newspaper and played on the varsity basketball team.  David earned his J.D. degree from Cornell University Law School in 1977.  While in law school, he was a moot court finalist and won the Evidence Prize for the best evidence exam.

## PUBLICATIONS

Pennsylvania Realty Transfer Tax Update, Tax Alert, January 2008.

Pennsylvania Department of Revenue Makes Major Changes to Realty Transfer Tax Regulations, December 2007.

Tax Alert - Changes to Pennsylvania's Taxes, July 2006.

# EXHIBIT 9

JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
2135 HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209
TELEPHONE 210/826-3339
FACSIMILE 210/826-3340

### FACSIMILE TRANSMISSION FORM

## ATTORNEY/CLIENT CONFIDENTIAL

DATE:  March 11, 2009                    TIME: _____ .M.

SENDER:      Jon Christian Amberson

PLEASE DELIVER TO:  Jimmy

                    (956) 360-0112


NUMBER OF PAGES IN TRANSMISSION, INCLUDING COVER SHEET __3__

OPERATOR: Brenda

IF THERE IS A PROBLEM WITH TRANSMISSION,
PLEASE CONTACT OPERATOR AT 210.826-3339.

MESSAGE:

THIS INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR AGENT
RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT.  YOU ARE HEREBY NOTIFIED
THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY
NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO THIS OFFICE AT THE
ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

### THANK YOU

# JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW
2135 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3909                                    TELECOPIER (210) 826-3040

March 11, 2009

James A. McAllen
McAllen Ranch
P.O. Box 1139
Edinburg, Texas 78540-1139

        RE:  1031 Exchange

Dear Jimmy,

        I have consulted with Julie Norton regarding the proposed 1031
exchange you are working on with your attorneys Ben McCaleb and
Richard Leshin and she has advised me to write you this letter in
order to confirm exactly what we can and cannot do.

        Ben McCaleb has asked on your behalf whether I would be in a
position to accommodate the 1031 transaction structure recommended
by your attorneys and CPA, Al Lucke.  He informed me that Mary
Margaret is not able to facilitate your needs in the transaction
due to her disqualification as a related person under the Internal
Revenue Code.   Mr. McCaleb has asked if I was willing to
accommodate you in this transaction due to the fact that I am not
related for IRS purposes.

        In order for me to accommodate this transaction, Mr. McCaleb
has proposed that you loan me $4.5 million dollars and I then
purchase 90% of an entity that owns property you own, which I will
then own in return for the $4.5 million dollar investment I make.
I informed Julie of this proposal by your attorneys and she
informed me that we could not do this in the manner proposed by
your attorneys and tax advisors.  She went on to inform me that the
purchase would be in direct violation of the meaning of the IRS
Code, which requires it to be an arms length transaction unrelated
to you.  In other words, the $4.5 million dollars used to make the
necessary purchase cannot be tied in any way to the 1031
transaction.  Julie is concerned that I could not represent to the

Mr. James A. McAllen
March 11, 2009
Page 2

IRS that the source of the $4.5 million dollars was not received
from you to facilitate this 1031 related transaction when in truth
and in fact, it is. Therefore, if you decide to go forward, then
I must treat it as a gift, which I will invest by purchasing your
entity. This way in the event of an audit, Mary Margaret and I
don't get into trouble with the IRS on a misrepresentation and
possible tax fraud issue.

We are happy to help in any way we can, but our CPA advises
that this is the only way we can participate. Please have Al Lucke
call Julie Norton to discuss her concerns and if you decide to
proceed, we are happy to help.

Very Truly Yours,

Jon Christian Amberson

JCA/bkg

# EXHIBIT 10



**Ben McCaleb**

| | |
|---|---|
| **From:** | Ben McCaleb <bmccaleb@cbmccaleb-law.com> |
| **Sent:** | Wednesday, March 18, 2009 5:12 PM |
| **To:** | 'chris@ambersonpc.com'; 'Vicki'; 'jim@mcallenranch.com' |
| **Cc:** | 'Lesslie L. Eanes'; 'Melissa N. Mikulik'; 'stan@exstra1031.com' |
| **Subject:** | FW: James A. McAllen --RELATED 1031 EXCHANGE |
| **Attachments:** | IOLTA - FNB Acct. Wiring Instructions.doc |

Chris and Jim—

The funds for the purchase of your respective entity's interests in **ExTra-McAllen LLC** should be wired as early as possible in the morning into the escrow account shown in the attached Wire Transfer Instructions.  The amounts are as follows:

- **Amberson Natural Resources, LLC** ---$4,500,000
- **Ranch Specialties Company** ---$500,000

If you have any questions or problems with the wire, please contact the escrow facilitator, **Lesslie L. Eanes**, as follows:

**Lesslie L. Eanes**
*Attorney at Law*
315 E. McIntyre
Edinburg Texas 78541
Phone: 956-383-1656
Mobile: 956-369-0340
Fax: 956-380-0428
Email: LesslieE@landtitleusa.com



Please give me a call with any questions.

*C. Benjamin McCaleb*
*C. Benjamin McCaleb, P. C.*
*2135 E. Hildebrand Avenue*
*San Antonio, Texas 78209*
*tel: 210-736-2222*
*fax: 210-881-0200*
*bmccaleb@cbmccaleb-law.com*

Board Certified--Commercial Real Estate Law
Texas Board of Legal Specialization

---

**From:** Lesslie L. Eanes [mailto:LesslieE@landtitleusa.com]
**Sent:** Wednesday, March 18, 2009 9:21 AM
**To:** Ben McCaleb
**Cc:** Melissa N. Mikulik
**Subject:** RE: James A. McAllen --RELATED 1031 EXCHANGE

Wiring instructions are attached.

Thanks!

| WIRING INSTRUCTIONS |
|---|
| |
| |
| **First National Bank** |
| **ABA NO.**        **1415** |
| |
| **CREDIT TO ACCOUNT NO**        **4433** |
| |
| **IN THE NAME OF: Lesslie L. Eanes Attorney at Law** |
| **IOLTA FOUNDATION TRUST ACCOUNT** |
| |
| **REFERENCE TO James A. McAllen** |
| |
| |
| **PLEASE FAX CONFIRMATION WHEN WIRE IS RECEIVED TO** |
| **956-384-0428** |

315 E. McIntyre  •  Edinburg, Texas 78541  •  (956) 383-1656

# Exhibit B

Electronically Filed
11/16/2017 12:26 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## SUPPLEMENTAL DECLARATION OF JON CHRISTIAN AMBERSON

Jon Christian Amberson declares as follows:

1.     I am over the age of 18 years, competent to testify, and declare under penalty of perjury that, to my personal knowledge, the facts stated below are true and correct.

2.     On October 27, 2017 I signed a declaration in support of the Amberson Parties' (i) Motion for Partial Summary Judgment as to the "Cannon Grove" Claims and (ii) Motion to Retain the Cannon Grove Claims for Disposition by the Court. I submit this declaration as a supplement to my October 27, 2017 declaration in support of both motions.

3.     On January 25, 2005, the McAllen Parties executed two engagement letters with the Amberson Firm, both of which provided for arbitration of any fee dispute. One of those letters

Electronically Filed
11/16/2017 12:26 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

was attached as Exhibit 1 to my October 27, 2017 declaration. A true and correct copy of the other January 25, 2005 engagement letter is attached hereto as **Exhibit 1a.**

4.    I submit this Supplemental Declaration in lieu of an affidavit as authorized by TEX. CIV. PRAC. & REM. CODE § 132.001. In accordance with the statute, I state that my date of birth is December 24, 1956, and my current address is 2135 E Hildebrand Avenue, San Antonio, Texas 78209.

Executed in Bexar County, Texas on November 16, 2017.

Jon Christian Amberson

# Exhibit 1a

JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
8100 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-0030

TELECOPIER (210) 826-0540

January 25, 2005

James Argyle McAllen
James Argyle McAllen, Jr.
P.O. Box 1139
Edinburg, Texas  78540-1139

RE:   Contract of Employment Regarding Representation of James Argyle
      McAllen, Individually and James Argyle McAllen, Jr., Individually against
      Forest Oil Corporation and any other Responsible Entities.

Gentlemen:

The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C., and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies relating to environmental contamination issues related arising from illegal dumping of hazardous materials and radioactive materials.

## DESCRIPTION OF SERVICES

1.   **CLIENTS AND CLIENT REPRESENTATIVES:**  The firm is being retained to represent the following:

1.   James A. McAllen, Individually

2.   James A. McAllen, Jr., Individually

Page 2

**2.      PURPOSE OF REPRESENTATION:**  It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.      LEGAL REPRESENTATION:**  Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.  Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.      NO GUARANTEE OR INDUCEMENTS:**  It is understood that the firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.      TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed.  A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

    1.      Proper and expected behavior of counsel are described in the Creed.

    2.      Civility and courtesy are expected from lawyers and are not a sign of weakness.

    3.      I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

    4.      I will not pursue tactics which are intended primarily for delay.

    5.      I will not pursue any course of action which is without merit.

    6.      I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

Page 3

7.      You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.     FEES: The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

7. DETERMINATION OF FEES: The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of James Argyle McAllen and James Argyle McAllen, Jr., in the event of an adverse verdict.

Page 4

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8.    COSTS AND EXPENSES: You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1)    Court costs;

2)    Citation and/or subpoena fees;

3)    Deposition fees, costs and expenses;

4)    Investigation fees, costs and expenses;

5)    Expert witness fees, costs and expenses;

6)    Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)    Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)    Long distance telephone charges, and conference calls expenses;

Page 5

9) Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10) Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.    NOTICE TO CLIENTS:**    The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.    ARBITRATION:**    Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1) Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

**11.    LAW APPLICABLE AND VENUE:**    This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

**12.**    You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**13.**    You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

Page 6

14.     If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen and James Argyle McAllen, Jr.

_____
JAMES ARGYLE McALLEN,
INDIVIDUALLY

_____
JAMES ARGYLE McALLEN, JR.
INDIVIDUALLY

_____
Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

# Exhibit C

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## SECOND SUPPLEMENTAL DECLARATION OF JON CHRISTIAN AMBERSON, FILED IN RESPONSE TO "ALTER EGO" ALLEGATIONS

Jon Christian Amberson declares as follows:

1.     I am over the age of 18 years, competent to testify, and have personal knowledge that the facts stated below are true.

2.     I am providing this Second Supplemental Declaration in response to the McAllen Parties' baseless allegation that Jon Christian Amberson, P.C. (the "*Amberson Firm*") and Amberson Natural Resources LLC ("*ANR LLC*") are my "alter egos," such that the ANR LLC and I are somehow bound to arbitrate the Cannon Grove claims that have nothing to do with the Amberson Firm's 2005 arbitration agreement, which relates to the entirely separate Forest Oil litigation.

3.      My knowledge regarding the Amberson Firm and ANR LLC is based on my personal familiarity with both of those entities.

4.      I have read Section VI of "The McAllen Parties' Second Amended Answer, Counterclaims, and Claims Against Third-Parties," in which the McAllen Parties allege that the Amberson Firm and ANR LLC are my "alter egos" (they refer to ANR LLC and the Amberson Firm as the "corporations"). Their allegations are false. Their most specific statement made to support this allegation is the following conclusory statement:

> The total dealings of the corporations and individuals, including the failure to follow corporate formalities, the failure to keep corporate and individual property separate, the amount of AMBERSON's financial interest, ownership and control over the corporations, and the use of the corporations for AMBERSON's personal purposes, demonstrate a unity of interests between AMBERSON and his corporations such that the corporations are the alter ego of AMBERSON.

While this statement is vague to the extreme, it is nonetheless inaccurate for the reasons stated below.

5.      The legal standard in Texas for finding alter ego as to an entity engaged in a contractual transaction is stringent; it must be proven that the entity was used for the purpose of perpetrating a fraud. TEX. BUS. ORGS. CODE § 21.223(b). There must be something more than "unity of financial interest, ownership and control for a court to treat a principal of a corporation as an alter ego for the purpose of making the principal liable." *Endsley Electric, Inc. v. Altech, Inc.*, 378 S.W.3d 15, 23 (Tex. App.—Texarkana 2012, no pet.)

6.      It should be noted, first of all, that ANR LLC was the *only* entity owned by me that was involved in the Cannon Grove transaction in any way. The Amberson Firm was not involved; it did not even form that entity. Instead, it was formed for me on March 17, 2009 by Exchange Strategies Corp., which was engaged by James McAllen to help him effectuate his reverse 1031 tax-free exchange. In the certificate of formation, that entity listed McAllen's own

attorney in the Cannon Grove transaction, Ben McCaleb, as the initial registered agent of that company. *See* **Exhibit 1** attached.  In short, McAllen formed the company for me to use.  (I later filed a Certificate of Correction to confirm that I was the governing person. *See* **Exhibit 2** attached.)

7.     The assertion that I have subsequently failed to follow formalities with respect to this entity is equally untrue.  Attached hereto as **Exhibit 3** is ANR LLC's company agreement, which was also prepared for me *by McAllen's representatives* and executed on March 17, 2009 before the March 18th Cannon Grove transaction occurred.  It is in due form and complies with Texas law.  Mr. McAllen admits (p. 5 of his pleading) that he knew he was dealing with ANR LLC in connection with the Cannon Grove transaction; indeed, his own representatives formed the entity so that I could use it in the Cannon Grove transaction, so McAllen cannot credibly contend that ANR LLC was formed or used by me with the intention of perpetrating a fraud.

8.     Moreover, an LLC does not require annual meetings, elections, or other maintenance, and I have remained the only manager and member of that entity since 2009.  I have used it for no purpose other than (i) to hold the interest it purchased in Cannon Grove Investments, LLC and (ii) thereafter, to acquire and sell two pieces of property.  In addition, ANR LLC holds no interest in and does not participate in the Amberson Firm.

9.     Likewise, the Amberson Firm was properly organized under Texas law.  Attached hereto as **Exhibit 4** is a true and correct copy of the Articles of Incorporation of Jon Christian Amberson, P.C., which were filed with the Texas Secretary of State on August 30, 1999.  Since its inception the company, which has other personnel than myself, has duly practiced as a law firm in Texas; it has no interest in the bank accounts or assets, or involvement in the affairs, of ANR LLC.

10.     I certainly have not exercised any unusual "ownership and control" over the Amberson Firm that goes beyond the ownership and control that a shareholder would typically exercise over a single-shareholder company.  The same is true of my ownership of the single-member ANR LLC.  The Amberson Firm has its own offices, and has entered into its own engagement agreements with its clients, including the Engagement Agreement at issue in this case.  It has its own personal property such as office furniture, computer equipment, filing cabinets and the like.  The Amberson Firm, ANR LLC, and I maintain separate bank accounts. Neither the Amberson Firm nor ANR LLC owns my residence.

11.     I have not used either the Amberson Firm or ANR LLC to defraud any Defendant. As to the Amberson Firm, Mr. McAllen was fully aware that my law firm was organized as a professional corporation, and he signed the two Engagement Agreements with my law firm in connection with the Forest Oil litigation, both of which clearly indicated on their face that the firm is a professional corporation.  Since my law firm was successful in obtaining an arbitration judgment for the McAllen Parties worth at least $37 million, it is evident that the firm does practice law in its own right, and that Mr. McAllen has not proven that it is a mere alter ego of me.

12.     Nor did I "conspire" with either the Amberson Firm or ANR LLC to "falsely treat the MCALLEN loan as a gift and keep the 90% interest in Cannon Grove."  On the contrary, I expressly stated to Mr. McAllen in my March 11, 2009 letter (week prior to his transfer of funds in the Cannon Grove transaction) that my participation in the transaction would have to be based on the understanding that the funds were a gift, not a loan.  This is clearly reflected in the letter attached as Exhibit 9 to my original Declaration filed with the Court.

13.   I submit this Declaration in lieu of an affidavit as authorized by TEX. CIV. PRAC. & REM. CODE § 132.001.   In accordance with the statute, I state that my date of birth is December 24, 1956, and my current address is 2135 East Hildebrand, San Antonio, Texas 78209. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Bexar County, Texas on December 22, 2017.

Jon Christian Amberson

# Exhibit 1



Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300

**Certificate of Formation**
**Limited Liability Company**

Filed in the Office of the
Secretary of State of Texas
Filing #: 801098863 03/17/2009
Document #: 250349920002
Image Generated Electronically
for Web Filing

---

### Article 1 - Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

**Amberson Natural Resources LLC**

The name of the entity must contain the words "Limited Liability Company" or "Limited Company," or an accepted abbreviation of such terms. The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

### Article 2 – Registered Agent and Registered Office

☐ A. The initial registered agent is an organization (cannot be company named above) by the name of:

**OR**

☑ B. The initial registered agent is an individual resident of the state whose name is set forth below:

Name:
**C. Benjamin McCaleb**

C. The business address of the registered agent and the registered office address is:

Street Address:
**2135 E. Hiderbrand Ave.    San Antonio  TX 78209**

### Article 3 - Governing Authority

☑ A. The limited liability company is to be managed by managers.

**OR**

☐ B. The limited liability company will not have managers. Management of the company is reserved to the members. The names and addresses of the governing persons are set forth below:

Manager 1: **Stan  Freeman**                                    Title: **Manager**

Address: **900 E. Hamilton Ave., Suite 100   Campbell  CA, USA  95008**

### Article 4 - Purpose

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

### Supplemental Provisions / Information

[The attached addendum, if any, is incorporated herein by reference.]

## Organizer

The name and address of the organizer are set forth below.

**Exchange Strategies Corp.**        **900 E. Hamilton Ave., Suite 100, Campbell, CA 95008**

## Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

### OR

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

**Stan Freeman**

Signature of Organizer

**FILING OFFICE COPY**

# Exhibit 2



**Form 403**
**(Revised 12/09)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
**Filing Fee: $15**

**Certificate of Correction**

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

**DEC 17 2010**

**Corporations Section**

## Entity Information

1. The name of the filing entity is:

Amberson Natural Resources, LLC

State the name of the entity as currently shown in the records of the secretary of state. If the certificate of correction corrects the name of the entity, state the present name and not the name as it will be corrected.

The file number issued to the filing entity by the secretary of state is:   801098863

## Filing Instrument to be Corrected

2. The filing instrument to be corrected is :   Certificate of Formation Limited Liability Company

The date the filing instrument was filed with the secretary of state:   03/17/2009
*mm/dd/yyyy*

## Identification of Errors and Corrections
(Indicate the errors that have been made by checking the appropriate box or boxes; then provide the corrected text.)

☐ The entity name is inaccurate or erroneously stated.  The corrected entity name is:

☐ The registered agent name is inaccurate or erroneously stated.  The corrected registered agent name is:

**Corrected Registered Agent**
**(Complete either A or B, but not both.)**

A. The registered agent is an organization (cannot be entity named above) by the name of:

**OR**

B. The registered agent is an individual resident of the state whose name is:

| *First* | *Middle* | *Last Name* | *Suffix* |
|---|---|---|---|

The person executing this certificate of correction affirms that the registered agent, whose name is being corrected by this certificate, consented to serve as registered agent at the time the filing instrument being corrected took effect.

RECEIVED
Form 403

DEC 17 2010

Secretary of State

4

☐ The registered office address is inaccurate or erroneously stated.  The corrected registered office address is:

Corrected Registered Office Address

TX

| | | |
|---|---|---|
| *Street Address (No P.O. Box)* | *City* | *State   Zip Code* |

☐ The purpose of the entity is inaccurate or erroneously stated.  The purpose is corrected to read as follows:

☐ The period of duration of the entity is inaccurate or erroneously stated.

The period of duration is corrected to read as follows:

**Identification of Other Errors and Corrections**
(Indicate the other errors and corrections that have been made by checking and completing the appropriate box or boxes.)

☒ **Other errors and corrections.**  The following inaccuracies and errors in the filing instrument are corrected as follows:

☐ **Add**    Each of the following provisions was omitted and should be added to the filing instrument.  The identification or reference of each added provision and the full text of the provision is set forth below.

☒ **Alter**    The following identified provisions of the filing instrument contain inaccuracies or errors to be corrected.  The full text of each corrected provision is set forth below:

ARTICLE 3-GOVERNING AUTHORITY

a. The limited liability company is to be managed by managers.

The names and addresses of the governing persons are set forth below:

Manager: Jon C. Amberson
Title: Manager
Address: 2135 Hildebrand Ave., San Antonio, TX 78209

☐ **Delete**   Each of the provisions identified below was included in error and should be deleted.

☐ **Defective Execution** The filing instrument was defectively or erroneously signed, sealed, acknowledged or verified. Attached is a correctly signed, sealed, acknowledged or verified instrument.

## Statement Regarding Correction

The filing instrument identified in this certificate was an inaccurate record of the event or transaction evidenced in the instrument, contained an inaccurate or erroneous statement, or was defectively or erroneously signed, sealed, acknowledged or verified. This certificate of correction is submitted for the purpose of correcting the filing instrument.

## Correction to Merger, Conversion or Exchange

The filing instrument identified in this certificate of correction is a merger, conversion or other instrument involving multiple entities. The name and file number of each entity that was a party to the transaction is set forth below. (If the space provided is not sufficient, include information as an attachment to this form.)

_Entity name_                                                                 _SOS file number_

_Entity name_                                                                 _SOS file number_

## Effectiveness of Filing

After the secretary of state files the certificate of correction, the filing instrument is considered to have been corrected on the date the filing instrument was originally filed except as to persons adversely affected. As to persons adversely affected by the correction, the filing instrument is considered to have been corrected on the date the certificate of correction is filed by the secretary of state.

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date:   12/17/2010

By:   _Jon Christian Amberson_
        _Signature of authorized person_

Form 403                                             6

Jon C. Amberson
Printed or typed name of authorized person (see instructions)

7

# Exhibit 3

COMPANY AGREEMENT OF
AMBERSON NATURAL RESOURCES LLC
A Texas Limited Liability Company

This AGREEMENT OF (this *"Agreement"*), dated as of March 17, 2009, is adopted, executed, and agreed to, for good and valuable consideration, by the Members (as defined in Sec. 2.01).

## Article 1
## Organization

1.01. *Formation.* Amberson Natural Resources LLC (the *"Company"*) has been organized as a Texas limited liability company by the filing of a Certificate of Formation with the Texas Secretary of State (the *"Certificate"*) under and pursuant to the Business Organizations Code (as amended from time to time, the *"BOC"*).

1.02. *Name.* The name of the Company is "Amberson Natural Resources LLC" and all Company business must be conducted in that name or such other names that may be selected by the Managers (as defined in Sec. 5.01) and that comply with applicable law.

1.03. *Registered Office; Registered Agent; Offices.* The registered office and registered agent of the Company in the State of Texas shall be as specified in the Certificate or as designated by the Managers in the manner provided by applicable law. The offices of the Company shall be at such places as the Managers may designate, which need not be in the State of Texas.

1.04. *Purposes.* The purposes of the Company are those set forth in the Certificate.

1.05. *Foreign Qualification.* Prior to the Company's conducting business in any jurisdiction other than Texas, the Managers shall cause the Company to comply with all requirements necessary to qualify the Company as a foreign limited liability company in that jurisdiction.

1.06. *Term.* The Company commenced on the date of filing the Certificate with the Secretary of State of Texas and shall continue in existence until its business and affairs are wound up and the Company is terminated as provided in Article 8 of this Agreement.

1.07. *No State-Law Partnership.* The Members intend that the Company not be a partnership (including a limited partnership) or joint venture, and that no Member or Manager be a partner or joint venturer of any other Member or Manager, for any purposes other than applicable tax laws, and this Agreement may not be construed to suggest otherwise.

## Article 2
## Membership; Dispositions of Interests

2.01. *Members; Sharing Ratios.* The members of the Company (*"Members"*) are the persons or entities (*"Persons"*) executing this Agreement as of the date hereof as members and each Person that is hereafter admitted to the Company as a member in accordance with this Agreement. If a Member shall have made a Disposition of all or any portion of its Membership Interest but shall have retained any rights therein, then solely with respect to the Membership Interest (or portion thereof) so disposed, all references to "Member" that appear in Article 4 and Sec. 8.02(b) shall be deemed to refer to the assignee of such Membership Interest but such assignee shall have no other rights or privileges hereunder. The *Sharing Ratio* (herein so called) of each initial Member is set forth on *Exhibit* A.

2.02. *Dispositions of Membership Interests.* A Member may not make a sale, assignment, transfer, conveyance, gift, exchange, or other disposition (voluntarily, involuntarily, or by operation of law) (*"Disposition"*) of all or any portion of its rights or interest in the Company (*"Membership Interest"*), other than a Disposition resulting from the death of such Member, except with the consent of the Managers and a Majority Interest calculated without reference to the Member desiring to make such Disposition. Any attempted Disposition of all or any portion of a Membership Interest, other than in strict accordance with this Sec. 2.02, shall be null and void *ab initio.* A Person to whom a Membership Interest is Disposed (including as a result of the death of a Member) may be admitted to the Company as a member only with the consent of the Managers and a Majority Interest; and (without limiting the generality of Sec. 5.02) each Manager's and Member's consent may be given or withheld in its sole and

absolute discretion, with or without cause, and subject to such conditions as it shall deem appropriate ("*Sole Discretion*"). In connection with any Disposition of a Membership Interest or any portion thereof, and any admission of an assignee as a Member, the Member making such Disposition and the assignee shall furnish the Managers with such documents regarding the Disposition as the Managers may request (in form and substance satisfactory to the Managers), including a copy of the Disposition instrument, a ratification by the assignee of this Agreement (if the assignee is to be admitted as a Member), and a legal opinion that the Disposition complies with applicable federal and state securities laws.

2.03. *Encumbrances of Membership Interests.* A Member may not pledge, mortgage, subject to a security interest or lien, or otherwise encumber (voluntarily, involuntarily, or by operation of law) all or any portion of its Membership Interest without the consent of the Managers and a Majority Interest, calculated without reference to the Member desiring to make such encumbrance.

2.04. *Creation of Additional Membership Interests.* Additional Membership Interests may be created and issued to existing Members or to other Persons, and such other Persons may be admitted to the Company as Members, at the direction of the Managers and a Majority Interest, on such terms and conditions, and with such Sharing Ratios, as the Managers and such Majority Interest may determine at the time of admission. The Managers may reflect the admission of any new Members or the creation of any new class or group of Member in an amendment to this Agreement that need be executed only by the Managers.

2.05. *Withdrawal.* A Member does not have the right or power to withdraw from the Company.

2.06. *Information.* In addition to the other rights specifically set forth in this Agreement, each Member and each assignee is entitled to all information to which that Member or Assignee is entitled to have access pursuant to the BOC under the circumstances and subject to the conditions therein stated.

2.07. *Liability to Third Parties.* No Member or Manager shall be liable for the debts, obligations, or liabilities of the Company, including under a judgment decree or order of a court.

2.08. *Expulsion.* A Member may not be expelled from the Company.

2.09. *Spouses of Members.* Spouses of the Members do not become Members as a result of such marital relationship.

### Article 3
### Capital Contributions

3.01. *Initial Contributions.* Contemporaneously with the execution by such Member of this Agreement, each Member shall make the contributions to the capital of the Company ("*Capital Contributions*") described for that Member in *Exhibit A*.

3.02. *Subsequent Contributions.* Without creating any rights in favor of any third party, each Member shall contribute to the Company, in cash, on or before the date specified as hereinafter described, that Member's Sharing Ratio of all monies that in the judgment of the Managers and a Majority Interest are necessary to enable the Company to cause the assets of the Company to be properly operated and maintained and to discharge its costs, expenses, obligations, and liabilities.

3.03. *Failure to Contribute.*

(a)    If a Member does not contribute, within 10 days of the date designated by the managers, all or any portion of a Capital Contribution that Member is required to make as provided in this Agreement, the Managers may cause the Company to exercise, on notice to that Member (the "Delinquent Member"), one or more of the following remedies:

(i)    taking such action (including court proceedings), at the cost and expense of the Delinquent Member, as the Managers may deem appropriate to obtain payment by the Delinquent Member of the portion of the Delinquent Member's Capital Contribution that is in default, together with interest thereon from the

date that the Capital Contribution was due until the date that it is made, at a rate per annum equal to the lesser of (A) the maximum rate permitted by applicable law and (B) 5% plus the interest rate publicly quoted by *The Wall Street Journal* from time to time as its prime commercial or similar reference interest rate, with adjustments to be made on the same date as any change in that rate;

(ii)    exercising the rights of a secured party under the Uniform Commercial Code of the State of Texas, as more fully set forth in Sec. 3.03(b); or

(iii)    exercising any other rights and remedies available at law or in equity.

(b)    Each Member grants to the Company, as security for the payment of all Capital Contributions that Member has agreed to make, a security interest in and a general lien on its Membership Interest and the proceeds thereof, all under the Uniform Commercial Code of the State of Texas. On any default in the payment of a Capital Contribution, the Company is entitled to all the rights and remedies of a secured party under the Uniform Commercial Code of the State of Texas with respect to the security interest granted in this Sec. 3.03(b). Each Member shall execute and deliver to the Company all financing statements and other instruments that the Managers may request to effectuate and carry out the preceding provisions of this Sec. 3.03(b). At the option of the Managers, this Agreement or a photographic, or other copy hereof may serve as a financing statement.

3.04.   *Return of Contributions.* A Member is not entitled to the return of any part of its Capital Contributions or to be paid interest in respect of either its capital account or its Capital Contributions. An unpaid Capital Contribution is not a liability of the Company or of any Member. A Member is not required to contribute or to lend any cash or property to the Company to enable the Company to return any Member's Capital Contributions.

3.05.   *Advances by Members.* If the Company does not have sufficient cash to pay its obligations, any Member(s), with the consent of the Managers, may advance all or part of the needed funds to or on behalf of the Company, at such interest rate and on such other terms as such Member and the Managers may agree. An advance described in this Sec. 3.05 constitutes a loan from the Member to the Company and is not a Capital Contribution.

### Article 4
### Distributions and Allocations

4.01.   *Distributions.* At such time as determined by the Managers, but in no event no less often than annually on or before the thirtieth (30th) day after the end of the fiscal year, Net Cash Flow (as defined in this Sec. 4.01) for each fiscal year (or such shorter period for which the distribution is made) shall be distributed to the Members in proportion to their Sharing Ratios. The term "Net Cash Flow" shall mean all cash funds derived by the Company (including interest received on reserves, borrowings, and capital transactions), without reduction for any non-cash charges, but less cash funds used to pay current operating expenses, debt payments, capital improvements, replacements, and establish reasonable reserves for future expenses and costs as determined by the Managers.

4.02.   *Allocations.* Except as may be required by Code Sec. 704(c) and Treasury Regulation Sec. 1.704-3, all items of income, gain, loss, deduction, and credit of the Company shall be allocated to the Members in their Sharing Ratios.

### Article 5
### Management

5.01.   *Management by Managers.*

(a)    Subject to the provisions of Sec. 5.02, the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, managers of the Company ("*Managers*"). No Member in its capacity as a Member has the right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company.

(b)    In managing the business and affairs of the Company and exercising its powers, the Managers shall act (i) collectively through resolutions adopted at meetings and in written consents pursuant to Secs. 5.04 and 5.08; and (ii) through committees and individual Managers to which authorities and duties have been delegated

pursuant to Sec. 5.05. No Manager has the right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company, except in accordance with the immediately preceding sentence. Decisions or actions taken by the Managers in accordance with this Agreement (including this Sec. 5.01 and Sec. 5.02) shall constitute decisions or actions by the Company and shall be binding on each Manager, Member, Officer (as defined in Sec. 5.09), and employee of the Company.

5.02. *Decisions Requiring Member Consent*. Notwithstanding any power or authority granted the Managers under the BOC, the Certificate or this Agreement, (a) the Managers may not make any decision or take any action for which the consent of a Majority Interest or other consent of the Members is expressly required by the Certificate or this Agreement, without first such obtaining such consent, and (b) the Managers may not make any of the following decisions or actions without first obtaining the consent of a Majority Interest:

(a) causing or permitting the Company to be a party to a merger, conversion or interest exchange;

(b) causing or permitting the Company to Dispose of or Encumber all or substantially all of its assets;

or

(c) causing or permitting the Company to incur any indebtedness for borrowed money.

Each Member may, with respect to any vote, consent, or approval that it is entitled to grant pursuant to this Agreement, grant or withhold such vote, consent, or approval in its Sole Discretion.

5.03. *Selection of Managers*. The number of Managers of the Company shall be the number set forth in the Certificate as the number of initial Managers, unless such number is changed by a Majority Interest. The initial Managers of the Company shall be the Persons named in the Certificate as the initial Managers. Managers need not be Members or residents of the State of Texas. Each Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earliest to occur of any of the following events: (a) such Manager shall be removed, with or without cause, by a Majority Interest at a meeting of the Members called for that purpose; (b) such Manager shall resign as a Manager, by giving notice of such resignation to the Members; or (c) such Manager shall die, dissolve (unless its business is continued without the commencement of liquidation or winding up), or become bankrupt (as defined in the BOC). Any vacancy in any Manager position may be filled by a Majority Interest at a meeting of the Members called for that purpose.

5.04. *Meetings of Managers*. Regular meetings of the Managers may be held on such dates and at such times as shall be determined by the Managers, with notice of the establishment of such regular meeting schedule being given to each Manager that was not present at the meeting at which it was adopted. Special meetings of the Managers may be called by any Manager by notice thereof (specifying the place and time of such meeting) that is delivered to each other Manager at least 24 hours prior to such meeting. Neither the business to be transacted at, nor the purpose of, such special meeting need be specified in the notice (or waiver of notice) thereof. Unless otherwise expressly provided in this Agreement, at any meeting of the Managers, a majority (by number) of the Managers shall constitute a quorum for the transaction of business, and an act of a majority (by number) of the Managers who are present at such a meeting at which a quorum is present shall be the act of the Managers. The provisions of this Sec. 5.04 shall be inapplicable at any time that there is only one Manager.

5.05. *Committees of Managers; Delegation of Authority to Individual Managers*. The Managers may designate one or more committees, each of which shall be comprised of one or more of the Managers, and may designate one or more of the Managers as alternate members of any committee. Except for matters that cannot be delegated to such a committee pursuant to the BOC (but notwithstanding the last sentence of the BOC), any such committee, to the extent provided in the resolution establishing it, shall have and may exercise all of the authority that may be exercised by the Managers. Regular and special meetings of such committee shall be held in the manner designated by the Managers or, if not so designated, by such committee. The Managers may dissolve any committee at any time. In addition, the Managers may delegate to one or more Managers such authority and duties, and assign to them such titles, as the Managers may deem advisable. Any such delegation may be revoked at any time by the Managers.

5.06. *Compensation*. The Managers shall receive such compensation, if any, for their services as may be designated by a Majority Interest. In addition, the Managers shall be entitled to be reimbursed for out-of-pocket costs and expenses incurred in the course of their service hereunder.

5.07. *Meetings of Members.* An annual meeting of the Members for the transaction of such business as may properly come before the meeting shall be held on such date and at such time as the Managers shall specify in the notice of the meeting, which shall be delivered to each Member at least 20 days prior to such meeting. Special meetings of the Members may be called by the Managers or by Members having among them at least ten percent of the Sharing Ratios of all Members. Any such meeting shall be held on such date and at such time as the Person calling such meeting shall specify in the notice of the meeting, which shall be delivered to each Member at least ten days prior to such meeting. Only business within the purpose or purposes described in the notice (or waiver thereof) for such meeting may be conducted at such meeting. Unless otherwise expressly provided in this Agreement, at any meeting of the Members, Members holding among them at least a majority of all Sharing Ratios (a *"Majority Interest"*), represented either in person or by proxy, shall constitute a quorum for the transaction of business, and an act of a Majority Interest shall be the act of the Members.

5.08. *Provisions Applicable to All Meetings.* In connection with any meeting of the Managers, Members, or any committee of the Managers, the following provisions shall apply:

(a)    *Place of Meeting.* Any such meeting shall be held at the principal place of business of the Company, unless the notice of such meeting (or resolution of the Managers or committee, as applicable) specifies a different place, which need not be in the State of Texas.

(b)    *Waiver of Notice Through Attendance.* Attendance of a Person at such meeting (including pursuant to Sec. 5.08(e)) shall constitute a waiver of notice of such meeting, except where such Person attends the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(c)    *Proxies.* A Person may vote at such meeting by a written proxy executed by that Person and delivered to another Manager, Member, or member of the committee, as applicable. A proxy shall be revocable unless it is stated to be irrevocable.

(d)    *Action by Written Consent.* Any action required or permitted to be taken at such meeting may be taken without a meeting, without prior notice, and without a vote if a consent or consents in writing, setting forth the action so taken, is signed by the Managers, Members, or members of the committee, as applicable, having not fewer than the minimum number of Sharing Ratios or votes that would be necessary to take the action at a meeting at which all Members, Managers, or members of the committee, as applicable, entitled to vote on the action were present and voted.

(e)    *Meetings by Telephone.* Managers, Members, or members of the committee, as applicable, may participate in and hold such meeting by means of conference telephone, videoconference, or similar communications equipment by means of which all Persons participating in the meeting can hear each other.

5.09. *Officers.* The Managers may designate one or more Persons to be officers of the Company (*"Officers"*), and any Officers so designated shall have such title, authorities, duties, and salaries as the Managers may delegate to them. Any Officer may be removed as such, either with or without cause, by the Managers.

5.10. *Limitations on Duties and Liabilities of Managers.* A Manager shall be liable to the Company and the other Members for acts or omissions in the management of the Company only in the case of gross negligence, willful misconduct or breach of this Agreement by such Manager; but a Manager shall not be liable to the Company or any other Member for any other acts or omissions, including the negligence, strict liability, or other fault or responsibility (short of gross negligence, willful misconduct, or breach of this Agreement) by such Manager. Except for such duties as may be expressly set forth in this Agreement, a Manager shall not be subject to any duties (including fiduciary duties) in the management of the Company.

5.11. *Conflicts of Interest.* Subject to the other express provisions of this Agreement, each Member, Manager, Officer, or affiliate thereof may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the Company or any other Member, Manager, or Officer the right to participate therein. The Company may transact business with any Member, Manager, Officer, or Affiliate thereof, provided the terms of those transactions are no less favorable than those the Company could obtain from unrelated third parties.

5.12. *Indemnification.* The Company shall indemnify, defend, protect, and hold harmless each Manager from and against all actions, suits or proceedings (collectively, *"Proceedings"*), and all other claims, demands, losses, damages, liabilities, judgments, awards, penalties, fines, settlements, costs and expenses (including court costs and reasonable attorneys' fees), arising out of the management of the Company or such Manager's service or status as a Manager. **THIS INDEMNITY SHALL APPLY TO MATTERS THAT ARISE OUT OF THE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR RESPONSIBILITY BY SUCH MANAGER; PROVIDED, HOWEVER, THAT THIS INDEMNITY SHALL NOT APPLY TO MATTERS ARISING OUT OF THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR BREACH OF THIS AGREEMENT BY SUCH MANAGER.** The Company, by adoption of a resolution of the Managers, may indemnify an Officer, employee or agent of the Company to the same extent and subject to the same conditions under which it may indemnify Managers under the proceeding sentence. The Company may purchase and maintain insurance to protect itself and any Manager, Officer, employee, or agent of the Company.

## Article 6
### Taxes

6.01. *Tax Returns.* The Company shall prepare and timely file all federal, state, and local tax returns required to be filed by the Company. Each Member shall furnish to the Company all pertinent information in its possession relating to the Company's operations that is necessary to en- able the Company's tax returns to be timely prepared and filed. The Company shall deliver a copy of each such return to the Members on or before ten days prior to the due date of any such return, together with such additional information as may be required by the Members in order for the Members to file their individual returns reflecting the Company's operations. The Company shall bear the costs of the preparation and filing of its returns.

6.02. *Tax Elections.* The Company shall make the following elections on the appropriate tax returns:

    (a)    to adopt the calendar year as the Company's fiscal year;

    (b)    to adopt the cash method of accounting and to keep the Company's books and records on the income-tax method;

    (c)    If a distribution of the Company's property as described in Code Sec. 734 occurs or upon a transfer of Membership Interests as described in Code Sec. 743 occurs, on request by notice from any Member, to elect, pursuant to Code Sec. 754, to adjust the basis of Company's properties;

    (d)    to elect to amortize the organizational expenses of the Company ratably over a period of 60 months as permitted by Code Sec. 709(b); and

    (e)    any other election the Managers with the consent of a Majority Interest may deem appropriate and in the best interests of the Members.

Neither the Company nor any Manager or Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter 1 of subtitle A of the Code or any similar provisions of applicable state law and no provision of this Agreement (including Sec. 1.07) shall be construed to sanction or approve such an election.

6.03. *Tax Matters Member.* The Managers who are Members shall designate one Manager that is a Member to be the "tax matters partner" of the Company pursuant to Code Sec. 6231(a)(7) (the *"Tax Matters Member"*), or, if there is no Manager that is a Member, the Tax Matters Member shall be a Member that is designated as such by a Majority Interest. The Tax Matters Member shall take such action as may be necessary to

cause to the extent possible each other Member to become a "notice partner" within the meaning of Code Sec. 6223. The Tax Matters Member shall inform each other Member of all significant matters that may come to its attention in its capacity as Tax Matters Member by giving notice thereof on or before the fifth business day after becoming aware thereof and, within that time, shall forward to each other Member copies of all significant written communications it may receive in that capacity. The Tax Matters Member shall take no action without the authorization of a Majority Interest, other than such action as may be required by applicable law. Any cost or expense incurred by the Tax Matters Member in connection with its duties, including the preparation for or pursuance of administrative or judicial proceedings, shall be paid by the Company.

### Article 7
### Books, Records, and Bank Accounts

7.01. *Books and Records*. The Managers shall keep or cause to be kept at the principal office of the Company complete and accurate books and records of the Company, supporting documentation of the transactions with respect to the conduct of the Company's business, and minutes of the proceedings of its Managers, Members, and each committee of the Managers. The books and records shall be maintained with respect to accounting matters in accordance with sound accounting practices, and all books and records shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours.

7.02. *Reports*. Within seventy-five days after the end of each taxable year, the Managers shall cause to be sent to each Member at the end of the taxable year a complete accounting of the financial affairs of the Company for the taxable year then ended.

7.03. *Accounts*. The Managers shall establish one or more separate bank and investment accounts and arrangements for the Company, which shall be maintained in the Company's name with financial institutions and firms that the Managers with the consent of a Majority Interest determine. The Managers may not commingle the Company's funds with the funds of any Manager or Member.

### Article 8
### Winding Up and Termination

8.01.   *Events Requiring Winding Up.*

(a)   Subject to Sec. 8.01(b), the Company shall be wound up on the first to occur of the following events:

(i)   the expiration of the period, if any, fixed for the duration of the Company in the Certificate;

(ii)   the consent of a Majority Interest;

(iii)   entry of a decree of judicial dissolution of the Company under Article 6.02 of the BOC; and

(iv)   the occurrence of an event described in Sec. 11.056 of the BOC and the failure of the legal representative or the successor of the Member to take the actions required by Sec. 11.056 of the BOC within the time specified therein.

No other event (including an event described in the BOC) will cause the Company to be wound up.

(b) If an event described in subparagraph (i) of Sec. 8.01(a) shall occur and there shall be at least one other Member remaining, the Company shall not be wound up, and the business of the Company shall be continued, if all of the Members so agree within 30 days of the occurrence of such event. If such election is made following the occurrence of an event described in subparagraph (i) of Sec. 8.01(a), the Managers shall promptly cancel or revoke the event requiring the winding up in the manner specified in BOC Chapter 101.

8.02. *Winding Up and Termination.*

(a)     On the occurrence of an event described in Sec. 8.01(a), unless an election is made to continue the business of the Company pursuant to Sec. 8.01(b), the Managers shall act as liquidator or may appoint one or more Members as liquidator. The liquidator shall proceed diligently to wind up the affairs of the Company as provided in the BOC. Until final distribution, the liquidator shall continue to operate the Company properties with all of the power and authority of the Managers. The costs of winding up shall be borne as a Company expense.

(b)     Any assets of the Company remaining at the conclusion of the winding-up process shall be distributed among the Members in accordance with their Sharing Ratios. All distributions in kind to the Members shall be made subject to the liability of each distributee for costs, expenses, and liabilities theretofore incurred or for which the Company has committed prior to the date of termination. The distribution of cash and/or property to a Member in accordance with the provisions of this Sec. 8.02(b) constitutes a complete return to the Member of its Capital Contributions and a complete distribution to the Member of its Membership Interest and all the Company's property and constitutes a compromise to which all Members have consented within the meaning of Article 5.02(D) of the BOC.

(c)     On completion of such final distribution, the Managers shall file Certificate of Termination with the Secretary of State of Texas, cancel any other filings made pursuant to Sec. 1.05, and take such other actions as may be necessary to terminate the existence of the Company.

8.03. *No Restoration of Deficit Capital Accounts.* No Member shall be required to pay to the Company, to any other Member or to any third party any deficit balance that may exist from time to time in any capital or similar account maintained for such Member for any purpose.

## Article 9
### General Provisions

9.01. *Offset.* Whenever the Company is to pay any sum to any Member, any amounts that Member owes the Company may be deducted from that sum before payment.

9.02. *Notices.* All notices, requests, or consents under this Agreement shall be (a) in writing, (b) delivered to the recipient in person, by courier or mail or by facsimile, or similar transmission, (c) if to a Member, delivered to such Member at the applicable address on *Exhibit* A or such other address as that Member may specify by notice to the other Members, (d) if to the Managers or the Company, delivered to the Managers at the following address: 2135 E. Hildebrand Ave, San Antonio, Texas  78209, and (e) effective only upon actual receipt by such Person. Whenever any notice is required to be given by applicable law, the Certificate, or this Agreement, a written waiver thereof, signed by the Person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

9.03. *Entire Agreement; Supersedure.* This Agreement constitutes the entire agreement of the Members relating to the Company and supersedes all prior contracts or agreements with respect to the Company, whether oral or written.

9.04. *Effect of Waiver or Consent.* A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company.

9.05. *Amendments of Certificate and Agreement.* The Certificate and the Agreement may be amended or restated only with the approval of the Managers and all of the Members; provided, however, that amendments of the type described in Sec. 2.04 may be adopted as therein provided.

9.06. *Binding Effect.* Subject to the restrictions on Dispositions set forth in this Agreement, this Agreement is binding on and inure to the benefit of the Members and their respective heirs, legal representatives, successors, and assigns.

9.07. *Governing Law; Severability.* **THIS AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (EXCLUDING ITS CONFLICT-OF-LAWS RULES).** If any provision of this Agreement or the application thereof to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of that provision to Other Persons or circumstances is not affected thereby and that provision shall be enforced to the greatest extent permitted by applicable law.

9.08. *Construction.* Unless the context requires otherwise: (a) the gender (or lack of gender) of all words used in this Agreement includes the masculine, feminine, and neuter; (b) the word "including" means "including, without limitation"; (c) references to Certificate of Formation and Sections refer to Articles and Sections of this Agreement; and (d) references to Exhibits are to the Exhibits attached to this Agreement, each of which is made a part hereof for all purposes.

9.09. *Further Assurances.* In connection with this Agreement and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and per- form the provisions of this Agreement and those transactions.

9.10. *Counterparts.* This Agreement may be executed in any number of counterparts, all of which shall constitute the same instrument.

IN WITNESS WHEREOF, the Members have executed this Agreement as of the date first set forth above.

MEMBERS

Jon C. Amberson

Date of Execution: March 17, 2009

## EXHIBIT A

**Jon C. Amberson**
**2135 E. Hildebrand Ave**
**San Antonio, Texas  78209,**

Initial Capital Contribution: $100.00

Sharing Ratio: 100 %

# Exhibit 4

FILED
In the Office of the
Secretary of State of Texas

AUG 3 0 1999

Corporations Section

**ARTICLES OF INCORPORATION**
**OF**
**JON CHRISTIAN AMBERSON, P.C.**

## ARTICLE 1. NAME

The name of the Corporation is **Jon Christian Amberson, P.C.**

## ARTICLE 2. STATUS

The Corporation is a Professional Corporation organized under the Texas Professional Corporation Act

## ARTICLE 3. TYPE OF SERVICE OFFERED

This Corporation will render one specific kind of professional service, namely the practice of law

## ARTICLE 4. DURATION

The period of its duration is perpetual

## ARTICLE 5. PURPOSE

The purpose of the Corporation is to offer the professional service specified in Article 3, and to carry out ancillary activities.

## ARTICLE 6. SHARES

The aggregate number of shares that the Corporation shall have authority to issue is ten thousand (10,000), of the par value of one cent ($0.01) each.

## ARTICLE 7. CAPITALIZATION

The Corporation will not commence business until it has received for the issuance of shares consideration in the value of one thousand dollars ($1,000.00) consisting of money, labor done, or property actually received.

## ARTICLE 8. PRINCIPAL PLACE OF BUSINESS AND REGISTERED OFFICE AND AGENT

The address of the principal office is 745 E Mulberry #850, San Antonio, Texas 78212. The street address of its initial registered office is 745 E. Mulberry #850, San Antonio, Texas 78212, and the name of its initial registered agent at such address is Jon Christian Amberson

## ARTICLE 9. DIRECTORS

The number of directors constituting the initial Board of Directors is one (1), and the name and address of the person who is to serve as the initial director is

Jon Christian Amberson   745 E  Mulberry #850, San Antonio, Texas 78212

## ARTICLE 10. INDEMNIFICATION

### Right to Indemnification

10.01 The Corporation may indemnify each of its officers, directors, and employees, whether or not then in office, and his or her heirs and legal representatives, against all expenses, judgments, decrees, fines, penalties, or other amounts paid in satisfaction, in settlement of, or in connection with the defense of any pending or threatened action, suit, or proceeding, civil or criminal, to which he or she is or may be made a party by reason of having been a director, officer, or employee of the Corporation  Without limitation, the term "expenses" shall include all counsel fees, expert witness fees, court costs, and any other costs of a similar nature.  The Corporation shall not, however, indemnify any officer, director, or employee until a determination that indemnification is permissible has been made by the procedure and according to the standards set forth in the Bylaws of this Corporation

### Written Request for Indemnification

10 02 Any officer, director, or employee who may be entitled to indemnification from the Corporation may make a written request to the Board of Directors by serving the written request on the President or the Secretary (unless the President and the Secretary are both making the request, in which case service may be made on any other officer of the Corporation)  If the Board of Directors does not, within fifteen (15) days after service of the written request, determine that the officer, director, or employee is entitled to indemnification, the officer, director, or employee may, within thirty (30) days following the date of service of the request, apply to a court of general jurisdiction in the county where the Corporation maintains its principal office to consider whether or not the officer, director, or employee has met the standards set forth in the Bylaws of this Corporation as to permissibility of indemnification  If the court determines that the conduct of the officer, director, or employee was such as to meet those standards, the court shall order the Corporation to indemnify the officer, director, or employee to the same extent as if the Board of Directors had originally made the determination

## ARTICLE 11. INCORPORATORS

The name and address of the incorporator is

Joseph Paul Rubin 3003 NW Loop 410, #203, San Antonio, Texas 78230

### ARTICLE 12. AUTHORIZATION TO PRACTICE

The incorporator, director, and shareholder are duly licensed or otherwise legally authorized to render in Texas the specific kind of professional service to be rendered by the Corporation

INCORPORATOR: _____
Joseph Paul Rubin

STATE OF TEXAS      §

COUNTY OF BEXAR     §

Before me, a notary public, on this day personally appeared JOSEPH PAUL RUBIN, known to me to be the person who name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct

Given under my hand and seal of office on August 25, 1999

_____
Notary Public in and for the State of Texas

STARLA K LOVELACE
Notary Public State of Texas
My Commission Expires 12-01 02

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

# FLECKMAN & McGLYNN, PLLC

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

January 8, 2018

**VIA FASCIMILE: (956) 318-2698**

The Honorable Luis M. Singleterry
92nd Civil District Court
Hidalgo County Courthouse
100 N. Closner
Edinburg, Texas 78539

Re: *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Judge Singleterry:

As counsel for the Amberson Parties, I am writing you (with copy to all other counsel) regarding my understanding that there will be a transfer in the referenced action to the 332nd District Court. We are in agreement that all claims *other than the "Cannon Grove" claims* can and should be arbitrated. However, we have this morning filed our Reply to the McAllen Parties' request to refer ALL claims to arbitration. The legal authorities and facts (discussed in our Reply and in our previously filed bench brief) confirm that the Cannon Grove claims are not subject to arbitration.

I am enclosing a proposed order. The Amberson Parties have no objection to the Court's appointment of an arbitrator in accordance with the procedure set forth in paragraph 10 of the parties' attached 2005 engagement letters, or the transfer for the purpose of making such appointment. However, if the Court is inclined to consider referring any of the Cannon Grove claims to arbitration we request a hearing as to that issue.

Respectfully submitted,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com

Letter to the Hon. Luis Singleterry

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

cc:    Mr. David M. Prichard
       Mr. J.A. "Tony" Canales
       Mr. Charles C. Murray
       Mr. Francisco J. Rodriguez
       Mr. Jon Christian Amberson

# ENCLOSURE

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3339                                                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
James Argyle McAllen, Jr.
P.O. Box 1139
Edinburg, Texas  78540-1139

      RE:   Contract of Employment Regarding Representation of James Argyle
             McAllen, Individually and James Argyle McAllen, Jr., Individually against
             Forest Oil Corporation and any other Responsible Entities.

Gentlemen:

      The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

## DESCRIPTION OF SERVICES

      **1.**   **CLIENTS AND CLIENT REPRESENTATIVES**: The firm is being retained
to represent the following:

             1.    James A. McAllen, Individually

             2.    James A. McAllen, Jr., Individually

Page 2

**2.    PURPOSE OF REPRESENTATION:**  It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.    LEGAL REPRESENTATION:**  Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.  Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.    NO GUARANTEE OR INDUCEMENTS:**  It is understood that the firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.    TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed.  A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

    1.    Proper and expected behavior of counsel are described in the Creed.

    2.    Civility and courtesy are expected from lawyers and are not a sign of weakness.

    3.    I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

    4.    I will not pursue tactics which are intended primarily for delay.

    5.    I will not pursue any course of action which is without merit.

    6.    I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

Page 3

7.  You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.  **FEES:**  The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

7. **DETERMINATION OF FEES:**  The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows:  You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm.  The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages.  Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of James Argyle McAllen and James Argyle McAllen, Jr., in the event of an adverse verdict.

Page 4

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8.   **COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

Page 5

9)  Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10) Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.    NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.  Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.  For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.    ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration.  The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable.  The arbitrator will be selected as follows:

(1)  Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status.  The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

**11.    LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

**12.**    You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**13.**    You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

Page 6

14.    If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen and James Argyle McAllen, Jr.

_____
JAMES ARGYLE McALLEN,
INDIVIDUALLY

_____
JAMES ARGYLE McALLEN, JR.
INDIVIDUALLY

_____
Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

JON L. ANDERSON                FAX: 2100200040          Jan 25 2005  10:03    P.3

## JON CHRISTIAN AMBERSON, P.C.
ATTORNEYS AT LAW
8135 EAST HILDEBRAND AVE,
SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-0836                                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

> RE: Contract of Employment Regarding Representation of El Rucio Land and
> Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
> Partnership and John R. Willis Management Partnership Ltd., related to
> prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
> Conoco/Phillps Inc.

Dear Mr. & Mrs. McAllen:

The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C., and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies relating to environmental contamination issues related arising from illegal dumping of hazardous materials and radioactive materials.

### DESCRIPTION OF SERVICES

**1.    CLIENTS AND CLIENT REPRESENTATIVES:** The firm is being retained to represent the following:

> 1.    El Rucio Land and Cattle Company, Inc. – Representative – James A. McAllen
>
> 2.    San Juanito Land Partnership Ltd. – Representative – James A. McAllen
>
> 3.    McAllen Trust Partnership – Representative – James A. McAllen

JON C. ANDERSON        Fax:2108263340        Jan 25 2005  16:09        P.04        p.4

Page 2

    4.    John R. Willis Management Partnership Ltd. – Representative – Frances W. McAllen

    The representatives of the aforementioned entities are James A. McAllen and Frances W. McAllen.

**2.**    **PURPOSE OF REPRESENTATION:**  It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3.**    **LEGAL REPRESENTATION:**  Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.**    **NO GUARANTEE OR INDUCEMENTS:**  It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.**    **TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

    1.    Proper and expected behavior of counsel are described in the Creed.

    2.    Civility and courtesy are expected from lawyers and are not a sign of weakness.

    3.    I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

    4.    I will not pursue tactics which are intended primarily for delay.

Page 3

5. I will not pursue any course of action which is without merit.

6. I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7. You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6. **FEES:** The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

965-686-9403          p.6

JUN 6. ANDERSON      James H. McAllen      Fax:2106265940      Jan 29 2003  16.03      P.06

Page 4

7. **DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8. **COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1) Court costs;

2) Citation and/or subpoena fees;

3) Deposition fees, costs and expenses;

Page 5

4)    Investigation fees, costs and expenses;

5)    Expert witness fees, costs and expenses;

6)    Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)    Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)    Long distance telephone charges, and conference calls expenses;

9)    Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)    Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

9.    **NOTICE TO CLIENTS:**    The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

10.    **ARBITRATION:**    Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1)    Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Page 6

    **11.**   **LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

    **12.**   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

    **13.**   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

    **14.**   If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

    SIGNED and AGREED, in multiple counterparts, by the firm and representatives of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., and McAllen
Trust Partnerships

FRANCES McALLEN
On Behalf of John R. Willis Management,
Partnership, Ltd.

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92ND JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER OF TRANSFER TO 332ND JUDICIAL DISTRICT COURT

The Court, having considered Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others, the Defendants' (McAllen Parties') motion to refer all claims to arbitration, and the Amberson Parties' response thereto, finds that this case should be transferred to the 332nd District Court for the appointment of an arbitrator. It is therefore

ORDERED that Plaintiff Jon Christian Amberson, P.C.'s (the "*Amberson Firm*") claim to recover legal fees from Defendants is arbitrable, and is therefore transferred to the 332nd Judicial District Court for the appointment of an arbitrator. It is further

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

ORDERED that Defendants' counterclaims against Plaintiff and their third-party claims against Third-Party Defendant Jon Christian Amberson ("*Amberson*") that relate to Amberson's duties to the Defendants in connection with the litigation with Forest Oil Corporation (these include the Defendants' loan claims that are *not* related to Cannon Grove), are arbitrable, as having a sufficient nexus to the fee dispute, and are therefore referred to the 332nd Judicial District Court for the appointment of an arbitrator. It is further

ORDERED that all pending counterclaims and third-party claims filed by the Defendants that relate to the so-called "Cannon Grove" transaction (including all third-party claims against Amberson Natural Resources, LLC) are not arbitrable and are therefore retained for further judicial disposition in this action. It is therefore further

ORDERED that (except as allowed above) Defendants' Request to Refer *All* Claims in this Lawsuit to Arbitration is denied.

SIGNED this _____ day of _____, 2018.

_____

JUDGE PRESIDING

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
1/8/2018 12:49 PM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios      Ricardo Contreras      Adriana "Audry" Garcia      Sabrina S. Guerra      Oneida Lamas      Stephanie Palacios      Aida Villarreal
CHIEF DEPUTY        CHIEF OF ADMINISTRATION  ASSISTANT CHIEF DEPUTY      SENIOR ACCOUNTANT    DEPUTY DISTRICT CLERK SUPERVISOR  BUDGET AND PROCUREMENT  CHIEF OF APPEALS
                    AND PUBLIC INFORMATION                                                                              OFFICER

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER OF TRANSFER TO 332ND JUDICIAL DISTRICT COURT

The Court, having considered Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others, the Defendants' (McAllen Parties') motion to refer all claims to arbitration, and the Amberson Parties' response thereto, finds that this case should be transferred to the 332nd District Court for the appointment of an arbitrator. It is therefore

ORDERED that Plaintiff Jon Christian Amberson, P.C.'s (the "*Amberson Firm*") claim to recover legal fees from Defendants is arbitrable, and is therefore transferred to the 332nd Judicial District Court for the appointment of an arbitrator. It is further

Electronically Filed
7/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

ORDERED that Defendants' counterclaims against Plaintiff and their third-party claims against Third-Party Defendant Jon Christian Amberson ("**Amberson**") that relate to Amberson's duties to the Defendants in connection with the litigation with Forest Oil Corporation (these include the Defendants' loan claims that are *not* related to Cannon Grove), are arbitrable, as having a sufficient nexus to the fee dispute, and are therefore referred to the 332nd Judicial District Court for the appointment of an arbitrator.  It is further

ORDERED that all pending counterclaims and third-party claims filed by the Defendants that relate to the so-called "Cannon Grove" transaction (including all third-party claims against Amberson Natural Resources, LLC) are not arbitrable and are therefore retained for further judicial disposition in this action.  It is therefore further

ORDERED that (except as allowed above) Defendants' Request to Refer *All* Claims in this Lawsuit to Arbitration is denied.

SIGNED this _____ day of _____, 2018.

_____

JUDGE PRESIDING

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
1/8/2018 12:11 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450


J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
1/8/2018 11:28 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

# FLECKMAN & McGLYNN, PLLC

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

January 8, 2018

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
Edinburg, Texas  78539

Re:  *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Ms. Hinojosa:

I will be on vacation from March 17, 2018 until March 29, 2018.  I respectfully request that no hearings be scheduled in or related to this action during the time I am on vacation.

Thank you for your kind attention to this matter.

Very truly yours,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

SAF/trr

cc:  Mr. David M. Prichard
Mr. J.A. "Tony" Canales
Mr. Charles C. Murray
Mr. Francisco J. Rodriguez

Vacation Notice

Electronically Filed
1/11/2018 10:28 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

DAVID M. PRICHARD

voice: 210.477.7401
fax: 210.477.7450
dprichard@prichardyoungllp.com



t: 210.477.7400
f: 210.477.7450
10101 Reunion Place
Suite 600
San Antonio, Texas 78216
prichardyoungllp.com

January 11, 2018

The Honorable Luis M. Singleterry
92nd Civil District Court
Hidalgo County Courthouse
100 N. Closner
Edinburg, TX 78539

    Re:    Cause No. C-0340-15-A; *Jon Christian Amberson v. James Argyle McAllen, et. al.*

Dear Judge Singleterry:

    We received the Amberson Parties' Reply to the McAllen Parties' Request to Refer All Claims to Arbitration that the Amberson Parties filed earlier today. The McAllen Parties strongly disagree with the position of the Amberson Parties, with respect to the Cannon Grove claims, as the McAllen Parties have set forth in their response. The McAllen Parties believe that all of the claims are interrelated and, therefore, are all subject to arbitration. Splitting up the claims as the Amberson Parties' advocate risks different fact finders reaching contrary results on the same fact issues. Moreover, splitting up the claims will needlessly increase costs for all parties. Accordingly, the McAllen Parties request that the court refer all claims in this lawsuit to arbitration and submit a proposed Order to that end. Ultimately, because of the scope of the arbitration, the arbitrator is in the best position to determine if any claims should be removed from arbitration and referred back to the court.

    We appreciate the court's consideration of this matter.

                            Sincerely,

                            David M. Prichard

DMP/ppo/#154218

Electronically Filed
1/11/2018 10:28 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

January 11, 2018
Page 2

cc:    J. A. "Tony" Canales
       Steven A. Fleckman
       Charles C. Murray
       Francisco J. Rodriguez
       John Christian Amberson

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

# FLECKMAN & McGLYNN, PLLC

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

January 11, 2018

**VIA FASCIMILE: (956) 318-2698**

The Honorable Luis M. Singleterry
92nd Civil District Court
Hidalgo County Courthouse
100 N. Closner
Edinburg, Texas  78539

> Re:    *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Judge Singleterry:

We reached out to Mr. Prichard yesterday to request his consent to the entry of the Amberson Parties' proposed order referring all claims to arbitration other than the "Cannon Grove" claims.  We never received a response, but understand that his January 11, 2018 letter to the Court effectively declines our request.  Accordingly, we request a hearing on this issue; please see the attached FIAT.

The parties plainly disagree as to the arbitrability of the "Cannon Grove" claims asserted by the McAllen Parties.  However, this is a "gateway issue" to be decided by this Court, ***not the arbitrator***. *See, e.g., In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *In re Weekley Homes*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding).  In taking a contrary position in their January 11, 2018 letter, the McAllen Parties have simply ignored these legal authorities.

Respectfully submitted,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

Letter to the Hon. Luis Singleterry

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

cc:      Mr. David M. Prichard
         Mr. J.A. "Tony" Canales
         Mr. Charles C. Murray
         Mr. Francisco J. Rodriguez
         Mr. Jon Christian Amberson

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## ORDER REFERRING CLAIMS TO ARBITRATION

On this day the Court considered JON CHRISTIAN AMBERSON'S, JON CHRISTIAN

AMBERSON, P.C.'S and AMBERSON NATURAL RESOURCES LLC'S (collectively the

"AMBERSON PARTIES") Motion to Refer Certain Claims to Arbitration and JAMES

ARGYLE MCALLEN's, EL RUCIO LAND AND CATTLE COMPANY, INC.'s SAN

JUANITO LAND PARTNERSHIP, LTD.'S and MCALLEN TRUST PARTNERSHIP'S

(collectively the "MCALLEN PARTIES") Response and Request to Refer All Claims in this

Lawsuit to Arbitration.  After considering the parties' briefing, the Court rules as follows:

1

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS ORDERED that the AMBERSON PARTIES' motion to refer certain claims to arbitration is GRANTED, but that their motion to retain other claims is DENIED.

IT IS FURTHER ORDERED that the MCALLEN PARTIES' request to refer all claims in this lawsuit to arbitration is GRANTED.

IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the arbitration provision.

SIGNED this _____ day of January, 2018.


JUDGE LUIS M. SINGLETERRY

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**

_____

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

**APPROVED AS TO FORM AND SUBSTANCE:**

_David M. Prichard_

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER RESETTING HEARING ON
## PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'
## <u>MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS</u>

It is ORDERED that a hearing on Plaintiff's and Third-Party Defendants' Motion to Refer

Certain Claims to Arbitration and Retain Others will be held on _____

at _____ in the courtroom of the district court for the 92nd Judicial District of Hidalgo

County, Texas.

SIGNED this _____ day of _____, 2018.

_____
JUDGE PRESIDING

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
2/8/2018 3:53 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios          Ricardo Contreras          Adriana "Audry" Garcia      Sabrina S. Guerra        Oneida Lamas          Stephanie Palacios      Aida Villarreal
CHIEF DEPUTY          CHIEF OF ADMINISTRATION      ASSISTANT CHIEF DEPUTY       SENIOR ACCOUNTANT    DEPUTY DISTRICT CLERK SUPERVISOR  BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                     AND PUBLIC INFORMATION                                                                              OFFICER

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER RESETTING HEARING ON
## PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'
## MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS

It is ORDERED that a hearing on Plaintiff's and Third-Party Defendants' Motion to Refer

Certain Claims to Arbitration and Retain Others will be held on _____ March 1st, 2018 _____

at _9:00 a.m._ in the courtroom of the district court for the 92nd Judicial District of Hidalgo

County, Texas.

SIGNED this 8th day of ___February___, 2018.

JUDGE PRESIDING

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
2/8/2018 11:24 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Order Setting Hearing

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios      Ricardo Contreras    Adriana "Audry" Garcia    Sabrina S. Guerra      Oneida Lamas         Stephanie Palacios    Aida Villarreal
CHIEF DEPUTY       CHIEF OF ADMINISTRATION   ASSISTANT CHIEF DEPUTY    SENIOR ACCOUNTANT    DEPUTY DISTRICT CLERK SUPERVISOR  BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                   AND PUBLIC INFORMATION                                                                                    OFFICER

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER RESETTING HEARING ON
## PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'
## MOTION TO REFER CERTAIN CLAIMS TO ARBITRATION AND RETAIN OTHERS

It is ORDERED that a hearing on Plaintiff's and Third-Party Defendants' Motion to Refer

Certain Claims to Arbitration and Retain Others will be held on _____March 1st, 2018_____

at __9:00 a.m.__ in the courtroom of the district court for the 92nd Judicial District of Hidalgo

County, Texas.

SIGNED this 8th day of ___February___, 2018.

JUDGE PRESIDING

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
1/11/2018 5:05 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
2/26/2018 5:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| FRANCES MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY TEXAS |

## AGREED ORDER RESETTING HEARING

The hearing on Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others set for March 1, 2018 is reset to April 10, 2018 at 9:00 a.m.

Signed this _____ day of _____, 2018.

_____
Judge Luis M. Singleterry

AGREED:

_____          _____
Steven A. Fleckman    by undersigned    David M. Prichard
State Bar No. 07118300               State Bar No. 16317900
Email: fleckman@fleckman.com         E-mail: dprichard@prichardyoungllp.com

154602                          1

Electronically Filed
2/26/2018 5:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, TX 78701
PH: (512) 476-7900
FAX: (512) 476-7644

Charles C Murray
State Bar No. 14719700
ATLAS, HALL & RODRIGUEZ
818 Pecan Street
McAllen, TX 78501
PH: (956) 682-5501
FAX: (956) 686-6109
ccmurray@atlashall.com
ATTORNEYS FOR PLAINTIFF
JON CHRISTIAN AMBERSON, P.C.
AND THIRD-PARTY DEFENDANTS
JON CHRISTIAN AMBERSON AND
AMBERSON NATURAL RESOURCES
LLC

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile
ATTORNEYS FOR DEFENDANTS,
JAMES ARGYLE MCALLEN, EL RUCIO
LAND AND CATTLE COMPANY, INC., SAN
JUANITO LAND PARTNERSHIP, LTD. and
MCALLEN TRUST PARTNERSHIP

154602

2

Electronically Filed
2/27/2018 9:47 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Order Setting Hearing

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios      Ricardo Contreras      Adriana "Audry" Garcia      Sabrina S. Guerra      Oneida Lamas      Stephanie Palacios      Aida Villarreal
CHIEF DEPUTY      CHIEF OF ADMINISTRATION      ASSISTANT CHIEF DEPUTY      SENIOR ACCOUNTANT      DEPUTY DISTRICT CLERK SUPERVISOR      BUDGET AND PROCUREMENT      CHIEF OF APPEALS
                  AND PUBLIC INFORMATION                                                                                OFFICER

Electronically Filed
2/26/2018 5:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| FRANCES MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY TEXAS |

## <u>AGREED ORDER RESETTING HEARING</u>

The hearing on Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others set for March 1, 2018 is reset to April 10, 2018 at 9:00 a.m.

Signed this 27th day of _____February_____, 2018.

_____
Judge Luis M. Singleterry

AGREED:

_____
Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com

_____
David M. Prichard
State Bar No. 16317900
E-mail: dprichard@prichardyoungllp.com

154602

1

Electronically Filed
2/26/2018 5:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, TX 78701
PH: (512) 476-7900
FAX: (512) 476-7644

Charles C Murray
State Bar No. 14719700
ATLAS, HALL & RODRIGUEZ
818 Pecan Street
McAllen, TX 78501
PH: (956) 682-5501
FAX: (956) 686-6109
<u>ccmurray@atlashall.com</u>
ATTORNEYS FOR PLAINTIFF
JON CHRISTIAN AMBERSON, P.C.
AND THIRD-PARTY DEFENDANTS
JON CHRISTIAN AMBERSON AND
AMBERSON NATURAL RESOURCES
LLC

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile
ATTORNEYS FOR DEFENDANTS,
JAMES ARGYLE MCALLEN, EL RUCIO
LAND AND CATTLE COMPANY, INC., SAN
JUANITO LAND PARTNERSHIP, LTD. and
MCALLEN TRUST PARTNERSHIP

154602

2

Electronically Filed
2/27/2018 2:31 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Hidalgo County District Clerk

---

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

| Nilda Palacios | Ricardo Contreras | Adriana "Audry" Garcia | Sabrina S. Guerra | Oneida Lamas | Stephanie Palacios | Aida Villarreal |
| CHIEF DEPUTY | CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION | ASSISTANT CHIEF DEPUTY | SENIOR ACCOUNTANT | DEPUTY DISTRICT CLERK SUPERVISOR | BUDGET AND PROCUREMENT OFFICER | CHIEF OF APPEALS |

Electronically Filed
2/26/2018 5:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92nd JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| FRANCES MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY TEXAS |

## AGREED ORDER RESETTING HEARING

The hearing on Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others set for March 1, 2018 is reset to April 10, 2018 at 9:00 a.m.

Signed this 27th day of ___February___, 2018.

Judge Luis M. Singleterry

AGREED:

Steven A. Fleckman          by authorization          David M. Prichard
State Bar No. 07118300          State Bar No. 16317900
Email: fleckman@fleckman.com          E-mail: dprichard@prichardyoungllp.com

154602                                            1

Electronically Filed
2/26/2018 5:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, TX 78701
PH: (512) 476-7900
FAX: (512) 476-7644

Charles C Murray
State Bar No. 14719700
ATLAS, HALL & RODRIGUEZ
818 Pecan Street
McAllen, TX 78501
PH: (956) 682-5501
FAX: (956) 686-6109
ccmurray@atlashall.com
ATTORNEYS FOR PLAINTIFF
JON CHRISTIAN AMBERSON, P.C.
AND THIRD-PARTY DEFENDANTS
JON CHRISTIAN AMBERSON AND
AMBERSON NATURAL RESOURCES
LLC

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile
ATTORNEYS FOR DEFENDANTS,
JAMES ARGYLE MCALLEN, EL RUCIO
LAND AND CATTLE COMPANY, INC., SAN
JUANITO LAND PARTNERSHIP, LTD. and
MCALLEN TRUST PARTNERSHIP

Electronically Filed
4/23/2018 3:46 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios        Ricardo Contreras        Adriana "Audry" Garcia        Sabrina S. Guerra        Oneida Lamas        Stephanie Palacios        Aida Villarreal
CHIEF DEPUTY        CHIEF OF ADMINISTRATION        ASSISTANT CHIEF DEPUTY        SENIOR ACCOUNTANT        DEPUTY DISTRICT CLERK SUPERVISOR        BUDGET AND PROCUREMENT        CHIEF OF APPEALS
                     AND PUBLIC INFORMATION                                                                                                 OFFICER

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |

JON CHRISTIAN AMBERSON P.C.                    §        IN THE DISTRICT COURT
                                               §
        Plaintiff,                             §
                                               §
v.                                             §        92ND JUDICIAL DISTRICT
                                               §
JAMES ARGYLE MCALLEN,                          §
EL RUCIO LAND AND CATTLE                       §
COMPANY, INC., SAN JUANITO                     §
LAND PARTNERSHIP, LTD. and                     §
MCALLEN TRUST PARTNERSHIP,                     §
LTD.,                                          §
                                               §
        Defendants                             §
                                               §
v.                                             §
                                               §
JON CHRISTIAN AMBERSON AND                     §
AMBERSON NATURAL RESOURCES                     §
LLC                                            §
                                               §
        Third-Parties.                         §        HIDALGO COUNTY, TEXAS

## **ORDER REFERRING CLAIMS TO ARBITRATION**

On this day the Court considered JON CHRISTIAN AMBERSON'S, JON CHRISTIAN AMBERSON, P.C.'S and AMBERSON NATURAL RESOURCES LLC'S (collectively the "AMBERSON PARTIES") Motion to Refer Certain Claims to Arbitration and JAMES ARGYLE MCALLEN's, EL RUCIO LAND AND CATTLE COMPANY, INC.'s SAN JUANITO LAND PARTNERSHIP, LTD.'S and MCALLEN TRUST PARTNERSHIP'S (collectively the "MCALLEN PARTIES") Response and Request to Refer All Claims in this Lawsuit to Arbitration.  After considering the parties' briefing, the Court rules as follows:

1

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS ORDERED that the AMBERSON PARTIES' motion to refer certain claims to arbitration is GRANTED, but that their motion to retain other claims is DENIED.

IT IS FURTHER ORDERED that the MCALLEN PARTIES' request to refer all claims in this lawsuit to arbitration is GRANTED.

IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the arbitration provision.

SIGNED this ___23rd___ day of ~~January~~ April, 2018.


_____
JUDGE LUIS M. SINGLETERRY

2

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**

_____

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

**APPROVED AS TO FORM AND SUBSTANCE:**

_____

David M. Prichard
Prichard Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
Canales & Simonson, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

3

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER

Plaintiff Jon Christian Amberson P.C. (the "***Amberson Firm***"), and Third-Party

Defendants Jon Christian Amberson ("***Amberson***") and Amberson Natural Resources LLC

("***ANR LLC***") (collectively, the "***Amberson Parties***") respectfully submit this motion for

reconsideration of the Court's April 23, 2018 Order (attached as **Exhibit A**).   In the

alternative, the Amberson Parties move for clarification of the April 23, 2018 Order as set

forth below.

## A.      This Court should reconsider that portion of its April 23, 2018 Order referring the Cannon Grove claims to arbitration.

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

1.     On April 23, 2018 this Court entered an Order referring "all of the claims in this lawsuit" to arbitration.  The claims referred to arbitration included the Cannon Grove claims—even though the Cannon Grove claims involve ANR LLC, an entity that was never a signatory to the 2005 Engagement Agreement containing the only arbitration clause in this case.  Not only did ANR LLC not agree to arbitration, it had no involvement in the Forest Oil litigation, and has never provided any legal services to Mr. McAllen or anyone else.

2.     The Texas Supreme Court has made it very clear that arbitration "is a matter of consent, not coercion." *In re Merrill Lynch*, 235 S.W.3d 185, 192 (Tex. 2007).  A party who has not agreed to arbitrate cannot be compelled to arbitrate except under extremely limited circumstances that do not exist here.

> It is a foundational principle that a party cannot be compelled to arbitrate a dispute when the party has not agreed to do so … '*in the absence of an agreement to arbitrate, a party cannot be forced to forfeit the constitutional protections of the judicial system and submit its dispute to arbitration*.'  Thus, unless a party has agreed to arbitrate, arbitration should not be compelled.

*GM Oil Properties, Inc. v. Wade*, 01-08-00757-CV, 2012 WL 246041, at *6 (Tex. App.—Houston [1st Dist.] Jan. 26, 2012, no pet.) (emphasis added) (citations omitted).

3.     The McAllen Parties have not (during the recent hearing or otherwise) demonstrated any basis for compelling arbitration as to the entirely distinct Cannon Grove tax transaction—in which Mr. McAllen was represented, not by any Amberson Party, but instead by three separate law firms.  Indeed, ANR was not formed for any purpose related to the Forest Oil litigation; it was not even formed until 2009, long after the arbitration agreement with the Amberson firm was executed.  Because none of the very limited

Motion for Reconsideration or Clarification of Apr. 23, 2018
Order

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

circumstances in which Texas courts have held a non-signatory bound by an arbitration agreement apply here, this Court should reconsider its decision to refer the Cannon Grove claims to arbitration.  *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

4.      The McAllen Parties' own factual admissions in their live pleading reveal that the "Cannon Grove" dispute involves ANR LLC's 2009 acquisition of an interest in a real estate company, Cannon Grove, LLC formed by Mr. McAllen and having nothing to do with the Forest Oil litigation that was the subject of the 2005 arbitration clause, the Amberson Firm's performance of legal services in that litigation, or the agreed contingency fee claimed under the Engagement Agreement. *See In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (the facts, not the allegations, determine whether a claim falls within the scope of an arbitration agreement).   The Cannon Grove claims clearly do not fall within the very narrow scope of the arbitration provision in the Engagement Agreement, a long line of appellate decisions makes it clear that the McAllen Parties are asking this Court to commit error by sending these non-arbitrable claims to arbitration.

5.      The Amberson Parties therefore respectfully request that this Court reconsider that portion of its April 23, 2018 Order referring the Cannon Grove claims to arbitration, and enter a new order retaining the Cannon Grove claims for subsequent judicial disposition.

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

**B.**    **In the alternative, this Court should issue a revised order clarifying, as required by the Texas Arbitration Act, that the underlying litigation is stayed pending arbitration.**

6.    Pursuant to the Texas Arbitration Act (the "***Act***"), "[a]n order compelling arbitration must include a stay of any proceeding . . . ." Tex. Civ. Prac. & Rem. Code § 171.021(c); *In re Gulf Exploration, LLC*, 289 S.W.3d 836, 841 (Tex. 2009) ("[T]he Texas Arbitration Act states that '[a]n order compelling arbitration *must* include a stay' of the underlying litigation." (emphasis in original)).

7.    The Court's April 23, 2018 Order does not include a stay of the underlying litigation.  Accordingly, in the event this Court declines to modify its April 23, 2018 Order to retain the Cannon Grove claims, the Amberson Parties respectfully request that the Court enter a new Order clarifying that the underlying litigation is stayed pending arbitration, as required by the Act.

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
    Steven A. Fleckman

**ATTORNEYS FOR PLAINTIFF AND
THIRD-PARTY DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on April 30, 2018.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

      */s/ Steven A. Fleckman*
      Steven A. Fleckman

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER REFERRING CLAIMS TO ARBITRATION</u>

On this day the Court considered JON CHRISTIAN AMBERSON'S, JON CHRISTIAN AMBERSON, P.C.'S and AMBERSON NATURAL RESOURCES LLC'S (collectively the "AMBERSON PARTIES") Motion to Refer Certain Claims to Arbitration and JAMES ARGYLE MCALLEN's, EL RUCIO LAND AND CATTLE COMPANY, INC.'s SAN JUANITO LAND PARTNERSHIP, LTD.'S and MCALLEN TRUST PARTNERSHIP'S (collectively the "MCALLEN PARTIES") Response and Request to Refer All Claims in this Lawsuit to Arbitration. After considering the parties' briefing, the Court rules as follows:

1

EXHIBIT A

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS ORDERED that the AMBERSON PARTIES' motion to refer certain claims to arbitration is GRANTED, but that their motion to retain other claims is DENIED.

IT IS FURTHER ORDERED that the MCALLEN PARTIES' request to refer all claims in this lawsuit to arbitration is GRANTED.

IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the arbitration provision.

SIGNED this ___23rd___ day of ~~January~~ April, 2018.


_____
JUDGE LUIS M. SINGLETERRY

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**

_____

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

**APPROVED AS TO FORM AND SUBSTANCE:**

_____

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

3

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## **ORDER MODIFYING APRIL 23, 2018 ORDER**

The Court, having considered the Motion for Reconsideration or, in the alternative, for Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"), finds that the Motion should be granted in part and denied in part, as provided below.  It is therefore

ORDERED that all claims in this lawsuit are referred to arbitration; it is further

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, this action is stayed pending completion of the arbitration subject, however, to further order of the Court.

This Order supersedes the Court's April 23, 2018 Order in this action.

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

SIGNED this _____ day of _____, 2018.

_____

JUDGE PRESIDING

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER MODIFYING APRIL 23, 2018 ORDER</u>

The Court, having considered the Motion for Reconsideration or, in the alternative, for Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"), finds that the Motion should be granted as provided below.  It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove claims, are referred to arbitration; it is further

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, this action is stayed pending completion of the arbitration subject, however, to further order of the Court.

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of _____, 2018.

_____

JUDGE PRESIDING

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
5/1/2018 12:43 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios     Ricardo Contreras     Adriana "Audry" Garcia     Sabrina S. Guerra     Oneida Lamas     Stephanie Palacios     Aida Villarreal
CHIEF DEPUTY     CHIEF OF ADMINISTRATION     ASSISTANT CHIEF DEPUTY     SENIOR ACCOUNTANT     DEPUTY DISTRICT CLERK SUPERVISOR     BUDGET AND PROCUREMENT     CHIEF OF APPEALS
AND PUBLIC INFORMATION                                                                          OFFICER

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER MODIFYING APRIL 23, 2018 ORDER</u>

The Court, having considered the Motion for Reconsideration or, in the alternative, for Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC (collectively the "*Amberson Parties*"), finds that the Motion should be granted in part and denied in part, as provided below.  It is therefore

ORDERED that all claims in this lawsuit are referred to arbitration; it is further

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, this action is stayed pending completion of the arbitration subject, however, to further order of the Court.

This Order supersedes the Court's April 23, 2018 Order in this action.

Order Granting Motion for Clarification              1

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

SIGNED this _____ day of _____, 2018.


_____

JUDGE PRESIDING

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
5/1/2018 12:46 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios     Ricardo Contreras     Adriana "Audry" Garcia     Sabrina S. Guerra     Oneida Lamas     Stephanie Palacios     Aida Villarreal
CHIEF DEPUTY     CHIEF OF ADMINISTRATION     ASSISTANT CHIEF DEPUTY     SENIOR ACCOUNTANT     DEPUTY DISTRICT CLERK SUPERVISOR     BUDGET AND PROCUREMENT     CHIEF OF APPEALS
                 AND PUBLIC INFORMATION                                                                                              OFFICER

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER MODIFYING APRIL 23, 2018 ORDER</u>

The Court, having considered the Motion for Reconsideration or, in the alternative, for

Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian

Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"),

finds that the Motion should be granted as provided below.  It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it

is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove

claims, are referred to arbitration; it is further

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, this action is stayed pending completion of the arbitration subject, however, to further order of the Court.

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of _____, 2018.

_____

JUDGE PRESIDING

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

Charles C. Murray
State Bar No. 14719700
Email: ccmurray@atlashall.com

ATLAS, HALL & RODRIGUEZ, LLP
818 W. Pecan Blvd. (78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Facsimile:  (956) 686-6109

Francisco J. Rodriguez
State Bar No. 17145800
Email: frankr@mcallenlawfirm.com

LAW OFFICE OF
FRANCISCO J. RODRIGUEZ
1111 West Nolana, Suite A
McAllen, Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
4/30/2018 4:58 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
Telephone: (210) 477-7400
Facsimile: (210) 477-7450

J.A. "Tony" Canales
State Bar No. 03737000
Email: tonycanales@canalessimonson.com

CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR DEFENDANTS**

Electronically Filed
5/1/2018 4:38 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## CANALES & SIMONSON, P.C.

ATTORNEYS AT LAW

2601 MORGAN AVENUE

P.O. BOX 5624

CORPUS CHRISTI, TEXAS 78465-5624

361.883.0601 TEL.

361.884.7023 FAX

J.A. "TONY" CANALES
PATRICIA CANALES BELL
HECTOR A. CANALES

tonycanales@canalessimonson.com
pmcanales@canalessimonson.com
hacanales@canalessimonson.com

May 1, 2018

Ms. Laura Hinojosa, District Clerk of Hidalgo County
C/O Clerk of the 92nd District Court of Hidalgo County, Texas
1001 N. Closner
Edinburg, Texas 78539
Telephone: 956-318-2200
Fax: 956-318-2251

### REQUEST TO CLERK TO MAKE ENTRY OF ASSIGNMENT

**James Argyle McAllen et al's  Request for Documents to be Included in Clerk's Record of Assignment regarding the Appointment of An Arbitrator by Judge Mario Ramirez As the Senior District Judge of Hidalgo County, Texas.**

**RE:**   *Cause No. C-0340-15-A; Jon Christian McAllen, P.C. Plaintiff/Counter Defendant vs. James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, LTD, and McAllen Trust Partnership, Defendants/Counter claimants/Third -Party Plaintiffs, pending in the 92nd District Court of Hidalgo County, Texas.*

Dear Ms. Hinojosa:

James Argyle McAllen et al requests that the following documents be included in the Clerk's record to be submitted to the Senior Hidalgo County District Judge Mario Ramirez as per the arbitration provision between the parties.

1.   The Court's Order signed April 23, 2018 by Judge Luis Singleterry entitled "ORDER REFERRING CLAIMS TO ARBITRATION" wherein the Court stated:

> "IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction are referred to arbitration as outlined in the arbitration provision."

Electronically Filed
5/1/2018 4:38 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Page Two
May 1, 2018
Ms. Laura Hinojosa,
District Clerk of Hidalgo County

2.  Exhibits 1 & 2 offered and admitted in evidence by James Argyle McAllen at the April 10, 2018 before Judge Singleterry.  The exhibits are fee agreements with arbitration provisions.  The arbitration provisions provide the arbitrator will be selected by the Senior Presiding Judge of Hidalgo County.

The parties agree that Judge Mario Ramirez is the Senior District Judge of Hidalgo County and, pursuant to the terms of the arbitration provisions, is the correct person to appoint the arbitrator in this matter.

Sincerely,

J.A. "Tony" Canales
2601 Morgan Ave.
Corpus Christi, Texas 78495
Phone:  (361) 883-0601
Fax:   (361) 884-7023
Email: tonycanales@canalessimonson.com

And

David M. Prichard
David Montpas
Prichard Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
Phone: 210-477-7400
Fax: 210-477-7450
Email: dprichard@prichardyoungllp.com
Email: dmontpas@prichardyoungllp.com

*Attorneys for James Argyle McAllen et al*

JAC/rc

Electronically Filed
5/1/2018 4:38 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Page Three
May 1, 2018
Ms. Laura Hinojosa,
District Clerk of Hidalgo County

cc:   Tootsie Barrera          *Via Facsimile 956- 318-2698*
      Court Coordinator
      332nd District Court
      100 N. Closner
      Edinburg, Texas 78539

cc:   Mr. Pedro "Pete" Lobato    *Via Facsimile 956-318-2250*
      Court Coordinator
      92nd Judicial District Court
      100 N. Closner
      Corpus Christi, Texas 78539

cc:   Steven A. Fleckman
      FLECKMAN & MCGLYNN, PLLC
      1800 Bank of America Tower
      515 Congress Avenue
      Austin, Texas 78701-3503
      Telephone:  512-476-7900
      Fax: 512-476-7644
      Email: fleckman@fleckman.com

cc:   Frank Rodriguez
      LAW OFFICE OF
      FRANCISCO J. RODRIGUEZ
      1111 West Nolana, Suite A
      McAllen, Texas
      Telephone:  956-687-4363
      Fax: 956-687-6415
      Email: frankr@mcallenlawfirm.com

cc:   Charles Murray
      ATLAS, HALL & RODRIGUEZ, LLP
      818 Pecan Blvd. (78501)
      P.O. Box 3725
      McAllen, Texas 78502
      Telephone:  956-682-5501
      Fax: 956-686-6109
      Email: ccmurray@atlashall.com

Electronically Filed
5/1/2018 4:38 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92ND JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| *Defendants* | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| *Third-Parties.* | § | HIDALGO COUNTY TEXAS |

## **ASSIGNMENT**

Pursuant to Hidalgo County Local Rule 1 and Court's Order of Judge Luis M. Singelterry

signed April 23, 2018, Judge Mario Ramirez, as the Senior District Judge of Hidalgo County,

Texas, is assigned to appoint an arbitrator pursuant to the arbitration provisions contained in the

fee agreements at issue in this matter.

Signed this _____ day of May, 2018.

_____
**Clerk of the 92nd Judicial District Court**
**Hidalgo County, Texas**

Electronically Filed
5/4/2018 9:28 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C.,<br>Plaintiff/Counter-Defendant, | § <br> § <br> § | IN THE DISTRICT COURT |
| VS. | § <br> § | |
| JAMES ARGYLE MCALLEN,<br>EL RUCIO LAND AND CATTLE<br>COMPANY, INC., SAN JUANITO<br>LAND PARTNERSHIP, LTD., AND<br>MCALLEN TRUST PARTNERSHIP,<br>    Defendants/Counterclaimants/<br>    Third-Party Plaintiffs | § <br> § <br> § <br> § <br> § <br> § <br> § | HIDALGO COUNTY, TEXAS |
| VS. | § <br> § <br> § | |
| JON CHRISTIAN AMBERSON and<br>AMBERSON NATURAL RESOURCES,<br>LLC,<br>    Third-Party Defendants. | § <br> § <br> § <br> § | 92ND JUDICIAL DISTRICT |

## ORDER SETTING HEARING ON PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER

On the _____ day of May, 2018, came to be considered the request for a hearing on

Plaintiff and Third-Party Defendants' Motion for Reconsideration of the April 23, 2018 Order

or, in the Alternative, for Clarification of that Order.  The Court finds that such request is in

order and hereby ORDERS that the hearing be scheduled for the _____ day of May, 2018,

at ___:00 ___.m. in the courtroom of the 92nd Judicial District Court.

The Clerk is to notify all parties.

SIGNED this _____ day of May, 2018.


_____
JUDGE PRESIDING

Electronically Filed
5/4/2018 9:28 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

<u>COPIES TO:</u>

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
5/4/2018 10:20 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Order
# Setting
# Hearing

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios   Ricardo Contreras   Adriana "Audry" Garcia   Sabrina S. Guerra   Oneida Lamas   Stephanie Palacios   Aida Villarreal
CHIEF DEPUTY   CHIEF OF ADMINISTRATION   ASSISTANT CHIEF DEPUTY   SENIOR ACCOUNTANT   DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
AND PUBLIC INFORMATION   OFFICER

Electronically Filed
5/4/2018 9:28 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., Plaintiff/Counter-Defendant, | § § § | IN THE DISTRICT COURT |
| VS. | § § | |
| JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., AND MCALLEN TRUST PARTNERSHIP, Defendants/Counterclaimants/ Third-Party Plaintiffs | § § § § § § § § § | HIDALGO COUNTY, TEXAS |
| VS. | § § § | |
| JON CHRISTIAN AMBERSON and AMBERSON NATURAL RESOURCES, LLC, Third-Party Defendants. | § § § § | 92ND JUDICIAL DISTRICT |

## ORDER SETTING HEARING ON PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER

On the __8th__ day of May, 2018, came to be considered the request for a hearing on

Plaintiff and Third-Party Defendants' Motion for Reconsideration of the April 23, 2018 Order

or, in the Alternative, for Clarification of that Order.  The Court finds that such request is in

order and hereby ORDERS that the hearing be scheduled for the __5th__ day of ~~May~~ June, 2018,

at _9_:00 _a_.m. in the courtroom of the 92nd Judicial District Court.

The Clerk is to notify all parties.

SIGNED this __8th__ day of May, 2018.

_____

JUDGE PRESIDING

Electronically Filed
5/4/2018 9:28 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

<u>COPIES TO:</u>

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
5/9/2018 8:27 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Order
# Setting
# Hearing

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios     Ricardo Contreras     Adriana "Audry" Garcia     Sabrina S. Guerra     Oneida Lamas     Stephanie Palacios     Aida Villarreal
CHIEF DEPUTY     CHIEF OF ADMINISTRATION     ASSISTANT CHIEF DEPUTY     SENIOR ACCOUNTANT     DEPUTY DISTRICT CLERK SUPERVISOR     BUDGET AND PROCUREMENT     CHIEF OF APPEALS
                 AND PUBLIC INFORMATION                                                                                          OFFICER

Electronically Filed
5/4/2018 9:28 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | HIDALGO COUNTY, TEXAS |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| VS. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES, | § | |
| LLC, | § | |
| Third-Party Defendants. | § | 92ND JUDICIAL DISTRICT |

## ORDER SETTING HEARING ON PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER

On the __8th__ day of May, 2018, came to be considered the request for a hearing on

Plaintiff and Third-Party Defendants' Motion for Reconsideration of the April 23, 2018 Order

or, in the Alternative, for Clarification of that Order.  The Court finds that such request is in

order and hereby ORDERS that the hearing be scheduled for the __5th__ day of ~~May~~ June, 2018,

at __9__:00 __a__.m. in the courtroom of the 92nd Judicial District Court.

The Clerk is to notify all parties.

SIGNED this __8th__ day of May, 2018.

_____
JUDGE PRESIDING

Electronically Filed
5/4/2018 9:28 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

<u>COPIES TO:</u>

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
5/21/2020 8:27 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

| Nilda Palacios | Ricardo Contreras | Adriana "Audry" Garcia | Sabrina S. Guerra | Oneida Lamas | Stephanie Palacios | Aida Villarreal |
|---|---|---|---|---|---|---|
| CHIEF DEPUTY | CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION | ASSISTANT CHIEF DEPUTY | SENIOR ACCOUNTANT | DEPUTY DISTRICT CLERK SUPERVISOR | BUDGET AND PROCUREMENT OFFICER | CHIEF OF APPEALS |

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## <u>NOTICE OF HEARING</u>

Please take notice that a hearing on James Argyle McAllen's, El Rucio Land and Cattle Company, Inc.'s, San Juanito Land Partnership, Ltd.'s and McAllen Trust Partnership's Motion to Confirm Arbitration Award has been set for _____ June 25th _____, 2020 at _____ 9:00 _____ XXX a.m./p.m. before the Honorable Luis M. Singleterry.

Signed this _20th_ day of _____ May _____, 2020.

_____
HONORABLE LUIS M. SINGLETERRY

Francisco J. Rodriguez:  frankr@mcallenlawfirm.com

David M. Prichard:    dprichard@prichardyoungllp.com

J.A. "Tony" Canales:  tonycanales@canalessimonson.com

159760

fleckman@fleckman.com      zwolfe@fleckman.com      amckeon@fleckman.com

Electronically Filed
6/4/2018 2:08 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

**THE MCALLEN PARTIES'
RESPONSE TO PLAINTIFF'S AND
THIRD-PARTY DEFENDANTS' MOTION
FOR RECONSIDERATION OR CLARIFICATION**

TO THE HONORABLE LUIS M. SINGLETERRY:

COME NOW JAMES ARGYLE MCALLEN ("MCALLEN"), EL RUCIO LAND AND

CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN

TRUST PARTNERSHIP (collectively the "MCALLEN PARTIES") and file this Response to

Plaintiff's and Third-Party Defendants' (collectively the "AMBERSON PARTIES") Motion for

Reconsideration or Clarification. In support of this response, the MCALLEN PARTIES show as

follows:

1

155109

Electronically Filed
6/4/2018 2:08 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# I.
## INTRODUCTION

The AMBERSON PARTIES' motion is merely an attempt to delay the inevitable arbitration. At the April 10, 2018 hearing, the Court heard extensive arguments from counsel and received multiple binders with briefing and case law. The parties fully and completely set out their respective arguments, the Court considered those arguments, and it issued its ruling referring all claims to arbitration. The AMBERSON PARTIES' request for reconsideration offers no new evidence or arguments – they merely repeat arguments the Court has considered and rejected. The AMBERSON PARTIES' alternative request for "clarification" is also without merit. There is nothing to "clarify" as the Court expressly referred all of the claims in this lawsuit to arbitration – including claims involving the Cannon Grove transaction. The Court should reject the AMBERSON PARTIES' efforts to delay arbitration and deny their Motion for Reconsideration or Clarification.

# II.
## THE COURT SHOULD DENY
## THE MOTION FOR RECONSIDERATION THAT SIMPLY REPEATS
## ARGUMENTS THE COURT ALREADY CONSIDERED AND REJECTED

The AMBERSON PARTIES' request for reconsideration regurgitates the same arguments it made in their: (1) Motion to Refer Certain Claims to Arbitration and Retain Others (Oct. 30, 2017), (2) Bench Brief as to Claims Subject to Arbitration (Dec. 20, 2017), and (3) Reply to the MCALLEN PARTIES' Request to Refer All Claims to Arbitration (Jan. 8, 2017). The AMBERSON PARTIES offer no new arguments or evidence supporting their request. These arguments fail for all the reasons the MCALLEN PARTIES have already explained in

155109

Electronically Filed
6/4/2018 2:08 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

both their written briefing[1] and at the April 10, 2018 hearing.  Absent new arguments or evidence there is nothing for the Court to reconsider and, accordingly, it should deny the AMBERSON PARTIES' Motion for Reconsideration.

## III.
## THE COURT SHOULD DENY THE MOTION FOR CLARIFICATION

The AMBERSON PARTIES alternatively request an order clarifying that this litigation has been stayed pending arbitration.  The request begs the question – with the Court having referred all the claims in this lawsuit to arbitration what is left to be stayed?  The AMBERSON PARTIES cite to Section 171.021(c) of the Civil Practice and Remedies Code and state "[p]ursuant to the Texas Arbitration Act (the 'Act'), '[a]n order compelling arbitration must include a stay of any proceeding . . . .'"  The AMBERSON PARTIES' Motion for Reconsideration or Clarification at 4 (emphasis added).  But it is the last part of the provision, that the AMBERSON PARTIES omit with an ellipsis, that is key.   Section 171.021(c) states in its entirety:

> An order compelling arbitration must include a stay of any proceeding
> subject to Section 171.025.

TEX. CIV. PRAC. & REM. CODE §171.021(c) (emphasis added).  Section 171.025 states:

> (a)  The court shall stay a proceeding **that involves an issue subject to arbitration** if an order for arbitration or an application for that order is made under this subchapter.

> (b)  The stay applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding.

*Id.* at §171.025.  If a proceeding no longer involves an issue subject to arbitration, Section 171.025 does not apply.

---

[1] With this response, the MCALLEN PARTIES incorporate by reference their (1) Response to Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Other and (2) Request to Refer All Claims in this Lawsuit to Arbitration filed on December 18, 2017.

Electronically Filed
6/4/2018 2:08 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

In this instance, all the claims in the lawsuit have been referred to arbitration. There are no claims left in the lawsuit left to stay, much less a litigation claim that shares an issue with an arbitration claim. Section 171.025 is, thus, not applicable in this case. Consequently, Section 171.021(c) is not applicable because it only applies to proceedings subject to Section 171.025(c). Accordingly, the Court should deny the AMBERSON PARTIES' request for clarification.

## IV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the MCALLEN PARTIES respectfully request that the Court deny the AMBERSON PARTIES' Motion for Reconsideration or Clarification.

Respectfully submitted,

/s/ David M. Prichard
David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE**
**MCALLEN, EL RUCIO LAND AND CATTLE**

155109

Electronically Filed
6/4/2018 2:08 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST
PARTNERSHIP

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served on June 4, 2018 to the following:

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Frank Rodriguez
Law Office of Francisco J. Rodriguez
111 West Nolana, Suite A
McAllen, Texas 78504

/s/ David M. Prichard
David M. Prichard

155109

Electronically Filed
6/5/2018 8:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

**PLAINTIFF AND THIRD-PARTY DEFENDANTS' SUPPLEMENT TO MOTION
FOR RECONSIDERATION OF THE APRIL 23, 2018 ORDER
OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THAT ORDER**

Plaintiff Jon Christian Amberson P.C. (the "***Amberson Firm***"), and Third-Party

Defendants Jon Christian Amberson ("***Amberson***") and Amberson Natural Resources LLC

("***ANR LLC***") (collectively, the "***Amberson Parties***") respectfully submit this Supplement

to Motion for Reconsideration of the Court's April 23, 2018 Order (attached as **Exhibit**

**A**).  In the alternative, the Amberson Parties move for clarification of the April 23, 2018

Order as set forth below.

**A.      This Court should reconsider that portion of its April 23, 2018 Order referring
         the Cannon Grove claims to arbitration.**

Motion for Reconsideration or Clarification of Apr. 23, 2018 Order

Electronically Filed
6/5/2018 8:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

1.      On April 23, 2018 this Court entered an Order referring "all of the claims in this lawsuit" to arbitration.  The claims referred to arbitration included the Cannon Grove claims—even though the Cannon Grove claims involve ANR LLC, an entity that was never a signatory to the 2005 Engagement Agreement containing the only arbitration clause in this case.  Not only did ANR LLC not agree to arbitration, it had no involvement in the Forest Oil litigation, and has never provided any legal services to Mr. McAllen or anyone else.

2.      The Texas Supreme Court has made it very clear that arbitration "is a matter of consent, not coercion." *In re Merrill Lynch*, 235 S.W.3d 185, 192 (Tex. 2007).  A party who has not agreed to arbitrate cannot be compelled to arbitrate except under extremely limited circumstances that do not exist here.

> It is a foundational principle that a party cannot be compelled to arbitrate a dispute when the party has not agreed to do so ... '*in the absence of an agreement to arbitrate, a party cannot be forced to forfeit the constitutional protections of the judicial system and submit its dispute to arbitration*.'  Thus, unless a party has agreed to arbitrate, arbitration should not be compelled.

*GM Oil Properties, Inc. v. Wade*, 01-08-00757-CV, 2012 WL 246041, at *6 (Tex. App.—Houston [1st Dist.] Jan. 26, 2012, no pet.) (emphasis added) (citations omitted).

3.      The McAllen Parties have not (during the recent hearing or otherwise) demonstrated any basis for compelling arbitration as to the entirely distinct Cannon Grove tax transaction—in which Mr. McAllen was represented, not by any Amberson Party, but instead by three separate law firms.  Indeed, ANR was not formed for any purpose related to the Forest Oil litigation; it was not even formed until 2009, long after the arbitration agreement with the Amberson firm was executed.  Because none of the very limited

Motion for Reconsideration or Clarification of Apr. 23, 2018 Order

Electronically Filed
6/5/2018 8:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

circumstances in which Texas courts have held a non-signatory bound by an arbitration agreement apply here, this Court should reconsider its decision to refer the Cannon Grove claims to arbitration. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

4.      Subsequent to the April 10, 2018 hearing wherein this Court ordered the McAllen parties claims against ANR and Jon Christian Amberson, individually, regarding the Cannon Grove transaction to arbitration as outlined in the arbitration provision of a Contract of Employment with Jon Christian Amberson, P.C., the Supreme Court on May 11, 2018, held in the case styled *Jody James Farms, JV vs. The Altman Group, Inc. and Laurie Diaz*, 506 S.W.3d 595 (Tex. 2018), that no party may be compelled to arbitrate unless they have agreed to arbitrate or are bound by principles of agency or contract law to do so. ANR and Jon Christian Amberson, individually, did not agree to arbitrate any matter - not the question of arbitrability and not the merits of this dispute. ANR and Jon Christian Amberson, individually, cannot be compelled to arbitrate under any exception, including agency, third-party beneficiary or estoppel theories because there is no evidence that in any way connects the Contract of Employment with Jon Christian Amberson, P.C. to the Cannon Grove claims.

5.      The McAllen Parties' own factual admissions in their live pleading reveal that the "Cannon Grove" dispute involves ANR LLC's 2009 acquisition of an interest in a real estate company, Cannon Grove, LLC formed by Mr. McAllen and having nothing to do with the Forest Oil litigation that was the subject of the 2005 arbitration clause, the Amberson Firm's performance of legal services in that litigation, or the agreed contingency

Motion for Reconsideration or Clarification of Apr. 23, 2018 Order

Electronically Filed
6/5/2018 8:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

fee claimed under the Engagement Agreement. *See In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (the facts, not the allegations, determine whether a claim falls within the scope of an arbitration agreement). The Cannon Grove claims clearly do not fall within the very narrow scope of the arbitration provision in the Engagement Agreement, a long line of appellate decisions makes it clear that the McAllen Parties are asking this Court to commit error by sending these non-arbitrable claims to arbitration.

6.     The Amberson Parties therefore respectfully request that this Court reconsider that portion of its April 23, 2018 Order referring the Cannon Grove claims to arbitration, and enter a new order retaining the Cannon Grove claims for subsequent judicial disposition.

**B.     In the alternative, this Court should issue a revised order clarifying, as required by the Texas Arbitration Act, that the underlying litigation is stayed pending arbitration.**

7.     Pursuant to the Texas Arbitration Act (the "*Act*"), "[a]n order compelling arbitration must include a stay of any proceeding . . . ." Tex. Civ. Prac. & Rem. Code § 171.021(c); *In re Gulf Exploration, LLC*, 289 S.W.3d 836, 841 (Tex. 2009) ("[T]he Texas Arbitration Act states that '[a]n order compelling arbitration *must* include a stay' of the underlying litigation." (emphasis in original)).

8.     The Court's April 23, 2018 Order does not include a stay of the underlying litigation. Accordingly, in the event this Court declines to modify its April 23, 2018 Order to retain the Cannon Grove claims, the Amberson Parties respectfully request that the Court enter a new Order clarifying that the underlying litigation is stayed pending arbitration, as required by the Act.

Electronically Filed
6/5/2018 8:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Respectfully submitted,

**LAW OFFICE OF FRANCISCO J. RODRIGUEZ**
1111 West Nolana Ave., Suite A
McAllen Texas 78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415
E-mail: frankr@mcallenlawfirm.com
        danielle@mcallenlawfirm.com
        jared.clark@mcallenlawfirm.com

By: */s/ Francisco J. Rodriguez*
FRANCISCO J. RODRIGUEZ
State Bar No. 17145800
DANIELLE C. RODRIGUEZ
State Bar No. 24075952
JARED A. CLARK
State Bar No. 24101626

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644
Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

## CERTIFICATE OF SERVICE

Electronically Filed
6/5/2018 8:32 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

The undersigned counsel certifies that this document was served on each person listed below, and all other attorney of record, through the electronic filing system and/or by email on June 5, 2018, including the following,

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

*/s/ Francisco J. Rodriguez*
Francisco J. Rodriguez

# FLECKMAN & McGLYNN, PLLC

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

June 11, 2018

**VIA E-FILE and EMAIL**

Mr. Julian G. Alderette
92nd Civil District Court
Hidalgo County Courthouse
100 N. Closner
Edinburg, Texas  78539
julian.alderette@co.hidalgo.tx.us

Re:   *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Mr. Alderette:

Thank you for sending the reporter's transcript of the April 10, 2018 hearing on the Amberson Parties' Motion to Refer Certain Claims to Arbitration and Retain Others.  Upon review however, we noticed several typographical errors that could pose issues in future proceedings.  We would be grateful if you would make the following corrections and re-issue a revised transcript; pertinent portions of the transcript are enclosed:

| Location | Misquote | Requested Correction |
|---|---|---|
| Page 2 | Mr. Andrew McGlynn | Mr. Andrew McKeon |
| Page 4, Line 5 | Andrew McGlynn | Andrew McKeon |
| Page 4, Line 7 | Chuck Murry | Chuck Murray |
| Page 4, Line 14 | McAllen Grove | Cannon Grove |
| Page 4, Line 23 | AN ATTORNEY: | MR. FLECKMAN: |
| Page 5, Line 2 | | Remove "in" |
| Page 5, Line 5 | clauses that relates to | clauses that relate to |
| Page 5, Line 13 | accounted | conducted |
| Page 5, Line 24 | monitary | monetary |
| Page 6, Line 4 | mediation | remediation |
| Page 6, Line 5 | Foreign Oil | Forest Oil |
| Page 6, Line 10 | on banc | en banc |
| Page 8, Line 3 | | Remove ", the distinction" |

Letter to Mr. Julian G. Alderette

| Page 8, Line 8 | Mr. Pat McAllen | Mr. Jimmy McAllen |
| Page 8, Line 16 | Mann McCaleb | Ben McCaleb |
| Page 8, Line 17 | by the name . . . | by the name of |
| Page 8, Line 24 | Mr. McAllen's representative | Mr. McAllen's representatives |
| Page 9, Line 3 | sere | serve |
| Page 9, Line 7 | a $4.5 million, | a $4.5 million loan, |
| Page 10, Lines 18-19 | in an entity Cannon Grove Investments that . . . | in an entity, Cannon Grove Investments, that |
| Page 11, Line 18 | daughter-in-law | daughter |
| Page 11, Line 20 | For a 90 percent in the Cannon . . . | For a 90 percent interest in Cannon (remove "the" preceding Cannon) |
| Page 12, Line 22 | | Remove "the" preceding "Amberson Natural" |
| Page 13, Line 6 | County Grove matter | Cannon Grove matter |
| Page 13, Line 14 | | Remove "the" preceding "Forest Oil" |
| Page 14, Lines 21-22 | that is not evident and is subject to . . . | that is not evidently subject to . . . (remove "and is" preceding "subject") |
| Page 15, Lines 19-20 | that was why referral to arbitration here. | that is why there is no referral to arbitration here. |
| Page 16, Line 23 | The Courts have | The Court has . . . (remove the "s" following "Court") |
| Page 17, Line 7 | To be alter-egos to . . . | To be alter-egos of . . . |
| Page 17, Line 9 | | Remove [the] after "Moreover," |
| Page 17, Line 17 | His representatives did, and the documentation . . . | Remove ", and" |
| Page 18, Line 17 | commingled will those | commingled with those |
| Page 19, Line 2 | but can see . . . | but concede . . . |
| Page 19, Line 15 | | Insert "a" preceding "tangential relationship" |
| Page 19, Lines 19-20 | The Supreme Court, 2007, in Merrill Lynch, the question is not which forum . . . | The Supreme Court, 2007, in Merrill Lynch, held that the question is not which forum . . . |
| Page 19, Line 24 | arbitrabilty | arbitrability |
| Page 20, Line 7 | absences | absence |
| Page 20, Line 16 | AN ATTORNEY: | MR. FLECKMAN: |
| Page 20, Line 20 | AN ATTORNEY: | MR. FLECKMAN: |
| Page 20, Line 21 | MR. AMBERSON: | MR. PRICHARD: |
| Page 21, Line 11 | AN ATTORNEY: | MR. FLECKMAN: |
| Page 22, Line 6 | talk care | take care |
| Page 22, Line 9 | Work | workers |
| Page 25, Line 6 | Canon Grove | Cannon Grove |
| Page 25, Line 8 | Canon Grove | Cannon Grove |
| Page 26, Line 9 | I forget | I forgot |
| Page 27, Line 2 | Canon Grove | Cannon Grove |
| Page 27, Line 3 | Canon Grove | Cannon Grove |
| Page 27, Line 6 | Canon Grove | Cannon Grove |

Letter to Mr. Julian G. Alderette

| Page 30, Line 3 | Canon Grove | <u>Cannon</u> Grove |
| Page 30, Line 8 | Canon Grove | <u>Cannon</u> Grove |
| Page 31, Line 5 | Canon Grove | <u>Cannon</u> Grove |
| Page 36, Line 14 | It's a tab 15 | It's <u>at</u> tab 15 |
| Page 37, Line 10 | Rubio Court | <u>Rubiola</u> Court |
| Page 37, Line 18 | to tab 15 | <u>at</u> tab 15 |
| Page 38, Line 6 | Ten Thirty One transaction | <u>1031</u> transaction |
| Page 38, Line 11 | necessary or are helpful if you take a look at . . . | Remove "are" preceding "helpful" and "if" preceding "you" |

We believe these requested corrections faithfully accord with the arguments of counsel at the hearing.  Please call with any questions.

Respectfully submitted,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

cc (via email):       Mr. David M. Prichard
                      Mr. J.A. "Tony" Canales
                      Mr. Charles C. Murray
                      Mr. Francisco J. Rodriguez

Letter to Mr. Julian G. Alderette

1

```
1        IN THE 92ND DISTRICT COURT OF THE STATE OF TEXAS

2              IN AND FOR THE COUNTY OF HIDALGO

3
    JON CHRISTIAN AMBERSON, P.C., )
4                                 )
       Plaintiff/Counter Defendant,)
5                                 )
    VS.                           )        No. C-0340-15-A
6                                 )
    JAMES ARGYLE MCALLEN, EL RUCIO)
7   LAND AND CATTLE COMPANY, INC.,)
    SAN JUANITO LAND PARTNERSHIP, )
8   LTD., AND MCALLEN TRUST       )
    PARTNERSHIP,                  )
9                                 )
       Defendants/COUNTERCLAIMANTS/)
10     Third-Party Plaintiffs,    )
                                  )
11  VS.                           )
                                  )
12  JON CHRISTIAN AMBERSON and    )
    AMBERSON NATURAL RESOURCES,   )
13  L.L.C.,                       )
                                  )
14        Third-Party Defendants.)

15

16                  STATEMENT OF FACTS

17
                    PRETRIAL HEARING
18

19         REPORTER'S TRANSCRIPT OF PROCEEDINGS

20
                     April 10, 2018
21                      Texas

22
    BEFORE:  HON. LUIS M. SINGLETERRY, Presiding Judge
23             of the 92ND District Court

24
    Julian G. Alderette
25  Official Court Reporter
    Certification Number 3484
```

```
1                    A-P-P-E-A-R-A-N-C-E-S

2   FOR THE PLAINTIFF:

3           Mr. Joe Chapa
            Attorney at Law
4           6521 N. 10th St.
            McAllen, Texas 78504
5
            Mr. Steven A. Fleckman
6           Mr. Andrew McGlynn
            Attorneys at Law
7           5151 Congress Ave., Ste. 1800
            Austin, Texas 78701-3503
8
            Mr. Charles Murray
9           Attorney at Law
            818 Pecan Street
10          McAllen, Texas 78502

11
    FOR THE DEFENDANTS:
12
            Mr. David M. Prichard
13          Mr. David Montas
            Mr. Prichard Young
14          Attorneys at Law
            1010 Renunion Place
15          San Antonio, Texas 78216

16          Mr. J. A. "Tony" Canales
            Ms. Patricia Canales
17          Attorneyss at Law
            2601 Morgan Avenue
18          Corpus Christi, Texas 78405

19

20

21

22

23

24

25
    Reporter's Certificate..........................41
```

JULIAN G. ALDERETTE, OFFICIAL COURT REPORTER
92ND DISTRICT COUIRT, HIDALGO COUNTY TEXAS
(956) 318-2250

1    same side of it, on the McAllen side.  Somebody

2    just dropped a bunch of cards.  Let's give him

3    a chance to pick them up.

4         MR. FLECKMAN:  Good morning, Your Honor.

5    Steve Fleckman and Andrew McGlynn representing

6    the Amberson parties, and we're joined by Chuck

7    Murry who is representing the Amberson lawfirm.

8         MR. MURRAY:  Going morning.

9         THE COURT:  All right.  This is the motion

10   to refer certain things and retain others.

11        AN ATTORNEY:  That is correct, Your Honor.

12        THE COURT:  We have the issue of attorney

13   fees and then we have --

14        AN ATTORNEY:  McAllen Grove properties

15   issue.

16        THE COURT:  What claims are still pending

17   that pertains to --

18        THE ATTORNEY:  The primary claim was to

19   recover a contingency fee and engagement letter

20   going back to 2005 regarding --

21        (Reporter's note:  At this time several

22   attorneys were talking over each other).

23        AN ATTORNEY:  The primary claim is to

24   recover a contingency fee for the litigation

25   under the 2005 engagement letter with the

1       McAllen parties.

2           And in that engagement letter contained an

3       arbitration clause.  The arbitration clause is

4       what we call a narrow form clause because

5       unlike broad form clauses that relates to

6       disputes or that are connected to disputes,

7       this one is specific.  It says that a dispute

8       arising under the engagement letter of 2005

9       that addresses fee disputes or a dispute as to

10      the legal services in connection with that

11      litigation, that is subject to arbitration.  It

12      does not go beyond that.

13          Now, the litigation that was accounted

14      under that engagement letter was conducted

15      solely by the Amberson firm, and the Amberson

16      lawfirm represented on contamination claims

17      against Forest Oil, and as a result of that

18      twelve-year series of litigations and disputes,

19      an arbitration was held.  And that arbitration

20      resulted in an arbitration award that the

21      Amberson firm secured against Forest Oil.  The

22      value of that particular award is upwards of

23      $37 million.  $22 million consists of actual

24      monitary recovery including $6.7 million of

25      legal fees by Mr. McAllen and his family, and

1    $6 million of interest.  An additional minimum

2    of $15 million -- we think it's much more than

3    that -- but an additional minimum of

4    $15 million was expended in direct mediation

5    expenses by Foreign Oil.  They're probably

6    north of that by a great deal.

7        So the award then was challenged in the

8    Court of Appeals and it was affirmed there.

9    The award then went to the Supreme Court twice.

10    The last time on banc, and on both occasions it

11    was confirmed and affirmed there.  A mandate

12    was issued, and the reward has been paid.  It's

13    been paid, $25 million under a supersedeas

14    bond, and the balance of the award is being

15    paid in stock and options or warrants to the

16    McAllen family.  The McAllen family has

17    declined to pay that contingency fee.  I will

18    not trouble the Court by getting into the

19    merits of that matter.  That's for another day.

20        But what I want to address is whether that

21    arbitration clause can form the basis of a

22    compulsion, coercion on the part of an entirely

23    different Texas entity and Mr. Amberson

24    individually to arbitrate a claim that did not

25    arise until four years after the engagement

 1          was affirmed by the Texas Supreme Court, a

 2          mandate issued.

 3              The Cannon Grove property, the distinction

 4          was a transaction entirely distinct, in no way

 5          related by facts to the engagement letter or

 6          the Forest Oil litigation or the McAllen Ranch.

 7          In 2009, Mr. McAllen, not the McAllen parties,

 8          but Mr. Pat McAllen, through a company that he

 9          owned, wanted to do a reverse tax exchange.  I

10          won't bother the Court with the details of that

11          complicated exchange.  But in that deal he

12          engaged three separate lawfirms.  He did not

13          engage the Amberson lawfirm, he did not engage

14          Chris Amberson, he did not engage anyone in the

15          Amberson lawfirm.  He engaged a lawyer out of

16          San Antonio by the name of Mann McCaleb, a tax

17          attorney out of Corpus Christi by the name

18          Richard Leshin, and an attorney out of a

19          Philadelphia -- a large Philadelphia firm -- by

20          the name of Mr. Shechtman, I believe, who was

21          an expert in exchange and tax deferral

22          transactions.

23              Now, in connection with that transaction,

24          Mr. McAllen's representative, not Mr. Amberson,

25          not Mr. Amberson's lawfirm, Mr. McAllen's

1      representatives prepared the legal documents.

2      And Mr. McCaleb went to Mr. Amberson and he

3      said that they would like Mr. Amberson to sere

4      as a counter-party in order to complete this

5      reverse tax exchange, and they wanted

6      Mr. Amberson to accept a loan from Mr. McAllen,

7      a $4.5 million, in order to effectuate this tax

8      exchange.

9          Mr. Amberson, who's an attorney, went to a

10     tax accountant and the tax accountant said, you

11     cannot take a loan that is related to a

12     deferred tax exchange because if you do that,

13     you're violating the underlying principles of

14     Section 1031.  It has to be a

15     no-strings-attached deal.

16         On March 11th, 2009, Mr. Amberson sent a

17     letter to his father-in-law James McAllen and

18     said, I cannot do a loan.  If you choose to

19     proceed with this transaction, you'll have to

20     treat this as a gift, and that is the only way

21     I'll participate.  Seven days later on March

22     18th, 2009, $4.9 million was wired from

23     Mr. McAllen's office to a new entity that had

24     been set up by Mr. McAllen's representatives.

25     That entity is called Amberson Natural

1      Resources.

2          Now, it's important that it was formed by

3      Mr. McAllen's own representatives because he

4      now claims that the formation of that entity

5      was formed to perpetrate a fraud.  If it was

6      formed to perpetrate a fraud, that would be

7      absolutely amazing because his representatives

8      formed it.  So it could not have been formed by

9      him with an intention of perpetrating a fraud

10     on himself.  Moreover, he had an obligation to

11     read the letter that was sent to him on March

12     11, 2009 and to understand its terms.  And the

13     terms were, this was not to be a loan.  This

14     would only be a gift.  The transaction was

15     consummated, the $4.5 million that was wired to

16     Amberson Natural Resources was returned by

17     Mr. Amberson from that company to purchase a

18     90 percent L.L.C. interest in an entity Cannon

19     Grove Investments that Mr. McAllen formed.  And

20     that was the deal.

21         The Amberson firm and Mr. Amberson never

22     represented Mr. McAllen in that transaction.

23     Never represented his companies in that

24     transaction.  That's important because as the

25     Supreme Court tells us, the fiduciary duty does

1    not extend beyond the scope of representation

2    by an attorney.  An attorney is not liable as a

3    fiduciary for matters that are outside the

4    scope of his representation.  As I say,

5    Mr. McAllen was well-represented by separate

6    counsel, three separate firms and a tax

7    accountant.

8        In addition, that transaction contained no

9    loan agreement.  None was prepared.  None was

10   presented.  No loan note was ever prepared or

11   presented.  No demand was ever made under a

12   note.  No demand was ever made under a loan

13   agreement.  There was no suggestion that there

14   was any loan agreement involved.  All of which

15   confirmed that the understanding represented or

16   reflected in that March 11, 2009 letter is

17   exactly what the deal was.  It was receipt of a

18   gift by a son-in-law and the daughter-in-law as

19   a community, and then the payment of that $4.5

20   million back for a 90 percent in the Cannon

21   Grove Investments.

22       Later that property, that asset, was

23   divided between Mr. Amberson and his wife, the

24   daughter of Mr. McAllen when they divorced five

25   years later.  No claim, no claim for any

1     payment of an alleged note was made for eight

2     years after 2009.  No reference to a claim was

3     made with respect to any alleged note or loan

4     until five years after 2009, after the divorce

5     between Mr. Amberson had been completed.

6          Now, as I say, there is absolutely no

7     arbitration agreement whatsoever between

8     Mr. McAllen or any of his entities and Amberson

9     Natural Resources which is solely owned by

10    Chris Amberson.  There is no arbitration

11    agreement with respect to the Cannon Grove

12    property.  That property is completely distinct

13    from the McAllen Ranch.  The McAllen Ranch, the

14    property, is, I think, the underlying property

15    is located along 83, I believe, here in

16    Edinburg.  There was no involvement of the

17    Amberson firm in that transaction.

18         Amberson Natural Resources has never

19    sought any benefit under that engagement

20    agreement dating back to 2005 between the

21    Amberson lawfirm and the McAllen parties.  It

22    seeks no benefits now.  The Amberson Natural

23    Resources is not a petitioner in this case for

24    any interest in or benefit from the contingency

25    fee.  The Amberson Natural Resources entity has

1    never charged fees to Mr. McAllen for any legal

2    services and has never rendered any legal

3    services to Mr. McAllen.

4        I mentioned that there is no fiduciary

5    duty on the part of Mr. Amberson with respect

6    to the County Grove matter, and that stems from

7    the Supreme Court's 2009 decision in a case

8    called Two Thirty Nine Joint Ventures which

9    limits the obligation of loyalty to the scope

10    of a lawyer's representation.

11        Forest Oil, in short, had nothing to do

12    with Cannon Grove.  The Forest Oil litigation

13    had nothing to do with the Cannon Grove

14    property.  The Forest Oil -- there has been

15    absolutely no litigation between Amberson

16    Natural Resources and Forest Oil.  There was no

17    contamination of the Cannon Grove property.

18    And there was no lease between Forest Oil and

19    the Cannon Grove participants.  We are not

20    talking about an intertwining of facts,

21    therefore, there is no overlapping or

22    intertwining of facts that would justify

23    enforcing an arbitration clause against, in

24    this situation, a non-signatory to that

25    engagement agreement.

1    The petition seeks legal fees only.  It

2  does not involve Cannon Grove.  It does not

3  involve Cannon Grove.  It does not involve the

4  Amberson Natural Resources entity.

5    Now, the legal standard applicable here is

6  that an arbitration agreement must be

7  consensual.  It cannot be the result of

8  coercion.  And that is a burden that rests upon

9  the McAllens to show that the dispute involving

10  Cannon Grove arises under the engagement

11  letters arbitration clause.  That's their

12  burden.  The Courts are very clear about that.

13    As I say, this is a narrow scope

14  arbitration clause, applying only to a fee

15  dispute in the Forest Oil litigation or the

16  services rendered under that engagement

17  agreement.

18    Under the Orsonio -- or Orsonia case out

19  of Houston in 2012, the Court cannot modify an

20  arbitration agreement or stretch its provisions

21  to extend to a dispute that is not evident and

22  is subject to the arbitration clause.

23    Now, there's an argument that is raised on

24  the other side that the Cannon Grove

25  transaction was a fraud on Mr. McAllen.

```
 1          That -- the merits of that are not before the
 2     Court today.  That will be tried on a different
 3     occasion.  But I'll say this.  Where the tort
 4     claim rests upon facts that stand alone and can
 5     be independently litigated without reference to
 6     the arbitration agreement, there is no basis to
 7     send a non-signatory party to arbitration, and
 8     the case law that we're going to -- that we
 9     cited in our brief stands for that.  Here the
10     facts on Cannon Grove stand completely
11     independent of the engagement agreement and the
12     arbitration clause.  In fact, Mr. McAllen's own
13     pleading admits that the Cannon Grove situation
14     involves property unrelated to McAllen Ranch
15     which was the subject of the engagement letter.
16          So under the Fridel case out of El Paso,
17     1995 and the Endura case out of San Antonio in
18     2015 where the tort claim can stand on its own
19     legs, there was no intertwining, that was why
20     referral to arbitration here.
21          The McAllens have cited three cases in
22     which they say that arbitration should be
23     extended to Amberson Natural Resources and to
24     Mr. Amberson.  One is T.C.P. holdings out of
25     Dallas, and in that case the arbitration clause
```

1    was a very broad clause.  It said, any dispute

2    between the parties, any dispute or controversy

3    between the parties would be arbitrated.

4    Clearly not our case.

5        The next case they have discussed is the

6    Poole case out of Houston in 2000.  And there

7    the agreement referenced the very claims that

8    were subject to arbitration.

9        And in the Vireo case, the third case that

10   they discuss, Austin, 1997, it involved a

11   non-compete and the non-compete required

12   arbitration of all claims related to the

13   non-compete.  So clearly, the arbitration

14   clause and the dispute lined up with each

15   other.  The Vireo case actually was a case in

16   which one of the parties had waived

17   arbitration, so the arbitration was not ordered

18   in any event.

19       I end with this.  The McAllens claim that

20   there is an alter-ego relationship between the

21   Cannon Grove entity and Amberson Natural

22   Resources and Mr. Amberson and his lawfirm.

23   That is their burden to prove.  The Courts have

24   stated in Glassell that allegations are

25   insufficient.  They have a burden to prove

```
1        facts to support that allegation, and the facts

2        must be convincing to this Court.  There is no

3        basis for that allegation.  I'll briefly

4        explain why.

5            First of all, under Texas law, the

6        entities are presumed to be separate.  Texas

7        entities are presumed not to be alter-egos to

8        each other.  That's out of the Houston case in

9        2013 called IGguide Tours.  Moreover, the

10       Amberson Natural Resources has been used only

11       to acquire the Cannon Grove L.L.C. interest and

12       two other real estate parcels, having nothing

13       to do with the Amberson lawfirm.

14           Second, there is no conspiracy or fraud

15       that is actually shown here because Mr. McAllen

16       formed the Amberson Natural Resources entity.

17       His representatives did, and the documentation

18       for it.  And he had in hand a letter, as I say,

19       dated March 11, 2009 advising him specifically

20       that this would be treated as a gift if he

21       chose to proceed, and a week later he chose to

22       proceed.  To the extent that represents an

23       agreement, it's a separate agreement.  The

24       Supreme Court has held in the Westergren case

25       that every individual is responsible to read
```

1      and understand his agreements, and it's

2      presumed that a litigant has read and

3      understood the agreements.

4          The Amberson Natural Resources entity is

5      not a mere alter-ego.  It was properly formed.

6      It has a company agreement.  It has articles of

7      formation that were filed with the Secretary of

8      State.  Similarly, the Amberson lawfirm,

9      properly formed, it was organized years ago in

10     1999, and it has no interest in the Amberson

11     Natural Resources entity.  It has its own

12     offices, its own bank accounts and its own

13     assets.  Moreover, the Amberson Natural

14     Resources entity has no interest in the

15     Amberson lawfirm.  It has its own assets, it's

16     own bank accounts.  Those bank accounts are not

17     commingled will those of the lawfirm.

18          So, we have -- so the entities have

19     separate ownership of the assets.  Neither the

20     Amberson lawfirm nor the Amberson Natural

21     Resources entity owns Mr. Amberson's separate

22     assets, his home, for example.

23          The situation where alter-ego has figured

24     in the arbitration cases is this.  Where

25     parties -- and I think there are two such cases

```
 1        we distinguish in our brief -- where parties
 2        are seeking to avoid arbitration but can see
 3        alter-ego status that brings them under the
 4        arbitration clause, that concession acts as a
 5        judicial estoppel and therefore results in a
 6        referral to arbitration.  Mr. Amberson is
 7        absolutely adamant that there is no confusion
 8        of the assets, the interests or -- of these
 9        separate entities, the Amberson lawfirm and
10        Amberson Natural Resources.  For all of these
11        reasons, there is absolutely no reason
12        whatsoever to violate the holdings of the
13        Courts.
14            No. 1.  Out of the Texas Supreme Court in
15        the Kellogg case, tangential relationship
16        between claims is not enough to warrant
17        arbitration, compelling arbitration against the
18        non-signatory.
19            No. 2.  The Supreme Court, 2007, in
20        Merrill Lynch, the question is not which forum
21        is quicker, cheaper or more convenient, but
22        which one the parties picked.  The arbitration
23        is a matter of consent not coercion.  And
24        arbitrabilty (phonetic) turns on the substance
25        of a claim not artful pleading.  And I
```

1     emphasize that because we have some artful

2     pleading here.

3         The -- and the Jenkins and Gilchrist case

4     against Riggs out of Dallas, 2010, a party

5     cannot be forced to forfeit the constitutional

6     protections of the judicial system and submit

7     its dispute to arbitration in the absences of

8     an agreement to arbitrate.

9         Your Honor, I would like to, if I might,

10    tender our exhibits in support of the

11    declarations that we have filed.  If I might

12    hand these to the Court at this time and ask

13    that they be admitted into evidence.

14        MR. PRICHARD:  We have not seen them, Your

15    Honor.

16        AN ATTORNEY:  Yes, you have.  They've all

17    been attached to the --

18        MR. PRICHARD:  I am sorry.  All those are

19    the ones that have already been filed?

20        AN ATTORNEY:  Yes.

21        MR. AMBERSON:  No objection for this

22    hearing, Your Honor.

23        THE COURT:  All right.  They'll be

24    admitted.

25        (Reporter's Note:  Exhibits were admitted

1        without identifying them individually.  This

2        Reporter believes that the exhibits that were

3        admitted he is in possession of.  The party

4        ordering the transcript did not request a copy

5        of the exhibits that were introduced.  Further,

6        this Reporter does not know for sure if the

7        exhibits in his possession are what was

8        referred to and admitted.  Upon request this

9        Reporter will furnish a copy of what he has as

10       the exhibits).

11            AN ATTORNEY:  Thank you, Your Honor.

12            MR. PRICHARD:  Good morning, Your Honor.

13       May it please the Court, I'm David Prichard.

14            Let me a take step back.  Sounds like

15       today is Arbitration Day in Judge Singleterry's

16       Court.

17            THE COURT:  Sure does.

18            MR. PRICHARD:  I think it's important to

19       understand the first thing is, is that

20       Mr. Amberson, he was the son-in-law and he was

21       counsel for the McAllen family and the McAllen

22       business interests.  That's important.  He

23       clearly had a fiduciary duty.  He suggested to

24       Mr. McAllen, and this is -- perhaps the Court

25       understands this -- this was a dreadful

1   contamination case that Forest Oil put onto the

2   McAllen family lands unbeknownst to

3   Mr. McAllen, they buried radioactive material.

4   They took -- they gave some pipe to --

5   Mr. McAllen is a noted conservationist, he was

6   asked to talk care of some rhinoceroses and

7   Forest Oil gratuitously gave them some pipe to

8   build pens for these rhinoceroses.  Unbeknownst

9   to him or his work, those pipes were also

10   contaminated, and this lawsuit also contains

11   not only a contamination case for the land but

12   also contamination and exposure to the workers

13   out and to Mr. McAllen personally.  So, that's

14   a little bit of what kind of started this

15   against Forest Oil.

16     It's important to also understand

17 that Mr. Amberson is the person who wrote the

18 contract that they're now claiming that they're

19 entitled to one-third attorney fees from, and he's

20 the one that wrote the arbitration provision.

21 Mr. McAllen is not a lawyer.  So at the time that

22 this agreement was signed by Mr. McAllen, he trusted

23 not only his long-time attorney with the fiduciary

24 responsibility but also his son-in-law, trusted him

25 implicitly as we now know under our ethics rules

1  this Court, we hopefully can go down and be heard

2  and have an arbitrator appointed.

3              At the heart of this is this point,

4  Your Honor.  What they want to do is, they want to

5  sever out and make this Court retain on his docket

6  the separate Canon Grove transaction while

7  everything else goes to arbitration.  And why is

8  that?  Because the Canon Grove is just another big

9  piece of fraud that Mr. Amberson perpetuated.

10  Mr. Fleckman says, well, how can it be fraud?  My

11  goodness.  Mr. McAllen started Amberson Natural

12  Resources.  How could that be fraud?  I'll tell you

13  how it's fraud.  How is it that the gentleman who

14  wants to make a 1031 tax exchange on a piece of

15  property so that it can defer, not excuse, but

16  defer, capital gains tax on a piece that you sell?

17  How all of a sudden can that be converted into a

18  $4.5 million gift to a son-in-law?  That makes no

19  sense whatever.  Why would a gentleman who is

20  setting up a transaction, a real estate exchange,

21  one piece of property for another, give one

22  son-in-law a free gift of $4.5 million?  Well, if

23  he's going to give Mr. Amberson a gift for $4.5

24  million, why won't you give all of your other

25  sons-in-law a $4.5 million gift?  It was a fraud and

1    he has retained that $4.5 million to this very day.

2    But I think it's interesting because Mr. Fleckman

3    mentioned Mr. McCaleb.  Mr. McCaleb was their real

4    estate lawyer, and McCaleb has come forth,

5    Mr. McCaleb actually offices in the same building as

6    Mr. Amberson owned.  Same building.  I've talked to

7    Mr. McCaleb, Mr. McCaleb has been a friend of mine

8    for almost thirty-five years.  Mr. McCaleb says,

9    it's not a gift.  I forget to write the note.  If I

10   had simply written a note, we wouldn't be here on

11   this deal.

12              The other important thing is, in

13   talking with Mr. McCaleb, Mr. McCaleb has told me

14   specifically, you know what, Chris Amberson knows

15   that, and Chris Amberson, I said, what are you doing

16   Chris?  You know, it's Mr. McAllen's property, it's

17   his four-and-a-half million dollars, it's not yours.

18   He says, I'm using it for leverage in the other --

19   in the rest of the case.  Yeah, he says.  He's using

20   it for leverage in the other case.

21              So, Your Honor, Mr. Amberson does not

22   want the arbitrator who'll hear everything else, all

23   the other fraud that's been committed, all the other

24   fraud that's been committed, he does not want an

25   arbitrator to hear that, rather he'd rather have you

1    hear that in front of the Jury and split the fact

2    pattern.  The Canon Grove is going to come out in

3    the arbitration.  It's going to come out.  Canon

4    Grove -- and so what happens?  You heard earlier

5    this morning, the likelihood and the possibility of

6    an inconsistent result, the Jury here on Canon Grove

7    and what the arbitrator rules.  Now, if Mr. Fleckman

8    is so concerned about that, let him go to the

9    arbitrator and the arbitrator, if the arbitrator

10   says it has absolutely nothing to do with where we

11   are, that's fine.  You can -- you can send it -- he

12   can send it -- he or she can send it back to Judge

13   Luis Singleterry of the 92nd District Court for

14   resolution.  Why should this Court split this --

15   this fact pattern.  It shouldn't.  And take up

16   docket time on this Court's docket when it should be

17   gone?

18             The other thing I'll point out and

19   then I'll turn it to my colleague partner,

20   Mr. Montpas, to discuss some of the legal issues.

21             Mr. Amberson has been paid an hourly

22   fee, $2.5 million.  $2.5 million.  Well, wait a

23   second, we went to a mediation.  And then I asked

24   Mr. Amberson.  Mr. Amberson, what about this?  How

25   could you claim a third contract, a third

1       sent to the arbitrator and let him decide.

2       Mr. Prichard suggested, if the arbitrator

3       decides that Canon Grove is inappropriate for

4       the scope of arbitration, then it can come

5       back.

6           I do want to talk a little bit more

7       generally about the nature of arbitration and

8       why this -- why the Canon Groves claims are

9       subject to the arbitration clause.

10          Texas law has a very strong presumption in

11      favor of arbitration.  Any doubts again

12      concerning the scope of what is arbitrable are

13      resolved in favor of arbitration.  That's the

14      G.T. Leaks case from the Texas Supreme Court

15      and the Elman versus Aucker case from the

16      Corpus Christi Court, these cases are cited in

17      our response brief on file.

18          A Court should not deny arbitration unless

19      it can be said with positive assurance that an

20      arbitration clause is not acceptable to an

21      arbitration whose interpretation which would

22      cover the dispute issues within Wilson

23      Construction Company case, Texas Supreme Court

24      case in 2006, as well as the Boston Financial

25      Institution case, and the Corpus Christi Court

1    of Appeals in 2015.

2          So you've got contractual claims, fee

3    claims that have been mentioned, and you got

4    these extra contractual ancillary claims, the

5    Canon Grove issue.  Texas law favors the joint

6    resolution of multiple claims to prevent

7    multiple determinations in the same matter, and

8    so when claims that are explicitly subject to

9    two arbitration are factually intertwined with

10   ancillary claims and both sets have to referred

11   to arbitration.  This is the Jack V. Anglen

12   case from the Texas Supreme Court as well as

13   the Howell Crew versus Hanna Oil case from the

14   Corpus Christi Court of Appeals, again cited in

15   the response.

16          So, if the facts alleged in a claim touch

17   on matters that are covered by or have, quote,

18   significant relationship or inextricably

19   enmeshed with our -- or are factually

20   intertwined then the contractual claim and the

21   extra contractual claim need to go to

22   arbitration.  And we did cite a couple of

23   samples in our response regarding that.  There

24   is the T.C.P. Holding's case.  That's an

25   instructive example.  In that case you had

```
 1          MR. FLECKMAN:  May I respond?

 2          THE COURT:  Yes, sir.

 3          MR. FLECKMAN:  I'm going to make a very

 4     brief response.

 5          I'm going to submit to the Court a litmus

 6     test.  And the litmus test is a bookend that my

 7     esteemed colleague just ended with.  He said at

 8     the introduction of his statement that the

 9     gateway determination of whether the

10     arbitration scope includes this Cannon Grove

11     dispute is to be resolved by the arbitrator,

12     and he ended with that point.

13          Here's what the Supreme Court actually

14     says on that.  It's a tab 15.  If I might

15     approach the bench.  I'd like to provide the

16     Court a binder of authorities on these various

17     questions.  We have highlighted key holdings on

18     various issues.

19          Here's what the Court said in 2011.  And

20     they said this previously in 2005 in the

21     Weekley Homes case.  Whether a non-signatory --

22     this is a tab 15 -- can compel arbitration

23     pursuant to an arbitration clause questions the

24     existence of a valid arbitration clause between

25     specific parties and is therefore a gateway
```

1      matter for the Courts to decide.  Could not be

2      more conclusive.

3          The Supreme Court has now held twice that

4      it is the responsibility of the Court to

5      determine as a gateway matter whether a

6      non-signatory can be required to arbitrate

7      under an arbitration provision.

8          Mr. Mountpas has mentioned a few other

9      things.  The scope of this arbitration,

10     according to the Rubio Court, is determined by

11     the facts.  It's not determined by their

12     theories of the case.  As I have said at the

13     outset, I'm not here to argue, to make a Jury

14     argument today.  I'm not even going to attempt

15     today to refute their allegations.  Most of

16     which we disagree with adamantly.  But I will

17     point to the Supreme Court in the same decision

18     to tab 15.  To determine whether a claim falls

19     within the scope of the agreement, Courts must

20     focus on the factual allegations of the

21     complaint rather than the legal causes of

22     action asserted.  Their theories do not control

23     whether or not this non-signatory, the

24     non-signatories are to be referred to

25     arbitration.  The facts and the facts show that

1      the situations involving Cannon Grove are

2      entirely distinct.  I'll dispose of the

3      fiduciary argument that Mr. Prichard has raised

4      with one observation.  And that is, it is clear

5      that Mr. McAllen was represented by three

6      lawfirms in the Ten Thirty One transaction, and

7      it's clear that Mr. Amberson's lawfirm was not

8      representing him.

9           Your Honor, I would ask that you take the

10     matter under advisement and that to the extent

11     necessary or are helpful if you take a look at

12     the authorities that we've cited in our brief

13     and we've provided their authorities and their

14     distinctions and briefing on those as well.

15          Thank you, Your Honor.

16          THE COURT:  Anything else?

17          MR. CANALES:  Yes, sir.  Every part should

18     have a closure.  I feel I'm completely --

19          (Reporter's note:  All counsel laughing at

20     the same time).

21          MR. CANALES:  -- I'm not going to add

22     anything else to it, Your Honor, except I have

23     a proposed order for the Court.  I think that

24     they have a copy of it.  The Court referring

25     all claims to arbitration.  I'll hand that to

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        IN THE 92ND DISTRICT COURT OF THE STATE OF TEXAS

 2             IN AND FOR THE COUNTY OF HIDALGO


 3
    JON CHRISTIAN AMBERSON, P.C., )
 4                               )
       Plaintiff/Counter Defendant,)
 5                                        No. C-0340-15-A
    VS.                          )
 6                               )
    JAMES ARGYLE MCALLEN, EL RUCIO)
 7  LAND AND CATTLE COMPANY, INC.,)
    SAN JUANITO LAND PARTNERSHIP, )
 8  LTD., AND MCALLEN TRUST       )
    PARTNERSHIP,                  )
 9                               )
       Defendants/COUNTERCLAIMANTS/)
10     Third-Party Plaintiffs,    )
                                 )
11  VS.                          )
                                 )
12  JON CHRISTIAN AMBERSON and    )
    AMBERSON NATURAL RESOURCES,   )
13  L.L.C.,                       )
                                 )
14        Third-Party Defendants.)

15

16                 STATEMENT OF FACTS

17                  PRETRIAL HEARING

18

19        REPORTER'S TRANSCRIPT OF PROCEEDINGS

20
                   April 10, 2018
21                       Texas

22

    BEFORE:  HON. LUIS M. SINGLETERRY, Presiding Judge
23            of the 92ND District Court

24

    Julian G. Alderette
25  Official Court Reporter
    Certification Number 3484
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1                    A-P-P-E-A-R-A-N-C-E-S

 2     FOR THE PLAINTIFF:

 3              Mr. Joe Chapa
                Attorney at Law
 4              6521 N. 10th St.
                McAllen, Texas 78504
 5
                Mr. Steven A. Fleckman
 6              Mr. Andrew McGlynn
                Attorneys at Law
 7              5151 Congress Ave., Ste. 1800
                Austin, Texas 78701-3503
 8
                Mr. Charles Murray
 9              Attorney at Law
                818 Pecan Street
10              McAllen, Texas 78502

11
       FOR THE DEFENDANTS:
12
                Mr. David M. Prichard
13              Mr. David Montas
                Mr. Prichard Young
14              Attorneys at Law
                1010 Renunion Place
15              San Antonio, Texas 78216

16              Mr. J. A. "Tony" Canales
                Ms. Patricia Canales
17              Attorneyss at Law
                2601 Morgan Avenue
18              Corpus Christi, Texas 78405

19

20

21

22

23

24

25
       Reporter's Certificate..........................41
```

JULIAN G. ALDERETTE, OFFICIAL COURT REPORTER
92ND DISTRICT COUIRT, HIDALGO COUNTY TEXAS
(956) 318-2250

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        same side of it, on the McAllen side.  Somebody
 2        just dropped a bunch of cards.  Let's give him
 3        a chance to pick them up.
 4             MR. FLECKMAN:  Good morning, Your Honor.
 5        Steve Fleckman and Andrew McGlynn representing
 6        the Amberson parties, and we're joined by Chuck
 7        Murry who is representing the Amberson lawfirm.
 8             MR. MURRAY:  Going morning.
 9             THE COURT:  All right.  This is the motion
10        to refer certain things and retain others.
11             AN ATTORNEY:  That is correct, Your Honor.
12             THE COURT:  We have the issue of attorney
13        fees and then we have --
14             AN ATTORNEY:  McAllen Grove properties
15        issue.
16             THE COURT:  What claims are still pending
17        that pertains to --
18             THE ATTORNEY:  The primary claim was to
19        recover a contingency fee and engagement letter
20        going back to 2005 regarding --
21             (Reporter's note:  At this time several
22        attorneys were talking over each other).
23             AN ATTORNEY:  The primary claim is to
24        recover a contingency fee for the litigation
25        under the 2005 engagement letter with the
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1      McAllen parties.

2          And in that engagement letter contained an

3      arbitration clause.  The arbitration clause is

4      what we call a narrow form clause because

5      unlike broad form clauses that relates to

6      disputes or that are connected to disputes,

7      this one is specific.  It says that a dispute

8      arising under the engagement letter of 2005

9      that addresses fee disputes or a dispute as to

10     the legal services in connection with that

11     litigation, that is subject to arbitration.  It

12     does not go beyond that.

13         Now, the litigation that was accounted

14     under that engagement letter was conducted

15     solely by the Amberson firm, and the Amberson

16     lawfirm represented on contamination claims

17     against Forest Oil, and as a result of that

18     twelve-year series of litigations and disputes,

19     an arbitration was held.  And that arbitration

20     resulted in an arbitration award that the

21     Amberson firm secured against Forest Oil.  The

22     value of that particular award is upwards of

23     $37 million.  $22 million consists of actual

24     monitary recovery including $6.7 million of

25     legal fees by Mr. McAllen and his family, and

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1      $6 million of interest.  An additional minimum

2      of $15 million -- we think it's much more than

3      that -- but an additional minimum of

4      $15 million was expended in direct mediation

5      expenses by Foreign Oil.  They're probably

6      north of that by a great deal.

7           So the award then was challenged in the

8      Court of Appeals and it was affirmed there.

9      The award then went to the Supreme Court twice.

10     The last time on banc, and on both occasions it

11     was confirmed and affirmed there.  A mandate

12     was issued, and the reward has been paid.  It's

13     been paid, $25 million under a supersedeas

14     bond, and the balance of the award is being

15     paid in stock and options or warrants to the

16     McAllen family.  The McAllen family has

17     declined to pay that contingency fee.  I will

18     not trouble the Court by getting into the

19     merits of that matter.  That's for another day.

20          But what I want to address is whether that

21     arbitration clause can form the basis of a

22     compulsion, coercion on the part of an entirely

23     different Texas entity and Mr. Amberson

24     individually to arbitrate a claim that did not

25     arise until four years after the engagement

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1    was affirmed by the Texas Supreme Court, a

2    mandate issued.

3         The Cannon Grove property, the distinction

4    was a transaction entirely distinct, in no way

5    related by facts to the engagement letter or

6    the Forest Oil litigation or the McAllen Ranch.

7    In 2009, Mr. McAllen, not the McAllen parties,

8    but Mr. Pat McAllen, through a company that he

9    owned, wanted to do a reverse tax exchange.  I

10   won't bother the Court with the details of that

11   complicated exchange.  But in that deal he

12   engaged three separate lawfirms.  He did not

13   engage the Amberson lawfirm, he did not engage

14   Chris Amberson, he did not engage anyone in the

15   Amberson lawfirm.  He engaged a lawyer out of

16   San Antonio by the name of Mann McCaleb, a tax

17   attorney out of Corpus Christi by the name

18   Richard Leshin, and an attorney out of a

19   Philadelphia -- a large Philadelphia firm -- by

20   the name of Mr. Shechtman, I believe, who was

21   an expert in exchange and tax deferral

22   transactions.

23        Now, in connection with that transaction,

24   Mr. McAllen's representative, not Mr. Amberson,

25   not Mr. Amberson's lawfirm, Mr. McAllen's

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1    representatives prepared the legal documents.

2    And Mr. McCaleb went to Mr. Amberson and he

3    said that they would like Mr. Amberson to sere

4    as a counter-party in order to complete this

5    reverse tax exchange, and they wanted

6    Mr. Amberson to accept a loan from Mr. McAllen,

7    a $4.5 million, in order to effectuate this tax

8    exchange.

9         Mr. Amberson, who's an attorney, went to a

10   tax accountant and the tax accountant said, you

11   cannot take a loan that is related to a

12   deferred tax exchange because if you do that,

13   you're violating the underlying principles of

14   Section 1031.  It has to be a

15   no-strings-attached deal.

16        On March 11th, 2009, Mr. Amberson sent a

17   letter to his father-in-law James McAllen and

18   said, I cannot do a loan.  If you choose to

19   proceed with this transaction, you'll have to

20   treat this as a gift, and that is the only way

21   I'll participate.  Seven days later on March

22   18th, 2009, $4.9 million was wired from

23   Mr. McAllen's office to a new entity that had

24   been set up by Mr. McAllen's representatives.

25   That entity is called Amberson Natural

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1    Resources.

2         Now, it's important that it was formed by

3    Mr. McAllen's own representatives because he

4    now claims that the formation of that entity

5    was formed to perpetrate a fraud.  If it was

6    formed to perpetrate a fraud, that would be

7    absolutely amazing because his representatives

8    formed it.  So it could not have been formed by

9    him with an intention of perpetrating a fraud

10   on himself.  Moreover, he had an obligation to

11   read the letter that was sent to him on March

12   11, 2009 and to understand its terms.  And the

13   terms were, this was not to be a loan.  This

14   would only be a gift.  The transaction was

15   consummated, the $4.5 million that was wired to

16   Amberson Natural Resources was returned by

17   Mr. Amberson from that company to purchase a

18   90 percent L.L.C. interest in an entity Cannon

19   Grove Investments that Mr. McAllen formed.  And

20   that was the deal.

21        The Amberson firm and Mr. Amberson never

22   represented Mr. McAllen in that transaction.

23   Never represented his companies in that

24   transaction.  That's important because as the

25   Supreme Court tells us, the fiduciary duty does

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        not extend beyond the scope of representation

 2        by an attorney.  An attorney is not liable as a

 3        fiduciary for matters that are outside the

 4        scope of his representation.  As I say,

 5        Mr. McAllen was well-represented by separate

 6        counsel, three separate firms and a tax

 7        accountant.

 8             In addition, that transaction contained no

 9        loan agreement.  None was prepared.  None was

10        presented.  No loan note was ever prepared or

11        presented.  No demand was ever made under a

12        note.  No demand was ever made under a loan

13        agreement.  There was no suggestion that there

14        was any loan agreement involved.  All of which

15        confirmed that the understanding represented or

16        reflected in that March 11, 2009 letter is

17        exactly what the deal was.  It was receipt of a

18        gift by a son-in-law and the daughter-in-law as

19        a community, and then the payment of that $4.5

20        million back for a 90 percent in the Cannon

21        Grove Investments.

22             Later that property, that asset, was

23        divided between Mr. Amberson and his wife, the

24        daughter of Mr. McAllen when they divorced five

25        years later.  No claim, no claim for any
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        payment of an alleged note was made for eight
 2        years after 2009.  No reference to a claim was
 3        made with respect to any alleged note or loan
 4        until five years after 2009, after the divorce
 5        between Mr. Amberson had been completed.
 6             Now, as I say, there is absolutely no
 7        arbitration agreement whatsoever between
 8        Mr. McAllen or any of his entities and Amberson
 9        Natural Resources which is solely owned by
10        Chris Amberson.  There is no arbitration
11        agreement with respect to the Cannon Grove
12        property.  That property is completely distinct
13        from the McAllen Ranch.  The McAllen Ranch, the
14        property, is, I think, the underlying property
15        is located along 83, I believe, here in
16        Edinburg.  There was no involvement of the
17        Amberson firm in that transaction.
18             Amberson Natural Resources has never
19        sought any benefit under that engagement
20        agreement dating back to 2005 between the
21        Amberson lawfirm and the McAllen parties.  It
22        seeks no benefits now.  The Amberson Natural
23        Resources is not a petitioner in this case for
24        any interest in or benefit from the contingency
25        fee.  The Amberson Natural Resources entity has
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1          never charged fees to Mr. McAllen for any legal
 2          services and has never rendered any legal
 3          services to Mr. McAllen.
 4               I mentioned that there is no fiduciary
 5          duty on the part of Mr. Amberson with respect
 6          to the County Grove matter, and that stems from
 7          the Supreme Court's 2009 decision in a case
 8          called Two Thirty Nine Joint Ventures which
 9          limits the obligation of loyalty to the scope
10          of a lawyer's representation.
11               Forest Oil, in short, had nothing to do
12          with Cannon Grove.  The Forest Oil litigation
13          had nothing to do with the Cannon Grove
14          property.  The Forest Oil -- there has been
15          absolutely no litigation between Amberson
16          Natural Resources and Forest Oil.  There was no
17          contamination of the Cannon Grove property.
18          And there was no lease between Forest Oil and
19          the Cannon Grove participants.  We are not
20          talking about an intertwining of facts,
21          therefore, there is no overlapping or
22          intertwining of facts that would justify
23          enforcing an arbitration clause against, in
24          this situation, a non-signatory to that
25          engagement agreement.
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1     The petition seeks legal fees only.  It

2     does not involve Cannon Grove.  It does not

3     involve Cannon Grove.  It does not involve the

4     Amberson Natural Resources entity.

5          Now, the legal standard applicable here is

6     that an arbitration agreement must be

7     consensual.  It cannot be the result of

8     coercion.  And that is a burden that rests upon

9     the McAllens to show that the dispute involving

10    Cannon Grove arises under the engagement

11    letters arbitration clause.  That's their

12    burden.  The Courts are very clear about that.

13         As I say, this is a narrow scope

14    arbitration clause, applying only to a fee

15    dispute in the Forest Oil litigation or the

16    services rendered under that engagement

17    agreement.

18         Under the Orsonio -- or Orsonia case out

19    of Houston in 2012, the Court cannot modify an

20    arbitration agreement or stretch its provisions

21    to extend to a dispute that is not evident and

22    is subject to the arbitration clause.

23         Now, there's an argument that is raised on

24    the other side that the Cannon Grove

25    transaction was a fraud on Mr. McAllen.

JULIAN G. ALDERETTE, OFFICIAL COURT REPORTER
92ND DISTRICT COURT, HIDALGO COUNTY TEXAS
(956) 318-2250

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        That -- the merits of that are not before the
 2        Court today.  That will be tried on a different
 3        occasion.  But I'll say this.  Where the tort
 4        claim rests upon facts that stand alone and can
 5        be independently litigated without reference to
 6        the arbitration agreement, there is no basis to
 7        send a non-signatory party to arbitration, and
 8        the case law that we're going to -- that we
 9        cited in our brief stands for that.  Here the
10        facts on Cannon Grove stand completely
11        independent of the engagement agreement and the
12        arbitration clause.  In fact, Mr. McAllen's own
13        pleading admits that the Cannon Grove situation
14        involves property unrelated to McAllen Ranch
15        which was the subject of the engagement letter.
16             So under the Fridel case out of El Paso,
17        1995 and the Endura case out of San Antonio in
18        2015 where the tort claim can stand on its own
19        legs, there was no intertwining, that was why
20        referral to arbitration here.
21             The McAllens have cited three cases in
22        which they say that arbitration should be
23        extended to Amberson Natural Resources and to
24        Mr. Amberson.  One is T.C.P. holdings out of
25        Dallas, and in that case the arbitration clause
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1    was a very broad clause.  It said, any dispute

2    between the parties, any dispute or controversy

3    between the parties would be arbitrated.

4    Clearly not our case.

5         The next case they have discussed is the

6    Poole case out of Houston in 2000.  And there

7    the agreement referenced the very claims that

8    were subject to arbitration.

9         And in the Vireo case, the third case that

10   they discuss, Austin, 1997, it involved a

11   non-compete and the non-compete required

12   arbitration of all claims related to the

13   non-compete.  So clearly, the arbitration

14   clause and the dispute lined up with each

15   other.  The Vireo case actually was a case in

16   which one of the parties had waived

17   arbitration, so the arbitration was not ordered

18   in any event.

19        I end with this.  The McAllens claim that

20   there is an alter-ego relationship between the

21   Cannon Grove entity and Amberson Natural

22   Resources and Mr. Amberson and his lawfirm.

23   That is their burden to prove.  The Courts have

24   stated in Glassell that allegations are

25   insufficient.  They have a burden to prove

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1    facts to support that allegation, and the facts

2    must be convincing to this Court.  There is no

3    basis for that allegation.  I'll briefly

4    explain why.

5         First of all, under Texas law, the

6    entities are presumed to be separate.  Texas

7    entities are presumed not to be alter-egos to

8    each other.  That's out of the Houston case in

9    2013 called IGguide Tours.  Moreover, the

10   Amberson Natural Resources has been used only

11   to acquire the Cannon Grove L.L.C. interest and

12   two other real estate parcels, having nothing

13   to do with the Amberson lawfirm.

14        Second, there is no conspiracy or fraud

15   that is actually shown here because Mr. McAllen

16   formed the Amberson Natural Resources entity.

17   His representatives did, and the documentation

18   for it.  And he had in hand a letter, as I say,

19   dated March 11, 2009 advising him specifically

20   that this would be treated as a gift if he

21   chose to proceed, and a week later he chose to

22   proceed.  To the extent that represents an

23   agreement, it's a separate agreement.  The

24   Supreme Court has held in the Westergren case

25   that every individual is responsible to read

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1      and understand his agreements, and it's

2      presumed that a litigant has read and

3      understood the agreements.

4           The Amberson Natural Resources entity is

5      not a mere alter-ego.  It was properly formed.

6      It has a company agreement.  It has articles of

7      formation that were filed with the Secretary of

8      State.  Similarly, the Amberson lawfirm,

9      properly formed, it was organized years ago in

10     1999, and it has no interest in the Amberson

11     Natural Resources entity.  It has its own

12     offices, its own bank accounts and its own

13     assets.  Moreover, the Amberson Natural

14     Resources entity has no interest in the

15     Amberson lawfirm.  It has its own assets, it's

16     own bank accounts.  Those bank accounts are not

17     commingled will those of the lawfirm.

18          So, we have -- so the entities have

19     separate ownership of the assets.  Neither the

20     Amberson lawfirm nor the Amberson Natural

21     Resources entity owns Mr. Amberson's separate

22     assets, his home, for example.

23          The situation where alter-ego has figured

24     in the arbitration cases is this.  Where

25     parties -- and I think there are two such cases

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        we distinguish in our brief -- where parties

 2        are seeking to avoid arbitration but can see

 3        alter-ego status that brings them under the

 4        arbitration clause, that concession acts as a

 5        judicial estoppel and therefore results in a

 6        referral to arbitration.  Mr. Amberson is

 7        absolutely adamant that there is no confusion

 8        of the assets, the interests or -- of these

 9        separate entities, the Amberson lawfirm and

10        Amberson Natural Resources.  For all of these

11        reasons, there is absolutely no reason

12        whatsoever to violate the holdings of the

13        Courts.

14            No. 1.  Out of the Texas Supreme Court in

15        the Kellogg case, tangential relationship

16        between claims is not enough to warrant

17        arbitration, compelling arbitration against the

18        non-signatory.

19            No. 2.  The Supreme Court, 2007, in

20        Merrill Lynch, the question is not which forum

21        is quicker, cheaper or more convenient, but

22        which one the parties picked.  The arbitration

23        is a matter of consent not coercion.  And

24        arbitrabilty (phonetic) turns on the substance

25        of a claim not artful pleading.  And I
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1      emphasize that because we have some artful

 2      pleading here.

 3           The -- and the Jenkins and Gilchrist case

 4      against Riggs out of Dallas, 2010, a party

 5      cannot be forced to forfeit the constitutional

 6      protections of the judicial system and submit

 7      its dispute to arbitration in the absences of

 8      an agreement to arbitrate.

 9           Your Honor, I would like to, if I might,

10      tender our exhibits in support of the

11      declarations that we have filed.  If I might

12      hand these to the Court at this time and ask

13      that they be admitted into evidence.

14           MR. PRICHARD:  We have not seen them, Your

15      Honor.

16           AN ATTORNEY:  Yes, you have.  They've all

17      been attached to the --

18           MR. PRICHARD:  I am sorry.  All those are

19      the ones that have already been filed?

20           AN ATTORNEY:  Yes.

21           MR. AMBERSON:  No objection for this

22      hearing, Your Honor.

23           THE COURT:  All right.  They'll be

24      admitted.

25           (Reporter's Note:  Exhibits were admitted
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        without identifying them individually.  This
 2        Reporter believes that the exhibits that were
 3        admitted he is in possession of.  The party
 4        ordering the transcript did not request a copy
 5        of the exhibits that were introduced.  Further,
 6        this Reporter does not know for sure if the
 7        exhibits in his possession are what was
 8        referred to and admitted.  Upon request this
 9        Reporter will furnish a copy of what he has as
10        the exhibits).
11            AN ATTORNEY:  Thank you, Your Honor.
12            MR. PRICHARD:  Good morning, Your Honor.
13        May it please the Court, I'm David Prichard.
14            Let me a take step back.  Sounds like
15        today is Arbitration Day in Judge Singleterry's
16        Court.
17            THE COURT:  Sure does.
18            MR. PRICHARD:  I think it's important to
19        understand the first thing is, is that
20        Mr. Amberson, he was the son-in-law and he was
21        counsel for the McAllen family and the McAllen
22        business interests.  That's important.  He
23        clearly had a fiduciary duty.  He suggested to
24        Mr. McAllen, and this is -- perhaps the Court
25        understands this -- this was a dreadful
```

JULIAN G. ALDERETTE, OFFICIAL COURT REPORTER
92ND DISTRICT COURT, HIDALGO COUNTY TEXAS
(956) 318-2250

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1    contamination case that Forest Oil put onto the

2    McAllen family lands unbeknownst to

3    Mr. McAllen, they buried radioactive material.

4    They took -- they gave some pipe to --

5    Mr. McAllen is a noted conservationist, he was

6    asked to talk care of some rhinoceroses and

7    Forest Oil gratuitously gave them some pipe to

8    build pens for these rhinoceroses.  Unbeknownst

9    to him or his work, those pipes were also

10   contaminated, and this lawsuit also contains

11   not only a contamination case for the land but

12   also contamination and exposure to the workers

13   out and to Mr. McAllen personally.  So, that's

14   a little bit of what kind of started this

15   against Forest Oil.

16           It's important to also understand

17   that Mr. Amberson is the person who wrote the

18   contract that they're now claiming that they're

19   entitled to one-third attorney fees from, and he's

20   the one that wrote the arbitration provision.

21   Mr. McAllen is not a lawyer.  So at the time that

22   this agreement was signed by Mr. McAllen, he trusted

23   not only his long-time attorney with the fiduciary

24   responsibility but also his son-in-law, trusted him

25   implicitly as we now know under our ethics rules

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1    this Court, we hopefully can go down and be heard

 2    and have an arbitrator appointed.

 3              At the heart of this is this point,

 4    Your Honor.  What they want to do is, they want to

 5    sever out and make this Court retain on his docket

 6    the separate Canon Grove transaction while

 7    everything else goes to arbitration.  And why is

 8    that?  Because the Canon Grove is just another big

 9    piece of fraud that Mr. Amberson perpetuated.

10    Mr. Fleckman says, well, how can it be fraud?  My

11    goodness.  Mr. McAllen started Amberson Natural

12    Resources.  How could that be fraud?  I'll tell you

13    how it's fraud.  How is it that the gentleman who

14    wants to make a 1031 tax exchange on a piece of

15    property so that it can defer, not excuse, but

16    defer, capital gains tax on a piece that you sell?

17    How all of a sudden can that be converted into a

18    $4.5 million gift to a son-in-law?  That makes no

19    sense whatever.  Why would a gentleman who is

20    setting up a transaction, a real estate exchange,

21    one piece of property for another, give one

22    son-in-law a free gift of $4.5 million?  Well, if

23    he's going to give Mr. Amberson a gift for $4.5

24    million, why won't you give all of your other

25    sons-in-law a $4.5 million gift?  It was a fraud and
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1  he has retained that $4.5 million to this very day.

2  But I think it's interesting because Mr. Fleckman

3  mentioned Mr. McCaleb.  Mr. McCaleb was their real

4  estate lawyer, and McCaleb has come forth,

5  Mr. McCaleb actually offices in the same building as

6  Mr. Amberson owned.  Same building.  I've talked to

7  Mr. McCaleb, Mr. McCaleb has been a friend of mine

8  for almost thirty-five years.  Mr. McCaleb says,

9  it's not a gift.  I forget to write the note.  If I

10 had simply written a note, we wouldn't be here on

11 this deal.

12         The other important thing is, in

13 talking with Mr. McCaleb, Mr. McCaleb has told me

14 specifically, you know what, Chris Amberson knows

15 that, and Chris Amberson, I said, what are you doing

16 Chris?  You know, it's Mr. McAllen's property, it's

17 his four-and-a-half million dollars, it's not yours.

18 He says, I'm using it for leverage in the other --

19 in the rest of the case.  Yeah, he says.  He's using

20 it for leverage in the other case.

21         So, Your Honor, Mr. Amberson does not

22 want the arbitrator who'll hear everything else, all

23 the other fraud that's been committed, all the other

24 fraud that's been committed, he does not want an

25 arbitrator to hear that, rather he'd rather have you

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1   hear that in front of the Jury and split the fact
 2   pattern.  The Canon Grove is going to come out in
 3   the arbitration.  It's going to come out.  Canon
 4   Grove -- and so what happens?  You heard earlier
 5   this morning, the likelihood and the possibility of
 6   an inconsistent result, the Jury here on Canon Grove
 7   and what the arbitrator rules.  Now, if Mr. Fleckman
 8   is so concerned about that, let him go to the
 9   arbitrator and the arbitrator, if the arbitrator
10   says it has absolutely nothing to do with where we
11   are, that's fine.  You can -- you can send it -- he
12   can send it -- he or she can send it back to Judge
13   Luis Singleterry of the 92nd District Court for
14   resolution.  Why should this Court split this --
15   this fact pattern.  It shouldn't.  And take up
16   docket time on this Court's docket when it should be
17   gone?
18                The other thing I'll point out and
19   then I'll turn it to my colleague partner,
20   Mr. Montpas, to discuss some of the legal issues.
21                Mr. Amberson has been paid an hourly
22   fee, $2.5 million.  $2.5 million.  Well, wait a
23   second, we went to a mediation.  And then I asked
24   Mr. Amberson.  Mr. Amberson, what about this?  How
25   could you claim a third contract, a third
```

JULIAN G. ALDERETTE, OFFICIAL COURT REPORTER
92ND DISTRICT COURT, HIDALGO COUNTY TEXAS
(956) 318-2250

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

```
 1        sent to the arbitrator and let him decide.

 2        Mr. Prichard suggested, if the arbitrator

 3        decides that Canon Grove is inappropriate for

 4        the scope of arbitration, then it can come

 5        back.

 6             I do want to talk a little bit more

 7        generally about the nature of arbitration and

 8        why this -- why the Canon Groves claims are

 9        subject to the arbitration clause.

10             Texas law has a very strong presumption in

11        favor of arbitration.  Any doubts again

12        concerning the scope of what is arbitrable are

13        resolved in favor of arbitration.  That's the

14        G.T. Leaks case from the Texas Supreme Court

15        and the Elman versus Aucker case from the

16        Corpus Christi Court, these cases are cited in

17        our response brief on file.

18             A Court should not deny arbitration unless

19        it can be said with positive assurance that an

20        arbitration clause is not acceptable to an

21        arbitration whose interpretation which would

22        cover the dispute issues within Wilson

23        Construction Company case, Texas Supreme Court

24        case in 2006, as well as the Boston Financial

25        Institution case, and the Corpus Christi Court
```

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1    of Appeals in 2015.

2         So you've got contractual claims, fee

3    claims that have been mentioned, and you got

4    these extra contractual ancillary claims, the

5    Canon Grove issue.  Texas law favors the joint

6    resolution of multiple claims to prevent

7    multiple determinations in the same matter, and

8    so when claims that are explicitly subject to

9    two arbitration are factually intertwined with

10   ancillary claims and both sets have to referred

11   to arbitration.  This is the Jack V. Anglen

12   case from the Texas Supreme Court as well as

13   the Howell Crew versus Hanna Oil case from the

14   Corpus Christi Court of Appeals, again cited in

15   the response.

16        So, if the facts alleged in a claim touch

17   on matters that are covered by or have, quote,

18   significant relationship or inextricably

19   enmeshed with our -- or are factually

20   intertwined then the contractual claim and the

21   extra contractual claim need to go to

22   arbitration.  And we did cite a couple of

23   samples in our response regarding that.  There

24   is the T.C.P. Holding's case.  That's an

25   instructive example.  In that case you had

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1      MR. FLECKMAN:  May I respond?

2      THE COURT:  Yes, sir.

3      MR. FLECKMAN:  I'm going to make a very

4  brief response.

5      I'm going to submit to the Court a litmus

6  test.  And the litmus test is a bookend that my

7  esteemed colleague just ended with.  He said at

8  the introduction of his statement that the

9  gateway determination of whether the

10  arbitration scope includes this Cannon Grove

11  dispute is to be resolved by the arbitrator,

12  and he ended with that point.

13      Here's what the Supreme Court actually

14  says on that.  It's a tab 15.  If I might

15  approach the bench.  I'd like to provide the

16  Court a binder of authorities on these various

17  questions.  We have highlighted key holdings on

18  various issues.

19      Here's what the Court said in 2011.  And

20  they said this previously in 2005 in the

21  Weekley Homes case.  Whether a non-signatory --

22  this is a tab 15 -- can compel arbitration

23  pursuant to an arbitration clause questions the

24  existence of a valid arbitration clause between

25  specific parties and is therefore a gateway

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1   matter for the Courts to decide.  Could not be

2   more conclusive.

3       The Supreme Court has now held twice that

4   it is the responsibility of the Court to

5   determine as a gateway matter whether a

6   non-signatory can be required to arbitrate

7   under an arbitration provision.

8       Mr. Mountpas has mentioned a few other

9   things.  The scope of this arbitration,

10  according to the Rubio Court, is determined by

11  the facts.  It's not determined by their

12  theories of the case.  As I have said at the

13  outset, I'm not here to argue, to make a Jury

14  argument today.  I'm not even going to attempt

15  today to refute their allegations.  Most of

16  which we disagree with adamantly.  But I will

17  point to the Supreme Court in the same decision

18  to tab 15.  To determine whether a claim falls

19  within the scope of the agreement, Courts must

20  focus on the factual allegations of the

21  complaint rather than the legal causes of

22  action asserted.  Their theories do not control

23  whether or not this non-signatory, the

24  non-signatories are to be referred to

25  arbitration.  The facts and the facts show that

Electronically Filed
6/11/2018 4:14 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

1     the situations involving Cannon Grove are

2     entirely distinct.  I'll dispose of the

3     fiduciary argument that Mr. Prichard has raised

4     with one observation.  And that is, it is clear

5     that Mr. McAllen was represented by three

6     lawfirms in the Ten Thirty One transaction, and

7     it's clear that Mr. Amberson's lawfirm was not

8     representing him.

9          Your Honor, I would ask that you take the

10    matter under advisement and that to the extent

11    necessary or are helpful if you take a look at

12    the authorities that we've cited in our brief

13    and we've provided their authorities and their

14    distinctions and briefing on those as well.

15         Thank you, Your Honor.

16         THE COURT:  Anything else?

17         MR. CANALES:  Yes, sir.  Every part should

18    have a closure.  I feel I'm completely --

19         (Reporter's note:  All counsel laughing at

20    the same time).

21         MR. CANALES:  -- I'm not going to add

22    anything else to it, Your Honor, except I have

23    a proposed order for the Court.  I think that

24    they have a copy of it.  The Court referring

25    all claims to arbitration.  I'll hand that to

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## THE MCALLEN PARTIES'
## SUPPLEMENT TO THEIR
## RESPONSE TO PLAINTIFF'S AND
## THIRD-PARTY DEFENDANTS' MOTION
## FOR RECONSIDERATION OR CLARIFICATION

TO THE HONORABLE LUIS M. SINGLETERRY:

COME NOW JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE

COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST

PARTNERSHIP (collectively the "MCALLEN PARTIES") and file this Supplement to their

Response to Plaintiff's and Third-Party Defendants' (collectively the "AMBERSON PARTIES")

Motion for Reconsideration or Clarification.   In support of this response, the MCALLEN

PARTIES show as follows:

155420

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**I.**
**THERE IS EVIDENCE OF THE**
**ALTER EGO STATUS OF THE AMBERSON PARTIES**

At the June 5, 2018 hearing on the AMBERSON PARTIES' Motion to Reconsider, the movants re-urged their request to the Court to retain the claims concerning the Cannon Grove transaction, rather than referring them to arbitration with all of the other claims that are the subject of this lawsuit.  The Court correctly referred all claims in the lawsuit, including claims regarding the Cannon Grove transaction, to arbitration.   At the hearing, the MCALLEN PARTIES explained why the Cannon Grove claims belonged in arbitration, including the fact that the Jon Christian Amberson, P.C. ("JCA P.C.") and Amberson Natural Resources, LLC ("ANR") are the alter ego of Jon Christian Amberson.

Parties that are not-signatories to an arbitration agreement ("non-signatories") can be compelled to arbitration along with parties that did sign an arbitration agreement ("signatories") under several theories including alter ego.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).  If a non-signatory is the alter ego of a signatory to an arbitration agreement, then the non-signatory can be compelled to arbitration.  The MCALLEN PARTIES pleaded that Jon Christian Amberson, P.C. and Amberson Natural Resources, LLC are the alter egos of Jon Christian Amberson.  *See* The McAllen Parties' Second Amended Answer, Counterclaims, and Claim against Third-Parties, p. 10.

At the June 5th hearing, the AMBERSON PARTIES argued there was no evidence of alter ego status that would permit referring the Cannon Grove claims to arbitration.  In fact, the AMBERSON PARTIES supplied evidence of alter ego status in their prior briefs.   And additional evidence further demonstrates that Amberson's companies are his alter ego.

155420

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**A.      Only some evidence of alter ego status is needed at this stage.   The MCALLEN PARTIES do not yet have to prove alter ego status.**

Importantly, the MCALLEN PARTIES are not required to prove alter ego status before the Cannon Grove claims can be referred to arbitration.  It would be non-sensical to require a party to prove alter ego status at the beginning of case before any discovery has been conducted. Rather, "in order for an arbitration clause to apply to nonsignatories, the party seeking arbitration must introduce evidence <u>supporting a finding of alter ego</u>."  *Glassel Prod. Co. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 84-85 (Tex. App.—Texarkana 2014, no pet.) (emphasis added).

**B.      The AMBERSON PARTIES submitted evidence indicating that ANR is the alter ego of Jon Christian Amberson.**

Multiple factors are considered in determining alter ego status including: (1) payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failures to keep corporate and personal assets separate. *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App.—El Paso 2010, no pet.); *U.S. KingKing, LLC v. Precision Energy Services, Inc.*, 01-17-00215-CV, 2018 WL 2638648, at *9 (Tex. App.—Houston [1st Dist.] June 5, 2018, n.p.h.).  In their own briefing, the AMBERSON PARTIES submitted evidence indicating that ANR is the alter ego of Amberson.

**1.      There is evidence Amberson commingled funds with ANR.**

The AMBERSON PARTIES maintain that ANR is separate from Amberson.  *See* AMBERSON PARTIES' Reply to the McAllen Parties' Request to Refer All Claims to Arbitration, p. 7 (stating "the Amberson Parties unequivocally deny that they are alter egos").

3

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

But the documents the AMBERSON PARTIES provided in their briefing actually include evidence that ANR is the alter ego of Amberson.

For example, the AMBERSON PARTIES submitted a March 11, 2009 letter from Jon Christian Amberson that he supposedly sent to Mr. McAllen. Amberson offers the letter as evidence that money provided by Mr. McAllen for the Cannon Grove transaction was a gift and not a loan. *See* AMBERSON PARTIES' Motion to Refer Certain Claim to Arbitration and Retain Others, pp. 3-4. The letter, written on JCA P.C. stationary, makes no mention of ANR. *Id.*, Ex. A-9. More importantly, the letter reveals Amberson supposedly treated the $4.5 million as a personal gift to him – not ANR – so that he could avoid adverse tax consequences of a loan.

> In order for me to accommodate this transaction, Mr. McCaleb has proposed that you loan me $4.5 million dollars and I then purchase 90% of an entity that owns property you own, which I will then own in return for the $4.5 million investment I make. I informed Julie of this proposal by your attorneys and she informed me that we could not do this in the manner proposed by your attorneys and tax advisors. She went on to inform me that the purchase would be in direct violation of the meaning of the IRS Code, which requires it to be an arms length transaction unrelated to you. In other words, the $4.5 million dollars used to make the necessary purchase cannot be tied in any way to the 1031 transaction. Julie is concerned that I could not represent to the IRS that the source of the $4.5 million dollars was not received from you to facilitate this 1031 related transaction when in truth and in fact, it is. Therefore, if you decide to go forward, then I must treat it as a gift which I will invest by purchasing your entity. This way in the event of any audit, Mary Margaret and I don't get into trouble with the IRS on a misrepresentation and possible tax fraud issue.

*Id.*, Ex. A-9 (emphasis added).[1] Amberson reiterated, in a declaration in support of his motion, that he treated the $4.5 million as a personal gift to him not ANR.

---

[1] The MCALLEN PARTIES do not agree with Amberson's characterization of the transaction in his letter. Nor do the MCALLEN PARTIES agree with his subsequent assertion that the MCALLEN PARTIES agreed to treat the $4.5 million as a gift. It was a loan. The MCALLEN PARTIES cite this letter merely as evidence indicating that ANR was the alter ego of Jon Christian Amberson.

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

> My letter made it clear to Mr. McAllen that, based on the tax advice I had received, I would not agree to his proposal to treat the $4.5 million transfer as a "loan," and that if he chose to involve me in the transaction, his transfer of the $4.5 million would have to be an outright gift; <u>only then would I feel comfortable using the funds to purchase the CGI LLC interest</u>.

*Id.*, Ex. A, ¶ 11 (emphasis added); *see id.*, ¶ 12 (stating "<u>Mr. McAllen sold me 90 percent of CGI</u> LLC, and as the purchase price <u>I paid him</u> $4.5 million at the time of the Cannon Grove transaction") (emphasis added).

According to Amberson, he used the personal "gift" of $4.5 million from Mr. McAllen to purchase ANR's interest in Cannon Grove.  *See id.*, ¶ 11 (stating "Mr. McAllen proceeded with the transaction, transferring $4.5 million to a new limited liability company owned by me [ANR]").  Thus, while Amberson claimed the $4.5 million was a personal gift to him, he concedes the McAllens transferred that "gift" directly to ANR.  Amberson commingled his supposed "gift" with ANR's assets to purchase the interest in Cannon Grove.

Commingling of funds is a factor in deciding alter ego status.  *Penhollow Custom Homes, LLC*, 320 S.W.3d at 372; *J. Parra e Hijos, S.A. de C.V. v. Barroso*, 960 S.W.2d 161, 171 (Tex. App.—Corpus Christi 1997, no pet.).  Amberson's letter is evidence that he commingled funds with the ANR because the funds that ANR ultimately used to purchase its interest in Cannon Grove came from funds that Mr. McAllen provided and which Amberson claims was a personal gift to him.

### 2. The AMBERSON PARTIES' evidence also shows ANR was inadequately capitalized.

Inadequate capitalization is also a factor in considering whether an entity is the alter ego of an individual.  *Penhollow Custom Homes, LLC*, 320 S.W.3d at 372.  According to the AMBERSON PARTIES, ANR was a separate company created for purchasing the $4.5 million

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

interest in Cannon Grove.   But ANR lacked the capital necessary for the transaction.   The
AMBERSON PARTIES included the "Company Agreement of Amberson Natural Resources
LLC" with its briefing.   *See* AMBERSON PARTIES' Reply to the McAllen Parties' Request to
Refer All Claims to Arbitration, Ex. C-3-A.   The agreement shows ANR was formed on March
17, 2009 (one day before the Cannon Grove transaction).   Amberson was the sole shareholder of
ANR with a capital contribution of $100.00.

*Id.*   Obviously, this was not enough for the Cannon Grove transaction, so ANR used the $4.5
million that Amberson contends was a personal gift to him.   In other words, Amberson used
funds he claimed was a personal gift to provide ANR with the capital needed for the Cannon
Grove transaction.[2]

### C.    There is evidence that JCA P.C. is the alter ego of Jon Christian Amberson.

In addition to commingling funds with ANR, Amberson also commingled personal funds
with his law firm – including funds used for Amberson's representation of the MCALLEN
PARTIES.

JCA P.C. regularly billed the MCALLEN PARTIES for the attorney time and expenses
spent on the Forest Oil matter from 2005 through 2014.   The MCALLEN PARTIES paid every
invoice submitted by JCA P.C., including millions of dollars for Amberson's time and millions

---

[2] Notably, Amberson has not averred or provided any documentation to show that he loaned ANR the $4.5 million
he maintains that Mr. McAllen gave him.

155420

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

more in expenses.  But despite JCA P.C. billing the MCALLEN PARTIES for all its time and expenditures as they were incurred (and despite the MCALLEN PARTIES promptly paying all of JCA P.C.'s invoices), Amberson maintains he had to also borrow money from First Community Bank to fund his representation of the MCALLEN PARTIES.  In 2012, JCA P.C. billed the MCALLEN PARTIES for the interest it paid on those loans ostensibly taken for the purpose of funding expenses in the Forest Oil matter.

```
        Enclosed herewith, please find the loan history, from First
Community Bank, regarding the loan that was used to fund expenses
in the above styled and numbered cause.  There is a total of five
loans because every time the original Bob Duncan loan was renewed
First Community Bank would assign a new loan number to the loan.
The interest is broken down as follows:

Loan #1, Loan No: CL-0000111645, total interest paid $9,693.21;

Loan #2, Loan No: CL-0000111646, total interest paid $42,848.77;

Loan #3, Loan No: CL-0000111647, total interest paid $20,637.98;

Loan #4, Loan No: CL-0000111648, total interest paid $437,410.54;

Loan #5, Loan No: CL-0000142515, total interest paid $105,616.66.

     Total  interest  paid  by  Jon  Christian  Amberson,  P.C.
$616,207.16.

     Total Amount Due and Owing to Jon Christian Amberson, P.C.
$616,207.16.
```

*See* Amberson Letter, July 11, 2012, Ex. 1.  As with every other bill from JCA, P.C., the MCALLEN PARTIES promptly paid this request.  Ultimately, Mr. McAllen not only paid JCA P.C. for interest payments on these loans, Mr. McAllen also paid off those loans by personally borrowing over $2 million.

Of course, there was no reason for Amberson to borrow money to "fund expenses" in the Forest Oil matter because he regularly billed the MCALLEN PARTIES for those expenses and

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

they promptly paid every invoice submitted by Amberson.   Setting aside (for the moment), Amberson's fraud in simultaneously billing the MCALLEN PARTIES for both legal expenses and interest on loans supposedly taken to pay for the same legal expenses, Amberson's fraud is additional evidence of commingling funds that shows he was the alter ego of his law firm.

In his July 11, 2012 letter, Amberson implied that the loans were taken out by his law firm, JCA P.C., rather than personal loans he had taken.  Thus, Amberson asked Mr. McAllen to "repay" JCA P.C. for interest payments it supposedly made.  However, the interest payments for which Amberson sought reimbursement on behalf of JCA P.C. included personal loans that Amberson owed and not just loans owed by JCA P.C.  The first two loans Amberson lists in his July 11, 2012 letter, were loans he had personally had with First Community Bank – not loans in the name of JCA P.C.

| | |
|---|---|
| Jon Christian Amberson<br>2135 East Hildebrand Ave<br>San Antonio, TX 78209 | Date:        03/01/2012<br>Period:      09/30/2005 to 03/03/2006<br>              155 (Days)<br><br>Personal Banker:    RICKY LEAL |
| ACCOUNT #: CL - 0000111645     Commercial - Variable<br>                                QIO-TSC-33-220111 | |

| | |
|---|---|
| Jon Christian Amberson<br>2135 East Hildebrand Ave<br>San Antonio, TX 78209 | Date:        03/01/2012<br>Period:      02/24/2006 to 12/04/2006<br>              284 (Days)<br><br>Personal Banker:    RICKY LEAL |
| ACCOUNT #: CL - 0000111646     Commercial - Variable<br>                                QIO-TSC-37-220111 | |

155420

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

*See* Account Snapshot, Loan CL-000111645, Ex. 2; Account Snapshot, Loan CL-000111646, Ex. 3,

This is commingling funds. Amberson personally borrowed money from First Community Bank – ostensibly to "fund expenses" for JCA P.C.'s representation of the MCALLEN PARTIES in the Forest Oil matter. JCA P.C. billed and collected every expense invoice it submitted to the MCALLEN PARTIES. JCA P.C. then billed the MCALLEN PARTIES for interest on loans to fund expenses the MCALLEN PARTIES had already repaid, including interest on personal loans that Amberson had with First Community Bank. The MCALLEN PARTIES then paid JCA P.C. for interest expenses on these loans, including Amberson's personal loans. Amberson commingled his personal loans with loans taken by JCA P.C. and all in furtherance of a fraud against the MCALLEN PARTIERS. There was never a need for Amberson or JCA P.C. to borrow funds to pay expenses in the Forest Oil matter. The MCALLEN PARTIES had the means to pay all expenses in the Forest Oil matter as they were incurred by JCA P.C., and they did. But Amberson chose to commit fraud and commingle proceeds from personal loans with those of JCA P.C. in the process.

Amberson commingled funds with both JCA P.C. and ANR. Amberson was at the center of a scheme that not only commingled funds but did so in further of a fraud against the MCALLEN PARTIES, including Mr. McAllen.



155420

9

Electronically Filed
6/19/2018 1:35 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

The MCALLEN PARTIES do not have to prove alter ego status to have the claims concerning Cannon Grove referred to arbitration along with all the other claims at issue.  The MCALLEN PARTIES need only show there is some evidence that Amberson is the alter ego of his corporate entities.  Plainly there is some evidence that Amberson is the alter ego of these entities and, thus, the Court should rule that the Cannon Grove claims are subject to arbitration regardless of ANR's status as a non-signatory.

## II.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the MCALLEN PARTIES respectfully request that the Court deny the AMBERSON PARTIES' Motion for Reconsideration or Clarification.

Respectfully submitted,


/s/ David M. Prichard
David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

155420

**ATTORNEYS FOR JAMES ARGYLE
MCALLEN, EL RUCIO LAND AND CATTLE
COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST
PARTNERSHIP**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document was served on June 19, 2018 to the following:

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Frank Rodriguez
Law Office of Francisco J. Rodriguez
111 West Nolana, Suite A
McAllen, Texas 78504

/s/ David M. Prichard
David M. Prichard

11

155420

# EXHIBIT 1

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3339

TELECOPIER (210) 826-3340

July 11, 2012

Mr. James A. McAllen
McAllen Ranch
P.O. Box 1139
Edinburg, Texas 78540-1139

RE:   El Rucio Land and Cattle Company, Inc., et al. v. Forest
      Oil Corporation, et al.; Arbitration before the Honorable
      Daryl K. Bristow, Clayton J. Hoover and Donato D. Ramos

Dear Jimmy:

Enclosed herewith, please find the loan history, from First
Community Bank, regarding the loan that was used to fund expenses
in the above styled and numbered cause.  There is a total of five
loans because every time the original Bob Duncan loan was renewed
First Community Bank would assign a new loan number to the loan.
The interest is broken down as follows:

Loan #1, Loan No: CL-0000111645, total interest paid $9,693.21;

Loan #2, Loan No: CL-0000111646, total interest paid $42,848.77;

Loan #3, Loan No: CL-0000111647, total interest paid $20,637.98;

Loan #4, Loan No: CL-0000111648, total interest paid $437,410.54;

Loan #5, Loan No: CL-0000142515, total interest paid $105,616.66.

**Total interest paid by Jon Christian Amberson, P.C.**
**$616,207.16.**

**Total Amount Due and Owing to Jon Christian Amberson, P.C.**
**$616,207.16.**

Mr. James A. McAllen
July 11, 2012
Page 2


    If you should have any questions regarding the aforementioned, please do not hesitate to contact me at my office.

Very truly yours,

Jon Christian Amberson

JCA/bkg
enclosures

# EXHIBIT 2

```
First Community Bank, N. A.                    Account Snapshot                        03/01/2012
P.O. Box 2030                                                                          STO53000
1151 W. Hwy 77
San Benito, TX 78586                                 Branch:        2 - Harlingen - Main
(956) 399-3331                                       Phone:         (956) 428-4100
                                                     Fax:           (956) 412-7337

                                                     Date:          03/01/2012
                                                     Period:        09/30/2005 to 03/03/2006
         Jon Christian  Amberson                                    155 (Days)
         2135 East Hildebrand Ave
         San Antonio, TX 78209                       Personal Banker:   RICKY LEAL
```

---

ACCOUNT #: CL - 0000111645      Commercial - Variable
                                QIO-TSC-33-220111

Transaction Information

| Effective Date | Entered Date | CK # | Description | Amount | Balance |
|---|---|---|---|---|---|
| 9/30/2005 | 10/11/2005 | | Original Rate: 6.750 % | | $0.00 |
| | | | Total: | $0.00 | |
| 9/30/2005 | 10/11/2005 | | Loan Proceeds | | $0.00 |
| | | | Total: | $0.00 | |
| 10/12/2005 | 10/12/2005 | | DEPOSIT SLIP# 38237 | | $140,000.00 |
| | | | Principal: | $140,000.00 | |
| | | | Total: | $140,000.00 | |
| 10/25/2005 | 10/25/2005 | | Loan Advance | | $175,000.00 |
| | | | Principal: | $35,000.00 | |
| | | | Total: | $35,000.00 | |
| 10/28/2005 | 10/28/2005 | | DRAW #38237 | | $200,000.00 |
| | | | Principal: | $25,000.00 | |
| | | | Total: | $25,000.00 | |
| 11/1/2005 | 11/2/2005 | | Rate Change: 6.750  % To 7.000  % | | $200,000.00 |
| | | | Total: | $0.00 | |
| 11/2/2005 | 11/2/2005 | | DDA 38237 | | $225,000.00 |
| | | | Principal: | $25,000.00 | |
| | | | Total: | $25,000.00 | |
| 11/2/2005 | 11/2/2005 | | *** Backdate Rate: Accrual Increase | | $225,000.00 |
| | | | Total: | $1.39 | |
| 11/10/2005 | 11/10/2005 | | ADVANCE AS PER RICKY LEAL | | $255,000.00 |
| | | | Principal: | $30,000.00 | |
| | | | Total: | $30,000.00 | |
| 11/18/2005 | 11/18/2005 | | Loan Advance | | $295,000.00 |
| | | | Principal: | $40,000.00 | |
| | | | Total: | $40,000.00 | |
| 11/28/2005 | 12/5/2005 | | Interest Payment | | $295,000.00 |
| | | | Interest: | $1,948.85 | |
| | | | Total: | $1,948.85 | |
| 11/28/2005 | 12/5/2005 | | Unadvanced Amount Increase | | $295,000.00 |
| | | | Total: | $200,000.00 | |
| 11/28/2005 | 12/5/2005 | | Loan Renewal | | $295,000.00 |
| | | | Total: | $205,000.00 | |
| 12/1/2005 | 12/5/2005 | | *** Reversal: Accrual Decrease | | $295,000.00 |

```
ACCOUNT #: CL - 0000111645      Commercial - Variable
                                QIO-TSC-33-220111
```

Transaction Information

| Effective Date | Entered Date | CK # | Description | Amount | Balance |
|---|---|---|---|---|---|
| | | | Total: | $3.89 | |
| 12/1/2005 | 12/5/2005 | | Loan Advance | | $300,000.00 |
| | | | Principal: | $5,000.00 | |
| | | | Total: | $5,000.00 | |
| 12/1/2005 | 12/5/2005 | | *** Backdate: Accrual Increase | | $300,000.00 |
| | | | Total: | $3.89 | |
| 12/7/2005 | 12/7/2005 | | per RDL | | $335,000.00 |
| | | | Principal: | $35,000.00 | |
| | | | Total: | $35,000.00 | |
| 12/14/2005 | 12/14/2005 | | Rate Change: 7.000 % To 7.250 % | | $335,000.00 |
| | | | Total: | $0.00 | |
| 12/15/2005 | 12/15/2005 | | Customer Request | | $405,000.00 |
| | | | Principal: | $70,000.00 | |
| | | | Total: | $70,000.00 | |
| 12/15/2005 | 12/15/2005 | | Customer Request | | $415,000.00 |
| | | | Principal: | $10,000.00 | |
| | | | Total: | $10,000.00 | |
| 12/16/2005 | 12/16/2005 | | Customer Request | | $437,000.00 |
| | | | Principal: | $22,000.00 | |
| | | | Total: | $22,000.00 | |
| 1/18/2006 | 1/18/2006 | | CUSTOMER REQUEST | | $487,000.00 |
| | | | Principal: | $50,000.00 | |
| | | | Total: | $50,000.00 | |
| 1/31/2006 | 2/3/2006 | | Rate Change: 7.250 % To 7.500 % | | $487,000.00 |
| | | | Total: | $0.00 | |
| 2/3/2006 | 2/3/2006 | | *** Backdate Rate: Accrual Increase | | $487,000.00 |
| | | | Total: | $10.15 | |
| 2/23/2006 | 2/23/2006 | | AS PER RICKY | | $492,000.00 |
| | | | Principal: | $5,000.00 | |
| | | | Total: | $5,000.00 | |
| 2/24/2006 | 3/3/2006 | | Principal Payment | | $0.00 |
| | | | Principal: | $492,000.00 | |
| | | | Total: | $492,000.00 | |
| 2/24/2006 | 3/3/2006 | | *** Backdate: Accrual Decrease | | $0.00 |
| | | | Total: | $717.50 | |
| 2/24/2006 | 3/3/2006 | | Interest Payment | | $0.00 |
| | | | Interest: | $7,744.36 | |
| | | | Total: | $7,744.36 | |
| 3/2/2006 | 3/3/2006 | | *** Backdate: Accrual Decrease | | $0.00 |
| | | | Total: | $102.50 | |
| 3/2/2006 | 3/3/2006 | | *** Reversal: Accrual Increase | | $0.00 |
| | | | Total: | $102.50 | |
| 3/3/2006 | 3/3/2006 | | Payoff | | $0.00 |
| | | | Total: | $0.00 | |

# EXHIBIT 3

First Community Bank, N. A.       Account Snapshot               03/01/2012
P.O. Box 2030                                                     STO53000
1151 W. Hwy 77
San Benito, TX 78586                    Branch:        2 - Harlingen - Main
(956) 399-3331                          Phone:         (956) 428-4100
                                        Fax:           (956) 412-7337

                                        Date:          03/01/2012
    Jon Christian Amberson                 Period:       02/24/2006 to 12/04/2006
    2135 East Hildebrand Ave                      284 (Days)
    San Antonio, TX 78209

                                        Personal Banker:   RICKY LEAL

---

ACCOUNT #: CL - 0000111646      Commercial - Variable
                               QIO-TSC-37-220111

Transaction Information

| Effective Date | Entered Date | CK # | Description | Amount | Balance |
|---|---|---|---|---|---|
| 2/24/2006 | 3/3/2006 | | Original Rate: 7.500 % | | $0.00 |
| | | | Total: | $0.00 | |
| 2/24/2006 | 3/3/2006 | | Loan Proceeds | | $0.00 |
| | | | Total: | $0.00 | |
| 2/24/2006 | 3/3/2006 | | Loan Advance | | $492,000.00 |
| | | | Principal: | $492,000.00 | |
| | | | Total: | $492,000.00 | |
| 2/24/2006 | 3/3/2006 | | *** Backdate: Accrual Increase | | $492,000.00 |
| | | | Total: | $717.50 | |
| 3/3/2006 | 3/3/2006 | | Loan Advance | | $527,000.00 |
| | | | Principal: | $35,000.00 | |
| | | | Total: | $35,000.00 | |
| 3/10/2006 | 3/10/2006 | | DDA | | $542,000.00 |
| | | | Principal: | $15,000.00 | |
| | | | Total: | $15,000.00 | |
| 3/20/2006 | 3/20/2006 | | Loan Advance | | $562,000.00 |
| | | | Principal: | $20,000.00 | |
| | | | Total: | $20,000.00 | |
| 3/28/2006 | 3/30/2006 | | Rate Change: 7.500 % To 7.750 % | | $562,000.00 |
| | | | Total: | $0.00 | |
| 3/29/2006 | 3/29/2006 | | Loan Advance | | $577,000.00 |
| | | | Principal: | $15,000.00 | |
| | | | Total: | $15,000.00 | |
| 3/30/2006 | 3/30/2006 | | *** Backdate Rate: Accrual Increase | | $577,000.00 |
| | | | Total: | $7.91 | |
| 3/31/2006 | 3/31/2006 | | Loan Advance | | $582,000.00 |
| | | | Principal: | $5,000.00 | |
| | | | Total: | $5,000.00 | |
| 4/7/2006 | 4/7/2006 | | Loan Advance | | $592,000.00 |
| | | | Principal: | $10,000.00 | |
| | | | Total: | $10,000.00 | |
| 4/10/2006 | 4/10/2006 | | Loan Advance | | $627,000.00 |
| | | | Principal: | $35,000.00 | |
| | | | Total: | $35,000.00 | |
| 5/10/2006 | 5/10/2006 | | Rate Change: 7.750 % To 8.000 % | | $627,000.00 |

```
ACCOUNT #: CL - 0000111646        Commercial - Variable
                                  QIO-TSC-37-220111
```

Transaction Information

| Effective Date | Entered Date | CK # | Description | Amount | Balance |
|---|---|---|---|---|---|
| | | | Total: | $0.00 | |
| 6/5/2006 | 6/5/2006 | | Interest Payment | | $627,000.00 |
| | | | Interest: | $11,180.70 | |
| | | | Total: | $11,180.70 | |
| 6/28/2006 | 6/28/2006 | | Loan Advance | | $662,000.00 |
| | | | Principal: | $35,000.00 | |
| | | | Total: | $35,000.00 | |
| 6/29/2006 | 6/29/2006 | | Rate Change: 8.000 % To 8.250 % | | $662,000.00 |
| | | | Total: | $0.00 | |
| 7/7/2006 | 7/7/2006 | | Loan Advance | | $702,000.00 |
| | | | Principal: | $40,000.00 | |
| | | | Total: | $40,000.00 | |
| 7/31/2006 | 7/31/2006 | | Loan Advance | | $727,000.00 |
| | | | Principal: | $25,000.00 | |
| | | | Total: | $25,000.00 | |
| 7/31/2006 | 7/31/2006 | | Loan Advance | | $747,000.00 |
| | | | Principal: | $20,000.00 | |
| | | | Total: | $20,000.00 | |
| 9/8/2006 | 9/8/2006 | | Payment - Auto Split | | $747,000.00 |
| | | | Interest: | $14,206.95 | |
| | | | Total: | $14,206.95 | |
| 11/20/2006 | 11/20/2006 | | Payment - Auto Split | | $747,000.00 |
| | | | Interest: | $15,749.25 | |
| | | | Total: | $15,749.25 | |
| 12/4/2006 | 12/7/2006 | | Payoff | | $747,000.00 |
| | | | Principal: | $747,000.00 | |
| | | | Interest: | $1,711.88 | |
| | | | Total: | $748,711.87 | |
| 12/4/2006 | 12/7/2006 | | *** Payoff Variance (under) at Payoff | | $747,000.00 |
| | | | Total: | $0.01 | |
| 12/4/2006 | 12/7/2006 | | *** Interest Payment at Payoff | | $747,000.00 |
| | | | Interest: | $1,711.87 | |
| | | | Total: | $1,711.87 | |
| 12/4/2006 | 12/7/2006 | | *** Principal Payment at Payoff | | $0.00 |
| | | | Principal: | $747,000.00 | |
| | | | Total: | $747,000.00 | |
| 12/4/2006 | 12/7/2006 | | *** Backdate: Accrual Decrease | | $0.00 |
| | | | Total: | $513.56 | |

Electronically Filed
6/21/2018 1:52 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

**FLECKMAN & McGLYNN, PLLC**

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

June 21, 2018

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
Edinburg, Texas  78539

> Re:   *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Ms. Hinojosa:

I will be on vacation from June 30, 2018 through July 6, 2018, and from August 21, 2018 through August 26, 2018.  I respectfully request that no hearings be scheduled in or related to this action during the time I am on vacation.

Thank you for your kind attention to this matter.

Very truly yours,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

SAF/trr

cc:   Mr. David M. Prichard
      Mr. J.A. "Tony" Canales
      Mr. Charles C. Murray
      Mr. Francisco J. Rodriguez

Vacation Notice

Electronically Filed
6/25/2018 8:39 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## THE AMBERSON PARTIES' REPLY TO
## THE MCALLEN PARTIES' SUPPLEMENTAL RESPONSE

Plaintiff Jon Christian Amberson P.C. (the "*Amberson Firm*"), and Third-Party Defendants Jon Christian Amberson ("*Amberson*") and Amberson Natural Resources LLC ("*ANR LLC*") (collectively, the "*Amberson Parties*") submit this reply to the McAllen Parties' Supplement to their Response to the Amberson Parties' Motion for Reconsideration or Clarification ("*Supplement*").

## A.  **INTRODUCTION**

1.      The Supplement conflates two distinct issues and gets both wrong: First, McAllen fails to present *any* evidence that the *Amberson Firm* (which prosecuted the Forest Oil litigation under the 2005 Engagement Agreement) was the alter ego of *ANR LLC* or that the Amberson

Electronically Filed
6/25/2018 8:39 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Firm had anything to do with the Cannon Grove transaction.  As noted below, it is undisputed that the $4.5 million wired by McAllen in March 2009 to fund the 1031 exchange did indeed go right back to McAllen, not to Amberson, not to the Amberson Firm, and not to fund the Forest Oil litigation.  Despite all of their efforts to confuse the record, the 2005 Engagement Letter remains clear that the subject of the arbitration clause is the ***legal services*** performed in the Forest Oil litigation itself and the legal fees in that case.  On this ground alone, the Supplement fails to state any valid basis for arbitration of the independent Cannon Grove claims.

2.      Second, as to the purported alter ego relationship between Amberson and each of his entities, the Supplement is woefully deficient.  Having cited this controlling legal standard, McAllen simply proceeds to ignore it: "[T]he party seeking arbitration must introduce evidence supporting ***a finding*** of alter ego." *Glassell Prod. Co. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 84-85 (Tex. App.—Texarkana 2014, no pet.) (emphasis added).  Not only does the Supplement not present any evidence that would justify a finding of alter ego between the Amberson Firm and ANR LLC, it also does not present any evidence of an alter ego relationship between (i) Amberson and ANR LLC or (ii) Amberson and his firm.  Because the Supplement focuses on the alter ego exception to the prohibition against compelling arbitration against a non-signatory, this response addresses McAllen's unfounded contentions as to alter ego.

## B.  ARGUMENT

3.      ***Amberson did not commingle funds with ANR LLC***.[1]   McAllen completely ignores the Cannon Grove transaction itself: In 2009 McAllen had his ***own*** attorney, Ben

---

[1] *Glassell* meant what it said. It is not enough for McAllen to cite facts that he contends supports an *argument* of alter ego.  The evidence must support a finding that an alter ego relationship exists. *Id.* at 85. McAllen's Supplement (p.3) cites five factors that courts consider in determining whether an alter ego relationship exists to justify compelling a non-signatory to arbitrate.  As discussed below, McAllen provides no competent evidence to support any of those factors.

The Amberson Parties' Reply to Supplemental Response                                          2

Electronically Filed
6/25/2018 8:39 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

McCaleb, form ANR LLC to serve as the 1031 exchange party.  McAllen did not wire any funds to Amberson; the money sent to ANR LLC went directly into an escrow account at the title company for the benefit of ANR LLC and right back to McAllen. *See* Amberson's authentication below of **Exhibits A and B** attached (emails from McAllen's assistant, Vicki Rangel), ~~and~~ **Exhibit C** attached (consisting of the wiring instructions as to "Amberson Natural Resources, LLC—$4,500,000"), and **Exhibit D** attached (ANR LLC's account statement showing receipt and disbursement of the $4.5 million); *see also* Amberson's first Declaration dated 10/27/17 at ¶ 12.  The $4.5 million was never comingled with any assets of Amberson, with those of the Amberson Firm, or used to fund the Forest Oil litigation.

4.      Likewise, McAllen's other contentions do not withstand scrutiny: It is neither surprising nor sinister that Amberson's March 11, 2009 letter did not name "ANR LLC" as the exchange party.  McAllen's own attorney had not yet formed ANR LLC, and did not form it until six days *after* Amberson's March 11 letter. *See e.g.,* Exhibit 1 (ANR LLC's Certificate of Formation dated March 17, 2009) and Exhibit 3 (ANR LLC's Company Agreement dated March 17, 2009), both attached to Amberson's previously filed Second Supplemental Declaration dated 12/22/17.

5.      **McAllen's own Supplement demonstrates that ANR LLC was adequately capitalized.**   The "inadequate capitalization" argument advanced by McAllen is also devoid of merit.  McAllen's *own* attorney set the capital requirement at only $100 when he drafted ANR LLC's company agreement. *See* Amberson's Second Supplemental Declaration at ¶7 and Exhibit 3 (and its own "Exhibit A") to same.  The Texas Business Organization Code imposes no specific capitalization requirement upon a Texas limited liability company.  And the Supreme Court has made it clear that lack of capital is itself not a sufficient basis to disregard the

Electronically Filed
6/25/2018 8:39 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

corporate shield. *See Torregrossa v. Szelc*, 603 S.W.2d 803, 804–05 (Tex. 1980) (minimal capital constitutes *no* evidence of alter ego where "there is no showing that this was an unfair device designed to achieve an inequitable result."). But here, McAllen's argument is even more absurd: ANR LLC had $4.5 million of capital, exactly the amount that it needed to consummate the purchase of the interest in CGI LLC, so the argument of inadequate capitalization is refuted by the very consummation of the exchange.

6.    **_Amberson did not disregard the separate existence of ANR LLC_**.  There is also no evidence that Amberson disregarded the *separateness* of ANR LLC.  McAllen has produced not one iota of evidence to suggest that ANR LLC's liabilities exceeded $4.5 million in March 2009, or that Amberson or the Amberson Firm took a dime of that capital out of the company. The Supreme Court has repeatedly held that Texas entities are presumed to be separate. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002); *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) (more is required than "unity of financial interest, ownership and control for a court to treat a principal of a corporation as an alter ego for the purpose of making the principal liable."). Indeed, it is nonsensical to contend that Amberson is the alter ego of ANR LLC when that entity was created by McAllen's own attorney for the very purpose of consummating the 1031 exchange, which is exactly what ANR LLC did.

7.    **_The Amberson Firm is not a mere alter ego of Chris Amberson._**[2]  The stringent alter ego test requires proof that the entity was formed or used for the purpose of perpetrating a fraud. TEX. BUS. ORGS. CODE § 21.223(b). As set forth in Amberson's previously filed Second Supplemental Declaration, McAllen was fully aware that the Amberson Firm was operated as a

---

[2] To preserve error as to McAllen's supposed "evidence," the Amberson Parties object to the unauthenticated materials included in McAllen's Supplement (the snapshots on pages 7 and 8 and also Exhibits 1-3 attached to the Supplement), and the Supplement's assertions based upon them.

Electronically Filed
6/25/2018 8:39 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

law firm: indeed he signed the firm's 2005 Engagement Agreement to represent him in the Forest Oil litigation, and it indicates on its face that the firm is a professional corporation.  And it is self-evident that the law firm does indeed practice law with a staff and offices, and is not a mere alter ego of Amberson individually, since the Amberson Firm appeared in the Forest Oil litigation at all levels of the judicial system, obtained an arbitration judgment for McAllen worth at least $37 million, and successfully defended that judgment before the Supreme Court.  Not only has McAllen failed to present evidence that Amberson disregarded the corporate existence of Amberson Firm, there is not even an attempt to show that the *law firm* was an alter ego of *ANR LLC*.  Equally important to the issue before this Court, McAllen's submissions contain no evidence that the Amberson Firm had any involvement in the Cannon Grove transaction (Amberson's prior declarations confirm that it did not) or ever comingled funds with ANR LLC (*see* Amberson's Second Supplemental Declaration, ¶10).

8.      The Supplement *alleges* that Amberson and his law firm imposed spurious charges and financial obligations on McAllen under the pretext that these related to the Forest Oil litigation, but Amberson previously *agreed to arbitrate* these disputes (*see* Motion to Refer and Retain ¶14, filed on 10/30/17); they have nothing to do with the 2009 Cannon Grove exchange.  There is not even a whisper of evidence in the record that the Forest Oil litigation involved the Cannon Grove property, that ANR LLC was ever involved in the litigation, or that the *Amberson Firm* had anything whatsoever to do with either Cannon Grove or ANR LLC.

9.      In sum, McAllen has not shown that the Cannon Grove claims are subject to the clear provisions of the Amberson Firm's arbitration agreement.  The Amberson Parties therefore respectfully request that the Court reconsider its April 23, 2018 Order, and retain the Cannon

Electronically Filed
6/25/2018 8:39 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Grove claims for judicial disposition as required by the Supreme Court's recent holding in *Jody James Farms, JV vs. The Altman Group, Inc. and Laurie Diaz*, 506 S.W.3d 595 (Tex. 2018).

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
    Steven A. Fleckman

**LAW OFFICE OF FRANCISCO J. RODRIGUEZ**
1111 West Nolana Ave., Suite A
McAllen Texas  78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415
E-mail: frankr@mcallenlawfirm.com
      danielle@mcallenlawfirm.com
      jared.clark@mcallenlawfirm.com

FRANCISCO J. RODRIGUEZ
State Bar No. 17145800
DANIELLE C. RODRIGUEZ
State Bar No. 24075952
JARED A. CLARK
State Bar No. 24101626

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
6/25/2018 8:39 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

## VERIFICATION

State of Texas
County of Bexar

I, Jon Christian Amberson, being duly sworn, declare that the fact statements made in paragraph 3 of the foregoing Reply are true to my personal knowledge, and the documents attached hereto as **Exhibits A, B and C** confirming the wiring arrangements between Mr. McAllen's office, Mr. McAllen's attorney (Ben McCaleb), and Leslie Eanes at LandTitleUSA in connection with the 2009 Cannon Grove exchange transaction, and **Exhibit D** reflecting ANR LLC's receipt and disbursement of the $4.5 million, are true and complete copies of the documents they purport to be.

I submit this declaration in lieu of an affidavit as authorized by Tex. Civ. Prac. & Rem. Code § 132.001. My date of birth is December 24, 1956, and my current address is 2135 East Hildebrand, San Antonio, Texas 78209.

Jon Christian Amberson

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on June 22, 2018.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

*/s/ Steven A. Fleckman*
Steven A. Fleckman

## Ben McCaleb

**From:** Vicki <vicki@mcallenranch.com>
**Sent:** Wednesday, March 18, 2009 2:37 PM
**To:** 'Ben McCaleb'
**Subject:** wire status

Ben,

Funds are wired to ANR, LLC & RS Co. I have received confirmations. I need wire instructions from the title company for tomorrow.

Vicki Rangel



EXHIBIT

4

1

## Ben McCaleb

**From:** Vicki <vicki@mcallenranch.com>
**Sent:** Wednesday, March 18, 2009 11:07 AM
**To:** 'Ben McCaleb'
**Subject:** Info received

Ben,

Thanks for the routing info for ANR, LLC. I still don't have the money in Jim's account. We probably won't see it in until later in the day. I will advise you when I have the funds.

Am I going to wire out to ANR, LLC & Ranch Specialties in the morning or are we shooting for later today?

Vicki Rangel
James A. McAllen office



1



## Ben McCaleb

| | |
|---|---|
| **From:** | Ben McCaleb <bmccaleb@cbmccaleb-law.com> |
| **Sent:** | Wednesday, March 18, 2009 5:12 PM |
| **To:** | chris@ambersonpc.com'; 'Vicki'; 'jim@mcallenranch.com' |
| **Cc:** | 'Lesslie L. Eanes'; 'Melissa N. Mikulik'; 'stan@exstra1031.com' |
| **Subject:** | FW: James A. McAllen --RELATED 1031 EXCHANGE |
| **Attachments:** | IOLTA - FNB Acct. Wiring Instructions.doc |

Chris and Jim—

The funds for the purchase of your respective entity's interests in **ExTra-McAllen LLC** should be wired as early as possible in the morning into the escrow account shown in the attached Wire Transfer Instructions. The amounts are as follows:

- **Amberson Natural Resources, LLC** ---$4,500,000
- **Ranch Specialties Company** ---$500,000

If you have any questions or problems with the wire, please contact the escrow facilitator, **Lesslie L. Eanes**, as follows:

**Lesslie L. Eanes**
*Attorney at Law*
315 E. McIntyre
Edinburg Texas 78541
Phone: 956-383-1656
Mobile: 956-369-0340
Fax: 956-380-0428
Email: LesslieE@landtitleusa.com



Please give me a call with any questions.

*C. Benjamin McCaleb*
*C. Benjamin McCaleb, P. C.*
*2135 E. Hildebrand Avenue*
*San Antonio, Texas 78209*
*tel: 210-736-2222*
*fax: 210-881-0200*
*bmccaleb@cbmccaleb-law.com*

Board Certified--Commercial Real Estate Law
Texas Board of Legal Specialization

**From:** Lesslie L. Eanes [mailto:LesslieE@landtitleusa.com]
**Sent:** Wednesday, March 18, 2009 9:21 AM
**To:** Ben McCaleb
**Cc:** Melissa N. Mikulik
**Subject:** RE: James A. McAllen --RELATED 1031 EXCHANGE



EXHIBIT

1

Wiring instructions are attached.

Thanks!

## WIRING INSTRUCTIONS

**First National Bank**
**ABA NO. ▮▮▮1415**

**CREDIT TO ACCOUNT NO. ▮▮▮4433**

**IN THE NAME OF: Lesslie L. Eanes Attorney at Law**
**IOLTA FOUNDATION TRUST ACCOUNT**

**REFERENCE TO James A. McAllen**

**PLEASE FAX CONFIRMATION WHEN WIRE IS RECEIVED TO**
**956-384-0428**

315 E. McIntyre  •  Edinburg, Texas 78541  •  (956) 383-1656

Date  3/31/09                Page   1
Account Number          ███3891
Enclosures                       1

Amberson Natural Resources LLC
2135 E Hildebrand Ave
San Antonio TX 78209-6332

"Too much paper?? Enroll for Combined Statements to have all your accounts arrive
within one statement. You'll have less paper and enjoy more convenience by
receiving everything together. Ask your banker to initiate this FREE feature!"

****************************** Checking Account  ******************************

Account Title: Amberson Natural Resources LLC

Budget Commercial                          Number of Enclosures                1
Account Number          ███3891           Statement Dates  3/18/09 thru  3/31/09
Previous Balance                   .00    Number of Days this Statement      14
    2 Deposits/Credits    4,500,500.00    Average Daily Balance       321,827.83
    3 Checks/Debits       4,500,117.19    Average Collected           321,827.83
Service Charge                     .00
Interest Paid                      .00
Current Balance               382.81

------------------------- Deposits and Other Credits -------------------------
Date   Description             Number              Amount
3/18   Wire Transfer Credit--JAMES A MCALLEN                    4,500,000.00
       SPECIAL ACCOUNT, 33920 FM 1017
       LINN, TX 78563-9605
3/19   Deposit                                                        500.00

------------------------- Other Items - Charges ------------------------------
Date    Description            Number              Amount
3/19   Wire Transfer Debit--LESLIE L EANES ATTORNEY AT LAW     4,500,000.00-
       ███1415, ███4433
       IOLTA FOUNDATION TRUST ACCOUNT, NONE GIVEN
       FIRST EDINBURG, EDINBURG              TX
       REFERENCE TO JAMES A MCALLEN
3/19   Wire Transfer Fee                                             15.00-
3/25   BUS PRODS  DELUXE BUS SYS.--CCD                            102.19-

------------------------------ Daily Balance ---------------------------------
Date      Balance      Date       Balance      Date       Balance
  3/18   4,500,000.00   3/19        485.00    3/25        382.81

***  End of Statement  ***


EXHIBIT
D

Electronically Filed
7/9/2018 3:45 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER MODIFYING APRIL 23, 2018 ORDER</u>

The Court, having considered the Motion for Reconsideration or, in the alternative, for

Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian

Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"),

finds that the Motion should be granted as provided below.  It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it

is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove

claims, are referred to the presiding judge, the Hon. Mario Ramirez of the 332nd District Court, for

Order Granting Motion for Reconsideration In Part. 1

Electronically Filed
7/9/2018 3:45 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

the appointment of an arbitrator to arbitrate the asserted claims except the Cannon Grove claims. It is further

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, the Cannon Grove claims are referred to mediation with the Hon. Daniel Hernandez  within the next

_____ days.

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of July, 2018.


_____
JUDGE PRESIDING


COPIES TO:

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com


Order Granting Motion for Reconsideration In Part. 2

Electronically Filed
7/17/2018 9:55 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## ORDER DENYING PLAINTIFF'S AND
## THIRD-PARTY DEFENDANTS' MOTION
## FOR RECONSIDERATION OR CLARIFICATION

On this day the Court considered JON CHRISTIAN AMBERSON's, JON CHRISTIAN AMBERSON, P.C.'s, and AMBERSON NATURAL RESOURCES LLC's (collectively the "AMBERSON PARTIES") Motion for Reconsideration or Clarification of the Court's April 23, 2018 Order. After considering the motion and the response and supplement of the MCALLEN PARTIES, the Court rules as follows:

IT IS ORDERED that the AMBERSON PARTIES' Motion for Reconsideration or Clarification of the April 23, 2018 Order is DENIED.

1

155732

Electronically Filed
7/17/2018 9:55 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS FURTHER ORDERED that all claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the parties' arbitration provision.

IT IS FURTHER ORDERED that this matter is temporarily referred to District Judge Mario E. Ramirez, Jr., of the 332nd District Court, Hidalgo County, solely for the purpose of appointing an arbitrator for this matter pursuant to the arbitration provision in the Fee Agreements of January 25, 2005 between Jon Christian Amberson, P.C. and James A. McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust Partnership and John R. Willis Management Partnership Ltd. Following the appointment of the arbitrator by Judge Ramirez, this Court will continue to preside over this matter.

IT IS FURTHER ORDERED that the parties shall mediate the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, with attorney Daniel Hernandez, within forty-five (45) days of this order.

SIGNED this _____ day of _____ 2018.

_____
JUDGE LUIS M. SINGLETERRY

2

155732

Electronically Filed
7/17/2018 9:55 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM ONLY:**

_____  _____

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Francisco J. Rodriguez
Law Office of Francisco J. Rodriguez
111 West Nolana Ave., Suite A
McAllen, Texas 78504

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

155732

Electronically Filed
7/17/2018 9:55 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**

_____ _____ _____

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

4

155732

Electronically Filed
7/17/2018 11:01 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios          Ricardo Contreras          Adriana "Audry" Garcia          Sabrina S. Guerra          Oneida Lamas          Stephanie Palacios          Aida Villarreal
CHIEF DEPUTY          CHIEF OF ADMINISTRATION          ASSISTANT CHIEF DEPUTY          SENIOR ACCOUNTANT          DEPUTY DISTRICT CLERK SUPERVISOR          BUDGET AND PROCUREMENT          CHIEF OF APPEALS
                              AND PUBLIC INFORMATION                                                                                                                                          OFFICER

Electronically Filed
7/9/2018 3:45 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER MODIFYING APRIL 23, 2018 ORDER

The Court, having considered the Motion for Reconsideration or, in the alternative, for Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC (collectively the "*Amberson Parties*"), finds that the Motion should be granted as provided below.  It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove claims, are referred to the presiding judge, the Hon. Mario Ramirez of the 332nd District Court, for

Order Granting Motion for Reconsideration In Part. 1

Electronically Filed
7/9/2018 3:45 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

the appointment of an arbitrator to arbitrate the asserted claims except the Cannon Grove claims.

It is further

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, the Cannon Grove claims are referred to mediation with the Hon. Daniel Hernandez within the next

_____ days.

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of July, 2018.


_____
JUDGE PRESIDING


COPIES TO:

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com


Order Granting Motion for Reconsideration In Part. 2

Electronically Filed
8/3/2018 2:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## CAUSE NO: C-0340-15-A

| | | |
|---|---|---|
| **JON CHRISITAN AMBERSON**<br>*Plaintiff*, | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| | § | |
| **VS**. | § | **92ND JUDICIAL DISTRICT** |
| | § | |
| | § | |
| **JAMES ARGYLE MCALLEN,** | § | |
| **FRANCES MCALLEN, EL RUCIO** | § | |
| **LAND AND CATTLE COMPANY,** | § | |
| **INC., SAN JUANITO LAND** | § | |
| **PARTNERSHIP, LTD AND MCALLEN** | § | |
| **TRUST PARTNERSHIP, LTD.** | § | |
| *Defendants*, | § | |
| | § | |
| **VS**. | § | |
| | § | |
| **JON CHRISITAN AMBERSON AND** | § | |
| **AMBERSON NATURAL RESOURCES** | § | |
| *Third-Parties*. | § | **HIDALGO COUNTY, TEXAS** |

## MEDIATION STATUS REPORT

1. Mediation was ordered and completed on August 1, 2018.

2. All parties were present, along with respective counsel and Defense counsel.

3. This case reached an impasse.

Date:        August 1, 2018.
Mediator:    Daniel M.L. Hernandez

Electronically Filed
8/3/2018 2:29 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Respectfully Submitted,

Daniel M.L. Hernandez
4841 S. Jackson Rd.
Edinburg, Texas 78539
Tel: (956) 369-4480
Fax: (979) 822-6001

_____
Daniel M.L. Hernandez
efiling@hdzfirm.com
State Bar No.: 24034479
**MEDIATOR**

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

### ORDER DENYING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION

On this day the Court considered JON CHRISTIAN AMBERSON's, JON CHRISTIAN AMBERSON, P.C.'s, and AMBERSON NATURAL RESOURCES LLC's (collectively the "AMBERSON PARTIES") Motion for Reconsideration or Clarification of the Court's April 23, 2018 Order. After considering the motion and the response and supplement of the MCALLEN PARTIES, the Court rules as follows:

IT IS ORDERED that the AMBERSON PARTIES' Motion for Reconsideration or Clarification of the April 23, 2018 Order is DENIED.

1

155732

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS FURTHER ORDERED that all claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the parties' arbitration provision.

IT IS FURTHER ORDERED that this matter is temporarily referred to District Judge Mario E. Ramirez, Jr., of the 332nd District Court, Hidalgo County, solely for the purpose of appointing an arbitrator for this matter pursuant to the arbitration provision in the Fee Agreements of January 25, 2005 between Jon Christian Amberson, P.C. and James A. McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust Partnership and John R. Willis Management Partnership Ltd.  Following the appointment of the arbitrator by Judge Ramirez, this Court will continue to preside over this matter.

SIGNED this _____ day of _____ 2018.


_____
JUDGE LUIS M. SINGLETERRY

2

155732

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM ONLY:**

_____

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Francisco J. Rodriguez
Law Office of Francisco J. Rodriguez
111 West Nolana Ave., Suite A
McAllen, Texas 78504

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

155732

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**


_____

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

155732

Electronically Filed
9/4/2018 4:33 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER MODIFYING APRIL 23, 2018 ORDER

The Court, having considered the Motion for Reconsideration or, in the alternative, for Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"), finds that the Motion should be granted as provided below.  It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove claims, are referred to arbitration; it is further

Electronically Filed
9/4/2018 4:33 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, this action is stayed pending completion of the arbitration subject, however, to further order of the Court.

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of September, 2018.


_____
JUDGE PRESIDING


**COPIES TO:**

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
9/4/2018 10:29 AM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

**FLECKMAN & McGLYNN, PLLC**

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

September 4, 2018

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
Edinburg, Texas  78539

Re:   *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Ms. Hinojosa:

I will be on vacation from September 12, 2018 through September 15, 2018.  I respectfully request that no hearings be scheduled in or related to this action during the time I am on vacation.

Thank you for your kind attention to this matter.

Very truly yours,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

SAF/trr

cc:   Mr. David M. Prichard
Mr. J.A. "Tony" Canales
Mr. Charles C. Murray
Mr. Francisco J. Rodriguez

Vacation Notice

Electronically Filed
9/5/2018 11:33 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

| Nilda Palacios | Ricardo Contreras | Adriana "Audry" Garcia | Sabrina S. Guerra | Oneida Lamas | Stephanie Palacios | Aida Villarreal |
| CHIEF DEPUTY | CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION | ASSISTANT CHIEF DEPUTY | SENIOR ACCOUNTANT | DEPUTY DISTRICT CLERK SUPERVISOR | BUDGET AND PROCUREMENT OFFICER | CHIEF OF APPEALS |

Electronically Filed
9/4/2018 4:33 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER MODIFYING APRIL 23, 2018 ORDER</u>

The Court, having considered the Motion for Reconsideration or, in the alternative, for Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"), finds that the Motion should be granted as provided below. It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove claims, are referred to arbitration; it is further

Electronically Filed
9/4/2018 4:33 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

ORDERED that, subject to the arbitration referral and appointment of the arbitrator, this action is stayed pending completion of the arbitration subject, however, to further order of the Court.

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of September, 2018.


_____
JUDGE PRESIDING


**COPIES TO:**

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com

Electronically Filed
9/24/2018 1:41 PM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER MODIFYING APRIL 23, 2018 ORDER</u>

The Court, having considered the Motion for Reconsideration or, in the alternative, for

Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian

Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"),

finds that the Motion should be granted as provided below.  It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it

is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove

claims, are referred to the Local Administrative Presiding Judge, the Hon. Mario Ramirez of the

Electronically Filed
9/24/2018 1:41 PM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

332nd District Court, for the appointment of an arbitrator to arbitrate the asserted claims except the

Cannon Grove claims.  It is further

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of  September, 2018.


_____

JUDGE PRESIDING


COPIES TO:

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com


Order Granting Motion for Reconsideration In Part. 2

Electronically Filed
9/24/2018 1:58 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez





# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios     Ricardo Contreras     Adriana "Audry" Garcia     Sabrina S. Guerra     Oneida Lamas     Stephanie Palacios     Aida Villarreal
CHIEF DEPUTY      CHIEF OF ADMINISTRATION      ASSISTANT CHIEF DEPUTY      SENIOR ACCOUNTANT      DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                  AND PUBLIC INFORMATION                                                                                                OFFICER

Electronically Filed
9/24/2018 1:41 PM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER MODIFYING APRIL 23, 2018 ORDER

The Court, having considered the Motion for Reconsideration or, in the alternative, for

Clarification of the Court's April 23, 2018 Order filed by Jon Christian Amberson, Jon Christian

Amberson, P.C., and Amberson Natural Resources LLC (collectively the "***Amberson Parties***"),

finds that the Motion should be granted as provided below.  It is therefore

ORDERED that the Court will retain the Cannon Grove claims for judicial disposition; it

is further

ORDERED that all claims previously asserted in this action, other than the Cannon Grove

claims, are referred to the Local Administrative Presiding Judge, the Hon. Mario Ramirez of the

Electronically Filed
9/24/2018 1:41 PM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios

332nd District Court, for the appointment of an arbitrator to arbitrate the asserted claims except the

Cannon Grove claims.  It is further

This Order supersedes the Court's April 23, 2018 Order in this action.

SIGNED this _____ day of September, 2018.


_____

JUDGE PRESIDING


COPIES TO:

Francisco J. Rodriguez
frankr@mcallenlawfirm.com, danielle@mcallenlawfirm.com, jared.clark@mcallenlawfirm.com
sonia@mcallenlawfirm.com, aida@mcallenlawfirm.com

Jon Christian Amberson
chris@ambersonpc.com, larissa@ambersonpc.com

Steven A. Fleckman
fleckman@fleckman.com, amckeon@fleckman.com, zwolfe@fleckman.com

Charles Murray
ccmurray@atlashall.com

David M. Prichard
dprichard@prichardyoungllp.com

J.A. "Tony" Canales
tonycanales@canalessimonson.com


Order Granting Motion for Reconsideration In Part. 2

Electronically Filed
10/3/2018 3:41 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios      Ricardo Contreras      Adriana "Audry" Garcia      Sabrina S. Guerra      Oneida Lamas      Stephanie Palacios      Aida Villarreal
CHIEF DEPUTY      CHIEF OF ADMINISTRATION      ASSISTANT CHIEF DEPUTY      SENIOR ACCOUNTANT      DEPUTY DISTRICT CLERK SUPERVISOR      BUDGET AND PROCUREMENT      CHIEF OF APPEALS
                  AND PUBLIC INFORMATION                                                                                                          OFFICER

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## ORDER DENYING PLAINTIFF'S AND
## THIRD-PARTY DEFENDANTS' MOTION
## FOR RECONSIDERATION OR CLARIFICATION

On this day the Court considered JON CHRISTIAN AMBERSON's, JON CHRISTIAN

AMBERSON, P.C.'s, and AMBERSON NATURAL RESOURCES LLC's (collectively the

"AMBERSON PARTIES") Motion for Reconsideration or Clarification of the Court's April 23,

2018 Order. After considering the motion and the response and supplement of the MCALLEN

PARTIES, the Court rules as follows:

IT IS ORDERED that the AMBERSON PARTIES' Motion for Reconsideration or

Clarification of the April 23, 2018 Order is DENIED.

1

155732

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS FURTHER ORDERED that all claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the parties' arbitration provision.

IT IS FURTHER ORDERED that this matter is temporarily referred to District Judge Mario E. Ramirez, Jr., of the 332nd District Court, Hidalgo County, solely for the purpose of appointing an arbitrator for this matter pursuant to the arbitration provision in the Fee Agreements of January 25, 2005 between Jon Christian Amberson, P.C. and James A. McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust Partnership and John R. Willis Management Partnership Ltd. Following the appointment of the arbitrator by Judge Ramirez, this Court will continue to preside over this matter.

SIGNED this _____3rd_____ day of _____October_____ 2018.


_____
JUDGE LUIS M. SINGLETERRY

155732

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM ONLY:**

_____

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Francisco J. Rodriguez
Law Office of Francisco J. Rodriguez
111 West Nolana Ave., Suite A
McAllen, Texas 78504

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

155732

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**

_____

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

155732

Electronically Filed
10/9/2018 12:00 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## **THE AMBERSON PARTIES' RESERVATION OF RIGHTS OF APPEAL**

Plaintiff Jon Christian Amberson P.C., and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (collectively, the "***Amberson Parties***") reserve all rights of appeal from the Court's order referring to arbitration, the non-arbitrable Cannon Grove claims asserted by one or more of the McAllen Parties.

Electronically Filed
10/9/2018 12:00 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

Respectfully Submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Zach Wolfe
State Bar No. 24003193
Email: zwolfe@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By: */s/ Steven A. Fleckman*
    Steven A. Fleckman

**LAW OFFICE OF FRANCISCO J. RODRIGUEZ**
1111 West Nolana Ave., Suite A
McAllen Texas  78504
Telephone: (956) 687-4363
Facsimile: (956) 687-6415
E-mail: frankr@mcallenlawfirm.com
        danielle@mcallenlawfirm.com
        jared.clark@mcallenlawfirm.com

FRANCISCO J. RODRIGUEZ
State Bar No. 17145800
DANIELLE C. RODRIGUEZ
State Bar No. 24075952
JARED A. CLARK
State Bar No. 24101626

**ATTORNEYS FOR PLAINTIFF AND THIRD-PARTY DEFENDANTS**

Electronically Filed
10/9/2018 12:00 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on October 8, 2018.

David M. Prichard
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

/s/ *Steven A. Fleckman*
Steven A. Fleckman

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| V. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## ORDER APPOINTING TOM COLLINS AS ARBITRATOR PURSUANT TO A RULE 11 AGREEMENT

By order of Judge Singleterry dated October 3, 2018, overruling Plaintiff's objection, all claims and defenses asserted in this case have been referred to Judge Mario E. Ramirez, Jr. solely for the purpose of appointing an arbitrator. The parties have now agreed to the appointment of Tom Collins of Austin, Texas as sole arbitrator. *See* October 10, 2018 Rule 11 Agreement, attached hereto as **Exhibit A**.

IT IS THEREFORE ORDERED that Tom Collins is appointed as the arbitrator in this matter.

SIGNED this ___18th___ day of ___October_____ 2018.

1

Order Appointing Arbitrator

Electronically Filed
10/18/2018 1:58 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

JUDGE MARIO E. RAMIREZ, JR.

AGREED AS TO FORM ONLY:

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Francisco J. Rodriguez
Law Office of Francisco J. Rodriguez
111 West Nolana Ave., Suite A
McAllen, Texas 78504

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

Electronically Filed
10/18/2018 1:58 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

AGREED AS TO FORM ONLY:

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

Electronically Filed
10/18/2018 1:58 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



**Exhibit**

**A**



prichard
young

DAVID M. PRICHARD

voice: 210.477.7401
fax: 210.477.7450
dprichard@prichardyoungllp.com

t 210.477.7400
f 210.477.7450
10101 Reunion Place
Suite 600
San Antonio, Texas 78216
prichardyoungllp.com

October 10, 2018

Steven A. Fleckman                                                    *Via Email*
Fleckman & McGlynn, PLLC
515 Congress Avenue, Suite 1800
Austin, TX 78701

> Re:   Cause No. C-0340-15-A; *Jon Christian Amberson v. James Argyle McAllen, et, al.*

## RULE 11 AGREEMENT

Dear Steve:

Further to our communication, I submit this letter as a Rule 11 Agreement reflecting that the parties agree to have Tom Collins serve as the arbitrator for all of the issues in dispute.✱ The parties also agree the arbitration will take place in San Antonio at a mutually agreeable time and location.  If this accurately reflects our agreement, please sign in the space below and return the letter to me.  We will then follow up with an agreed order for the Court to sign appointing Mr. Collins as the arbitrator.  Thank you and call with any questions.

Sincerely,

*David*

David M. Prichard

DMP/ppo/#156517

AGREED:

*Steven A. Fleckman*
Steven Fleckman

*✱ Subject to Amberson parties'
preservation of challenge and
appellate rights as to the
arbitrability vel non of the
Cannon Grove claims.
(SAF)*

Electronically Filed
10/31/2018 1:09 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

# FLECKMAN & McGLYNN, PLLC

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

October 31, 2018

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
Edinburg, Texas  78539

Re:   *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Ms. Hinojosa:

I will be on vacation from December 22, 2018 through January 3, 2019, April 19, 2019 through April 30, 2019, and from May 19, 2019 through May 27, 2019.  I respectfully request that no hearings be scheduled in or related to this action during the time I am on vacation.

Thank you for your kind attention to this matter.

Very truly yours,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

SAF/trr

cc:   Mr. David M. Prichard
      Mr. J.A. "Tony" Canales
      Mr. Charles C. Murray
      Mr. Francisco J. Rodriguez

Vacation Notice

Electronically Filed
4/3/2019 1:22 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

# FLECKMAN & McGLYNN, PLLC

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

April 3, 2019

**VIA ELECTRONIC FILING**

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
Edinburg, Texas  78539

Re:   *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Ms. Hinojosa:

I will be on vacation from April 17, 2019 through May 2, 2019, May 19, 2019 through May 27, 2019, and from September 6, 2019 through September 16, 2019.  I respectfully request that no hearings be scheduled in or related to this action during the time I am on vacation.

Thank you for your kind attention to this matter.

Very truly yours,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

SAF/trr

cc:   Mr. David M. Prichard
      Mr. J.A. "Tony" Canales
      Mr. Francisco J. Rodriguez

Amended Vacation Notice

Electronically Filed
12/5/2019 12:26 PM
Hidalgo County District Clerks
Reviewed By: Jonathan Coronado

**FLECKMAN & McGLYNN, PLLC**

1800 BANK OF AMERICA TOWER
515 CONGRESS AVENUE
AUSTIN, TEXAS 78701-3503

TELEPHONE (512) 476-7900
FACSIMILE (512) 476-7644

December 5, 2019

Ms. Laura Hinojosa
Hidalgo County District Clerk
100 N. Closner
Edinburg, Texas  78539

Re:   *Jon Christian Amberson, P.C. v. James Argyle McAllen, et al., v. Jon Christian Amberson and Amberson Natural Resources, LLC,* Cause No. C-0340-15-A in the 92nd Judicial District Court of Hidalgo County, Texas.

Dear Ms. Hinojosa:

I will be on vacation from December 20, 2019 through January 3, 2020, March 14, 2020 through March 21, 2020, and from May 28, 2020 through June 8, 2020.  I respectfully request that no hearings be scheduled in or related to this action during the time I am on vacation.

Thank you for your kind attention to this matter.

Very truly yours,

*/s/ Steven A. Fleckman*
Steven A. Fleckman
State Bar No. 07118300
Email:  fleckman@fleckman.com

SAF/trr

cc:   Mr. David M. Prichard
      Mr. J.A. "Tony" Canales
      Mr. Charles C. Murray
      Mr. Francisco J. Rodriguez

Vacation Notice

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## THE MCALLEN PARTIES'
## MOTION TO CONFIRM ARBITRATION AWARD

NOW COME Defendants James Argyle McAllen, El Rucio Land and Cattle Company,

Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership (collectively, the

"McAllen Parties") and file this Motion to Confirm Arbitration Award pursuant to Section 171.087

of the Texas Civil Practice and Remedies Code.  The McAllen Parties ask the Court to confirm the

April 30, 2020 arbitration award (the "Award") issued by Arbitrator Tom Collins and to enter a

Final Judgment on that Award.  A proposed form of Final Judgment is attached as Exhibit 1.  The

McAllen Parties show as follows:

1

159760

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

# I.
# **BACKGROUND**

Plaintiff is Jon Christian Amberson P.C.  Defendants are James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership.  Third-Parties are Jon Christian Amberson and Amberson Natural Resources LLC.[1]

Jon Christian Amberson P.C. filed this action on January 23, 2015.

The parties asserted various claims, counterclaims, and claims against third-parties.

Jon Christian Amberson P.C. moved that some claims be referred to arbitration, and the McAllen Parties requested that all claims be referred to arbitration.

On April 23, 2018, the Court referred all the parties' claims to arbitration.

All the parties agreed to have Tom Collins of Austin, Texas serve as the arbitrator (the "Arbitrator").

The Arbitrator conducted the arbitration hearing in San Antonio, Texas.  The hearing concluded on July 26, 2019.  The parties submitted exhibits and witness testimony.

The parties provided two rounds of post-hearing briefing.  The parties submitted their first round of briefing on December 19, 2019, and they submitted their final round of briefing January 24, 2020.

The Arbitrator issued his award on April 30, 2020 (the "Award").  The Arbitrator ruled against Jon Christian Amberson, P.C. on all of its claims.  The Award awarded James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. relief in the form of damages, declaratory relief, and attorneys' fees against Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural

---

[1] Jon Christian Amberson, P.C., Jon Christian Amberson, and Amberson Natural Resources LLC are collectively referred to as the "Amberson Parties" in this motion.

2

159760

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Resources LLC.  The Arbitrator ruled that Jon Christian Amberson, Jon Christian Amberson, P.C.,

and Amberson Natural Resources LLC engaged in a conspiracy.  The Arbitrator ruled that Jon

Christian Amberson, P.C., and Amberson Natural Resources LLC are the alter egos of Jon

Christian Amberson.

The Arbitrator awarded the McAllen Parties the following relief:

1.     JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP, LTD., collectively, the amount of $3,725,700.00 based on their claims asserted in Part II of the Award.

2.     JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN the amount of $3,569,210.13 based on his claims asserted in Parts III and IV of the Award.

3.     The Arbitrator DECLARES in connection with the Part V of the Award, the Cannon Grove transaction, that:

   a.     The $4,500,000.00 that JAMES ARGYLE MCALLEN paid to AMBERSON NATURAL RESOURCES, LLC by wire dated March 18, 2009, was a loan;

   b.     The loan is secured by AMBERSON NATURAL RESOURCES, LLC's 90% interest in Cannon Grove; and

   c.     The loan will be deemed repaid and forgiven upon AMBERSON NATURAL RESOURCES, LLC returning its 90% interest to JAMES ARGYLE MCALLEN.

4.     The Arbitrator ORDERS in connection with Part V of the Award, the Cannon Grove transaction, that JON CHRISTIAN AMBERSON, as the sole owner and decision maker of AMBERSON NATURAL RESOURCES, LLC, shall within thirty (30) days of the date of this Award have AMBERSON NATURAL RESOURCES, LLC return to JAMES ARGYLE MCALLEN all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest).  However, if within thirty (30) days following the date of

3

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

this Award Amberson and ANR contest in state court arbitral jurisdiction over McAllen's Cannon Grove claims, then the directive to transfer the interest within thirty (30) days is stayed pending further order of the court.

5.    Pursuant to and incorporating the parties' Stipulation Regarding Attorneys' Fees, JON CHRISTIAN AMBERSON shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP. LTD., and MCALLEN TRUST PARTNERSHIP, LTD., collectively, as the "prevailing party" in this Award, $2,000.000.00 as reasonable and necessary attorneys' fees. JON CHRISTIAN AMBERSON, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. AMBERSON NATURAL RESOURCES, LLC, is jointly and severally liable for $350,000.00 of the total. The Arbitrator further incorporates the terms of the Stipulation Regarding Attorneys' Fees as to future proceedings that (a) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for proceedings in the District Court to confirm or vacate an award; (b) $75,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for an appeal to the Court of Appeals; (c) $30,000.00 is a reasonable and necessary attorneys' fees, that the prevailing party shall be paid by Amberson, for preparing or responding to a Petition for Review to the Supreme Court of Texas; and (d) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for preparing full briefing on the merits to the Supreme Court of Texas.

6.    JON CHRISTIAN AMBERSON shall pay $51,232.11 to JAMES ARGYLE MCALLEN, such amount being the 50% in Arbitrator fees and expenses paid by MCALLEN to the Arbitrator.

7.    All the above sums ordered paid are payable on or before thirty (30) days from the date of this Award.

8.    Interest on any unpaid amounts shall commence thirty (30) days from the date of this Award until paid at the rate of five percent (5%) per annum, simple interest.

9.    This Award is in full settlement of all claims, counterclaims, third-party claims, and any other claims submitted in this arbitration. All claims for relief not expressly granted herein, including all claims set forth by the parties in their pleadings, in their pre- and post-hearing briefing, or orally at the hearing, are hereby DENIED.[2]

---

[2] The Arbitrator determined that James Argyle McAllen's claims against Jon Christian Amberson and Jon Christian Amberson, P.C., concerning $2,250,000 of certificates of deposit pledged as collateral for Jon Christian Amberson, P.C.'s loan with Jefferson Bank, are not yet ripe for determination because the loan had not yet been defaulted. The

159760

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

*See* Award at 51-53.

## II.
## MOTION TO CONFIRM

Jon Christian Amberson, P.C. sought to compel this dispute based on arbitration provisions that appear in the written fee agreements between the firm and the McAllen Parties. Those arbitration provisions are identical and state: "The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable."

Section 171.087 of the Texas Arbitration Act, "Confirmation of Award" states that "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award." Put differently, confirmation of the award is the "default result" unless a challenge has been or is being considered. *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 18 (Tex. App.—Corpus Christi 2010, no pet.); *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 262 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A party "attempting to vacate an arbitration award labors under a heavy burden" because judicial review is "extraordinarily narrow." *Stieren v. McBroom*, 103 S.W.3d 602, 606 (Tex. App.—San Antonio 2003, pet. denied); *IQ Holdings, Inc. v. Villa D'Este Condo. Owner's Ass'n, Inc.*, 509 S.W.3d 367, 373 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 635 (Tex. App.—Waco 2003, no pet.) (stating "[j]udicial review of arbitration awards is very deferential"); *Prudential Secs., Inc. v. Shoemaker*, 981 S.W.2d 791, 793 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (same).

As of the filing of this motion, the Amberson Parties have not filed a motion to vacate the Award. Moreover, even if a motion to vacate was pending, the Amberson Parties could not carry

---

Arbitrator advised the Court that he is willing to decide these claims if and when Jefferson Bank forecloses on the loan and exercises dominion over the certificates.

159760

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

the "heavy burden" to establish grounds for vacating the award.  Accordingly, the Court should confirm the Award and enter a Final Judgment in favor of the McAllen Parties based on the Award.

### III.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership respectfully request the Court grant this Motion to Confirm Arbitration Award and issue a Final Judgment adopting and confirming the Award.  Defendants further request any additional relief to which they are entitled.

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE
MCALLEN, EL RUCIO LAND AND
CATTLE COMPANY, INC., SAN
JUANITO LAND PARTNERSHIP, LTD.
and MCALLEN TRUST PARTNERSHIP**

159760

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of McAllen Parties' Motion to Confirm Arbitration Award was served on May 14th, 2020 to the following:

Ricardo G. Cedillo
Les J. Strieber III
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, TX 78212

Steven A. Fleckman
Zach Wolfe
Andrew McKeon
FLECKMAN & MCGLYNN, PLLC
Northpoint Centre I
6836 Austin Center Blvd., Suite 270
Austin, Texas 78731

*/s/ David M. Prichard*
David M. Prichard

159760

# EXHIBIT 1

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## **FINAL JUDGMENT**

Plaintiff is Jon Christian Amberson P.C. Defendants are James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership. Third-Parties are Jon Christian Amberson and Amberson Natural Resources LLC.

Jon Christian Amberson P.C. filed this action on January 23, 2015.

The parties asserted various claims, counterclaims, and claims against third-parties.

Jon Christian Amberson P.C. moved that some claims be referred to arbitration, and Defendants requested that all claims be referred to arbitration.

On April 23, 2018, the Court referred all the parties' claims to arbitration.

All the parties agreed to have Tom Collins of Austin, Texas serve as the arbitrator (the "Arbitrator").

1

159759

The Arbitrator conducted the arbitration hearing in San Antonio, Texas. The hearing concluded on July 26, 2019. The parties submitted exhibits and witness testimony.

The parties provided two rounds of post-hearing brief. The parties submitted their first round of briefing on December 19, 2019, and they submitted their final round of briefing January 24, 2020.

The Arbitrator issued his award on April 30, 2020 (the "Award"). The Arbitrator ruled against Jon Christian Amberson, P.C. on all of its claims. The Arbitrator ruled in favor of James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. on their claims including for fraud, breach of fiduciary duty, violations of the Texas Theft Liability Act, conversion, equitable subrogation, unjust enrichment, breach of contract, and declaratory relief. The Arbitrator ruled that Jon Christian Amberson, Jon Christian Amberson, P.C. and Amberson Natural Resources LLC engaged in a conspiracy. The Arbitrator ruled that Jon Christian Amberson, P.C. and Amberson Natural Resources LLC are the alter egos of Jon Christian Amberson. The Award awarded James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. relief in the form of damages, declaratory relief, and attorneys' fees against Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC.

James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. filed a Motion to Confirm the Award on May 14, 2020. The Court held a hearing on the motion and confirmed the Award in all respects.

The Court incorporates by reference, for all purposes, the Award and all of the Court's other prior rulings. The Court determines that James Argyle McAllen, El Rucio Land and Cattle

2

Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. are

entitled to relief, as set forth in the Award, as follows:

1.   JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP, LTD., collectively, the amount of $3,725,700.00 based on their claims asserted in Part II of the Award.

2.   JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN the amount of $3,569,210.13 based on his claims asserted in Parts III and IV of the Award.

3.   The Arbitrator DECLARES in connection with the Part V of the Award, the Cannon Grove transaction that:

a.   The $4,500,000.00 that JAMES ARGYLE MCALLEN paid to AMBERSON NATURAL RESOURCES, LLC by wire dated March 18, 2009, was a loan;

b.   The loan is secured by AMBERSON NATURAL RESOURCES, LLC's 90% interest in Cannon Grove; and

c.   The loan will be deemed repaid and forgiven upon AMBERSON NATURAL RESOURCES, LLC returning its 90% interest to JAMES ARGYLE MCALLEN.

4.   The Arbitrator ORDERS in connection with Part V of the Award, the Cannon Grove transaction, that JON CHRISTIAN AMBERSON, as the sole owner and decision maker of AMBERSON NATURAL RESOURCES, LLC, shall within thirty (30) days of the date of this Award have AMBERSON NATURAL RESOURCES, LLC return to JAMES ARGYLE MCALLEN all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest). However, if within thirty (30) days following the date of this Award Amberson and ANR contest in state court arbitral jurisdiction over McAllen's Cannon Grove claims, then the directive to transfer the interest within thirty (30) days is stayed pending further order of the court.

5.   Pursuant to and incorporating the parties' Stipulation Regarding Attorneys' Fees, JON CHRISTIAN AMBERSON shall pay to

159759

JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP. LTD., and MCALLEN TRUST PARTNERSHIP, LTD., collectively, as the "prevailing party" in this Award, $2,000.000.00 as reasonable and necessary attorneys' fees. JON CHRISTIAN AMBERSON, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. AMBERSON NATURAL RESOURCES, LLC, is jointly and severally liable for $350,000.00 of the total. The Arbitrator further incorporates the terms of the Stipulation Regarding Attorneys' Fees as to future proceedings that (a) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for proceedings in the District Court to confirm or vacate an award; (b) $75,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for an appeal to the Court of Appeals; (c) $30,000.00 is a reasonable and necessary attorneys' fees, that the prevailing party shall be paid by Amberson, for preparing or responding to a Petition for Review to the Supreme Court of Texas; and (d) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for preparing full briefing on the merits to the Supreme Court of Texas.

6.   JON CHRISTIAN AMBERSON shall pay $51,232.11 to JAMES ARGYLE MCALLEN, such amount being the 50% in Arbitrator fees and expenses paid by MCALLEN to the Arbitrator.

7.   All the above sums ordered paid are payable on or before thirty (30) days from the date of this Award.

8.   Interest on any unpaid amounts shall commence thirty (30) days from the date of this Award until paid at the rate of five percent (5%) per annum, simple interest.

9.   This Award is in full settlement of all claims, counterclaims, third-party claims, and any other claims submitted in this arbitration. All claims for relief not expressly granted herein, including all claims set forth by the parties in their pleadings, in their pre- and post-hearing briefing, or orally at the hearing, are hereby DENIED.[1]

---

[1] The Arbitrator determined that James Argyle McAllen's claims against Jon Christian Amberson and Jon Christian Amberson, P.C., concerning $2,250,000 of certificates of deposit pledged as collateral for Jon Christian Amberson, P.C.'s loan with Jefferson Bank, are not yet ripe for determination because the loan had not yet been defaulted. The Arbitrator advised the Court that he is willing to decide these claims if and when Jefferson Bank forecloses on the loan and exercises dominion over the certificates.

4

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the April 30, 2020 Arbitration Award is CONFIRMED in all respects.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson, P.C. TAKES NOTHING on all its claims against James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd., collectively, have and recover actual damages in the amount of $3,725,700.00 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen have and recover additional actual damages in the amount of $3,569,210.13 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

IT IS FURTHER ORDERED, ADJUDGED, DECREED, and DECLARED that:

a.    The $4,500,000.00 that James Argyle McAllen paid to Amberson Natural Resources, LLC by wire dated March 18, 2009, was a loan;

b.    The loan is secured by Amberson Natural Resources, LLC's 90% interest in Cannon Grove; and

c.    The loan will be deemed repaid and forgiven upon Amberson Natural Resources, LLC returning its 90% interest to James Argyle McAllen.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson, as the sole owner and decision maker of Amberson Natural Resources, LLC, shall within thirty (30) days of the date of this Final Judgment have Amberson Natural Resources, LLC return to James Argyle McAllen all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC,

5

159759

and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest).

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd., collectively, have and recover reasonable and necessary attorneys' fees in the amount of $2,000,000.00 from Jon Christian Amberson.  Jon Christian Amberson, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount.  Amberson Natural Resources, LLC, is jointly and severally liable for $350,000.00 of this $2,000,000.00 amount.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. are awarded reasonable and necessary appellate attorneys' fees from Jon Christian Amberson as follows:

    (a)    $25,000.00 as reasonable and necessary attorneys' fee for proceedings in the District Court to confirm or vacate an award;

    (b)    $75,000.00 as reasonable and necessary attorneys' fee for an appeal to the Court of Appeals;

    (c)    $30,000.00 as reasonable and necessary attorneys' fees for preparing or responding to a Petition for Review to the Supreme Court of Texas; and

    (d)    $25,000.00 is a reasonable and necessary attorneys' fee for preparing full briefing on the merits to the Supreme Court of Texas.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, have and recover the sum of $51,232.11 from Jon Christian Amberson, such amount being the 50% in Arbitrator fees and expenses paid by James Argyle McAllen to the Arbitrator.

6

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that interest on any unpaid amounts above shall commence thirty (30) days from the date of the Award, until paid, at the rate of five percent (5%) per annum, simple interest.

The Clerk of the Court is directed to issue all writs necessary for execution of this Final Judgment.

All relief requested by any party and not granted in this Final Judgment is DENIED.

This Final Judgment finally disposes of all parties and all claims and is appealable.[2]

SIGNED, ENTERED and ORDERED this _____ day of _____ 2020.


_____
HONORABLE LUIS M. SINGLETERRY


**APPROVED AS TO FORM AND SUBSTANCE:**


_____
David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

---

[2] This Final Judgment does not "dispose" of James Argyle McAllen's claims against Jon Christian Amberson and Jon Christian Amberson, P.C. concerning the $2,250,000 in certificates of deposit pledged as collateral for Jon Christian Amberson, P.C.'s loan with Jefferson Bank because there has been no default yet. Thus, the claims are not ripe for determination, and there is no subject matter jurisdiction for the claims regarding the certificates of deposit.

7

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP**

**APPROVED AS TO FORM ONLY:**

Steven A. Fleckman
Zach Wolfe
Andrew McKeon
FLECKMAN & MCGLYNN, PLLC
Northpoint Centre I
6836 Austin Center Blvd., Suite 270
Austin, Texas 78731

Ricardo G. Cedillo
Les J. Strieber III
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, TX 78212

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.,
JON CHRISTIAN AMBERSON, AND AMBERSON
NATURAL RESOURCES LLC**

159759

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## **NOTICE OF HEARING**

Please take notice that a hearing on James Argyle McAllen's, El Rucio Land and Cattle

Company, Inc.'s, San Juanito Land Partnership, Ltd.'s and McAllen Trust Partnership's Motion

to Confirm Arbitration Award has been set for _____, 2020 at

_____ a.m./p.m. before the Honorable Luis M. Singleterry.

Signed this _____ day of _____, 2020.

_____
HONORABLE LUIS M. SINGLETERRY

1

159760

Electronically Filed
5/15/2020 10:48 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios    Ricardo Contreras   Adriana "Audry" Garcia   Sabrina S. Guerra    Oneida Lamas    Stephanie Palacios   Aida Villarreal
CHIEF DEPUTY    CHIEF OF ADMINISTRATION   ASSISTANT CHIEF DEPUTY   SENIOR ACCOUNTANT   DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
AND PUBLIC INFORMATION                                                                                OFFICER

Electronically Filed
5/14/2020 5:06 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## NOTICE OF HEARING

Please take notice that a hearing on James Argyle McAllen's, El Rucio Land and Cattle

Company, Inc.'s, San Juanito Land Partnership, Ltd.'s and McAllen Trust Partnership's Motion

to Confirm Arbitration Award has been set for _____June 25th_____, 2020 at

____9:00____ XXX a.m./p.m. before the Honorable Luis M. Singleterry.

Signed this _20th_ day of _____May_____, 2020.

_____
HONORABLE LUIS M. SINGLETERRY

Francisco J. Rodriguez:  frankr@mcallenlawfirm.com

David M. Prichard:   dprichard@prichardyoungllp.com

J.A. "Tony" Canales:  tonycanales@canalessimonson.com

159760

fleckman@fleckman.com       zwolfe@fleckman.com       amckeon@fleckman.com

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

## CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| **JON CHRISTIAN AMBERSON, P.C.,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JAMES ARGYLE MCALLEN,** | § | |
| **EL RUCIO LAND AND CATTLE** | § | |
| **COMPANY, INC., SAN JUANITO** | § | |
| **LAND PARTNERSHIP, LTD., AND** | § | **92ND JUDICIAL DISTRICT** |
| **MCALLEN TRUST PARTNERSHIP,** | § | |
| *Defendants* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JON CHRISTIAN AMBERSON AND** | § | |
| **AMBERSON NATURAL** | § | |
| **RESOURCES, LLC,** | § | |
| *Third Parties* | § | **HIDALGO COUNTY, TEXAS** |

## THE AMBERSON PARTIES' (1) RESPONSE TO THE MCALLEN PARTIES' MOTION TO CONFIRM ARBITRATION AWARD AND (2) MOTION TO VACATE OR MODIFY ARBITRATION AWARD

TO THE HONORABLE COURT:

Plaintiff Jon Christian Amberson, P.C. and Third-Parties Jon Christian Amberson and Amberson Natural Resources LLC (collectively, the "**Amberson Parties**") file this (1) Response to the McAllen Parties' Motion to Confirm Arbitration Award, and (2) Motion to Vacate or Modify Arbitration Award, and in support thereof would respectfully show:

## I.    INTRODUCTION

1.    This case arose out of a fee dispute between Jon Christian Amberson's law firm and one of its clients, Amberson's former father-in-law, James McAllen. McAllen, soured by Amberson's decision to file for divorce against McAllen's daughter, refused to honor his contingency fee agreements with Amberson's firm for litigating McAllen's claims against Forest

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Oil Corporation for environmental contamination.  That litigation spanned over a decade and resulted in a multi-million-dollar award for McAllen.

2.      When Amberson filed suit to recover his contingency fee, McAllen brought numerous counterclaims including, among others: (1) an unripe claim regarding a loan issued to Amberson's firm by Jefferson Bank; (2) a promissory note signed by Amberson in favor of McAllen which was never funded; and (3) claims regarding an inter-family real estate transaction that was completely unrelated to the Forest Oil litigation.  In 2018, citing arbitration provisions contained in the fee agreements between McAllen and Amberson's firm, the Court summarily ordered the parties to arbitrate all of the claims, counterclaims, and third-party claims—whether related to the Forest Oil litigation or otherwise.

3.      The arbitrator issued an award in favor of McAllen on most, but not all, claims. The arbitrator separated the award into eight substantive legal issues.  This motion to vacate challenges only three of those issues.  First, the arbitrator lacked jurisdiction to determine the Jefferson Bank loan issue because the claim was not ripe.  Second, the arbitrator impermissibly awarded damages for the promissory note, which was never funded and already accounted for in his other damage awards.  Third, the issues related to the family's real estate transaction involved parties and claims that were not within the scope of the arbitration clause and should never have been part of the arbitration.  With respect to these three claims, the arbitrator exceeded his authority, and the Amberson Parties request that the Court deny McAllen's motion to confirm as to those three claims and vacate those portions of the award.

## II.      BACKGROUND

### A.  Overview of Lawsuit: Dispute Over Legal Fees

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

4.      This lawsuit originated out of a fee dispute over services rendered by Amberson's law firm, Jon Christian Amberson, P.C. (the "**Firm**"), to his former father-in-law, James McAllen. The Firm represented McAllen and various affiliated entities, including El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and the McAllen Trust Partnership, Ltd. (collectively, the "**McAllen Parties**"), in major litigation against Forest Oil Corporation.

5.      The Forest Oil litigation involved claims by the McAllen Parties that Forest Oil Corporation contaminated the McAllen Ranch by illegally dumping hazardous and radioactive materials throughout the 27,000-plus acre ranch.[1]  The litigation lasted for over a decade, involving thirty-seven depositions, multiple appeals, and an arbitration hearing before a panel of three arbitrators.[2]  The lawsuit against Forest Oil was filed in January of 2005 and ended with one of a series of opinions from the Texas Supreme Court affirming the confirmation of the arbitration award in April of 2017.[3]  Through that litigation, Amberson secured an enormous victory for the McAllen Parties: an award for $16 million in actual and exemplary damages, over $6.7 million in attorneys' fees, an order that Forest Oil would be responsible for reimbursing the McAllen Parties for any future costs or expenses related to the contamination, plus remediation orders for the ranch.[4]  The value of the remediation order for the removal of mercury contamination alone amounted to around $56 million.[5]

6.      McAllen was pleased with Amberson's work in the Forest Oil litigation—that is until Amberson filed for divorce against McAllen's daughter in 2013.[6]  As McAllen's disposition toward Amberson soured in light of the divorce, McAllen refused to pay Amberson the one-third

---

[1] Vol. 2, 48:8-50:22; 60:23-61:7.
[2] Vol. 2, 162:23-166:11, 178:6-9.
[3] Vol. 2, 54:21-55:14, 118:5-14, 191:1-14; Ex. J1-7; Ex. J1-60.
[4] Ex. J1-32; Ex. J1-42; Ex. J1-44.
[5] Vol. 2, 205:25-206:14.
[6] Vol. 2, 215:16-219:15.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

contingency fee agreed to by McAllen in two engagement letters signed by McAllen in connection with the Forest Oil litigation.[7]

7.    McAllen's failure to honor the contingency fee agreements led to the present lawsuit, which was originally brought by the Firm for the unpaid contingency fees owed by the McAllen Parties.  At the outset of the lawsuit, the Firm sought to compel arbitration of the fee dispute pursuant to arbitration clauses[8] contained in the contingency fee agreements.[9]

8.    In response, the McAllen Parties brought counterclaims against the Firm (most of which were at least tangentially related to the Forest Oil litigation) as well as third-party claims against Amberson, individually, and another entity called Amberson Natural Resources, regarding a family real estate deal that was not at all related to the Forest Oil litigation or any legal services rendered by the Firm.  The McAllen Parties indiscriminately sought to compel all of the claims to arbitration.[10]

## B.  The Arbitration Agreements

9.    In connection with the Firm's representation of the McAllen Parties in the Forest Oil litigation, the parties executed three engagement letters containing the contingency-fee agreement (collectively, the "**Fee Agreements**").

---

[7] Vol. 2, 220:8-221:12.

[8] In the McAllen Parties' Motion to Confirm Arbitration Award, filed May 14, 2020, the McAllen Parties highlighted the arbitration clauses' provision that "The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable."  This is merely standard language for arbitration provisions that in no way affects or limits the Amberson Parties' right to move for vacatur or modification under the Texas Arbitration Act. *See Ctr. Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 525 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("[W]e conclude that the Non-Appealable Language cannot reasonably be construed as a waiver of the right to ask a trial court to vacate an arbitration award based on one of the Texas Arbitration Act's vacatur grounds or as a waiver of the right to appeal a judgment rendered on an arbitration award"); *Barsness v. Scott*, 126 S.W.3d 232, 238 (Tex. App.—San Antonio 2003, pet. denied) (holding "a waiver of appeal in the arbitration agreement does not preclude judicial review of matters concerning" grounds for vacatur or modification).

[9] *See* Ex. C; Ex. D, attached hereto.

[10]  The Amberson Parties request that the Court take judicial notice of the docket and records filed in this matter.  *See* Tex. R. Evid. 201; *In re Sw. Pub. Serv. Co.*, No. 13-19-00111-CV, 2020 WL 1887762, at *24 (Tex. App.—Corpus Christi Apr. 16, 2020, no pet. h.) ("It is well-settled that a trial court can properly take judicial notice of its own records and prior pleadings in the case, with or without a request of a party.").

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

10.     The Fee Agreements are clear and unambiguous[11] and are rather unremarkable in the sense that they, like all standard engagement letters, set forth the scope of the representation, identify the clients, and disclose the hourly rates of the anticipated timekeepers.  Unsurprisingly, since they were executed in connection with the Forest Oil litigation, each Fee Agreement by its own terms limited their scope and applicability to that litigation.

11.     For example, the first Fee Agreement,[12] dated December 10, 2004, stated "RE: Forest Oil Corporation" and set forth the Firm's "role as legal counsel" for the McAllen Parties in connection with their claims against Forest Oil for environmental contamination issues.

> RE:  **Forest Oil Corporation**
>
> Dear Mr. & Mrs. McAllen:
>
>      The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C. and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil corporation relating to environmental contamination issues arising from the actions of Forest Oil Corporation and its employees as relayed to you by Mr. Bobby Pearson, a former employee of Forest Oil Corporation.

*See* Ex. B.  It confirmed the limited scope of the representation in various other places:

> 2.   **PURPOSE OF REPRESENTATION:**  It is understood that our firm is being retained by you to provide legal services in relation to the action against Forest Oil Corporation, and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated the June 22, 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-2016-95-G, state statutes, environmental laws and state regulations on your properties.

---

[11] The McAllen Parties have not alleged that any of the Fee Agreements are ambiguous.  *See generally,* McAllen Parties' Request to Refer All Claims in this Lawsuit to Arbitration, filed December 18, 2017.

[12] A true and correct copy of the first Fee Agreement is attached hereto as **Exhibit B**.  In the arbitration proceeding, this exhibit was referred to as "Exhibit J1-3."  Throughout this motion, the Amberson Parties refer to the first Fee Agreement as Exhibit B.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

> 3. **LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

*See id.*

12.    The second and third Fee Agreements,[13] both dated January 25, 2005, likewise expressly pertained to the Forest Oil litigation.

> RE:   Contract of Employment Regarding Representation of James Argyle McAllen, Individually and James Argyle McAllen, Jr., Individually against Forest Oil Corporation and any other Responsible Entities.
>
> Gentlemen:
>
>      The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C., and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies relating to environmental contamination issues related arising from illegal dumping of hazardous materials and radioactive materials.

> 2.    **PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.
>
> 3.    **LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

*See* Ex. C.

---

[13] A true and correct copy of the second Fee Agreement is attached hereto as **Exhibit C**, and a true and correct copy of the third Fee Agreement is attached hereto as **Exhibit D**. In the arbitration proceeding, the second and third Fee Agreements were referred to as "Exhibit J1-5" and Exhibit J1-6," respectively. Throughout this motion, the Amberson Parties refer to the second and third Fee Agreements as Exhibit C and Exhibit D, respectively.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

> RE:   Contract of Employment Regarding Representation of El Rucio Land and
> Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
> Partnership and John R. Willis Management Partnership Ltd., related to
> prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
> Conoco/Phillps Inc.
>
> Dear Mr. & Mrs. McAllen:
>
>     The purpose of this letter is to summarize and confirm the terms and conditions
> of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
> regarding my firm's role as legal counsel for you in connection with the prosecution of
> claims against the above referenced oil companies relating to environmental
> contamination issues related arising from illegal dumping of hazardous materials and
> radioactive materials.

> **2.   PURPOSE OF REPRESENTATION:** It is understood that the firm is
> being retained by you to provide legal services in relation to an action against Forest Oil
> Corporation, Conoco Inc., and any of their successors or predecessors in interest
> including affiliates and any other oil company that is found to have violated state
> statutes and environmental laws and regulations on your properties.
>
> **3.   LEGAL REPRESENTATION:** Our legal representation is limited to this
> matter and we have not been retained to represent you generally or in connection with
> any other matter unless it has been confirmed by separate letter. Generally, we are to
> perform all services and take all such action in the described matters as may be
> appropriate and necessary in our discretion and serve as your counsel in furtherance of
> your interests.

*See* Ex. D.

13.     Each Fee Agreement contained an arbitration provision. The first Fee Agreement provided as follows: "Any fee dispute *arising under this agreement* and/or the services rendered for you by our firm will be submitted to arbitration."[14]  The second and third Fee Agreements have almost exactly the same arbitration provision as the first Fee Agreement: "Any fee dispute *arising under this agreement* and/or the services rendered for you by the firms will be submitted to arbitration."[15]  The title, preamble, and other provisions in each of the three Fee Agreements demonstrate that the Firm and the McAllen Parties intended for the arbitration provisions to

---

[14] Ex. B (emphasis added).
[15] Exs. C, D (emphasis added).

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

encompass only issues arising out of the legal services provided by the Firm in connection with the Forest Oil litigation.

### C.  The Arbitrator Exceeded His Authority in at Least Three Rulings

14.     The Firm's claims against the McAllen Parties, and most of the McAllen Parties' counterclaims against the Firm, related in some way to the Fee Agreements and/or the Forest Oil litigation.  Two of those issues are challenged in this motion to vacate: (i) the Jefferson Bank loan; and (ii) the promissory note.  The third issue challenged in this motion to vacate is: (iii) the inter-family real estate deal known as the "Cannon Grove" transaction—a dispute that arose many years later and is completely independent of the Forest Oil litigation.  These three issues are discussed in turn below.

#### i.     The Jefferson Bank Loan

15.     One of the counterclaims brought by the McAllen Parties against the Firm related to a loan from Jefferson Bank.[16]  The Firm obtained a $1.75 million loan from Jefferson Bank in 2010 to fund the Firm's operating expenses during the pendency of the Forest Oil litigation.[17] McAllen and his wife pledged certificates of deposit in the amount of the loan as collateral for the same.[18]  The loan was later extended to $2.25 million in 2011, all of which was collateralized by Mr. and Mrs. McAllen's certificates of deposit.[19]  The loan has since been renewed on a yearly basis with monthly interest payments.[20]

16.     The McAllen Parties asserted a claim of fraudulent representation alleging that the Firm falsely represented to McAllen that it would repay the Jefferson Bank loan but failed to do

---

[16] Vol. 5, 79:5-9.
[17] Vol. 3, 117:11-15; Vol. 5, 79:5-80:8, 81:20-82:5; Ex. J6-1.
[18] Vol. 5, 81:20-82:5.
[19] Ex. J6-2; Vol. 5, 82:20-83:1.
[20] Vol. 7, 16:24-17:3, 19:23-20:2.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

so.[21]  However, the undisputed evidence at the arbitration hearing showed that the Loan had been extended various times, that the Loan had not matured or been accelerated, and that Jefferson Bank had not exercised, or provided notice of any intent to exercise, its rights against the collateral.[22] The McAllen Parties' claims on the Jefferson Bank loan were entirely premised on hypothetical future actions by Jefferson Bank and Amberson (i.e., that Amberson will default on the loan and the bank will seize the collateral) and, therefore, not ripe.

### ii.   The $545,000 Promissory Note

17.     McAllen also brought a breach of contract claim with regard to a $545,000 promissory note signed by Amberson.[23]  In 2007, Amberson executed a promissory note in favor of McAllen in the amount of $545,000[24] as a way for McAllen to support and subsidize Amberson's marriage with McAllen's daughter by creating certain tax benefits for them.[25]  At that time, McAllen had an incentive to support Amberson's marriage as Amberson's entire work efforts were dedicated to the Forest Oil Litigation.

18.     However, it is undisputed that the note was not funded contemporaneously with the execution of the note itself.[26]  Rather, the note was merely a memorialization of other, preexisting debts owed by Amberson to McAllen for certain expenses related to the Forest Oil litigation.[27]  In fact, a February 21, 2008 letter from Amberson to McAllen regarding the note refers to the note as a memorialization of their "agreement that all expenses incurred in [the Forest Oil litigation] shall be reimbursed back to the client at the conclusion" of the case.[28]  The same funds represented

---

[21] *See* McAllen Parties' Fourth Amended Answer, Counterclaims, and Claims Against Third-Parties, p. 39.
[22] Vol. 7, 19:23-20:10, 81:6-24; Vol. 3, 229:24-230:5; Ex. A, at 46.
[23] McAllen Parties' Fourth Amended Answer, Counterclaims, and Claims Against Third-Parties, p. 38.
[24] Ex. J4-1.
[25] Vol. 3, 90:8-91:12.
[26] Vol. 3, 84:5-19.
[27] Vol. 3, 90:15-19.
[28] Ex. J4-1.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

by the note were awarded to the McAllen Parties in connection with the other substantive legal issues that are not challenged in this motion to vacate.  Irrespective of the arbitrator's factual findings and the underlying merits, the damages awarded on the note were duplicative of other damages awarded, resulting in an impermissible windfall to the McAllen Parties.

### iii.   The Cannon Grove Transaction

19.    In 2009, and completely unrelated to the pending Forest Oil litigation, McAllen was contemplating a real estate transaction designed to defer capital gains taxes under 26 U.S.C. § 1031, commonly referred to as a "1031 exchange."

20.    McAllen and his longtime attorneys requested that Amberson serve as the "intermediary" for the 1031 exchange because Amberson satisfied the Internal Revenue Code's "non-blood relative" requirement.[29]   To facilitate the transaction, McAllen's attorney, Ben McCaleb, formed Amberson Natural Resources LLC ("**ANR**") to be owned by Amberson, which would serve as the intermediary and take ownership of the property known as Cannon Grove.[30] Ultimately, McAllen was able to save approximately $750,000 to $1 million in deferred taxes for the 2009 tax year.[31]

21.    By all accounts, the Cannon Grove transaction was a success.  It was only after the Firm filed the lawsuit over its contingency fee for the Forest Oil litigation that McAllen retaliated and for the first time raised claims against Amberson and ANR related to the Cannon Grove 1031 exchange.[32]

---

[29] Vol. 3, 100:15-102:7; Vol. 3, 100:15-102:7, 109:7-11; Vol. 4, 208:1-6, 217:4-12; Vol. 10, 18:24-25.
[30] Vol. 4, 244:24-245:2.
[31] *See* Ex. J5-6.
[32] While the Amberson Parties dispute the merits of the Cannon Grove claims, the merits are irrelevant to this motion to vacate, which challenges the arbitrator's award on the grounds that such claims were not subject to arbitration.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

22.     The Cannon Grove claims brought by the McAllen parties were out of place in this lawsuit from the outset.  The Cannon Grove transaction was completely unrelated to the Forest Oil litigation, unrelated to the Firm, and unrelated to the legal services provided by Amberson or the Firm in connection with McAllen Parties' claims against Forest Oil.  ANR was formed by McAllen's real estate attorney solely to help McAllen facilitate a tax-advantaged transaction—a transaction in which neither Amberson nor the Firm represented the McAllen Parties.[33]  To state the obvious, the Fee Agreements, signed four years earlier in connection with the Forest Oil litigation, did not mention or make any reference whatsoever to the Cannon Grove transaction.

### D.   All Claims are Referred to Arbitration

23.     Shortly after the McAllen Parties filed their counterclaims, the Amberson Parties filed a motion to compel arbitration for the claims arising under and connected to the Fee Agreements and/or the Forest Oil litigation.  The Amberson Parties did not seek to compel the Cannon Grove claims to arbitration because those claims were not part of the Fee Agreements (or the arbitration provisions therein) and they involved parties who did not sign the Fee Agreement. The McAllen Parties filed a countermotion to refer all claims in the lawsuit—including the Cannon Grove claims—to arbitration.

24.     On April 23, 2018, the Court entered an order referring all claims to arbitration.

25.     On October 18, 2018, the Court entered an order appointing Tom Collins as arbitrator pursuant to a Rule 11 Agreement.  The Rule 11 Agreement, attached to the order as an exhibit, included a hand-written provision that the agreement was subject to the Amberson Parties' "preservation of challenge and appellate rights as to the arbitrability *vel non* of the Cannon Grove claims."

---

[33] Vol. 3, 142:1-6; Vol. 3, 115:23-116:7.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

### E.   **The Arbitrator's Award**

26.    On April 30, 2020, the arbitrator issued an award on all of the claims brought by the parties in this lawsuit—including the Cannon Grove claim.  A true and correct copy of the award is attached hereto as **Exhibit A**.

27.    As a preliminary matter, the arbitrator specifically noted that the Amberson Parties "properly have reserved all their rights and objections concerning the lack of arbitral jurisdiction over McAllen's Cannon Grove claim" by objecting to the referral of the claim to arbitration in this Court and by requesting and obtaining a running objection in the arbitration hearing.[34]  Expressing doubt about his own jurisdiction to decide the claim, the arbitrator then stated that the fact that he was issuing an award on the Cannon Grove claim in no way implied that  he had decided the claim was arbitrable, and specifically stated that the issuance of an award on the Cannon Grove claim "cannot hereafter be used as an argument in support of the arbitrability of [the Cannon Grove] claims."[35]

> transaction because the District Court has ordered that the claims be determined by this Arbitrator in arbitration.  This does not mean that the Arbitrator has decided that the claims properly are subject to arbitration, as the Arbitrator has made no decision in this regard.  Thus, the fact that the Arbitrator rules on the merits of McAllen's Cannon Grove claims based on the extensive evidence presented on this issue cannot hereafter be used as an argument in support of the arbitrability of these claims.

28.    Regarding the McAllen Parties' claim against Amberson and the Firm regarding the Jefferson Bank loan, the arbitrator found in favor of McAllen as to liability,[36] but conceded that he could not award McAllen any damages on the Jefferson Bank claim because McAllen had not incurred any damages and McAllen's claim "has not yet arisen."[37]  The arbitrator stated that

---

[34] *See* Ex. A, at 37.
[35] Ex. A, at 38.
[36] Ex. A, at 43.
[37] Ex. A, at 46-47.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

the McAllen Parties could seek to establish the damages element of their claim in either this Court or before the arbitrator once the cause of action appropriately ripens.[38]

29.      Regarding the $545,000 promissory note, the arbitrator disregarded the undisputed facts that the note was merely a memorialization of prior existing debt related to McAllen's other claims, and instead awarded McAllen damages on the promissory note in the amount of $916,257, which was duplicative of other damages already awarded (and that are not challenged in this motion to vacate).[39]

### III.      RECORD OF THE ARBITRATION PROCEEDINGS

30.      Citations herein to the arbitration hearing transcript are made by reference to the volume, page, and line numbers of the transcript. Citations herein to the exhibits admitted in the arbitration hearing are made by reference to the exhibit-numbering system used in the arbitration hearing, with the exception of the Fee Agreements, which are attached hereto as Exhibit B (J1-3), Exhibit C (J1-5), and Exhibit D (J1-6).  By separate filing, Amberson will provide the Court with these and other relevant portions of the record from the arbitration proceedings.

### IV.      AUTOMATIC STAY

31.      The arbitrator ordered Amberson to, within thirty days of the issuance of the award, cause ANR to transfer to McAllen its right, title and interest in the Cannon Grove property, unless Amberson and ANR "contest in state court the jurisdiction of the Arbitrator over McAllen's Cannon Grove claims," in which case the order would be stayed.[40]  The arbitrator also awarded the McAllen Parties $350,000 in attorneys' fees in connection with the Cannon Grove claims, again, subject to "Amberson's objection to the arbitrability of the Cannon Grove issue."[41]

---

[38] Ex. A, at 47.
[39] Ex. A, at 36.
[40] Ex. A, at 43.
[41] Ex. A, at 51.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

32.     By this motion, the Amberson Parties timely challenge the arbitrator's authority to issue an award on the Cannon Grove claims, thereby staying the arbitrator's order to transfer the property interest in Cannon Grove.

## V.     ARGUMENT & AUTHORITIES

33.     This motion to vacate challenges the Award and its rulings related to the three issues discussed above: (i) the Jefferson Bank Loan claim which was unripe; (ii) the $545,000 promissory note that impermissibly duplicated damages and resulted in a windfall for the McAllen Parties; and (iii) the Cannon Grove transaction that involved parties and claims not subject to the Fee Agreements' arbitration provisions.  The Cannon Grove claims will be discussed first because they raise the preliminary question of arbitrability.

### A.  Cannon Grove

#### 1.  Legal Standard: Courts Must Vacate or Modify an Award Where the Arbitrator Exceeds His Authority

34.     If a party to an arbitration proceeding moves to vacate the arbitration award, the Court "shall vacate" the award if the arbitrator "exceeded [his] powers." Tex. Civ. Prac. & Rem. Code § 171.088(a)(3)(A).

35.     "An arbitrator's authority is derived from the arbitration agreement and is limited to a decision of the matters submitted therein, either expressly or by necessary implication." *O'Grady v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 506 S.W.3d 121, 126 (Tex. App.—Corpus Christi 2016, pet. denied) (internal quotations omitted).  If an arbitrator departs from the arbitration agreement or decides matters not properly before him, then he has exceeded his powers. *Id.*; *Ctr. Rose Partners, Ltd.*, 587 S.W.3d at 527–28 ("Arbitrators exceed their powers if they lack the authority to decide the issues adjudicated in the arbitration award").

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

36.     Likewise, a court must modify or correct an arbitration award if the arbitrator rendered an award regarding "a matter not submitted to [him] and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted." Tex. Civ. Prac. & Rem. Code § 171.091(a)(2).  "[I]n order for modification or correction to be appropriate . . . the arbitrator must have awarded on a matter that the parties did not agree to submit to her." *IQ Holdings, Inc. v. Villa D'Este Condo. Owner's Ass'n, Inc.*, 509 S.W.3d 367, 373 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

37.     When deciding whether an issue has been submitted to an arbitrator, courts look to the terms of the arbitration agreement.  *In Interest of S.M.H.*, 523 S.W.3d 783, 789 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  "When we determine whether claims are within the scope of an arbitration agreement, we examine the terms of the arbitration agreement and the factual allegations pertinent to the claim.  Because of policy favoring enforcement of arbitration agreements, the ability to arbitrate claims should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 687 (Tex. App.—Dallas 2011, pet. denied) (citation omitted).

38.     "[A]ny doubt as to whether a party's claim falls within the scope of an arbitration agreement must be resolved in favor of arbitration." *Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  "Also, a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible to an interpretation that would cover the dispute at issue." *Id.*  However, "the policy that favors resolving doubts in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties." *Id.* (holding arbitrator

15

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

exceeded his powers in deciding claim that was beyond the scope of the arbitration agreement and vacating that portion of the award); *see also Lee v. Daniels & Daniels*, 264 S.W.3d 273, 282 (Tex. App.—San Antonio 2008, pet. denied) (holding arbitrator exceeded his powers by awarding 100% of arbitration fees to one party where the arbitration agreement provided for the fees to be split 50/50).

## 2. The Arbitrator Exceeded His Powers by Issuing an Award Against ANR and Amberson on the Cannon Grove Claims, None of Which Were Subject to Arbitration

39.      Arbitration in Texas is consensual.  A party seeking to compel arbitration bears the burden to prove: (a) a valid agreement to arbitrate exists between the parties; and (b) that the asserted claims fall within the scope of that agreement. Tex. Civ. Prac. & Rem. Code § 171.02l(a); *see also In re Merrill Lynch,* 235 S.W.3d 185, 192 (Tex. 2007) (stating that arbitration "is a matter of consent, not coercion").  If a party did not sign the arbitration agreement, addressing the first prong includes analyzing whether the non-signatory is bound by or can enforce the arbitration agreement.  *See In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011).  Absent such an agreement, "a party cannot be forced to forfeit the constitutional protections of the judicial system and submit its dispute to arbitration." *Jenkens & Gilchrist v. Riggs,* 87 S.W.3d 198, 201 (Tex. App.—Dallas 2002, no pet.).

40.      Arbitrators exceed their powers when they decide matters not properly before them. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc*., 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.); *Barsness*, 126 S.W.3d at 241.  When the arbitrator issues an award against a party or on a claim that is not subject to arbitration, he has exceeded his powers.  *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 707 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

41.      The McAllen Parties failed to prove both requirements for arbitration.  As such, the arbitrator exceeded his authority by ruling on the Cannon Grove claims because: (a) ANR and

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Amberson were both non-signatories to the Fee Agreements; and (b) even if ANR and Amberson were bound by the arbitration provisions in the Fee Agreements, the scope of the same did not extend to the Cannon Grove transaction.

>  **i.**   **As Non-Signatories, ANR and Amberson Are Not Bound by the Arbitration Provisions in the Fee Agreements**

42.     The McAllen Parties' Cannon Grove claims are asserted exclusively against ANR and Amberson (not the Firm).  It is undisputed that ANR and Amberson (in his individual capacity) are not signatories to any of the Fee Agreements.[42]  Accordingly, the McAllen Parties bore the burden to establish that ANR and Amberson were bound by the Fee Agreements under some other theory.[43]

43.     In seeking to compel Amberson and ANR to arbitration, the McAllen Parties relied on one theory: alter-ego.[44]  The McAllen Parties presented no documents, affidavits, or other evidence to support this theory.  The only "evidence" offered was the McAllen Parties' live pleading, which at the time was their Second Amended Answer and Counterclaim.[45]

44.     It was incumbent on the McAllen Parties to present evidence of alter-ego and to litigate that issue first, before the Court reached the question of whether Amberson and ANR were bound to arbitrate.  *See Fridl v. Cook*, 908 S.W.2d 507, 514-15 (Tex. App.—El Paso 1995, writ dism'd w.o.j.)  (noting that the trial court should first "determine the alter ego question, with

---

[42] Exs. B, C, D.  Of course, ANR could not have possibly signed the Fee Agreements because it was not even formed until four years later.  *See* Exs. J8-1(A), J8-1(B).

[43] Under Texas law, non-signatories may be bound to an arbitration agreement only under "rare circumstances," including: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary.  *In re Rubiola*, 334 S.W.3d at 224; *Glassell Producing Co., Inc. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 80-81 (Tex. App.—Texarkana 2014, no pet.).  The McAllen Parties agree that these are the only theories that may bind a non-signatory.  *See* McAllen Parties' Request to Refer All Claims in this Lawsuit to Arbitration, p. 10.

[44] Although the McAllen Parties did not attempt to satisfy any of the other theories for binding ANR and Amberson to the Fee Agreements, none of those limited circumstances apply here.

[45] *See* McAllen Parties' Mtn. Refer All Claims in this Lawsuit to Arbitration, Ex. A.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

referral to arbitration *after* a finding as to alter ego is made") (emphasis added).  In other words, whether ANR and Amberson are the alter-egos of the Firm, for purposes of establishing a valid arbitration agreement with them, was for the Court to decide as a threshold matter.  *See id.* ("We nevertheless hold that the issue of alter ego, essential to establishing Fridl's liability here, is a fact question not subject to the arbitration clause in the parties' contract."); *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) (holding "the existence of a valid arbitration clause between specific parties" presents "a gateway matter for the court to decide.").

45.     Nor can the Court rely on the arbitrator's substantive findings on alter-ego as *post hac* justification to confirm the award against the non-signatories.  *See Fridl*, 908 S.W.2d at 514 & n.5 (noting that where, as here, the arbitration occurred *before* the alter-ego finding, "an argument might be made that the alter ego did not participate in the arbitration, and thus due process considerations forbid that the alter ego be bound").

46.     Accordingly, the McAllen Parties failed to meet their burden to establish a valid and enforceable arbitration agreement with ANR or Amberson.  The arbitrator's award against these non-signatory parties exceeded his authority and must be vacated.

### ii.     The Cannon Grove Claims Are Outside the Scope of the Fee Agreements

47.     Even if non-signatories ANR and Amberson could somehow be bound to the arbitration provisions in the Fee Agreements, the McAllen Parties still bore the burden to establish that the Cannon Grove dispute fell within the scope of those agreements.  *In re Houston Progressive Radiology Assocs., PLLC*, 474 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

48.     A determination of the scope of an unambiguous arbitration clause is a matter of contract interpretation, applying traditional contract principles, and it is a question of law for the trial court subject to de novo review.  *In re Guggenheim Corp. Funding, LLC*, 380 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding).   The primary concern is to ascertain whether the intentions of the parties, as expressed in the instrument, reflect an intent to arbitrate.  *Id.* at 887.

49.     The language of the arbitration clauses in the Fee Agreements confirms the parties' intent for the agreements to extend only to fee disputes in the Forest Oil matter. The Fee Agreements require arbitration only in the narrowest of circumstances:

> Any ***fee dispute arising under this agreement and/or the services*** rendered for you by [the Firm] will be submitted to arbitration.[46]

50.     The "services" referred to are specifically defined in paragraph 2 of each of the Fee Agreements. The first Fee Agreement defines "services" as "the action against Forest Oil Corporation" in relation to its violation of "environmental laws and state regulations on [McAllen's] properties."[47]   Likewise, the second and third Fee Agreements provide as follows:

> **[L]egal services** in relation to **all action against Forest Oil Corporation, Conoco Inc.,** and any of their successors or predecessors in interest including affiliates and any other oil company that is alleged **to have violated state statutes and environmental laws and regulations on your properties.**[48]

51.     Arbitration clauses run the gamut from "broad" to "narrow."  On the narrowest end of the spectrum, arbitration clauses that provide for arbitration of "all disputes arising out of the contract" (but omit phrases like "related to" or "in connection with" the contract) are held to be very limited in scope. *See Kirby Highland Lakes Surgery Ctr., L.L.P. v, Kirby,* 183 S.W.3d 891,

---

[46] *See* Ex. B, pp. 7-8; Ex. C, p. 5; Ex. D, p. 5 (emphasis added).
[47] Ex. B, p. 2.
[48] *See* Ex. C, p. 2; Ex. D, p. 2 (emphasis added).

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

898-99 (Tex. App.—Austin 2006, orig. proceeding); *see also Baudoin v. Midlouisiana Anesthesia Consultants, Inc.,* 306 F. App'x 188, 192 (5th Cir. 2009) (characterizing clause providing for arbitration "arising out of" the agreement as a narrow clause); *Ikon Office Solutions v. Eifert,* 2 S.W.2d 688, 694 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (narrowly construing clause that applied to any "dispute arising out of the [agreement]").  Here, the Fee Agreements are narrow and do not include any of the recognized language that would warrant a broad construction.  *See Brittingham v. Mirabent*, 04-17-00028-CV, 2017 WL 2852627, at *5 (Tex. App.—San Antonio July 5, 2017, no pet.) (narrowly applying an arbitration provision that applied to disputes "arising under" the agreement, noting the factual allegations of the claims were "completely independent" of the agreement); *Loy v. Harter,* 128 S.W.3d 397, 405 (Tex. App.—Texarkana 2004, pet. denied) (denying arbitration as to tort claim for breach of fiduciary duty because it was not covered by arbitration provision in employment agreement); *Perlstein v. D. Steller 3, Ltd.,* 109 S.W.3d 36, 42 (Tex. App.—Corpus Christi 2003, pet. denied) (denying arbitration as to fraudulent inducement claim because it was outside the scope of arbitration agreement).

52.     To determine whether a claim falls within the scope of an arbitration clause, courts "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *In re Rubiola*, 334 S.W.3d at 225.  Courts should apply a "common-sense examination" of the underlying claims to determine if they come within the scope of the arbitration clause. *Guggenheim Corp. Funding*, 380 S.W.3d at 887.

53.     In their live pleading—both at the time the McAllen Parties sought to compel arbitration and at the time of the arbitration hearing—the McAllen Parties affirmatively negated any notion that the Cannon Grove dispute, which involved a real estate transaction under Section 1031 of the Internal Revenue Code, had anything to do with either the Forest Oil litigation that

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

was the subject of the Fee Agreements, or the Firm's rendition of legal services in that litigation. For example, the McAllen Parties allege that:

- With respect to the Cannon Grove transaction, Amberson was acting "**beyond his role as litigation counsel**;"

- The entire Cannon Grove transaction was designed to "**facilitate the Reverse 1031 Exchange**" under 26 U.S.C. § 1031;

- "**[T]he purpose of the transaction was to execute a Reverse 1031 Exchange for the benefit of MCALLEN**;" and

- "The **sole purpose** of the transaction was to lawfully **defer tax liability**."[49]

54.     Glaringly absent from the McAllen Parties' own pleadings were any allegations whatsoever connecting the Cannon Grove transaction to the Forest Oil litigation, apart from them both involving Amberson (albeit in different capacities: in one, as lawyer; and in the other, as son-in-law.  The absence of any connection—in both the pleadings and in fact—is fatal to any claim by the McAllen Parties that the Cannon Grove claims were within the scope of the Forest Oil Fee Agreements.[50]

55.     Accordingly, the McAllen Parties did not meet their burden to prove that the arbitration provisions in the Fee Agreements encompassed the Cannon Grove claims, and the arbitrator's award on those claims must be vacated.

### iii.     The Arbitrator's Award Against ANR and Amberson On the Cannon Groves Claims Must Be Vacated

---

[49] *See* Defs.' 4th Am. Answer & Countercl. p. 30 § G, p. 38 § V(D)(1); Defs.' 2d Am. Answer & Countercl. pp. 4-5 § B (emphases added).

[50] The McAllen Parties' reliance on the strong policy in favor of arbitration cannot bridge the gap.  As courts have repeatedly acknowledged, that policy "cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the unambiguous meaning of the arbitration clause." *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712-14 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that claim assigned to plaintiff did not fall within settlement agreement's arbitration clause applying to claims "arising out of" the agreement regardless of whether the claim was factually intertwined with arbitrable claims).

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

56.     In sum, the McAllen Parties had the burden to prove that: (a) there was a valid and enforceable arbitration agreement with ANR and Amberson; **and** (b) the agreement encompassed the Cannon Grove dispute.  Failure to prove either one of these elements forecloses arbitration, but the McAllen Parties failed to prove both.  Because the arbitrator decided claims that were not subject to arbitration and entered an award against parties who did not agree to arbitrate, the Cannon Grove portion of the award must be vacated.

## B. **Jefferson Bank Loan**

### 1. **Legal Standard:  Ripeness is a Jurisdictional Prerequisite**

57.     "A trial court must have jurisdiction to enforce an agreement to arbitrate and to enter any award." *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, No. 17-0905, ---S.W.3d---, 2020 WL 2097347, at *8 (Tex. May 1, 2020).  Therefore, an arbitrator may not decide jurisdictional questions; it is the non-delegable role of the judiciary to determine jurisdictional questions.  *See id.*  A court "must have jurisdiction in the first instance to compel arbitration, and a ripe controversy is a necessary component of subject matter jurisdiction." *Lower Colorado River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017) (cited with approval by *San Antonio River Auth.*, 2020 Wl 2097347, at *8, n.58); *see also Edwards v. Schuh*, 5 S.W.3d 829, 831 (Tex. App.—Austin 1999, no pet.) (holding that trial court lacks jurisdiction to refer an unripe claim to arbitration).   Even when a claim ripens later during the arbitration proceedings, a court order compelling arbitration of a non-ripe claim is void for lack of subject matter jurisdiction.  *Id.* at 927.

58.     "A challenge that the arbitrator exceeded the 'power' or 'authority' granted him under the arbitration agreement is normally a challenge to the arbitrator's jurisdiction." *New Med. Horizons II, Ltd. v. Jacobson*, 317 S.W.3d 421, 429 (Tex. App.—Houston [1st Dist.] 2010, no pet.)

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

(noting that the TAA "clearly allows a party to assert a jurisdictional challenge based on an arbitrator's exceeding his authority").

59.    A claim is not ripe unless an injury has occurred or is likely to occur, rather than being contingent on future events that may not occur as anticipated or may not occur at all. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000). "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Id.*

### 2. <u>The Arbitrator Exceeded His Authority by Deciding the Unripe Jefferson Bank Loan Claim</u>

60.    The arbitrator exceeded his authority by issuing an award for liability on the McAllen Parties' fraudulent representation claim regarding the Jefferson Bank loan because the claim was not ripe and the court therefore lacked jurisdiction to refer the claim to arbitration in the first instance.

61.    The record of the arbitration hearing shows, and the Award acknowledges, that the McAllen Parties have suffered no injury with regard to the Jefferson Bank loan. At the time of the arbitration hearing, the loan had not yet matured, the loan was not in default, and Jefferson Bank had not taken any action against the collateral pledged by the McAllen Parties as security for the note.[51]

62.    As the arbitrator acknowledged in the award, any claim by McAllen to damages in relation to the loan assumes that multiple events, none of which have not occurred, will occur if at all only at some point in the future, namely: (1) that Amberson does not pay off the loan; (2) that Jefferson Bank refuses to renew the loan and it goes into default; and (3) that the bank forecloses

---

[51] Vol. 7, 19:23-20:10, 81:21-24; Vol. 3, 229:24-230:5; Ex. A, at 46.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

on the McAllens' collateral.[52]  McAllen's claim that Amberson fraudulently represented that he would pay off the Jefferson Bank loan is not ripe, and the arbitrator exceeded his authority by including a finding on the issue of liability in the award. *Waco Indep. Sch. Dist.*, 22 S.W.3d at 852.

63.     This Court does not have jurisdiction to confirm the award on this claim. *Gainous v. Gainous*, 219 S.W.3d 97, 105 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (noting a judgment is void if court has "no jurisdiction of the subject matter"); *see also San Antonio River Auth.*, 2020 WL 2097347, at *8; *Lower Colorado River Auth.*, 858 F.3d at 922-24; *Edwards*, 5 S.W.3d at 831.  Accordingly, the Amberson Parties respectfully request that the Court either vacate the portion of the award relating to McAllen's claims on the Jefferson Bank loan.

## C.  The $545,000 Promissory Note

### 1.  Legal Standard: Miscalculations Must Be Modified.

64.     Furthermore, a court must modify an arbitration award if the award contains an evident miscalculation of numbers.  Tex. Civ. Prac. & Rem. Code § 171.091(a)(1)(A).  An arbitrator can make a miscalculation due to "inadvertence or an error caused by oversight." *Vernon E. Faulconer, Inc. v. HFI, Ltd. P'ship*, 970 S.W.2d 36, 40 (Tex. App.—Tyler 1998, no pet.).  Correction of a miscalculation is permissible where the miscalculation amounts to a "mere error of form not affecting the merits of the controversy." *Sydow v. Verner, Liipfert, Bernhard, McPherson & Hand, Chartered*, 218 S.W.3d 162, 170 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

### 2.  The Arbitrator's Award on the Promissory Note Was Duplicative of Other Damages Awarded.

65.     The arbitrator exceeded his authority by awarding McAllen damages on the $545,000 promissory note.  To be clear, this motion to vacate does not challenge the factual

---

[52] Ex. A, at 46.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

findings of the arbitrator with respect to this claim.  However, the arbitrator incorrectly included these "damages" in his award even though they were already included as damages for other claims, resulting in a (likely unintentional) windfall for McAllen.

66.     The record shows that the note was never funded—i.e., McAllen never loaned Amberson $545,000 *in connection with this note*.[53]   McAllen's own expert witness, Jim McCormack, acknowledged in his report that the $545,000 promissory note did not involve an actual loan.[54] Amberson's financial expert, Gary Ploetz, reviewed all bank records and Amberson invoices; he too confirmed that neither of the notes was ever funded with a deposit into Amberson's accounts.[55]

67.     Moreover, a February 21, 2008 letter from Amberson to McAllen regarding the note shows that the note was treated by the parties merely as a memorialization of their "agreement that all expenses incurred in [the Forest Oil litigation] shall be reimbursed back to the client at the conclusion" of the case.[56] As further evidenced by the note's exclusion from McAllen's financial expert's amended report, which includes a schedule of disbursements paid to Amberson,[57] the note was simply part of (and not in addition to) the amount calculated by Ploetz as the balance due to McAllen in connection with the offsets owed to McAllen on the contingency fee.[58]

68.     In other words, the promissory note was meant to reflect part of the debt that the Firm already owed to McAllen in connection with sums that McAllen had previously provided the Firm, as opposed to a new and additional debt.[59]  By awarding McAllen damages on the note in

---

[53] Vol. 3, 84:5-19.
[54] Vol. 11, 163:9-24.
[55] Vol. 5, 231:2-10.
[56] Ex. J4-1.
[57] Ex. J2-33, Tab E; Vol. 5, 230:16-20.
[58] Vol. 5, 230:4-231:1.
[59] Vol. 3, 90:15-19.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

addition to the damages awarded for expenses that were to be offset against the contingency fee,[60] McAllen received a windfall for damages that he never actually incurred and were never contemplated by the parties.[61]

69.      Therefore, the arbitrator erred by awarding McAllen damages based on the $545,000 promissory note.  *See S.M. Wilson & Co. v. Urban Concrete Contractors*, No. 04-06-00227-CV, 2007 WL 1423881, at *4 (Tex. App.—San Antonio May 16, 2007, pet. denied). (holding there was no consideration where one party's promise was to fulfill a pre-existing obligation).  Accordingly, the Amberson Parties respectfully request that the Court vacate the limited portion of the award concerning damages in connection with the $545,000 promissory note.

### D.   Derivative Claims Related to Cannon Grove, the Jefferson Bank Loan, and the $545,000 Promissory Note Must Also Be Vacated

70.      The McAllen Parties alleged other derivative claims including conspiracy, alter-ego, and attorney's fees.  To the limited extent that the arbitrator found for the McAllen Parties on these claims as they relate to the Cannon Grove, Jefferson Bank loan, and $545,000 promissory note, they must also be vacated.

#### 1.   Conspiracy

71.      The arbitrator exceeded his authority by ruling that Amberson and ANR civilly conspired with each other regarding the Cannon Grove transaction because, as fully briefed above, the entire Cannon Grove transaction was outside the arbitrator's authority to consider or rule on. *See In Interest of S.M.H.*, 523 S.W.3d at 789, 796; *Osornia*, 367 S.W.3d at 713-14; *Burlington*

---

[60] Ex. A, at 33.
[61] *See* Ex. J4-1.

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

*Res. Oil & Gas Co.*, 249 S.W.3d at 44.  The Amberson Parties therefore request the Court vacate or modify the Award to remove the finding of civil conspiracy between Amberson and ANR.

### 2.   Alter-Ego

72.     The arbitrator exceeded his authority by ruling that ANR was an alter-ego of Amberson.  The arbitrator's finding in this regard was in connection with the Cannon Grove transaction, which, as fully briefed above, was outside the arbitrator's authority to consider or rule on.  *See In Interest of S.M.H.*, 523 S.W.3d at 789, 796; *Osornia*, 367 S.W.3d at 713-14; *Burlington Res. Oil & Gas Co.*, 249 S.W.3d at 44.

73.     The Amberson Parties therefore request the Court vacate or modify the Award to remove the ruling that ANR is the alter ego of Amberson.

### 3.   Attorneys' Fees

74.     The arbitrator exceeded his authority by awarding McAllen $350,000 in attorneys' fees against Amberson and ANR in connection with the Cannon Grove claims.  As fully briefed above, the Cannon Grove transaction was outside the scope of the Fee Agreements' arbitration clauses, and thus outside the arbitrator's authority as well.  *See In Interest of S.M.H.*, 523 S.W.3d at 789, 796; *Osornia*, 367 S.W.3d at 713-14; *Burlington Res. Oil & Gas Co.*, 249 S.W.3d at 44.

75.     The Amberson Parties therefore request the Court vacate or modify the Award to remove the portion awarding McAllen $350,000 in attorneys' fees against Amberson and ANR in connection with the Cannon Grove claims.

## VI.   PRAYER

For the foregoing reasons, the Amberson Parties respectfully request the Court deny the McAllen Parties' Motion to Confirm Arbitration Award, and further respectfully request the Court either vacate the award in part or modify the award as follows:

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

    i.       Vacate and remove the portion of the award relating to the Cannon Grove transaction, including the order to transfer ANR's right, title, and interest in the Cannon Grove property to McAllen;

    ii.      Vacate and remove the portion of the award relating to the $545,000 promissory note, including the award of $916,257 in damages on the unpaid promissory note against Amberson and the Firm;

    iii.     Vacate and remove the portions of the award regarding McAllen's claims on the Jefferson Bank loan;

    iv.     Vacate and remove the portion of the award that concludes a civil conspiracy existed between Amberson and ANR;

    v.       Vacate and remove the portion of the award that concludes that ANR is the alter ego of Amberson; and

    vi.     Vacate and remove the portion of the award awarding McAllen $350,000 in attorneys' fees against Amberson and ANR in connection with the Cannon Grove claims.

The Amberson Parties further request any additional relief to which they are justly entitled in law or in equity.

Dated: May 27, 2020.

Respectfully submitted,

**DAVIS & SANTOS, P.C.**

By:   */s/ Jason Davis*
       Jason Davis
       State Bar No. 00793592
       E-mail: *jdavis@dslawpc.com*
       Caroline Newman Small
       State Bar No. 24056037
       E-mail: *csmall@dslawpc.com*
       719 S. Flores Street
       San Antonio, Texas 78204
       Tel: (210) 853-5882
       Fax: (210) 200-8395
       ***Attorneys for Jon Christian Amberson, P.C., Jon Christian Amberson, and Amberson Natural Resources***

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

## CERTIFICATE OF SERVICE

I certify that on May 27, 2020 I electronically filed the foregoing with the Clerk of the Court and that a true and correct copy of this document will be sent to counsel of record, at the following addresses as follows:

| | | |
|---|---|---|
| David M. Prichard | _____ | U.S. Mail |
| PRICHARD YOUNG, LLP | _____ | CMRRR |
| Union Square, Suite 600 | _____ | Facsimile |
| 10101 Reunion Place | __X__ | E-mail |
| San Antonio, Texas 78216 | __X__ | E-file |
| E-mail: dprichard@prichardyoungllp.com | | |

| | | |
|---|---|---|
| J. A. "Tony" Canales | _____ | U.S. Mail |
| CANALES & SIMONSON, P.C. | _____ | CMRRR |
| 2601 Morgan Avenue | _____ | Facsimile |
| Corpus Christi, Texas 78405 | __X__ | E-mail |
| E-mail: tonycanales@canalessimonson.com | __X__ | E-file |

**Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership**

| | | |
|---|---|---|
| Ricardo G. Cedillo | _____ | U.S. Mail |
| Les J. Strieber III | _____ | CMRRR |
| DAVIS, CEDILLO & MENDOZA, INC. | _____ | Facsimile |
| McCombs Plaza, Suite 500 | __X__ | E-mail |
| 755 E. Mulberry Avenue | __X__ | E-file |
| San Antonio, Texas 78212 | | |
| E-mail: rcedillo@lawdcm.com | | |
| E-mail: lstrieber@lawdcm.com | | |

| | | |
|---|---|---|
| Steven A. Fleckman | _____ | U.S. Mail |
| Zach Wolfe | _____ | CMRRR |
| Andrew McKeon | _____ | Facsimile |
| FLECKMAN & MCGLYNN, PLLC | __X__ | E-mail |
| 6836 Austin Center Blvd., Suite 270 | __X__ | E-file |
| Austin, Texas 78731 | | |
| E-mail: fleckman@fleckman.com | | |
| E-mail: zwolfe@fleckman.com | | |
| E-mail: amckeon@fleckman.com | | |

Electronically Filed
5/27/2020 6:04 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Francisco J. Rodriguez                                    _____        U.S. Mail
LAW OFFICE OF FRANCISCO J. RODRIGUEZ        _____        CMRRR
111 West Nolana Ave., Suite A                       _____        Facsimile
McAllen, Texas 78504                                    __X__        E-mail
E-mail: frankr@mcallenlawfirm.com                __X__        E-file

Charles C. Murray                                           _____        U.S. Mail
ATLAS, HALL & RODRIGUEZ, LLP                    _____        CMRRR
818 Pecan Street                                             _____        Facsimile
McAllen, Texas 78502                                    __X__        E-mail
E-mail: ccmurray@atlashall.com                     __X__        E-file

Jon Christian Amberson                                  _____        U.S. Mail
Larissa Janee Hood                                         _____        CMRRR
JON CHRISTIAN AMBERSON, P.C.                  _____        Facsimile
2135 E. Hildebrand Ave.                                 __X__        E-mail
San Antonio, Texas 78209                              __X__        E-file
E-mail: chris@ambersonpc.com
E-mail: larissa@ambersonpc.com

***Attorneys for Jon Christian Amberson, P.C.,
Jon Christian Amberson, and
Amberson Natural Resources LLC***

                                     */s/ Jason Davis*
                                      Jason Davis

# Exhibit A

IN THE MATTER OF THE ARBITRATION OF

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C. | § | |
| | § | |
| Claimant, | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | ARBITRATION BEFORE THE |
| MCALLEN TRUST PARTNERSHIP, | § | HONORABLE TOM COLLINS |
| LTD., | § | |
| | § | |
| Respondents, | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES, | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | |

## AWARD

### Introduction

By Order of the 92nd District Court on April 23, 2018, the Court ordered the claims addressed herein to arbitration. This was based on a written agreement to arbitrate any fee dispute or dispute regarding services rendered between Jon Christian Amberson, P.C. ("the Firm") and the Respondents listed above ("the McAllen Parties"). Thereafter, the parties agreed to the undersigned as Arbitrator and the Court on October 18, 2018, entered its Order Appointing Tom Collins as Arbitrator Pursuant to a Rule 11 Agreement (in which the Amberson Parties preserved their running objection to the arbitrability of the "Cannon Grove" transaction addressed in Part V. herein).

The parties and Arbitrator made use of the flexibility and economy made possible in arbitration. In particular, at the request of the Arbitrator the parties through counsel very professionally divided this complex case into eight separate matters/issues to be separately addressed and around which the briefing and exhibits were organized. Thus, approximately one month prior to commencement of the arbitration hearing, the parties agreed to and submitted to the Arbitrator eight issues as follows: (1) Contingency Fee Claim; (2) Disputed Charges; (3) First Community Bank Loan; (4) Promissory Notes ($545k & $200k); Cannon Grove; (6) Jefferson

State Bank CD's; (7) Alleged Conspiracy; and (8) Alleged Alter Ego. Four rounds of separate pre- and post-hearing briefs were filed, with a separate brief filed for each of the eight issues.

In addition, the parties filed post-hearing summary briefs and a brief focused on the relief requested under four scenarios in the form of a matrix (that will become clear in the Award): (1) an enforceable contingent fee agreement and "arrangement" as to expenses between Jon Christian Amberson ("Amberson") and James Argyle McAllen ("McAllen"); (2) an enforceable contingent fee agreement but no arrangement; (3) no enforceable contingent fee agreement but an arrangement; and (4) no enforceable contingent fee agreement and no arrangement. The final briefs were filed January 24, 2020. Parts I. through VIII. of this Award address each of the eight issues in the order submitted by counsel.

Counsel also professionally marked and organized the voluminous exhibits in this case by each of the eight issues. Again given the flexibility of arbitration, the exhibits all were marked as "joint exhibits" for each issue. Thus, the exhibits relating to issue one were all marked "J1" and for the first issue, for example, there were exhibits J1-1 through J1-133 which covered eight large binders. This explains the numbering system for exhibits referenced in the Award. In all, there were approximately 325 exhibits covering 17 three-ring binders. As again encouraged in arbitration, the Arbitrator took all the exhibits into evidence with the understanding each exhibit would be given appropriate weight as assessed and weighed by the Arbitrator, including no weight. Thus, the fact that all exhibits were marked "joint" and were taken into evidence did not and does not mean that the Arbitrator deemed all submitted exhibits to be authentic or trustworthy, or agreed to by both sides as to authenticity or trustworthiness. One exhibit, an expert report of Susan Sample marked as J5-56, proffered by Amberson was withdrawn and by agreement removed by the Arbitrator from his exhibit book and not reviewed.

The Arbitrator conducted the hearing over ten full days (June 17-21 and 24-28, 2019) and one half day (July 26, 2019). The Arbitrator received the testimony of 16 live witnesses and one witness by agreed deposition video and transcript excerpts. Again given the special advantages of arbitration, the Arbitrator sought to hear fully from each witness as to all relevant matters and to then accord such weight to and assess the credibility of the testimony of each witness as the Arbitrator deemed appropriate.

The parties' arbitration agreement does not speak to the type of Award to be entered. The parties requested and agreed to a "reasoned Award," which is to be more detailed than a short-form "standard Award" but is not in the form of formal Findings of Fact and Conclusions of Law as might be entered by a court as to every element of a claim and every defense. Thus, while the Arbitrator on this substantial record and briefing has sought to provide his essential reasoning as to each of the eight issues (as contemplated by a "reasoned" Award), the Arbitrator has not and does not intend the Award to consist of formal findings of fact and conclusions of law. The Arbitrator has considered all the arguments, claims and defenses asserted by both sides, regardless of whether or not an argument or defense specifically is addressed herein or not. The Arbitrator has assessed the credibility of the witnesses, especially the two main parties, Amberson and McAllen. His assessment of their credibility and the documentary evidence forms the primary basis for this Award.

Therefore, having been appointed by the District Court to serve in accordance with the parties' arbitration agreement and the Court's Order, and having been duly appointed and heard the proofs and allegations of the parties, hereby enters this AWARD as follows:

## 1. Jon Christian Amberson, P.C. ("the Amberson Firm" or "The Firm") Claim to a Contingency Fee Based on the Forest Oil Arbitration Award and Judgment

The Amberson Firm alleges in its Second Amended Petition filed in this proceeding that the McAllen Parties have breached their contract with the Firm to pay a contingency fee under two January 2005 Contingency Fee Agreements. In the alternative, the Amberson Firm seeks damages based on doctrines of quantum meruit and unjust enrichment, and a declaration of a constructive trust as to one-third of all cash consideration received by the McAllen Parties under the Forest Oil Arbitration Judgment (the Forest Oil Arbitration Panel titled their award as a "Final Judgment and decision of the Panel," but herein it may be referred to as an "Award," a "Judgment" or a "Final Judgment"). Finally, the Amberson Firm seeks recovery of its reasonable attorneys' fees and costs.

## A. Analysis of the Four Corners of the Three Fee Agreements Prepared by Amberson for His Firm and Signed by the McAllen Parties: The Hourly Fee Agreement Applies to the Forest Oil Arbitration Award

There are three attorney-client engagement letters/agreements, all dated within 45 days of each other. There is significant overlap in the scope of representation in the letters. Also, other terms of the Contingent Fee Agreements (and lack of certain terms) in particular are crucial to the analysis. Therefore, the provisions of the letters/agreements are set forth below in pertinent detail.

Amberson at the start of the relevant events was married to one of McAllen's daughters, and thus Amberson and McAllen were son-in-law and father-in-law. Amberson prepared as counsel on his Firm's letterhead an hourly fee agreement dated December 10, 2004 ("the Hourly Fee Agreement"). The clients are listed in Paragraph 1 as McAllen individually, and four entities: El Rucio Land and Cattle Company, Inc.; San Juanito Land Partnership, Ltd.; McAllen Trust Partnership; and John R. Willis Management Partnership, Ltd ("the McAllen Entities")(McAllen, individually, and the first three named entities being the Respondents in this proceeding and thus referred to collectively as "the McAllen Parties"). Amberson and the clients signed the Hourly Fee Agreement.

Amberson prepared as counsel on his Firm's letterhead approximately 45 days later two contingent fee agreements dated January 25, 2005 (collectively "the Contingent Fee Agreements"). The clients in one letter are McAllen and his son ("McAllen Contingent Fee Agreement"). The clients in the second letter are the McAllen entities listed above ("McAllen Entities Contingent Fee Agreement"). Thus, all the clients in the Hourly Fee Agreement also are clients in the Contingent Fee Agreements. Amberson and the clients signed the Contingent Fee Agreements.

3

For comparative and analytical purposes between the Hourly Fee Agreement and the Contingency Fee Agreements, various provisions are set forth as follows:

## 1. The initial "reference" and preamble paragraph in the three fee agreements:

**Hourly Fee Agreement:**

The Hourly Fee Agreement at the outset states "RE: **Forest Oil Corporation**" and continues in the preamble paragraph that the letter summarizes and confirms the terms and conditions of the Amberson Firm's "role as legal counsel for you in connection with the prosecution of claims against the above referenced oil corporation **relating to environmental contamination issues** arising from the actions of **Forest Oil Corporation** and its employees as relayed to you by Mr. Bobby Pearson, a former employee of **Forest Oil Corporation** (emphasis added)."

**Contingent Fee Agreements:**

The McAllen Contingent Fee Agreement at the outset states "RE: Contract of Employment Regarding Representation of . . . [McAllen and son], individually against **Forest Oil Corporation** and the Other Responsible Entities," and continues in the preamble paragraph that the letter summarizes and confirms the terms and conditions of the Amberson Firm's "role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies **relating to environmental contamination issues** related arising [sic] from illegal dumping of hazardous materials and radioactive materials (emphasis added)."

The McAllen Entities Contingent Fee Agreement at the outset states "RE: Contract of Employment Regarding Representation of . . . [the McAllen Entities] related to prosecution of Claims against **Forest Oil Corporation**, Conoco Inc., and Conoco/Philips Inc.," and continues in the preamble paragraph that the letter summarizes and confirms the terms and conditions of the Amberson Firm's "role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies **relating to environmental contamination issues** related arising [sic] from illegal dumping of hazardous materials and radioactive materials (emphasis added)."

## 2. Paragraph 2 "Purpose of Representation" in the three fee agreements:

**Hourly Fee Agreement:**

"Paragraph 2: **Purpose of Representation**: It is understood that our firm is being retained by you to provide legal services in relation to the action against **Forest Oil Corporation**, and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated the June 22. 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-

4

2016-95-G, **state statutes, environmental laws and state regulations on your properties** (emphasis added, except for the heading "Purpose of Representation")."

**Contingent Fee Agreements:**

"Paragraph 2: **Purpose of Representation**: It is understood that the firm is being retained by you to provide legal services in relation to an action against **Forest Oil Corporation**, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated **state statutes and environmental laws and regulations on your properties** (emphasis added, except for the heading "Purpose of Representation")."

### 3. Certain Additional Hourly Fee Agreement Provisions:

The Hourly Fee Agreement sets an hourly rate of $350 per hour for Amberson and $250 per hour for Larissa Hood; discusses that other outside counsel will need to be hired by the Amberson Firm if the matter does not resolve early on; that the clients will be responsible for payment of costs and expenses; and that the Amberson Firm will be entitled to recover from the clients any additional sum in attorneys' fees that might be awarded the clients by a tribunal in excess of the fees actually paid by the clients to the Firm.

### 4. Certain Additional Contingent Fee Agreements Provisions:

a. **Paragraph 7 of both Contingent Fee Agreements** reads in pertinent part:

"7. **Determination of Fees**: The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients [sic] share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf."

. . .

"It is clearly understood that these attorney's fees may be divided among the attorneys herein and **such other attorneys this firm deems necessary to hire** in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them **at no extra cost or attorney's fees to you** (emphasis added)."

. . .

**"The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees** (emphasis added)."

b. **Paragraph 8 of both Contingent Fee Agreements** is entitled "Costs and Expenses" and states in pertinent part that "You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives." After defining ten categories of costs included within this expense obligation, Paragraph 8 concludes that "If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid."

## 5. Analysis of the Three Fee Agreements:

It is very important to note that the Contingent Fee Agreements:

* do not state that they are replacing the existing Hourly Fee Agreement;

* do not state that they are amending the existing Hourly Fee Agreement;

* do not state that they are in addition to the Hourly Fee Agreement;

* do not make any reference to the existing Hourly Fee Agreement;

* do not address whether or not the clients are entitled to a credit for any hourly fees charged by the Amberson Firm and paid by the McAllen Parties;

* do not address in the discussion of a percentage, contingent fee on the "gross recovery of damages" in Paragraph 7 whether or not the Amberson Firm would even be entitled to recover a contingent fee on any awarded hourly fees paid by the McAllen Parties to the Amberson Firm pursuant to hourly billings invoiced by the Amberson Firm;

* do not make any reference to each other;

* do not explain the interplay between the new Contingent Fee Agreements and the existing Hourly Fee Agreement;

* do not state what services regarding Forest Oil Corporation are covered by the new Contingent Fee Agreements that are not covered by the existing Hourly Fee Agreement that expressly relates to Forest Oil Corporation; and

* do not state that the Amberson Firm will be on some type of a "blended" fee agreement of a reduced hourly rate plus a contingent fee.

6

Given the two new Contingent Fee Agreements expressly relate to the prosecution of claims against Forest Oil Corporation regarding environmental contamination issues, as the existing Hourly Fee Agreement also does, it was necessary for the Amberson Firm to expressly address in the new Contingent Fee Agreements what the impact of the new Contingent Fee Agreements was on the existing Hourly Fee Agreement. The new Contingent Fee Agreements do not do so.

The Hourly Fee Agreement most specifically describes the McAllen Parties' claims prosecuted and awarded in the Forest Oil Arbitration Proceeding. Its Paragraph 2 "Purpose of Representation" expressly applies the Hourly Fee Agreement to the Amberson Firm pursuing claims for violations to "the June 22, 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-2016-95-G . . . ." The Contingent Fee Agreements do not refer specifically to the Amberson Firm pursuing claims for violations of the June 22, 1999 letter agreement. The Final Judgment and Decision of the Panel in the Forest Oil Arbitration is short and sweet, but makes repeated references to the Award enforcing the terms of the 1999 letter agreement (referred to as the "1999 Surface Agreement")---especially as relates to declaratory relief and remediation. It is important to note that Amberson and his Firm now seek to monetize the value of the ordered remediation under the 1999 letter agreement and recover one-third of that amount as part of its contingent fee claim. The Court's Final Judgment enforcing the Arbitration Award incorporates the Arbitration Award's grants of relief under the 1999 letter agreement. And in subsequent appeals all the way to the Supreme Court of Texas, the appellate courts focused on the 1999 letter agreement, and affirmed the McAllen Parties' right to enforce the 1999 agreement. Thus, from the initial Arbitration Award through all the judicial levels of review concluding in the Texas Supreme Court, it is clear that the claim under the 1999 letter agreement is a key component---and it is the Hourly Fee Agreement, not the Contingent Fee Agreements, that expressly covers and applies to claims under the 1999 letter agreement.

## B. The Firm's Mid-Stream Change in the Fee Agreement Did Not Comply with Texas Law

The Amberson Firm had an existing attorney-client relationship with the McAllen Parties evidenced by the Hourly Fee Agreement when it prepared and had signed by the McAllen Parties the overlapping Contingent Fee Agreements. The Contingent Fee Agreements were an attempted mid-stream change in the existing relationship and fee contract. As set forth below, Amberson's contention that the Contingent Fee Agreements addressed different, additional claims is without merit. In Texas, mid-stream changes to fee agreements are closely scrutinized. Because the relationship is fiduciary in nature, there is a presumption of unfairness or invalidity attaching to such contracts. The burden is on the attorney to prove that the new agreement is fair and reasonable. The lawyer must inform the client of all material facts, and be clear and generally unambiguous in doing so---viewed from the client's perspective. The Contingent Fee Agreements, as prepared by the Amberson Firm, on their face are not clear and unambiguous and do not address critical, material facts regarding their interplay with and relationship to the existing Hourly Fee Agreement. One cannot know from reading the three agreements with such similar descriptions of the scope and purpose of the representation what agreement applies to

what, except that the Hourly Fee Agreement, as discussed above, expressly applies to the June 22, 1999 letter agreement that was the basis for the Forest Oil Arbitration Award and Judgment.

Even Amberson conceded in his testimony at the hearing regarding the three agreements that "I don't think they were less than clear, but in hindsight they could have been clearer, yes." Tr. Vol. 4:142. Given the extremely high standard employed by Texas courts to assess an attorney's fiduciary obligation to a client with regard to the fee agreement, this admission itself is a death knell to the Amberson Firm's claim.

Amberson at the hearing attempted to orally explain the interplay between the three fee agreements, and how the Contingent Fee Agreements apply to the Forest Oil Arbitration Award and Judgment and the Hourly Fee Agreement does not. His explanation of different and developing claims being covered by different fee agreements is confusing. His testimony is not borne out by the wording of the three agreements, and does not overcome the presumption that mid-stream changes in the original fee agreement are unfair and invalid. Amberson's testimony did not establish that the change from an hourly to a contingent fee as to any claim was clear, fair and reasonable. Even if his testimony was clear and compelling, this is what would have needed to be --- and should have been --- clearly set forth in writing in the three agreements. After-the-fact oral attempts to explain are not sufficient. The Amberson Firm's invoicing also did not keep separate what time applied to what agreement as Amberson sought to explain it.

The evidence presented by Amberson and his Firm therefore is insufficient to support enforcement of the later Contingent Fee Agreements against the Forest Oil Arbitration Award and Judgment to the exclusion of the earlier Hourly Fee Agreement. On this basis, not only does the Hourly Fee Agreement most clearly apply to the Forest Oil Arbitration Award and Judgment, but the later Contingent Fee Agreements are invalid and unenforceable mid-stream changes to the existing Hourly Fee Agreement and thus do not apply to the Forest Oil Arbitration Award and Judgment.

## C. Amberson and His Firm's Actions in the Underlying Forest Oil Arbitration Proceeding Establish the Modification, Waiver, Abandonment and Unconscionability of the Contingent Fee Agreements

If one were to prepare a full factual chronology of all the events that occurred in connection with the prosecution of environmental contamination claims against Forest Oil Corporation, it would take hundreds of pages. Therefore, while the Arbitrator has considered and weighed all the facts presented by the oral testimony over ten-plus full hearing days and the voluminous exhibits, only essential facts pertinent to the contingent fee analysis are set forth.

The Forest Oil Arbitration Proceeding spanned many years and was hard fought, with the well-known and aggressive Susman, Godfrey firm out of Houston on the other side. Amberson played the central role in the representation of the McAllen Parties, as overall lead, coordinating counsel, overseeing all aspects of the case, including hiring outside law firms and experts. By all accounts he did an excellent job, and secured ultimately a great result for the McAllen Parties to the tune of a $25 million dollar monetary recovery plus remediation orders for the property.

8

**1. Amberson Did Not Comply With and Violated Key Terms of the Contingent Fee Agreements During Prosecution of the McAllen Parties' Claims Against Forest Oil, and the Firm Eliminated the Contingency by Years of Hourly Billings on the Forest Oil Arbitration**

Notwithstanding the good result in the arbitration, Amberson and his Firm ignored, violated and abandoned the two most important financial terms of the Contingent Fee Agreements that favored the McAllen Parties.

First, as argued by the McAllen Parties, starting in June, 2005, and over the next many years, Amberson through his Firm billed the McAllen Parties and were paid by them hourly fees totaling $2,340,064.76. Amberson (primarily for purposes of a credit analysis not germaine to the instant discussion) argues that the amount that should be considered actually paid his Firm in hourly fees on the Forest Oil Arbitration versus other matters is the lesser amount of $1,690,464.76, because the $2.34 million figure includes time spent by the Firm prior to October 10, 2010, that was not related to the Forest Oil Arbitration. The Arbitrator does not agree from the arbitration record that time by the Amberson Firm on the Forest Oil Arbitration Proceeding prior to October 10, 2010, was not billed by the Firm and paid by the McAllen Parties. But the actual amount to be considered does not matter for this analysis, and thus the Arbitrator will use this lesser amount of "at least $1,690,000.00" for the analysis that follows---but with the caveat that using this number is not to be construed as some inconsistency in the Arbitrator's analysis that the Amberson Firm clearly billed the McAllen Parties on an hourly basis for a substantial amount of arbitration-related work, or as evidence of any other determination by the Arbitrator.

Regardless of the amount used for billed and collected hourly fees on the Forest Oil Arbitration matter, collection of hourly fees at any point by the Amberson Firm on the Forest Oil Arbitration flies in the face of the Contingent Fee Agreements' Paragraph 7:

**"The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees** (emphasis added)."

But for the fact that the McAllen Parties ultimately prevailed in the Forest Oil Arbitration Proceeding and through multiple appeals, the McAllen Parties would be out at least $1,690,000.00 million in hourly attorney's fees paid the Amberson Firm during the course of the Forest Oil Arbitration Proceeding. This violates the Contingent Fee Agreements.

Second, the Amberson Firm hired multiple outside counsel for the Forest Oil Arbitration Proceeding: Winstead, P.C.; DiNovo, Price, Ellwanger & Hardy, LLP; and Bracewell & Giuliani LLP. Amberson lined these three law firms up on an hourly basis with the agreement for them to submit regular invoices on an hourly basis during the course of the Forest Oil Arbitration Proceeding. Amberson did not attempt to bring any of the three firms in as part of the Contingent Fee Agreements. Amberson did not state to any co-counsel that he was proceeding on any Contingent Fee Agreements. The three firms regularly submitted their hourly-fee invoices to Amberson, who forwarded them to the McAllen Parties for payment. During the

9

course of the Forest Oil Arbitration Proceeding, the McAllen Parties paid these three firms millions of dollars in fees.  The McAllen Parties total the payments to be $5,061,858.39 in fees and expenses.  Amberson's actions again violate Paragraph 7 of the Contingent Fee Agreements:

> "It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as agreed between them **at no extra cost or attorney's fees to you** (emphasis added)."

Thus, the McAllen Parties were billed and paid over six million dollars in hourly fees and expenses.  These hourly-fee invoices billed the McAllen Parties and paid by them to the Amberson Firm and the three outside firms were in total disregard and contravention of the terms of the Contingent Fee Agreements that the Amberson Firm now seeks to enforce against the McAllen Parties.  Indeed, it appears that the Firm even seeks to recover one-third of the hourly fees of co-counsel that were awarded the McAllen Parties by the Forest Oil Arbitration Panel.

In addition, risk to counsel is the hallmark of a valid contingent fee arrangement.  There are two rationales for a contingent fee agreement: (1) they allow a plaintiff who cannot afford to pay a lawyer up-front to pay the lawyer out of any ultimate recovery (not an issue here with the McAllen Parties based on the millions of dollars they were able to pay and paid in fees and expenses during the Forest Oil Arbitration Proceeding, although it appears McAllen borrowed monies at times to pay various fees and expenses); and (2) by offering the potential of a greater fee than might be earned on an hourly-rate basis, they compensate the attorney for the risk that the attorney will not receive any fee if the case is lost.  Here, Amberson and his Firm received payment of at least $1,690,000.00 in fees, and payment along the way of millions of dollars of expenses.  Amberson thus maneuvered himself into a place of little to no risk as he insured he and his Firm were being compensated at some level of hours and hourly rates along the way for his time and all the expenses, and that his co-counsel were being paid hourly by McAllen and not out of his contingent fee.  The Amberson Firm thus was not at risk of recovering no fee.  An after-the-fact offer by Amberson on behalf of his Firm to credit the contingent fee claim with the hourly fees paid does not undo this requirement.  Amberson in his testimony agreed that a contingent fee is only allowed if there is a risk of no recovery.  (Tr. 4, p. 144).  There has to be an actual contingency of non-recovery for a contingency fee to be valid.  Based on the above under applicable principles, the Amberson Firm's claim for a contingency fee thus is unconscionable and unenforceable.


## 2. Amberson Took the Position in the Forest Oil Arbitration Proceeding and Hearing that His Firm Was Only on the Hourly Fee Agreement with the McAllen Parties

William Albright was retained to serve as the McAllen Parties' attorneys' fees expert at the Forest Oil Arbitration hearing.  It was necessary that the attorneys for the McAllen Parties submit to the Arbitration Panel their hours and rates in support of the claim for an award of attorney's fees, all of which would be sponsored and supported by Mr. Albright.

Amberson gave Albright the Hourly Fee Agreement and said the Firm was on an hourly arrangement with the McAllen Parties for the Forest Oil Arbitration. Amberson did not ever say to Albright during the time he served as the attorneys' fees expert that his Firm was on a contingent fee with the McAllen Parties for the arbitration. Based on all this, Albright prepared his expert report (and supplemental reports), which were addressed and delivered to Amberson, stating that the attorneys were providing fees on an hourly basis. Amberson did not contact Albright to correct him that he [Amberson] was in fact on a contingent fee.

Albright properly addressed in his report the reasonableness of the attorneys' fees sought under the familiar eight factors known as the "Arthur Anderson" factors. The eighth factor is whether the fee is fixed or contingent. If Amberson believed he in fact was on a contingent fee for the Forest Oil Arbitration, that fact needed to be disclosed by Amberson. It was not.

The Amberson Firm had maintained records of the hours spent by the Firm's counsel on the Forest Oil Arbitration Proceeding. The Amberson Firm indicates that during the course of the representation of the McAllen Parties it had not billed all the hours the Firm contends were related to the Forest Oil Arbitration Proceeding. The Firm also had billed the McAllen Parties in the invoices at hourly rates less than those stated in the Hourly Fee Agreement. Thus, per Amberson, the invoices totaling approximately either $1,690,000.00 or $2,340,000.00 discussed above that were paid by the McAllen Parties did not include all the hours worked on the Forest Oil Arbitration Proceeding, and were at rates less than stated in the Hourly Fee Agreement. Of course if the Firm was working on a contingent fee, no hours should have been being billed on an interim, hourly basis.

Given the Amberson Firm's position that the actual invoices sent to and paid by the McAllen Parties were for reduced hours and at discounted rates billed to the McAllen Parties, there would have been nothing improper about Amberson and his Firm presenting to the Arbitration Panel by an Amberson Affidavit as part of the Amberson Firm's evidence in support of a full award of attorneys' fees and costs the actual invoices sent together with log/time sheets of all the actual hours worked and the contracted-for full hourly rates stated in the Hourly Fee Agreement---with an explanation why the actual invoices sent McAllen were for lower hours at lower rates. But that was not done here. Producing the actual invoices would have disclosed millions in fraudulently-billed expenses discussed in Part II. of this Award. Thus, in order to (1) present invoices that did not reflect these fraudulent billings and (2) present a fee request on total hours at full rates, Amberson and his Firm did the unthinkable: Amberson and his Firm at some point during the ongoing Forest Oil Arbitration created over 450 pages of purported monthly invoices on Amberson Firm letterhead, with accompanying monthly cover letters to McAllen as if they actually were prepared when dated and mailed to the client. They were not the actual invoices, although they were created to appear to be. The credible evidence from Albright is that Amberson never provided Albright with the true bills---only the ones that were made up after-the-fact.

These apparent invoices were dated from the period February 1, 2005, until February 29, 2012. Except for the last few invoices, from February 1, 2005, through the invoice dated November 1, 2011, the invoices all were dated on the first day of each month---even for New Years Day. Amberson represented them to Albright to be the Amberson Firm's actual invoices

sent each month to the McAllen Parties and purportedly paid by the McAllen Parties. Albright thus sponsored them to the Arbitration Panel as the evidence of the Amberson Firm's billings.

These made-up invoices were referred to throughout the hearing before the undersigned by the sanitized term of "show bills." The hours and rates may have been accurate, but the **format** in invoices and cover letters (covering over 450 pages) suggesting these were the <u>actual</u> invoices sent and paid was anything but accurate. Case decisions holding that the actual arrangement between a lawyer and his client is not determinative of reasonable and necessary attorneys' fees does not countenance or sanction in any way what Amberson did in creating and submitting through the attorneys' fees expert as evidence the created "show bills." There was a serious lack of disclosure and candor on Amberson's part regarding what the "show bills" were, and what they were not but appeared to be.

As discussed in other parts of this Award, Amberson's creating of this evidence for purposes of the Forest Oil Arbitration Proceeding greatly impacts the Arbitrator's assessment of the credibility of Amberson, and in particular the trustworthiness and authenticity of three letters submitted by Amberson to this Arbitrator as trustworthy evidence in this arbitration proceeding, which three letters are hotly disputed as to authenticity and receipt by the McAllen Parties. Each of the three letters are addressed hereafter in the section of the Award to which they relate.

The confusion created by Amberson regarding the fee arrangement with the McAllen Parties (including the multiple, overlapping fee agreements, his indications to Albright that he only was on an hourly-fee basis per the Hourly Fee Agreement and his "show bills") reared its head during the testimony of McAllen at the Forest Oil Arbitration Hearing. During that hearing, Forest Oil counsel asked McAllen (based on his earlier deposition testimony years earlier in 2005) what kind of payment agreement he had with his lawyers, "contingent fee, hourly fee, flat fee, or something else?" (Ex. J1-24, p.2554). McAllen responded, "You know, it's a contingency fee. It might have some hourly fees on the side I'm not aware of." (Id.) After some further back and forth, McAllen Parties' co-counsel William Parrish interrupted the questions and stated to the Panel:

"For the panel's information, there is no contingent fee. I'm not sure the witness understands a contingent fee. We are on an hourly fee. Winstead's on an hourly fee."

"And Mr. Amberson, as you'll see when the attorneys' fee presentation is made, payment is made to Mr. Amberson who charges --- sends our bills on to the client, but they're hourly rates. We have submitted our hourly fee statements to the other side. They know the hourly charges that we have charged and we submitted fee statements, details by hour and billings by hour, so I'm not sure the witness even understands what a contingent fee is, but I don't want the panel to be misled." (Id. at p. 2556).

Forest Oil continued with questions regarding McAllen's earlier 2005 deposition testimony about a contingent fee, culminating in his asking:

"Q: So has the nature of your attorneys' fee relationship with your lawyers changed over time?

"A: No.  Maybe I misunderstood Chris Amberson in the beginning.

"Q: You thought you had a contingent fee relationship with your lawyers of 33 and a third, but I guess we've just heard from your lawyer that you don't.

Is that the first time you're learning that you don't have the kind of contingent fee relationship you thought you had?

"A: Look, I trust my lawyer, Chris Amberson." (Id. at p. 2558).

Questions then turned to another subject.

At the next break in the McAllen Parties' break-out room, there was great angst among counsel with McAllen about him testifying that he was on a contingent fee.  Amberson was aware and involved in all that was then transpiring on this question of the fee arrangement. Amberson did not then or thereafter indicate to McAllen, co-counsel or Mr. Albright that he was in fact on a contingent fee agreement with McAllen, that he had charged the McAllen Parties on invoices at reduced hours and rates that he had not produced in the Forest Oil Arbitration Proceeding, and that the Statements he had provided to Mr. Albright (the "show bills") had been created after-the-fact just for the Arbitration Proceeding.  The Panel accordingly was never advised by Amberson on behalf of his Firm that he was in fact claiming a contingent fee in any Award.  Amberson stayed absolutely quiet until after the Forest Oil Arbitration Proceeding was concluded, and then asserted his contingent fee claim by filing a state court lawsuit, which is now is the first matter referred to arbitration before the undersigned.

And of course McAllen trusted Amberson, as he stated, because Amberson at that point was still McAllen's son-in-law.  And of course McAllen was confused.  The three overlapping fee agreements create great confusion.  He has never denied signing the Contingent Fee Agreements after signing the Hourly Fee Agreement.  His confusion in his testimony regarding the three agreements, what he had with Amberson and what covered what, stems from the confusion in the three agreements themselves and how Amberson proceeded under the agreements.  Amberson admits he billed McAllen hourly at least approximately $1.7 million dollars in arbitration-related time, but he now claims all his arbitration-related time is subject to the Contingent Fee Agreements.  That on its face creates great confusion.  Different matter numbers being used by the Amberson Firm in invoicing on various matters was not clear then, and is not clear now when one analyzes the record of what was being billed for what in fees and expenses.  Amberson even acknowledged in his testimony that allocating hours between the hourly and contingent fee work became very confusing because all was so intermingled.  The fact that the McAllen Parties signed the Contingency Fee Agreements and that McAllen twice testified that the Amberson Firm had a contingency fee agreement is not determinative to whether or not there now is a valid, enforceable contingency fee contract.  As discussed, when McAllen so testified in the Forest Oil Arbitration hearing, Amberson did not "correct the record" by supporting McAllen but rather continued with all concerned, including his attorneys' fees expert who testified to Amberson's hourly fee agreement and sponsored the made-up "show bills" with the Arbitration Panel, that he was on the Hourly Fee Agreement with the McAllen Parties. The question now is whether Amberson by his drafting of the multiple, overlapping fee

13

agreements and subsequent conduct can enforce the Contingent Fee Agreements against the McAllen Parties.

Based on a weighing of all the evidence, including the matters set forth above, the Amberson Firm modified, waived and abandoned any contingent fee claim in favor of an hourly fee, as he and his Firm so represented to the Forest Oil Arbitration Panel through the Firm's created "show bills." Thus, in addition to the fact that the Hourly Fee Agreement most directly applies to the Forest Oil Arbitration Award and its subsequent enforcement by the Texas courts, Amberson on behalf of his Firm modified, waived and abandoned any contingency fee claim in favor of the Hourly Fee Agreement on which he collected hourly fees of at least $1,690,000.00.

### D. Amberson Seriously Breached Fiduciary Duties Owed The McAllen Clients That Independently Bar His Firm's Recovery of a Contingent Fee

Part II. of this Award addresses how Amberson and his Firm committed clear and serious breaches of fiduciary duties owed the McAllen Parties with regard to fraudulent charges in the millions of dollars. This is an additional and independent basis that the Arbitrator adopts for denying the Amberson Firm's contingency fee claim.

### E. Other Assessments of the Evidence and the Parties' Arguments

1. The Letter dated January 20, 2005 - The Amberson Firm relies on Exhibit J1-4, which is a document in the form of a letter on Amberson Firm stationary dated January 20, 2005, addressed to Mr. James A. And Frances McAllen and signed by Amberson. The McAllen Parties challenge the authenticity of this exhibit, contending it was not received by any of the McAllen Parties. There is no proof in the form of a signature by the McAllens on the letter, a certified mail receipt, a FAX confirmation, an email. etc., that the document was sent and received. Amberson counsel ably sought to raise doubts about whether this document and two other proffered letters in dispute might well have been received given the procedures in the McAllen office, but such was not sufficient to alleviate the Arbitrator's concerns regarding the authenticity of Exhibit J1-4. The January 25, 2005 Contingent Fee Agreements make no reference to and do not incorporate what would be a very important letter dated five days earlier summarizing a new fee arrangement and discussions with the client regarding different matters under different fee agreements. Given the undisputed evidence discussed above regarding Amberson's creation from whole cloth, and the improper submission as evidence to the Arbitration Panel in the Forest Oil Arbitration Proceeding, of purported monthly Statements and invoices covering an approximate seven –year period that were not actual Statements and invoices sent to and paid by the McAllen Parties---as they appeared and were represented by Amberson to be---the Arbitrator has no confidence in the authenticity of and thus places no weight on Exhibit J1-4. Even if the Arbitrator considered Exhibit J1-4, that would not affect the Arbitrator's conclusions because the Contingent Fee Agreements themselves needed to on their face make clear to what they applied, how they were to be applied given the existing Hourly Fee Agreement, and --- if there was to be a "blended rate agreement" of hourly fees and a contingent fee --- exactly what was the agreement. Amberson did not do any of those things. Also, in the

14

purported letter Amberson is having McAllen pay all expenses under a contingent fee arrangement, thus seeking again to limit his Firm's risk.

2. The Forest Oil Arbitration Panel Award of Attorneys' Fees - The fact that the McAllen Parties ultimately were reimbursed by the Arbitration Panel for attorneys' fees paid by them to the Amberson Firm and the other outside law firms on an hourly basis is not relevant to the question of the enforceability of the Contingent Fee Agreements. Had the McAllen Parties not prevailed in the Forest Oil Arbitration and received an award of attorneys' fees, the McAllen Parties would have paid millions of dollars in attorneys' fees based on hourly-rate invoices---in violation of Paragraph 7 of the Contingent Fee Agreements. Similarly, the fact that the Amberson Firm contends that the McAllen Parties received an attorneys' fees award and reimbursement per the Amberson Firm's "show bills" at an amount in excess of what the McAllen Parties actually were billed and paid also is not relevant to an analysis under Paragraph 7 of the Contingent Fee Agreements. And to the extent the Hourly Fee Agreement in Paragraph 10 addressed the circumstance of an attorneys' fees recovery by the clients in excess of the fees paid, the Amberson Firm has argued that the Contingent Fee Agreements solely apply to the Forest Oil Arbitration and Award and thus are precluded and estopped from now seeking to resurrect such a claim, which they properly have not made.

3. Joe De La Garza Testimony - Another claim to be addressed in this Award at Part VI. involves a loan by Jefferson Bank to Amberson's Firm, secured by McAllen certificates of deposit. Mr. Joe De La Garza is the commercial lending officer responsible for the loan. He testified at the hearing.

Amberson argues that an email written by De La Garza to his superior at the bank (Ex. J6-11) establishes that McAllen was telling him the loan would be paid off by the Amberson Firm out of what, Amberson contends, had to be his right to a contingent fee. The facts do not support this. First, De La Garza stated that McAllen never told him personally that Amberson had a valid contingent fee or that he, McAllen, owed a contingency fee. (Tr., Vol 7, p.p. 64, 72). Second, De La Garza wrote his superior after a telephone discussion with McAllen, confusingly referring to a "settlement payment" on a $25 million bond, and not a contingent fee recovery from an arbitration award. And third, De La Garza testified consistent with this that "what I gathered was that the case would be settled and that Chris [Amberson] would be paid his fee for settling the case, and that would then, in turn, pay off our loan." (Tr., Vol. 7, p. 23). De La Garza did in fact receive a letter from Amberson dated July 24, 2017, in which Amberson asked De La Garza to accommodate him "in my efforts to retire the above referenced debt out of the proceeds received from the contingency fee agreements." (Ex. J6-10). What Amberson did not tell De La Garza was that the Amberson Firm had sued McAllen on his contingency fee claim in 2015, and that his entitlement to such fee was in dispute. The Arbitrator appreciates that borrowers and obligors such as Amberson and McAllen would hope that the bank would not take action on the debt and the security. Thus, the understanding, whether accurate or not, of the loan officer from communications with the borrower and/or obligor has no real bearing on the Arbitrator's decision. What is clear is that De La Garza did not testify that McAllen told him that Amberson had a valid contingent fee. The fact that Amberson at some point gave De La Garza or someone else at the bank a copy of one or both of the Contingent Fee Agreements does not impact what De La Garza knew or did not know about the issue before the Arbitrator here.

15

4. The "Two Hats" Argument - The fact that Amberson was McAllen's son-in-law does not lessen the attorney's duties and responsibilities regarding fee arrangements. If anything, the argument can be made that a family relationship heightens the lawyer's duties since a lay person might be inclined to overly trust a lawyer who also is a relative. This reflects itself in McAllen's above-quoted statement under cross-examination in the Forest Oil Arbitration Proceeding about his fee arrangement when the confusion arises over hourly versus contingent fee, and he adamantly states: "Look, I trust my lawyer, Chris Amberson." The fact that Amberson was wearing "two hats" as McAllen's lawyer and son-in-law did not lessen the duties he owed as an attorney to his client.

5. The Amberson Divorce - Amberson filed for divorce from McAllen's daughter in 2012, which was a little over three months after the Forest Oil Arbitration Panel rendered its Final Judgment and Decision of the Panel. It appears the divorce became final approximately two years thereafter. Amberson contends that the divorce created hard feelings on the part of McAllen and that this explains his motive for now contesting Amberson's contingent fee claim. Divorces typically create hard feelings on both sides, and can explain motives and conduct on both sides. This Arbitrator assesses the facts and law in reaching his result herein, and is not swayed in any direction by the fact of the intervening divorce and its impact on the parties because the key facts relating to Amberson's conduct that form the basis of the Arbitrator's decision pre-date the divorce.

6. The Net Effect of a Contingent Fee Award After Offsets/Credits - Even if the Arbitrator were to award the Amberson Firm a contingent fee, the net effect would be a negative recovery after rightful offsets and credits to the fee are applied. The Amberson Firm under established law is not entitled to recover the value of any remediation awarded or performed. Thus, given that ultimately the appeal bond payment from Forest Oil to the McAllen Parties was $25,000,000.00, one-third would be $8,333,333,33. Based on an analysis of the Forest Oil Arbitration Award, this number would include the attorneys' fees as proved by the Amberson Firm and all co-counsel. If one applies the provisions of the Contingency Fee Agreements, at a minimum McAllen is entitled to an offset and credit of at least the $1,690,000.00 argued by Amberson for his Firm's paid hourly fees, the approximate $5,061,000.00 in fees and expenses of co-counsel (which pursuant to Paragraph 7 of the Contingency Fee Agreements were to be at no cost to the McAllen Parties and come out of the Amberson Firm's fee), and the fraudulent charges discussed in Part II. of at least $2,500,000.00 (the actual, specific offset amount agreed-to by Amberson is higher---as discussed in Part II.A.7.), for a very conservative and total minimal offset and credit of approximately $9,250,000.00. Even setting aside other amounts the Amberson Firm is willing to have applied as an offset/credit, these three categories of offset/credit alone would reduce any actual contingency fee recovery to zero. Even on the lesser amount of offsets/credits conceded by Amberson totaling $7,244,617.89, the resultant award would be approximately $1.1 million---but this agreed offset number incorrectly excludes the fees and expenses paid co-counsel in contravention of Paragraph 7 of the Contingency Fee Agreements. An attorney cannot recover on a contingent fee contract and ignore any of its provisions.

### F.  Award on the Amberson Firm's Contingency Fee Claim

1.  For all the alternative reasons set forth above, the Amberson Firm's monetary claim for a contingency fee on the Forest Oil Arbitration Award and Judgment is denied.  The Amberson Firm's claim for imposition of a constructive trust on sums received on the Arbitration Award and Judgment is denied.

2.  The Amberson Firm's alternative claims for quantum meruit or unjust enrichment are denied  Such claims are ones in equity, and applying equity to these facts as set forth above demands that such claims be denied.  The Amberson Firm received at least $1,690,000.00 for work on the Forest Oil Arbitration, and the McAllen Parties contend the real number that should be considered is $2,340,000.00.  In any event, those received fees will remain with the Amberson Firm.  There is no basis in fact or law on this record to award additional fees under any alternative equitable grounds.

3. Any and all other arguments advanced by the Amberson Firm in support of a contingency fee recovery, and not addressed herein, are denied as without merit.

### II. The McAllen Parties' Claims Against Amberson and His Firm to Recover Charges for Bonds, Retainers and Other Charges Billed to and Collected From the McAllen Parties

The McAllen Parties allege that Amberson and his Firm (generally collectively referred to as "Amberson" for ease of reference in this section) fraudulently charged the McAllen Parties $2,985,000.00 in non-existent bonds, retainers and other charges that the McAllen Parties paid in full.  The McAllen Parties seek recovery for Amberson's alleged breach of fiduciary duties owed his clients, fraud, violations of the Texas Theft Liability Act, conversion, and an additional award of exemplary and statutory damages.

Amberson agrees that the McAllen Parties are entitled to an offset/credit of $2,901,200.00 on these Part II. claims if Amberson is awarded the contingent fee he seeks.  If Amberson is not awarded a contingent fee, then he does not agree he owes the McAllen Parties any of these amounts.  Amberson's position in sum is that he and McAllen, as son-in-law and father-in-law, had an understanding and arrangement that funds were necessary to support Amberson's Firm and his family during the Forest Oil legal fight, that McAllen knew and agreed that he would have to subsidize Amberson's Firm and family during the Forest Oil litigation, that McAllen wanted to be able to deduct this monetary support for tax purposes such that Amberson would invoice the McAllen Parties for such advances reflected as current legal expenses, that Amberson could "re-purpose" funds received from McAllen for uses other than as reflected on the invoices, and that the parties would "settle-up" at the conclusion of the Forest Oil matter.  In other words, Amberson alleges that he and his father-in-law had a "wink and nod" arrangement and understanding regarding what Amberson might do through the vehicle of invoiced expenses. The fact question of whether there was or was not such an understanding will be discussed after first examining the facts as to the McAllen Parties' claims for monetary damages.

## A. The Charges at Issue

### 1. $250,000.00 for "Hidalgo County Bond"

In a letter dated February 25, 2005, which was less than a month after Amberson filed in the 206th District Court of Hidalgo County, Texas, the McAllen entity Parties' initial state court suit against Forest Oil (in which James McAllen intervened as a Plaintiff in August, 2005), Amberson told McAllen the following:

> "Please be advised the bond amount required for the granting of our Motion for Entry upon the Premises of the Forest Gas Plant, located at McAllen Ranch, Hidalgo County, Texas will be $250,000,00. The Court cut the request in half and is fair and equitable considering the activity we will be engaged in."

The Amberson Firm accompanied the letter with a Statement for "**Reimbursable** Expenses" (emphasis added) for $250,000.00 and a "Cost Bond" Invoice for $250,000.00.

In response, McAllen on March 2, 2005, wrote a check to the Amberson Firm for $250,000.00 and overnighted it to Amberson. Amberson deposited the $250,000.00 into his Firm's operating bank account. Apparently there is no definitive evidence that can further trace these funds that were commingled with the Amberson Firm's other monies in its operating account.

Amberson's statements in his letter to McAllen requiring a $250,000.00 payment pursuant to a Court Order of the 206th District Court in Hidalgo County were not true:

* Amberson had not filed a Motion for Entry upon the Premises in the 206th District Court;

* no Court had thus conducted a hearing on the supposed Motion (Forest Oil did not even file its Answer and thus enter an appearance in the newly-filed lawsuit until two weeks later on March 7, 2005);

* no Court "cut the request in half" as Amberson indicated in his letter;

* no Court required the McAllen entity Parties to pay/post a $250,000.00 cost bond; and thus

* no payment of a $250,000.00 cost bond is reflected in the Court records as having been paid into the Court's Registry.

Amberson in his sworn testimony in deposition and at the hearing when pressed by McAllen counsel admitted the statement that the Court "cut the request in half" was false, but then sought to explain that the letter mistakenly referred to the "Court" when it should have said "counsel." Amberson's explanations were not credible and are unsupported. Tellingly, under cross-

18

examination Amberson generally did not respond to pressing questions on this letter by stating it simply was made up consistent with his agreed "nod and wink" arrangement with McAllen in order to fund his Firm and family through invoices allowing for tax-deductible legal expenses by McAllen. Rather, he tried to justify it with very confusing and unsupported explanations that are not credible. This is very probative on Amberson's key defense to liability that there was such an arrangement between him and McAllen. If there was such an understanding, this is where Amberson just needed to clearly say so versus trying to defend the indefensible.

Also tellingly, Amberson did not include this whopping quarter-of-a-million-dollar expense paid by McAllen in his "show bills." Thus this $250,000.00 amount was not presented to the Forest Oil Arbitration Panel for an ordered reimbursement by Forest Oil. Amberson ultimately conceded he owed the $250,000.00 to McAllen:

"Q: You agree that you owe the $250,000 Hidalgo County bond of February 25th, 2005, correct?"

"A: Yes, sir." (Tr., Vol. 4, p. 30).

## 2. $100,000.00 for "American Arbitration Association Initial Retainer Fee"

Three months later on May 19, 2005, Amberson wrote and sent by facsimile a letter to James and Frances McAllen and invoiced them on behalf of the McAllen Parties for an expense payment of 325,000.00 to cover four expert retainers totaling $225,000.00 and $100,000.00 for "American Arbitration Association (Arbitration Fee)." None of the five expense items were valid. Amberson falsely told the McAllens that he was enclosing a statement (for the $325,000.00) "which reflects the costs and expenses I am incurring and will incur in the next few days . . . ." The four fraudulent expert retainers will be discussed in Part II.A.5. below. Within a week (on March 25, 2005), McAllen wrote the Amberson Firm a check for $325,000.00. Amberson did not then or ever pay the received $100,000.00 portion of the $325,000.00 from the McAllens to the American Arbitration Association ("AAA") for an "Arbitration Fee."

In his May 19, 2005, letter (Ex. J2-62(Y)), Amberson told the McAllens:

"Additionally, we have been sued in Harris County, Texas for enforcement of the Arbitration Clause pursuant to the provisions of the Arbitration Clause as contained in the 1999 Settlement Agreement regarding the oil and gas royalty cases. Forest and Conoco have already chosen their Arbitrator under the American Arbitration Association rules and regulations and pursuant to the Texas Arbitration Act. Currently we are in violation of the Arbitration Clause if the Harris County Court decides to enforce same and this could result in the Court ordering the appointment of the Arbitrator to be chosen by the Court due to a refusal to so choose by Plaintiffs.

"We cannot let this happen because it would be devastating if we end up being compelled to arbitrate in Harris County, Texas before three Arbitrators chosen by

the Harris County Court.  The American Arbitration Association requires an initial retainer from all parties in order to permit the procession of choosing an arbitrator of our choice, in the event we are forced to arbitrate, despite the fraudulent inducement by Forest and Conoco to enter into the arbitration clause.  The Defendants have started that process in Harris County and until I can set it aside due to fraud and there is finality on a Judgment in Hidalgo County, Texas, to set aside the Arbitration Clause, I need to participate in the process in Harris County under protest in order to prevent the Defendants from gaining an upper hand in this litigation.  The cost of the initial arbitration is high, ($20,000.00 per party times 5 parties); however, the losing party pays the prevailing party all costs and expenses of arbitration and I do not think we will lose in arbitration, in the event it ever occurs in Harris County, Texas.  In sum, we need to protect our left flank in order to be prepared for the procedural sneak attack that will occur absent participation in the arbitration process on a limited basis."

The key statements in these two paragraphs were not true:

* the arbitraton clause in the 1999 Settlement Agreement that forms the basis for Amberson's representations to the McAllens makes no reference to arbitration before the American Arbitration Association ("AAA"); rather, Section 7 entitled "Arbitration" provides a non-AAA procedure whereby a party seeking arbitration initiates arbitration "by the filing of a lawsuit in the District Court of Harris County, Texas" and that "[t]he parties agree that the court shall immediately refer the disputes that are the subject of the lawsuit to arbitration on the motion of any party . . . ," and the Harris County District Court thereafter generally will oversee the arbitration as described in this Section 7;

* accordingly, Forest Oil had filed on April 5, 2005, a (1) motion in the Hidalgo County lawsuit to compel arbitration, and (2) a lawsuit in Harris County against the four McAllen entity Parties pleading that "Defendants breached the Settlement Agreement by filing suit in Hidalgo County and failing to refer its dispute to arbitration.  The Settlement Agreement expressly states that a suit must be filed in Harris County and then referred to arbitration on motion by any party;"

* it thus was blatantly untrue, as Amberson represented to his clients, that "Forest and Conoco have already chosen their Arbitrator under the American Arbitration Association rules and regulations . . . .;"

* the AAA was never in any way involved in the Forest Oil Arbitration proceeding and thus never billed or requested Amberson to pay $100,000.00 to it;

* Amberson never paid $100,000.00 to AAA; and

* even regardless of all the above undisputed facts of record, it was not until 2008 that the Texas Supreme Court finally resolved the issue of arbitration and ordered the Forest Oil dispute to arbitration in *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 62 (Tex. 2008).

Amberson again in his testimony sought to justify this $100,000.00 charge by claiming that he was anticipating that he would need this amount and wanted to have it in place, and that he inquired of AAA about the cost. Amberson did not say this to the McAllens in his letter but rather misrepresented to them that Forest Oil already had selected its arbitrator under AAA rules, and that he would "need to participate in the process in Harris County under protest," and that the $100,000.00 was necessary in order to participate "in the arbitration process on a limited basis." There was no mention of holding the monies for possible future use, as he testified. Amberson's testimony simply is not credible that he spoke with an AAA representative who told him, as he reported to the McAllens, that "[t]he cost of the initial arbitration is high ($20,000.00 per party times 5 parties)." Ultimately Amberson admitted his statement in his May 19, 2005 letter that his representation that the enclosed Statement for $325,000.00 (including the purported AAA $100,000.00) reflected "the costs and expenses I am incurring and will incur in the next few days" was incorrect and false. (Tr., Vol. 3, p. 256).

Again, Amberson did not include this $100,000.00 amount paid by the McAllens as an expense to the Amberson Firm in his made-up "show bills," and thus the McAllen Parties were not awarded reimbursement of this amount by the Forest Oil Arbitration Panel. And again, Amberson agrees he owes the $100,000.00 to McAllen:

"Q: You agree that you owe $100,000 for the AAA arbitration fee of May 19th, 2005?

"A: Yes, sir." (Tr., Vol 4, p.30).

However, equally troubling (again) is that he tried to justify the $100,000.00 as a legitimate expense, claiming that he anticipated he would end up in an AAA arbitration with Forest Oil. Nothing at all supports this. And again, had Amberson simply and consistently testified that he was creating expenses pursuant to his agreement with McAllen to be able to support financially his Firm and family with payments from McAllen that McAllen could deduct on his taxes with invoice back-up, that he (Amberson) could re-purpose such received funds as necessary for case or family or his Firm's expenses with his father-in-law's knowledge and blessing, and that this was part of an agreed "nod and wink" arrangement between them, then the Arbitrator would have to decide whether such an agreed arrangement actually existed. But when Amberson again attempted to support and explain away the unsupportable and the unexplainable, that casts great doubt on the credibility of his "arrangement" defense.

### 3. $300,000.00 for "Arbitration Appeal Bond"

For the three years from 2005 until 2008, the McAllen Parties and Forest Oil battled in the courts over whether or not the McAllen Parties' claims filed in the Hidalgo County court case were subject to arbitration. That legal fight ended on August 29, 2008, when the Supreme Court of Texas entered its ruling in *Forest Oil Corp. v. McAllen*, 268 S.W. 3d 51 (2008), concluding that the arbitration provision in the 1999 Settlement Agreement was enforceable, and directing the Hidalgo County trial court to order arbitration. The legal battle through the appeals thus was over and no further challenge remained or was attempted (other than the predictable motion for rehearing denied by the Texas Supreme Court on November 14, 2008).

21

Inexplicably, just days after the Supreme Court opinion, Amberson sent the McAllens a September 10, 2008 "Interim Billing" for "**Reimbursable** Expenses" (emphasis added) (Ex. J2-62BB) totaling $329,162.77 that included the following listed expense:

"9/4/08  Arbitration Appeal Bond                    $300,000.00"

There was no accompanying letter or other explanation for this $300,000.00 charge.  Like clockwork, McAllen paid by check dated September 16, 2008, the $329,162.77 amount Amberson had invoiced him.

There was no basis in fact for this $300,000.00 charge by Amberson to McAllen:

* The $300,000.00 was not a "Reimbursable Expense" as Amberson called it because Amberson had not paid $300,000.00 and thus there was no basis for him to seek a supposed reimbursement from his clients;

* There was never an Arbitration Appeal Bond;

* There was no basis for an Arbitration Appeal Bond in the Hidalgo County state court case because, as described above, the Texas Supreme Court had just days earlier finally resolved the issue of arbitrability and there was nothing further to appeal---even if one can fathom how one would need to post a bond in the absence of a money judgment on the issue of arbitrability;

* There was no basis for an Arbitration Appeal Bond in the just-ordered arbitration because the arbitration was in its infancy and the Award of the Forest Oil Arbitration Panel would not come and was not issued until four years later in 2012---and much less the further legal steps that might be required before there ever might be the need for any type of bond;

* Under any scenario where an "Arbitration Appeal Bond" actually might have been required, Amberson could have obtained the monies from McAllen for the bond at that time, and Amberson conceded this in his testimony (Tr. Vol. 4, p.14).

Again, under cross-examination Amberson attempted to justify his "Reimbursable Expense" $300,000.00 charge for an "Arbitration Appeal Bond."  Amberson testified that he "anticipated" that there would be a need for a bond for the "anticipated fast track of that arbitration," that he was concerned about the appointment of a third arbitrator (Tr., Vol. 4, pp. 6-7) and that he orally told the McAllens about this.  But when Amberson received the $300,000.00, he did not use it to post a bond, and he did not hold the monies in an IOLTA or other trust account for safekeeping of his client's $300,000.00 to use later for a bond for the "anticipated fast track of the arbitration."  Id.  Rather, he deposited the monies in his operating account and spent it.

Thus, as with the other charges discussed above in Parts II.A. 1. and 2., Amberson did not testify consistently when pressed under cross-examination that this $300,000.00 charge and payment was part of his "nod and wink" arrangement with McAllen, but again tried to justify it

22

as a legitimate reimbursable expense collected from his clients---even though he spent the monies elsewhere through his Firm's operating account. Amberson further took the position when pressed about his conduct regarding this $300,000.00 charge that he was "acting with integrity of the strictest kind" and that he was being "fair and honest" with his client. (Tr., Vol. 4, pp. 14-15).

Amberson did not include this substantial $300,000.00 expense paid by McAllen in Amberson's created "show bills" that were presented to the Forest Oil Arbitration Panel, and thus McAllen was not awarded this amount by the Panel. Amberson admits he owes McAllen the $300,000.00 that he (Amberson) spent elsewhere:

"Q: And you agree that you owe $300,000 of the arbitration appeal bond of September 10, 2008, correct?

"A: Yes, sir." (Tr, Vol. 4, p. 31).

In sum, as with the other unsupported expense charges discussed above, the fact that Amberson sought under cross-examination to defend the indefensible in his conduct regarding this $300,000.00, versus simply insisting it was part of the arrangement he claims he had with McAllen, has a sizeable bearing on the Arbitrator's assessment as to whether there was any such claimed arrangement.

### 4. $250,000.00 for "Harris County Arbitrator Compensation"

On December 7, 2009, Amberson wrote and faxed McAllen a letter (J2-62CC) that begins in an odd manner as a letter between a lawyer and his client: "On this date came on to be considered Defendant, Forest Oil Corporation's Motion to Reconsider Appointment of Third Neutral Arbitrator." The balance of paragraph one describes continuing efforts by the Court to get a third arbitrator appointed for the Forest Oil Arbitration Proceeding.

Amberson then represents to McAllen in paragraph two as follows:

"The Court further requested that we address the compensation issue regarding the arbitrators, especially the two that have been working on this matter for approximately one year without any compensation. The Court requested that we deposit with the registry of the Court the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) each which will be combined in a Five Hundred Thousand Dollar ($500,000.00) amount which will ensure any persons chosen will be compensated and the other two arbitrators will have an incentive to remain on the panel The deadline is December 9, 2009. Therefore, I will need to receive a check from you for the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) to satisfy that requirement and we will proceed with disclosures of the remaining potential arbitrators so a new third neutral arbitrator can be impaneled."

Given a represented two-day deadline to pay the $250,000.00, McAllen's office manager, Vicki Rangel, promptly e-mailed Amberson's office stating she had an overnight envelope ready to ship the payment request, and asked whether a check payable to "JCA, PC" ("Jon Christian Amberson, P.C.") would be okay. (Id.) Brenda Gamez, Legal Assistant in Amberson's office, responded: "I checked with Chris and he said yes, that will be fine." (Id.) Thus, McAllen through a McAllen Ranch Lease Account and by check dated December 8, 2009, immediately paid Amberson's Firm the $250,000.00 as requested (and as directed, per Amberson, by the Court).

Amberson deposited the $250,000.00 check into his Firm's IOLTA account on December 9, 2009. The money was not then or ever deposited with the Registry of the Court. Rather, two days later on December 11, 2009, Amberson transferred $200,000.00 from his Firm's IOLTA account to his Firm's operating account. The $250,000.00 was not paid by Amberson into the Court's registry.

Amberson did not attend the December 7, 2009, hearing. Larissa Hood, who worked as an attorney with Amberson in his Firm, attended the hearing on behalf of the McAllen Parties along with two other outside counsel for the McAllen Parties. Amberson's statements to McAllen were not true. Amberson testified that the information that he reported to McAllen in his letter, including that the Court had told the parties it wanted $500,000.00 paid into the Court's registry, "was reported to me by Larissa Hood by telephone." (Tr., Vol. 4, pp. 18-19). Amberson could not recall if Hood told him there was a two-day deadline or if he decided to set that on his own. The Arbitrator asked Hood if the Court requested that each side deposit $250,000.00 into the Registry of the Court. Hood's answer was that "The Court did not specifically say this" and that "I informed Mr. Amberson that the Court had a large concern about the arbitrators not getting paid after they had done enormous amount of work, and that it appeared that the Court was going to request some money be deposited. (TR., Vol. 5, pp.188-89). Hood did not at that time see Amberson's letter statements and request to McAllen. In fact, neither she nor the other McAllen counsel who attended the hearing were copied on the letter. Hood also testified that to her knowledge monies were never deposited into the Registry of the Court. Given Hood's role in the Forest Oil Arbitration Proceeding and the fact that this $250,000.00 has been in dispute in this proceeding, she would have known if monies had been so deposited. If Amberson truly believed from Hood that the Court had ordered those funds deposited into the Court's Registry, he ignored that directive:

"Q: And did you send the letter to Judge Ramos explaining why you failed to comply with his alleged order?

"A: No, I did not."

"Q: So if he ordered the parties to deposit 500,000 in the Court's registry in two days, don't you think he might want an explanation as to why that didn't happen?

"A: I don't know."

. . .

"Q: . . . . So to be clear, there is no written order, and you knew there wasn't a written order. You have never seen a transcript of the hearing, and there is nothing in writing to explain why you failed to comply with Judge Ramos's alleged order, correct?

"A: That's correct." (Tr., Vol. 4, pp. 24-25).

The Court did not order the McAllen Parties or Forest Oil on December 7, 2009, to pay $250,000.00 into the Registry of the Court. There is no docket entry or Court Order documenting this. Hood concedes it did not happen. In fact, the parties in the years that followed paid the Arbitrators directly and there is no evidence that any monies for arbitrator compensation ever were paid into the Registry of the Court. There is no factual support or basis for the statements made by Amberson to his client in the second paragraph of his letter, which allowed him to obtain $250,000.00 from the McAllen Parties. And upon receipt of the $250,000.00 from his clients, he did not hold the monies in trust but rather spent their monies elsewhere.


## 5. $1,685,000.00 for "Expert Retainers"

Amberson and his Firm over the course of the representation billed the McAllen Parties $1,685,000.00 in what were described as **"Reimbursable** Expenses" (emphasis added) for expert retainers. These were made-up expenses. Amberson described the billings in invoices as "Reimbursable Expenses," thus implying that these were necessary to reimburse him and his firm for retainers he had paid. But almost 100% of the supposed expert retainers were not paid. Amberson testified that none of the experts asked for these retainer amounts and that they "were not actual retainers." (Tr., Vol. 4, pp. 67-68, 72). Amberson's testimony that these were advances for anticipated retainers is not supported by the evidence, as the monies were spent elsewhere and not held in trust for McAllen and returned to McAllen when the monies were not needed for anticipated retainers. He thus did not include the unpaid retainers as expenses in the so-called "show bills" presented as evidence to the Forest Oil Arbitration Panel, and did not tell the McAllen Parties' attorneys' fees (Mr. Albright) and expenses (Mr. Bost) experts about these charges paid by the McAllen Parties.

The fraudulent expert retainers are as follows:

|    | Expert Name | Amount | Paid to Named Expert? |
|----|-------------|--------|----------------------|
| 1. | Ritter Environmental & Geotechnical Serv., Inc. | $50,000.00 | No |
| 2. | Ritter Environmental & Geotechnical Serv., Inc. | $50,000.00 | No |
| 3. | Andrew Scher | $10,000.00 | No |
| 4. | Raba Kistner Consulting, Inc. | $75,000.00 | No |

| | Expert Name | Amount | Paid to Named Expert? |
|---|---|---|---|
| 5. | Raba Kistner Consulting, Inc. | $75,000.00 | No |
| 6. | Raba Kistner Consulting, Inc. | $50,000.00 | No |
| 7. | ANA Lab Corp. | $75,000.00 | No |
| 8. | Radiation Services, Inc. | $25,000.00 | No |
| 9. | NewPark Environmental Services of Texas | $50,000.00 | No |
| 10. | Nuclear Sources and Services, Inc. | $75,000.00 | No |
| 11. | Peter Almond, M.D. | $75.000.00 | No |
| 12. | Oak Ridge National Laboratory | $75,000.00 | No |
| 13. | Sandia National Laboratories | $25,000.00 | No |
| 14. | Dr. R.E. Rowland, Atomic Energy Commission, Office of Information Services | $50,000.00 | No |
| 15. | Stanley Waligora | $75,000.00 | No |
| 16. | Davis L. Ford & Associates | $50,000.00 | No |
| 17. | Davis L. Ford & Associates | $20,000.00 | No |
| 18. | Rohill Operating Company, Ltd. | $35,000.00 | No |
| 19. | Rohill Operating Company, Ltd. | $75,000.00 | No |
| 20. | Ronald Charbeneau, Ph.D., UT. Austin | $75,000.00 | No |
| 21. | Lee Wilson and Associates, Inc. | $50,000.00 | No |
| 22. | Kevin S. Fisher, Trimeric Corp. | $25,000.00 | No |
| 23. | PSC Services | $50,000.00 | No |
| 24. | Robert Peter Gale, M.D., Ph.D. | $75,000.00 | No |
| 25. | Robert Peter Gale, M.D., Ph.D. | $45,000.00 | No |
| 26. | Dr. Roger O. McClellan | $50,000.00 | No |

| | Expert Name | Amount | Paid to Named Expert? |
|---|---|---|---|
| 27. | Cayias Consulting | $50,000.00 | No |
| 28. | JD Consulting, L.P. | $15,000.00 | No |
| 29. | Dr. Edward P. Cox, EPC Engineering Resources, Inc. | $15,000.00 | No |
| 30. | Israel Ramon, Jr., Law Offices of Israel Ramon, Jr. | $10,000.00 | No |
| 31. | Ceway Chemical Services | $ 5,000.00 | No |
| 32. | Saul Solomon | $25,000.00 | No |
| 33. | Jane Buckner, Buckner & Associates | $15,000.00 | $1,300 Paid Per Below |
| 34. | Kevin Krist, Law Offices of Kevin Krist | $25,000.00 | No |
| 35. | William T. Lowery, Ph.D., Inc. | $40,000.00 | No |
| 36. | Hildreth Investigations, LLP | $25,000.00 | No |
| 37. | Alice Oliver-Parrott, P.C. | $25,000.00 | No |
| 38. | Ronald A. Britton | $50,000.00 | No |
| | Total | $1,685,000.00 | |

There is evidence based on Amberson's expert's charts and analysis that named expert Jane Buckner was paid $1,300.00 of the $15,000.00 collected for her. The Arbitrator thus subtracts $1,300.00 from the $1,685,000.00 total, resulting in a revised total of $1,683,700.00. It also appears that Amberson's expert has included two additional payments to experts (Aerts - $10,000.00; Neale - $7,500.00) Neale -totaling $17,500.00. McAllen does not include these amounts in his claim and therefore the Arbitrator does not add these amounts to the claim total.

Amberson in his testimony tried to justify what at one point he admitted were fraudulent charges by testifying that these invoices were for "advancements" to either hire experts or conflict them out, and that he told McAllen he would be asking for such payments. If Amberson anticipated needing to pay experts to either hire them or conflict them out, and he actually told McAllen that, then he could have sent McAllen an invoice for, say, a $1,000.000.00 for

27

"advancement of retainers to pay future experts to either hire or conflict them out" and hold the monies in trust to actually do this. But making up dollar amounts for experts and including them in bills to McAllen as "Reimbursable Expenses," and not holding the monies in trust, and not paying any of these amounts to the named experts, and not informing the McAllen Parties' attorneys' fees and expenses experts, runs counter to his claim that these were understood and agreed-to "advances." True advances by the client would be held in trust by the attorney and returned to the client at the end of the case if not expended as represented. If by "advances" Amberson also meant that these made-up amounts were for general advances pursuant to an arrangement with McAllen, that claim is addressed below.

### 6. The $300,000.00 and $100,000.00 Payments

James McAllen paid Amberson's Firm $400,000.00 that was not in response to an invoice: a payment of $100,000.00 by check dated May 2, 2007, and a payment of $300,000.00 by check dated September 24, 2007. Amberson has agreed that those amounts should be part of a credit to the McAllen Parties against a contingent fee award. While it might seem automatic from this concession that this $400,000.00 thus should be included in the amount awarded the McAllen Parties, the Arbitrator has a special viewpoint on this.

The Arbitrator is not awarding Amberson's firm a contingent fee. While Amberson and his Firm concede that the $400,000.00 be included in the pot of "credits" against a contingent fee award, such would not be the case in the absence of an Award. Amberson has made it clear that his offset/credit agreements do not apply if there is not an award of a contingency fee. Thus, the Arbitrator has independently weighed the evidence on McAllen's monetary claims in this Part II, without reliance on Amberson's position on offsets/credits if a contingency fee is awarded.

The McAllens clearly have substantial wealth given their land holdings regardless of the liquidity of such wealth. As to these two payments, the testimony suggests that McAllen's payment of these two specific amounts was encouraged by McAllen's daughter married to Amberson. Neither side called her as a witness. The Arbitrator appreciates that Amberson, in his zeal to win his contingent-fee claim, has been very pliable regarding an offset/credit against an awarded fee in the hopes that this will help obtain such an award. Thus, the Arbitrator believes Amberson has given the "benefit of the doubt" to inclusion of the two payments equaling $400,000.00 as an offset/credit. But a contingent fee is not being awarded and the question thus is whether the evidence independently supports awarding the $400,000.00 in damages to McAllen. Weighing the evidence, the Arbitrator determines that McAllen has not proved that he is entitled to recover the $400,000.00. Thus, the claim on the $100,000.00 and $300,000.00 amounts is denied.

### 7. Summary of Fraudulent Charges

The amounts discussed above in Parts II.A.1.-5. total $2,583,700.00. The expert accountants for the parties have prepared extremely complex tracing and other reports seeking to

determine the amounts to support either an offset/credit (both parties) or affirmative relief (McAllen). At the close of the evidence, Amberson's expert's number relating to this Part II. of the Award for an offset/credit (not including the $400,000.00 from Part II.A.6.) was a slightly higher $2,601,200.00, as he added and subtracted additional amounts relating to various experts. McAllen, arguing he is foregoing other claims he could assert here, has used Amberson's expert's slightly higher number for an offset/credit as the amount being sought by McAllen in damages on these Part II. claims.  The tracing in this case is not easy, and the numbers continue to change even through the post-hearing briefing.  Amberson, in his Post-Hearing Brief on this Issue 2, thus now seeks to deduct a $100,000.00 amount from the earlier calculation of the offset/credit, and McAllen now challenges this reduction in his Post-Hearing Response Brief on Issue 2, and still seeks to use Amberson's number for his (McAllen's) affirmative damages amount.  The $100,000.00 fight involves the $100,000.00 discussed above in Part II.A.6. which the Arbitrator has determined is not recoverable.  Thus, this new disagreement is not relevant to the Arbitrator's calculation.  To be conservative, the Arbitrator uses the lower and straightforward number of $2,583,700.00 based on adding the amounts in Parts II.A.1.-5.

## B.  Amberson's Defense of an "Arrangement"

Having weighed the evidence, the Arbitrator determines that there was not a special understanding or arrangement between Amberson and McAllen, as summarized in the preamble to this Part II., that makes non-actionable and legally excuses the conduct by Amberson and his Firm as set forth in Part II.A.  The Arbitrator addresses only the key reasons for this determination, and not all the myriad of arguments made in the briefs.

First, as made clear above, the Arbitrator places great weight on the assessment of the credibility of Amberson in his almost full week of testimony at the hearing, and in particular when pressed on cross-examination about various of these charges   Adopting the analysis above in Part II.A., it was not credible that Amberson attempted to justify on cross-examination letter and invoice requests for approximately 2.5 million dollars with explanations that are not and cannot be supported by the facts.  If there truly was a special understanding, there should not have been attempts under cross-examination at explanations and justifications on made-up requests that were not defensible.  A simple and repeated "we had a nod and wink understanding and so I was generating invoices and requests on any basis I could use to allow McAllen to deduct the expenses and allow me to 're-purpose' the payments and use them as I saw fit" would have been consistent with Amberson's position of an understanding.  Trying to justify the charges was very telling.  This weighing of credibility is alone a sufficient basis to support the Arbitrator's determination that there was not an arrangement.  On the key points related to an alleged understanding, the Arbitrator found McAllen's testimony to be credible.

Second, the Arbitrator has no confidence in the authenticity of a letter dated October 13, 2005, from Amberson on his Firm's letterhead to McAllen (Ex. J2-9).  The letter speaks to two unused retainers and then refers to a telephone call with McAllen and summarizes the understanding and arrangement at issue here.  Like the letter proffered by Amberson as Exhibit J1-4 discussed in Part I.E.1., there is no written documentation showing the letter was sent and that McAllen received it, such as a signature by McAllen on the letter, a certified mail receipt, a

FAX confirmation, an email, etc. Amberson testified Larissa Hood faxed the letter. Hood in her testimony never testified to faxing or sending the letter. The Arbitrator again reiterates that Amberson's creating of the "show bills" to use as evidence in the Forest Oil Arbitration Hearing greatly impacts the Arbitrator's assessment of the trustworthiness of the three disputed letters including this one. Counsel for Amberson did an able job seeking to question the business and mail operations at the McAllen offices to raise doubt as to McAllen's position that the letter (and the other two in dispute) were not received. However, the Arbitrator believes and concludes that the letter is not trustworthy, was not sent or received, and thus is given no weight.

Third, Amberson points to other communications speaking to a reconciliation at the end of the Forest Oil Arbitration or a re-paying of all incurred expenses, thus arguing this supports the existence of an understanding. None of these communications establish the special understanding urged by Amberson. Frankly, the Arbitrator is unsure what Amberson meant when he told McAllen in a February 21, 2008 letter (Ex. J4-1) in connection with his execution of a $454,000.00 promissory note in favor of McAllen (as discussed in Part IV. of this Award) that "all expenses incurred in the above referenced litigation shall be reimbursed back to the client at the conclusion of the above referenced case." The "above referenced" case is the Longoria, et al. v. Forest Oil Corporation, et al. suit filed by Amberson in Hidalgo County. Various workers as well as the McAllen Parties were the original plaintiffs (plus later intervening workers) in what became this separate matter in Hidalgo County as distinguished from the Forest Oil Arbitration Proceeding that proceeded in Harris County. While Amberson has agreed to certain discrete offsets and credits if he is awarded a contingent fee, he never has indicated he is responsible to pay McAllen for all expenses incurred in his representation. That clearly is not Amberson's position here regarding the Forest Oil Arbitration. The letter simply is not probative on the arrangement fact question before the Arbitrator. In addition, given what appeared to be at least an outstanding $250,000.00 bond in Hidalgo County, discussions of needing a full accounting at the end of the Forest Oil Arbitration appeal made perfect sense and does not suggest any special arrangement. In addition, it is uncertain on this record whether there could have been a "squaring up" in fact, because there is no evidence in the record that Amberson has retained any of the monies he received for these Part II. charges from McAllen. Any "squaring up" thus would appear to only come from Amberson receiving a contingent fee award and then agreeing to offsets/credits against those available funds.

Fourth, the fact that McAllen issued IRS Forms 1099 to Amberson's Firm for amounts paid does not establish a special understanding. The credible evidence establishes that McAllen rightfully believed the expenses he had paid were legitimate litigation-related expenses and could be deducted.

Fifth, Amberson argues that McAllen's bookkeeper Vicky Rangel was very detailed, and from this undisputed fact Amberson mounts many arguments suggesting her conduct supports Amberson's position that there was a special understanding with McAllen. The Arbitrator is not persuaded by dissecting what Rangel did or did not do in dealing with a very substantial piece of litigation and the myriad number of expense requests that Amberson submitted over the years. Rangel rightfully was unsuspecting that McAllen's son-in-law would engage in the conduct described herein. Her testimony was credible, and it was clear that she trusted Amberson and never suspected what actually was going on. She and McAllen were reasonably justified in

relying on and trusting in Amberson as the lead counsel (and McAllen's son-in-law). Amberson counsel at one point politely was quizzing her about refundable versus nonrefundable retainers for experts and the following telling exchange occurred:

"Q: And does this record that you were keeping, does it not reflect that the retainers that were asked for upfront are --- are there and you're not crediting amounts against them as subsequent bills come in?

A: Well, some of those retainers said nonrefundable on them. I mean, I don't know what that means. You pay that retainer. **I mean, sir, we are a ranch office**.

Q:  Well, okay.

A:  **We are not a law office**." (emphasis added, because the witness said it with emphasis)(Tr., Vol. 12, p. 153).

The Arbitrator agrees with Rangel's point. She tried to keep up with all that was going on as best she could, and she trusted and deferred to Amberson. Despite Amberson counsel's able and best efforts, a hindsight and microscopic review of her efforts is a red herring in light of this record.

All the other arguments of Amberson are without merit.

In sum, the Arbitrator has weighed all the oral and documentary evidence and does not find any credible evidence in support of a special understanding between Amberson and McAllen. Amberson's defense on this basis to the claims asserted by McAllen in this Part II. lacks merit and is denied.

### C. The McAllen Parties' Claims on These Part II. Fraudulent Charges

As noted in the Award's Introduction, this Award does not constitute formal Findings of Fact and Conclusions of Law as might be entered by a trial court. The parties agreed to a "reasoned Award." Thus, while the Arbitrator below enters his determinations as to McAllen's Part II. claims by summarizing the elements of each claim, such is not intended as formal findings and/or conclusions.

There was no special understanding or arrangement between Amberson and McAllen justifying Amberson's actions with regard to the 42 transactions at issue. McAllen on behalf of himself and his entities did not consent to Amberson fraudulently billing him for these items, then not using the monies for the expense described but rather using all the monies (save $1,300.00 to one expert) for his other purposes. In discussing these claims, McAllen dealt with Amberson on behalf of himself and also on behalf of his entities who also were parties in the Forest Oil Arbitration Proceeding and thus the Firm's clients. Thus, use of the term "McAllen" refers to both McAllen and his entities in this Part II.

## 1. Breach of Fiduciary Duties

Amberson as counsel owed numerous fiduciary duties to his clients, the McAllen Parties. In Texas, these include duties of loyalty; utmost good faith; candor; to refrain from self-dealing; to act with integrity of the strictest king; fair and honest dealing; full disclosure; undivided loyalty; honesty; to inform the client of matters material to the representation; and to inform the client of a conflict of interest.  With regard to the 42 transactions addressed above in Parts II.A.1.-5., Amberson breached his fiduciary duties owed McAllen.  Such breach caused damages to the the McAllen Parties in the principal amount of $2,583.700.00.

## 2. Fraud

As to the 42 transactions at issue, Amberson made material misrepresentations to McAllen; Amberson knew the representations were false; Amberson intended McAllen to act in reliance on his false representations and to pay the 42 fraudulent payment requests; and McAllen actively and justifiably relied on Amberson's representations and McAllen and his entities suffered damage in the principal amount of $2,583,700.00.

## 3. Texas Theft Liability Act ("TTLA")

Civil liability under the TTLA (Section 134.001 et seq. of the Texas Civil Practice and Remedies Code) exists if McAllen had a possessory right to property; Amberson unlawfully appropriated the property in violation of certain sections of the Texas Penal Code that constitute criminal theft; and McAllen and his entities sustained damages as a result of the theft.  Using the definitions of key terms set forth in Section 31-01 as applied to the requirements for criminal theft set forth in Section 31.03(a)-(b), the Arbitrator determines with regard to each of the 42 transactions at issue here: that Amberson unlawfully appropriated property (money) of McAllen (without McAllen's effective consent) with the intent to deprive McAllen of such property (money).  That Amberson now offers an offset/credit for these 42 transactions if he is awarded, and only if he is awarded, a contingency fee does not mean Amberson has not deprived McAllen and his entities of the money because Amberson only agrees to restore the money upon payment of any contingent fee.

The McAllen Parties are entitled to recover damages suffered in the amount of $2,583,700.00, plus $1,000 for each of the 42 transactions pursuant to Section 134.005(a)(1), or a total of $42,000.00.  The McAllen Parties also are entitled to court costs and attorneys' fees pursuant to Section 134.005(b).

## 4. Conversion

Based on all the above, Amberson additionally and in the alternative converted McAllen's property (money) as Amberson unlawfully and without authorization assumed and exercised

dominium and control over McAllen's property (his money) to the exclusion of McAllen's rights as owner of the funds. The McAllen Parties have suffered damages of $2,583,700.00.

## D. Award on the McAllen Parties' Part II Claims

1. Actual Damages – The McAllen Parties are awarded actual damages of $2,583,700.00 on their Part II. claims.

2. Pre-Judgment Interest – The McAllen Parties are entitled to pre-judgment interest on the 42 improper charges collected by Amberson and his Firm   McAllen's accounting expert, Roger Saenz, calculates in his reports at Exhibit J2-33A, the pre-judgment interest on these Part II. charges. His total through August 31, 2019, is $1,409,382.87. Saenz includes the $300,000.00 and $100,000.00 amounts not granted by the Arbitrator in Part II.6. If one deducts that $400,000.00 amount and the related interest tied to the $400,000.00, the revised interest total through August 31, 2019, is $1,212,591.64. This revised interest total ties to a revised principal amount of $2,596,500.00, which is within $13,000.00 of the $2,583,700.00 principal amount calculated by the Arbitrator for the 42 transactions. The McAllen Parties only seek pre-judgment interest through August, 2019, thus, eight months of interest from September, 2019, through April, 2020, is not being sought. Nevertheless, to be conservative, the Arbitrator further reduces pre-judgment interest to $1,100,000.00, which based on the Arbitrator's computations is far below what an exact computation of pre-judgment would be through the date of this Award. Therefore, the Arbitrator in his discretion awards pre-judgment interest of $1,100,000.00 on the 42 transactions.

3. Statutory Damages – The McAllen Parties additionally are awarded $42,000.00 as statutory damages under the TTLA.

4. Disgorgement - Based on Amberson's breach of fiduciary duties owed by him as a lawyer to his clients, the McAllen Parties seek an award that Amberson disgorge $2,340,064.76 in the hourly fees the McAllen Parties allege they paid Amberson. Disgorgement is authorized on these facts and in a factual vacuum clearly is compelled here. But here, there are multiple matters to weigh. The Forest Oil Arbitration Panel in two different orders awarded McAllen and his entity-Claimants attorneys' fees and costs of $6,781,802.00 for the fees and costs of Amberson and his co-counsel. While the Arbitrator appreciates Texas law that the main purpose of disgorgement is to protect relationships of trust by discouraging an agent's or lawyer's disloyalty---and not just to compensate the injured client---here the fact that the client has been reimbursed in large part for the fees weighs heavily. The Arbitrator also is aware of the level of fees that McAllen calculates for co-counsel ($5,061,858.39) that accounts for a substantial amount of the Arbitration Panel's attorneys' fees award. Nevertheless, given the substantial dollar amounts awarded in this Award as a clear statement about the consequences of an attorney's conduct, the fact of substantial reimbursement to the McAllen Parties of the fees in the Forest Oil Arbitration by the Arbitration Panel, and the overall results achieved by Amberson in the Forest Oil Arbitration regardless of his conduct made much of the focus of this arbitration, the Arbitrator on balance denies the request for disgorgement.

Accordingly, the total amount awarded the McAllen Parties in this Part II. is $3,725,700.00.

The question of Amberson and his Firm's joint and several liability on this amount based on the McAllen Parties' claim of civil conspiracy is set forth in Part VII.

The McAllen Parties' claim that the Amberson Firm is the alter ego of Amberson is addressed in Part VIII.

The McAllen Parties' claim for exemplary damages is addressed in Part X.

### III.  McAllen Claims Against Amberson and His Firm
### on the First Community Bank Loan

Amberson through his Firm took out a line of credit with First Community Bank starting in 2005. The line of credit was renewed several times. By June 21, 2012, the total amount due in principal on the line of credit was approaching almost $2,000,000.00.  Amberson represented to McAllen that the line of credit was to fund expenses in the Forest Oil Arbitration proceeding, even confirming this in writing.  McAllen thus had provided collateral for the line of credit.

Amberson's representation that the loan was used to fund expenses in the Forest Oil Arbitration Proceeding was not true.  The record establishes that Amberson through his Firm's invoices billed McAllen for all expenses, and all were paid by McAllen, and thus there is no evidence that this loan/line of credit was used for payment of any expenses in the Forest Oil Arbitration Proceeding.  Amberson at the hearing in this matter made no effort to prove that any arbitration expenses were paid with the First Community Bank line of credit.

On June 21, 2012, McAllen borrowed $2,000,000.00 from Bank of America, and the proceeds of McAllen's $2,000,000.00 loan were used to pay off in full the Amberson Firm's line of credit, settlement charges and other debt of Amberson or his Firm, all to the financial benefit of Amberson and his Firm.  McAllen also reimbursed Amberson and his Firm for all the interest that had been paid on the loan, totaling $652,953.13.  The total amount paid by McAllen on behalf of Amberson and his firm thus was $2,652,953.13.  McAllen ultimately in 2017 had to pay off the $2,000,000.00 Bank of America loan plus interest.

Amberson in his initial Post-Hearing Brief at page 3 on this issue acknowledges that "Amberson received the full benefit of McAllen's 2,000.000.00 loan."  Amberson also agrees that he benefitted by McAllen's reimbursing him for $652,953.13 in interest payments. Amberson thus agrees that McAllen is entitled to an offset totaling $2,652,953.13 against an award to the Amberson firm on its contingent fee claim.  But Amberson does not agree that he or his firm is liable on this amount if the contingent fee claim is not granted.

McAllen is entitled to recover this $2,652,953.13 in damages regardless of whether or not a contingent fee is awarded.  Weighing all the evidence under the case law cited in the briefing,

the Arbitrator determines that McAllen has established his entitlement to recover this amount under claims for equitable subordination, unjust enrichment, and breach of fiduciary duty.

Amberson falsely represented to McAllen that the line of credit was used to cover arbitration expenses. In addition, Amberson secretly filed for divorce from McAllen's daughter on June 18, 2012, three days before the June 21, 2012, date that McAllen borrowed $2,000,000.00 to pay off Amberson Firm's line of credit. McAllen believed he was protecting his interest in the arbitration, which then was in the infancy of the court fight over the Forest Oil Arbitration Award and Final Judgment that finally would come to an end five years later in 2017. McAllen's paying off Amberson Firm's line of credit and other Amberson-related debt was involuntary because he had that crucial arbitration interest to protect---or so he believed based on what Amberson was telling him about the use of the loan to pay Forest Oil Arbitration expenses. The fact that McAllen's daughter also wanted her father to pay off this line of credit does not impact the Arbitrator's analysis. What does impact the analysis is that it certainly would have been a relevant, material fact to McAllen for him to assess---before going forward with his $2,000,000.00 loan-to take care of Amberson Firm's obligation----that Amberson had just filed for divorce secretly against his daughter three days earlier. That McAllen was aware of marital difficulties and that Amberson had moved out of the home in the preceding month does not alter the importance of knowing about the filing of an actual divorce petition. Based on Amberson's untrue representation regarding the use of the loan proceeds. McAllen involuntarily paid off Amberson Firm's debt/line of credit/loan with First Community Band

On all these facts, Amberson and his firm will be unjustly enriched if they are allowed to retain the benefit of this transaction. All the equities favor McAllen and it would be unjust for Amberson and his Firm to be enriched based on this record. McAllen's claim for equitable subordination and unjust enrichment is granted.

Also, as McAllen's lawyer, Amberson and his Firm breached numerous fiduciary duties owed to his client McAllen, including to refrain from self-dealing and to inform his client in writing of a conflict of interest; to act with absolute candor, openness and honesty; to disclose all material matters; and to act in utmost good faith, honest dealing and integrity. McAllen's claim for breach of fiduciary duty is granted.

McAllen is entitled to recover his damages suffered in the amount of $2,652,953.13. McAllen apparently does not seek and has not submitted proof and a calculation for pre-judgment interest, and thus none is awarded.

The question of joint and several liability of both Amberson and his Firm for this awarded amount based on McAllen's allegation of a civil conspiracy is set forth in Part VII.

McAllen's claim of alter ego to hold Amberson vicariously liable for the acts and obligations of his Firm is addressed in Part VIII.

McAllen's request for punitive damages is discussed in Part X.

### IV. McAllen's Claims Against Amberson on Two Promissory Notes Executed by Amberson

#### A. The $545,000.00 Promissory Note

On December 28, 2007, Amberson executed a promissory note for $545,000.00 payable to James A. McAllen. Amberson testified the purpose of the note was to reduce his sizeable 2007 income for income tax purposes. Based on Amberson's execution of the note, McAllen reduced the amount of the 2007 IRS Form 1099 report of income to Amberson Firm (and the amount McAllen could report as expense in his tax filings) from an original amount of $1,762,010.74 down to $1,217,010.74 (a $545,000.00 reduction). Amberson testified that this had a "huge impact" for McAllen to reissue a corrected Form 1099 for 2007, as "the impact was a reduction in our tax burden for that year. And it, the effect of it was to help further subsidize the marriage by giving us relief from that tax burden." (Tr., Vol. 3, 91). This tax benefit to Amberson as the promisor established adequate consideration to support the promissory note contract. It never was contemplated that McAllen would loan Amberson dollars for his execution of this note. Amberson in his testimony, and as one trained in law, agreed that he was not taking the position that there was a failure of consideration on the note.

By its terms and based on the chronology of undisputed events, the note became due and payable in 2017. Amberson has not paid McAllen on the note. Amberson acknowledged that McAllen is entitled to an offset/credit for this note amount against any contingent fee award. Regardless of an award or not on the contingent fee claim, McAllen is entitled to a recovery of the $545,000.00 principal amount against Amberson for breach of contract.

In addition, Amberson and his Firm as McAllen's lawyer breached fiduciary duties owed McAllen as the client, including to refrain from self-dealing and to inform the client in writing of a conflict of interest; to act with absolute candor, openness and honesty: to disclose all material matters; and to act in utmost good faith, honest dealing and integrity. This was an improper self-interested transaction by a fiduciary who desired to lower his tax liability for 2007. McAllen is entitled to recover the $545,000.00 principal amount in damages.

The note provides for interest at 6% on the unpaid balance. McAllen's damages expert Mr. Saenz calculated pre-judgment interest on this promissory note to be $371,257.00 as of May 6, 2019, for a total amount sought by McAllen of $916,257.00. McAllen has not submitted any pre-judgment interest calculation for the time from May 7, 2019, to the date of this Award, and appears not to seek any additional pre-judgment interest. Thus, the pre-judgment interest awarded is substantially less than a full pre-judgment interest calculation through the date of this Award.

McAllen is entitled to recover $916,257.00 from Amberson on his breach of contract and breach of fiduciary claims.

The question of joint and several liability by Amberson and his Firm for this amount based on McAllen's claim of civil conspiracy is addressed in Part VII.

### B.  The $200,000.00 Promissory Note

On September 3, 2011, Amberson executed a promissory note for $200,000.00 payable to James A. and Frances W. McAllen ("McAllen" herein refers only to James A. McAllen).  The note was collateral from Amberson to McAllen on the First Community Bank line of credit and loan discussed in Part III., and to secure a certificate of deposit that McAllen posted for Amberson's benefit in connection with the First Community Bank loan.  The note is unpaid.  However, as set forth in Part III. above, Amberson and his firm are required by this Award to pay McAllen the full amount of the First Community Bank loan debt that McAllen paid off with his Bank of America loan.  The $200,000.00 note for collateral from Amberson to McAllen to help secure McAllen as to the First Community Bank debt should not separately be awarded as that appears to the Arbitrator to constitute a double recovery of $200,000.00 by McAllen on the First Community Bank transaction.  Amberson has not made this argument.  Nevertheless, the Arbitrator, based on his analysis, denies McAllen's claim to recover on the $200,000.00 promissory note in order to avoid any possibility of a double recovery.

### V. McAllen's Claims Against Amberson and Amberson Natural Resources, LLC ("ANR") in Connection with the Cannon Grove Transaction

#### A. Amberson's Preservation of Objection to Arbitrability

Amberson and ANR (collectively referred to in this Part V. as "Amberson" unless the meaning of a sentence requires otherwise) consistently have taken the position before both the trial court that referred this matter to arbitration and the Arbitrator that they object to the arbitrability of the Cannon Grove issue because they contend it is not covered by the arbitration agreement summarized in the Introduction.  The parties in 2017 and 2018 filed numerous briefs fighting over whether the Cannon Grove matter is arbitrable or not.  As noted in the Introduction, the District Court entered its Order that all claims in the underlying lawsuit, including McAllen's claims regarding the Cannon Grove transaction, were referred to arbitration.  Thereafter, the parties entered into their October 10, 2018, Rule 11 Agreement agreeing to the undersigned as Arbitrator.  To make clear the Amberson parties were preserving their objection to arbitrability, counsel for Amberson hand-wrote on the Rule 11 Agreement that the agreement was "subject to Amberson Parties' preservation of challenge and appellate rights as to the arbitrability *vel non* of the Cannon Grove claims."  The District Court on October 18, 2018, entered its Order attaching the Rule 11 Agreement and appointing the undersigned as Arbitrator.  In the arbitration hearing, counsel for Amberson also asked for and was granted a running objection that the Cannon Grove matter is not properly in arbitration.

Therefore, the Amberson parties properly have reserved all their rights and objections concerning the lack of arbitral jurisdiction over McAllen's Cannon Grove claim..  Typically, questions of arbitrability are determined by the Arbitrator, but that is not the case here.  The Arbitrator addresses the merits of the parties' claims and defenses on the Cannon Grove

transaction because the District Court has ordered that the claims be determined by this Arbitrator in arbitration. This does not mean that the Arbitrator has decided that the claims properly are subject to arbitration, as the Arbitrator has made no decision in this regard. Thus, the fact that the Arbitrator rules on the merits of McAllen's Cannon Grove claims based on the extensive evidence presented on this issue cannot hereafter be used as an argument in support of the arbitrability of these claims.

## B. The Cannon Grove Transaction

The details of the financial aspects of the Cannon Grove transaction in March of 2009 are extremely complex, and there is no need to set forth all aspects of the transaction. Thus, the focus is on Amberson's involvement through an Amberson-owned entity (ANR) created for this transaction.

McAllen wanted to defer approximately $750,000.00 to $1,000,000.00 in capital gains taxes on a property transaction and to accomplish the complicated tax deferral he had a team of lawyers working on a "Reverse 1031 Exchange" as permitted under 28 U.S.C. § 1031: namely, Richard Leshin in Corpus Christi (who regularly represented McAllen in matters), Ben McCaleb in San Antonio (expertise in real estate matters and documents), and David Shechtman in Philadelphia and Stan Freeman in California (apparent Rule 1031 experts). Skipping through various of the complex steps to arrive at Amberson's role, McAllen needed a non-blood relative to act as a required intermediary and "own" an interest in certain property to be exchanged in order to qualify for the Reverse 1031 Exchange. An entity, ExStra-McAllen, LLC, ultimately intended to be named Cannon Grove Investments, LLC (referred to as "Cannon Grove") was used to hold such property for the exchange. ANR (owned by Amberson) paid $4,500,000.00 in monies provided by McAllen to ANR on March 18, 2009, to purchase and own 90% of Cannon Grove, and a McAllen entity, Ranch Specialties Company, paid $500,000.00 to purchase and own 10% of Cannon Grove.

Amberson contends that the $4,500,000.00 McAllen provided ANR for the purchase of its 90% interest in Cannon Grove was a gift. McAllen argues that the $4,500,000.00 was a loan, that the loan was to be secured by the 90% interest in the Cannon Grove property, and that the loan would be deemed repaid and forgiven at such time as Amberson through ANR returned such 90% interest to McAllen at McAllen's request when he decided to sell the Cannon Grove property. There is no promissory note or other related security documents to evidence a $4,500,000.00 loan. Amberson thus has refused McAllen's demands to repay the $4,500,000.00, and has refused to convey the 90% interest in Cannon Grove back to McAllen.

## C. Analysis of the Gift Versus Loan Dispute

Based on the evidentiary record, Amberson has two main arguments that the $4,500,000.00 in funds that McAllen provided was a gift: (1) there is a letter dated March 11, 2009, from Amberson to McAllen in which Amberson states that he has consulted with Julie Norton (whom he indicates is his CPA) and that she has advised him, and thus he is advising

38

McAllen, that if McAllen goes forward with the Reverse 1031 Exchange transaction and provides him the $4,500,000.00, he (Amberson) "must treat it as a gift;" and (2) there is no promissory note or accompanying loan/lien documents relating to Cannon Grove to document a loan transaction.

### 1. The March 11, 2009 Letter From Amberson to McAllen

The March 11, 2009 letter (marked as Exhibit J5-4) is one of three purported letters from Amberson to McAllen in the record that are suspicious as to their authenticity. As the Arbitrator previously has stressed, given that Amberson admittedly created hundreds of pages of "show bills" to present to the Forest Oil Arbitration Panel, a propensity to create documents after-the-fact and for purposes of use in a pending proceeding strongly impacts the Arbitrator's doubts about the letter. In addition, the evidentiary record on the Cannon Grove transaction places the authenticity of the letter in grave doubt, as discussed below.

McCaleb and Amberson coincidentally officed in the same building in San Antonio. They had multiple oral discussions about the Cannon Grove transaction, but the focus here is on the undisputed written record of substantial email correspondence. The Amberson letter is dated March 11, 2009. On March 12, 2009, McCaleb and Amberson exchange emails. McCaleb sends an email to Amberson, stating that he was bringing Amberson up-to-speed as Amberson had requested the day before (which would be March 11), and went on to state that it made sense to go forward with the transaction "if, as you discussed, you are not troubled by the significant extra **debt** (since as you noted, [1] it is to you (sic) father-in-law and [2] it is secured by a matching % value in the land conveyed . . . ."(emphasis added)(Ex. J 5-6). Amberson sends an email to McCaleb informing him that "I talked with JAM (McAllen) and recommended that we go through with it, so the ball is in his court." Id. Note---Amberson does not say to McCaleb in that email or in any other communication that day that McCaleb's use of the word "debt" is incorrect, that it has to be a gift and not a loan, and/or that he wrote McAllen yesterday on March 11 that it has to be a gift and not a loan. That silence is deafening.

What follows is a huge volume of emails from March 16 through 19 between the various lawyers, Amberson and McAllen. The references to a loan as to the $4,500,000.00 are continuous, and include the following to which Amberson is a recipient of the email:

March 16 (Ex. J 5-8) attaching a pro forma diagram reflecting a $4,500,000.00 loan;

March 16 (Ex. J 5-15) in which McAllen's office manager tells McCaleb by email: "I will need to know where the loan funds go to Chris Amberson's entity account depending on what you and Chris decide." And McCaleb ten minutes later includes Amberson in a response email that he (McCaleb) "will follow up with Chris;" thus Amberson received the initial email with the question about where the **loan** funds are to go;

March 18 (Ex. J5-20) McCaleb email attaching his notes of the "Closing Checklist" that lists "$4,500.000 to Amberson NR, LLC (non-recourse loan)" with a "note" and "pledge" (and McAllen wired ANR $4,500,000.00 late in the day on March 18);

March 19 (Ex. J5-27) McCaleb email to Amberson, McAllen and McAllen's office manager in which McCaleb tells them "I am pushing off until early next week the "side documentation" ....Ranch Specialties corporate resolution, Amberson note and pledge, balance of Amberson LLC docs."

Amberson did not respond to any of these emails he received to dispute that he was receiving the $4,500,000.00 from McAllen as a loan. He did not state to any of the lawyers or McAllen in any emails that the $4,500,000.00 was to be and/or had to be a gift. He did not state to them that he had written McAllen on March 11, 2009, that it had to be a gift, and he never attached the letter. It simply is not credible that Amberson, as an attorney and if he truly believed this was a gift, would sit quietly as all these emails were exchanged discussing a $4,500,000.00 loan to his entity ANR, and never once "correct the record." There also is no credible evidence that the letter dated March 11, 2009, was sent on March 11, 2009, or received either as a FAX or hard copy mailing thereafter by McAllen. While there is a cover FAX transmissions sheet, there is no FAX confirmation sheet to establish the letter actually was sent by FAX. Amberson did not also email the letter, which would have proved the date and time it was provided to McAllen. No other persons are included as "cc's" on the letter. Given all the emails discussed above that Amberson received over the week following the date of the March 11 letter, such proffered letter simply is not credible and trustworthy evidence.

Indeed, four years later in the December 19, 2013 Mediated Settlement Agreement as to the divorce between Amberson and McAllen's daughter, an attached schedule of assets lists ANR as an asset going to Amberson and it assigns it no value; if ANR truly received a $4,500,000.00 gift, it should/would have been valued.

Thereafter, on July 2, 2014, Leshin emailed Amberson stating: "Chris, . . . Will you consider transferring all of your interest in Cannon Grove in full satisfaction of your note to Jim [McAllen] arising from Cannon Grove? (Ex. J-50, p.3). Amberson responds: "I will need to check with my tax attorney and my CPA first regarding your request and will get back to you as soon as I have an answer." If the $4,500,000.00 for the 90% interest in Cannon Grove was a gift, Amberson easily then could and should have said so. Rather, at some time later in July through August, 2014, Leshin, as he relays to McCaleb in an August 26, 2014, email, indicates he has been informed by Amberson's tax attorney that because the debt has not been documented or substantiated, it may be a gift. This is the first notice to McAllen that Amberson is claiming the transfer was a gift, and it comes after Amberson has divorced McAllen's daughter and the relationship between Amberson and McAllen thus has become strained.

## 2.  No Loan Documentation

Although there are multiple emails by McCaleb to other of the McAllen counsel in the ensuing year that he will get a promissory note on the ANR loan prepared and signed by Amberson, he never did so. Thus, there is no signed promissory note or security instruments and the loan is undocumented. The Arbitrator, having weighed the evidence and the credibility of the witnesses, determines that the lack of documentation is not because the $4,500,000.00 was a

gift, but rather is due to the inexcusable failure of McAllen counsel McCaleb in not preparing a note and getting it signed by Amberson on behalf of ANR. The fact that there are no clear terms of the loan, such as payments, interest, etc., is not decisive here because there was not to be any performance by ANR under the note. Rather, Amberson as an accommodation to McAllen to accomplish the Reverse 1031 Exchange simply was to have ANR hold its 90% with a note and security interest in place, which instruments would be cancelled upon ANR's transfer of its 90% interest back to McAllen upon McAllen's request.

### D.  Unjust Enrichment

The credible evidence in the written record establishes that the $4,500,000.00 funding for the 90% Cannon Grove interest was part of a loan transaction and not a gift. The credible oral testimony of the witnesses who testified on the Cannon Grove matter further establishes that this was a loan. There was no donative intent by McAllen to make a gift. In addition, McAllen, McCaleb and Leshin were credible in their testimony that this was a loan transaction with Amberson and ANR.

Amberson and his created entity ANR received the $4,500,000.00 as a loan to facilitate ANR's purchase of the 90% interest in Cannon Grove; the loan was intended to be secured by ANR's 90% interest in Cannon Grove; and the loan would be deemed repaid and forgiven at such time as Amberson through ANR returned the 90% interest to McAllen at his request when he decided to sell the Cannon Grove property. McAllen is entitled to a declaratory award of same.

Texas law establishes that the doctrine of unjust enrichment is available for undocumented loans. Based on all the above, and in particular that McAllen wired $4,500,000.00 to ANR properly believing the funds were for a loan transaction related to the Reverse 1031 Exchange, Amberson and ANR would be unjustly enriched and it would be unconscionable if they were able to keep such monies and a 90% interest in Cannon Grove. Therefore, unjust enrichment is a proper remedy here, and McAllen's claim against Amberson and ANR for unjust enrichment is granted.

### E.  Statute of Limitations

Amberson in his post-hearing briefing on the Cannon Grove transaction focuses on his defense that McAllen's claims are barred by the statute of limitations. Amberson argues that even if the $4,500,000.00 was a loan, (1) the undocumented loan makes it a demand obligation, (2) the obligation accrued on March 19, 2009, when the Reverse 1031 Exchange closed, and that limitations thus expired four years later on March 18, 2013.

The loan for purposes of the Reverse 1031 Exchange was not one in which Amberson/ANR were obligated to make any periodic payments. Thus, there was no default for failure to make loan payments. Rather, the debt would be forgiven when the 90% interest of ANR in Cannon Grove was returned at the time McAllen decided to sell the property pursuant to

the Reverse 1031 Exchange plan. Thus, there was no action or non-action by Amberson before July, 2014, that could have indicated he intended to claim the transaction was a gift.

Under Amberson's limitations analysis, Amberson's client McAllen in the Forest Oil Arbitration Proceeding was required to sue him between March 19, 2009, when lead counsel Amberson was in the process of representing McAllen in getting a neutral arbitration panel appointed, and March 18, 2013, when the Forest Oil Arbitration Award and Final Judgment was in the infancy of the first appeal. In other words, according to Amberson, the claim had accrued and suit had to be filed by the client against the lawyer during the most active four years of the Forest Oil Arbitration Proceeding.

However, aside from the problems created by an ongoing and active attorney-client relationship during the time Amberson argues his client was required to sue him, Amberson's statute-of-limitations contention fails on the merits. Based on the Arbitrator's analysis above, Amberson did not inform McAllen in 2009 that he was contending that he had received a gift and thus would not be treating and honoring the $4,500,000.00 transfer by McAllen to ANR and the concomitant 90% interest in Cannon Grove as a loan transaction with the 90% interest as security for the loan. In the Arbitrator's view of the evidence, Amberson knew he had never signed a promissory note or other loan and security documents regarding Cannon Grove, and he thus took the position on behalf of ANR with McAllen following the divorce from McAllen's daughter and starting in July, 2014, that the $4,500,000.00 for the 90% Cannon Grove interest received from McAllen in 2009 was in fact a gift. Other than the unreliable March 11, 2009, Amberson letter to McAllen, the first actual notice to McAllen of Amberson's "gift" position was in July, 2014.

At the earliest, McAllen's causes of action for unjust enrichment and declaratory relief accrued in July, 2014, when McAllen first learned Amberson was claiming he and ANR had received a gift. If it accrued earlier, the discovery rule deferred accrual until July, 2014. The parties entered into a tolling agreement as part of their Mediation Agreement on January 28, 2015, that had the effect of tolling limitations as to McAllen's claims on Cannon Grove. As of the January 28, 2015, tolling agreement, McAllen's claims on Cannon Grove had not expired. The tolling agreement was agreed to remain in place until a party provided thirty-days notice cancelling the agreement, which appears to have never occurred. Therefore, when McAllen filed on September 25, 2017, his claims concerning Cannon Grove, he timely filed those claims within a two-year limitations period.

Amberson's statute-of-limitations defense is without merit and is denied.

## F. Award

1. The Arbitrator declares as follows:

> a. The $4,500,000.00 that McAllen paid to ANR by wire dated March 18, 2009, was a loan;

b. The loan is secured by ANR's 90% interest in Cannon Grove; and

c. The loan will be deemed repaid and forgiven upon ANR returning its 90% interest to McAllen.

2. Subject to the proviso below, Amberson shall within thirty (30) days of the date of this Award have ANR return to McAllen all its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/ or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest). However, if within thirty (30) days following the date of this Award Amberson and ANR contest in state court the jurisdiction of the Arbitrator over McAllen's Cannon Grove claims, then the directive to transfer the interest within thirty days is stayed pending further order of the Court.

The question of Amberson's and ANR's joint and several liability on this claim, including McAllen's claim for attorneys' fees, is addressed in Part VII.

McAllen's claim that ANR is the alter ego of Amberson for purposes of Amberson's vicarious liability is discussed in Part VIII.

## VI. McAllen Claims Against Amberson and His Firm on His Pledge of Certificates of Deposit on the the Jefferson Bank Loan to Amberson's P.C.

During Amberson's representation of McAllen in the Forest Oil Arbitration Proceeding, he also asked McAllen to provide collateral for a loan from Jefferson Bank. McAllen testified Amberson told him it would be used to help fund the Forest Oil Arbitration Proceeding. McAllen's testimony to this effect was credible. McAllen and his wife thus pledged certificates of deposit worth $1,750,000.00 to fully collateralize a $1,750,000.00 loan. In 2011, the Amberson Firm's loan increased to $2,250,000.00, and McAllen and his wife pledged a corresponding $2,250,000.00 in certificates of deposit to secure 100% of the loan. There is no evidence that any loan proceeds were used for the Forest Oil Arbitration Proceeding. There is evidence the loan proceeds were used for other of Amberson's Firm's or personal expenses.

The evidence establishes that Amberson by a false representation as to the use of the loan proceeds to fund Forest Oil Arbitration-related expenses induced McAllen behalf of himself and his wife to pledge the certificates as 100% collateral for his Firm's loan.

Amberson further breached fiduciary duties owed McAllen, including the duty to refrain from self-dealing or to use the attorney-client relationship to benefit his own interests, including the duty to timely inform the client of a conflict of interest; the duty to act with absolute perfect candor, openness, and honesty, without concealment or deception, and with full disclosure, including to inform the client of all material matters; and the duty of loyalty and utmost good faith, of fair and honest dealing, and to act with integrity of the strictest kind.

Amberson also engaged in a business transaction with his client regarding securing this substantial pledge of certificates to Jefferson Bank. But in connection therewith, Amberson did not disclose to McAllen the potential conflict of interest and he did not obtain a written consent or waiver of the conflict.

Amberson argues in his Post-Hearing Brief Regarding Issue Six at Paragraph 3 that the intended source for repaying the loan is recovery on his contingent fee claim, that McAllen's refusal to pay the contingent fee thus impairs that ability, and that "prevention of performance by one party [McAllen} excuses performance by the other party [Amberson]." Amberson thus argues in his briefing both pre- and post-hearing that the contingent fee was a condition precedent to his repayment obligation. But there was no such condition precedent with Jefferson Bank as Amberson is required to perform (repaying the loan) with Jefferson Bank regardless of McAllen's position on the contingent fee; and it is the Arbitrator who is denying the contingent fee claim. Amberson and his Firm also never pledged any interest in a contingency fee recovery as collateral against the loan. The Arbitrator further determines from the credible evidence that there was not an agreement between Amberson and McAllen that the source of repayment of the bank's debt would be the recovery on a contingency fee. Finally, the failure of a condition precedent is a defense to contract claims and not fraud or breach-of-fiduciary-duty claims such as asserted here. Amberson's argument therefore is without merit.

As of the close of the hearing, Amberson and his P.C. had not repaid the loan and the eight pledged certificate of deposits are still held as collateral by Jefferson Bank. The loan officer in charge at Jefferson Bank, Joe De La Garza, confirmed in his testimony that Jefferson Bank certainly will not release the certificates unless the loan is paid off in full or adequate and appropriate substitute collateral is provided. The loan would have come up for annual renewal again in July, 2019, three or so weeks after De La Garza's testified. Based on his testimony, the Arbitrator assumes the loan was renewed for another year given the solid collateral in the McAllens' pledged certificates for 100% of the loan---and the Arbitrator has not heard otherwise from counsel.

McAllen seeks to recover now the full amount of $2,250,000.00 from Amberson and his Firm, contending that this will enable McAllen to pay off the Jefferson Bank loan and thereupon receive a release of the pledged certificates. The Arbitrator is reluctant to enter an award conditioned on future steps McAllen must take with the dollars awarded and if received from Amberson.

Moreover, although the following matters have not been raised or argued by Amberson as a defense, the Arbitrator in studying the Jefferson Bank documents/exhibits is unable to make certain essential determinations regarding the dollar amount McAllen presently seeks to recover. The difficulty arises because certain of the pledged certificates that constitute the $2,250,000.00 total amount claimed by McAllen are in the name of his wife, Mrs. Frances McAllen, and the dollar amounts attributable to each of the eight certificates is not in evidence. Mrs. McAllen is not a party to this arbitration. While De La Garza properly noted that the certificates of deposit "belong to Mr. McAllen and his family" (Tr. Vol. 7, p.16), the Arbitrator cannot simply lump all of "the family's certificates" into Mr. McAllen's claim without certainty that McAllen has an

ownership interest in them or otherwise has a right to recover on their behalf.  One cannot make assumptions in this regard.  The challenge from the evidentiary record is set forth below.

The year 2011 is the first year that the Firm's loan increased to $2,250,000.00.  The collateral-related documents marked as Exhibit J6-2 list eight certificates pledged as collateral as of a July 14, 2011, loan date:  two of the eight certificates (nos. 852403 and 852406) are for $250,000.00 each and are "in the name of Frances W. McAllen."   Five certificates for $250,000.00 each are in the name of James A. McAllen (certificate nos. 852402, 852406, 852407, 856417 and 856418) and thus total $1,250,000.00.  Finally, there is one certificate (no. 852404) for $500,000.00 "in the name of James A. McAllen and Frances W. McAllen."  Thus, as of 2011, $500,000 of the total $2,250,000.00 in certificates pledged were in the sole name of Mrs. McAllen.  There is no evidence whether these were community or separate property (regardless of what the Arbitrator might assume or expect).

In 2012 (Exhibit J6-3), two of the certificate numbers were changed, but more fundamentally now all eight certificates are listed as "in the name of James McAllen or Frances McAllen."  Obviously there was some financial reason for this change.  The next year (2013) (Exhibit J6-4) all eight certificates are listed with dollar amounts and "in the name of James A. McAllen and/or Frances W. McAllen."  At this point (2013), McAllen has an ownership interest in all the certificates.

But it does not end there.  For 2014 through the most recent 2018 renewal year before the arbitration hearing, the evidence of the certificates consists of the annual Account Pledge Security Agreement for each year (Exhibits J6-5 through J6-9).  The Account Pledge Security Agreement for each year states as follows:

"[T]he term "Accounts" (being pledged as collateral) means all of the following:

Certificate of Deposit No. 857447 in the name of James A. McAllen.
Certificate of Deposit No. 857448 in the name of Frances W. McAllen
Certificate of Deposit No. 857449 in the name of James A. McAllen and/or Frances W. McAllen
Certificate of Deposit No. 857450 in the name of James A. McAllen POD Frances W. McAllen
Certificate of Deposit No. 857451 in the name of Frances W. McAllen POD James McAllen
Certificate of Deposit No. 857452 in the name of James A. McAllen POD Mary Margaret Amberson
Certificate of Deposit No. 857453 in the name of James A. McAllen POD Elizabeth McAllen Roberts
Certificate of Deposit No. 857454 in the name of James A. McAllen POD James McAllen, Jr."

As of 2014 and through 2018, there now are new numbers for each certificate, so one cannot trace the certificates to prior years with regard to dollar amount.  As can be seen, two of the certificates are now again in the name of Mrs. Frances McAllen only.  In addition, there is no evidence of the dollar amounts of each new certificate.  Thus, one cannot determine based on the most current Account Pledge Security Agreement for 2018 (Exhibit J6-9) with confidence the dollar amount of certificates of deposit in which Mr. McAllen has an ownership interest.  While the Arbitrator would expect that the two certificates in Mrs. McAllen's name are for $250,000.00

each, the five in McAllen's name are for $250,000.00 each, and the one certificate in the name of both McAllens is for $500,000.00, there is no actual proof in the evidentiary record that this is in fact correct. When new certificate numbers were assigned in 2014, the certificates may have been for new and different dollar amounts. In the absence of the ability to tie specific dollar amounts to particular certificates, the correct amount of McAllen's claim cannot be pinpointed. Also, McAllen has not addressed or established his standing to assert claims on behalf of his wife as to her separately-pledged certificates. The record further does not reveal and the Arbitrator cannot assume whether the two certificates in the name of Mrs. McAllen are community property of Mr. and Mrs. McAllen or Mrs. McAllen's separate property. The Arbitrator will not grant relief based on assumptions of key facts, no matter how likely it is that Mr. McAllen's two certificates of deposit are the community property of Mr. and Mrs. McAllen. Therefore, the Arbitrator is unable on this record to determine the amount that should be awarded McAllen.

There also is an additional factor at play here. The Arbitrator cannot simply award McAllen $2,250,000.00 in damages at this time, as that would assume steps have occurred that have not yet occurred, those future steps being that: (1) Amberson or his Firm does not pay off the loan; (2) Jefferson Bank refuses to renew and the note becomes in default; and (3) the Bank exercises its rights against the collateral, *i.e.*, the certificates, and takes possession of them, forecloses and applies the proceeds of the certificates against the loan. While again the Arbitrator understands this is a very likely scenario given that this Award denies Amberson's contingency fee claim which he indicates is his way to repay the loan, the Arbitrator cannot award McAllen monies on certificates when at this point in time they have not been taken by the bank and he has not been presently damaged thereby. The argument that he is being deprived of the use over the past nine years of the dollars represented by the certificates does not change this analysis. The decision by the Texas Supreme Court in *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W. 3d 214 (2017), cited by McAllen as precedent for his damages request, does not support an award of damages now on the particular facts as they exist here. The facts giving rise to McAllen's claims on liability do presently exist and have been determined by the Arbitrator. If the future steps outlined above do occur, then McAllen can assert any claims he might then have in the District Court that has stayed its proceeding pending arbitration (or other court of appropriate jurisdiction).

Amberson conceded in his testimony, and even without regard to McAllen's fraud and breach of fiduciary claims asserted here:

"Q: And then do you admit that he owes you or you (Amberson) owe him (McAllen) $2.250 million at Jefferson Bank?

"A: If -- well, I owe Jefferson State $2.2 million, and if -- I don't receive my contingency fee agreement, then -- and I'm not able to pay that loan off, then I think the CD's will be -- I think taken. And I would then owe the money to -- he would step in the shoes of the bank and ultimately I would owe it to him, so yes." (Tr., Vol. 3, pp. 229-30).

Therefore, whether based on the theory of recovery correctly summarized by Amberson above (which cause of action has not yet arisen), other causes of action, or the determinations

46

made in this Award regarding liability on McAllen's claims, McAllen can seek recovery of his damages in the District Court that has stayed the underlying proceeding pending arbitration (or other court of appropriate jurisdiction) at such time as the Amberson Firm defaults, if at all, on the loan and the bank exercises its rights over the certificates of deposit.

Amberson in his Post-Hearing Summary Brief filed December 19, 2019, raises the issue of whether McAllen's claim is ripe given the above-described present status of McAllen's certificates. Amberson argues that lack of ripeness is a jurisdictional defense to the claim. The Arbitrator, (1) in furtherance of the District Court's Orders of April 23, 2018, and October 18, 2018, referring all matters in the underlying lawsuit to arbitration and to the undersigned as Arbitrator, which would include the misrepresentation and fiduciary breach claims generally asserted by the McAllen Parties in their Second Amended Answer, Counterclaims, and Claims Against Third-Parties filed December 18, 2017 (although the Jefferson Bank specific facts are not added until the matter is in arbitration); (2) in the exercise and furtherance of his inherent equitable powers, and (3) in order to reach a result that is just and reasonable under the unique facts and circumstances presented, fashions such a remedy here. The Arbitrator also hereby reports to the District Court that the undersigned stands ready and willing upon referral by the Court to conduct a further arbitration to determine the question of damages at such time as the bank forecloses or otherwise exercises dominium over the certificates, if such be deemed appropriate. As to a jurisdictional challenge, the Arbitrator will not decide that issue based on the District Court's Order ordering that the claims then pending in the underlying lawsuit, which included the McAllen Parties' claims of misrepresentation and breach of fiduciary duty, be determined by the Arbitrator.

Given the above, the Arbitrator does not award exemplary damages on this claim.

The question of a civil conspiracy and therefore joint and several responsibility by Amberson and his Firm for the liability determined herein is addressed in Part VII.

McAllen's claim that the Firm is the alter ego of Amberson for purposes of Amberson's vicarious liability on this claim is addressed in Part VIII.

## VII. The McAllen Parties' Claim of Civil Conspiracy

The elements of civil conspiracy in Texas are: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.

A conspiracy obviously requires two or more persons. The general rule is that an entity and its agents constitute a single "person" and thus cannot form a conspiracy of two or more persons. There, however, is an established exception to this general rule that is applicable here: an agent can conspire with an entity if the agent is acting for his own personal benefit. Amberson testified that he is the sole owner and agent of Jon Christian Amberson, P.C., that he is the sole decision maker for the Firm, and that any benefit to the Firm is a benefit to him. In

connection with the McAllen Parties' claims addressed in Parts II., III., IV. and VI., Amberson acted for his own personal benefit. Additionally, Amberson as the sole owner of the Firm could and did conspire with his Firm.

For the sake of brevity, the Arbitrator adopts in full the analysis set forth in Parts II., III., IV. (as to the $545,000.00 promissory note) and VI. The Arbitrator further determines from the evidentiary record and his prior analyses that the requirements under Texas law for establishing a conspiracy between Amberson and his Firm have been proved. Therefore, Amberson and his Firm are jointly and severally liable for the acts and transactions addressed, and the monetary amounts awarded, in Parts II. and III. Part IV. addresses the $545,000.00 note signed by Amberson individually, which was signed by Amberson in order to achieve an amended and lower IRS Form 1099 from McAllen for Amberson's Firm; thus Amberson and his Firm are jointly and severally liable for the breach of fiduciary duty and the damages awarded in Part IV. Based on the analysis in Part VI. related to Jefferson Bank, joint and several liability of Amberson and his Firm has been proved as to any damages as hereafter may be determined.

Similarly, Amberson testified that he is the sole owner and agent of ANR, that he is the sole decision maker for ANR, and that any benefit to the Firm is a benefit to him. The Arbitrator adopts in full the analysis in Part V. regarding the Cannon Grove transaction. McAllen has proved that Amberson and ANR conspired with regard to such transaction, and thus Amberson and ANR are jointly and severally liable for each other's conduct. Part V. grants a mandatory injunction in favor of McAllen against Amberson and ANR. As set forth below in Part X.I., McAllen is awarded as the prevailing party $350,000.00 in attorneys' fees on his Part V. claim. Amberson and ANR are jointly and severally liable for this monetary amount.

### VIII. The McAllen Parties' Claim of Alter Ego

The McAllen Parties claim that Jon Christian Amberson, P.C. and Amberson Natural Resources, LLC are the alter egos of Amberson

The Arbitrator certainly is mindful of the stringent requirements to establish alter ego under Texas law. One typically thinks of compliance with corporate or entity formalities as insulating an individual from alter ego personal liability for the actions or liabilities of the entity. However, that alone does not end the analysis. Here, based on the Arbitrator's weighing of the evidence in this record, and as reflected in part in the analyses in this Award, the Arbitrator determines that the Firm and ANR are the alter egos of Amberson with regard to the claims asserted by the McAllen Parties, and that Amberson personally is liable for the claims the McAllen Parties have proven against the Firm and ANR.

As to Amberson's Firm, (1) Amberson is the sole owner and decision maker of the Firm and thus has a financial interest in the Firm and controls its operations; (2) Amberson used the Firm and both its operating and IOLTA account to pay and subsidize personal expenses (sometimes directly from the Firm's operating or IOLTA account to cover a personal expense) such that there is a unity of interests between the Firm and Amberson; (3) Amberson caused the Firm to be used for the purpose of perpetrating and did perpetrate an actual fraud on the McAllen Parties primarily for his direct personal benefit; and (4) given that Amberson has indicated that

the Firm likely cannot pay, for instance, the $2,250,000.00 loan owed Jefferson Bank (Part VI. of this Award) without the Award of a contingency fee, and there being no other evidence in the record to suggest that the Firm can pay the amounts awarded herein, it equitably would be a manifest injustice if on this record the McAllen Parties were left with an uncollectible Award or resulting judgment against the Firm, while allowing the Firm's alter ego Amberson to go free. Such an equitable principle especially is important in arbitration. Therefore, the Arbitrator determines that Jon Christian Amberson, P.C. is the alter ego of Amberson. Amberson personally is liable for the acts, claims, liability and amounts set forth herein that any or all of the McAllen Parties have proven and are awarded against the Firm.

Regarding Amberson Natural Resources, LLC, it was formed for the sole purpose of receiving a $4,500,000.00 loan from McAllen in order to purchase the 90% interest in Cannon Grove as discussed in Part V. Amberson is the sole owner of ANR. Amberson provided $500.00 to open up a bank account for ANR. That is the only capital Amberson has provided to ANR. This inadequate capitalization for ANR, coupled with Amberson's total control of ANR, establishes a unity of interest between Amberson and ANR. Whether or not Amberson initially created ANR for the purpose of perpetrating a fraud, ANR ultimately was used for such purpose in connection with Amberson's argument that the $4,500,000.00 amount McAllen paid Amberson's wholly-owned entity ANR was for a gift and was not a loan, which would be for the direct personal benefit of Amberson. Finally, it would be manifestly unjust not to hold Amberson personally liable for ANR's actions. Thus, the Arbitrator determines that Amberson personally is liable for the acts, claims, and liability set forth herein that McAllen has proven and been awarded against ANR. The Arbitrator is well aware that the primary relief granted on McAllen's Cannon Grove claim are three declaratory determinations and a mandatory injunction ordering Amberson as the sole owner of ANR to return all of ANR's right, title and interest in Cannon Grove. However, there also is the monetary award of attorneys' fees pursuant to the parties' Stipulation Regarding Attorneys' Fees which the Arbitrator incorporates into the Award (discussed in Part XI.), and thus Amberson personally is liable together with ANR for the attorneys' awarded to McAllen as the prevailing party on the Cannon Grove claim

In sum, regardless of whether or not corporate and entity formalities have been observed with the Firm and ANR, the corporate and entity fiction should be and is disregarded here because the corporate and entity form has been used as part of an unfair device to achieve what would be an inequitable result if Amberson is able to shield himself from personal liability behind his Firm and ANR. As a forum of equity, determining on this record that the Firm and ANR are the alter ego of Amberson is the fair and equitable result and avoids what otherwise likely will be in injustice.

## IX.  Amberson Parties' General Affirmative Defenses

Amberson, his Firm and ANR in their First Amended Answer in Paragraph 4. "plead the following as affirmative defenses to the various claims: (a) statute of limitations; (b) statute of frauds; (c) estoppel, (d) ratification; (e) laches; (f) failure to mitigate alleged damages; and (g) failure of consideration." With regard to the claims of the McAllen Parties granted herein, these affirmative defenses and any other defenses asserted by the Amberson Parties in their other pleadings or briefing are denied as without merit whether specifically addressed or not in this

Award, as all defenses to all claims have been considered by the Arbitrator.  To the extent Amberson's contention addressed in Part II. above that there was a special understanding between him and McAllen regarding expenses has been asserted by Amberson as to any McAllen Parties' claims other than those discussed in Part II.. the Arbitrator's determination that there was not such an understanding is adopted in connection with any other of the McAllen Parties' claims.

## X. Exemplary Damages

The McAllen Parties seek exemplary damages for their claims discussed in Part II., and McAllen seeks exemplary damages for his claims addressed in Parts III. and VI.  The Arbitrator has determined in Part VI. that an award of exemplary damages will not be granted.  The McAllen Parties recommend $1,000.000.00 in punitive damages on their Part II. claims. McAllen recommends $750,000.00 on his Part III. First Community Bank claim.

As the Arbitrator similarly indicated in the McAllen Parties' request that Amberson disgorge the paid hourly fees in the Forest Oil Arbitration Proceeding, in a factual vacuum focused solely on Amberson's actions a substantial award of punitive damages is warranted. These actions include the Arbitrator's expressed view of the authenticity and trustworthiness of the three letters submitted by Amberson as evidence in this proceeding marked as Exhibits J1-4, J2-9 and J5-4.  But there are other factors to weigh.  First, again it is undisputed that Amberson as lead counsel in the Forest Oil Arbitration Proceeding accomplished an excellent result for the McAllen Parties, namely an ultimate payment to the McAllen Parties of $25 million dollars plus remediation requirements on the property.  Amberson clearly devoted very substantial time to the matter over approximately twelve years, and the hourly fees his Firm ended up receiving are very short of his time (and that of Larissa Hood) actually spent and the result achieved.  Second, the Arbitrator has determined from his assessment and weighing of the evidence that the McAllen Parties' claims for conspiracy and alter ego are valid and awarded, such that Amberson is personally liable for all monetary amounts awarded.

Accordingly, balancing all matters, the Arbitrator will not grant additional exemplary damages despite Amberson's unconscionable conduct.  Amberson shall reimburse McAllen for McAllen's payment of 50% of the Arbitrator's fees and expenses, as set forth in the Conclusion below.

## XI. Attorneys' Fees

The parties have filed the following Stipulation Regarding Attorneys' Fees:

"With respect to attorneys' fees in this matter, the parties stipulate as follows:

1)      Subject to paragraph 2 below, $2,000,000.00 is a reasonable and necessary attorneys' fee to be awarded to the prevailing party, and includes attorneys' fees through the completion of post-hearing briefing in this arbitration;

2)      $350,000.00 of the $2,000,000.00 referenced above is attributable to Issue 5 – Cannon Grove, provided that this stipulation by Amberson is not intended to waive Amberson's objection to the arbitrability of the Cannon Grove issue;

3)      $25,000.00 is a reasonable and necessary attorneys' fee, for the prevailing party, for proceedings in the district court to confirm or vacate an award;

4)      $75,000.00 is a reasonable and necessary attorneys' fee, for the prevailing party, for an appeal to the court of appeals;

5)      $30,000.00 is a reasonable and necessary attorneys' fee, for the prevailing party, for preparing or responding to a Petition for Review to the Supreme Court of Texas;

6)      $25,000.00 is a reasonable and necessary attorneys' fee, for the prevailing party, for preparing full briefing on the merits to the Supreme Court of Texas."

McAllen and the McAllen Parties are the prevailing parties, having prevailed on all claims asserted by them, except the $300,000.00 and $100,000.00 amounts sought in Part II., the $200,000.00 promissory note in Part IV. (denied by the Arbitrator solely to avoid a double recovery by McAllen as the amount appears to be part of the McAllen's recovery in Part III.), and the recovery of damages in Part VI. Alternatively, the McAllen Parties and McAllen have established liability and been awarded damages on their claims under the Texas Theft Liability Act, breach of the $545,000.00 promissory note, and for declaratory relief on the Part V. Cannon Grove matter, which each provide for an award of attorneys' fees. Damages awarded McAllen and the McAllen Parties, including pre-judgment interest, total $7,294,910.13. The McAllen Parties also are the prevailing parties under the Amberson Firm's Part I. claim for a contingency fee. Therefore, based on the parties' stipulation of a $2,000,000.00 attorneys' fee "to be awarded to the prevailing party," such amount is awarded the McAllen Parties pursuant to said Stipulation. Of the $2,0000,000.00, Amberson is liable for the full amount, his Firm is jointly and severally liable for $1,650,000.00 of the total, and ANR is jointly and severally liable for $350,000.00 of the total.

## XII. CONCLUSION

ACCORDINGLY, THE ARBITRATOR AWARDS AS FOLLOWS:

1. JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP, LTD., collectively, the amount of $3,725,700.00 based on their claims asserted in Part II.

2. JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN the amount of $3,569,210.13 based on his claims asserted in Parts III. and IV.

3. The Arbitrator DECLARES in connection with the Part V. Cannon Grove transaction that:

> a. The $4,500,000.00 that JAMES ARGYLE MCALLEN paid to AMBERSON NATURAL RESOURCES, LLC by wire dated March 18, 2009, was a loan;
>
> b. The loan is secured by AMBERSON NATURAL RESOURCES, LLC's 90% interest in Cannon Grove; and
>
> c. The loan will be deemed repaid and forgiven upon AMBERSON NATURAL RESOURCES, LLC returning its 90% interest to JAMES ARGYLE MCALLEN.

4. The Arbitrator ORDERS in connection with the Part V. Cannon Grove transaction that JON CHRISTIAN AMBERSON, as the sole owner and decision maker of AMBERSON NATURAL RESOURCES, LLC, shall within thirty (30) days of the date of this Award have AMBERSON NATURAL RESOURCES, LLC return to JAMES ARGYLE MCALLEN all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/ or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest). However, if within thirty (30) days following the date of this Award Amberson and ANR contest in state court arbitral jurisdiction over McAllen's Cannon Grove claims, then the directive to transfer the interest within thirty (30) days is stayed pending further order of the court.

5. Pursuant to and incorporating the parties' Stipulation Regarding Attorneys' Fees, JON CHRISTIAN AMBERSON shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP. LTD., and MCALLEN TRUST PARTNERSHIP, LTD., collectively, as the "prevailing party" in this Award $2,000,000.00 as reasonable and necessary attorneys' fees. JON CHRISTIAN AMBERSON, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. AMBERSON NATURAL RESOURCES, LLC, is jointly and severally liable for $350,000.00 of the total. The Arbitrator further incorporates the terms of the Stipulation Regarding Attorneys' Fees as to future proceedings that (a) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for proceedings in the District Court to confirm or vacate an award; (b) $75,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for an appeal to the Court of Appeals; (c) $30,000.00 is a reasonable and necessary attorneys' fees, that the prevailing party shall be paid by Amberson, for preparing or responding to a Petition for Review to the Supreme Court of Texas; and (d) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for preparing full briefing on the merits to the Supreme Court of Texas.

6. JON CHRISTIAN AMBERSON shall pay $51,232.11 to JAMES ARGYLE MCALLEN, such amount being the 50% in Arbitrator fees and expenses paid by MCALLEN to the Arbitrator.

7. All the above sums ordered paid are payable on or before thirty (30) days from the date of this Award.

8. Interest on any unpaid amounts shall commence thirty (30) days from the date of this Award until paid at the rate of five percent (5%) per annum, simple interest.

9. This Award is in full settlement of all claims, counterclaims, third-party claims, and any other claims submitted in this arbitration. All claims for relief not expressly granted herein, including all claims set forth by the parties in their pleadings, in their pre- and post-hearing briefing, or orally at the hearing, are hereby DENIED.

SIGNED this 30th day of _April_, 2020.

Tom Collins, Arbitrator

# Exhibit B

## JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

TELEPHONE (210) 826-3339                                    TELECOPIER (210) 826-3340

December 10, 2004

Mr. James A. McAllen
Mrs. Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

      RE:  **Forest Oil Corporation**

Dear Mr. & Mrs. McAllen:

     The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C. and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil corporation relating to environmental contamination issues arising from the actions of Forest Oil Corporation and its employees as relayed to you by Mr. Bobby Pearson, a former employee of Forest Oil Corporation.

**DESCRIPTION OF SERVICES**

    1.  **CLIENTS AND CLIENT REPRESENTATIVES**:  The firm is being retained to represent the following:

        (1)  James Argyle McAllen, Individually.

        (2)  El Rucio Land and Cattle Company, Inc. - Representative - James A. McAllen.

        (3)  San Juanito Land Partnership, Ltd. - Representative James A. McAllen.

-1-

**EXHIBIT**

**J1 - 3**

    (4)   McAllen Trust Partnership - Representative - James A. McAllen.

    (5)   John R. Willis Management Partnership, Ltd., - Representative - James A. McAllen.

The representative of the aforementioned entities is James A. McAllen.

**2.   PURPOSE OF REPRESENTATION:**  It is understood that our firm is being retained by you to provide legal services in relation to the action against Forest Oil Corporation, and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated the June 22, 1999 letter agreement incorporated into the underpayment of royalty litigation settlement agreement of 1999 in relation to consolidated Cause Number C-2016-95-G, state statutes, environmental laws and state regulations on your properties.

**3.   LEGAL REPRESENTATION:**  Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter.  Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4.   NO GUARANTEE OR INDUCEMENTS:**  It is understood that the law firm cannot and does not guarantee the outcome or results of any litigation.  We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.  It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5.   TEXAS LAWYER'S CREED:**  I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter.  Pursuant to the Creed, we advise you that:

-2-

1.   Proper and expected behavior of counsel are described in the Creed.

2.   Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.   I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.   I will not pursue tactics which are intended primarily for delay.

5.   I will not pursue any course of action which is without merit.

6.   I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

7.   You are advised that mediation, arbitration and other alternative methods of resolving and settling disputes are available to you to resolve disputes with opposing parties.

**6.   FEES:**   The nature, character and amount of fees charged by us are determined in accordance Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas.   Our fees, retainer and payment policies are based upon:

(1)   the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

(2)   the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

(3)   the fee customarily charged in this locality for similar legal services;

(4)   the amount involved and the results obtained;

-3-

JCAPC_00008618

(5) the time limitations imposed by you or by the circumstances of our engagement;

(6) the nature and length of our professional relationship with you;

(7) the experience, reputations and ability of the lawyer or lawyers performing the services; and,

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**7. BILLINGS:** You understand that billings will be furnished to you periodically, based upon the frequency and amount of activity required to be expended necessarily and reasonably in your behalf. You agree to promptly pay within fifteen (15) days of any statement rendered to you all sums due and owing.

**8. FIXED HOURLY RATES:** The following schedule of fixed hourly rates will apply to your case.

| LAWYER/ASSOCIATE/LEGAL ASSISTANT | RATE |
| --- | --- |
| A.  Lawyer, Jon Christian Amberson | $350.00 per hour |
| B.  Lawyer, Larissa J. Hood | $250.00 per hour |
| C.  Legal Assistant/Paralegal | $60.00  per hour |

Any services performed after January 1, 2005, will be charged at regular hourly rates then in effect. It is understood that other personnel of the law firm may perform services in this matter, and the rates set forth above shall apply to all attorneys, associates or legal assistants of equivalent experience. The total fees are sometimes raised from what the hourly rates would generate, based on the complexity and size of the transaction, as well as the attainment of superior results. We discuss all such increases with our clients, and are confident that you will find them appropriate should we conclude such an increase is fair. You will be charged for travel time in connection with our representation and time spent in travel will be billed for attorney's time at one half the attorney's usual hourly fixed rate. We will submit monthly fee statements to you

-4-

JCAPC_00008619

which will contain statement for fees plus cost and expenses incurred on behalf of the clients as hereinafter provided for. It is agreed that any fees and/or expenses due under this letter are due upon receipt for the statement for such fees and/or expenses. Fees will be subject to a final adjustment depending upon results obtained in light of efforts expended on your behalf.

9.   **ATTORNEY IN CHARGE:** It is understood and agreed that Jon Christian Amberson is the attorney in charge of your representation. He is the only attorney in the law firm who will work on your case unless, in his sole discretion, he decides to consult with and seek the assistance of other members of the firm. It is further understood that he may need to seek the assistance of other lawyers outside the firm and in that event will endeavor to seek qualified attorneys who charge fees at rates that are reasonable under the circumstances in the event any defendant refuses to take responsibility for the actions outlined by Bobby Pearson, the whistleblower in this matter. We are hoping that the responsible party for these actions takes responsibility early on and identifies the areas of concern and remediates the problem areas on the ranch and compensates you for your out of pocket expenses in dealing with this most unfortunate matter. If not, then this will require my firm to hire outside counsel to prosecute this matter fully and completely.

10.   **COURT AWARDED ATTORNEY'S FEES:** In the event that the court may, in its discretion, award a sum as attorney's fees, should the amount of attorney's fees awarded exceed the fees you have paid, we shall be entitled to an additional sum in the amount of the difference between the fees received from you and the fees awarded. The court's failure to award you attorney's fees shall not otherwise affect the fees to be paid our firm under this agreement.

11.   **COSTS AND EXPENSES:** In addition to the professional fees charged by the law firm, you will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representative and obtain approval for major expenses in advance, which approval shall be given by the Representative. These costs and expenses include, but are not limited to the following:

-5-

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)  Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firm advances such sums, then you agree to reimburse the firm for all sums so paid.

**12.   DISCUSSION OF ESTIMATES OF FEES:**  During the course of the attorney's discussion with you about handling this matter, the attorneys may have provided you with certain estimates of the magnitude of the fees and expenses that will be required at

-6-

certain stages of this litigation. It is the law firm's policy to advise all its clients that such estimates are just that, and that the fees and expenses required are ultimately a function of many conditions over which the attorneys have little or no control, particularly the extent to which the opposition files pretrial motions and engages in its own discovery. The reason why the attorneys submit bills to clients on a monthly basis shortly after the services are rendered is so the clients will have a ready means of monitoring and controlling the expenses they are incurring. If the clients believe the expenses are mounting too rapidly, the clients agree to contact the attorneys immediately so they can assist in evaluating how expenses might be curtailed in the future. When the attorneys do not hear from the clients, they may assume that the clients approve of the overall level of activity on their part in this case on the clients behalf.

**13. OVERTIME FOR CLERICAL HELP:** The clients understand that from time to time, the attorneys may be called upon to render legal services in the clients' behalf during evenings, weekends and on other holidays in order to meet time schedules or other emergency situations as they may arise. In such an event, the clients agree to reimburse the firm for any additional expenses incurred by them by way of overtime or additional temporary help such as Manpower or other temporary services.

**14. NOTICE TO CLIENTS:** The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**15. ARBITRATION:** Any fee dispute arising under this agreement and/or the services rendered for you by our firm will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non appealable. The arbitrator will be selected as follows:

JCAPC_00008622

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Bexar County District Courts and is presently retired or in senior status.  The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Bexar County, Texas.

**16.  LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Bexar County, State of Texas.

**17.**  You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**18.**  You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

**19.**  If the foregoing terms and conditions accurately summarize and confirm your understanding of our engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen, Individually, and representative of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

_____
JAMES A. McALLEN, Individually


_____
JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., McAllen
Trust Partnerships and John R. Willis
Management Partnership, Ltd.

-8-

JCAPC_00008623

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Ave.
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 - Facsimile

JCAPC_00008624

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Bexar County District Courts and is presently retired or in senior status.  The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Bexar County, Texas.

**16.   LAW APPLICABLE AND VENUE:**  This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Bexar County, State of Texas.

**17.**   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**18.**   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

**19.**   If the foregoing terms and conditions accurately summarize and confirm your understanding of our engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen, Individually, and representative of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

_____
JAMES A. McALLEN, Individually


_____
JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., McAllen
Trust Partnerships and John R. Willis
Management Partnership, Ltd.

-8-

# THE TEXAS LAWYER'S CREED
# A MANDATE FOR PROFESSIONALISM

I am a lawyer, I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this creed for no other reason that it is right.

## I. OUR LEGAL SYSTEM

A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism.

1. I am passionately proud of my profession. Therefore, "My word is my bond."

2. I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life.

3. I commit myself to an adequate and effective pro bono program.

4. I am obligated to educate my clients, the public and other lawyers regarding the spirit and letter of this Creed.

5. I will always be conscious of my duty to the judicial system.

## LAWYER TO CLIENT

A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate legal means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest.

1. I will advise my client of the contents of this creed when undertaking representation.

2. I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible.

3. I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice.

4. I will advise my client that civility and courtesy are expected and are not a sign of weakness.

5. I will advise my client of proper and expected behavior.

6. I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct.

7. I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

8. I will advise my client that we will not pursue tactics which are intended primarily for delay.

9. I will advise my client that we will not pursue any course of action which is without merit.

10. I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel.

11. I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

## III. LAWYER TO LAWYER

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct.

1. I will be courteous, civil, and prompt in oral and written communications.

2. I will not quarrel over matters of form or style, but I will concentrate on matters of substance.

3. I will identify for other counsel or parties all changes I have made in documents submitted for review.

4. I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties.

5. I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are canceled.

6. I will agree to reasonable requests for extensions of time and for waiver or procedural formalities, provided legitimate objectives of my client will not be adversely affected.

7. I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond.

8. I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses.

9. I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me.

10. I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel.

11. I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed.

12. I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the Court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court.

13. I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence.

14. I will not arbitrarily schedule a deposition, court appearance, or hearing until a good faith effort has been made to schedule it by agreement.

15. I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party.

16. I will refrain from excessive and abusive discovery.

17. I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear.

18. I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable.

19. I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

## IV. LAWYER AND JUDGE

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession.

1. I will always recognize that the position of the judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.

2. I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law.

3. I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility.

4. I will be punctual.

5. I will not engage in any conduct which offends the dignity and decorum of proceedings.

6. I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.

7. I will respect the rulings of the Court.

8. I will give the issues in controversy deliberate, impartial and studied analysis and consideration.

9. I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

# Exhibit C

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3339                                    TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
James Argyle McAllen, Jr.
P.O. Box 1139
Edinburg, Texas  78540-1139

> RE:   Contract of Employment Regarding Representation of James Argyle McAllen, Individually and James Argyle McAllen, Jr., Individually against Forest Oil Corporation and any other Responsible Entities.

Gentlemen:

The purpose of this letter is to summarize and confirm the terms and conditions of your employment of the firm of Jon Christian Amberson, P.C., and our understanding regarding my firm's role as legal counsel for you in connection with the prosecution of claims against the above referenced oil companies relating to environmental contamination issues related arising from illegal dumping of hazardous materials and radioactive materials.

## <u>DESCRIPTION OF SERVICES</u>

**1.     CLIENTS AND CLIENT REPRESENTATIVES**:  The firm is being retained to represent the following:

1.   James A. McAllen, Individually

2.   James A. McAllen, Jr., Individually

---

**EXHIBIT**

**J1 - 5**

Page 2

**2. PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3. LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4. NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5. TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

1. Proper and expected behavior of counsel are described in the Creed.

2. Civility and courtesy are expected from lawyers and are not a sign of weakness.

3. I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4. I will not pursue tactics which are intended primarily for delay.

5. I will not pursue any course of action which is without merit.

6. I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.

Page 3

7.      You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

**6.      FEES**: The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;

3. the fee customarily charged in this locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by you or by the circumstances of our engagement;

6. the nature and length of our professional relationship with you;

7. the experience, reputation and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of James Argyle McAllen and James Argyle McAllen, Jr., in the event of an adverse verdict.

Page 4

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

8.   **COSTS AND EXPENSES:**  You will be charged for all costs and expenses of this representation.   To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives.  These costs and expenses include, but are not limited to, the following:

1)   Court costs;

2)   Citation and/or subpoena fees;

3)   Deposition fees, costs and expenses;

4)   Investigation fees, costs and expenses;

5)   Expert witness fees, costs and expenses;

6)   Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7)   Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8)   Long distance telephone charges, and conference calls expenses;

Page 5

9)   Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10)   Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, then you agree to reimburse the firms for all sums so paid.

**9.   NOTICE TO CLIENTS:**   The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.  Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.  For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.   ARBITRATION:**   Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration.  The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable.  The arbitrator will be selected as follows:

(1)   Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status.  The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

**11.   LAW APPLICABLE AND VENUE:**   This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

**12.**   You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

**13.**   You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

Page 6

**14.** If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and James Argyle McAllen and James Argyle McAllen, Jr.

_____
JAMES ARGYLE McALLEN,
INDIVIDUALLY

_____
JAMES ARGYLE McALLEN, JR.
INDIVIDUALLY

_____
Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas  78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

JCAPC_00008635

# THE TEXAS LAWYER'S CREED

# A MANDATE FOR PROFESSIONALISM

I am a lawyer; I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this Creed for no other reason than it is right.

## I. OUR LEGAL SYSTEM

A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism.

1. I am passionately proud of my profession. Therefore, "My word is my bond."

2. I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life.

3. I commit myself to an adequate and effective pro bono program.

4. I am obligated to educate my clients, the public and other lawyers regarding the spirit and letter of this Creed.

5. I will always be conscious of my duty to the judicial system.

## LAWYER TO CLIENT

A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate legal means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest.

1. I will advise my client of the contents of this creed when undertaking representation.

2. I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible.

3. I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice.

JCAPC_00008636

1. I will not be... overbearing or pushy and courtesy are expected and are not a sign of weakness.

3. I will pursue my claim or proper and expected in fairness.

4. I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct.

7. I will advise my client that we will not pursue conduct which is intended primarily to harass or to drain the financial resources of the opposing party.

8. I will advise my client that we will not pursue tactics which are intended primarily for delay.

9. I will advise my client that we will not pursue any course of action which is without merit.

10. I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel.

11. I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

## III. LAWYER TO LAWYER

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct.

1. I will be courteous, civil, and prompt in oral and written communications.

2. I will not quarrel over matters of form or style, but I will concentrate on matters of substance.

3. I will identify for other counsel or parties all changes I have made in documents submitted for my review.

4. I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties.

5. I will notify opposing counsel and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are canceled.

6. I will agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client will not be adversely affected.

7. I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond.

8. I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses.

9. I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me.

10. I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel.

11. I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed.

12. I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the Court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court.

13. I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence.

14. I will not arbitrarily schedule a deposition, court appearance, or hearing until a good faith effort has been made to schedule it by agreement.

15. I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience to any party.

16. I will refrain from excessive and abusive discovery.

JCAPC_00008638

17. I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear.

18. I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable.

19. I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

## IV. LAWYER AND JUDGE

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession.

1. I will always recognize that the position of the judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.

2. I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law.

3. I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility.

4. I will be punctual.

5. I will not engage in any conduct which offends the dignity and decorum of proceedings.

6. I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.

7. I will respect the rulings of the Court.

8. I will give the issues in controversy deliberate, impartial and studied analysis and consideration.

9. I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

# Exhibit D

JON CHRISTIAN AMBERSON, P.C.

ATTORNEYS AT LAW

2135 EAST HILDEBRAND AVE.

SAN ANTONIO, TEXAS 78209

Page 1

TELEPHONE (210) 826-3939

TELECOPIER (210) 826-3340

January 25, 2005

James Argyle McAllen
Frances McAllen
P.O. Box 1139
Edinburg, Texas 78540-1139

RE: Contract of Employment Regarding Representation of El Rucio Land and
Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust
Partnership and John R. Willis Management Partnership Ltd., related to
prosecution of Claims against Forest Oil Corporation, Conoco Inc., and
Conoco/Phillips Inc.

Dear Mr. & Mrs. McAllen:

The purpose of this letter is to summarize and confirm the terms and conditions
of your employment of the firm of Jon Christian Amberson, P.C., and our understanding
regarding my firm's role as legal counsel for you in connection with the prosecution of
claims against the above referenced oil companies relating to environmental
contamination issues related arising from illegal dumping of hazardous materials and
radioactive materials.

## DESCRIPTION OF SERVICES

1. **CLIENTS AND CLIENT REPRESENTATIVES:** The firm is being retained
to represent the following:

    1. El Rucio Land and Cattle Company, Inc. – Representative –
James A. McAllen

    2. San Juanito Land Partnership Ltd. – Representative –
James A. McAllen

    3. McAllen Trust Partnership – Representative – James A.
McAllen

**EXHIBIT**

**J1 - 6**

JCAPC_00022764

JUN C. ANBERSUN      Fax:21U82b334U      Jan 25 2005 16:09      P.04      P.4

Page 2

4.    John R. Willis Management Partnership Ltd. – Representative – Frances W. McAllen

The representatives of the aforementioned entities are James A. McAllen and Frances W. McAllen.

**2. PURPOSE OF REPRESENTATION:** It is understood that the firm is being retained by you to provide legal services in relation to an action against Forest Oil Corporation, Conoco Inc., and any of their successors or predecessors in interest including affiliates and any other oil company that is found to have violated state statutes and environmental laws and regulations on your properties.

**3. LEGAL REPRESENTATION:** Our legal representation is limited to this matter and we have not been retained to represent you generally or in connection with any other matter unless it has been confirmed by separate letter. Generally, we are to perform all services and take all such action in the described matters as may be appropriate and necessary in our discretion and serve as your counsel in furtherance of your interests.

**4. NO GUARANTEE OR INDUCEMENTS:** It is understood that the firm cannot and does not guarantee the outcome or results of any litigation. We cannot and do not make any warranties, express or implied, with regard to our representation except that our representation will be in compliance with the Code of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. It is further understood that the firm has made no representations, inducements or warranties to you in order to induce you to employ our services.

**5. TEXAS LAWYER'S CREED:** I am required to advise you of the existence of and our obligations under the Texas Lawyer's Creed. A copy of the Creed is enclosed along with this letter. Pursuant to the Creed, we advise you that:

1.    Proper and expected behavior of counsel are described in the Creed.

2.    Civility and courtesy are expected from lawyers and are not a sign of weakness.

3.    I will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

4.    I will not pursue tactics which are intended primarily for delay.

JCAPC_00022765

Page 3

> 5.   I will not pursue any course of action which is without merit.
>
> 6.   I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect your lawful objective.
>
> 7.   You are advised that mediation, arbitration and other alternative methods of resolving and setting disputes are available to you to resolve disputes with opposing parties.

6.   FEES: The nature, character and amount of fees charged by us are determined in accordance with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct as adopted by the Supreme Court of Texas and the State Bar of Texas. Our fees, retainer and payment policies are based upon:

> 1. the time and labor required, the novelty and difficulty of questions involved, and the skill requisite to perform the legal service properly;
>
> 2. the likelihood that the acceptance of the particular employment will preclude other employment by the firm or any of its lawyers;
>
> 3. the fee customarily charged in this locality for similar legal services;
>
> 4. the amount involved and the results obtained;
>
> 5. the time limitations imposed by you or by the circumstances of our engagement;
>
> 6. the nature and length of our professional relationship with you;
>
> 7. the experience, reputation and ability of the lawyer or lawyers performing the services; and
>
> 8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

JCAPC_00022766

JUN L. ANDERSON    Fax:2100200040    965-686-9403    Jan 29 2009 15.05    P.6

Page 4

**7. DETERMINATION OF FEES:** The firm will be compensated for handling this case for you on a contingent fee basis, which will operate as follows: You hereby agree to pay the firm, as attorney fees, thirty-three and one-third percent (33 1/3%) of such clients share of the gross recovery of "damages" as defined below to which a lien shall hereby attach in favor of the firm. The client shall retain sixty-six and two-thirds percent (66 2/3%) of the gross recovery of damages. Damages refers to damages, cash or deferred payments (including sums paid as, attorney's fees, pre - or post judgment interest, and other sums recovered on your behalf.

The term gross recovery excludes any bond any of the Defendant oil companies may post on behalf of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership LTD, McAllen Trust Partnership and John R. Willis Management Partnership, Ltd., in the event of an adverse verdict.

It is clearly understood that these attorney's fees may be divided among the attorneys herein and such other attorneys this firm deems necessary to hire in its efforts to represent your interests zealously within the bounds of the law, such division to be made in proportion to the services performed and responsibility assumed by them, or as is agreed between them at no extra cost or attorney's fees to you.

In the event any oil company chooses to structure a settlement with your representatives in the form of higher royalties, overriding royalty interests or mineral interests then you and your representatives have the exclusive right to choose to have said interest appraised by the firm of Hite, McNichol and Lonquist, Inc., and said appraisal shall be presumed to be correct and your representatives shall have the right to exercise a buyout of the attorney's interest at any time he or she chooses.

The payment of attorney's fees is contingent on a successful recovery on your behalf and if no successful recovery is accomplished then you shall owe my firm no fees.

**8. COSTS AND EXPENSES:** You will be charged for all costs and expenses of this representation. To the maximum extent possible, we shall budget with your Representatives and obtain approval for major expenses in advance, which approval shall be given by the Representatives. These costs and expenses include, but are not limited to, the following:

1) Court costs;

2) Citation and/or subpoena fees;

3) Deposition fees, costs and expenses;

JCAPC_00022767

JUN L. ANDERSON          Fax:2106263340          Jan 25 2005 15:10          P.07          p. 7

Page 5

4) Investigation fees, costs and expenses;

5) Expert witness fees, costs and expenses;

6) Exhibit preparation fees, costs and/or expenses, including, but not limited to photographs, videotapes, films, charts, diagrams, computer simulation, summaries, overhead blow ups, etc.;

7) Mail and delivery charges including, but not limited to postage, overnight special couriers, facsimile transmission charges, telephone charges, special delivery fees;

8) Long distance telephone charges, and conference calls expenses;

9) Travel expenses of attorneys, associates, paralegals or legal assistants, including, but not limited to reasonable costs of transportation, lodging, meals, and other reasonable and necessary charges incurred as a result of the required travel; and,

10) Mileage or transportation fees out of the city will be computed at the actual cost incurred by the firm or at the rate of thirty five cents per mile if the cost cannot otherwise be determined by the actual cost incurred.

If you fail to timely or promptly pay such expenses and the firms advance such sums, than you agree to reimburse the firms for all sums so paid.

**9.     NOTICE TO CLIENTS:**  The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with the lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information you are entitled to call 1/800/932-1900, the State Bar of Texas Office of General Counsel as a toll free telephone call for the purpose of securing additional information.

**10.     ARBITRATION:**  Any fee dispute arising under this agreement and/or the services rendered for you by the firms will be submitted to arbitration. The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable. The arbitrator will be selected as follows:

(1) Arbitration will be determined by a retired district judge who has previously served on any of the Hidalgo County District Courts and is presently retired or in senior status. The selection of such judge to be the arbitrator will be determined by the Senior Presiding Judge of Hidalgo County, Texas.

Page 6

11.    **LAW APPLICABLE AND VENUE:** This Agreement and its performance is governed by Texas Law and it is agreed by the parties that venue shall be in Hidalgo County, State of Texas.

12.    You agree to make your Representatives available at all reasonable times and places to assist our attorneys in their efforts and to appear at all depositions and hearings required in the reasonable prosecution and defense of any cause of action in your behalf.

13.    You agree that the attorneys may withdraw upon your failure to perform your duties or obligations contained in this agreement.

14.    If the foregoing terms and conditions accurately summarize and confirm your understanding of this engagement, please indicate your approval and acceptance by dating and signing this agreement.

SIGNED and AGREED, in multiple counterparts, by the firm and representatives of El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., McAllen Trust Partnership and John R. Willis Management Partnership, Ltd.

JAMES A. McALLEN
On Behalf of El Rucio Land and
Cattle Company, Inc., San Juanito
Land Partnership, Ltd., and McAllen
Trust Partnerships

FRANCES McALLEN
On Behalf of John R. Willis Management,
Partnership, Ltd.

Jon Christian Amberson
JON CHRISTIAN AMBERSON, P.C.
2135 East Hildebrand Avenue
San Antonio, Texas 78209
210/826-3339 - Telephone
210/826-3340 – Facsimile

JCAPC_00022769

Electronically Filed
5/27/2020 5:56 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| **JON CHRISTIAN AMBERSON P.C.** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **92ND JUDICIAL DISTRICT** |
| **JAMES ARGYLE MCALLEN,** | § | |
| **EL RUCIO LAND AND CATTLE** | § | |
| **COMPANY, INC., SAN JUANITO LAND** | § | |
| **PARTNERSHIP, LTD., and** | § | |
| **MCALLEN TRUST PARTNERSHIP,** | § | |
| **LTD.** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JON CHRISTIAN AMBERSON AND** | § | |
| **AMBERSON NATURAL RESOURCES** | § | |
| **LLC** | § | |
| | § | |
| **Third-Party Defendants.** | § | **HIDALGO COUNTY, TEXAS** |

## NOTICE OF APPEARANCE

TO THE HONORABLE COURT:

Mr. Jason Davis and Ms. Caroline Newman Small of DAVIS & SANTOS, P.C. enter their appearance as counsel for Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (collectively, the "**Amberson Parties**"). Counsel requests that the Clerk of Court and the parties update their records with their identifying and contact information as follows:

Jason Davis
State Bar No. 00793592
E-mail: jdavis@dslawpc.com
Caroline Newman Small
State Bar No. 24056037
E-mail: csmall@dslawpc.com

Electronically Filed
5/27/2020 5:56 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

**DAVIS & SANTOS, P.C.**
719 S. Flores Street
San Antonio, Texas 78204
Telephone: (210) 853-5882
Facsimile: (210) 200-8395

***Attorneys for Jon Christian Amberson, P.C.,
Jon Christian Amberson, and
Amberson Natural Resources LLC***

Dated: May 27, 2020.

Respectfully submitted,

**DAVIS & SANTOS, P.C.**

By:     /s/ Jason Davis
        Jason Davis
        State Bar No. 00793592
        E-mail: jdavis@dslawpc.com
        Caroline Newman Small
        State Bar No. 24056037
        Email: csmall@dslawpc.com
        719 South Flores
        San Antonio, Texas 78204
        Tel: (210) 853-5882
        Fax: (210) 200-8395

***Attorneys for Jon Christian Amberson,
P.C., Jon Christian Amberson, and
Amberson Natural Resources LLC***

2

Electronically Filed
5/27/2020 5:56 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the parties listed below in accordance with the Texas Rules of Civil Procedure via the method indicated below on May 27, 2020.

| | | |
|---|---|---|
| David M. Prichard | _____ | U.S. Mail |
| PRICHARD YOUNG, LLP | _____ | CMRRR |
| Union Square, Suite 600 | _____ | Facsimile |
| 10101 Reunion Place | X | E-mail |
| San Antonio, Texas 78216 | X | E-file |
| E-mail: dprichard@prichardyoungllp.com | | |

| | | |
|---|---|---|
| J. A. "Tony" Canales | _____ | U.S. Mail |
| CANALES & SIMONSON, P.C. | _____ | CMRRR |
| 2601 Morgan Avenue | _____ | Facsimile |
| Corpus Christi, Texas 78405 | X | E-mail |
| E-mail: tonycanales@canalessimonson.com | X | E-file |

**Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership**

| | | |
|---|---|---|
| Ricardo G. Cedillo | _____ | U.S. Mail |
| Les J. Strieber III | _____ | CMRRR |
| DAVIS, CEDILLO & MENDOZA, INC. | _____ | Facsimile |
| McCombs Plaza, Suite 500 | X | E-mail |
| 755 E. Mulberry Avenue | X | E-file |
| San Antonio, Texas 78212 | | |
| E-mail: rcedillo@lawdcm.com | | |
| E-mail: lstrieber@lawdcm.com | | |

| | | |
|---|---|---|
| Steven A. Fleckman | _____ | U.S. Mail |
| Zach Wolfe | _____ | CMRRR |
| Andrew McKeon | _____ | Facsimile |
| FLECKMAN & MCGLYNN, PLLC | X | E-mail |
| 6836 Austin Center Blvd., Suite 270 | X | E-file |
| Austin, Texas 78731 | | |
| E-mail: fleckman@fleckman.com | | |
| E-mail: zwolfe@fleckman.com | | |
| E-mail: amckeon@fleckman.com | | |

| | | |
|---|---|---|
| Francisco J. Rodriguez | _____ | U.S. Mail |
| LAW OFFICE OF FRANCISCO J. RODRIGUEZ | _____ | CMRRR |
| 111 West Nolana Ave., Suite A | _____ | Facsimile |
| McAllen, Texas 78504 | X | E-mail |
| E-mail: frankr@mcallenlawfirm.com | X | E-file |

Electronically Filed
5/27/2020 5:56 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

| | | |
|---|---|---|
| Charles C. Murray | _____ | U.S. Mail |
| ATLAS, HALL & RODRIGUEZ, LLP | _____ | CMRRR |
| 818 Pecan Street | _____ | Facsimile |
| McAllen, Texas 78502 | X | E-mail |
| E-mail: ccmurray@atlashall.com | X | E-file |

| | | |
|---|---|---|
| Jon Christian Amberson | _____ | U.S. Mail |
| Larissa Janee Hood | _____ | CMRRR |
| JON CHRISTIAN AMBERSON, P.C. | _____ | Facsimile |
| 2135 E. Hildebrand Ave. | X | E-mail |
| San Antonio, Texas 78209 | X | E-file |
| E-mail: chris@ambersonpc.com | | |
| E-mail: larissa@ambersonpc.com | | |

***Attorneys for Jon Christian Amberson, P.C.,***
***Jon Christian Amberson, and***
***Amberson Natural Resources LLC***

*/s/ Jason Davis* _____
Jason Davis

4

Electronically Filed
5/27/2020 6:07 PM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval

## CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | **92ND JUDICIAL DISTRICT** |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO LAND | § | |
| PARTNERSHIP, LTD., and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD. | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| **Third-Party Defendants.** | § | **HIDALGO COUNTY, TEXAS** |

## NOTICE OF HEARING

Please take notice that a hearing on the Amberson Parties' (1) Response to the McAllen

Parties' Motion to Confirm Arbitration Award, and (2) Motion to Vacate or Modify Arbitration

Award has been set for June 25, 2020 at 9:00 a.m. before the Honorable Luis M. Singleterry.

Signed this _____ day of _____, 2020

_____
HONORABLE LUIS M. SINGLETERRY

cc:   Jason Davis; jdavis@dslawpc.com
      Caroline Newman Small; csmall@dslawpc.com
      David M. Prichard; dprichard@prichardyoungllp.com
      J.A. Tony Canales; tonycanales@canalessimonson.com
      Richard G. Cedillo; rcedillo@lawdcm.com
      Les. J. Strieber; lstrieber@lawdcm.com
      Steven A. Fleckman; fleckman@fleckman.com
      Zach Wolfe; zwolfe@fleckman.com

Electronically Filed
5/27/2020 6:07 PM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval

Andrew J. McKeon:  amckeon@fleckman.com
Francisco J. Rodriguez:  frankr@mcallenlawfirm.com
Charles C. Murray:  ccmurray@atlashall.com
Jon Christian Amberson:  chris@ambersonpc.com
Larissa Janee Hood:  larissa@ambersonpc.com

Electronically Filed
5/28/2020 11:15 AM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Order
# Setting
# Hearing

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios    Ricardo Contreras    Adriana "Audry" Garcia    Sabrina S. Guerra    Oneida Lamas    Stephanie Palacios    Aida Villarreal
CHIEF DEPUTY    CHIEF OF ADMINISTRATION    ASSISTANT CHIEF DEPUTY    SENIOR ACCOUNTANT    DEPUTY DISTRICT CLERK SUPERVISOR    BUDGET AND PROCUREMENT    CHIEF OF APPEALS
              AND PUBLIC INFORMATION                                                                                    OFFICER

Electronically Filed
5/27/2020 6:07 PM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval

## CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | 92ND JUDICIAL DISTRICT |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO LAND | § | |
| PARTNERSHIP, LTD., and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD. | § | |
| | § | |
| Defendants, | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## NOTICE OF HEARING

Please take notice that a hearing on the Amberson Parties' (1) Response to the McAllen Parties' Motion to Confirm Arbitration Award, and (2) Motion to Vacate or Modify Arbitration Award has been set for June 25, 2020 at 9:00 a.m. before the Honorable Luis M. Singleterry.

Signed this 28th day of _____May_____, 2020

HONORABLE LUIS M. SINGLETERRY

cc:   Jason Davis; jdavis@dslawpc.com
      Caroline Newman Small: csmall@dslawpc.com
      David M. Prichard: dprichard@prichardyoungllp.com
      J.A. Tony Canales: tonycanales@canalessimonson.com
      Richard G. Cedillo: rcedillo@lawdcm.com
      Les. J. Strieber: lstrieber@lawdcm.com
      Steven A. Fleckman: fleckman@fleckman.com
      Zach Wolfe: zwolfe@fleckman.com

Electronically Filed
5/27/2020 6:07 PM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval

Andrew J. McKeon:  amckeon@fleckman.com
Francisco J. Rodriguez:  frankr@mcallenlawfirm.com
Charles C. Murray:  ccmurray@atlashall.com
Jon Christian Amberson:  chris@ambersonpc.com
Larissa Janee Hood:  larissa@ambersonpc.com

Electronically Filed
5/29/2020 3:14 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## FLECKMAN & McGLYNN, PLLC'S MOTION TO WITHDRAW

Pursuant to Rule 10 of the Texas Rules of Civil Procedure, Fleckman & McGlynn, PLLC ("**F&M**") files this Motion to Withdraw as Counsel for Plaintiff Jon Christian Amberson P.C. ("**Plaintiff**") and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (collectively, "**Amberson**" or the "**Amberson Parties**"), and respectfully states as follows:

1.     F&M has concluded that it should withdraw from further representation in this action based on grounds that warrant such withdrawal in accordance with the State Bar Rules. Amberson has largely been incommunicative. *See, e.g.*, *Matter of Marriage of Glynn*, 07-13-00095-CV, 2014 WL 7448675, at *2 (Tex. App.—Amarillo Dec. 31, 2014, no pet.) (trial court did not abuse its discretion in allowing withdrawal for good cause where attorney asserted that she

Electronically Filed
5/29/2020 3:14 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

was unable to communicate effectively with her client); *see also* TX ST RPC Rule 1.15, cmt. 3 ("The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.").

2.      Amberson, without first communicating with F&M, recently engaged other counsel (Mr. Jason Davis and Ms. Caroline Newman Small) ("***New Counsel***") to represent the Amberson Parties in further proceedings in this action.  Amberson's New Counsel filed an appearance on behalf of the Amberson Parties in this action, and recently filed a response challenging the underlying arbitration award.

3.      Amberson's New Counsel has now confirmed that it does not oppose F&M's request to withdraw.

4.      A copy of this Motion will be sent to (i) Amberson's New Counsel; (ii) Defendants' counsel, (iii) Amberson's co-counsel, Davis, Cedillo & Mendoza, and (iii) the arbitrator.

5.      Therefore, F&M (and its attorneys) respectfully request that the Court enter an order permitting their withdrawal as counsel for the Amberson Parties, without the need for an in-person hearing.

Electronically Filed
5/29/2020 3:14 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Respectfully submitted,

Steven A. Fleckman
State Bar No. 07118300
Email: fleckman@fleckman.com
Andrew J. McKeon
State Bar No. 24092810
Email: amckeon@fleckman.com

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas  78701-3503
Telephone: (512) 476-7900
Facsimile: (512) 476-7644

By:      */s/ Steven A. Fleckman*
          Steven A. Fleckman

Electronically Filed
5/29/2020 3:14 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on May 29, 2019.

David M. Prichard
David R. Montpas
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Ricardo G. Cedillo
Les J. Strieber III
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas  78212

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, Texas 78204

Tom Collins
tomcollinsadr@gmail.com

Jon Christian Amberson
chris@ambersonpc.com

Larissa Hood
larissa@ambersonpc.com

_/s/ Steven A. Fleckman_
Steven A. Fleckman

Electronically Filed
5/29/2020 11:39 AM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios       Ricardo Contreras       Adriana "Audry" Garcia       Sabrina S. Guerra       Oneida Lamas       Stephanie Palacios       Aida Villarreal
CHIEF DEPUTY         CHIEF OF ADMINISTRATION   ASSISTANT CHIEF DEPUTY       SENIOR ACCOUNTANT       DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                     AND PUBLIC INFORMATION                                                                                    OFFICER

Electronically Filed
5/27/2020 6:07 PM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval

CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| **JON CHRISTIAN AMBERSON P.C.** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **92ND JUDICIAL DISTRICT** |
| **JAMES ARGYLE MCALLEN,** | § | |
| **EL RUCIO LAND AND CATTLE** | § | |
| **COMPANY, INC., SAN JUANITO LAND** | § | |
| **PARTNERSHIP, LTD., and** | § | |
| **MCALLEN TRUST PARTNERSHIP,** | § | |
| **LTD.** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JON CHRISTIAN AMBERSON AND** | § | |
| **AMBERSON NATURAL RESOURCES** | § | |
| **LLC** | § | |
| | § | |
| **Third-Party Defendants.** | § | **HIDALGO COUNTY, TEXAS** |

## NOTICE OF HEARING

Please take notice that a hearing on the Amberson Parties' (1) Response to the McAllen

Parties' Motion to Confirm Arbitration Award, and (2) Motion to Vacate or Modify Arbitration

Award has been set for June 25, 2020 at 9:00 a.m. before the Honorable Luis M. Singleterry.

Signed this 28th day of _____ May _____, 2020

_____
HONORABLE LUIS M. SINGLETERRY

cc:   Jason Davis; jdavis@dslawpc.com
      Caroline Newman Small: csmall@dslawpc.com
      David M. Prichard: dprichard@prichardyoungllp.com
      J.A. Tony Canales: tonycanales@canalessimonson.com
      Richard G. Cedillo: rcedillo@lawdcm.com
      Les. J. Strieber: lstrieber@lawdcm.com
      Steven A. Fleckman: fleckman@fleckman.com
      Zach Wolfe: zwolfe@fleckman.com

Electronically Filed
5/27/2020 6:07 PM
Hidalgo County District Clerks
Reviewed By: Edgar Sandoval

Andrew J. McKeon:  amckeon@fleckman.com
Francisco J. Rodriguez:  frankr@mcallenlawfirm.com
Charles C. Murray:  ccmurray@atlashall.com
Jon Christian Amberson:  chris@ambersonpc.com
Larissa Janee Hood:  larissa@ambersonpc.com

Electronically Filed
5/29/2020 4:01 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed
# Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios    Ricardo Contreras    Adriana "Audry" Garcia    Sabrina S. Guerra    Oneida Lamas    Stephanie Palacios    Aida Villarreal
CHIEF DEPUTY      CHIEF OF ADMINISTRATION   ASSISTANT CHIEF DEPUTY      SENIOR ACCOUNTANT    DEPUTY DISTRICT CLERK SUPERVISOR  BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                  AND PUBLIC INFORMATION                                                                                OFFICER

Electronically Filed
5/29/2020 3:23 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| v. | § | |
| JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD., AND MCALLEN TRUST PARTNERSHIP, | § | 92nd JUDICIAL DISTRICT |
| Defendants/Counterclaimants/ Third-Party Plaintiffs | § | |
| v. | § | |
| JON CHRISTIAN AMBERSON and AMBERSON NATURAL RESOURCES LLC, | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

**ORDER GRANTING
FLECKMAN & McGLYNN, PLLC'S MOTION TO WITHDRAW**

On this date the Court considered Fleckman & McGlynn, PLLC's Motion to Withdraw as counsel for Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (the "*Amberson Parties*"). The Court finds that the Amberson Parties are now represented in this cause by new counsel, and the motion should therefore be GRANTED. It is therefore

Electronically Filed
5/29/2020 3:23 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

ORDERED that Fleckman & McGlynn, PLLC and its attorneys are permitted to withdraw

(and by this Order have withdrawn) as counsel of record for Plaintiff and Third-Party Defendants.

Signed this ___29th___ day of _____May_____, 2020.

_____
JUDGE PRESIDING

Electronically Filed
5/29/2020 3:23 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C., | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | 92nd JUDICIAL DISTRICT |
| LAND PARTNERSHIP, LTD., AND | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING
## FLECKMAN & McGLYNN, PLLC'S MOTION TO WITHDRAW

On this date the Court considered Fleckman & McGlynn, PLLC's Motion to Withdraw as counsel for Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (the "*Amberson Parties*"). The Court finds that the Amberson Parties are now represented in this cause by new counsel, and the motion should therefore be GRANTED. It is therefore

Electronically Filed
5/29/2020 3:23 PM
Hidalgo County District Clerks
Reviewed By: Delia Loredo

ORDERED that Fleckman & McGlynn, PLLC and its attorneys are permitted to withdraw

(and by this Order have withdrawn) as counsel of record for Plaintiff and Third-Party Defendants.

Signed this ____ day of _____, 2020.


_____

JUDGE PRESIDING

**CANALES & SIMONSON, P.C.**

ATTORNEYS AT LAW

2601 MORGAN AVENUE

P.O. BOX 5624

CORPUS CHRISTI, TEXAS 78465-5624

361.883.0601 TEL.

361.884.7023 FAX

J.A. "TONY" CANALES
PATRICIA CANALES BELL
HECTOR A. CANALES

FILED
AT 2:13 O'CLOCK P M

JUN 10 2020

LAURA HINOJOSA, CLERK
District Courts, Hidalgo County
By _____ #3
tonycanales@canalessimonson.com
pmcanales@canalessimonson.com
hacanales@canalessimonson.com

May 20, 2020

*Via Facsimile: (956)318-2698*
Mr. Pedro "Pete" Lobato
Court Manager
c/o The Honorable Luis M. Singleterry
92nd Civil District Court
Hidalgo County Courthouse
100 N. Closner
Edinburg, Texas 78539

> **Re:** *Cause No. C-0340-15-A; Jon Christian Amberson, P.C. vs. James Argyle McAllen, et al vs. Joh Christian Amberson and Amberson Natural Resources, LLC, pending before the 92nd Judicial District Court, Hidalgo County, Texas.*

Dear Mr. Lobato:

Please set for a hearing *The McAllen Parties' Motion to Confirm Arbitration Award* (copy attached hereto) which was filed with the Court on May 14, 2020. A Fiat is included at the end of the Motion for the Court's convenience. This matter should take only about 10 minutes. The hearing is for the purpose to enter the Judgment.

Please give me a call or email me and let me know when hearing will be set for.

Sincerely,

J. A. Canales

JAC/rc

Attachment

FILED

AT _2:15_ O'CLOCK _P_ M

JUN 10 2020

LAURA HINOJOSA, CLERK
District Court, Hidalgo County

By_____ Deputy#8

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## THE MCALLEN PARTIES'
## MOTION TO CONFIRM ARBITRATION AWARD

NOW COME Defendants James Argyle McAllen, El Rucio Land and Cattle Company,

Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership (collectively, the

"McAllen Parties") and file this Motion to Confirm Arbitration Award pursuant to Section 171.087

of the Texas Civil Practice and Remedies Code. The McAllen Parties ask the Court to confirm the

April 30, 2020 arbitration award (the "Award") issued by Arbitrator Tom Collins and to enter a

Final Judgment on that Award. A proposed form of Final Judgment is attached as Exhibit 1. The

McAllen Parties show as follows:

## I.
## BACKGROUND

Plaintiff is Jon Christian Amberson P.C. Defendants are James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership. Third-Parties are Jon Christian Amberson and Amberson Natural Resources LLC.[1]

Jon Christian Amberson P.C. filed this action on January 23, 2015.

The parties asserted various claims, counterclaims, and claims against third-parties.

Jon Christian Amberson P.C. moved that some claims be referred to arbitration, and the McAllen Parties requested that all claims be referred to arbitration.

On April 23, 2018, the Court referred all the parties' claims to arbitration.

All the parties agreed to have Tom Collins of Austin, Texas serve as the arbitrator (the "Arbitrator").

The Arbitrator conducted the arbitration hearing in San Antonio, Texas. The hearing concluded on July 26, 2019. The parties submitted exhibits and witness testimony.

The parties provided two rounds of post-hearing briefing. The parties submitted their first round of briefing on December 19, 2019, and they submitted their final round of briefing January 24, 2020.

The Arbitrator issued his award on April 30, 2020 (the "Award"). The Arbitrator ruled against Jon Christian Amberson, P.C. on all of its claims. The Award awarded James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. relief in the form of damages, declaratory relief, and attorneys' fees against Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural

---

[1] Jon Christian Amberson, P.C., Jon Christian Amberson, and Amberson Natural Resources LLC are collectively referred to as the "Amberson Parties" in this motion.

159760

Resources LLC. The Arbitrator ruled that Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC engaged in a conspiracy. The Arbitrator ruled that Jon Christian Amberson, P.C., and Amberson Natural Resources LLC are the alter egos of Jon Christian Amberson.

The Arbitrator awarded the McAllen Parties the following relief:

1. JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP, LTD., collectively, the amount of $3,725,700.00 based on their claims asserted in Part II of the Award.

2. JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN the amount of $3,569,210.13 based on his claims asserted in Parts III and IV of the Award.

3. The Arbitrator DECLARES in connection with the Part V of the Award, the Cannon Grove transaction, that:

   a. The $4,500,000.00 that JAMES ARGYLE MCALLEN paid to AMBERSON NATURAL RESOURCES, LLC by wire dated March 18, 2009, was a loan;

   b. The loan is secured by AMBERSON NATURAL RESOURCES, LLC's 90% interest in Cannon Grove; and

   c. The loan will be deemed repaid and forgiven upon AMBERSON NATURAL RESOURCES, LLC returning its 90% interest to JAMES ARGYLE MCALLEN.

4. The Arbitrator ORDERS in connection with Part V of the Award, the Cannon Grove transaction, that JON CHRISTIAN AMBERSON, as the sole owner and decision maker of AMBERSON NATURAL RESOURCES, LLC, shall within thirty (30) days of the date of this Award have AMBERSON NATURAL RESOURCES, LLC return to JAMES ARGYLE MCALLEN all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest). However, if within thirty (30) days following the date of

this Award Amberson and ANR contest in state court arbitral jurisdiction over McAllen's Cannon Grove claims, then the directive to transfer the interest within thirty (30) days is stayed pending further order of the court.

5.      Pursuant to and incorporating the parties' Stipulation Regarding Attorneys' Fees, JON CHRISTIAN AMBERSON shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP. LTD., and MCALLEN TRUST PARTNERSHIP, LTD., collectively, as the "prevailing party" in this Award, $2,000.000.00 as reasonable and necessary attorneys' fees. JON CHRISTIAN AMBERSON, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. AMBERSON NATURAL RESOURCES, LLC, is jointly and severally liable for $350,000.00 of the total. The Arbitrator further incorporates the terms of the Stipulation Regarding Attorneys' Fees as to future proceedings that (a) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for proceedings in the District Court to confirm or vacate an award; (b) $75,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for an appeal to the Court of Appeals; (c) $30,000.00 is a reasonable and necessary attorneys' fees, that the prevailing party shall be paid by Amberson, for preparing or responding to a Petition for Review to the Supreme Court of Texas; and (d) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for preparing full briefing on the merits to the Supreme Court of Texas.

6.      JON CHRISTIAN AMBERSON shall pay $51,232.11 to JAMES ARGYLE MCALLEN, such amount being the 50% in Arbitrator fees and expenses paid by MCALLEN to the Arbitrator.

7.      All the above sums ordered paid are payable on or before thirty (30) days from the date of this Award.

8.      Interest on any unpaid amounts shall commence thirty (30) days from the date of this Award until paid at the rate of five percent (5%) per annum, simple interest.

9.      This Award is in full settlement of all claims, counterclaims, third-party claims, and any other claims submitted in this arbitration. All claims for relief not expressly granted herein, including all claims set forth by the parties in their pleadings, in their pre- and post-hearing briefing, or orally at the hearing, are hereby DENIED.[2]

---

[2] The Arbitrator determined that James Argyle McAllen's claims against Jon Christian Amberson and Jon Christian Amberson, P.C., concerning $2,250,000 of certificates of deposit pledged as collateral for Jon Christian Amberson, P.C.'s loan with Jefferson Bank, are not yet ripe for determination because the loan had not yet been defaulted. The

*See* Award at 51-53.

## II.
## MOTION TO CONFIRM

Jon Christian Amberson, P.C. sought to compel this dispute based on arbitration provisions that appear in the written fee agreements between the firm and the McAllen Parties. Those arbitration provisions are identical and state: "The decision of any such arbitration or arbitration panel shall be binding, conclusive and non-appealable."

Section 171.087 of the Texas Arbitration Act, "Confirmation of Award" states that "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award." Put differently, confirmation of the award is the "default result" unless a challenge has been or is being considered. *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 18 (Tex. App.—Corpus Christi 2010, no pet.); *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 262 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A party "attempting to vacate an arbitration award labors under a heavy burden" because judicial review is "extraordinarily narrow." *Stieren v. McBroom*, 103 S.W.3d 602, 606 (Tex. App.—San Antonio 2003, pet. denied); *IQ Holdings, Inc. v. Villa D'Este Condo. Owner's Ass'n, Inc.*, 509 S.W.3d 367, 373 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 635 (Tex. App.—Waco 2003, no pet.) (stating "[j]udicial review of arbitration awards is very deferential"); *Prudential Secs., Inc. v. Shoemaker*, 981 S.W.2d 791, 793 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (same).

As of the filing of this motion, the Amberson Parties have not filed a motion to vacate the Award. Moreover, even if a motion to vacate was pending, the Amberson Parties could not carry

---

Arbitrator advised the Court that he is willing to decide these claims if and when Jefferson Bank forecloses on the loan and exercises dominion over the certificates.

159760

the "heavy burden" to establish grounds for vacating the award. Accordingly, the Court should confirm the Award and enter a Final Judgment in favor of the McAllen Parties based on the Award.

### III.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership respectfully request the Court grant this Motion to Confirm Arbitration Award and issue a Final Judgment adopting and confirming the Award. Defendants further request any additional relief to which they are entitled.

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail:  dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE
MCALLEN, EL RUCIO LAND AND
CATTLE COMPANY, INC., SAN
JUANITO LAND PARTNERSHIP, LTD.
and MCALLEN TRUST PARTNERSHIP**

6

159760

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of McAllen Parties' Motion to Confirm Arbitration Award was served on May 14th, 2020 to the following:

Ricardo G. Cedillo
Les J. Strieber III
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, TX 78212

Steven A. Fleckman
Zach Wolfe
Andrew McKeon
FLECKMAN & MCGLYNN, PLLC
Northpoint Centre I
6836 Austin Center Blvd., Suite 270
Austin, Texas 78731

*/s/ David M. Prichard*
David M. Prichard

## FIAT

Please take notice that a hearing on James Argyle McAllen's, El Rucio Land and Cattle Company, Inc.'s, San Juanito Land Partnership, Ltd.'s and McAllen Trust Partnership's Motion to Confirm Arbitration Award has been set for a hearing on _____, 2020 at _____ a.m./p.m. before the Honorable Luis M. Singleterry.

Signed this _____ day of _____, 2020.

_____
HONORABLE LUIS M. SINGLETERRY

7

159760

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | 92nd JUDICIAL DISTRICT |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## DAVIS, CEDILLO & MENDOZA, INC.'S MOTION TO WITHDRAW

Pursuant to Rule 10 of the Texas Rules of Civil Procedure, Davis, Cedillo & Mendoza, Inc. ("DCM") files this Motion to Withdraw as Counsel for Plaintiff Jon Christian Amberson P.C. ("Plaintiff") and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (collectively, "Amberson" or the "Amberson Parties"), and respectfully states as follows:

1.   DCM has concluded that it should withdraw from further representation in this action based on grounds that warrant such withdrawal in accordance with the State Bar Rules. TX ST RPC Rule 1.15, cmt. 3 ("The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.").

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

2.     Amberson recently engaged other counsel (Mr. Jason Davis and Ms. Caroline Newman Small of the law firm DAVIS & SANTOS, P.C. ("New Counsel") to represent the Amberson Parties in further proceedings in this action. New Counsel's address is 719 S. Flores Street, San Antonio, Texas 78204.

3.     Amberson's New Counsel filed an appearance on behalf of the Amberson Parties in this action, and recently filed a response challenging the underlying arbitration award.

4.     Amberson has confirmed that he consents to the filing of this motion.

5.     Amberson's New Counsel has confirmed that it does not oppose DCM's request to withdraw.

6.     A copy of this Motion will be sent to (i) Mr. Amberson, (ii) Amberson's New Counsel; (iii) Defendants' counsel, (iv) Amberson's co-counsel, Fleckman & McGlynn, PLLC, and (v) the arbitrator.

7.     Therefore, DCM (and its attorneys) respectfully request that the Court enter an order permitting their withdrawal as counsel for the Amberson Parties, without the need for an in-person hearing.

Respectfully submitted,

dc&m | Davis, Cedillo & Mendoza, INC.
ATTORNEYS AT LAW

McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone No.: (210) 822-6666
Telecopier No.: (210) 822-1151

By: _____
RICARDO G. CEDILLO
State Bar No. 04043600
rcedillo@lawdcm.com
LES J. STRIEBER III
Texas Bar No. 19398000
lstrieber@lawdcm.com

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on June 24, 2020.

David M. Prichard
David R. Montpas
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
dprichard@prichardyoungllp.com
dmontpas@prichardyoungllp.com

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
tonycanales@canalessimonson.com

Steven A. Fleckman
Andrew J. McKeon
FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701-3503
fleckman@fleckman.com
amckeon@fleckman.com

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, Texas 78204
jdavis@dslawpc.com
csmall@dslawpc.com

Tom Collins
tomcollinsadr@gmail.com

Jon Christian Amberson
chris@ambersonpc.com

Larissa Hood
larissa@ambersonpc.com

RICARDO G. CEDILLO

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | 92nd JUDICIAL DISTRICT |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## <u>ORDER GRANTING DAVIS, CEDILLO & MENDOZA, INC.'S<br>MOTION TO WITHDRAW</u>

On this date the Court considered Davis, Cedillo & Mendoza, Inc.'s Motion to Withdraw as counsel for Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (the "Amberson Parties"). The Court finds that the Amberson Parties are now represented in this cause by new counsel, and the motion should therefore be GRANTED. It is therefore

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

ORDERED that Davis, Cedillo & Mendoza, Inc.'s and its attorneys are permitted to withdraw (and by this Order have withdrawn) as counsel of record for Plaintiff and Third-Party Defendants.

SIGNED and ENTERED this ____ day of _____, 2020.

_____

HON. LUIS M. SINGLETERRY
JUDGE PRESIDING

**SUBMITTED BY:**

dc&m | Davis, Cedillo & Mendoza, INC.
ATTORNEYS AT LAW
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas  78212
Telephone No.:  (210) 822-6666
Telecopier No.:  (210) 822-1151

By: _____
RICARDO G. CEDILLO
State Bar No. 04043600
rcedillo@lawdcm.com
LES J. STRIEBER, III
Texas Bar No. 19398000
lstrieber@lawdcm.com

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on June 24, 2020.

David M. Prichard
David R. Montpas
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
dprichard@prichardyoungllp.com
dmontpas@prichardyoungllp.com

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
tonycanales@canalessimonson.com

Steven A. Fleckman
Andrew J. McKeon
FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701-3503
fleckman@fleckman.com
amckeon@fleckman.com

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, Texas 78204
jdavis@dslawpc.com
csmall@dslawpc.com

Tom Collins
tomcollinsadr@gmail.com

Jon Christian Amberson
chris@ambersonpc.com

Larissa Hood
larissa@ambersonpc.com

RICARDO G. CEDILLO

Electronically Filed
6/25/2020 9:58 AM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Proposed Order

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

| Nilda Palacios | Ricardo Contreras | Adriana "Audry" Garcia | Sabrina S. Guerra | Oneida Lamas | Stephanie Palacios | Aida Villarreal |
|---|---|---|---|---|---|---|
| CHIEF DEPUTY | CHIEF OF ADMINISTRATION AND PUBLIC INFORMATION | ASSISTANT CHIEF DEPUTY | SENIOR ACCOUNTANT | DEPUTY DISTRICT CLERK SUPERVISOR | BUDGET AND PROCUREMENT OFFICER | CHIEF OF APPEALS |

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | 92nd JUDICIAL DISTRICT |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING DAVIS, CEDILLO & MENDOZA, INC.'S MOTION TO WITHDRAW

On this date the Court considered Davis, Cedillo & Mendoza, Inc.'s Motion to Withdraw as counsel for Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (the "Amberson Parties"). The Court finds that the Amberson Parties are now represented in this cause by new counsel, and the motion should therefore be GRANTED. It is therefore

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

ORDERED that Davis, Cedillo & Mendoza, Inc.'s and its attorneys are permitted to withdraw (and by this Order have withdrawn) as counsel of record for Plaintiff and Third-Party Defendants.

SIGNED and ENTERED this 25th day of _____ June _____, 2020.

HON. LUIS M. SINGLETERRY
JUDGE PRESIDING

**SUBMITTED BY:**

dc&m | Davis, Cedillo & Mendoza, INC.
ATTORNEYS AT LAW

McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas  78212
Telephone No.:  (210) 822-6666
Telecopier No.:  (210) 822-1151

By: _____
RICARDO G. CEDILLO
State Bar No. 04043600
rcedillo@lawdcm.com
LES J. STRIEBER, III
Texas Bar No. 19398000
lstrieber@lawdcm.com

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on June 24, 2020.

David M. Prichard
David R. Montpas
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
dprichard@prichardyoungllp.com
dmontpas@prichardyoungllp.com

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
tonycanales@canalessimonson.com

Steven A. Fleckman
Andrew J. McKeon
FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701-3503
fleckman@fleckman.com
amckeon@fleckman.com

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, Texas 78204
jdavis@dslawpc.com
csmall@dslawpc.com

Tom Collins
tomcollinsadr@gmail.com

Jon Christian Amberson
chris@ambersonpc.com

Larissa Hood
larissa@ambersonpc.com

RICARDO G. CEDILLO

Electronically Filed
6/26/2020 3:25 PM
Hidalgo County District Clerks
Reviewed By: Nilda Palacios



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*

Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios     Ricardo Contreras     Adriana "Audry" Garcia     Sabrina S. Guerra     Oneida Lamas     Stephanie Palacios     Aida Villarreal
CHIEF DEPUTY     CHIEF OF ADMINISTRATION     ASSISTANT CHIEF DEPUTY     SENIOR ACCOUNTANT     DEPUTY DISTRICT CLERK SUPERVISOR     BUDGET AND PROCUREMENT     CHIEF OF APPEALS
                 AND PUBLIC INFORMATION                                                                                          OFFICER

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

Cause No. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| | § | 92nd JUDICIAL DISTRICT |
| Defendants/Counterclaimants/ | § | |
| Third-Party Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON and | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC, | § | |
| | § | |
| Third-Party Defendants. | § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING DAVIS, CEDILLO & MENDOZA, INC.'S MOTION TO WITHDRAW

On this date the Court considered Davis, Cedillo & Mendoza, Inc.'s Motion to Withdraw as counsel for Plaintiff Jon Christian Amberson, P.C. and Third-Party Defendants Jon Christian Amberson and Amberson Natural Resources LLC (the "Amberson Parties"). The Court finds that the Amberson Parties are now represented in this cause by new counsel, and the motion should therefore be GRANTED. It is therefore

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

ORDERED that Davis, Cedillo & Mendoza, Inc.'s and its attorneys are permitted to withdraw (and by this Order have withdrawn) as counsel of record for Plaintiff and Third-Party Defendants.

SIGNED and ENTERED this 25th day of _____ June ____, 2020.

HON. LUIS M. SINGLETERRY
JUDGE PRESIDING

**SUBMITTED BY:**

dc&m | Davis, Cedillo & Mendoza, INC.
ATTORNEYS AT LAW

McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas  78212
Telephone No.:  (210) 822-6666
Telecopier No.:  (210) 822-1151

By: _____
RICARDO G. CEDILLO
State Bar No. 04043600
rcedillo@lawdcm.com
LES J. STRIEBER, III
Texas Bar No. 19398000
lstrieber@lawdcm.com

-2-

Electronically Filed
6/24/2020 9:04 AM
Hidalgo County District Clerks
Reviewed By: Keila Hernandez

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this document was served on each person listed below through the electronic filing system and/or by email on June 24, 2020.

David M. Prichard
David R. Montpas
PRICHARD YOUNG, LLP
10101 Reunion Place
San Antonio, Texas 78216
dprichard@prichardyoungllp.com
dmontpas@prichardyoungllp.com

J.A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
tonycanales@canalessimonson.com

Steven A. Fleckman
Andrew J. McKeon
FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701-3503
fleckman@fleckman.com
amckeon@fleckman.com

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, Texas 78204
jdavis@dslawpc.com
csmall@dslawpc.com

Tom Collins
tomcollinsadr@gmail.com

Jon Christian Amberson
chris@ambersonpc.com

Larissa Hood
larissa@ambersonpc.com

RICARDO G. CEDILLO

Electronically Filed
7/14/2020 10:53 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

# Order
# Setting
# Hearing

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios  Ricardo Contreras  Adriana "Audry" Garcia  Sabrina S. Guerra  Oneida Lamas  Stephanie Palacios  Aida Villarreal
CHIEF DEPUTY   CHIEF OF ADMINISTRATION   ASSISTANT CHIEF DEPUTY   SENIOR ACCOUNTANT   DEPUTY DISTRICT CLERK SUPERVISOR   BUDGET AND PROCUREMENT   CHIEF OF APPEALS
        AND PUBLIC INFORMATION                                                                                    OFFICER

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## AGREED ORDER REFERRING
## JEFFERSON BANK LOAN CLAIMS BACK TO ARBITRATION

WHEREAS Arbitrator Tom Collins (the "Arbitrator") issued his arbitration award in this matter on April 30, 2020 (the "Award").

WHEREAS James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership (collectively, the "McAllen Parties") filed a motion to confirm the Award.

WHEREAS Jon Christian Amberson ("Amberson"), Jon Christian Amberson P.C. (the "Firm"), and Amberson Natural Resources, LLC (collectively "the Amberson Parties") moved to vacate parts of the Award, including issues related to James McAllen's claims concerning the Jefferson Bank loan.

1

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

WHEREAS a hearing on the McAllen Parties' Motion to Confirm the Award and the Amberson Parties' Motion to Vacate the Award is currently set for July 21, 2020 in this Court.

WHEREAS in the Award, the Arbitrator determined that Amberson and the Firm are liable to McAllen on the Jefferson Bank loan claims, but the Arbitrator could not yet award damages on those claims because McAllen still had possession of the collateral used to secure the Firm's loan with Jefferson Bank. Thus, according to the Arbitrator, McAllen's claims concerning the Jefferson Bank loan were not yet ripe.

WHEREAS on June 17, 2020, Jefferson Bank took possession of the collateral used to secure the loan.

WHEREAS all Parties now agree that the Court should refer the Jefferson Bank loan claims back to the Arbitrator solely to determine if a supplemental award of damages should be issued in light of Jefferson Bank taking possession of the collateral used to secure the Jefferson Bank loan.

IT IS THEREFORE ORDERED that this matter is referred back to Arbitrator Tom Collins solely to address the effect of Jefferson Bank's taking possession of the collateral used to secure the Jefferson Bank loan on alleged damages for James McAllen's claims against Amberson and the Firm concerning the Jefferson Bank loan. This Order and the scope of the referral to arbitration is expressly limited to that single issue and does not give the arbitrator jurisdiction to address, determine, reopen, limit, or expand any other issues, including, without limitation, the liability determinations reflected in the April 30, 2020 Award.

IT IS FURTHER ORDERED that nothing in this Order affects, limits, or impairs in any way the rights or obligations the Parties have and any deadline related to confirming or vacating of the Award shall be tolled until the hearing on the competing motions to vacate and confirm the Award, set for July 21, 2020, is completed based on any supplemental award the Arbitrator issues.

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

SIGNED, ENTERED, and ORDERED this _____15th_____ day of _____July_____ 2020.


HONORABLE LUIS M. SINGLETERRY

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**



_____

David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP**

**APPROVED AS TO FORM AND SUBSTANCE:**

Jason Davis /with Permission
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, TX 78204

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.,
JON CHRISTIAN AMBERSON, AND AMBERSON
NATURAL RESOURCES LLC**

4

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## AGREED ORDER REFERRING
## JEFFERSON BANK LOAN CLAIMS BACK TO ARBITRATION

WHEREAS Arbitrator Tom Collins (the "Arbitrator") issued his arbitration award in this

matter on April 30, 2020 (the "Award").

WHEREAS James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito

Land Partnership, Ltd. and McAllen Trust Partnership (collectively, the "McAllen Parties") filed

a motion to confirm the Award.

WHEREAS Jon Christian Amberson ("Amberson"), Jon Christian Amberson P.C. (the

"Firm"), and Amberson Natural Resources, LLC (collectively "the Amberson Parties") moved to

vacate parts of the Award, including issues related to James McAllen's claims concerning the

Jefferson Bank loan.

1

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

WHEREAS a hearing on the McAllen Parties' Motion to Confirm the Award and the Amberson Parties' Motion to Vacate the Award is currently set for July 21, 2020 in this Court.

WHEREAS in the Award, the Arbitrator determined that Amberson and the Firm are liable to McAllen on the Jefferson Bank loan claims, but the Arbitrator could not yet award damages on those claims because McAllen still had possession of the collateral used to secure the Firm's loan with Jefferson Bank. Thus, according to the Arbitrator, McAllen's claims concerning the Jefferson Bank loan were not yet ripe.

WHEREAS on June 17, 2020, Jefferson Bank took possession of the collateral used to secure the loan.

WHEREAS all Parties now agree that the Court should refer the Jefferson Bank loan claims back to the Arbitrator solely to determine if a supplemental award of damages should be issued in light of Jefferson Bank taking possession of the collateral used to secure the Jefferson Bank loan.

IT IS THEREFORE ORDERED that this matter is referred back to Arbitrator Tom Collins solely to address the effect of Jefferson Bank's taking possession of the collateral used to secure the Jefferson Bank loan on alleged damages for James McAllen's claims against Amberson and the Firm concerning the Jefferson Bank loan. This Order and the scope of the referral to arbitration is expressly limited to that single issue and does not give the arbitrator jurisdiction to address, determine, reopen, limit, or expand any other issues, including, without limitation, the liability determinations reflected in the April 30, 2020 Award.

IT IS FURTHER ORDERED that nothing in this Order affects, limits, or impairs in any way the rights or obligations the Parties have and any deadline related to confirming or vacating of the Award shall be tolled until the hearing on the competing motions to vacate and confirm the Award, set for July 21, 2020, is completed based on any supplemental award the Arbitrator issues.

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

SIGNED, ENTERED, and ORDERED this _____ day of _____ 2020.


_____
HONORABLE LUIS M. SINGLETERRY

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**



_____

David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP**

**APPROVED AS TO FORM AND SUBSTANCE:**

_____

Jason Davis                 /with Permission
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, TX 78204

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.,
JON CHRISTIAN AMBERSON, AND AMBERSON
NATURAL RESOURCES LLC**

4

159969

Electronically Filed
7/15/2020 11:46 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez



# LAURA HINOJOSA
## HIDALGO COUNTY DISTRICT CLERK

Greetings:

Attached please find a copy of an order or judgment notifying you that an order has been signed in a case you are a party to or have been carbon copied on.

We appreciate the opportunity to assist you. Please contact our office if you have any questions or require additional information.

Sincerely,

*Laura Hinojosa*
Hidalgo County District Clerk

Post Office Box 87 Edinburg, Texas 78540  Telephone 956-318-2200  Facsimile 956-318-2251  districtclerk@co.hidalgo.tx.us

Nilda Palacios          Ricardo Contreras          Adriana "Audry" Garcia      Sabrina S. Guerra        Oneida Lamas            Stephanie Palacios       Aida Villarreal
CHIEF DEPUTY          CHIEF OF ADMINISTRATION    ASSISTANT CHIEF DEPUTY        SENIOR ACCOUNTANT      DEPUTY DISTRICT CLERK SUPERVISOR  BUDGET AND PROCUREMENT   CHIEF OF APPEALS
                      AND PUBLIC INFORMATION                                                                               OFFICER

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## AGREED ORDER REFERRING
## JEFFERSON BANK LOAN CLAIMS BACK TO ARBITRATION

WHEREAS Arbitrator Tom Collins (the "Arbitrator") issued his arbitration award in this

matter on April 30, 2020 (the "Award").

WHEREAS James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito

Land Partnership, Ltd. and McAllen Trust Partnership (collectively, the "McAllen Parties") filed

a motion to confirm the Award.

WHEREAS Jon Christian Amberson ("Amberson"), Jon Christian Amberson P.C. (the

"Firm"), and Amberson Natural Resources, LLC (collectively "the Amberson Parties") moved to

vacate parts of the Award, including issues related to James McAllen's claims concerning the

Jefferson Bank loan.

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

WHEREAS a hearing on the McAllen Parties' Motion to Confirm the Award and the Amberson Parties' Motion to Vacate the Award is currently set for July 21, 2020 in this Court.

WHEREAS in the Award, the Arbitrator determined that Amberson and the Firm are liable to McAllen on the Jefferson Bank loan claims, but the Arbitrator could not yet award damages on those claims because McAllen still had possession of the collateral used to secure the Firm's loan with Jefferson Bank. Thus, according to the Arbitrator, McAllen's claims concerning the Jefferson Bank loan were not yet ripe.

WHEREAS on June 17, 2020, Jefferson Bank took possession of the collateral used to secure the loan.

WHEREAS all Parties now agree that the Court should refer the Jefferson Bank loan claims back to the Arbitrator solely to determine if a supplemental award of damages should be issued in light of Jefferson Bank taking possession of the collateral used to secure the Jefferson Bank loan.

IT IS THEREFORE ORDERED that this matter is referred back to Arbitrator Tom Collins solely to address the effect of Jefferson Bank's taking possession of the collateral used to secure the Jefferson Bank loan on alleged damages for James McAllen's claims against Amberson and the Firm concerning the Jefferson Bank loan. This Order and the scope of the referral to arbitration is expressly limited to that single issue and does not give the arbitrator jurisdiction to address, determine, reopen, limit, or expand any other issues, including, without limitation, the liability determinations reflected in the April 30, 2020 Award.

IT IS FURTHER ORDERED that nothing in this Order affects, limits, or impairs in any way the rights or obligations the Parties have and any deadline related to confirming or vacating of the Award shall be tolled until the hearing on the competing motions to vacate and confirm the Award, set for July 21, 2020, is completed based on any supplemental award the Arbitrator issues.

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

SIGNED, ENTERED, and ORDERED this _____15th_____ day of _____July_____ 2020.


HONORABLE LUIS M. SINGLETERRY

159969

Electronically Filed
7/14/2020 10:09 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**



David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP**

**APPROVED AS TO FORM AND SUBSTANCE:**

Jason Davis /with Permission
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, TX 78204

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.,
JON CHRISTIAN AMBERSON, AND AMBERSON
NATURAL RESOURCES LLC**

4

159969

Electronically Filed
7/20/2020 3:24 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

## CAUSE NO. C-0340-15-A

| | | |
|---|---|---|
| **JON CHRISTIAN AMBERSON, P.C.,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JAMES ARGYLE MCALLEN,** | § | |
| **EL RUCIO LAND AND CATTLE** | § | |
| **COMPANY, INC., SAN JUANITO** | § | |
| **LAND PARTNERSHIP, LTD., AND** | § | **92ND JUDICIAL DISTRICT** |
| **MCALLEN TRUST PARTNERSHIP,** | § | |
| *Defendants* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JON CHRISTIAN AMBERSON AND** | § | |
| **AMBERSON NATURAL RESOURCES,** | § | |
| **LLC,** | § | |
| *Third Parties* | § | **HIDALGO COUNTY, TEXAS** |

## <u>SUGGESTION OF BANKRUPTCY</u>

COMES NOW, Third Party Amberson Natural Resources LLC ("**ANR**") in the above-styled action and hereby notifies the parties to this action and the Court that ANR has filed a petition for relief (the "**Petition**") under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.  The Petition was filed on July 20, 2020 and bears Case Number 20-51302.  As a result of the Petition, the automatic stay provisions of 11 U.S.C. § 362 apply to this proceeding, and the proceeding is stayed.

Dated: July 20, 2020.

Electronically Filed
7/20/2020 3:24 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

Respectfully submitted,

**DAVIS & SANTOS, P.C.**

By:     _/s/ Caroline Newman Small_____

Jason Davis
State Bar No. 00793592
E-mail: jdavis@dslawpc.com
Caroline Newman Small
State Bar No. 24056037
Email: csmall@dslawpc.com
719 South Flores
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

**_Attorneys for Jon Christian Amberson,
P.C., Jon Christian Amberson, and
Amberson Natural Resources LLC_**

Electronically Filed
7/20/2020 3:24 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the parties listed below in accordance with the Texas Rules of Civil Procedure via the method indicated below on July 20, 2020:

| | | |
|---|---|---|
| David M. Prichard | _____ | U.S. Mail |
| PRICHARD YOUNG, LLP | _____ | CMRRR |
| Union Square, Suite 600 | | Facsimile |
| 10101 Reunion Place | X | E-mail |
| San Antonio, Texas 78216 | X | E-file |
| E-mail: dprichard@prichardyoungllp.com | | |

| | | |
|---|---|---|
| J. A. "Tony" Canales | _____ | U.S. Mail |
| CANALES & SIMONSON, P.C. | _____ | CMRRR |
| 2601 Morgan Avenue | | Facsimile |
| Corpus Christi, Texas 78405 | X | E-mail |
| E-mail: tonycanales@canalessimonson.com | X | E-file |

**Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership**

| | | |
|---|---|---|
| Ricardo G. Cedillo | _____ | U.S. Mail |
| Les J. Strieber III | _____ | CMRRR |
| DAVIS, CEDILLO & MENDOZA, INC. | | Facsimile |
| McCombs Plaza, Suite 500 | X | E-mail |
| 755 E. Mulberry Avenue | X | E-file |
| San Antonio, Texas 78212 | | |
| E-mail: rcedillo@lawdcm.com | | |
| E-mail: lstrieber@lawdcm.com | | |

| | | |
|---|---|---|
| Steven A. Fleckman | _____ | U.S. Mail |
| Zach Wolfe | _____ | CMRRR |
| Andrew McKeon | | Facsimile |
| FLECKMAN & MCGLYNN, PLLC | X | E-mail |
| 6836 Austin Center Blvd., Suite 270 | X | E-file |
| Austin, Texas 78731 | | |
| E-mail: fleckman@fleckman.com | | |
| E-mail: zwolfe@fleckman.com | | |
| E-mail: amckeon@fleckman.com | | |

Electronically Filed
7/20/2020 3:24 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

| | | |
|---|---|---|
| Francisco J. Rodriguez | _____ | U.S. Mail |
| LAW OFFICE OF FRANCISCO J. RODRIGUEZ | _____ | CMRRR |
| 111 West Nolana Ave., Suite A | _____ | Facsimile |
| McAllen, Texas 78504 | X | E-mail |
| E-mail: frankr@mcallenlawfirm.com | X | E-file |

| | | |
|---|---|---|
| Charles C. Murray | _____ | U.S. Mail |
| ATLAS, HALL & RODRIGUEZ, LLP | _____ | CMRRR |
| 818 Pecan Street | _____ | Facsimile |
| McAllen, Texas 78502 | X | E-mail |
| E-mail: ccmurray@atlashall.com | X | E-file |

| | | |
|---|---|---|
| Jon Christian Amberson | _____ | U.S. Mail |
| Larissa Janee Hood | _____ | CMRRR |
| JON CHRISTIAN AMBERSON, P.C. | _____ | Facsimile |
| 2135 E. Hildebrand Ave. | X | E-mail |
| San Antonio, Texas 78209 | X | E-file |
| E-mail: chris@ambersonpc.com | | |
| E-mail: larissa@ambersonpc.com | | |

***Attorneys for Jon Christian Amberson, P.C.,***
***Jon Christian Amberson, and***
***Amberson Natural Resources LLC***

   */s/ Caroline Newman Small*
Caroline Newman Small

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## THE MCALLEN PARTIES'
## (1) RESPONSE TO THE AMBERSON PARTIES' MOTION TO VACATE OR MODIFY ARBITRATION AWARD, AND (2) REPLY IN SUPPORT OF THE MCALLEN PARTIES' MOTION TO CONFIRM ARBITRATION AWARD

TO THE HONORABLE LUIS M. SINGLETERRY:

NOW COME Defendants James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership (collectively, the "McAllen Parties") and file this (1) Response to the Amberson Parties' Motion to Vacate or Modify Arbitration Award, and (2) Reply in Support of the McAllen Parties' Motion to Confirm Arbitration Award. The McAllen Parties show as follows:

1

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

# I.
## INTRODUCTION

The Amberson Parties' Motion to Vacate is most notable for the parts of the Award they do not challenge.  Tom Collins (the "Arbitrator") – who the Amberson Parties suggested[1] – found Jon Christian Amberson ("Amberson") and Jon Christian Amberson P.C. (the "Firm") engaged in rampant fraud, breach of fiduciary duty, and theft against their former clients (the McAllen Parties), stealing millions of dollars over many years.  The Arbitrator awarded $3,725,700.00 in actual damages and interest for fraudulent retainers, bonds, and other charges that Amberson and the Firm billed and collected from the McAllen Parties.  This included fraudulent representations by Amberson that courts ordered the McAllen Parties to post large bonds and deposits.

For example, Amberson falsely represented to his clients that, in 2005, Judge Rose Guerra Reyna ordered the McAllen Parties to post a $250,000 bond, in connection with a non-existent "Motion for Entry upon Premises," in the earlier proceeding – the Forest Oil Litigation/Arbitration.  McAllen advanced the money to Amberson to post the supposed bond, but Amberson kept and spent the money.  Similarly, Amberson lied to his clients when he told them, in 2009, that a Harris County district court required them to deposit $250,000 in the court's registry to cover compensation for the arbitrators in an earlier arbitration proceeding.  McAllen advanced the $250,000 to Amberson and, once again, Amberson kept and spent the money.  In addition, Amberson billed and collected from McAllen millions of dollars in fraudulent expert retainers even though the retainers were never requested, Amberson never paid the experts, and Amberson never used the experts for his clients' case.

With respect to these fraudulent charges, the Arbitrator concluded:

> Amberson made material misrepresentations to McAllen; Amberson knew the representations were false; Amberson intended McAllen to act in

---

[1] *See* S. Fleckman E-mail, May 1, 2018, Exhibit 1.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

> reliance on his false representations and to pay the <u>42 fraudulent payment</u>
> <u>requests</u>; and McAllen actively and justifiably relied on Amberson's
> representations and McAllen and his entities suffered damages in the
> principal amount of $2,583,700.

*See* Award, p. 32; *see id.* at 20 (stating Amberson made statements to McAllen that were "blatantly

untrue") (emphasis added).[2]  The Arbitrator further found that Amberson's conduct constituted a

breach of his fiduciary duties.  *Id.*  Moreover, the Arbitrator held that Amberson's theft amounted

to a violation of Texas criminal law.

> Amberson unlawfully appropriated the property <u>in violation of certain</u>
> <u>sections of the Texas Penal Code that constitute criminal theft</u>, and McAllen
> and his entities sustained damages as a result of the theft.

*Id.* (emphasis added).  But Amberson does not challenge any of these findings from the Award in

his Motion to Vacate.

These are not the only findings of fraudulent conduct that Amberson fails to challenge with

his motion.   Amberson's Firm borrowed nearly $2,000,000 from First Community Bank.

Amberson billed McAllen for interest payments the Firm made on the loan, representing that the

loan was to finance expenses in the Forest Oil Arbitration/Litigation.  This representation was false

because Amberson billed the McAllen Parties for every expense incurred in the prior proceeding,

and McAllen paid all those expenses.   Amberson was unable to repay the bank so he asked

McAllen to repay the debt.  McAllen agreed and personally borrowed $2 million in 2012 to pay

off the First Community Bank loan.  But, unbeknownst to McAllen, just days before McAllen

would pay off that loan for Amberson, Amberson had secretly filed for divorce from his wife –

McAllen's daughter.  The Arbitrator found that Amberson's statements were false and that he

breached his fiduciary duties to his clients.

> Amberson falsely represented to McAllen that the [First Community Bank]
> line of credit was used to cover arbitration expenses.  In addition, Amberson

---

[2] Amberson has included a copy of the Award as Exhibit A to his Motion to Vacate.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

> secretly filed for divorce from McAllen's daughter on June 18, 2012, three days before the June 21, 2012 dated that McAllen borrowed $2,000,000 [from Bank of America] to pay off Amberson Firm's line of credit.
>
> ***
>
> Amberson and his Firm breached numerous fiduciary duties owed to his client McAllen, including to refrain from self-dealing and to inform his client in writing of a conflict of interest; to act with absolute candor, openness and honest; to disclose all material matters; and to act in utmost good faith, honest dealing and integrity.

Award, p. 35.  The Arbitrator separately awarded McAllen $2,652,953.13 in damages for claims concerning the First Community Bank loan, but Amberson does not challenge this part of the Award with his motion.

The scale of Amberson's theft and malfeasance was noteworthy to Jim McCormack, the former General Counsel and Chief Deputy Counsel for the State Bar of Texas, who has handled attorney disciplinary matters for almost 30 years.  He stated he had never seen a case similar to this one.

> I have seen prior instances of lawyers stealing client settlement monies, misapplying client retainers and other funds, and lying to clients to conceal these and other acts of misconduct; however, I do not recall a prior scenario in which the lawyer in question committed all these bad acts in combination and repetitively over a period of several years.

Ex. J2-36[3] (McCormack Report) at 24.

But Amberson does not seek to vacate any finding that he defrauded his clients or breached the fiduciary duties he owed them.  Instead, with new counsel[4], Amberson seeks to vacate three

---

[3] The citation refers to an exhibit submitted in the arbitration proceeding.  The Amberson Parties state they will provide the Court with the exhibits from the arbitration hearing.  Almost 400 exhibits (including thousands of pages of documents) were admitted at the arbitration hearing.  In addition, there was over two weeks of testimony with seventeen witnesses.

[4] Previously, the Amberson Parties were represented – both in this Court and in the arbitration hearing – by Fleckman & McGlynn of Austin.  However, on May 29, 2020, Fleckman & McGlynn moved to withdraw.  Steve Fleckman advised counsel for the McAllen Parties that his firm had not been paid by the Amberson Parties since the arbitration hearing concluded in July 2019.  This is unfortunate but unsurprising.  Amberson is seemingly in the habit of not paying his lawyers.  In connection with the arbitration hearing in this case, Amberson hired Susan Sample of Munsch

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

parts of the Award: (1) the Cannon Grove transaction; (2) McAllen's claims regarding the Jefferson Bank loan; and (3) a $545,000 promissory note that Amberson executed in favor of McAllen.  The Court should deny the Amberson Parties' motion to partially vacate the Award.

With respect to the award on McAllen's Cannon Grove claims, the Court should deny the Amberson Parties' request for vacatur for multiple reasons.  First, the Arbitrator did not exceed his authority by ruling on the Cannon Grove claims because this Court expressly ordered these claims to arbitration – **_twice_**.  The Arbitrator acted within the authority that this Court determined.  Second, the Amberson Parties waived any complaint concerning the Cannon Grove claims.  The Court's orders referring the Cannon Grove claims to arbitration were immediately subject to mandamus review, but the Amberson Parties never sought such review.  When a party fails to avail itself of the right to review of an order compelling a claim to arbitration, then loses on the claim at arbitration, it is precluded from subsequently complaining about the order referring the case to arbitration.  Finally, the Court correctly referred the Cannon Grove claims to arbitration because the McAllen Parties submitted evidence supporting a finding that ANR and Amberson are alter egos of the firm, and the Cannon Grove claims are inextricably intertwined with all of the other claims the Amberson Parties agreed should be arbitrated.

Next, as to the award concerning the Jefferson Bank loan claims, the arbitrator did not exceed his authority by ruling on "unripe" claims.  In the original award of April 30, 2020 (the "Award"), the Arbitrator addressed these claims but did not issue a damages award on them because certain events had not yet occurred to make the claims ripe.  Subsequently, those events

---

Hardt Kopf & Harr to serve as an expert witness.  Amberson ultimately chose not to use Ms. Sample at the arbitration hearing.  But Munsch Hardt has now sued Amberson in Bexar County district court alleging that he failed to pay the firm over $53,000 in fees for Sample's services.  *See Munsch Hardt Kopf & Harr, P.C. v. Jon Christian Amberson P.C. et al*, No. 2020-CI-01540, in the 131st District Court, Bexar County Texas.  Amberson has so far avoided service efforts, forcing Munsch Hardt to file a motion for substituted service under Rule 106.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

occurred, and – by agreement of the parties – the Court referred the Jefferson Bank loan claims to the Arbitrator.  On July 15, 2020, the Arbitrator issued a supplemental award (the "Supplemental Award") in favor of McAllen on the Jefferson Bank loan claims.  *See* Exhibit 2.  McAllen's claims concerning the Jefferson Bank loan were ripe, and the Arbitrator did not exceed his authority in either discussing the claims in the Award or issuing an award on the claims in the Supplemental Award.

Finally, as to the award in favor of McAllen on the $545,000 promissory note, the Amberson Parties cannot modify (or vacate) the award based on a supposed "evident miscalculation" in the Award.  "Evident miscalculation" can only serve as the basis for modifying an award if the miscalculation was inadvertent and does not go to the merits of the case.  But now the Amberson Parties simply reassert the same arguments, on the merits, that they made to the Arbitrator and which he rejected.

There are no valid reasons for vacating or modifying any part of the Award or Supplemental Award.  Accordingly, the Court should deny the motion to vacate, confirm both the April 30, 2020 Award and July 15, 2020 Supplemental Award in their entirety, and enter a Final Judgment incorporating both the April 30, 2020 Award and the July 15, 2020 Supplemental Award.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

**II.**
**THE COURT SHOULD DENY THE**
**AMBERSON PARTIES' MOTION TO VACATE OR MODIFY**

**A.     There are no valid grounds for vacating the Cannon Grove portion of the Award.**

The majority of the Amberson Parties' Motion to Vacate concerns the Arbitrator's decision in favor of McAllen concerning the Cannon Grove transaction.[5]  But in seeking to vacate that part of the award, the Amberson Parties are limited on the grounds they may assert.  The exclusive grounds for vacating all or part of an arbitration award are set out in Section 171.088(a) of the Texas Arbitration Act ("TAA") and include:

(1)     the award was obtained by corruption, fraud, or other undue means;

(2)     the rights of a party were prejudiced by:

(A)     evident partiality by an arbitrator appointed as a neutral arbitrator;
(B)     corruption in an arbitrator; or
(C)     misconduct or wilful misbehavior of an arbitrator;

(3)     the arbitrators:

(A)     exceeded their powers;
(B)     refused to postpone the hearing after a showing of sufficient cause for the postponement;
(C)     refused to hear evidence material to the controversy; or
(D)     conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party; or

(4)     there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection.

---

[5] The Cannon Grove transaction was a "Reverse 1031 Exchange" allowing McAllen to defer taxes on the sale of certain property he owns.  *See* Award at 38 (summarizing the transaction).

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

TEX. CIV. PRAC. & REM. CODE § 171.088(a) (emphasis added); *see Hoskins v. Hoskins*, 497 S.W.3d 490, 497 (Tex. 2016) (stating Section 171.088 "provides the exclusive grounds for vacatur of an arbitration award").

> **1. The Arbitrator's decision was within the authority this Court granted him by expressly ordering the Cannon Grove claims to arbitration -- *twice*.**

The Amberson Parties argue the Arbitrator "exceeded his authority" by ruling on McAllen's claims regarding Cannon Grove which they contend are outside the scope of the arbitration agreement. *See* Motion to Vacate at 16-22.[6] But the argument rests on the false assumption that the Arbitrator determined the scope of his authority. He did not. Rather, this Court ruled that the Cannon Grove claims are subject to arbitration.

Section 171.021 provides trial courts shall order parties to arbitration upon application. TEX. CIV. PRAC. & REM. CODE § 171.021(a). The Firm requested that its claims against the McAllen Parties be ordered to arbitration. And the McAllen Parties asked that all of their claims against the Firm, Amberson, and ANR, including the claims regarding the Cannon Grove transaction, be referred to arbitration. Under the statute, the Court had to determine whether the Cannon Grove claims were within the scope of the arbitration agreement. The Texas Supreme Court summarized the process.

> The courts' role, then, is first to decide whether the parties made a valid and presently enforceable agreement to arbitrate. If they did, then the court must

---

[6] The Amberson Parties maintain the Arbitrator expressed "doubt" about his jurisdiction to decide the Cannon Grove claims. *See* Motion to Vacate at 12. This assertion is incorrect. The Arbitrator expressed no such doubt in the Award. Rather, he explicitly stated that he did not have to decide whether the Cannon Grove claims were arbitrable because this Court already decided they were. *See* Award at 37-38 (emphasis added) (stating "[t]ypically, questions of arbitrability are determined by the Arbitrator, but that is not the case here. The Arbitrator addresses the merits of the parties' claims and defenses on the Cannon Grove transaction because the District Court has ordered that the claims be determined by this Arbitrator in arbitration.") (emphasis added). The Arbitrator acknowledged the same at the hearing. During the hearing, the Amberson Parties sought a running objection as to any testimony concerning Cannon Grove. 2RR92. In granting the running objection, the Arbitrator stated he was proceeding on the Cannon Grove claims based on the Court's prior order. 2RR93. The Arbitrator had no doubt as to whether he had jurisdiction to consider the Cannon Grove claims because the Court ordered those claims to arbitration.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

<u>decide whether the present disputes fall within the scope of that agreement</u>. These questions that courts must resolve are sometimes referred to as questions of "arbitrability." If, by answering these questions, the court determines that the present disputes are in fact arbitrable under the parties' agreement, <u>the court must complete its role by ordering the parties to arbitration and leaving it to the arbitrators to resolve those disputes</u>.

*G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519–20 (Tex. 2015) (citations omitted) (emphasis added); *see In re Frank A. Smith Sales, Inc.*, 13-16-00020-CV, 2016 WL 748054, at *3 (Tex. App.—Corpus Christi Feb. 22, 2016, no pet.) (citing *G.T. Leach Builders* for same).

Applying this process, the Court has expressly held – ***twice*** – that the scope of the arbitration agreement includes the Cannon Grove claims. In its original Order Referring Claims to Arbitration, the Court stated:

> IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the arbitration provision.
>
> SIGNED this __23rd__ day of ~~XXXXX~~ April, 2018.

*See* April 23, 2018 Order, Exhibit 3. The Amberson Parties subsequently moved for reconsideration. The Court denied the request and reiterated that the Cannon Grove claims were to be arbitrated.

> IT IS FURTHER ORDERED that all claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the parties' arbitration provision.

*See* Order, October 3, 2018, Exhibit 4.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

It was the Court, not the Arbitrator, that decided the question of arbitrability.  The Court determined the scope of the Arbitrator's authority.  Because the Court expressly ordered the Cannon Grove claims to arbitration, the Arbitrator could not have exceeded his authority by ruling on the very claims the Court ordered be arbitrated.  As the court of appeals explained in *Thomas*, an arbitrator does not exceed his authority when he decides claims that were referred to him by the trial court.

> Thomas also contends that the arbitrator exceeded his authority by addressing all of the causes of action she asserted against Cook. <u>We reject this contention because the trial court properly sent all of the causes of action Thomas asserted against Cook, contract and tort alike, to arbitration.</u>

*Thomas v. Cook*, 350 S.W.3d 382, 393 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (emphasis added).

The Amberson Parties cite several cases in their motion for various principles of arbitration law.  *See* Motion to Vacate at 14-17.  But critically, the Amberson Parties fail to cite any case in which an appellate court found an arbitrator exceed his authority, warranting vacatur of the award, when the arbitrator ruled on claims that had a trial court expressly referred to arbitration.  *Id.*

For example, the Amberson Parties cite *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.) and *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex. App.—San Antonio 2003, pet. denied) for the general proposition that "[a]rbitrators exceed their powers when they decide matters not properly before them."  *See* Motion to Vacate at 16.  In neither case did the court of appeals hold an arbitrator exceeded his authority by deciding claims that the trial court specifically referred to it.  In *Ancor Holdings*, the court of appeals affirmed the confirmation of the arbitration award, holding the appellant "failed to establish any statutory grounds for vacating the arbitration award".  *Ancor Holdings, LLC*, 294 S.W.3d at 834.  In *Barness*, the appellate court did not hold the arbitration panel exceeded its

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

authority by ruling on a claim that the trial court had expressly referred to it. *Barness*, 126 S.W.3d at 241. Rather, the court of appeals held the panel exceeded its authority because it subsequently modified an existing award without any of the statutory requirements for modifying awards being present. *Id.* at 241-42. The Amberson Parties also cite to *Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). *See* Motion to Vacate at 15. In that case, the court of appeals held the arbitrator did exceed his authority in ruling on a claim for a share of a settlement with a third party. *Id.* But in *Burlington*, unlike the present case, the trial court neither determined the scope of arbitrability nor referred the disputed claim to arbitration. Instead, the arbitrator ultimately determined he had jurisdiction to determine whether the claim was subject to arbitration and then ruled on that claim. *Id.* at 38.

The Arbitrator did not exceed his authority by ruling on the Cannon Grove claims that this Court expressly ordered to arbitration. The Amberson Parties' issue, with respect to Cannon Grove, is not with the Arbitrator exceeding the authority granted to him by this Court. Rather, their issue is with the Court's two previous orders referring the Cannon Grove claims to arbitration. But the Amberson Parties waived any complaint they have with these orders.

> **2.** **The Amberson Parties waived any complaint regarding the Cannon Grove claims because mandamus was available to them to review the Court's orders compelling these claims to arbitration, but the Amberson Parties refused to seek such review.**

A trial court's order compelling a claim to arbitration is subject to mandamus review. *E.g.*, *In re Wolff*, 231 S.W.3d 466, 467 (Tex. App.—Dallas 2007, orig. proceeding); *In re Castro*, 246 S.W.3d 756, 760 n. 2 (Tex. App.—Eastland 2008, orig. proceeding); *In re Godt*, 28 S.W.3d 732, 738 (Tex. App.—Corpus Christi 2000, orig. proceeding); *see Gumble v. Grand Homes 2000, L.P.*, 334 S.W.3d 1, 4 (Tex. App.—Dallas 2007, no pet.) (citing *In re Godt* for same). When, as here, mandamus is available, a party <u>must</u> avail itself of the remedy to preserve a complaint that the

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

claim should never have been referred to arbitration. A party cannot wait to see if the arbitrator will rule in its favor and, if he does not, then seek to challenge the arbitrator's authority to hear the claim. In other words, a party waives its complaint if mandamus was available, but it failed to utilize it.

In *Gumble*, the trial court ordered the parties to arbitrate and later confirmed the arbitration award in a final judgment. *Gumble*, 334 S.W.3d at *2. On appeal, the appellants challenged the trial court's decision ordering the claims to arbitration. The court of appeals denied this challenge because the appellants could have sought mandamus review of the order referring the claims to arbitration but failed to do so.

> This is an argument appellants should have raised at the time the trial judge ordered the case to arbitration. Mandamus lies over an order granting a motion to compel arbitration. *Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 834 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see In re Godt,* 28 S.W.3d 732, 738 (Tex. App.—Corpus Christi 2000, orig. proceeding); *see also Freis v. Canales,* 877 S.W.2d 283, 284 (Tex. 1994). Appellants did not file a petition for writ of mandamus with respect to the trial court's order to compel arbitration; therefore, this complaint is untimely.

*Gumble*, 334 S.W.3d at 4 (emphasis added); *see also ConocoPhillips Co. v. Koopman*, 547 S.W.3d 858, 880 (Tex. 2018) (rejecting argument that party was entitled to attorneys fees' under Rule 91a, when it later prevailed on same argument at summary judgment, because party failed to challenge denial of its motion to dismiss by available mandamus review).

*Gumble* is consistent with federal authority holding that when a party takes issue with an arbitrator's authority to hear a claim, but fails to avail itself of available legal review, that complaint is waived. For example, in *Peters Fabrics, Inc. v. Jantzen, Inc.*, 582 F.Supp. 1287 (S.D.N.Y. 1984), Peters agreed to sell, and Jantzen agreed to buy, 20,000 yards of flannel fabric. *Id*. at 1288. Peters' sales confirmation notice contained an arbitration clause allowing for arbitration by the General Arbitration Council of the Textile Industry ("GAC"). *Id*. Jantzen's

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

purchase order contained an arbitration clause allowing for arbitration by the American Arbitration Association ("AAA").  *Id.*  A dispute arose between the parties when Jantzen rejected the fabric as non-conforming.  *Id.* at 1289.

Peters demanded arbitration and indicated that arbitration could proceed under the rules of either the AAA or the GAC.  *Peters Fabrics,* 582 F.Supp. at 1290.  Jantzen stated it only agreed to arbitrate under the AAA rules and that it would move to stay the arbitration if it were conducted under any other rules.  Peters, Jantzen, and the GAC exchanged correspondence in which Jantzen objected to the GAC's jurisdiction.  *Id.*  Several months later, the parties arbitrated the case before a GAC arbitrator.  *Id.*  At the hearing, Jantzen renewed his objection challenging the GAC's jurisdiction but nevertheless participated in the hearing.  *Id.* at 1290-91.  The arbitrator ruled in favor of Peters and Jantzen moved to vacate the award.  *Id.* at 1291.

Jantzen argued that the award should be vacated, in part, because it never agreed to arbitration before the GAC.  *Peters Fabric*, 582 F.Supp. at 1291-92.  In other words, the GAC lacked authority to preside over the arbitration.  The district court rejected this argument.

> Jantzen further argues that even assuming that a valid agreement to arbitrate exists, it never agreed to arbitrate before the GAC and that the arbitrator's award should be vacated on that ground alone.  The Court does not agree.  <u>If Jantzen believed that the arbitration should instead have gone forward before the AAA, it had an appropriate remedy.  It could have moved to stay the GAC proceeding and sought to compel arbitration in a forum of its choice</u>.  Although Jantzen threatened to do so, it never did.  Instead, <u>it participated in the arbitration hearing and took the calculated risk that it might later be able to successfully challenge an unfavorable award because of procedural differences between the rules of the GAC and the AAA</u>.
>
> Jantzen has cited no authority to support its proposition that, where an otherwise valid agreement to arbitrate exists, a party can proceed with arbitration without judicially challenging the authority of that particular arbitration tribunal and later vacate an award because of slight procedural differences between it and the forum of its choice.  In the absence of any controlling authority, <u>this Court can see no sound policy reasons why a party should be permitted to profit from a strategic decision to defer seeking a</u>

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

> ruling on an arbitrator's authority until after he renders his award, especially since it is clear that had the award been favorable, Jantzen would not now be challenging the authority of the arbitrator.

*Id.* (emphasis added); *see Reeves Bios v. Capital-Mercury Shirt Corp.*, 962 F.Supp. 408, 412 (S.D.N.Y. 1997) (same).

The Court ordered the Cannon Grove claims to arbitration on April 23, 2018.  *See* Exhibit 3.  The Amberson Parties could have sought mandamus review of this order at any time before the Arbitrator was appointed on October 18, 2018.  But instead of seeking the appellate review available to them, the Amberson Parties made the "strategic decision" to go forward with the arbitration of the Cannon Grove claims.  If the Arbitrator ruled against the Amberson Parties, then they would argue he had no authority to consider the claims.  But if they had prevailed on the Cannon Grove claims, then the Amberson Parties would never complain the Arbitrator exceeded his authority by ruling on the claims.  The law does not allow such gamesmanship.  If the Amberson Parties did not want the Arbitrator to rule on the Cannon Grove claims, they should have sought mandamus review of the Court's order referring those claims to arbitration.  Because the Amberson Parties failed to seek such review, they have now waived their complaint.  *Gumble*, 334 S.W.3d at 4.

### 3.    Even without waiver, the Amberson Parties' arguments still fail.

The Amberson Parties offer two grounds in support of their assertion that the Arbitrator exceeded his authority by ruling on the Cannon Grove claims: (1) ANR and Amberson (individually) were not signatories to any of the fee agreements containing the arbitration provisions, and (2) the Cannon Grove claims fall outside the scope of the arbitration provisions. *See* Motion to Vacate at 17-19.  Both arguments are without merit.  Accordingly, the Amberson

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

Parties' complaint that the Arbitrator exceeded his authority fails even if Plaintiffs had not already waived the complaint (which they have).

> **a.    ANR and Amberson are bound by the arbitration provisions because evidence was provided to this Court – prior to the appointment of the Arbitrator – showing that ANR and Amberson are the alter egos of the Firm.**

Prior to the appointment of the Arbitrator, the McAllen Parties asserted to this Court that Amberson, ANR, and the Firm were alter egos of one another.  Because the Firm is a signatory to the arbitration agreements, the claims against the alter egos, including the claims against Amberson and ANR for the Cannon Grove transaction, are subject to arbitration.  *See* McAllen Parties' (1) Response to Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others; and (2) Request to Refer all Claims in this Lawsuit to Arbitration at 10-11; *see also* McAllen Parties' Supplement to their Response to Plaintiff's and Third-Party Defendants' Motion for Reconsideration and Clarification at 2-10.  The Amberson Parties contend the McAllen Parties "presented no documents, affidavits, or other evidence to support this [alter ego] theory," to this Court.  *See* Motion to Vacate at 17.  Not true.

When the Court considered whether the Cannon Grove claims were subject to arbitration, the McAllen Parties presented evidence to support the alter ego allegation.  This included evidence that the Amberson Parties submitted themselves to the Court that actually demonstrated their alter ego status.   *See* McAllen Parties' Supplement to their Response to Plaintiff's and Third-Party Defendants' Motion for Reconsideration and Clarification at 3-6.  Amberson's evidence showed he co-mingled funds with ANR, and that ANR was inadequately capitalized.  *Id.*  In addition, the McAllen Parties separately submitted evidence to the Court showing the Firm is the alter ego of

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

Amberson.  *Id.* at 6-10.  The Amberson Parties' claim that the McAllen Parties "presented no documents, affidavits, other evidence" is plainly false.[7]

The Amberson Parties also argue the Court cannot rely on the Arbitrator's findings as a *post hoc* justification to confirm the award.  *See* Motion to Vacate at 18.  There is no need for any such "justification" given that evidence was submitted before the case went to arbitration (and the Amberson Parties' waiver of any complaint by failing to seek mandamus review).  The Arbitrator's findings of alter ego illustrate the Court's initial decision to order the Cannon Grove claims to arbitration was sound.  Among his conclusions, the Arbitrator stated the following:

> . . . the Arbitrator determines that the Firm and ANR are the alter egos of Amberson with regard to the claims asserted by the McAllen Parties, and that Amberson personally is liable for the claims the McAllen Parties have proven against the Firm and ANR.
>
> As to Amberson's Firm, (1) Amberson is the sole owner and decision maker of the Firm and thus has a financial interest in the Firm and controls its operations; (2) Amberson used the Firm and both its operating and IOLTA account to pay and subsidize personal expenses (sometimes directly from the Firm's operating or IOLTA account to cover a personal expense) such that there is a unity of interests between the Firm and Amberson; (3) Amberson caused the Firm to be used for the purpose of perpetrating and did perpetrate an actual fraud on the McAllen Parties primarily for his direct personal benefit; and (4) given that Amberson has indicated that the Firm likely cannot pay, for instance, the $2,250,000.00 loan owed Jefferson Bank (Part VI. of t this Award) without the Award of a contingency fee, and there being no other evidence in the record to suggest that the Firm can pay the amounts owed herein, it equitably would be a manifest injustice if on this record the McAllen Parties were left with an uncollectible Award or resulting judgment against the Firm, while allowing the Firm's alter ego Amberson to go free.  Such an equitable principle especially is important in arbitration.  Therefore, the Arbitrator determines that Jon Christian Amberson, P.C. is the alter ego of Amberson.  Amberson personally is liable for the acts, claims, liability and amounts set forth herein

---

[7] Of course, if the Amberson Parties believed that this evidence did not support a finding of alter ego, then they had a legal remedy available to them.  Again, the Amberson Parties could have sought mandamus review of the Court's orders referring the Cannon Grove claims to arbitration and argued why they believed the evidence was insufficient to support the alter ego allegation.  But the Amberson Parties failed to seek such review and, consequently, waived their argument that the Cannon Grove claims should not have been arbitrated.  *Gumble*, 334 S.W.3d at 4.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

<u>that any or all of the McAllen Parties have proven and are awarded against the Firm</u>.

Regarding Amberson Natural Resources, LLC, it was formed for the sole purpose of receiving a $4,500,000.00 loan from McAllen in order to purchase the 90% interest in Cannon Grove as discussed in Part V. Amberson is the sole owner of ANR. Amberson provided $500.00 to open a bank account for ANR. That is the only capital Amberson has provided to ANR. This inadequate capitalization for ANR, coupled with Amberson's total control of ANR, establishes a unity of interests between Amberson and ANR. <u>Whether or not Amberson initially created ANR for the purpose of perpetrating a fraud, ANR ultimately was used for such purpose in connection with Amberson's argument that the $4,500,000.00 amount McAllen paid Amberson's wholly owned entity ANR was for a gift and was not a loan, which would be for the direct personal benefit of Amberson.</u> Finally, it would be manifestly unjust not to hold Amberson personally liable for ANR's actions. <u>Thus, the Arbitrator determines that Amberson personally is liable for the acts, claims, and liability set forth herein that McAllen has proven and been awarded against ANR</u>.

Award at 48-49 (emphasis added). The Arbitrator's decision is consistent with the evidence on alter ego presented to the Court. The Court correctly referred the Cannon Grove claims to arbitration and, thus, the Arbitrator did not exceed his authority in ruling on those claims.

> **b.    The Cannon Grove claims are inextricably intertwined with the other claims against Amberson and the Firm and, thus, are subject to arbitration.**

The Amberson Parties next complain that even if Amberson and ANR are bound by the arbitration provisions, the Cannon Grove claims are outside the scope of the arbitration provisions. *See* Motion to Vacate at 18-20. The Amberson Parties argue that language in arbitration provisions can range "the gamut from 'broad' to 'narrow'" and that provision at issue showed it applied "only in the narrowest of circumstances." *Id.* at 19. The Amberson Parties never argued, in their prior briefing to this Court, that the arbitration provisions were "narrow" provisions. By first asserting the argument in what is essentially a second motion for reconsideration, the Amberson Parties have waived the argument.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

Regardless of their waiver, the Amberson Parties' argument is without merit.  As the McAllen Parties explained in their pre-arbitration briefing to this Court, any doubts concerning the scope of arbitration are resolved in favor or arbitration.  *See* the McAllen Parties' (1) Response to Plaintiff's and Third-Party Defendants' Motion to Refer Certain Claims to Arbitration and Retain Others; and (2) Request to Refer all Claims in this Lawsuit to Arbitration at 5-6.  Ancillary claims that are factually intertwined with arbitrable claims must be referred to arbitration.  *Id.* at 6-10.

The Amberson Parties state that "glaringly absent" from the McAllen Parties' own pleadings are "any allegations whatsoever connecting the Cannon Grove transaction to the Forest Oil litigation".  *See* Motion to Vacate at 21.  The assertion is false.  The McAllen Parties alleged that Amberson and ANR's contention, that that the $4.5 million McAllen loaned was actually a gift, was part of series of tortious acts including fraudulent charges from the Firm in the Forest Oil matter.  Specially, the McAllen Parties alleged that:

> AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR conspired together to falsely treat the MCALLEN loan as a gift and keep the 90% interest in Cannon Grove.  AMBERSON, JON CHRISTIAN AMBERSON, P.C., and ANR perpetrated this fraud because they knew that even if they were forced to repay the loan, they had the funds to repay the loan.  The money that AMBERSON and JON CHRISTIAN AMBERSON, P.C. misappropriated from the MCALLEN PARTIES, in the course of representing them, was more than the amount MCALLEN loaned AMBERSON to purchase ANR's interest in Cannon Grove. PLAINTIFFS' prior misappropriation of funds from MCALLEN PARTIES facilitated AMBERSON's and ANR's effort to wrongfully treat the Cannon Grove loan as a gift.

> \*\*\*

> AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR were members of a combination of two or more persons; the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; the members of the combination had a meeting of the minds on the objective; the members committed unlawful, overt acts in furtherance of the objective and the MCALLEN PARTIES suffered injuries as a proximate result of those unlawful acts.  AMBERSON and JON

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

> CHRISTIAN AMBERSON, P.C. conspired to bill and collect from the MCALLEN PARTIES charges that AMBERSON and JON CHRISTIAN AMBERSON, P.C. did not actually incur.   AMBERSON, JON CHRISTIAN AMBERSON, P.C. and ANR further conspired to utilize proceeds from these illegal activities to facilitate their efforts to falsely treat the money MCALLEN loaned AMBERSON, to purchase ANR's interest in Cannon Grove, as a gift rather than as a loan.

*See* McAllen Parties' Second Amended Answer, Counterclaims and Claims against Third-Parties at 5, 9.  ANR's  and Amberson's fraud with respect to the Cannon Grove transaction was part of a continuing pattern of tortious conduct against the McAllen Parties that started with the Firm's fraudulent charges. The Amberson Parties' assertion, that the Cannon Grove claims are wholly unrelated to the fee dispute claims, is false.  The Cannon Grove claims are intertwined with the claims against the Firm.[8]

The Amberson Parties have waived their complaint regarding the arbitrability of the Cannon Grove claims and their arguments are without merit.  The Court correctly referred those claims to arbitration, and the Arbitrator did not exceed his authority by deciding those claims. Accordingly, the Court should affirm the Award in its entirety, including with respect to McAllen's claims for Cannon Grove.

### 4.        There is no basis for vacating derivate claims related to Cannon Grove.

Finally, in Section V(D) of the Amberson Parties' motion, they argue that because the Court should vacate the Award concerning the Cannon Grove claims, it should also vacate the award with respect to three derivate claims, specifically: (1) the Arbitrator's ruling that Amberson

---

[8] By way of further example, when Amberson begged McAllen to help him pay off the First Community Bank loan – a loan Amberson ostensibly took to finance the Forest Oil Litigation/Arbitration – McAllen ultimately agreed. However, McAllen did not have the cash on hand to just pay off Amberson's loan.  McAllen borrowed the money from Bank of America using Cannon Grove as collateral.  *See* 8TR200 (Leshin stating Cannon Grove used as collateral for McAllen's loan from Bank of America); 4TR239-40 (Amberson indicating the same); Ex. J3-7 (JAM 008330-58) (real estate loan agreement with Bank of America showing McAllen borrowed $2 million with Cannon Grove serving as collateral).  Amberson insists that Cannon Grove is completely separate from the Forest Oil matter and should not be a part of this arbitration.  But as this evidence demonstrates, Cannon Grove is directly connected to the Forest Oil matter and not "completely independent" of it as the Amberson Parties contend.  *See* Motion to Vacate at 8.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

and ANR conspired with each regarding the Cannon Grove transaction, (2) the ruling that ANR is an alter ego of Amberson, and (3) the award of $350,000.00 in attorneys' fees in connection with the Cannon Grove claims. *See* Motion to Vacate at 26-27. As discussed, there is no basis for vacating the award on the Cannon Grove claims. Accordingly, there is no basis for vacating any parts of the award concerning these three derivative claims.

**B.      With respect to McAllen's Jefferson Bank Loan claims, the Arbitrator recently issued a Supplemental Award, and the Court should confirm the Supplemental Award along with the April 30, 2020 Award.**

Next in their motion to vacate, the Amberson Parties seek to vacate that part of the Award concerning McAllen's claims regarding the Jefferson Bank loan – Issue 6 in the arbitration.[9]  *See* Motion to Vacate at 22-24. The Amberson Parties argue that the Arbitrator exceeded his authority by issuing a ruling on these claims because they were not ripe. *Id.* When the Arbitrator issued the Award, Jefferson Bank had not yet seized any of the certificates of deposit McAllen pledged as collateral. The Arbitrator thus refrained from awarding any relief on this claim but left open the possibility of revisiting the claim if Jefferson Bank later seized the certificates of deposit. *Id.* Since the Amberson Parties filed their motion, the situation has dramatically changed.

The Firm has now defaulted on the Jefferson Bank loan. On June 17, 2020, Jefferson Bank took full possession of the eight certificates of deposit pledged as collateral and applied them to the Firm's indebtedness. Exhibit 5. McAllen lost all of the certificates of deposit he pledged as

---

[9] This claim concerns a loan the Firm had with Jefferson Bank and which Amberson personally guaranteed. While Amberson was representing the McAllen Parties in the Forest Oil Litigation/Arbitration, Amberson asked McAllen to provide collateral for a loan the Firm sought from Jefferson Bank. Amberson represented to McAllen that the purpose of the loan was to finance the litigation/arbitration, that the Firm would repay the loan, and McAllen would get his collateral back. McAllen then pledged certificates of deposit ("CDs") worth $2.25 million to Jefferson Bank as collateral for the Firm's loan. The Firm never repaid the loan (and the Firm and Amberson have now defaulted). McAllen asserted claims against Amberson and the Firm for fraud and breach of fiduciary duty. At the arbitration hearing, Amberson admitted that if he defaulted, and Jefferson Bank seized the certificates, then he would be liable to McAllen for them. *See* 3TR229-30 (Amberson stating "If -- well, I owe Jefferson State $2.2 million, and if -- I don't receive my contingency fee agreement, then -- and I'm not able to pay that loan off, then I think the CDs will be -- I think taken. <u>And I would then owe the money to -- he would step in the shoes of the bank and ultimately I would owe it to him, so yes.</u>") (emphasis added).

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

collateral.  On July 15, 2020, at the request of the parties, the Court signed an Agreed Order

Referring Jefferson Bank Loan Claims Back to Arbitration.  The order states:

> . . . [T]his matter is referred back to Arbitrator Tom Collins solely to address the effect of Jefferson Bank's taking possession of the collateral used to secure the Jefferson Bank loan on alleged damages for James McAllen's claims against Amberson and the Firm concerning the Jefferson Bank loan. This Order and the scope of the referral to arbitration is expressly limited to that single issue and does not give the arbitrator jurisdiction to address, determine, reopen, limit, or expand any other issues, including, without limitation, the liability determinations reflected in the April 30, 2020 Award.

*See* July 14, 2020 Order.   Following this Order, on July 15, 2020, the Arbitrator issued a

supplemental award concerning the Jefferson Bank loan claims (the "Supplemental Award").  *See*

Exhibit 2. Based on stipulations by the parties, the Arbitrator issued the following additional relief

in favor of McAllen:

> In light of the Parties' stipulation, the Arbitrator awards McAllen additional actual damages of $1,750,301.21 against Amberson and the Firm in connection with McAllen's claims concerning the Jefferson Bank loan for the six certificates of deposit, in James McAllen's name, taken by Jefferson Bank.

*Id.*

The McAllen Parties now request the Court confirm both the original Award of April 30,

2020 along with the Supplemental Award of July 15, 2020.  The McAllen Parties attach a revised

draft Final Judgment confirming both awards.  *See* Exhibit 6.

### 1.   The Amberson Parties' ripeness argument fails – assuming they still intend to assert it.

In their motion to vacate – filed before Jefferson Bank seized the certificates of deposit and

the Arbitrator issued the Supplemental Award – the Amberson Parties argued the "Arbitrator

exceeded his authority by <u>deciding the unripe Jefferson Bank loan claim</u>".  *See* Motion to Vacate

at 23.  It is unclear if the Amberson Parties still intend to assert this argument given the subsequent

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

events.   In an abundance of caution, the McAllen Parties explain why the Amberson Parties'

"ripeness" argument fails.

Amberson's assertion that the Jefferson Bank loan claims are unripe is no longer true.  As

he admits, "[a] claim is not ripe unless an injury has occurred or is likely to occur".  *See* Motion

to Vacate at 23.  An injury has occurred.  Following the issuance of the Award, Amberson advised

Jefferson Bank that the neither the Firm nor he would repay the loan.  On June 1, 2020, Jefferson

Bank sent a letter to McAllen informing him that the bank would apply the collateral against the

debt on June 17, 2020.

> The indebtedness in question matured in April and is due and owing but unpaid.
> Jefferson Bank proposed terms for an extension of the maturity date of the loan to July 1, 2020.
> However, you did not deliver the documents you were requested to execute by the bank's
> deadline on May 29th.  Mr. Amberson also failed to do so, instead informing the bank that
> neither he nor the borrower has funds with which to make any payment on the indebtedness.
>
> As a result, Jefferson Bank hereby notifies each of you that it will exercise its rights
> under its agreements with you and apply the certificates of deposit pledged and assigned to it
> against the matured and unpaid debt.  The certificates of deposit will be taken and applied
> against the indebtedness on June 17, 2020.

*See* J. LaField Letter, June 1, 2020, Exhibit 7 (highlight added).[10]  In addition, Jefferson Bank filed

suit against Amberson and the Firm on June 1, 2020 in Bexar County.  *See* Plaintiff's Original

Petition, *Jefferson Bank v. Jon Christian Amberson, P.C. et al*, No. 2020-CI-09897 in the 166th

District Court, Bexar County, Texas, Exhibit 10.  Jefferson Bank sued Amberson and the Firm for

---

[10] Mr. LaField is mistaken when he states McAllen did not deliver the documents requested by the Bank by May 29. In fact, McAllen submitted the executed documents in an overnight delivery envelope supplied by the bank.  *See* Exhibit 6 (photo of UPS Next Day Air envelope addressed and supplied by Jefferson Bank).  McAllen sent the envelope on May 28, 2020.  *See* Exhibit 8 (tracking history).  In addition, on May 28, 2020, counsel for McAllen advised counsel for the Bank that the McAllen was sending the executed documents to the bank for next day delivery. *See* D. Prichard E-mail, May 28, 2020, Exhibit 9.  The bank's counsel acknowledged receipt of this information.  *Id.* The tracking history shows that the envelope arrived at UPS' San Antonio facility at 1:32 a.m. on Friday, May 29, 2020.  *See* Exhibit 8.  But, inexplicably, UPS did not deliver the envelope to Jefferson Bank's San Antonio office until June 1, 2020 at 9:55 a.m.

159888

breach of contract and breach of guaranty. *Id.* at 5. The bank also brought a declaratory judgment action against James and Frances McAllen regarding their pledged certificates of deposit. *Id.* at 6. On June 17, Jefferson Bank took all of the pledged certificates and applied it to Amberson's indebtedness. *See* J. LaField Letter, June 17, 2020, Exhibit 5. McAllen thus lost the certificates of deposit, resulting in damages to him.

McAllen's Jefferson Bank loan claims are ripe, and the Arbitrator issued the Supplemental Award awarding McAllen additional damages of $1,750,301.21. *See* Supplemental Award, Exhibit 2.

Amberson cites *Lower Colorado River Authority v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 927 (5th Cir. 2017) ("*LCRA*") for the proposition that "[e]ven when a claim ripens later during the arbitration proceedings, a court order compelling arbitration of a non-ripe claim is void for lack of subject matter jurisdiction." *See* Motion to Vacate at 22. But Amberson misreads *LCRA*. As the United States Supreme Court has explained, "since ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern." *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974) (emphasis added); *see Buckley v. Valeo*, 424 U.S. 1, 114-17 (1976) (considering facts that occurred after decision of lower tribunal in its ripeness analysis); *see also* 13A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 3532.1 at 136 (2d ed. 1984) ("Ripeness should be available on the basis of all the information available to the court. Intervening events that occur after decision in the lower courts should be included.") (emphasis added).[11]

---

[11] In *LCRA*, the Fifth Circuit acknowledged the high court's ruling in *Blanchette*. *LCRA*, 8585 F.3d at 926. But the Fifth Circuit held a different result was required in its case because "the unique procedural context here is fundamentally different from the typical situation in which an appellate court considers subsequent events when assessing ripeness." *Id.* In *LCRA*, when LCRA requested arbitration, Papalote refused at the outset based on ripeness. *Id.* at 920. When LCRA moved the district court to compel arbitration, Papalote again challenged ripeness. *Id.* The district court referred the dispute to arbitration, and Papalote asked the arbitrator to dismiss LCRA's claim because it was not ripe. *Id.* at 921. The arbitrator ruled on the claim and, three months later, facts changed making the claim

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

*LCRA* considered ripeness under federal law.  Under Texas state law, a claim that was not ripe when filed may become ripe after filing, providing necessary subject matter jurisdiction.  In *Perry v. Del Rio*, 66 S.W.3d 239 (Tex. 2001), the court considered whether ripeness could only be determined at the time the claim was filed or if subsequent events could mature an unripe claim.  The Texas Supreme Court rejected the argument that its prior decisions held that ripeness is determined on the date the case is filed.  *Id.* at 250; *City of Houston v. Commons at Lake Houston, Ltd.*, 587 S.W.3d 494, 500 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (same).  The court explained that "just as a case may become moot after it was filed, it may also ripen."  *Perry*, 66 S.W.3d at 251.  The Texas Supreme Court concluded "that a claim's lack of ripeness when filed is not a jurisdictional infirmity requiring dismissal <u>if the case has matured</u>."  *Id.* at 252 (emphasis added).  The high court held that while the claims at issue were not ripe at the time they were filed, their matured during the pendency of the action and were actionable.  *Id.* at 255.

The Thirteenth Court of Appeals applied *Perry* in *City of Weslaco v. Borne*, 210 S.W.3d 782 (Tex. App.—Corpus Christi 2006, pet. denied).  In *Borne*, the court of appeals determined in its original opinion that the appellees' claims against appellants were not ripe and, thus, sustained the appellants' challenge.  *Id.* at 787.  But while the case was pending on a motion for rehearing, facts emerged showing that the appellees' claims had matured.  Relying on *Perry*, the court of appeals held the subsequent events allowed the appellees' claims to mature, and it rejected its prior conclusion that the claims were unripe.

> In the time between the issuance of our original opinion and the date on which we granted rehearing, appellees supplemented the record with 15 affidavits demonstrating that appellants have taken measures such as

---

ripe.  In comparison to the unique facts of *LCRA*, where Papalote asserted lack of ripeness from the outset, and at every stage of the proceedings, here the Amberson Parties first challenged the ripeness of the Jefferson Bank loan claims in a **post-hearing** brief they submitted on December 19, 2019.  *See* Amberson Parties' Post-Hearing Summary Brief at 11-12.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

disconnecting water and electrical utilities to force appellees from their homes. The supplemented record also shows that eviction proceedings have been commenced by appellants in justice court to remove appellees from Lakeview Park. <u>Based on these facts and circumstances, we conclude that appellants' ripeness arguments to this Court have become untenable</u>. The developments in this case, specifically, the post-appeal efforts to evict appellees from their homes, demonstrate that this case presents a real, live controversy that is not dependent on uncertain or contingent future events. Accordingly, we overrule appellants' issues challenging the ripeness of the claims against them.

*Id.* at 788; *see id.* (citing *Perry*) (emphasis added); *see also In re Keeter*, 134 S.W.3d 250, 256 (Tex. App.—Waco 2003, no pet.) (citing *Perry* and rejecting State's argument that claim was unripe because it had subsequently matured); *Lindig v. City of Johnson City*, 03-08-00574-CV, 2009 WL 3400982, at *10 (Tex. App.—Austin Oct. 21, 2009, no pet.) (citing *Perry* and holding ripeness is not a jurisdictional infirmity when the claim matures during the pendency of the suit).

Claims that are initially unripe can mature. The Jefferson Bank loan claims matured on June 17, 2020 when the bank took McAllen's certificates of deposit and applied them against Amberson's indebtedness. Any ripeness argument became "untenable," and invalid, at that point. *Borne*, 210 S.W.3d at 788. Accordingly, any continuing assertion by the Amberson Parties, that the Arbitrator exceeded his authority in deciding and awarding McAllen damages on the Jefferson Bank loan claims, is without merit, and the Court should confirm both the Award and the Supplemental Award.

**C.      There is no evident mistake in the Arbitrator's Award concerning the $545,000 promissory note that Amberson executed in favor of McAllen but never paid.**

The Amberson Parties next ask the Court to vacate that part of the Award in favor of McAllen on his claim for a $545,000 promissory note against Amberson. Amberson executed the promissory note in favor of McAllen on December 28, 2007. Ex. J4-1. Amberson never paid McAllen the note, and McAllen sued for breach of contract and breach of fiduciary duty. *See* McAllen Parties' Fourth Amended Answer, Counterclaims and Claims against Third-Parties at 29,

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

38; McAllen Parties' Post-Hearing Brief on Issue 4 – the Promissory Notes at 3-16.  The Arbitrator

ruled in favor of McAllen and awarded him the value of the note, and prejudgment interest of

$371,257.00, for a total of $916,257.00.  *See* Award at 36, 52.

The Amberson Parties do not argue the Arbitrator exceeded his authority, under Section

171.088(a), by ruling on the claim for the promissory note.  *See* Motion to Vacate at 24-26.  Rather,

they seek to vacate the award entirely, claiming it contains an "evident miscalculation" because

the amount is duplicative of other damages the Arbitrator awarded with respect to fraudulent

retainers, bonds, and other charges.  *Id.*  Under Section 171.091(a)(1)(A) of the TAA, a court "shall

modify or correct an award if . . . the award contains . . . <u>an evident miscalculation of numbers</u>."

TEX. CIV. PRAC. & REM. CODE § 171.091(a)(1)(A) (emphasis added).  The Amberson Parties'

concede in their motion that "[c]orrection of a miscalculation is permissible where the

miscalculation amounts to a 'mere error of form <u>not affecting the merits of the controversy</u>.'"  *See*

Motion to Vacate at 23 (quoting *Sydow v. Verner, Liipfert, Bernhard, McPherson & Hand,*

*Chartered*, 218 S.W.3d 162, 170 (Tex. App.—Houston [14th Dist.] 2007, no pet.)) (emphasis

added).  They further admit that "evident miscalculation" means "'inadvertence or an error caused

by oversight.'"  *See* Motion to Vacate at 23 (quoting *Vernon E. Faulconer, Inc. v. HFI, Ltd. P'ship*,

970 S.W.2d 36, 40 (Tex. App.—Tyler 1998, no pet.)).  "[D]issatisfaction with the amount of an

award will not support a judicial modification of that award."  *Vernon E. Faulconer, Inc.*, 970

S.W.2d at 40.

Under these standards, the Amberson Parties cannot prevail.  Their argument fails because

the award as to the $545,000.00 promissory note was not an inadvertent error unrelated to the

merits.   Instead, the Amberson Parties' are reasserting the same merits argument that they

presented to the Arbitrator and which he rejected.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

### 1.    The Arbitrator's ruling was not inadvertent; it was intentional.

The Arbitrator's decision to award McAllen recovery on the promissory note was not "inadvertent" so as to qualify as a miscalculation under Section 171.091.  The Amberson Parties argue the Arbitrator "miscalculated" because the award of the $545,000.00 promissory note was "duplicative of other damages" the Arbitrator awarded.  *See* Motion to Vacate.  But the Amberson Parties asserted this very argument in their post-hearing brief on this claim.  *See* Amberson Parties' Post-Hearing Brief Regarding Issue 4 at 1-2.  The Amberson Parties argued that the $545,000 reflected in the note was part of the fraudulent bonds, retainers, and other charges for which Amberson admitted owing.  But the Arbitrator undeniably rejected that argument by awarding McAllen the note and prejudgment interest.  *See* Award at 26.  Having considered the Amberson Parties' argument, and rejected it, the Arbitrator's decision to award McAllen was intentional not inadvertent.  Accordingly, the Amberson Parties cannot rely on Section 171.091(a)(1)(A).

### 2.    The Amberson Parties attempt to reargue the merits of the claims.

Further, the Amberson Parties' argument goes directly to the merits of the claims.  They are seeking to vacate that portion of the award in its entirety, rather than recalculate the amount owed.  The Amberson Parties also reargue the merits of the claim reasserting their argument that the note was unsupported by consideration – an argument they presented to the Arbitrator and which he rejected.  *Compare* Motion to Vacate at 26 (arguing promissory note was unsupported by consideration) *and* Amberson Parties' Post-Hearing Brief Regarding Issue 4 at 1-2 (same) *with* Award at 36 (rejecting lack of consideration argument).[12]  An arbitrator's rejection of a party's arguments as to the merits cannot constitute an "evident miscalculation," under Section 171.091(a), as the court of appeals explained in *Crossmark, Inc.*

---

[12] The McAllen Parties argued, and the Arbitrator agreed, that the tax benefit Amberson got from the promissory note was adequate consideration to support the note.  *See* Award at 36.

27

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

> A court may not overturn an award based upon "evident miscalculation of numbers" unless the mistake is clear, concise, and conclusive from the record.  Crossmark failed to show the arbitrators made any miscalculation or mistake in calculating the award. <u>Rather, the record indicates the arbitrators rejected Crossmark's arguments for a discount based on the language of the non-competition agreements.  The arbitrators' rejection of Crossmark's argument for a discount to present value was not inadvertence or an error caused by oversight; thus it was not an "evident miscalculation of numbers."</u>

*Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App.—Dallas 2004, pet. denied) (citations omitted) (emphasis added).  The Amberson Parties cannot use Section 171.091(a)(1)(A) to reargue the merits of the claim.

### 3.   The Amberson Parties fail to carry their burden of proof.

Finally, even if the Court could consider the Amberson Parties' argument under the guise of Section 171.091(a) (and it cannot), the argument is without merit because the Amberson Parties failed to prove it.  "A party seeking to modify an arbitration award bears the ultimate burden of proving the grounds for modification."  *White v. Siemens*, 369 S.W.3d 911, 916 (Tex. App.—Dallas 2012, no pet.).  In order to prove a miscalculation in the amount of an award, the party alleging the miscalculation must provide the reviewing court with the arbitration record.  *See Prell v. Bowman*, 05-17-00369-CV, 2018 WL 2473850, at *6 (Tex. App.—Dallas June 4, 2018, no pet.) (holding appellants' argument of miscalculation in the award failed because court did not have the arbitration record to review); *Rassouli v. Nat'l Signs Holding, LLC*, No. 14–15–00353–CV, 2017 WL 6374720, at *5 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (rejecting evident miscalculation argument because party did not produce complete arbitration record).  While the Amberson Parties stated they would file the large arbitration record with the Court, as of the date

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

of this response, they have failed to do so.  Accordingly, they cannot prevail on their miscalculation argument as a matter of law.[13]  *Id.*

### III.
### THE COURT SHOULD CONFIRM
### BOTH THE APRIL 30, 2020 AWARD AND THE JULY 15, 2020
### SUPPLEMENTAL AWARD AND ENTER A FINAL JUDGMENT

Section 171.087 of the Texas Arbitration Act, "Confirmation of Award" states that "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award."  As the McAllen Parties have shown, all of the Amberson Parties' grounds for vacating or modifying the Award fail.  Consequently, the Court should now confirm both the April 30, 2020 Award and the July 15, 2020 Supplemental and enter a Final Judgment in favor of the McAllen Parties.  *See* Exhibit 6 (proposed Final Judgment).

### IV.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership respectfully request the Court: (1) deny the Amberson Parties' Motion to Vacate or Modify the Arbitration Award, (2) grant the McAllen Parties' Motion to Confirm Arbitration Award, (3) confirm the April 30, 2020 Award and the July 15, 2020 Supplemental Award in all

---

[13] And even if the Amberson Parties file the arbitration record with this Court, they still will not be able to prove a miscalculation.  They cite to testimony from their expert, Gary Ploetz, which they contend establishes the $545,000 promissory note is duplicative of other damages awarded to the McAllen Parties.  *See* Motion to Vacate at 24-25.  The Amberson Parties are referring to the $1,683,700.00 in actual damages the Arbitrator awarded for fraudulent bonds, retainers, and other charges the Firm billed and collected from the McAllen Parties.  *See* Award at 27.  Those actual damages include 42 separate charges.  *Id.* at 18-27.  But neither the Amberson Parties nor Ploetz established which of those charges are supposedly reflected in the $545,000 promissory note.  Unable to tie the promissory note to specific charges, the Amberson parties' assertion of a duplicative award is rank speculation.

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

respects, and (4) enter a Final Judgment in favor of the McAllen Parties based on both awards.

The McAllen Parties further request any additional relief to which they are entitled.[14]

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP**

---

[14] The McAllen Parties attach a copy of the PowerPoint presentation they plan on using at the July 21, 2020 Zoom hearing. *See* Exhibit 11.

159888

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of McAllen Parties' (1) Response to the Amberson Parties' Motion to Vacate or Modify Arbitration Award, and (2) Reply in Support of the McAllen Parties' Motion to Confirm Arbitration Award was served on July 20, 2020 to the following:

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, TX 78204

_/s/ David M. Prichard_
David M. Prichard

159888

# EXHIBIT 1

**From:** Steve Fleckman <fleckman@fleckman.com>
**Sent:** Tuesday, May 1, 2018 6:34 PM
**To:** David Prichard <dprichard@prichardyoungllp.com>
**Subject:** 3231.001

David, here is a list of highly qualified arbitrators. John Boyce (San Antonio), Michael Wilk (Houston), Tom Collins (Austin), Susan Perin (Houston), and Alice Oliver-Parrott (Houston).

The only one that Chris knows is John Boyce. They occupied separate offices in the same building 15-20 years ago. Chris has had no social or business relationship with John. Chris tells me that he has not even seen John since 1998. The only one I know is Tom Collins, with whom I have no social or professional relationship. He has mediated cases for me on rare occasions over the years; I do not think I have had any dealings with him in the past 5 years or more.

I have talked with John Boyce and he says that he has no conflict. I have not yet talked with any of the others. Chris has not talked with any of them.

This list is subject to each of us vetting them to make sure they have no conflicts or partiality.

Kind regards,
Steve

Steven A. Fleckman
Fleckman & McGlynn, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701

512.476.7900
512.476.7644 fax
www.fleckman.com

=========================================

NOTICE: Pursuant to IRS Circular 230, please be advised that any tax advice contained in this communication (or any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or applicable state or local tax law provisions, or (ii) promoting, marketing, or recommending to another party any tax related matter that may be addressed in this communication.

This email may be confidential and privileged. Please do not disclose this email or any attachments if you are not the intended recipient.  Instead, please contact the sender by email or by calling (512) 476-7900. Statements in this message that do not relate to the official business of this firm are neither given nor endorsed by it.

# EXHIBIT 2

IN THE MATTER OF THE ARBITRATION OF

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, P.C. | § | |
| | § | |
| Claimant, | § | |
| | § | |
| v. | § | ARBITRATION BEFORE |
| | § | THE HONORABLE TOM |
| JAMES ARGYLE MCALLEN, | § | COLLINS |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Respondents, | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | |

## SUPPLEMENTAL AWARD

The Arbitrator issued the Award in this matter on April 30, 2020. The Award addresses the parties' various claims concerning eight general issues. Pursuant to the July 15, 2020 Order of Judge Singleterry, the Arbitrator now issues this Supplemental Award with respect to Issue 6, the Jefferson Bank loan claims.

In the Award, the Arbitrator found that Amberson and his Firm were liable to McAllen for his claims concerning certificates of deposit that McAllen pledged as collateral for the Firm's loan with Jefferson Bank. *See* Award, p. 43-47. However, the Arbitrator did not award any damages because, at the time of the Award, Jefferson Bank had not taken the certificates of deposit. Since the issuance of the Award, there have been new developments. The Parties have stipulated to the following facts:

1.　The Firm has defaulted on its loan with Jefferson Bank.

2.　On June 17, 2020, Jefferson Bank took full possession of the eight certificates of deposit pledged as collateral for the loan (listed at page 45 of the April 30, 2020 Award) and applied them to the Firm's indebtedness.

1

3.  James and Frances McAllen have submitted an affidavit contending the eight certificates of deposit are the community property of James and Frances McAllen.

4.  The value of the six certificates of deposit in James McAllen's name, taken by Jefferson Bank, is $1,750,301.21.[1]

*See* Stipulation, July 16, 2020.


In light of the Parties' stipulation, the Arbitrator awards McAllen additional actual damages of $1,750,301.21 against Amberson and the Firm in connection with McAllen's claims concerning the Jefferson Bank loan for the six certificates of deposit, in James McAllen's name, taken by Jefferson Bank.

SIGNED this ___15th___ day of July, 2020.
6:00 p.m.

Tom Collins, Arbitrator

---

[1] These six certificates of deposit are Certificates of Deposit Nos. 857447, 857449, 857450, 857452, 857453, and 857454. *See* Ex. J6-9. Not included in this amount are the two certificates of deposit in the name of only Frances McAllen: Certificates of Deposit Nos. 857448 and 857451. *Id.*

2

**APPROVED AS TO FORM AND SUBSTANCE:**

*David M. Prichard*

David M. Prichard
David R. Montpas
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

**Counsel for the McAllen Parties**

**APPROVED AS TO FORM ONLY:**

*Jason Davis   with permission DMP*

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, TX 78204

**Counsel for the Amberson Parties**

3

# EXHIBIT 3

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## ORDER REFERRING CLAIMS TO ARBITRATION

On this day the Court considered JON CHRISTIAN AMBERSON'S, JON CHRISTIAN

AMBERSON, P.C.'S and AMBERSON NATURAL RESOURCES LLC'S (collectively the

"AMBERSON PARTIES") Motion to Refer Certain Claims to Arbitration and JAMES

ARGYLE MCALLEN's, EL RUCIO LAND AND CATTLE COMPANY, INC.'s SAN

JUANITO LAND PARTNERSHIP, LTD.'S and MCALLEN TRUST PARTNERSHIP'S

(collectively the "MCALLEN PARTIES") Response and Request to Refer All Claims in this

Lawsuit to Arbitration. After considering the parties' briefing, the Court rules as follows:

1

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS ORDERED that the AMBERSON PARTIES' motion to refer certain claims to arbitration is GRANTED, but that their motion to retain other claims is DENIED.

IT IS FURTHER ORDERED that the MCALLEN PARTIES' request to refer all claims in this lawsuit to arbitration is GRANTED.

IT IS FURTHER ORDERED that all of the claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the arbitration provision.

SIGNED this ___23rd___ day of ~~January~~ April, 2018.

JUDGE LUIS M. SINGLETERRY

2

Electronically Filed
1/11/2018 10:39 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

**APPROVED AS TO FORM AND SUBSTANCE:**

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

3

# EXHIBIT 4

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## ORDER DENYING PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION

On this day the Court considered JON CHRISTIAN AMBERSON's, JON CHRISTIAN

AMBERSON, P.C.'s, and AMBERSON NATURAL RESOURCES LLC's (collectively the

"AMBERSON PARTIES") Motion for Reconsideration or Clarification of the Court's April 23,

2018 Order. After considering the motion and the response and supplement of the MCALLEN

PARTIES, the Court rules as follows:

IT IS ORDERED that the AMBERSON PARTIES' Motion for Reconsideration or

Clarification of the April 23, 2018 Order is DENIED.

155732

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

IT IS FURTHER ORDERED that all claims in this lawsuit, including the MCALLEN PARTIES' claims regarding the Cannon Grove transaction, are referred to arbitration as outlined in the parties' arbitration provision.

IT IS FURTHER ORDERED that this matter is temporarily referred to District Judge Mario E. Ramirez, Jr., of the 332nd District Court, Hidalgo County, solely for the purpose of appointing an arbitrator for this matter pursuant to the arbitration provision in the Fee Agreements of January 25, 2005 between Jon Christian Amberson, P.C. and James A. McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership Ltd., McAllen Trust Partnership and John R. Willis Management Partnership Ltd. Following the appointment of the arbitrator by Judge Ramirez, this Court will continue to preside over this matter.

SIGNED this _____3rd_____ day of _____October_____ 2018.


JUDGE LUIS M. SINGLETERRY

155732

2

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM ONLY:**

Jon Christian Amberson
2135 E. Hildebrand Avenue
San Antonio, Texas 78209

Francisco J. Rodriguez
Law Office of Francisco J. Rodriguez
111 West Nolana Ave., Suite A
McAllen, Texas 78504

Steven A. Fleckman
Zach Wolfe
Andrew J. McKeon
Fleckman & McGlynn, PLLC
5151 Congress Avenue, Suite 1800
Austin, Texas 78701-3503

Charles C. Murray
Atlas, Hall & Rodriguez, LLP
818 Pecan Street
McAllen, Texas 78502

Attorneys for Jon Christian Amberson,
Jon Christian Amberson, P.C., and
Amberson Natural Resources LLC

Electronically Filed
8/30/2018 11:44 AM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

**APPROVED AS TO FORM AND SUBSTANCE:**

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

J. A. "Tony" Canales
State Bar No. 03737000
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405

Attorneys for James Argyle McAllen,
El Rucio Land and Cattle Company, Inc.,
San Juanito Land Partnership, Ltd., and
McAllen Trust Partnership

4

155732

# EXHIBIT 5



**BANKING • MORTGAGES • TRUSTS
WEALTH MANAGEMENT • INSURANCE**

June 17, 2020

James and Frances McAllen
C/O David M. Prichard
Prichard Young, LLP
10101 Reunion Place, Suite 600
San Antonio, Texas 78216

Re:    James and Frances McAllen Jefferson Bank CD Offset Against Loan Number
       7005571014

Dear Mr. and Mrs. McAllen:

    This letter is to inform you that today Jefferson Bank offset your CDs against the Jon
Christian Amberson, P.C. Loan Number 7005571014. The application of the collateral proceeds
is detailed in the attached.

Very truly yours,

John LaField
Senior Executive Vice President

### Jon Christian Amberson PC Collateral Proceeds Allocation as of 6/17/2020

| Total Owing | | | |
|---|---|---|---|
| Unpaid Principal | | | $2,236,741.44 |
| Interest Through 6/17/2020 | | | $17,222.91 |
| **Total Principal and Interest Owing** | | | **$2,253,964.35** |

| Deductions | | | |
|---|---|---|---|
| James & Frances McAllen CDs Offset | Principal | Interest | Principal & Interest |
| #857447 | $250,000.00 | $43.03 | $250,043.03 |
| #857448 | $250,000.00 | $43.03 | $250,043.03 |
| #857449 | $500,000.00 | $86.06 | $500,086.06 |
| #857450 | $250,000.00 | $43.03 | $250,043.03 |
| #857451 | $250,000.00 | $43.03 | $250,043.03 |
| #857452 | $250,000.00 | $43.03 | $250,043.03 |
| #857453 | $250,000.00 | $43.03 | $250,043.03 |
| #857454 | $250,000.00 | $43.03 | $250,043.03 |
| McAllen CD Offset Subtotal | $2,250,000.00 | $387.27 | $2,250,387.27 |

| | | | |
|---|---|---|---|
| **Total Deductions** | | | **$2,250,387.27** |

| | | |
|---|---|---|
| **Total Principal and Interest Owing** | | $2,253,964.35 |
| **Less: Total Deductions** | | ($2,250,387.27) |
| **Remaining Unpaid Interest** | | $3,577.08 |

# EXHIBIT 6

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## FINAL JUDGMENT

Plaintiff is Jon Christian Amberson P.C.  Defendants are James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership.  Third-Parties are Jon Christian Amberson and Amberson Natural Resources LLC.

Jon Christian Amberson P.C. filed this action on January 23, 2015.

The parties asserted various claims, counterclaims, and claims against third-parties.

Jon Christian Amberson P.C. moved that some claims be referred to arbitration, and Defendants requested that all claims be referred to arbitration.

On April 23, 2018, the Court referred all the parties' claims to arbitration.

All the parties agreed to have Tom Collins of Austin, Texas serve as the arbitrator (the "Arbitrator").

1

161087

The Arbitrator conducted the arbitration hearing in San Antonio, Texas.  The hearing concluded on July 26, 2019.  The parties submitted exhibits and witness testimony.

The parties provided two rounds of post-hearing briefing.  The parties submitted their first round of briefing on December 19, 2019, and they submitted their final round of briefing January 24, 2020.

The Arbitrator issued an initial award on April 30, 2020 (the "Award").  The Arbitrator ruled against Jon Christian Amberson, P.C. on all of its claims.  The Arbitrator ruled in favor of James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. on their claims including for fraud, breach of fiduciary duty, violations of the Texas Theft Liability Act, conversion, equitable subrogation, unjust enrichment, breach of contract, and declaratory relief.  The Arbitrator ruled that Jon Christian Amberson, Jon Christian Amberson, P.C. and Amberson Natural Resources LLC engaged in a conspiracy.  The Arbitrator ruled that Jon Christian Amberson, P.C. and Amberson Natural Resources LLC are the alter egos of Jon Christian Amberson.  The Award awarded James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. relief in the form of damages, declaratory relief, and attorneys' fees against Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC.

The Arbitrator issued a supplemental award on July 15, 2020 (the "Supplemental Award") in favor of James Argyle McAllen concerning his claims regarding a loan Jon Christian Amberson, P.C. had with Jefferson Bank.

James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. filed a Motion to Confirm the Award on

2

161087

May 14, 2020.  Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural

Resources LLC filed a Motion to Vacate or Modify Arbitration Award on May 27, 2020.  The

Court held a hearing on the motions on July 21, 2020 and confirmed the Award and the

Supplemental Award in all respects.

The Court incorporates by reference, for all purposes, the Award, the Supplemental Award,

and all of the Court's other prior rulings.  The Court determines that James Argyle McAllen, El

Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust

Partnership, Ltd. are entitled to relief, as set forth in the Award, as follows:

1.  JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP, LTD., collectively, the amount of $3,725,700.00 based on their claims asserted in Part II of the Award (including fraud and breach of fiduciary duty).

2.  JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN the amount of $3,569,210.13 based on his claims asserted in Parts III and IV of the Award (including breach of fiduciary duty).

3.  The Arbitrator DECLARES in connection with the Part V of the Award, the Cannon Grove transaction, that:

    a.  The $4,500,000.00 that JAMES ARGYLE MCALLEN paid to AMBERSON NATURAL RESOURCES, LLC by wire dated March 18, 2009, was a loan;

    b.  The loan is secured by AMBERSON NATURAL RESOURCES, LLC's 90% interest in Cannon Grove; and

    c.  The loan will be deemed repaid and forgiven upon AMBERSON NATURAL RESOURCES, LLC returning its 90% interest to JAMES ARGYLE MCALLEN.

4.  The Arbitrator ORDERS in connection with Part V of the Award, the Cannon Grove transaction, that JON CHRISTIAN AMBERSON, as the sole owner and decision maker of AMBERSON NATURAL RESOURCES, LLC, shall within thirty

161087

3

(30) days of the date of this Award have AMBERSON NATURAL RESOURCES, LLC return to JAMES ARGYLE MCALLEN all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest). However, if within thirty (30) days following the date of this Award Amberson and ANR contest in state court arbitral jurisdiction over McAllen's Cannon Grove claims, then the directive to transfer the interest within thirty (30) days is stayed pending further order of the court.

5.     Pursuant to and incorporating the parties' Stipulation Regarding Attorneys' Fees, JON CHRISTIAN AMBERSON shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP. LTD., and MCALLEN TRUST PARTNERSHIP, LTD., collectively, as the "prevailing party" in this Award, $2,000.000.00 as reasonable and necessary attorneys' fees. JON CHRISTIAN AMBERSON, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. AMBERSON NATURAL RESOURCES, LLC, is jointly and severally liable for $350,000.00 of the total. The Arbitrator further incorporates the terms of the Stipulation Regarding Attorneys' Fees as to future proceedings that (a) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for proceedings in the District Court to confirm or vacate an award; (b) $75,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for an appeal to the Court of Appeals; (c) $30,000.00 is a reasonable and necessary attorneys' fees, that the prevailing party shall be paid by Amberson, for preparing or responding to a Petition for Review to the Supreme Court of Texas; and (d) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for preparing full briefing on the merits to the Supreme Court of Texas.

6.     JON CHRISTIAN AMBERSON shall pay $51,232.11 to JAMES ARGYLE MCALLEN, such amount being the 50% in Arbitrator fees and expenses paid by MCALLEN to the Arbitrator.

7.     All the above sums ordered paid are payable on or before thirty (30) days from the date of this Award.

8.     Interest on any unpaid amounts shall commence thirty (30) days from the date of this Award until paid at the rate of five percent (5%) per annum, simple interest.

161087

The Court also determines that James Argyle McAllen is entitled to further relief as set forth in the Supplemental Award, including: JON CHRISTIAN AMBERSON AND JON CHRISTIAN AMBERSON, jointly and severally, shall pay JAMES ARGYLE MCALLEN the additional sum of $1,750,301.21 based on his claims regarding the Jefferson Bank loan.

The Court now awards as follows:

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the April 30, 2020 Arbitration Award and the July 15, 2020 Supplemental Award are both CONFIRMED in all respects.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson's, Jon Christian Amberson, P.C.'s, and Amberson Natural Resources LLC's Motion to Vacate or Modify Arbitration Award is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson, P.C. TAKES NOTHING on all its claims against James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd., collectively, have and recover actual damages in the amount of $3,725,700.00 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen have and recover additional actual damages in the amount of $3,569,210.13 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen have and recover additional actual damages in the amount of $1,750,301.21 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

161087

IT IS FURTHER ORDERED, ADJUDGED, DECREED, and DECLARED that:

a.  The $4,500,000.00 that James Argyle McAllen paid to Amberson Natural Resources, LLC by wire dated March 18, 2009, was a loan;

b.  The loan is secured by Amberson Natural Resources, LLC's 90% interest in Cannon Grove; and

c.  The loan will be deemed repaid and forgiven upon Amberson Natural Resources, LLC returning its 90% interest to James Argyle McAllen.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson, as the sole owner and decision maker of Amberson Natural Resources, LLC, shall within thirty (30) days of the date of this Final Judgment have Amberson Natural Resources, LLC return to James Argyle McAllen all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest).

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd., collectively, have and recover reasonable and necessary attorneys' fees in the amount of $2,000,000.00 from Jon Christian Amberson. Jon Christian Amberson, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. Amberson Natural Resources, LLC, is jointly and severally liable for $350,000.00 of this $2,000,000.00 amount.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust

6

Partnership, Ltd. are awarded reasonable and necessary appellate attorneys' fees from Jon Christian Amberson as follows:

    (a)    $25,000.00 as reasonable and necessary attorneys' fee for proceedings in the District Court to confirm or vacate an award;

    (b)    $75,000.00 as reasonable and necessary attorneys' fee for an appeal to the Court of Appeals;

    (c)    $30,000.00 as reasonable and necessary attorneys' fees for preparing or responding to a Petition for Review to the Supreme Court of Texas; and

    (d)    $25,000.00 is a reasonable and necessary attorneys' fee for preparing full briefing on the merits to the Supreme Court of Texas.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, have and recover the sum of $51,232.11 from Jon Christian Amberson, such amount being the 50% in Arbitrator fees and expenses paid by James Argyle McAllen to the Arbitrator.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that interest on any unpaid amounts above shall commence thirty (30) days from the date of the Award, until paid, at the rate of five percent (5%) per annum, simple interest.

The Clerk of the Court is directed to issue all writs necessary for execution of this Final Judgment.

All relief requested by any party and not granted in this Final Judgment is DENIED.

This Final Judgment finally disposes of all parties and all claims and is appealable.

SIGNED, ENTERED and ORDERED this _____ day of _____ 2020.

                        _____
                        HONORABLE LUIS M. SINGLETERRY

**APPROVED AS TO FORM AND SUBSTANCE:**

David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP**

**APPROVED AS TO FORM ONLY:**

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, TX 78204

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.,
JON CHRISTIAN AMBERSON, AND AMBERSON
NATURAL RESOURCES LLC**

8

161087

# EXHIBIT 7



BANKING • MORTGAGES • TRUSTS
WEALTH MANAGEMENT • INSURANCE

June 1, 2020

*Via Overnight Delivery*

Mr. James McAllen
Mrs. Frances McAllen
315 E. Monte Cristo Road
Edinburg, Texas 78541

Re:    Notice of Intention to Apply
Collateral

Dear Mr. and Mrs. McAllen:

    To secure payment of the indebtedness of Jon Christian Amberson, P.C. to Jefferson Bank, you executed certain Assignments of Deposit Accounts and Account Pledge Security Agreements in favor of Jefferson Bank. These agreements pertain to an indebtedness that is evidenced by a Revolving Line of Credit Note dated July 14, 2013, as thereafter renewed, extended, and modified.

    The indebtedness in question matured in April and is due and owing but unpaid. Jefferson Bank proposed terms for an extension of the maturity date of the loan to July 1, 2020. However, you did not deliver the documents you were requested to execute by the bank's deadline on May 29th. Mr. Amberson also failed to do so, instead informing the bank that neither he nor the borrower has funds with which to make any payment on the indebtedness.

    As a result, Jefferson Bank hereby notifies each of you that it will exercise its rights under its agreements with you and apply the certificates of deposit pledged and assigned to it against the matured and unpaid debt. The certificates of deposit will be taken and applied against the indebtedness on June 17, 2020.

    At that date, Jefferson Bank will calculate the then-outstanding amount of principal, pre-maturity and post-maturity interest, and costs of collection, including attorneys' fees, due from Jon Christian Amberson, P.C. If that amount is less than the amount of principal and accrued-but-unpaid interest under the certificates of deposit, the balance will be paid to you promptly.

    Jefferson Bank has brought suit against the borrower and guarantor in Bexar County, Texas. Because your agents asserted that the bank's security interest in the collateral terminated when the loan matured, you each have been named in that suit so that the bank can obtain a court's ruling on that assertion. If you no longer take that position and do not oppose the application of the collateral as agreed in the loan documents, please let me know so we can arrange to dismiss the claims against you after we apply the collateral against the loan balance.

This letter is sent without prejudice to any of Jefferson Bank's rights and remedies under its agreements relating to this loan and Texas law, all of which are reserved.

If there are questions regarding the foregoing, please have your counsel, David Prichard and Richard Leshin, contact our counsel, J.D. Pauerstein.

Very truly yours,

John LaField

cc:     David Prichard, Esq.
        Richard Leshin, Esq.
        J.D. Pauerstein, Esq.

# EXHIBIT 8



JAMES A MCALLEN
9563M31960
MCALLEN RANCH
20820 PM 1017
LINIT TX 78163

1.0 LBS   LTR        1 OF 1        4/29/2020

RS

SHIP TO:
BEA VELASCO
2107367814
JEFFERSON BANK
SUITE 100
1777 NE LOOP 410
SAN ANTONIO  TX 78217

TX 782 9-04

UPS NEXT DAY AIR                    1
TRACKING #: 1Z X98 798 84 9879 6731

BILLING: P/P
DESC: *56935203*
RETURN SERVICE

Reference No.1: NEBC LENDING 5-700



# Tracking Details

1ZX987988498796731
**Updated:** 06/02/2020 10:43 A.M. EST

# Delivered

○                                                                    ✓

**Delivered On**

## Monday
## 06/01/2020

**Delivery Time**

## at 9:55 A.M.

| Send Updates |
|:---:|

**Returned To**
SAN ANTONIO, TX, US

**Left At:** Office
**Received By:** HOBBS
Proof of Delivery

**Ask UPS**

We care about the security of your package. Log in () to get more details about your delivery.

## Shipment Progress ^

| | Overview | | Detailed View | |
|---|---|---|---|---|

| | | Date | Location | Activity |
|---|---|---|---|---|
| ⊘ | **Delivered** | **06/01/2020 9:55 A.M.** | **SAN ANTONIO, TX, US** | **DELIV-ERED** <br> **Proof of Delivery** |
| ⊘ | Out for Delivery | 06/01/2020  8:45 A.M. | San Antonio, TX, United States | Out For De-livery To-day |
| | | 05/30/2020  8:04 A.M. | San Antonio, TX, United States | Destination Scan |
| | | 05/30/2020  7:20 A.M. | San Antonio, TX, United States | Destination Scan |
| | | 05/29/2020  1:32 A.M. | San Antonio, TX, United States | Arrival Scan |
| | | 05/28/2020  9:14 P.M. | Mc Allen, TX, United States | Origin Scan |

**Ask UPS**

| | | Date | Location | Activity |
|---|---|---|---|---|
| | | 05/28/2020  9:06 P.M. | Mc Allen, TX, United States | Departure Scan |
| | Shipped | 05/28/2020  6:01 P.M. | Mc Allen, TX, United States | Pickup Scan |
| | Label Created | 04/29/2020  1:28 P.M. | United States | Order Processed: Ready for UPS |

## Shipment Details  ⌃

**Service**
UPS Next Day Air® [↗]
(https://www.ups.com/content/us/en/shipping/time/service/next_day.html)

**Weight**
1.00 LBS

**Shipped / Billed On**
04/29/2020

**Shipment Category**
Package

Show Less  —

## 🔍 Track

Help [↗]

| |
|---|

| Track |
|---|

**Ask UPS**

Copyright ©1994- 2020 United Parcel Service of America, Inc. All rights reserved.

**Ask UPS**

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**

1ZX987988498796731

**Weight**

1.00 LBS

**Service**

UPS Next Day Air®

**Shipped / Billed On**

04/29/2020

**Delivered On**

06/01/2020 9:55 A.M.

**Delivered To**

SAN ANTONIO, TX, US

**Received By**

HOBBS

**Left At**

Office

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 06/02/2020 10:43 A.M. EST

# EXHIBIT 9

**From:** J.D. Pauerstein <JPauerstein@rpsalaw.com>
**Sent:** Thursday, May 28, 2020 2:56 PM
**To:** David Prichard <dprichard@prichardyoungllp.com>
**Cc:** Richard Leshin <rleshin@welderleshin.com>
**Subject:** Re: Jefferson Bank--Amberson/McAllen Loan Transactions

Thank you, David. I will pass that along.

Best,

J.D. Pauerstein
Rosenthal Pauerstein
Sandoloski Agather LLP

210-244-8830
210-215-1106 (mobile)
jpauerstein@rpsalaw.com

**From:** David Prichard <dprichard@prichardyoungllp.com>
**Date:** Thursday, May 28, 2020 at 2:44 PM
**To:** "J. Pauerstein" <JPauerstein@rpsalaw.com>
**Cc:** Richard Leshin <rleshin@welderleshin.com>
**Subject:** RE: Jefferson Bank--Amberson/McAllen Loan Transactions

1

Mr. And Mrs. McAllen have signed the collateral extension documents and are returning them to Bea Velasco at Jefferson Bank. It is being sent in the overnight envelope provided to them by Ms. Velasco.

Please notify you client of this information. Thank you.

David M. Prichard
Prichard Young, LLP
10101 Reunion Place, Suite 600
San Antonio, Texas  78216
Telephone:  210.477.7401
Facsimile:  210. 477.7451
Email:  dprichard@prichardyoungllp.com

**CONFIDENTIAL**
**ATTORNEY CLIENT PRIVILEGED AND WORK PRODUCT PRIVILEGED**
The contents of this email and all attachments are intended as confidential communications protected by attorney-client privilege.  If you are not the intended recipient of this email, please immediately delete it and any attachments to it.  If you received this email in error, please contact David Prichard (dprichard@prichardyoungllp.com).

# EXHIBIT 10

FILED
6/1/2020 7:59 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Martha Medellin

## 2020CI09897

### CAUSE NO. _____

| | | |
|---|---|---|
| **JEFFERSON BANK,** | § | **IN THE DISTRICT COURT,** |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| | § | |
| **v.** | § | ___ 166th **JUDICIAL DISTRICT,** |
| | § | |
| **JON CHRISTIAN AMBERSON, P.C.,** | § | |
| **ET AL.,** | § | |
| | § | |
| **DEFENDANTS.** | § | **BEXAR COUNTY, TEXAS.** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Jefferson Bank, as its Original Petition against Defendants, states the following:

### I.
### PRELIMINARY ALLEGATIONS

1.     Jefferson Bank intends that discovery be conducted under Level 3 pursuant to Texas Rule of Civil Procedure 190 and moves for entry of a docket control order by the Court.

2.     This suit is brought to collect on a promissory note and related contracts, including a personal guaranty and other agreements giving Jefferson Bank a security interest in certain collateral to secure the indebtedness represented by the promissory note.

3.     Pursuant to Texas Rule of Civil Procedure 47, Jefferson Bank seeks monetary relief within the jurisdictional limits of this Court of more than $1,000,000.

4.     Jefferson Bank also seeks declaratory relief pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code.

## II.
## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction because this is a breach of contract action asserting an amount in controversy that is within this Court's jurisdictional limits.  In addition, the Court has jurisdiction pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code.

6.     Venue is proper in Bexar County because this suit concerns contracts performable by Defendants in this county and because all or a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this county.  In addition, some or all of the parties agreed to venue in Bexar County in certain contracts that form the basis of Jefferson Bank's claims.

## III.
## PARTIES

7.     Jefferson Bank is a bank chartered under the law of Texas.  Its principal place of business is located at 1777 Northeast Loop 410, San Antonio, TX 78217.

8.     Defendant Jon Christian Amberson P.C. is a professional corporation organized under the laws of the State of Texas, with its principal place of business located at 2135 E. Hildebrand, San Antonio, Texas 78209.  It may be served with process by delivering the citation and a copy of this Original

2

Petition to its president, Jon Christian Amberson, at that address or wherever he may be found.

9.      Defendant Jon Christian Amberson is an individual who resides in Texas.  His office address is 2135 E. Hildebrand, San Antonio, Texas 78209.  Jon Christian Amberson may be served with process by delivering the citation and a copy of this Original Petition to him at that address or wherever he may be found.

10.      Defendants James and Frances McAllen reside in Texas.  Their address is 315 E. Monte Cristo Road, Edinburg, Texas 78541 and they may be served with process by delivering the citation and a copy of this Original Petition to them at that address or wherever they may be found.

## IV.
## FACTUAL BACKGROUND

11.      Jefferson Bank loaned certain sums to Jon Christian Amberson, P.C.  The payment when due of the indebtedness was guaranteed by Jon Christian Amberson, individually, and secured by collateral pledged by James and Frances McAllen.  To memorialize these obligations:

      a. Jon Christian Amberson, P.C. executed and delivered to Jefferson Bank a written promissory note, of which Jefferson Bank is the owner and holder;

      b. Jon Christian Amberson executed and delivered to Jefferson Bank a written guaranty agreement, of which Jefferson Bank is the owner and holder; and

      c. Jon Christian Amberson, James and Francis McAllen, or all of them, executed and delivered to Jefferson Bank various collateral

3

pledge agreements and assignments of deposit accounts (together, the "Collateral Pledge Agreements").

12.  The loan to Jon Christian Amberson, P.C. came due in April 2020. Neither the borrower nor the guarantor paid the loan when due. Accordingly, the note and the guaranty are in default and the indebtedness is matured and past due.

13.  Since the indebtedness became due and payable, the borrower and guarantor have informed Jefferson Bank that they lack sufficient funds to honor their obligations to repay the indebtedness.

14.  Jefferson Bank is entitled to recover from Jon Christian Amberson, P.C. and Jon Christian Amberson all principal and interest that was due and owing on the maturity date of the indebtedness, interest on all such sums at the default rate of interest in the parties' agreements from the maturity date to the date of payment, and its attorneys' fees, costs, and expenses.

15.  Pursuant to the Collateral Pledge Agreements, Jefferson Bank is entitled to take the certificates of deposit pledged and assigned to the bank as collateral for the indebtedness and to apply the deposited funds against the debt.

16.  Mr. and Mrs. McAllen, through an agent, informed Jefferson Bank that they contend the security interest created under the documents they signed to secure the indebtedness somehow terminated or expired on the maturity of the loan. This assertion has given rise to a justiciable controversy between the parties to the Collateral Pledge Agreements as to their rights and obligations.

4

## V.
## CAUSES OF ACTION

17.     All preceding paragraphs of this pleading are incorporated herein by reference as if set forth verbatim.

**A.     Breach of Contract – Promissory Note**

18.     The promissory note executed by Jefferson Bank and Jon Christian Amberson, P.C. is a valid and enforceable contract.  Jefferson Bank performed its obligations under the promissory note.  By failing to pay the indebtedness on or before the maturity date, Jon Christian Amberson, P.C. breached the terms of its promissory note.

19.     Jon Christian Amberson, P.C. is liable to Jefferson Bank for all principal and interest due and outstanding on the maturity date of the indebtedness; interest at the post-default interest rate set forth in the promissory note; and the reasonable attorneys' fees, costs, and expenses incurred by Jefferson Bank in collecting the indebtedness and enforcing the obligations of the borrower, the guarantor, and the pledgors of the collateral.  Jefferson Bank seeks judgment against Jon Christian Amberson, P.C. for all such sums.

**B.     Breach of Guaranty**

20.     Jon Christian Amberson, individually, unconditionally guaranteed the payment when due of the indebtedness represented by the professional corporation's promissory note.  Jefferson Bank is the owner of Mr. Amberson's guaranty and has performed its obligations pursuant to the underlying promissory note and the guaranty agreement.

21.     Despite the maturity of the indebtedness, Jon Christian Amberson has not paid the indebtedness pursuant to his guaranty.  He therefore has breached the guaranty and is jointly and severally liable for all sums owed to Jefferson Bank by Jon Christian Amberson, P.C.  Jefferson Bank seeks judgment against Jon Christian Amberson, individually, for all such sums.

**C.     Declaratory Judgment – Collateral Pledge Agreements**

22.     Pursuant to the Collateral Pledge Agreements, James and Frances McAllen pledged and assigned to Jefferson Bank certain certificates of deposit as security for the obligations of Jon Christian Amberson, P.C. to Jefferson Bank under its promissory note.  Under their agreements with Jefferson Bank, it can take possession of the collateral and apply it against the indebtedness at any time after a default, with or without bringing any legal action.

23.     Because the indebtedness was not repaid when the promissory note matured, a default has occurred.  Jefferson Bank therefore is entitled to take the collateral and apply it to the indebtedness after giving fifteen days written notice to Mr. and Mrs. McAllen.  Notice is being given to Mr. and Mrs. McAllen contemporaneously with the filing of this action and Jefferson Bank will apply the collateral against the indebtedness at the end of the fifteen-day notice period.

24.     Mr. and Mrs. McAllen, through an agent, asserted to one or more officers of Jefferson Bank that its security interest in the collateral terminated or expired when the note matured.  Jefferson Bank contends that the Collateral Pledge Agreements and its rights thereunder continue until all of the indebtedness secured by the collateral is repaid.

25. The McAllens' contrary position has given rise to a real and justiciable controversy as to Jefferson Bank's rights and remedies under the parties' written agreements, the enforceability of those agreements, and the lawful exercise of Jefferson Bank's rights and remedies thereunder.

26. Jefferson Bank, pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, requests that the Court resolve that controversy and enter judgment declaring that:

    a. Jefferson Bank's security interest in, and the assignment of, the collateral did not terminate or cease to exist when the indebtedness matured and became due and owing;

    b. The Collateral Pledge Agreements remained after the maturity date and are valid, binding, and enforceable in accordance with their provisions; and

    c. Jefferson Bank is and was at all material times entitled to exercise its rights and remedies under Texas law and the Collateral Pledge Agreements by taking possession of the collateral and applying it against the secured indebtedness.

## VI.
## REQUEST FOR ATTORNEYS' FEES

27. Pursuant to the parties' agreements and Texas law, Jefferson Bank is entitled to recover from Defendants, jointly and severally, a reasonable fee for the services of its attorneys with respect to the collection of the indebtedness and the prosecution of this suit, along with all costs of court and expenses.

28.     Jefferson Bank seeks recovery of all reasonable attorneys' fees, taxable costs, and recoverable expenses it incurs in connection with all proceedings in the district courts, in the Court of Appeals, and in the Supreme Court of Texas and requests judgment against Defendants for all such amounts.

## VII.
## REQUEST FOR DISCLOSURES

29.     Jefferson Bank requests that each Defendant disclose the information and material described in Texas Rule of Civil Procedure 194.2 within 50 days of the service of this request.

## VIII.
## CONDITIONS PRECEDENT

30.     Pursuant to Texas Rule of Civil Procedure 54, Jefferson Bank avers that all conditions precedent to the filing of this action and the granting of the relief requested herein have been performed or have occurred.   All notices required by the parties' agreements or otherwise required by law have been given or are waived in Defendants' agreements.

## IX.
## PRAYER FOR RELIEF

For the reasons stated, Jefferson Bank respectfully requests that Defendants be cited to appear and answer herein and that the Court thereafter award Jefferson Bank:

a.     Judgment against Jon Christian Amberson, P.C. and Jon Christian Amberson, jointly and severally, for all sums due

8

and owing under the promissory note on the maturity date thereof;

b.  Judgment against James McAllen and Frances McAllen for declaratory relief as alleged above;

c.  Judgment against Defendants, jointly and severally, for its reasonable attorneys' fees, costs of court, and expenses in connection with all proceedings before this Court, the Court of Appeals, and the Supreme Court of Texas;

d.  Pre-judgment and post-judgment interest at the highest rates allowed by law and the parties' agreements on all sums awarded; and

e.  Any other or further relief, at law or in equity, to which it justly is entitled.

Respectfully submitted,

*/s/ Jonathan D. Pauerstein*
Jonathan D. Pauerstein
State Bar No. 15637500
jpauerstein@rpsalaw.com
Cassidy Daniels
State Bar No. 24097567
cdaniels@rpsalaw.com
ROSENTHAL PAUERSTEIN
SANDOLOSKI AGATHER LLP
755 E. Mulberry Ave., Suite 200
San Antonio, Texas 78212
Telephone: (210) 225-5000
Facsimile: (210) 354-4034

Attorneys for Plaintiff Jefferson Bank

# EXHIBIT 11

# *Amberson*
# *v.*
# *McAllen*

## July 21, 2020 Hearing
## McAllen's Motion to Confirm
## Arbitration Award and Enter Final Judgment

CANALES & SIMONSON, P.C.
ATTORNEYS AT LAW

PREPARED BY


1

# Background

- Amberson sued his former client and father-in-law for a $26 million contingency fee after billing and collecting millions in hourly fees.

-McAllen filed counterclaims and third-party claims against Amberson and his firm for fraud, breach of fiduciary duty, theft, and conversion concerning millions of dollars in fraudulent bonds, retainers, and other charges by Amberson.

-McAllen filed additional claims concerning the related Cannon Grove transaction and other transactions.

2

# Arbitration Referral

- Amberson moved to compel arbitration.

- The Court referred all the parties' claims to arbitration, including the Cannon Grove claims – *twice*.

-April 23, 2018 Order (Ex. 3) – Refers all claims to arbitration.

-October 3, 2018 (Ex. 4) – Denies Amberson's motion to reconsider, as to Cannon Grove, and again refers all claims to arbitration.

- Amberson then suggests Tom Collins as arbitrator. (Ex. 1)

# The Arbitration Hearing

-June/July 2019 – Over two weeks long.

- Largest arbitration in the Arbitrator's career.

-16 Live witnesses.

-380 Exhibits; thousands of pages of documents.

- Two rounds of post-hearing briefing – 36 total post-hearing briefs on eight issues.

4

# April 30, 2020 Award

-The Arbitrator rejected Amberson's claim for a contingency fee, in part because of his **fraud** and **breach of fiduciary duty**.

-Awarded McAllen $3,725,700 for **fraudulent** bonds, retainers, and other charges Amberson billed and collected from McAllen.

- Awarded McAllen additional $3,569,210.13 for a separate **breach of fiduciary duty** claim and breach of promissory note.

-Ruled in favor of McAllen on his Cannon Grove claims and ordered Amberson to return his interest in Cannon Grove to McAllen.

-Awarded McAllen $2 million in attorneys' fees.

-Found Amberson, his firm, and ANR are alter egos of each other and engaged in a conspiracy against McAllen.

5

# July 15, 2020 Supplemental Award

-McAllen asserted claims against Amberson regarding his loan with Jefferson Bank.

-McAllen pledged CDs worth $2.25 million as collateral for Amberson's loan.

-In the initial Award, the Arbitrator determined Amberson would be liable but that McAllen still owned the CDs.

-After the Award, and Amberson's Motion to Vacate, the Bank seized the CDs because Amberson defaulted on the loan.

-The Court referred the Jefferson Bank loan claims to the Arbitrator.

-The Arbitrator issued a Supplemental Award on July 15, 2020 — awarding McAllen an additional $1,750,301.21 in damages.

# Confirm v. Vacate Award

-McAllen moves to confirm the Award and Supplemental Award.

-Amberson moves to vacate only three parts of the Award:

  ◦ - Cannon Grove claims,

  ◦ - Jefferson Bank loan claims, - ???

  ◦ - The $545,000 promissory note claim.

7

# What Amberson does not Challenge

-Amberson does not challenge the Arbitrator's findings that Amberson committed rampant fraud and breached his fiduciary duties.

-The Arbitrator concluded that 42 separate charges, billed and collected by Amberson were fraudulent.

- Amberson billed and collected from McAllen $500,000 for bonds supposedly ordered by district courts (including Hidalgo County District Judge Rose Reyna) that were never ordered.

-Amberson billed and collected from McAllen millions in expert "retainers" for experts who never requested or received them.

-James McCormack (former State Bar General Counsel) stated he has never seen a lawyer commit so much fraud over so many years.

# The Cannon Grove Claims

-Amberson complains the Arbitrator exceeded his authority by deciding the Cannon Grove claims.

-The Arbitrator acted within the authority this Court conferred to him when it **twice** ruled that all the parties' claims would be arbitrated.

-Amberson's complaint is with this Court's prior orders, but he waived any complaint by failing to seek mandamus review.  *See Gumble* and *Koopman*.

- ANR and Amberson are bound by the arbitration provision.  This Court was presented with evidence of their alter ego status; the Award confirms this status.

-The Cannon Grove claims were inextricably intertwined with McAllen's other claims.

# The Jefferson Bank Loan Claims

-Amberson sought to vacate part of the April 30, 2020 Award concerning the Jefferson Bank loan claims, even though the Arbitrator awarded no damages.

-The Arbitrator found the claims were not ripe because Jefferson Bank had not yet foreclosed on the collateral McAllen provided for Amberson's loan.

- The Arbitrator offered to decide damages if and when Amberson defaulted on the loan, and the bank took McAllen's collateral.

- Jefferson Bank took all of the collateral on June 17, 2020; the Court referred the claim back to the Arbitrator; and he issued the Supplemental Awards of $1,750301.21.

-If Amberson still argues ripeness, it fails.  Claims not ripe when filed can become ripe during the case.  *Blanchette* (U.S. Sup. Ct.) and *Perry* (Tex. S. Ct.).

10

# The $545,000 Promissory Note Claim

-The Arbitrator found Amberson breached a promissory note to McAllen and awarded him the full $545,000.

-Amberson seeks to vacate this award, arguing "evident miscalculation" under Section 171.091 of the Texas Arbitration Act.

-Evident miscalculation must be inadvertent, and it cannot be based on the merits of the claim.

-The award was not inadvertent or accidental; the Arbitrator considered Amberson's arguments and rejected them.

-Amberson's challenge seeks to reargue the merits of the claim, including lack of consideration, that the Arbitrator rejected.

-Amberson cannot carry his burden of proof.

# Confirm the Award and Supplemental Award

- Section 171.087 requires confirmation of an arbitration award unless grounds are offered to vacate or modify it.

-All of Amberson's arguments for vacating or modifying parts of the Award fail.

-The Court should deny Amberson's motion to vacate and should completely confirm the April 30, 2020 Award and the July 15, 2020 Supplemental Award.

# Enter Final Judgment for McAllen

-Following confirmation of the Award and Supplemental Award, the Court should enter a Final Judgment in favor of McAllen.

-McAllen submits a proposed form of Final Judgment for entry. *See* McAllen Response to Motion to Vacate, Ex. 6.

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

NO. C-0340-15-A

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON P.C. | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 92ND JUDICIAL DISTRICT |
| | § | |
| JAMES ARGYLE MCALLEN, | § | |
| EL RUCIO LAND AND CATTLE | § | |
| COMPANY, INC., SAN JUANITO | § | |
| LAND PARTNERSHIP, LTD. and | § | |
| MCALLEN TRUST PARTNERSHIP, | § | |
| LTD., | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JON CHRISTIAN AMBERSON AND | § | |
| AMBERSON NATURAL RESOURCES | § | |
| LLC | § | |
| | § | |
| Third-Parties. | § | HIDALGO COUNTY, TEXAS |

## FINAL JUDGMENT

Plaintiff is Jon Christian Amberson P.C. Defendants are James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership. Third-Parties are Jon Christian Amberson and Amberson Natural Resources LLC.

Jon Christian Amberson P.C. filed this action on January 23, 2015.

The parties asserted various claims, counterclaims, and claims against third-parties.

Jon Christian Amberson P.C. moved that some claims be referred to arbitration, and Defendants requested that all claims be referred to arbitration.

On April 23, 2018, the Court referred all the parties' claims to arbitration.

All the parties agreed to have Tom Collins of Austin, Texas serve as the arbitrator (the "Arbitrator").

161087

1

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

The Arbitrator conducted the arbitration hearing in San Antonio, Texas. The hearing concluded on July 26, 2019. The parties submitted exhibits and witness testimony.

The parties provided two rounds of post-hearing briefing. The parties submitted their first round of briefing on December 19, 2019, and they submitted their final round of briefing January 24, 2020.

The Arbitrator issued an initial award on April 30, 2020 (the "Award"). The Arbitrator ruled against Jon Christian Amberson, P.C. on all of its claims. The Arbitrator ruled in favor of James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. on their claims including for fraud, breach of fiduciary duty, violations of the Texas Theft Liability Act, conversion, equitable subrogation, unjust enrichment, breach of contract, and declaratory relief. The Arbitrator ruled that Jon Christian Amberson, Jon Christian Amberson, P.C. and Amberson Natural Resources LLC engaged in a conspiracy. The Arbitrator ruled that Jon Christian Amberson, P.C. and Amberson Natural Resources LLC are the alter egos of Jon Christian Amberson. The Award awarded James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. relief in the form of damages, declaratory relief, and attorneys' fees against Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC.

The Arbitrator issued a supplemental award on July 15, 2020 (the "Supplemental Award") in favor of James Argyle McAllen concerning his claims regarding a loan Jon Christian Amberson, P.C. had with Jefferson Bank.

James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. filed a Motion to Confirm the Award on

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

May 14, 2020. Jon Christian Amberson, Jon Christian Amberson, P.C., and Amberson Natural Resources LLC filed a Motion to Vacate or Modify Arbitration Award on May 27, 2020. The Court held a hearing on the motions on July 21, 2020 and confirmed the Award and the Supplemental Award in all respects.

The Court incorporates by reference, for all purposes, the Award, the Supplemental Award, and all of the Court's other prior rulings. The Court determines that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd. are entitled to relief, as set forth in the Award, as follows:

1. JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP, LTD., collectively, the amount of $3,725,700.00 based on their claims asserted in Part II of the Award (including fraud and breach of fiduciary duty).

2. JON CHRISTIAN AMBERSON and JON CHRISTIAN AMBERSON, P.C., jointly and severally, shall pay to JAMES ARGYLE MCALLEN the amount of $3,569,210.13 based on his claims asserted in Parts III and IV of the Award (including breach of fiduciary duty).

3. The Arbitrator DECLARES in connection with the Part V of the Award, the Cannon Grove transaction, that:

   a. The $4,500,000.00 that JAMES ARGYLE MCALLEN paid to AMBERSON NATURAL RESOURCES, LLC by wire dated March 18, 2009, was a loan;

   b. The loan is secured by AMBERSON NATURAL RESOURCES, LLC's 90% interest in Cannon Grove; and

   c. The loan will be deemed repaid and forgiven upon AMBERSON NATURAL RESOURCES, LLC returning its 90% interest to JAMES ARGYLE MCALLEN.

4. The Arbitrator ORDERS in connection with Part V of the Award, the Cannon Grove transaction, that JON CHRISTIAN AMBERSON, as the sole owner and decision maker of AMBERSON NATURAL RESOURCES, LLC, shall within thirty

161087

3

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

(30) days of the date of this Award have AMBERSON NATURAL RESOURCES, LLC return to JAMES ARGYLE MCALLEN all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest). However, if within thirty (30) days following the date of this Award Amberson and ANR contest in state court arbitral jurisdiction over McAllen's Cannon Grove claims, then the directive to transfer the interest within thirty (30) days is stayed pending further order of the court.

5.     Pursuant to and incorporating the parties' Stipulation Regarding Attorneys' Fees, JON CHRISTIAN AMBERSON shall pay to JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND PARTNERSHIP. LTD., and MCALLEN TRUST PARTNERSHIP, LTD., collectively, as the "prevailing party" in this Award, $2,000.000.00 as reasonable and necessary attorneys' fees. JON CHRISTIAN AMBERSON, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. AMBERSON NATURAL RESOURCES, LLC, is jointly and severally liable for $350,000.00 of the total. The Arbitrator further incorporates the terms of the Stipulation Regarding Attorneys' Fees as to future proceedings that (a) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for proceedings in the District Court to confirm or vacate an award; (b) $75,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for an appeal to the Court of Appeals; (c) $30,000.00 is a reasonable and necessary attorneys' fees, that the prevailing party shall be paid by Amberson, for preparing or responding to a Petition for Review to the Supreme Court of Texas; and (d) $25,000.00 is a reasonable and necessary attorneys' fee, that the prevailing party shall be paid by Amberson, for preparing full briefing on the merits to the Supreme Court of Texas.

6.     JON CHRISTIAN AMBERSON shall pay $51,232.11 to JAMES ARGYLE MCALLEN, such amount being the 50% in Arbitrator fees and expenses paid by MCALLEN to the Arbitrator.

7.     All the above sums ordered paid are payable on or before thirty (30) days from the date of this Award.

8.     Interest on any unpaid amounts shall commence thirty (30) days from the date of this Award until paid at the rate of five percent (5%) per annum, simple interest.

161087

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

The Court also determines that James Argyle McAllen is entitled to further relief as set forth in the Supplemental Award, including: JON CHRISTIAN AMBERSON AND JON CHRISTIAN AMBERSON, jointly and severally, shall pay JAMES ARGYLE MCALLEN the additional sum of $1,750,301.21 based on his claims regarding the Jefferson Bank loan.

The Court now awards as follows:

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the April 30, 2020 Arbitration Award and the July 15, 2020 Supplemental Award are both CONFIRMED in all respects.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson's, Jon Christian Amberson, P.C.'s, and Amberson Natural Resources LLC's Motion to Vacate or Modify Arbitration Award is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson, P.C. TAKES NOTHING on all its claims against James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd., collectively, have and recover actual damages in the amount of $3,725,700.00 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen have and recover additional actual damages in the amount of $3,569,210.13 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen have and recover additional actual damages in the amount of $1,750,301.21 from Jon Christian Amberson and Jon Christian Amberson, P.C., jointly and severally.

161087

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

IT IS FURTHER ORDERED, ADJUDGED, DECREED, and DECLARED that:

a.  The $4,500,000.00 that James Argyle McAllen paid to Amberson Natural Resources, LLC by wire dated March 18, 2009, was a loan;

b.  The loan is secured by Amberson Natural Resources, LLC's 90% interest in Cannon Grove; and

c.  The loan will be deemed repaid and forgiven upon Amberson Natural Resources, LLC returning its 90% interest to James Argyle McAllen.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Jon Christian Amberson, as the sole owner and decision maker of Amberson Natural Resources, LLC, shall within thirty (30) days of the date of this Final Judgment have Amberson Natural Resources, LLC return to James Argyle McAllen all of its right, title and interest in Cannon Grove (whether such 90% interest technically is in the entity Cannon Grove Investments LLC, and/or ExStra-McAllen, LLC, and/or such other entity that currently holds the Cannon Grove property in which ANR owns a 90% interest).

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust Partnership, Ltd., collectively, have and recover reasonable and necessary attorneys' fees in the amount of $2,000,000.00 from Jon Christian Amberson. Jon Christian Amberson, P.C. is jointly and severally liable for $1,650,000.00 of this $2,000,000.00 amount. Amberson Natural Resources, LLC, is jointly and severally liable for $350,000.00 of this $2,000,000.00 amount.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd. and McAllen Trust

161087

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

Partnership, Ltd. are awarded reasonable and necessary appellate attorneys' fees from Jon Christian Amberson as follows:

(a)   $25,000.00 as reasonable and necessary attorneys' fee for proceedings in the District Court to confirm or vacate an award;

(b)   $75,000.00 as reasonable and necessary attorneys' fee for an appeal to the Court of Appeals;

(c)   $30,000.00 as reasonable and necessary attorneys' fees for preparing or responding to a Petition for Review to the Supreme Court of Texas; and

(d)   $25,000.00 is a reasonable and necessary attorneys' fee for preparing full briefing on the merits to the Supreme Court of Texas.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that James Argyle McAllen, have and recover the sum of $51,232.11 from Jon Christian Amberson, such amount being the 50% in Arbitrator fees and expenses paid by James Argyle McAllen to the Arbitrator.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that interest on any unpaid amounts above shall commence thirty (30) days from the date of the Award, until paid, at the rate of five percent (5%) per annum, simple interest.

The Clerk of the Court is directed to issue all writs necessary for execution of this Final Judgment.

All relief requested by any party and not granted in this Final Judgment is DENIED.

This Final Judgment finally disposes of all parties and all claims and is appealable.

SIGNED, ENTERED and ORDERED this _____ day of _____ 2020.

_____
HONORABLE LUIS M. SINGLETERRY

161087

Electronically Filed
7/20/2020 1:21 PM
Hidalgo County District Clerks
Reviewed By: Leslie Agado

**APPROVED AS TO FORM AND SUBSTANCE:**

David M. Prichard
State Bar No. 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

J. A. "Tony" Canales
State Bar No. 03737000
E-Mail: tonycanales@canalessimonson.com
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78405
(361) 883-0601 – Telephone
(361) 884-7023 – Facsimile

**ATTORNEYS FOR JAMES ARGYLE MCALLEN,
EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO LAND
PARTNERSHIP, LTD. and MCALLEN TRUST PARTNERSHIP**

**APPROVED AS TO FORM ONLY:**

Jason Davis
Caroline Newman Small
DAVIS & SANTOS, P.C.
719 S. Flores Street
San Antonio, TX 78204

**ATTORNEYS FOR JON CHRISTIAN AMBERSON, P.C.,
JON CHRISTIAN AMBERSON, AND AMBERSON
NATURAL RESOURCES LLC**

161087